# EXHIBIT C-2

FILED
DALLAS COUNTY
8/29/2014 7:24:24 PM
GARY FITZSIMMONS
DISTRICT CLERK

DC-14-09604

Smith Gay

Cause No. _____

| | | |
|---|---|---|
| **SAMUEL G. BREITLING,** | § | **DALLAS COUNTY, TEXAS** |
| **JO ANN BREITLING,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | |
| | § | **101ST-E** |
| | § | |
| **v.** | § | **CONSTITUTIONAL** |
| | § | **Violations of Due Process;** |
| **LNV CORPORATION et al,** | § | **Fraud and Criminal** |
| **CODILIS & STAWIARSKI P.C. et al,** | § | **Conspiracy to Defraud;** |
| **DOVENMUEHLE MORTGAGE INC. et al,** | § | **Violations of the Fair Debt** |
| **MGC MORTGAGE INC. et al,** | § | **Collection Practices and** |
| **DALE B. TILLERY** | § | **Truth in Lending Acts** |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Come Now, JoAnn S. Breitling and Samuel G. Breiting, representing themselves, in the above styled action and file this .Original Petition and complaint of LNV Corporaton, MGC Mortgage Inc., Dovenmuehle Mortgage Inc.; Codilis & Stawiarski P.C., and Dale B. Tillery, Defendants and for cause of action would respectfully show to the Court as follows:

## DISCOVERY CONTROL PLAN

Discovery in this case is intended to be conducted under level 3 of the rule 190 of the Texas Rules of Civil Procedure.

## **PARTIES, JURISDICTION AND VENUE**

1. **Plaintiffs,** JOANN S. BREITLING AND SAMUEL G. BREITING are individuals residing in Dallas County, Texas and may be contacted directly.

2. **Defendant** LNV Corporaton (LNV) is a corporation doing business in Texas and can be served through its registered agent, CT Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136

3. **Defendant** MGC Mortgage Inc. (MGC) is a corporation doing business in Texas and can be served through its registered agent, CT Corporation System, located at located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136

4. **Defendant** Dovenmuehle Mortgage Inc. (DMI) is a corporation doing business in Texas and can be served through its registered agent, William A. Mynatt, Jr. located at 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.

5. **Defendant** Codilis & Stawiarski P.C. (C&S) is a law firm doing business in Texas and can be served at 650 N. Sam Houston Parkway East, Suite 450, Houston, TX 77060.

6. **Defendant** Dale B. Tillery (Tillery) is an individual who lives in Texas and can be served at his place of employment the District Court, 134th District Court, Dallas County, 600 Commerce, Ste 650, Dallas, TX 75202-4606.

Years of prior litigation between these parties pertaining to the same issues have been heard in the 116th Dallas County District Court and for the sake of continuity Plaintiffs request this case be assigned to the 116th District Court.

## SPECIAL CONSTITUTIONAL ISSUES

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

**Defendant** Tillery was elected to the office of Judge in the Dallas County 134th District Court.  Pursuant to Article XVI, Section 1 of the Texas Constitution Texas District Defendant Tillery is required to sign an oath of office: "I [name] solemnly swear (or affirm), that I will faithfully execute the duties of the office of [office] of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."

As a state officer, he acted under a state law in a manner violative of the Federal Constitution, and by doing so he came into conflict with the superior authority of that Constitution.  In this case he is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.  The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

If Defendant Tillery were to rob a grocery store, he would not have immunity from prosecution for his crime simply because he is a judge.  In this scenario he has acted outside the authority of the State office which would grant him immunity.  If Defendant Tillery murdered someone in his courtroom while wearing his robes of office, he would still not be immune from criminal prosecution, nor would he be immune from civil liability for the harm he caused to the family of his murder victim.  In both of these

scenarios the individual person named "Dale B. Tillery" acted to achieve his own personal objectives; he did not act under the auspices of the State office entrusted to him by the public when they elected him.

When a Judge violates the Federal Constitution by depriving litigants of their property without due process, he as an individual person, is accountable for the harm he causes and is subjected in his person to the consequences of his individual conduct.

## FACTUAL BACKGROUND

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

**On April 15, 2014** Defendant LNV Corporation (LNV) filed an "*In Rem*" foreclosure petition against the Plaintiffs in the District Court, 134th District Court, Dallas County.

**On June 5, 2014** Plaintiffs were served with Defendant LNV's petition.

**On June 23, 2014** Plaintiffs filed a timely response to LNV's petition.

**On July 7, 2014** LNV filed a motion for default summary judgment.  On the same day Defendant Tillery signed an Order granting LNV's default motion for "*in rem*" summary judgment.

**On July 9, 2014** I, Plaintiff Jo Ann Breitling, discovered that the court ordered an "*in rem*" default summary judgment in behalf of LNV; and had closed the case.  I called the

Lane Law Firm representing me at the time, but Brian Thorn, an employee told me it wasn't anything to worry about that when a case was closed it was always a good thing for the client.  I knew better.  In my earlier litigation with Defendant MGC, its counsel, Scott Hayes, had motioned the court for attorney fees.  The court denied their motion but he kept re-opening an older case so it looked like two cases were going on at the same time.  The Order Scott Hayes submitted with his earlier motion accidently got signed by the Judge two months after the motion had been denied.  As a result a judgment for some $18,000 was filed against us.  I immediately told my attorney at the time and she resolved the mistake quickly; unlike what happened with the Lane Law Firm in this case.

I, Plaintiff Jo Ann Breitling, phoned the clerk's office and told her that the Judge could not sign a default Order granting LNV summary judgment because we filed a timely answer and by law a hearing had to be held.  The court administrator, Francine, told me that the Judge must have not liked our answer.  I then told her it didn't matter whether he liked my answer the fact that I filed a timely answer meant a hearing MUST be scheduled or my Constitutional rights to due process would be violated.

The next day the Order signed on July 7, 2014 was replaced by an "unsigned" Order and a hearing was scheduled for August 4, 2014.  If it hadn't been for my own persistence with the clerk of the court this "mistake" could have cost us our beloved home of 32 years.

**On July 28, 2014** the Lane Law Firm filed a response to LNV's motion for summary

judgment.  We were not happy with this response because it was a generic template for

a standard foreclose and our case was not a standard foreclosure.

**On July 29, 2014** the following motions and orders were filed:

1. Lane Law Firm filed a Motion to Withdraw
2. The Order-Reversing-*In-Rem* Judgment by Error (from the July 9th incident)
3. Joint Objection to Mediation and August 4, 2014-Mediation Hearing
4. Order Granting Joint Motion to Vacate August 4, 2014-Mediation Hearing

**On July 30, 2014** the following motions, orders and documents were filed:

1. Signed Order Granting Withdraw
2. Motion for Continuance filed by Lane Law Firm on behalf of Plaintiffs
3. Plaintiffs' pro se Letter to the Court about Attorney Withdraw
4. Notice of August 4, 2014 Hearing On Continuance

**On July 31, 2014** the Plaintiff's filed a Motion to Transfer back to the Dallas County

116th District Court where the Plaintiffs had been Plaintiffs in litigation against

Defendant MGC and where it was discovered that MGC claimed to be a mortgage

servicer for LNV.  The Plaintiffs believed MGC had been a servicer for Aames Home

Loans, as any reasonable person would, because they had never been notified as

required under 12 U.S. Code Chapter 27 (RESPA), that beneficial interest in their

mortgage had been transferred.  Honorable Judge Tonya Parker in the 116th District

Court had already made determination of fact and conclusions of law denying MGC in

behalf of LNV from a summary motion to foreclose on the same claims they made in

their petition for foreclosure and motion for summary judgment in the 134th District Court.  Dallas County Local Rules 1.06 and 1.07 allow for transfer whenever any pending case is so related to another case previously filed in or disposed of by another Court of Dallas County having subject matter jurisdiction that a transfer of the later case to such other Court would facilitate orderly and efficient disposition of the litigation.

**On August 3, 2014** the Plaintiffs-filed a supplement to the response the Lane Law Firm had filed opposing LNV's motion for summary judgment.

**On August 4, 2014** a hearing was held.  Defendant Tillery immediately denied our motion for continuance.  He provided no judicially determined facts or conclusions of law to support his decision.  We were not permitted to give any oral argument or make any objection before he made his decision.  Any reasonable person who observed this would have cause to doubt Defendant Tillery's impartiality.

As a direct result of Defendant Tillery's decision Plaintiff, Jo Ann Breitling, was forced to proceed unrepresented by counsel and do the best she could as a pro se litigant without the benefit of years of education in law and experience practicing law possessed by counsel representing LNV, Jeffery B. Hardaway employed by Defendant C&S.

Defendant Tillery's decision to deny a continuance that would have allowed us time find another attorney placed us in an exceptionally vulnerable and disadvantaged position compared to LNV.  Defendant Tillery would have known this.  Any reasonable person would expect an impartial judge to allow a 30 day continuance for a defendant to obtain

counsel; especially when the litigation had the effect of depriving us of our property. Any reasonable person would have cause to conclude Defendant Tillery intended to put us into such a vulnerable position.

Next Defendant Tillery denied Plaintiffs' motion to transfer.  Had we had an attorney our counsel could have made an oral argument and provided memorandum of law to support his/her argument in favor of transfer; but as a result of Defendant Tillery's decision to deny a continuance we were given no opportunity to present our case in support of the transfer.  Again Defendant Tillery provided no judicially determined facts or conclusions of law to support his decision.  Defendant Tillery's decision went against the preponderance of the evidence and against the rule of law.  Any reasonable person observing this would have cause to conclude Defendant Tillery held a personal bias against us or was prejudiced concerning the subject matter.

At this point, counsel for LNV, Hardaway, employed by Defendant C&S, said, "These people have not made a payment in over four years, and we are asking permission to foreclose.  These people have breached their contract with us."

Hardaway is not and never has been a credible witness to any contract between Plaintiffs and Defendant LNV.  Hardaway's claims are not founded in fact.  We do not have a contract with Defendant LNV and we vehemently deny the truth of Hardaway's allegations; however as a pro se litigant I, Plaintiff Jo Ann Breitling, was uncertain about how to object.  While I was thinking about what to do, Hardaway said, "Your honor, LNV

and I have come here today, and we have paid our $750 to the mediator and we are prepared to mediate this case."

I, Plaintiff Jo Ann Breitling, wanted to object to this, too, because Defendant Tillery had on July 30, 2014 signed an Order to grant a Joint Objection to Court Order Mediation and Motion to Reconsider the Order Approving Mediator Fees.

Hardaway, as any seasoned attorney would, knows that in Texas mediation is mandatory before a foreclosure action can be granted.  Hardaway knew the Order vacating the mediation hearing was already granted.  Other than to exploit my status as a pro-se litigant and intentionally circumvent Texas laws requiring mediation, Hardaway had no reason to pay the $750 mediation fees and claim LNV was prepared to mediate.  Hardaway knew since the Order vacating the mediation hearing was already granted I would not have come prepared to pay the fees or to mediate.

Before I could respond, Defendant Tilley said, "I am ruling in favor of LNV because you, the Breitlings, did not answer their summary judgment."

I told Defendant Tilley, "We DID answer.  The attorneys answered before they withdrew and it was timely."  Defendant Tilley responded, "Well, I never saw an answer."

I, Plaintiff Jo Ann Breitling, told Defendant Tilley, "It is right there on the register, dated July 28th."  I did not have a hard copy of it, but approached the bench with a copy of my supplement to the objection to LNV's summary judgment that the Lane Law Firm had filed on July 28, 2014.  I gave him and Hardaway a copy.  Defendant Tillery did not even

look at it.  At that point I looked at Defendant Tillery and said, "I have filed a 120 page letter to this court explaining this case.  You never even read it, did you?"  He said nothing.  Then I said, "You don't know anything about my case, because you never bothered to read anything that I wrote."

Any reasonable person would conclude that Defendant Tillery had intended to grant LNV a summary judgment before the hearing even began; and that it was no error when he signed the order for default summary judgment on July 7, 2014.

Defendant Tilley had the hearing scheduled only because I caught him denying us our due process on July 9, 2014.  The hearing on August 4, 2014 was nothing more than a farce meant to give the appearance that we had a hearing.  This does not meet the Constitutional requirement for due process of law.

**On August 4, 2014** the same day as the farce hearing a signed Order granting Defendant LNV's motion for summary judgment was filed.

**On August 13, 2014** Plaintiffs received a Notice of Acceleration and Notice of Posting and Foreclosure from Defendant C&S dated August 11, 2014 stating a sale of our home was scheduled for September 2, 2014.

**On August 18, 2014** Plaintiffs filed a Motion to Vacate Void Judgment.  This motion has not been adjudicated.  Therefore the Order granting LNV summary judgment is **NOT FINAL**.  Yet Defendants LNV, DMI and C&S refuse to postpone the sale on our home.

Also on August 18, 2014 Plaintiffs filed Motion to Recuse and Disqualify Defendant Tillery.  This motion was reviewed by Judge Mary Murphy and denied for procedural error.  Her signed Order was filed on August 22, 2014.

**On August 27, 2014** Plaintiffs filed an amended Motion to Recuse Defendant Tillery. Defendant Tillery refused to recuse himself and a hearing has been scheduled by Judge Mary Murphy for September 5, 2014.

Plaintiffs have sent numerous letters and faxes, have made numerous phone calls to Defendants LNV, DMI and C&S reminding them that the Order is NOT FINAL and requesting that they postpone the sale of their property to no avail.

## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA). 15 U.S.C. §§ 1692-1692P. AND TEXAS FAIR DEBT COLLECTION PRACTICES ACT § 392 AND 12 U.S. Code Chapter 27 (RESPA) AND THE TRUTH IN LENDING ACT (TILA), 15 U.S.C. 1601 ET SEQ

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Plaintiffs received a letter from Defendant C&S dated January 14, 2014.  In this letter they identified themselves as a debt collector pursuant to the FDCPA.  This letter stated: "You are further notified that Dovenmuehle Mortgage Inc., as Mortgage Servicer, is representing the Morgagee, whose address is 1 Corporate Drive, Suite 360, Lake Zurich IL 60047."

Plaintiffs wrote a response to this letter and mailed it to Defendant C&S on February 3, 2014. We disputed the debt as an invalid debt.  Our letter was sent pursuant to the Fair Debt Collection Practices Act, FDCPA, (15 U.S.C. §1692 et seq.)

Defendant C&S claimed in their letter that their client is Defendant DMI, a mortgage servicer for Defendant LNV.  In our prior litigation with Defendant MGC claimed to be a mortgage servicer for Defendant LNV.

We never received any notices of a transfer of servicing from Defendant MGC to Defendant DMI.  When we filed our first petition specific to this matter we believed that MGC was collecting our payments in behalf of Aames Home Loans until our attorney discovered otherwise in January 2011.  Our first petition named Defendant MGC and Aames Home Loans as defendants.

In violation of the Truth in Lending Act (TILA) we had received no disclosures before closing at the origination of our mortgage; we received them more than a week after closing; and our signatures were forged in underwriting.  Our recession document had been post dated so we were denied any right of recession.  One attorney looked at our documents and told us we were "upsold."  The mortgage broker "broke the rules" to make it look like we qualified then she put us into the highest interest rate so she got a yield spread premium to increase the fee paid to her.  She told us the interest rate was just temporary and said it would go down in two years; but this was not true.  We relied on what she told us, and this misrepresentation of the cost of the loan caused us to suffer horrific financial damages.  By 2010 we had already paid $150,000 with only

$7,000 going to the principal when we only borrowed $86,000 to pay off our earlier mortgage and about $40,000 on the home equity loan for home improvements ten years earlier.

We had been paying our mortgage payments to Defendant MGC from June 2008 to February 2010.  We never received any notification as required under 12 U.S. Code Chapter 27 (RESPA) that the beneficial interest in our mortgage was transferring from Aames Home Loans to Defendant LNV.  When we made payments to Defendant MGC we believed they were a mortgage servicer for Aames Home Loans, the party that was stated as the "lender" on our mortgage origination documents.  We know now that Aames was not a true lender but a straw lender.  This was another intentional misrepresentation that harmed us.

Defendant MGC had claimed during our earlier litigation they did not have a payment history for our loan.  Defendant MGC had a history of not processing checks we sent them for our payments, then attempting to charge excessive late fees.  Defendant MGC did not have adequate customer service staff and it was nearly impossible to reach an employee who could or would correct errors, or take payments over the phone.  When our attorney discovered during our years of prior litigation with Defendant MGC in the 116th Dallas District that MGC was collecting payments for Defendant LNV our attorney told us to stop making payments.  Defendant MGC had not shown they had a legal right to collect payments from us or that they would ever properly account for our payments and apply them to our loan's principal balance.

We later learned that the deed assignments to LNV and between parties prior to the purported assignment to LNV had been falsely fabricated and that they contained forgeries and false signatures, as well as, false statements about the assignees and assignors.  These mortgage documents were intentionally fabricated by Defendants MGC and LNV to deceive with intent to deprive us of our property.  Defendant C&S knew they were falsely fabricated documents because we informed them of this in our response letters to their debt demand letter dated January 14, 2014.

Under the FDCPA Defendant C&S was required to investigate the validity of the debt their client claimed we owed but they failed to do so.  Instead Defendant C&S initiated a foreclosure action in a different court when they knew that their client Defendant LNV had been in prior litigation with us in the 116th Dallas District Court where we were the Plaintiffs, and that judicial determinations of fact and conclusion of law had already been made by the Honorable Judge of that court denying Defendant C&S's client a summary judgment on the same grounds as those they claimed in their petition and motion for summary judgment in 134th District Court.

Defendants named in this section as having violated the FDCPA have been amply notified of our intent to bring legal action against them for these violations with such notifications beginning as early as February 2014.  THEREFORE the 60 day notification requirement under the FDCPA has been met.

## ABUSE OF PROCESS AND FRAUD UPON THE COURT

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Throughout our earlier litigation with Defendant MGC their counsel, Scott Hayes with the law firm of Vincent Lopez Serafino Jenevein, habitually filed motions for summary judgment.  We filed our second petition against Defendant MGC in February 2010.  (Our attorney had dropped Aames Home Loans from our petition.  He should have added Defendant LNV but at the time we could never have guessed that LNV would attempt to foreclose in a completely different District court and attempt to hide that fact that they are the same parties involved in our earlier litigation by claiming Defendant DMI was the mortgage servicer instead of MGC.)  During discovery Scott Hayes would send at least 10 copies of the same documents all mixed up in different envelopes sent every few days to our attorney, who became overwhelmed.  This appears to have been by intent.  Scott Hayes filed his first motion for summary judgment in August 2010.  This motion was granted but I, Plaintiff Jo Ann Breitling, told Honorable Judge Priddy that there were TILA violations and he agreed with me.  He told my attorney to amend our complaint to specify the TILA violations.

Scott Hayes filed his second motion for summary judgment in February, 2011, before my attorney could finish our amended petition per the judge's instructions.  Then he filed yet another motion for summary judgment for his attorney fees in June, 2011.  This motion was denied.  Our first attorney eventually became so overtaxed with the volume of documents Scott Hayes sent him and the constant summary motions and delays that

he wanted to withdraw.  We obtained new counsel but she had literally thousands of pages of documents to go through and ended up missing a deadline so in June 2011 we non-suited to give her time to come up to speed.  While our case was abated Scott Hayes filed another motion for summary judgment in November 2011.  In January 2012, Honorable Judge Tonya Parker refused to open the case while a motion for summary judgment was on the docket. She said she was "not going to open the case for him to close it."  Then in March 2012, Scott Hayes filed another motion for summary judgment as soon as case was re-opened.  A hearing was scheduled in August 2012.  Judge Parker was going to rule in our favor, but then Scott Hayes stood up and yelled out "Two more days!!  Judge, just give me two more days!"  Judge Parker said okay, but in the end she denied Scott Hayes' motion for summary judgment.

Trial was scheduled for April 15, 2013, and as per the scheduling order, nothing could be heard 30 days before trial.  Scott Hayes filed yet another motion for summary judgment on February 15, 2013 (this one contained a false Brett Maloney affidavit).  Scott Hayes managed to get the clerks to schedule a hearing for March 30.  This was against the scheduling order, but he wanted a hearing to MOVE THE TRIAL DATE BACK so his motion for summary judgment could be heard first!  These Defendants do not want to ever get to an evidentiary hearing or a real legitimate trial.

## FRAUD AND CRIMINAL CONSPIRACY TO DEFRAUD AND CONSPIRACY TO DEPRIVE US OF OUR CONSTITUTIONAL RIGHT TO DUE PROCESS

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Defendants MGC and LNV are both share a corporate address of 7195 Dallas Parkway, Plano TX which is an empty lot.

Defendants MGC and LNV are both owned by D. Andrew Beal, (Beal), who has history of creating sham or "shell" companies for purposes of tax evasion.  (See *Southgate Master Fund, LLC v. US, 659 F. 3d 466 - Court of Appeals, - 5th Circuit 2011* and *Bemont Investments, L.L.C. v. United States, 679 F.3d 339 - 5th Cir. 2012*. These cases are available in Pacer.)

Plaintiffs have shared their experiences dealing with Defendants MGC and LNV with other customers of these companies.  What we experienced is a shared experience with the other "customers" who were truly victims, hereafter called the "Beal victims."

Defendants MGC and LNV are both shell companies.  Defendant LNV exists only on paper.  None of the other Beal victims have been able to speak to an employee of LNV.  Beal has created hundreds of shell companies, when Beal victims phone LNV using numbers provided by Secretary of State offices they typically get a recorded message saying they have reached CLMG Corporation, another of Beal's sham companies.

Evidence suggests that Defendant MGC does not have an IRS EIN number or tax ID.
They began to use Defendant DMI as a "sub-servicer" in 2010 on IRS 1098 property tax
forms Defendant MGC sent to consumers.  In 2008 and 2009 most of Defendant MGC's
customers did not get an IRS 1098 property tax form, those who did had question
marks in the field designated for the provider's EIN number.  The EIN numbers
provided on Defendant MGC's customer's IRS 1098 property tax forms by Defendant
DMI belong to a DMI retirement fund.

It is a shared experience with the Beal victims that Defendant MGC fails to accept or
record mortgage payments, then charges excessive late fees and in this artificial way
causes homeowners to go in a self-serving default created by Defendant MGC so that
Defendant LNV can then initiate foreclosure.  Defendant MGC often uses Defendant DMI
in foreclosures (for most of the victims of Defendants MGC and LNV this is the first time
they learn about the existence of Defendant DMI.)  This trio of corporations always
works together to perfect foreclosures on behalf of Defendant LNV.

Defendants MGC, LNV and DMI work in collusion with each other to abuse the court
process.  Defendant DMI is a Lender Processing Services (LPS) Service provider.
Defendants MGC, LNV and DMI work in collusion with other LPS service providers to
fabricate falsified mortgage related documents that include forgeries and false
signatures and false statements about the assignees/grantees and the
assignors/grantors named on assignments of deed of trust.  These co-conspirators then
mail or wire these falsely fabricated mortgage documents to county land recorders

across the country. In our case the LPS Service provider Defendants MGC, LNV and DMI conspired with was Defendant C&S.

Beal is a renowned gambler known to have lost at least $16 Million in a single high-stakes poker game.  He's a multi billionaire from Plano Texas.  News articles connect Beal with Hillel ("Helly") Nahmad, who ran the Helly Nahmad Gallery inside the Carlyle Hotel on Madison Avenue in New York City.  An FBI sting operation in NY resulted in the arrest of billionaire heir Helly Nahmad and some 32 other members of two Russian mob families, the Nahmad-Trincher Organization and the in September 2013: Visit the FBI website for more information:

http://www.fbi.gov/newyork/press-releases/2013/manhattan-u.s.-attorney-charges-34-members-and-associates-of-two-russian-american-organized-crime-enterprises-with-operating-international-sportsbooks-that-laundered-more-than-100-million

The Nahmad-Trincher Organization and the Taiwanchik-Trincher Organization laundered the proceeds of the gambling operation through a host of American bank accounts and Titan P & H LLC ("Titan"), a plumbing company in the Bronx that the Nahmad-Trincher organization acquired a fifty percent interest in as repayment of a gambling debt. The organization laundered tens of millions of dollars through various companies and bank accounts. It was assisted in its money laundering by Ronald Uy, a branch manager at a bank in New York City. Uy advised Illya Trincher on how to structure financial transactions so as to avoid bank reporting requirements.

Beal victims Catherine Gebhardt in Tennesse, Cammy Depew in Louisiana and Denise Subramaniam in Oregon investigated a Bank of America Fed wire account Defendants MGC had provided Beal victims in mortgage payoff letters.  Denise, who is a Bank of

America customer, had been told by Bank of America that this was not a valid account. These three Beal victims made a series of tape recorded phone calls where one of them spoke with a Bank of America employee and another was listening on speaker phone to witness the conversations.  They phone Bank of America branches in Tennessee and the Bank of America corporate headquarters.  They were consistently told this was an invalid account.

These Beal victims could not understand why Defendant MGC would provide an invalid account number for mortgage and default payoffs; but Cathy was in litigation with Defendant LNV and wanted a document she could use in her court pleadings.  Cathy's bank suggested she wire a small amount of funds into the account as instructed and since the account was not valid she would get a wire transaction rejection receipt.  That isn't what happened.  Ultimately an attorney employed by Defendant DMI, Charles King, phoned the Tennessee State Bank using caller ID spoofing so that the caller ID showed "U.S. Government" to deceive the bank employee who answered the phone into thinking she was speaking with an employee of the U.S. Government.  This DMI attorney verbally identified himself as a U.S. Government employee on the phone.  His call was specific to the Bank of America Fed-wire account the Beal victims had been investigating.  The Beal victims investigated further and discovered that Defendant DMI was acting as a domestic intermediary for an overseas beneficiary.  Funds Beal victims wired into this account to pay off their mortgages or to pay off mortgage defaults were being wired overseas.  This account is consistent with the ones the FBI uncovered in their

investigation and arrest of the Nahmad-Trincher Organization and the Taiwanchik-Trincher Organizations.

Defendant Tillery made a decision to grant Defendant LNV a motion for summary judgment allowing Defendant LNV to deprive us of our property.  He made his decision without reading any of our motions.  He made his decision against the preponderance of the evidence in our motions.  He made his decision against the rule of law cited in our motions.  Any reasonable person would conclude that Defendant Tillery had decided before he even entered the court room on August 4, 2014 that he would grant Defendant LNV their motion for summary judgment.

This also is not an uncommon experience for Beal victims in litigation with Beal's sham companies Defendants LNV and/or MGC and/or their co-conspirator Defendant DMI. Many of the Beal victims have concluded that Beal uses his wealth to influence the court process and/or court officers whenever this is possible.  These defendants routinely abuse the process and commit fraud upon the court to deprive their victims of their property without due process in violation of the Constitution of the United States.

Plaintiffs aver that they have suffered significant damages as the result of all these defendants' actions against us.  Our life has become consumed with ugly legal matters because of the way Defendants MGC, LNV and DMI abuse the court process.  We have missed important family events such as the births of grandchildren and I wasn't available when my daughter had a miscarriage and surgery because I was at a mediation hearing.  These defendants have stolen our joy for the past five years.  Our

home is not just "property."  The monetary value of our home will never compensate us for our loss.  This has been our family's home for 32 years.  Our home is where my babies grew up and where our grandchildren gather.  It holds many precious memories for us, our children and our grandchildren.

The prolonged stress and mental distress of constantly fighting off financial fraud and then fraudulent foreclosure attempts has taken a serious toll on our health.  We have suffered significant financial damages as well as personal injury as a result of these defendants' actions.

## QUIET TITLE AND PRAYER FOR RELIEF

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Plaintiffs would have been granted Quiet Title a long time ago if it had not been for Defendant MGC's abuse of process.

The Defendants named in our petition who have conspired to defraud us and to deny us of our due process and to thereby deprive us of our property have committed such egregious acts of fraud and other crimes against us that the doctrine of unclean hands precludes them from any claim they may make against us.

Their actions have clouded the title to our property and caused us considerable harm.

WHEREFORE Plaintiffs pray for Quiet Title and that this court order all the falsely fabricated mortgage related documents filed by Defendants MGC, LNV, DMI and C&S and their co-conspirators be purged from our county land records.

We further pray for compensatory, as well as, punitive damages to be awarded us and for any other equitable relief the court deems just.

_____                    _____
JoAnn S Breitling                                                      Samuel G. Breitling

## CERTIFICATE OF SERVICE

Made by fax and by certified mail to attorneys for plaintiffs
Jeffrey B. Hardaway
Robert L. Negrin
Mary M. Speidel
650 N. Sam Houston Pkwy.Ste 450
Houston, Texas   77060
Fax 281-925-5300