# EXHIBIT C-13

FILED
DALLAS COUNTY
2/10/2015 7:44:18 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:15-cv-00703-B   Document 1-16   Filed 03/03/15   Page 2 of 134   PageID 152

Cause No. DC-14-09604

| | | |
|---|---|---|
| | § | DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING | § | IN THE 101 DISTRICT COURT |
| JOANN BREITLING, | § | |
| Plaintiffs, | § | |
| | § | MOTION FOR INJUNCTIVE |
| v. | § | RELIEF |
| | § | |
| LNV CORPORATION et al, | § | |
| CODILIS & STAWIARSKI P.C. et al | § | |
| DOVENMUELHLE MORTGAGE INC. et al | § | |
| MGC MORTGAGE INC., et al | § | |
| DALE B. TILLERY | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF OR ALTERNATIVELY FOR RELIEF BY VACATING VOID COURT ORDER AND TO SET ASIDE ILLEGAL SALE OF PLAINTIFFS' PROPERTY

TO THE HONORABLE JUDGE OF SAID COURT:

Come now, JoAnn and Samuel G. Breitling, representing themselves, in the above styled action and file this motion for injunctive relief to abate, set aside, remit or otherwise cancel or postpone the eviction action and court order brought against Plaintiffs by Defendant LNV Corporation ("LNV") in the Garland Texas J.P. Court, Case Number: JE-15-00071D on January 26, 2015 which has been set for Appeal in the County Court. The case went from the JP court to the county court on January 29, 2015 on appeal.  Once it appears on their docket, Plaintiffs in the present case (Defendants in the above stated eviction case) have only eight days to answer.

This action by Defendant LNV is yet another incident of abuse of judicial process and intentional violation of Texas statutes and Plaintiff's constitutional rights. Plaintiffs should not be required to litigate over possession with the same party (Defendant LNV) in a county court and at the same time litigate issue of title in this Honorable Court. The question of title and possession cannot be separated between two different courts as the Beal Defendants are attempting to do.

Plaintiffs respectfully ask Honorable Judge Staci Williams to order temporary injunctive relief until a hearing can be held on their motion for preliminary injunctive relief to prevent Defendant LNV from evicting them before the present case can be determined on its merits.

Alternatively Plaintiffs respectfully request this Honorable Court to vacate the void order illegally obtained by the Beal Defendants granting Defendant LNV summary judgment on its fraudulently styled "*in rem*" motion and complaint for non-judicial foreclosure; and to vacate or set aside the void sale of Plaintiffs' property that followed.

The Beal Defendants' seek to evict Plaintiffs from their property located as 1704 Cornwall Lane, Sachse, Texas 75048 ("Plaintiffs' Property") pursuant to their blatant and consistent violations of Texas law, including Texas penal code; and pursuant to an illegally obtained court order granting Defendant LNV summary judgment to proceed with an illegal non-judicial foreclosure. Defendant LNV obtained this court order via willful use of fraud upon the court using forged and falsified deed assignments, affidavits, allonges and other mortgage related documents; as well as by possibly bribing a judge. The Beal Defendants then violated an automatic stay under Texas Rules of Civil Procedure 736.11 and illegally sold Plaintiffs' property to Defendant LNV.

The Beal Defendant's (collectively LNV, MGC Mortgage Inc. ("MGC"), Dovenmuehle Mortgage Inc. ("DMI") and Codilis & Stawiarski ("C&S")) and the growing list of attorneys representing them have attempted to circumvent the jurisdiction of this Honorable Court by seeking jurisdiction in a Texas Justice of the Peace Court for an eviction when the present case raises questions of title; including, but not limited to, whether a court order issued by Defendant Tillery granting a summary judgment to LNV in an *in rem* non-judicial foreclosure action is void *ab initio* thereby making the sale of our property to Defendant LNV (the party now attempting to evict them from their home) void *ab initio*.

Our complaint against the Defendants was originally filed in this Honorable Texas 101 District Court on August 29, 2014 where jurisdiction is proper. It was then removed by the Beal Defendants to the Federal district court; and now it has been remanded back to this Honorable State Court. Before the federal court could remand, the Beal Defendants initiated an eviction action in the Garland Texas J.P. Court to illegally evict Plaintiffs from their home of 33 years. They did this while there was a stay in the Federal court pending ultimate remand back to this Honorable State Court.

The Beal Defendants knew that this new action in the JP court was in violation of Texas statutes, just as they knew selling Plaintiffs' home to Beal Defendant LNV via an illegally obtained court order for non-judicial foreclosure was in violation of Texas statutes.

The jurisdiction of the State district court pre-empts the justice court on issues of possession when questions of title and possession are so integrally linked or intertwined that possession may not be determined without first determining title. In such cases the justice court is deprived of jurisdiction. _Mitchell v. Armstrong Capital Corp._, 911 S.W.2d 169, 171 (Tex. App-Houston (1st Dist.) 1995,, writ denied); _Merit Management Partners I, L.P. v. Noelke_, 266 S.W. 3d 637,650 (Tex. App, Austin, 2008, no pet.) Texas government code provides that a county court does not have jurisdiction in "a suit for the recovery of land." _Tex. Gov't Code Ann. § 26.043(8) (West 2004)_; see also _Doggett v. Nitschke_, 498 S.W.2d 339, 339 (Tex. 1973) ("A county court does not have jurisdiction to try questions of title to land.")

The present case is a case where questions of title and possession are so integrally linked or intertwined that possession may not be determined without first determining title.

**BEAL DEFENDANTS' ILLEGALLY SOUGHT TO EVICT PLAINTIFFS FROM
THEIR HOME IN RETALIATION FOR REPORTING THEIR ILLEGAL ACTIVITIES TO
AUTHORITIES, TO MEDIA, AND TO THE PUBLIC**

**On or around December 1, 2014** FBI agent Darrell James walked into Beal Bank asking

questions about Defendant MGC.

**On December 9, 2014**, in spite of a stay that was in effect in the federal court on all motions

pending remand back to this Honorable Court. The Beal Defendant's filed a motion titled: "Motion

for Leave to File Reply in Support of Objections to Recommendation and Brief in Support". (See

Document 51 Case 3:14-cv-03322-M-BN)

**On or about December 9, 2014** the Beal Defendants also sent threatening letters to Plaintiffs

and to Beal victims Denise Subramaniam, Stuart Hamm, and Catherine Gebhardt. Beal's attorney,

Pat Heptig, demanded in these letters that the Beal Victims, including Plaintiffs, remove letters they

wrote about their personal experiences with the Beal Defendants and how they feel about these Beal

entities and D. Andrew Beal because of these experiences from Scribd.com. The letters are protected

speech under the First Amendment to the United States Constitution. (See Plaintiffs' Exhibit A.)

Free speech and equal protection are at the core of American notions about rights and justice.

**On December 22, 2014** the Honorable Judge Barbara Lynn denied the Beal Defendant's

"Motion for Leave to File Reply in Support of Objections to Recommendation and Brief in Support"

in federal court. (See [Document 53] Case 3:14-cv-03322-M-BN)

**On December 31, 2014** Plaintiffs' received a 3-day vacate notice sent by the Beal Defendants.

**On January 9, 2015** The Beal Defendants sent Brett Shipp, investigative reporter at WFAA

television in Dallas, an email claiming they were open to a settlement and to have the Breitling's

attorney contact them. The Beal Defendants know that Plaintiffs do not have counsel, in great part

due to the Beal Defendants' abuse of judicial process with intent to deprive Plaintiffs of their

constitutionally guaranteed rights to due process and equal protection of law under the Fifth and

Fourteenth Amendments to the United States Constitution; and to convolute Plaintiffs' case so as to

exponentially decrease their potential to ever find counsel willing to take their case for a reasonable

fee. Plaintiffs would like to know why the Beal Defendants consistently initiate such

communications through Brett Shipp. This behavior is highly unprofessional and unethical. (See

Plaintiffs' Exhibit B)

   **On January 12, 2015** the Beal Defendants filed an action for eviction in the *Justice of the*

*Peace, Precinct 2, Place 1, Dallas County, Garland Texas, Case number JE-15-00071D*.

   **On January 23, 2015**, unknown to Plaintiffs, the Beal Defendants filed an "*in limine*" motion

titled: "PLAINTIFF'S MOTION IN LIMINE AND MOTION TO EXCLUDE" in the JP court. We

did not receive a copy of this motion until **February 2, 2015**. The Beal Defendants must have

intentionally delayed the mailing of this motion so that Plaintiffs would not receive it until after the

eviction hearing with intent to deprive them of any opportunity to respond to it or challenge it.

According to the JP Court clerk JP Judge Gerry Cooper never signed an order granting this motion.

(See Plaintiffs' Exhibit C a copy of this motion *in limine*.)

   **On January 26, 2015**, Plaintiffs were once again denied due process and equal protection of

law. JP Judge Gerry Cooper refused to allow Plaintiffs to enter any evidence into the court record

specific to the current action, of which this Honorable State court and not the JP court has

jurisdiction. Two LNV attorneys, Luke Madole and Sammy Hooda, and Plaintiff, JoAnn Breitling,

arrived early for the hearing.  Mr. Madole handed Mrs. Breitling a white binder titled "Defendant's

Copy." It listed six exhibits to be shown to the court:

1.  Substitute Trustee's Deed
2.  Texas Home Equity Security Instrument
3. Demands to Vacate Premises
4. Proof of Delivery of Demands to Vacate
5. Sworn Complaint for Forcible Detainer (by Sammy Hooda)
6. Constable's Return of Service

Plaintiff, Mrs. Breitling, handed Mr. Madole a notebook with the material she planned to show the jury. No motion *in limin*e was ever shown to Plaintiff.

During jury selection LNV attorney Luke Madole told the 15 men and women who made up the jury pool that the trial would be about an unpleasant subject, eviction. He asked if anyone had ever been evicted or had personal knowledge of evictions. Potential juror #1 raised his hand, and said he was an attorney and had personal experience with eviction on several occasions. LNV attorney Luke Madole eliminated him as a juror. Mr. Madole then told the jury they would be hearing him use the words "I object!" a lot that day; and asked if anyone would have a problem or be afraid of him if he hollered "I object!"  No juror raised their hand.  He then asked if anyone had ever had a foreclosure, or had someone in their family go through a foreclosure.  Potential juror #15 raised her hand. LNV attorney Luke Madole eliminated her as a juror.

Plaintiff, JoAnn Breitling, addressed the jury pool and told them she was representing herself and asked if anyone had a problem with this. A nurse (possibly potential juror #10) raised her hand and said she felt like Plaintiff should have a lawyer, she would not go to a hospital and expect anyone less than a doctor to treat her, and she would expect a lawyer to be present in a courtroom. (Plaintiff feels the same, and she had always been represented by counsel until Defendant Tillery denied their 30-day continuance to allow them time to find a new attorney at the hearing held on August 4, 2014 in the 134th Dallas District Court; and then continued to deny all the Plaintiffs' other motions without ever reading them; and then granted Defendant LNV's motion for summary

judgment on an illegal *in rem* non-judicial foreclosure complaint which complicated Plaintiffs' case and caused them to become so tied up in researching and writing legal pleadings that they have no time to search for a qualified attorney.) Plaintiff eliminated this juror. None of the remaining jurors were professionals or had a college degree.

Plaintiff, Mrs. Breitling told the jury pool, "This is not a typical case where we got behind on our payments and lost our home to foreclosure. This is a case where we became victims of fraud." LNV attorney Luke Madole yelled, "Objection!" Mrs. Breitling told the jury pool, "I have actually been in court with this company and related companies for over five years." LNV attorney Luke Madole yelled, "Objection!"

At the beginning of the hearing Defendant LNV's attorney in a very quiet voice said something to the judge about a motion *in limine*. Plaintiff, JoAnn Bretling addressed the court and said she never saw any motion *in limine*. Neither the attorney nor the Judge responded to her.  No one offered to show this motion to Plaintiff or to tell her about it. Plaintiff asked the judge if he wanted a copy of the evidence she planned to show the jury and he said, "No."

Defendant LNV's attorney, Luke Madole, objected every time Plaintiff, Mrs. Breitling attempted to speak.  She was taken into the judge's chambers to prevent the jury from hearing anything about why the eviction and the foreclosure itself were illegal.

When Plaintiff JoAnn Breitling showed Judge Gerry Cooper Texas statutes and case law he responded by telling her this was "hearsay." The Texas statutes and case law shown to Judge Gerry Cooper were <u>Section 50;</u> and/or <u>Rule 736(1)</u> of the <u>Texas Rules of Civil Procedure</u> and:

"The jurisdiction of the State district court pre-empts the justice court on issues of possession when questions of title and possession are so integrally linked or intertwined that possession may not be determined without first determining title. In such cases the justice court is deprived of jurisdiction. *Mitchell v. Armstrong Capital Corp., 911 S.W.2d 169, 171 (Tex. App-Houston*

> *(1st Dist.) 1995,, writ denied); <u>Merit Management Partners I, L.P. v. Noelke</u>, 266 S.W. 3d 637,650 (Tex. App, Austin, 2008, no pet.)*  Texas government code provides that a county court does not have jurisdiction in "a suit for the recovery of land." <u>*Tex. Gov't Code Ann. § 26.043(8) (West 2004)*</u>; see also <u>*Doggett v. Nitschke*</u>, *498 S.W.2d 339, 339 (Tex. 1973)* ('A county court does not have jurisdiction to try questions of title to land.')"

Since when are Texas statues and precedence setting case law hearsay? How can Texans have any confidence in the impartiality and integrity of our courts when Texas Judges consider our Texas laws hearsay?

Two men most likely employed by D. Andrew Beal and/or his Beal entities sat in the back of court. In spite of signs prohibiting the use of cell phones in court and a $200 fine for such use; these two men were on their cell phones during the entire hearing. At the end of the hearing one of these men made a phone call and said, "We won."

One of the men who sat behind the LNV attorneys passed them notes throughout the hearing. At one point, LNV attorney Sammy Hooda began to laugh out-loud at Plaintiff JoAnn Breitling. When she asked him if he was laughing at her, he laughed more.  Judge Cooper failed to admonish this attorney for such disrespectful behavior.

In addition to the witnesses who accompanied the Plaintiffs to this hearing, other individuals, previously unknown to Plaintiffs, who had observed this uncommon and horrific display of animosity and disrespect towards the Plaintiffs by officers of the court, came forward to express their disbelief and dismay at what they had just witnessed.

The jury was intentionally and fraudulently denied any evidence that title was in question via an active case in this Honorable State court.

On **February 2, 2015** Plaintiffs received the Beal Defendant's "*in limine*" motion titled:

"<u>PLAINTIFF'S MOTION IN LIMINE AND MOTION TO EXCLUDE</u>" which was used to silence

Plaintiffs in the JP court.  The motion was filed the Friday before the hearing and intentionally mailed late so that Plaintiffs would receive it AFTER the hearing had taken place. Plaintiff's daughter signed for delivery of this motion on <u>February 2, 2015</u>. Plaintiffs will submit into evidence the Post Office's copy of the signed certified receipt showing the date it was received.

### VIOLATIONS OF CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS

Plaintiffs' constitutional rights to due process and equal protection of the law under the Fifth and the Fourteenth Amendments of the United States Constitution were again violated by the JP Judge Gerry Cooper.

Ex parte communications between Judge Gerry Cooper and counsels for LNV must have taken place outside the presence of Plaintiffs and prior to the hearing on January 26, 2015. This is evidenced by the following facts:

1. Judge Gerry Cooper, and the LNV attorneys knew about the *in limine* motion,
2. Plaintiff told Judge Cooper she knew nothing about an *in limine* motion,
3. Plaintiff was never provided any information about the *in limine* motion thereafter, and
4. Plaintiff was never provided a copy of the *in limine* motion during the hearing,

Judge Cooper appears to have cooperated with counsel for LNV to intentionally deprive Plaintiff of any right to be heard or to present evidence to the jury.

<u>Texas Code of Judicial Conduct Canon 3(B</u>) Adjudicative Responsibilities sections 5 through 8 states:

"(5) <u>A judge shall perform judicial duties without bias or prejudice</u>.

(6) <u>A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice</u>, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socieconomic status, and shall not knowingly permit staff, court officials and others subject to the judge's direction and control to do so.

(7) <u>A judge shall require lawyers in proceedings before the court to refrain from manifesting, by words or conduct, bias or prejudice</u> based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status against parties, witnesses, counsel or others. This requirement does not preclude legitimate advocacy when any of these factors is an issue in the proceeding.

(8) <u>A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications or other communications made to the judge outside the presence of the parties</u> between the judge and a party, an attorney, a guardian or attorney ad litem, an alternative dispute resolution neutral, or any other court appointee concerning the merits of a pending or impending judicial proceeding. A judge shall require compliance with this subsection by court personnel subject to the judge's direction and control."

The Texas judiciary has a duty to protect Texas homeowners who have active State court actions specific to a determination of title from wrongful evictions while questions of title are adjudicated. The Texas judiciary has a duty to enforce Texas laws to make sure that court processes and judges in the lower courts do not over step their jurisdiction and/or violate the Constitutional rights of Texas citizens; and that they do not give preferential treatment to excessively wealthy litigants like the Beal Defendants. The Texas judiciary has a civic public interest duty to prevent parties like the Beal Defendants, and the attorneys they hire from using their wealth to abuse judicial process.

## BEAL DEFENDANTS' RETALIATORY ACTIONS AGAINST OTHER BEAL VICTIMS FOR REPORTING THEIR ILLEGAL ACTIVITIES TO AUTHORITIES, TO MEDIA, AND TO THE PUBLIC

The Beal Defendants in this present case took similar retaliatory actions against other Beal Victims who have, like the Plaintiffs reported the illegal activities of the Beal / LPS Racketeering Enterprise to government authorities, the media and to the public. (See Plaintiffs' <u>Exhibit A</u> for copies of the letters described below.)  Such actions include but are not limited to:

1. Just days after Beal's attorney Pat Heptig sent Stuart Hamm a threatening letter dated December 10, 2014 demanding he remove his protected speech letter about why he thinks D. Andrew Beal is a bully, the Beal Defendants in the present case, filed a motion to remove the automatic stay in Stuart's bankruptcy case by falsely claiming he had failed to make five

payments. (*Stuart and Nora Hamm: In the United States Bankruptcy Court for the Western District of Texas; Case No. 14-50843G*).

2. Just days after Beal's attorney Pat Heptig received Denise Subramaniam's response to his first threatening letter to her dated November 14, 2014 and received by Ms. Subramaniam also a pro-per litigant, on November 17, 2014 demanding she remove a "Bully Beal" caricature she uploaded to her Scribd account. She complied with this demand but Beal Defendant LNV, filed a frivolous foreclosure complaint against Ms. Subramaniam. (*LNV v. Subramaniam, Case No. 3:14-cv-01836 in the U.S. District Court District of Oregon, Portland Division*) The Beal Defendants sent Ms. Subramaniam another such threatening letter dated December 9, 2014 demanding she remove her personal experiences and feelings about why she thinks D. Andrew Beal is a bully. Another such threatening letter was sent more recently to Ms. Subramaniam about postings on her Facebook page. Her Facebook privacy settings are defined as being viewable by "friends only" so it is curious how the Beal Defendants accessed her posts.

3. Four days after Ms. Subramaniam filed her response to Defendant LNV's frivolous foreclosure complaint which included a preliminary report prepared by OMNI Document Examinations ("OMNI") where Beal Victim Rhonda Hardwick, also a pro-per litigant, had provided an allonge produced by LNV to be examined by OMNI, Defendant LNV filed a motion for summary judgment in Rhonda's case. Purported "original Notes" produced by LNV included identical allonges endorsed by Jason J. Vecchio. The authenticity of these allonges and the Notes are in question. OMNI determined the Jason J. Vecchio signatures on these allonges are either stamped or photocopied signatures. Beal Victim Rhonda Hardwick, also a pro-per litigant, had one of these questioned allonges that was examined by OMNI. (*LNV as assignee of MERS Inc. as nominee for First Capital Finaicial Services Corp. DBA Full Compass Lending v. Hardwick, Case No. 51C01-1204-MF-00098; State of Indiana County of Martin in the Martin Circuit Court.*)

4. Even though the Swifts have an attorney who understands the fraud and the Beal Defendants' pattern of abuse of judicial process, it has been a six plus year battle to get the Beal Defendants' to comply with discovery rules; even when the court orders them to comply they still fail to comply. The Swifts have paid more than $50,000 in attorney fees and most of this cost is due to the Beal Defendants' abuse of judicial process and failure to comply with discovery process and court orders. This is intentional abuse of judicial process by the Beal Defendants because it allows the Beal Entities to prevail in court when they truly have no standing to do so. Their abuse of process deprives their adversaries from obtaining evidence that would prove LNV's lack of standing. This intentional abuse of process most often results in homeowners being unable to afford further attorney fees and forces them to proceed pro-per with an unconstitutional disadvantage. (*Christopher and Marcia Swift: In the United States Bankruptcy Court for the Northern District of Illinios, Eastern Division; Case No. 12-35690*)

What Beal is doing is no different from street thugs in gangs who threaten and terrorize people living in the neighborhoods where their gangs operate the crime enterprises so they are too afraid to talk with the police or become witnesses. Beal needs to be stopped.

## BEAL DEFENDANTS' ABUSE OF JUDICIAL PROCESS

Beal and his Beal Defendants have nearly infinite financial resources, whereas Plaintiffs and the other Beal Victims forced to defend themselves pro-per do not. Beal has now hired four different law firms to act in his behalf against Plaintiffs. Litigating self-represented in yet another court will cause Plaintiffs severe hardship and will result in the epitome of injustice as it would allow the Beal Defendants to use their ill-gotten wealth to further exploit Plaintiffs' vulnerability and to confusticate the judicial process.

The Beal Defendants brought this new eviction action in the justice court in bad faith and for the purpose of harassment. They fully know Plaintiffs have challenged their claim of title in this Honorable State court, which they immediately and frivolously removed to federal court. Attorneys for the Beal Defendants know, or should know, that the JP court lacks jurisdiction to evict Plaintiffs. Unfortunately Beal's money seems to convince many individuals to do things they know they shouldn't do.

In addition to incurring additional costs, it has taken hours of Plaintiffs' time to prepare for the JP court hearing and the ultimate appeal in the county court. This preparation distracts Plaintiffs from preparing for the case at hand. The added stress of this hardship affects Plaintiffs' health and further jeopardizes their ability to defend ourselves without counsel which is most certainly the intent of the Beal Defendants.

Individuals with excessive wealth like D. Andrew Beal are used to getting their own way. Beal expects the privileges of an oligarch who imposes his will onto others more vulnerable than himself; he demands his own way without regard for the law.

Plaintiffs have been outspoken about the Beal Defendants' corrupt business practices since 2008 and Beal is personally retaliating against them for this because now government authorities and the media are finally investigating. Beal is driven to take Plaintiffs' home regardless of whether or not he has a legal right to do so. Beal is driven to cause Plaintiffs as much pain as possible to set an example of them to make other victims fearful of speaking out about his criminal activities.

The Beal Defendants removed Plaintiffs' case to federal court in hopes of getting a "more favorable" judge (as per [Document 52] in federal case 3:14-cv-03322-M-BN, **Exhibit A**, starting on page 17, and **Exhibit B**, starting on page 37). When Beal didn't get the results he wanted he shopped for yet another judge who might be more easily deceived or persuaded (perhaps with a bribe) to give him what he wanted – JP Judge Gerry Cooper.

The Beal Defendants have consistently acted in bad faith with Plaintiffs and with the judiciary. They have harassed Plaintiffs with an onslaught of simultaneous legal actions in multiple courts. The Beal Defendants have demonstrated a pattern of abuse of judicial process, bad faith, fraud upon the court and harassment in litigation involving other Beal Victims.

## PRELIMINARY INJUNCTION CRITERIA IS MET BY PLAINTIFF

Preliminary injunctions decisions are based on a four-factor test: 1) likelihood of success on the merits; 2) potential irreparable harm; and two optional factors 3) balance of the equities and 4) public interest. A preliminary injunction (PI) will only issue when the first two elements are demonstrated by the party requesting PI relief and the combined result of all four elements/factors weighs in favor of a PI.

**LIKELIHOOD OF PLAINTIFFS PREVAILING ON THE MERITS**

The Beal Defendants violated <u>Texas Rules of Civil Procedure 736</u> and committed fraud upon the court to obtain an illegal non-judicial court order to sell Plaintiffs home of 33 years. The 134th District Court's order and the subsequent sale of Plaintiffs' are void *ab initio*.

Any sense of justice or fair play requires that:

1.  the court order issued by Defendant Tillery in the 134th District Court granting Defendant LNV's motion for summary judgment on their fraudulently styled "in rem" non-judicial foreclosure action be vacated due to the fact that it is void ab initio;

2.  the subsequent sale of Plaintiffs' property to Defendant LNV be set aside; and

3.  the subsequent eviction order illegally obtained by the Beal Defendants set aside.

The Beal Defendants' knowingly, with intent to deceive, styled their original complaint as a judicial foreclosure complaint; and then filed a fraudulent "*in rem*" motion for summary judgment with intent to execute a non-judicial foreclosure. The Beal Defendants know how to correctly style an application for non-judicial foreclosure as required by <u>Texas Rule 736.1</u> but these Defendants willfully violated  <u>Texas Rule 736.1</u> with intent to deceive the court and thereby deny the Plaintiffs' due process and equal protection of law and to illegally deprive them of their property in violation of the Fifth and Fourteenth Amendments of the United Stated Constitution and in violation of a host of Texas statutes. The Defendants violations include but are not limited to the following:

**1) Defendants' Willful Violation of <u>Rule 736(1), Texas Rules of Civil Procedure</u>**

<u>Rule 736.1</u> requires the party seeking to foreclose on an equity lien, the type of lien Plaintiffs' had, to file a <u>verified application</u> in the district court of the county where all or part of the property is located. The rule also includes a list of items which <u>shall</u> be included in the application. The lender

must serve the application and notice on each party who is "obligated to pay the debt" by certified and first class mail.

<u>Texas Rule 736.1</u> states:

"(a) Where Filed. An application for an expedited order allowing the foreclosure of a lien listed in <u>Rule 735</u> to proceed must be filed in a county where all or part of the real property encumbered by the loan agreement, contract, or lien sought to be foreclosed is located or in a probate court with jurisdiction over proceedings involving the property.

(b) Style. An application must be styled "In re: Order for Foreclosure Concerning [state: property's mailing address] under <u>Tex. R. Civ. P. 736</u>.

(c) When Filed. An application may not be filed until the opportunity to cure has expired under applicable law and the loan agreement, contract, or lien sought to be foreclosed.

(d) Contents. The application must:

(1) Identify by name and last known address each of the following parties:

(i) for a home equity loan, reverse mortgage, or home equity line of credit, each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed and each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed;

(ii) for a tax lien transfer or property tax loan, each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed, each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed, each owner of the property, and the holder of any recorded preexisting first lien secured by the property;

(iii) for a property owners' association assessment, each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed who has a current ownership interest in the property.

(2) Identify the property encumbered by the loan agreement, contract, or lien sought to be foreclosed by its commonly known street address and legal description.

(3) Describe or state:

(A) the type of lien listed in <u>Rule 735</u> sought to be foreclosed and its constitutional or statutory reference;

(B) the authority of the party seeking foreclosure, whether as the servicer, beneficiary, lender, investor, property owners' association, or other person with authority to prosecute the foreclosure;

(C) each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed;

(D) each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed who is not a maker or assumer of the underlying debt;

(E) as of a date that is not more than sixty days prior to the date the application is filed:

(i) if the default is monetary, the number of unpaid scheduled payments,

(ii) if the default is monetary, the amount required to cure the default,

(iii) if the default is non–monetary, the facts creating the default, and

(iv) if applicable, the total amount required to pay off the loan agreement, contract, or lien;

(F) that the requisite notice or notices to cure the default has or have been mailed to each person as required under applicable law and the loan agreement, contract, or lien sought to be foreclosed and that the opportunity to cure has expired; and

(G) that before the application was filed, any other action required under applicable law and the loan agreement, contract, or lien sought to be foreclosed was performed.

(4) For a tax lien transfer or property tax loan, state all allegations required to be contained in the application in accordance with section 32.06(c–1)(1) of the Tax Code.

(5) Conspicuously state:

(A) that legal action is not being sought against the occupant of the property unless the occupant is also named as a respondent in the application; and

(B) that if the petitioner obtains a court order, the petitioner will proceed With a foreclosure of the property in accordance with applicable law and the terms of the loan agreement, contract, or lien sought to be foreclosed.

(6) Include an affidavit of material facts in accordance with Rule l66a(f) signed by the petitioner or the servicer describing the basis for foreclosure and, depending on the type of lien sought to be foreclosed, attach a legible copy of:

(A) the note, original recorded lien, or pertinent part of a property owners' association declaration or dedicatory instrument establishing the lien, and current assignment of the lien, if assigned;

(B) each notice required to be mailed to any person under applicable law and the loan agreement, contract, or lien sought to be foreclosed before the application was filed and proof of mailing of each notice; and

(C) for a tax lien transfer or property tax loan:

(i) the property owner's sworn document required under section 32.06(a–1) of the Tax Code; and

(ii) the taxing authority's certified statement attesting to the transfer of the lien, required under section 32.06(b) of the Tax Code."

No such application was ever filed by the Beal Defendants. None of the items that MUST be included in the application under Texas Rule 736 for a non-judicial foreclosure were included in any pleading that might be construed as an application under Texas Rule 736.1.

Texas Rule 736.1(b) states:

"An application must be styled 'In re: Order for Foreclosure Concerning [state: property's mailing address] under <u>Tex. R. Civ. P. 736</u>.'"

The Beal Defendants styled their foreclosure complaint. "<u>PLAINTIFF'S ORIGINAL COMPLAINT FOR FORECLOSURE</u>" They then filed a motion for summary judgment styled, "<u>PLAINTIFF'S MOTION FOR *IN REM* DEFAULT AND *IN REM* SUMMARY JUDGEMENT</u>" This styling does not adhere to the explicate requirements of <u>Texas Rule 736.1(b).</u>

## 2) Beal Defendants Willfully Violated <u>Texas Rule 736.1(b)</u>

It was not by mistake that the Beal Defendants failed to correctly file an application as per <u>Texas Rule 736.1</u> for non-judicial foreclosure. The Beal defendants know how a non-judicial foreclosure application is supposed to be styled because Defendant LNV filed correctly styled applications in the following cases:

1. Filed on <u>September 21, 2009</u> Case# *DC-09-12954  LNV FORECLOSURE et al vs. Jesus Ramire et al in 101st Dallas District Court.*

2. Filed on <u>August 9, 2011</u> Case# <u>*DC-11-09828: LNV FORECLOSURE et al vs. Christopher and Karlene Puskarich*</u> *et al in the 298th District Dallas Court.*

3. Filed on July 25, 2011 Case#: <u>*DC-11-09152: LNV FORECLOSURE et al vs. James Luther Mills, Jr. and Teresa Mills et al*</u> *in the 162nd Dallas District Court*

4. Filed on <u>March 20, 2014</u> Case# <u>*DC-14-02858: LNV CORPORATION et al vs. ANDRELL STEVENS et al*</u> *in the 14th Dallas District Court*

5. Filed on <u>August 18, 2014</u> Case# <u>*DC-14-08991: LNV vs the Bakers,*</u> *in the 192nd Dallas District Court.*

Only one month before he filed the fraudulently styled non-judicial complaint against Plaintiffs in behalf of Defendant LNV attorney Jeffrey B. Hardaway representing Defendant LNV in its illegal foreclosure action against the Plaintiffs who is employed by Defendant C&S correctly filed an application for non-judicial foreclosure in a case he filed on March 15, 2014: Case# <u>*DC-14-03145: JPMORGAN CHASE BANK, NA vs DONALD MURRELL et al*</u> *in the 101st Dallas District Court.*

The Beal Defendants and their attorney employed by Defendant C&S filed their fraudulent non-judicial foreclosure action against Plaintiffs on April 15, 2014 whereas the Beal Defendants and their attorney have filed correctly styled applications under Texas Rule 736.1 for non-judicial foreclosures both prior to and after their fraudulent filing of a non-judicial foreclosure in Plaintiffs' case. The only conclusion a reasonable person can deduce from these facts is that the Beal Defendants willfully and intentionally violated Texas Rule 736.1 in the Plaintiffs' case.

The Beal Defendants in fact intended to execute a non-judicial foreclosure, in spite of their deceptively styled complaint and motion for summary judgment. In the Joint Status report filed on October 21, 2014 [Document 32 of in federal case 3:14-cv-03322-M-BN, page 8] counsel for the Beal Defendants state:

> "On September 2, 2014, the Property was sold to LNV at a **non-judicial** foreclosure sale for $149,400.54."

Further evidence that the Beal Defendants executed a non-judicial foreclosure via their willful non-compliance with Texas Rule of Civil Procedure 736.1 is that the Beal Defendants filed a notice of substitution of trustee in the county recorder's office, on September 8, 2014 which they attached to their Sworn Complaint for Forcible Detainer filed in the Justice of the Peace Court of Dallas County, Texas and which they also attached to their Response in Opposition to Request for Injunctive Relief [Document 57-2 of in federal case 3:14-cv-03322-M-BN, PageID 950]. The substitution of Trustee was from Michael L. Riddle to Shelley Ortolani. (See [Document 58-1] in federal case 3:14-cv-03322-M-BN page 39 for this substitution of Trustee document.)

**A trustee performs the sale only in non-judicial foreclosures**. Quoting from "Texas Rule 736 Foreclosure – Judicial? FORECLOSURES UNDER RULE 736, TEXAS RULES OF CIVIL

PROCEDURE: Why an 'Expedited Foreclosure Proceeding' is not a 'Judicial Foreclosure'" by

Mary Doggett:

> "There is a common misconception in Texas as to what exactly is a foreclosure procedure
> pursuant to Rule 736 of the Texas Rules of Civil Procedure….In a judicial foreclosure one
> would file a suit and get a judgment; the court would order the lien foreclosed, issue the order
> of sale, and have an officer of the court conduct the sale.
>
> In a 736 foreclosure, on the other hand, the court's actions are more ministerial. Before the
> court proceeding, the lienholder starts the nonjudicial process by sending default notices and
> accelerating the debt. Only then does he file an application for an order (as opposed to a suit)
> in court. Additional parties and claims are not permitted: the only issue for the court to
> determine is whether the lienholder complied with the conditions precedent to foreclosing the
> lien. **In fact, if the debtor raises any other issues, the court is essentially supposed to
> dismiss the 736 application.** If the court agrees that the lienholder's application is sufficient,
> the court issues an order that says, "yes, you've done all the steps precedent to a nonjudicial
> foreclosure; you may now foreclose." It is then the lienholder (through a trustee) who
> conducts the sale, not an officer of the court. (See **Exhibit E** of Document 58-1 in federal case
> 3:14-cv-03322-M-BN pages 17 & 18 for full article.)

When Texas first allowed Texas Home Equity Loans in 1998 it was with the expressed

stipulation that the property could only be foreclosed upon through a judicial foreclosure. Every one

of the numerous attorneys Plaintiffs have spoken with told them that a non-judicial foreclosure is not

permitted with a Texas Home Equity Loan, which is the type of loan Plaintiffs had, and that they

would always have their day in court.

Plaintiffs were denied their day in court because the Beal Defendants willfully and intentionally

violated Texas Rule 736.1, and thereby illegally obtained a court order to proceed with what they

knew or should have known was an illegal non-judicial foreclosure and sale of Plaintiffs' property.

Whether or not Beal's criminal objective was accomplished with the intentional cooperation or

active participation of Defendant Tillery, the Beal Defendants schemed to defraud the court and to

thereby deprive the Plaintiffs of their property by depriving them of their constitutionally guaranteed rights to due process and equal protection of the law.

**3) Defendants' Willful Violation of <u>Texas Property Code 51.002(b); 51.0025 & 51.0075(e)</u>**

The Beal Defendants were required under <u>Texas Property Code 51.002(b)</u> to provide certain notices to Plaintiff. The Beal Defendants failed to provide these notices.

<u>Texas Property Code Sec. 51.0025</u>. ADMINISTRATION OF FORECLOSURE BY MORTGAGE SERVICER states:

> "A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if:
>
> > (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and
> >
> > (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the mortgagee and:
> >
> > > (A) the address of the mortgagee; or
> > >
> > > (B) the address of the mortgage servicer, if there is an agreement granting a mortgage servicer the authority to service the mortgage."

The notice sent to Plaintiffs by the Beal Defendants falsely disclosed the "mortgage servicer" for Defendant LNV as Defendant Dovenmuehle Mortgage Inc. ("DMI"). A 2014 1099 form sent to Plaintiffs by Defendant MGC identifies Defendant DMI as a "sub-servicer" for Defendant MGC. Plaintiffs have received numerous communications from Defendant MGC and attorneys for Defendant MGC identifying Defendant MGC as the mortgage servicer for Defendant LNV.

The Beal Defendants willfully misrepresented the mortgage servicer for Defendant LNV with intent to deceive the court with intent to deprive the Plaintiffs of their constitutionally guaranteed rights to due process and equal protection of law and to thereby wrongfully deprive them of their property.

The Beal Defendants' failure to correctly disclose the name and address of the mortgage servicer is a willful violation of <u>Texas Property Code 51.002(b)</u>.

<u>Texas Property Code Sec. 51.002(b)(3)</u>. SALE OF REAL PROPERTY UNDER CONTRACT LIEN states:

> "(b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, **<u>must be given at least 21 days before the date of the sale</u>** by:
>> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt."

The notice sent to Plaintiffs was dated August 11, 2014. It was received by Plaintiffs no earlier than August 13, 2014. The sale was held on September 2, 2014, whereas Plaintiffs received notice of sale 20 days or less before the sale in violation of <u>Texas Property Code Sec. 51.002(b)(3)</u>.

<u>Texas Property Code Sec. 51.0075(e)</u> states:

> "The name and a street address for a trustee or substitute trustees shall be disclosed on the notice required by Section 51.002(b)."

The notice sent to Plaintiffs by the Beal Defendants did not disclose the name and address of the substitute trustee and was therefore in violation of <u>Texas Property Code Sec. 51.0075(e)</u>.

## 4) Beal Defendants willfully violated <u>TRCP 736.11</u>

The Beal Defendants and their attorneys and agents willfully violated the automatic stay provided by <u>Texas Rules of Civil Procedure 736.11</u> by selling Plaintiffs' property to Defendant LNV on September 2, 2104. The Beal Defendants were properly informed of the automatic stay effective under <u>Texas Rules of Civil Procedure 736.11</u>  (See **<u>Exhibit C</u>** to <u>[Document 58-1]</u> in federal case <u>3:14-cv-03322-M-BN</u> pages 10 - 12 for Fax of Notice of Automatic Stay of Sale of Property sent to multiple Beal Defendant Employees and agents.) The illegal sale of Plaintiffs' property is also captured on video.

**5) <u>Defendants Violation of Texas Rules of Civil Procedure 736.11</u>**

<u>Texas Rules of Civil Procedure 736.11</u>: Automatic Stay and Dismissal if Independent Suit Filed

states:

   (a) <u>A proceeding or order under this rule is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale.</u>

   (b) Respondent must give prompt notice of the filing of the suit to petitioner or petitioner's attorney and the foreclosure trustee or substitute trustee by any reasonable means necessary to stop the scheduled foreclosure sale.

   (c) Within ten days of filing suit, the respondent must file a motion and proposed order to dismiss or vacate with the clerk of the court in which the application was filed giving notice that respondent has filed an original proceeding contesting the right to foreclose in a court of competent jurisdiction. If no order has been signed, the court must dismiss a pending proceeding. <u>If an order has been signed, the court **must** vacate the Rule 736 order.</u>

   (d) <u>If the automatic stay under this rule is in effect, any foreclosure sale of the property is void.</u> Within 10 business days of notice that the foreclosure sale was void, the trustee or substitute trustee must return to the buyer of the foreclosed property the purchase price paid by the buyer.

   (e) The court may enforce the Rule 736 process under chapters 9 and 10 of the Civil Practices and Remedies Code.

   The trustee sale was scheduled for Tuesday September 2, 2014. Plaintiffs filed their separate, original proceeding in the Dallas District court on Friday August 29, 2014. Plaintiffs' complaint is specific to issues related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed.

   The Beal Defendants were notified as per <u>Texas Rules of Civil Procedure 736.11</u> of Plaintiffs' separate, original complaint against them and of the automatic stay, but they chose to ignore it proceed with the sale of Plaintiffs' property illegally. (See **<u>Exhibit C</u>** of [<u>Document 58-1</u>] in federal case <u>3:14-cv-03322-M-BN</u> pages 10 - 13.)  This fax, as well as emails were sent to the

following individuals: David Allison, executive officer with Defendant DMI; William Mynat

president of Defendant DMI, Ed Szarkowicz, attorney with Defendant DMI, Scott Rosenblum,

director of Defendant DMI; Bret Maloney employed by Defendant MGC and Beal Bank; Grant

Hamilton, attorney for Defendant MGC; Mr. Carl Frischling and Mr. Ezra G Levin senior partners at

Kramer Levin Naftalis & Frankel LLP where Mr. Rosenblum is employed; Mary M. Speidel, Jeffrey

Ben Hardaway, Leo C. Stawiarski Jr., Ernest John 'Ernie' Codilis Jr., all attorneys with Defendant

C&S; and several employees of Beal Bank.

Plaintiff, JoAnn Breitling, personally phoned and spoke with David Allison and Grant

Hamiton on the day of the sale to inform them that Plaintiffs had filed an independent lawsuit

against the Beal Defendants and that an automatic stay of the sale was in place under Texas Rules of

Civil Procedure 736.11.

## BEAL DEFENDANTS KNEW THEIR FORECLOSURE AND SALE OF PLAINTIFFS' PROPERTY VIOLATED TEXAS LAW

The Beal Defendants foreclosed on Plaintiffs property using robosigned, forged and otherwise

falsified mortgage and foreclosure related documents; and they have done so, or are attempting to do so,

in numerous other cases across the country and in Texas.

As per Texas Attorney General Greg Abbott if affidavits and other documents, such as deeds of

trust and appointments of substitute trustees were prepared by employees referred to as "robosigners"

who signed thousands of documents a month without reading them; who signed affidavits which falsely

claim personal knowledge of facts and which falsely claim the affiant reviewed the attached documents;

who notarized documents prior to the signer signing or when the signer was not present before the

notary; and who filed affidavits with records attached that do not correctly reflect loan payments, charges

and advances; and such documents:

"were utilized in establishing MGC Mortgage Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been in violation of <u>Section 17.46(a)</u> of the <u>Texas Deceptive Trade Practices Act</u>; <u>Section 392.304</u>, <u>Texas Debt Collection Practices Act</u>; <u>Section 37.02, Texas Penal Code</u>; <u>Section 12.001, Texas Property Code</u>; <u>Section 406.009, Texas Government Code</u>; <u>Texas Constitution Article 16, Section 50</u>; and/or <u>Rule 736(1), Texas Rules of Civil Procedure</u>, and the document and **therefore the foreclosure sale would have been invalid**." (See **Exhibit D** of <u>Document 58-1 in federal case 3:14-cv-03322-M-BN</u> pages 14 & 15 for the Letter from Texas Attorney General Greg Abbott mailed to Beal's MGC.)

## THE PROMISSORY NOTE DEFENDANT LNV CLAIMS PLAINTIFFS DEFAULTED IS VOID *AB INITIO*

Plaintiffs' mortgage contract (i.e. the promissory note along with the Deed of Trust ("DoT") that secures the promissory note in the event of default) is void *ab initio*.

THEREFORE it is a non-negotiable instrument. Any sale of Plaintiffs' property to satisfy a claim based on a non-negotiable instrument would be invalid. Whether or not the Beal Defendants legally acquired the Note and the DoT (and they did not) from the party Plaintiffs' originally contracted with or any subsequent party claiming to hold the Note and DoT has no bearing on the negotiability of a non- negotiable instrument. An instrument that is void *ab initio* is forever so.

Additionally, if the Note and DoT were determined to be negotiable (which they are not) chain of title must be unbroken and free of any cloud of suspicion of fraud or forgery.

Property rights are a cornerstone to our democratic form of government and to our country's prosperity, thus our forefathers protected citizen's property rights via the Bill of Rights to our great Constitution of the Unites States of America.

The recorded history of matters that affect the title to a specific parcel of real property, such as ownership, encumbrances, and liens, beginning with the original recorded source of the title shows the successive changes of ownership, each one linked to the next so that a "chain" is formed.

Ownership of a particular property frequently passes through many hands subsequent to the original grant. If any link is broken in a property's "chain of title", then the current "owner" does not have valid title to the property. To be within an unbroken chain of title, the instrument must be discoverable or traceable through linking conveyances from the present owner through successive owners to a common grantor. If not, a "break" exists in the chain, creating a "cloud" on the title.

In these cases, it is usually necessary to establish ownership by a court action called a suit to quiet title. Plaintiffs have not had the opportunity yet to prepare and file their amended complaint; in great part due to the Beal Defendants' bombardment of retaliatory legal actions against them in multiple courts intentionally diverting Plaintiffs time, energy and resources so as to once again deprive them of due process and equal protection of the law. Plaintiffs will be asking for quiet title as one of the remedies they seek in their amended complaint; and they did request quiet title as a remedy in their original complaint.

Defendant LNV claims to be the current owner of Plaintiffs property due to a series of illegal actions already described herein; however they are not the current owner due, not only to their illegal and criminal actions, but also due to an incurable break in the chain of title. If a forged deed or assignment of deed were somewhere in the chain, then no subsequent grantee would have acquired legal title to the property.

Plaintiffs unequivocally deny the validity and legality of the assignment of deed that Defendant LNV purports is the basis for its claim of ownership because this assignment of deed is a forged and falsified instrument. [Document 33[ in federal case 3:14-cv-03322-M-BN includes a copy of Defendant LNV's original complaint for foreclosure filed on April 15, 2014 in the 134th Dallas District Court. Attached to this original complaint as LNV's Exhibit F is an assignment of deed for a

property with the address "8908 Forest Creek Drive, Tomball, Texas 77375." This is not the

Plaintiffs' property address. (See [Document 33] page 12)

A copy of an assignment of deed that's authenticity is disputed by Plaintiffs is on page 13 of

[Document 33]. This assignment (assignment 1) purports to grant DoT from "Deutsche Bank

National Trust Company, as Trustee FKA Bankers Trust Company of California, N.A. as Trustee" to

"Ellington Mortgage Partners, L.P." Plaintiffs contend that this is a forged and falsified assignment

of deed. (See [Document 33] page 14.) A copy of the assignment of deed (assignment 2) that

Defendant LNV claims assigned title to it is on page 15 of [Document 33]. Plaintiffs contend that

this second assignment (assignment 2) is a forged and falsified instrument. This assignment

(assignment 2) could not confer title to LNV in any event because the first assignment (assignment

1) is forged and falsified. Title passed via a forged instrument had no legal authority to convey

beneficial interest.

Due process requires Plaintiffs be given the opportunity to authenticate the assignment of DoT

that Defendant LNV claims as its basis of ownership. This document and other documents the Beal

Defendants would have this court believe are genuine must be examined by a professional document

examiner for authenticity. Only then can this court evaluate the facts specific to chain of title and

thus derive at conclusions of fact and of law specific to whether Plaintiffs or Defendant LNV has

title to the property; and thereafter who has the right of possession.

Plaintiffs challenged the authenticity of these assignments of deed as defendants in the 134th

Dallas District court. When a defendant in a foreclosure case challenges the standing of the party

seeking to foreclose the granting of a summary judgment was not proper even if Defendant LNV's

foreclosure action had been legal, which it was not.

The question most material as to whether a party has standing to foreclose is whether or not that party has forged or authentic mortgage instruments, i.e. the court <u>must</u> determine whether that party is in fact the holder of the original note, and whether title has been legally conveyed to that party.

Plaintiffs here have challenged Defendant LNV's standing to foreclose; both as defendants in the illegal foreclosure case; and in this independent lawsuit Plaintiffs filed in this court i.e. the present case before this Honorable Court.

THEREFORE as a matter of law Plaintiffs must prevail in retaining possession of the property until the issues of title can be adjudicated.

FURTHERMORE Plaintiffs are likely to prevail on the issue of title based on, but not limited to, the following reasons:

**1) <u>Specific issues with Origination that Render the Mortgage Contract Void *ab initio*</u>**

Plaintiffs' signatures were forged on several documents by the broker during underwriting without thier knowledge or permission. (See **<u>Exhibit F</u>** of [<u>Document 58-1</u>] in federal case <u>3:14-cv-03322-M-BN</u> pages 20 - 37 – Forged signatures at origination.) These documents also evidence the fact that we were never given proper legal disclosures under the Truth in Lending Act ("TILA"). This fact was judicially determined by Judge Tanya Parker in the 116th Dallas District court, case # DC-11-07087.

An assignment of deed of trust filed with Plaintiffs' county by Defendant MGC shows a "Subsequent Recording" as being "Assigned to Aames Capital Corporation" and "Assigned to Banker Trust of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Home Loans SV-79,

1800 Tapo Canyon Road Simi Valley, CA 93065, on September 6, 2001, Instrument No 1520053, here in"

This assignment is also indicative of fraud in the factum at origination as the party identified as the "lender" on Plaintiffs' origination mortgage documents was not a true lender but a "straw lender" standing in for parties intentionally not disclosed to them, but known to the "straw lender" i.e. parties to the Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2 Trust. This intentional omission of material fact prevented Plaintiffs from any opportunity to understand the risks and obligations of the mortgage contract. This constitutes fraud in the factum and voids the contract.

## 2) <u>Forged, Robosigned and Falsified Assignments of Deed of Trust</u>

Even if the mortgage contract were enforceable, which it is not, the Beal Defendants have used forged, robosigned and falsified assignments of deed of trust, allonges and affidavits to convey what claim is beneficial interest in the mortgage (the note and the deed of trust) to Defendant LNV.

The letter from Texas Attorney General Greg Abbott to Beal Defendant MGC unequivocally states that court orders and foreclosure sales are invalid if they are obtained through the use of robosigned and falsified assignments of deed of trust, allonges and affidavits; and that this also violates a host of Texas laws, including penal code. ([<u>Document 58-1</u>] pages 14 & 15)

This letter proves that the Beal Defendants were warned but intentionally chose to violate the laws of Texas, and similar laws in other States, to continue to perfect foreclosures with methods identified as illegal by the Texas Attorney General. <u>This evidence makes intent to defraud by the Beal Defendants conclusive.</u>

What has been presented herein and in Plaintiffs' other pleadings are only a fraction of the evidence we have to show that Defendant LNV is not the holder of the mortgage.

A recent Texas Supreme Court decision in Fourteenth Court of Appeals, *case No: 14-13-00932-CV; Yarbourgh v. Household Finance Corporation III on appeal from the County Court at Law No. 2 Galveston County Texas* states:

> "In an issue of first impression, we must decide whether an affirmative defense of forgery, supported by an affidavit alleging that the defendants' signatures on a deed of trust were forged, raises a genuine issue of title intertwined with the issue of possession sufficient to deprive a justice court of jurisdiction in a forcible detainer action. We hold that it does. The courts below lacked jurisdiction in this forcible detainer action because determining the right to possession necessarily required the resolution of a title dispute." (See **Exhibit H** of Document 58-2 in federal case 3:14-cv-03322-M-BN pages 2 & 12 – for the full opinion.)

### 3) **Beal Defendant Codilis & Stawiarski Committed Fraud Upon the Court**

Fraud on the court occurs when the judicial machinery itself has been tainted, such as when an attorney, who is an officer of the court, is involved in the perpetration of a fraud or makes material misrepresentations to the court. Fraud upon the court makes void the orders and judgments of that court.

In *Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)*, the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

Attorney Jeff Hardaway employed by Defendant C&S knew the documents he submitted to the court in behalf of his clients Defendants LNV and DMI were forged and falsified. Defendant C&S and DMI are LPS service providers. LPS is the acronym for Lender Processing Services, a corporate

vehicle used in the commission of Lorraine Brown's crimes. See [Document 34] in federal case: 3:14-cv-03322-M-BN; Plaintiffs' Motion for Judicial Notice of Information and Criminal Indictment and Plea Agreement of Lorraine Brown i.e. *United States of America v. Lorraine Brown, Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.)*).

On November 20, 2012, Lorraine Brown, a former executive of Lender Processing Services, Inc. (LPS) and DocX LLC, a LPS company, pleaded guilty to conspiracy to commit mail and wire fraud.

At the direction of Brown and other co-conspirators, employees of LPS, including those who were not authorized to sign documents and temporary workers hired to sign documents without quality control and without legally required knowledge specific to the Mortgages for which the documents were prepared, began forging and falsifying signatures of the mortgage-related documents that they had been hired to prepare and file with property recorders' offices.

After these documents were falsely signed and falsely notarized, Brown and her coconspirators authorized LPS employees to file and record with property recorders' offices across the country.

Many of LPS's temporary employees signed thousands of mortgage assignments each day, often signing the names of other persons on the Mortgage Assignments that would then be witnessed and notarized. These employees often signed as officers of banks and mortgage companies. The employees signed without reading the documents or in any way ascertaining the truth of the matter presented therein, including the grantor, grantee, and the date of the purported transfer.

Many of the documents, including mortgage assignments and lost note affidavits, were later relied upon in court proceedings including foreclosure proceedings and federal bankruptcy actions.

Brown admitted that she and others took various steps to conceal their actions from law enforcement authorities and others. These steps to conceal included testing new employees to ensure they could mimic [forge] signatures.

Plaintiffs' contend that the mortgage assignments, note allonges, and lost note affidavits used by Defendant LNV in the 134th Dallas District Court to claim standing to foreclose on their property were the products of the crimes of Lorraine Brown and her co-conspirators.

Defendants C&S use the LPS Desktop computer software system (database) to produce these mortgage assignments, note allonges, and lost note affidavits with forged signatures and false claims pertaining to the grantor and grantee; as does Defendants LNV and MGC. This fact was testified to by Bret Maloney who claims to be the Sr. Vice President of Default Management at MGC.

Defendant MGC submitted a Bret Maloney affidavit to the Dallas 116th court in earlier litigation between Defendant MGC and Plaintiffs.

Bret Maloney was deposed in Chicago Illinois on July 11, 2014. On page 17, line 17 through page 18, line 21 of the Bret Maloney deposition, (included herein as Plaintiffs' Exhibit E-1), he admits that Defendant DMI uses the software written by LPS called the "LPS Desktop". Beginning on page 20 with line 24 starting with the question, "What does the LPS Platform do on a general basis, what kind of functions does it serve?" through to page 23 line 16, Bret Maloney explains how the LPS Desktop is used for all the functions needed to service a loan, and that another system contains electronically scanned images of the documents specific to individual mortgages, which the users of the LPS Platform would be able to access to retrieve and print within seconds. (See Plaintiffs' Exhibit E-1 –Pages 1 through 24 of this Bret Maloney deposition.). The full deposition

can be found in PACER under: *Re: Christpher T. Swift and Marcia A. Swift, Debtors; Case 12-35690 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.*

Additionally from a recent motion to compel filed in the Swift case, is a list of items provided by the attorneys representing LNV in the Swift case. Beginning at the bottom of page 6 and continuing onto page 7 of this motion are several items generated from the LPS Desktop. The attorneys representing LNV in the Swift case, Freedman Anelmo Lindberg LLC, are also on the list of LPS service providers. (Plaintiffs attached a list of LPS service providers in [Document 33] pages 27 through 32.))

The United States acknowledged the existence of co-conspirators in the crimes of Lorraine Brown. The Beal Defendants and their LPS attorneys are such co-conspirators.

The Beal Defendants submitted to the 134th Dallas District court, attached as their exhibit A to LNV's motion for "*in rem*" summary judgment an affidavit of Edward J. Bagdon; who is an employee of Defendant DMI; and who is also a robo-signer. (See Plaintiffs' Exhibit F - Affidavit of Edward J. Bagdon and information sheet on Edward J. Bagdon.)

Plaintiffs and the other Beal victims have collected more than 115 mortgage documents signed by Edward J. Bagdon misrepresenting himself as executive officer of numerous financial institutions when he was in fact not employed by these institutions, but was and is employed by Defendant DMI. A list of some of these institutions includes, but is not limited to:

1. MERS
2. United Western Bank
3. Matrix Capital Bank
4. Matrix Financial Services Corp
5. Centris Federal Credit Union
6. Mutual of Omaha
7. Allegacy Federal Credit Union
8. Carolina First Bank
9. Amsouth Bank
10. Peoples Bank and Trust

This is consistent with the manner and means in which Lorraine Brown committed her crimes as identified in *United States of America v. Lorraine Brown.*

A criminal conviction is conclusive proof and operates as an estoppel on defendants (the Beal Defendants in the present case) as to the facts supporting the conviction in a subsequent civil action. *Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, 291 U.S. 293, 298-99, 78 L. 1 Ed. 804, 54 S. Ct. 396 (1934)*; *Brown v. United States, 207 Ct. Cl. 768, 524 F.2d 693, 705 (1975)*. "Yet they need not all be indicted or named. Indeed, an indictment charging that the named defendant and other persons unknown . . . did . . . conspire" was approved in *State v. Hightower, 221 S.C. 91, 94, 69, S.E.2d 363, 366 (1952)[.]*" *McAninch & Fairey 481*. In Hightower, there was "ample evidence that the conspirators, though unknown, did exist." *McAninch & Fairey 481*. Criminal liability is sometimes referenced as the Pinkerton doctrine, which is based on the seminal United States Supreme Court case of *United States v. Pinkerton, 328 U.S. 640 (1946)*. Federal judges frequently describe the doctrine in jury instructions as "the hand of one is the hand of all to the conspiracy."

Plaintiffs will be adding Lorraine Brown as a defendant in their amended complaint. It is entirely possible that by the time this case goes to trial the United States and/or the State of Texas will have brought a criminal indictment against some or all of the attorneys employed by the Beal Defendants, D. Andrew Beal, his key employees and other parties involved in the LPS / Beal Racketeering Enterprise.

**4) Specific issues with Mortgage Servicing that render the Mortgage Unenforceable**

In the Joint Status report filed on October 21, 2014 [Document 32, page 8] counsel for the Beal Defendants also state:

> "MGC is the master servicer of the Loan on behalf of LNV, and DMI has been the authorized sub-servicer of the Loan since April 2010."

Defendant MGC is a debt collector. The Texas Department of Savings and Mortgage Lending say that Defendant MGC is not licensed as a mortgage servicer in Texas. Defendant DMI is licensed as a mortgage servicer in Texas; however mortgage sub-servicing is not a valid mortgage servicing activity according to Texas Department of Savings and Mortgage Lending.

Defendant LNV is not a bank, nor is it a lender. Defendant LNV is merely a shell corporation which serves as a vehicle for business transactions without itself having any significant assets or operations. (See Plaintiffs' Exhibit Z – Nevada Secretary of State listing for LNV.)

**In June 2008** Plaintiffs were approved for a refinance at a much better interest rate, but Beal Defendant MGC failed to provide a payoff balance. In Plaintiffs' prior 40 months of litigation with Beal Defendant MGC, MGC was unable to produce a payoff balance or a payment history. Eventually the offer expired and Plaintiffs have been stuck with MGC's shenanigans ever since. (See **Exhibit I** of [Document 58-2] in federal case 3:14-cv-03322-M-BN pages 14 - 20 – Borrower Release documents, other documents specific to Plaintiffs' attempts to refinance in 2008 and various communications with MGC during this time.)

Page one of Exhibit I is an expedited request for Plaintiffs' pay off balance dated June 16, 2008. Notice someone named L. Campbell wrote next to the Received stamp: "Not in system."

Page two of Exhibit I is another request for pay off sent to MGC by Beneficial the lender who Plaintiffs had the refinance offer with dated July 3, 2008. Again an MGC employee wrote that Plaintiffs' loan was not in their system.

Pages three and four of Exhibit I is a communication from MGC to Beneficial stated we had an incomplete authorization form.

Pages 5 through 7 of Exhibit I are another request, using MGC's forms for the pay-off dated July 14, 2008. Plaintiffs never got the pay off balance.

Also attached as **Exhibit J** of [Document 58-2] in federal case 3:14-cv-03322-M-BN pages 22 - 26 are communications with attorneys representing MGC in Plaintiffs' prior litigation. Page 1 of this exhibit is a letter from Defendant MGC's attorney, Scott Hayes, to Plaintiffs' attorney at the time, Patricia McCarthy, evidencing the fact that he abated the case for sixty days; this was an intentional delay tactic to prevent discovery and increase Plaintiffs' cost of litigation.

Page 2 of Exhibit J referenced above is a copy of a letter dated June 17, 2013 written by Glenn Joyner a reverse mortgage consultant who attempted to get a pay-off so Plaintiffs could refinance to get away from MGC and their horrific bad faith and servicing practices. Two weeks after the Plaintiffs' mediation with Defendant MGC in the earlier litigation between these two parties in the present case, Mr. Joyner had phoned Defendant MGC about the pay-off balance but was told he needed to contact Defendant DMI and was given a new loan number. Mr. Joyner, as a seasoned mortgage loan officer, thought this was extremely odd. He phoned DMI and his conversation with them sent up red flags about the legitimacy of these companies and he provided tohe letter for Plaintiffs to use in court in case#: DC-11-07087 in the 116th Dallas District Court. The letter states: "Upon contacting DMI, I was informed that they indeed were the new servicer for the Breitlings' loan, but that MGC did in fact still own the loan." This letter evidences the fact the Defendant MGC deceived Mr. Joyner, the Plaintiffs and others about the owner of the loan in 2013. Defendants MGC also failed to notify Plaintiffs there had been a change in the servicer of their loan from MGC to DMI as required under the federal Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2601 et seq.)

Defendant MGC's attorney, Scott Hayes, never once mentioned in all the months of litigation from February 2010 until July 2013 that Defendant DMI had become, at any time, the servicer for Plaintiffs mortgage. Defendant MGC stopped direct communications with Plaintiffs beginning in February 2010. Neither they nor Defendant DMI sent Plaintiffs mortgage statements, payment demands, or made any attempts to phone Plaintiffs about payments.

Pages 3 through 6 of Exhibit J referenced herein are Plaintiffs' first complaint letter to Attorney General Greg Abbott about Beal Defendant MGC dated in May 2009. They wrote two additional complaint letters in 2011 and 2013, but nothing was ever done to investigate their complaints or the complaints of numerous other Beal victims. Plaintiffs have copies of numerous letters sent to Attorney General Greg Abbott about Beal Defendant MGC obtained through the Freedom of Information Act; they all state the same thing: MGC put them into a default by not providing a place to make payments; and then prevented them from curing the default through several tactics including tacking on exorbitant fees, and then using that MGC created default to initiate foreclosure.

Plaintiffs have considerable additional evidence of foul play in the servicing of their loan by Beal Defendant MGC. MGC was given ample opportunity to cure the many instances where they violated to Texas Constitution Article XVI, Section 50 and Texas Rules of Civil Proceedure 736(1) but Beal Defendant MGC consistently fail to do so and still continues down a path of what can only be concluded are intentional violations of Texas law.

Texas Constitution Article XVI, Section 50(i) states:

> "This subsection shall not affect or impair any right of the borrower to recover damages from the lender or assignee under applicable law for wrongful foreclosure."

**IRREPARABLE HARM IF INJUNCTIVE RELIEF NOT GRANTED**

A wrongful eviction and the added stress of fighting yet another court battle in yet another court with the Beal Defendants will cause Plaintiffs' family irreparable harm; it may well cause the death of my husband. (See **Exhibit K** of Document 58-2 in federal case 3:14-cv-03322-M-BN pages 28 - 30 – Letter from Samuel Breitling's doctor and **Exhibit L** pages 32 - 54 – Medical records for JoAnn and Matthew Breitling.)

Beal Defendants willfully violated Texas Penal Code 32.21. Their violation is a state jail felony because the forged writings they have presented to this Honorable Court and to the federal District Court, and to the JP Court with intent to defraud or harm another, specifically the Plaintiffs, are deed of trusts, mortgage and security instruments. Furthermore the Beal Defendants' offenses were committed against an elderly individual as defined by Texas Penal Code § 22.04 and are thereby increased to the next higher category of offense.

Texas Penal Code § 32.21 states:
"(a)  For purposes of this section:
   (1) 'Forge' means:
      (A)  to alter, make, complete, execute, or authenticate any writing so that it purports:
         (i)  to be the act of another who did not authorize that act;
         (ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case;
(b)  A person commits an offense if he forges a writing with intent to defraud or harm another.
(c)  Except as provided by Subsections (d), (e), and (e-1), an offense under this section is a Class A misdemeanor.
(d)  An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.
(e)  An offense under this section is a felony of the third degree if the writing is or purports to be:
   (1)  part of an issue of money, securities, postage or revenue stamps;
   (2)  a government record listed in Section 37.01(2)(C); or

(3)   other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person.

(e-1) <u>An offense under this section is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual as defined by Section 22.04</u>."

Texas Penal Code § 22.04(c) states:

"A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

(1)   serious bodily injury;

(2)   serious mental deficiency, impairment, or injury; or

(3)   bodily injury."

Texas Penal Code § 22.04(c) states:

"In this section:
(1)   "Child" means a person 14 years of age or younger.
(2)   "<u>Elderly individual</u>" <u>means a person 65 years of age or older.</u>
(3)   "<u>Disabled individual</u>" means a person older than <u>14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself.</u>
(4)   "<u>Exploitation</u>" <u>means the illegal or improper use of an individual or of the resources of the individual for monetary or personal benefit, profit, or gai</u>n.

Plaintiff JoAnn Breiting is elderly as defined by <u>Texas Penal Code § 22.04(c)</u>. She is 65 years of age. She is legally disabled; however she is able to care for herself, her husband and her son.

Plaintiff Samuel Breiting is age 69 and has been legally disabled for 13 years; however his disability doesn't meet the criteria defined by <u>Texas Penal Code § 22.04(c)(3)</u>.

The Plaintiffs' son Matthew is 31 years of age and has Down syndrome, a mental defect, and achalasia (a rare disease of the autoimmune system). He has been disabled since birth. Matthew Breitling by reason of physical or mental disease, defect, or injury is substantially unable to protect

himself from harm or to provide food, shelter, or medical care for himself. Matthew is disabled within the meaning of Texas Penal Code § 22.04(c)(3). He requires a daily regime of medications, special dietary needs, and an exceptionally safe and clean environment as he is easily susceptible to pneumonia and other respiratory infections; and is much more likely to succumb to such infections than the average person. The Breitlings' home accommodates the special needs inherent with Matthew Breitlings' disabilities. Removing him and his parents, who are his caregivers, from this safe environment would cause him irreparable physical harm. Removable through such a traumatic event as a forcible eviction would cause him to suffer irreparable emotional harm and mental anguish.

    Texas Penal Code § 22.04(e) states:

> "An offense under Subsection (a)(1) or (2) or (a-1)(1) or (2) is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly, the offense is a felony of the second degree."

    The Beal Defendants have intentionally exploited the Plaintiffs for monetary or personal benefit, profit, or gain; the Beal Defendants appear to take pleasure in causing the Plaintiffs as much mental distress; physical harm (through the medical injury they incur as elderly individuals with serious health conditions that are adversely effected by such mental distress); and mental anguish as possible.

    The Beal Defendants' conduct has been committed intentionally and knowingly in retaliation against the Plaintiffs for reporting the criminal activities of the Beal Defendants to government authorities, the media and the public. The Beal Defendants' conduct has been engaged in with reckless disregard for the physical injury such conduct inflicts on the Plaintiffs and their disabled son, Matthew Breitling, who is dependent on the senior Breitlings for his care and wellbeing.

A significant number of the Beal Victims are elderly. David Gates in California and Nick Riggione in Connecticut are both in their mid-seventies. In *BEAL BANK SSB v. SARICH*, *No. 79875-3., September 13, 2007 - WA Supreme Court* (See [Document 50] page 15 of Case 3:14-cv-03322-M-BN) it was judicially determined that Beal forged the signature of 81-year-old Kay Sarich to make it appear she had signed a note when she had not. Steve Sarich was 85 years old. (See highlighted text [Document 50] page 26).

## BALANCE OF THE EQUITIES

Plaintiffs invested at least $510,000 of actual monetary investment into their home over the thirty three years they have owned it; while D. Andrew Beal is reported to purchase "distressed debt" for $0.04 on the dollar. This means if Beal paid anything, he paid $4,800 or less for what he claims is Plaintiffs' original note; and which Plaintiffs claim is merely a forged photocopy.

On October 23, 2014 Beal showed what they claim to be the Plaintiffs' original note to Brett Shipp; however they have refused to allow Plaintiffs to view this mortgage document. (See Plaintiffs' Exhibit D herein, an email communication dated December 12, 2014 between Beal's Jim Chambless and WFAA reporter Brett Shipp specific to the Plaintiffs' note.)

If Your Honor or the Plaintiff or anyone else were to walk into a bank with a photocopy of a check made out to someone else, and with a photocopied signature on the back endorsing the check to any of us, the bank would not honor it. If that photocopied check were color enhanced using a software application like Photoshop to make it appear more like an "original" check and an original endorsement on the back then a bank teller might be fooled and not recognize it as a forgery and might make payment on the check. Sooner or later, however, it will be discovered that the instrument was forged. The injured party in this scenario would be the owner of the checking

account whose funds were reduced, illegally, by the party that presented the forged check to the bank

for payment. Likewise, the injured party in a fraudulent foreclosure executed with a forged note and

forged security instruments is the homeowner with a significant investment in their property.

A forged mortgage note, like a forged check, cannot transfer beneficial interest in a debt. It

follows that a party holding a forged mortgage note is not legally entitled to execute the terms of the

deed of trust that secured the debt in the case of non-payment.

**BEAL DEFENDANTS TARGET THE ELDERLY AND THOSE WITH
CONSIDERABLE EQUITY IN THEIR PROPERTIES**

D. Andrew Beal looks for the "kernels" (i.e. over colateralized loans with significant

homeowner equity) within the pools of loans he acquires and ear-marks them for immediate

foreclosure. (See [Document 50] highlighted text within pages 56 through 150 of Case 3:14-cv-

03322-M-BN the Breitlings' Motion for Judicial Notice of the Southgate and Bemont cases. These

cases show D. Andrew Beal and his Beal Defendants modus operandi specific to how they select

properties they target for fraudulent foreclosures; how they create "shell" corporations to funnel

profits through for tax evasion schemes; and how they pay witnesses well to say what Beal wants

them to say.) Whether or not these targeted mortgages are valid or defaulted is of no concern to Beal.

Beal Defendant MGC will create a default where none existed because Beal wants the profits from

selling the property; Beal never intended to service loans. This is why the Beal Defendants never

produce valid or accurate payment histories, pay-off balances, or other mortgage related documents

requested by Plaintiffs and other Beal Victims and their attorneys. Even when compelled by court

order to produce original mortgage documents these Beal Defendants fail to do so.

Beal Defendant LNV and the LPS attorneys representing LNV in the cases of Beal Victim

Rhonda Hardwick have repeatedly failed to produce court ordered documents. See: (*LNV as*

*assignee of MERS Inc. as nominee for First Capital Finaicial Services Corp. DBA Full Compass Lending v. Hardwick, Case No. 51C01-1204-MF-00098; State of Indiana County of Martin in the Martin Circuit Court).*

Defendant LNV and the attorneys representing them in the Hardwick case were ordered by the Honorable Judge Lynne Ellis to present the original note to the court by July 8, 2014. This was originally the trial date, but because LNV consistently failed to produce the note and other discovery documents the judge vacated the trial and instead set this date as the deadline for LNV to produce the documents. LNV has <u>still</u> not produced any of these documents to the Martin Circuit Court.

Beal Victims, Christopher and Marcia Swift, like the Plaintiffs, had an offer to refinance their home for significantly better terms in 2008, and their closing was scheduled in August 2008. Defendant MGC failed to cooperate and prevented this refinance offer from being consummated. This was even after the office of Attorney General of Illinois, Lisa Madigan, directed them to cure the deal.

The Swifts attorney recently filed yet another motion to compel. (See Plaintiffs' <u>Exhibit E-2</u> - [Document 228] in *Re: Christpher T. Swift and Marcia A. Swift, Debtors; Case 12-35690 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division*). The Beal Defendants routinely fail to comply with discovery even when instructed to so through court order. Such tactics used by the Beal Defendants and their attorneys are intended to wrongfully increase litigation costs for Beal Victims (their legal advisories). The Swifts have paid at least $50,000 in attorney fees so far.

On July 28, 2014 Plaintiffs fired their counsel the Lane Law Firm that had been representing them in Defendant LNV's illegal foreclosure action against them in the 134th Dallas District court

because they were preparing cookie cutter pleadings that did not correspond to Plaintiffs' legal claims nor the circumstances specific to their mortgage nor to Defendant LNV's foreclosure complaint against them. However in the lane Law Firm's motion to withdraw filed on July 29, 2014 the Lane Law firm claimed that the Plaintiffs (defendants in that case) were "unwilling to cooperate with counsel by insisting on courses of action, contrary to the best judgment or advice of the firm."

On July 30, 2014 Plaintiffs filed their first pro-per pleading with the court in the form of a letter in which they explained how Greg Tidmore had misled them into believing he was their attorney; when he was not an attorney but a salesman for the firm who was also "real estate investor" and who profited from short sales. Tidmore had misrepresented to the Plaintiffs the Lane Law Firm's experience by claiming they had won cases against LNV; that they "got the bigger picture"; that the senior partner in the firm, Chip Lane, had dinner with Neil Garfield in his home; and more. Tidmore also had misrepresented the firm's strategy in the Plaintiffs' case. (See Plaintiffs' Exhibit G – The first 8 pages of their letter to Judge Dale Tillery, filed in the 134th District Court on July 30, 2014).

On August 5, 2014 (just six days after the Plaintiffs letter in Exhibit F was filed in Defendant Tillerys' court) U.S. District Judge David Hittner of the Southern District of Texas sanctioned the Lane Law Firm and three of the firms' attorneys, including Anh Thu Dinh, the attorney who told Plaintiffs that she would not countersue in their behalf and that she would stop the foreclosure and nothing more. Plaintiffs were upset with attorney Anh Thu Dinh because in the response she prepared and filed to LNV's motion for summary judgment she asserted very generic claims under the Texas Constitution, Art. XVI, § 50(a)(6) which Plaintiffs knew would not accomplish positive results for them. Plaintiffs had very specific claims and evidence to back up their claims which they had given to Tidmore. Plaintiffs were upset to learn on July 28, 2014 that Ms. Dinh did not intend to state the proper claims or use the evidence they provided.

Judge Hittner wrote in his Order for sanctions, "In these five cases, plaintiffs had alleged exactly the same causes of action against defendants for violations of the Texas Constitution, breach of contract or to enforce contract, and quiet title, all based on alleged violations of Article 16, Section 50(a)(6) of the Texas Constitution." (See Plaintiffs' Exhibit H - Law Article by Brenda Saino, Texas Attorney, titled: "Federal Judge Sanctions Firm, Three Lawyers" published on August 6, 2014.)

These were exactly the causes of action attorney Anh Thu Dinh had used in the pleadings she prepared and filed on July 28, 2014 which Plaintiffs had objected to; and for which cause they fired the Lane Law firm. Had Defendant Tillery actually read the Plaintiffs' letter (Exhibit G) he might have granted their motion for continuance and Plaintiffs' home would never have been illegally sold to Beal Defendant LNV on September 2, 2014.

Plaintiffs have been told by numerous attorneys in Texas familiar with how the Beal Defendants operate that it would take at least $150,000 to litigate against Beal and his Beal entities at this point. It is apparent to all who have been following this case that D. Andrew Beal is determined to make an example of Plaintiffs and it does not matter to him if he pays millions of dollars more than the value of Plaintiffs' home in litigation costs; for Beal this has become a personal vendetta against Plaintiffs.

## PUBLIC INTEREST

Public interest is served whenever individuals like D. Andrew Beal and his Beal Defendants are held accountable for violating the law. Americans can have no confidence in our judiciary when wealthy billionaires get away with blatant violations of law and are allowed to steal homes from senior citizens and hard working Americans through the use of forgery, deception, intimidation, harassment, bribery, and other illegal tactics.

**CONCLUSION**

The Beal Defendants intentionally did not file the required <u>verified application</u> under <u>Rule 736.1(b)</u>. LNV's original foreclosure complaint states that they "seek non-judicial foreclosure pursuant to the terms of the Deed of Trust, Tex. Const. art XVI § 50(a)(6)(D) and Tex. R. Civ. P. 735.1 or 735.2 and Tex. Prop. Code § 501.002…"

Plaintiffs had a Texas home equity loan. The terms of the loan require a judicial foreclosure; and <u>Tex. Const. art XVI § 50(a)(6)(D)</u> requires a party seeking to foreclose a home equity loan via an expedited order to do so via <u>Rule 736.</u>

Under <u>article XVI, section 50(a)(6)(D)</u> of the Texas Constitution, the homestead of a family or of a single adult person is protected from forced sale for the payment of all debts except, for instance, when an extension of credit is secured by a lien that may be foreclosed upon **only by a court order**. see <u>*In re Dominguez*</u>*, 416 S.W.3d at 705*. Under <u>Texas Rule of Civil Procedure 735.1</u>, a party seeking to foreclose a lien for, inter alia, a **home equity loan**, reverse mortgage, or home equity line of credit may file an application for an expedited order allowing the foreclosure of a lien under <u>Rule 736</u>. See <u>TEX. R. CIV. P. 735.1</u>.

<u>Rule 736</u>, as referenced in <u>Rule 735</u>, sets forth the procedures and requirements for seeking an expedited foreclosure. See <u>TEX. R. CIV. P. 735, 736</u>. A party may seek a court order permitting the foreclosure of a lien <u>by filing a verified application</u> in the district court in any county where all or any part of the real property encumbered by the lien is located or in a probate court with jurisdiction over proceedings involving the property. See id. <u>R. 736.1(a)</u>.

The Beal Defendants knew how to file an application as required under <u>Rule 736</u>, as referenced in <u>Rule 735</u> but failed to do, with intent to deceive the court so as to deprive Plaintiffs of their

property by depriving them of their constitutional rights to due process and equal protection of the law. They also, in bad faith, violated the terms of the mortgage contract. It can only be concluded that the Beal Defendants willfully violated Texas Rule 736.1(b).

The Beal Defendants' failure to correctly disclose the name and address of the mortgage servicer is a willful violation of Texas Property Code 51.002(b).  Plaintiffs received notice of sale less than 21 days before the sale of their property in violation of Texas Property Code Sec. 51.002(b)(3). The Beal Defendants' failure to disclose the name and address of the substitute trustee on the notice required by Section 51.002(b) violated Texas Property Code Sec. 51.0075(e).

THEREFORE as a matter of law this court must vacate the void order granting LNV's motion for summary judgment of their illegal "*in rem*" foreclosure action, and set aside the sale of Plaintiffs' property that resulted from the void non-judicial foreclosure order.

The Beal Defendants and their attorneys and agents willfully violated the automatic stay provided by Texas Rules of Civil Procedure 736.11 by selling Plaintiffs' property to Defendant LNV on September 2, 2104.

THEREFORE as a matter of law this court must set aside the sale of Plaintiffs property to Defendant LNV.

The Beal Defendants willfully moved forward with an action for eviction in the J.P. Court when they knew that Plaintiffs filed a complaint against them in this Honorable court raising issues of title; and that a county court does not have jurisdiction to try questions of title.

The Beal Defendants willfully filed a motion *in limine* and intentionally prevented Plaintiffs from receiving a copy of it before or during the eviction hearing with intent to once again deprive Plaintiffs of their constitutionally guaranteed rights to due process and equal protection of the law.

THEREFORE as a matter of law this court must set aside the eviction order obtained by the Beal Defendants through intentional deceit and foul play.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs pray for the following relief:

Plaintiffs respectfully ask Honorable Judge Staci Williams to order temporary injunctive relief until a hearing can be held on their motion for preliminary injunctive relief to prevent Defendant LNV from evicting them before the present case can be determined on its merits.

Alternatively Plaintiffs respectfully request this Honorable Court to vacate the void order illegally obtained by the Beal Defendants granting Defendant LNV summary judgment on its fraudulently styled "*in rem*" motion and complaint for non-judicial foreclosure; and to set aside the invalid sale of Plaintiffs' property to Defendant LNV.

Respectfully Submitted,

_____              _____
JoAnn S Breitling                                    Samuel G. Breitling

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was

served upon all counsel of record and pro-se parties via the Court's CM/ECF system, regular

mail, and/or certified mail, return receipt requested n this 16th day of October 2014.


JoAnn S Breitling             Samuel G. Breitling

Cause No. DC-14-09604

| | | |
|---|---|---|
| | § | DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING | § | IN THE 101 DISTRICT COURT |
| JOANN BREITLING, | § | |
|     Plaintiffs, | § | |
| | § | ORDER GRANTING PLAINTIFF |
| v. | § | RELIEF BY VACATING VOID |
| | § | COURT ORDER AND TO SET |
| LNV CORPORATION et al, | § | ASIDE ILLEGAL SALE |
| CODILIS & STAWIARSKI P.C. et al | § | |
| DOVENMUEHLHE MORTGAGE INC. et al | § | |
| MGC MORTGAGE INC., et al | § | |
| DALE B. TILLERY | § | |
|     Defendants. | § | |

## ORDER GRANTING PLAINTIFF RELIEF BY VACATING VOID COURT ORDER AND TO SET ASIDE ILLEGAL SALE OF PLAINTIFFS' PROPERTY

ON THIS DAY, came on for consideration Plaintiffs Samuel G. Breitling and JoAnn Breitling's ("Plaintiffs") Motion for Relief by Vacating Order granting Defendant LNV's Motion for "*in rem*" non-judicial foreclosure granted by the 134th Dallas District Court on August 4, 2014 as void and to set aside the sale of Plaintiff's property to Defendant LNV.

Upon consideration, the Court finds that the Motion should be **GRANTED**. It is therefore

       **ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED** as to Plaintiffs' request for relief.

Signed this the _____ day of _____ 2015.

_____
Honorable Judge Staci Williams

Cause No. DC-14-09604

|                                    |   |                           |
|------------------------------------|---|---------------------------|
|                                    | § | DALLAS COUNTY, TEXAS      |
| SAMUEL G. BREITLING                | § | IN THE 101 DISTRICT COURT |
| JOANN BREITLING,                   | § |                           |
|    Plaintiffs,      | § |                           |
|                                    | § | ORDER GRANTING            |
| v.                                 | § | MOTION FOR INJUNCTIVE     |
|                                    | § | RELIEF                    |
| LNV CORPORATION et al,             | § |                           |
| CODILIS & STAWIARSKI P.C. et al    | § |                           |
| DOVENMUEHLE MORTGAGE INC. et al    | § |                           |
| MGC MORTGAGE INC., et al           | § |                           |
| DALE B. TILLERY                    | § |                           |
|    Defendants.      | § |                           |

## ORDER GRANTING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF TO PREVENT DEFENDANT LNV FROM EVICTING PLAINTIFFS' UNTIL THE ISSUE OF TITLE IS AJUDICATED

ON THIS DAY, came on for consideration Plaintiffs Samuel G. Breitling and JoAnn Breitling's ("Plaintiffs") Motion for Injunctive Relief to prevent Defendant LNV's from evicting Plaintiffs from their property until issues of title are adjudicated by this Honorable court.

Upon consideration, the Court finds that the Motion should be **GRANTED**.  It is therefore

      **ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED** as to Plaintiffs' request for relief.

Signed this the _____ day of _____ 2015.

_____
Honorable Judge Staci Williams

# Plaintiffs' <u>Exhibit A</u>

**Beal's threatening letters sent to several Beal Victims demanding they remove letters they posted online about why they feel he is a bully based on their personal experiences with his corporations; which are protected speech under the First Amendment to the United States Constitution.**

Plaintiffs' Exhibit A page 1 of 6

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001
(214) 451-2154

**J. Pat Heptig**

pheptig@heptiglaw.com

DECEMBER 10, 2014

*Via Federal Express: 772168292107*

H. Anthony Hervol
Law Office of H. Anthony Hervol
4414 Centerview Dr, Suite 200
San Antonio, TX 78228

Re:    False and Defamatory Statements by Stuart Hamm in Scribd.com posting

Dear Mr. Hervol:

My firm represents Beal Bank. I understand that you represent Stuart Hamm in connection with his real estate foreclosure dispute with LNV corporation, one of Beal Bank's affiliated companies. It has come to our attention that Mr. Hamm has posted comments on the Scribd.com website (www.scribd.com) that contain numerous scurrilous and malicious FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").[1]

In particular, Mr. Hamm's posting contains several materially false, libelous, and defamatory statements directed against the Beal Entities. These statements include, but are not limited to, statements that the Beal Entities:

- commit mortgage fraud and money laundering, among other things
- commit "full scale fraud upon thousands of homeowners"
- commit "fraudulent foreclosure"
- "steal[] homes in record numbers" and commit "unethical business practices"
- "lie" about its activities

Each of these statements is false and defamatory. It is also very clear that all of these statements were made by Mr. Hamm with actual malice towards my clients, and made with the specific intent to harm them. The statements are outright falsehoods or are made with reckless disregard as to whether they are false or not. Quite simply, the false accusations are made out of spite by Mr. Hamm to attack my clients in the wake of his loss in a court of law. Moreover, Mr. Hamm's attempt to couch such defamation as his "personal opinion" does not somehow

---

[1] *See* https://www.scribd.com/doc/247945508/Why-I-Think-Andy-Beal-is-a-Bully-by-Stuart-Hamm

Plaintiffs' Exhibit A page 1

**Heptig Law Group, Ltd.**

December 10, 2014
Page 2

immunize the false accusations. The accusations are false statements of fact, not opinion.  As a result, Mr. Hamm's defamatory statements are not protected under the First Amendment. In all events, Mr. Hamm is now personally liable to the Beal Entities for under common law and state laws for libel and defamation for each and every defamatory statement, regardless of whether he couches it as "opinion" or not.

**We demand that Mr. Hamm immediately:**

1. **TAKEDOWN** the false and defamatory comments on the <u>**www.scribd.com**</u> website; and

2. **CEASE and DESIST FROM** any distribution or publication of any and all false and defamatory statements about the Beal Entities.

My clients take this matter very seriously and demand immediate corrective action by Mr. Hamm to address this situation.  If he fails to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

In case you no longer represent Mr. Hamm, please let me know the name of his new counsel so that I can direct this matter to their attention. I appreciate your cooperation in this regard.  Please contact me if you have any questions regarding this matter. We look forward to your prompt response.

Very truly yours,

J. Pat Heptig

Plaintiffs' Exhibit A page 2

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001


**J. Pat Heptig**

pheptig@heptiglaw.com


DECEMBER 9, 2014

_Via Federal Express: 772156542563_

Denise Subramanian
13865 SW Walker Rd.
Beaverton, OR  97005

    Re:  False and Defamatory Statements Regarding Beal Bank

Dear Ms. Subramanian:

   It has come to our attention that you have AGAIN posted content on Scribd.com that contains numerous scurrilous and malicious FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").

   In particular, you have posted various "letters" by yourself and others (_i.e._, Catherine Gebhardt, Stuart Hamm, and JoAnn Breitling) that contain materially false, libelous, and defamatory statements directed against the Beal Entities. These statements include, but are not limited to, statements that the Beal Entities:

- "fabricated mortgage related documents with forgeries, false signatures and false statements"
- "admit" to "fabricating forged and falsified mortgage records"
- "admittedly using forged and fabricated mortgage documents"
- "put you under surveillance and terrorized you" and put a tracking device on your car
- hired a private investigator to "illegally access DMV records" and break into your car and steal your computer
- "have [you] followed and killed"

   Each of these statements is false and defamatory. As an example, you assert that my clients admitted to fabricating forged and falsified mortgage documents. This is blatantly false. My client never committed such acts. Nor did my clients somehow "admit" to committing such acts.  The statement that you apparently rely upon as support for your false accusation is actually a statement made _by an opposing party_ in a brief from an old case involving my clients. Thus, it was not a statement or admission by my clients, as you purport it to be.  The accusation was false then and remains false today.

Plaintiffs' Exhibit A page 3

**Heptig Law Group, Ltd.**

December 9, 2014
Page 2

You have also posted several other "letters" by Catherine Gebhardt, Stuart Hamm, and JoAnn Breitling on the scribd.com website that also contain numerous false and defamatory statements, including without limitation that the Beal Entities:

- commit "fraud", "mortgage fraud", and "fraudulent foreclosures"
- "blatantly commit fraud upon the court"
- "fabricate false legal documents"
- "pay attorneys to commit fraud"
- "steal homes from people"
- "buy off attorneys, court officers and state officials"
- "fraudulently fabricated documents"
- commit "money laundering"
- conspire to commit same crimes that Lorraine Brown (at DocX) was convicted of committing
- commit a "massive scheme of enterprise fraud that includes money laundering"

It is very clear all of these statements in your "letter" and the other "letters" you post on the Scribd.com website were made or posted by you with actual malice towards my clients, and made with the specific intent to harm them. The statements are outright falsehoods or are made with reckless disregard as to whether they are false or not.

Quite simply, the false accusations are made out of spite by you to attack my clients. Your attempt to couch such defamation as a "personal opinion" does not somehow immunize the false accusations. The accusations are false statements of fact, not opinion. As a result, your defamatory statements are not protected under the First Amendment. (I suggest you contact a First Amendment lawyer to verify this on your own.) In all events, you are now personally liable to the Beal Entities for under common law and state laws for libel and defamation for each and every defamatory statement, regardless of whether you couch it as "opinion" or not.

**We demand that you immediately:**

- **TAKEDOWN the false and defamatory comments on the <u>www.scribd.com</u> website; and**

- **CEASE and DESIST FROM any distribution or publication of any and all false and defamatory statements about the Beal Entities.**

My clients take this matter very seriously and demand immediate corrective action by you to address this situation. If you fail to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

Plaintiffs' Exhibit A page 4

**Heptig Law Group, Ltd.**

December 9, 2014
Page 3

Very truly yours,

J. Pat Heptig

Plaintiffs' Exhibit A page 5

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001

**J. Pat Heptig**

pheptig@heptiglaw.com

DECEMBER 9, 2014

*Via Federal Express: 772156988670*

Catherine Gebhardt
3753 Thomas Cross Road
Sevierville, TN 37876

Re:    False and Defamatory Statements in Scribd.com posting

Dear Ms. Gebhardt:

My firm represents Beal Bank. It has come to our attention that you have posted comments on the Scribd.com website (www.scribd.com) that contain numerous scurrilous and malicious FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").[1]

In particular, your posting contains several materially false, libelous, and defamatory statements directed against the Beal Entities. These statements include, but are not limited to, statements that the Beal Entities:

- commit fraud
- "blatantly commit fraud upon the court"
- "fabricate false legal documents"
- "pay attorneys to commit fraud"
- "steal homes from people"
- "fraudulent foreclosures"
- "buy off attorneys, court officers and state officials"
- "fraudulently fabricated documents"
- commit "international money laundering"
- conspire to commit same crimes that Lorraine Brown (at DocX) was convicted of committing
- commit a "massive scheme of enterprise fraud that includes money laundering"

---

[1] See https://www.scribd.com/doc/247944514/Why-I-Think-Andy-Beal-is-a-Bully-by-Catherine-Gebhardt

Plaintiffs' Exhibit A page 6

Heptig Law Group, Ltd.

December 9, 2014
Page 2

Each of these statements is false and defamatory. It is also very clear that all of these statements were made by you with actual malice towards my clients, and made with the specific intent to harm them. The statements are outright falsehoods or are made with reckless disregard as to whether they are false or not. Quite simply, the false accusations are made out of spite by you to attack my clients. Moreover, your attempt to couch such defamation as your "personal opinion" does not somehow immunize the false accusations. Your accusations are false statements of fact, not opinion. As a result, your defamatory statements are not protected under the First Amendment. (I suggest you contact a First Amendment lawyer to verify this on your own.) In all events, you are now personally liable to the Beal Entities for under common law and state laws for libel and defamation for each and every defamatory statement, regardless of whether you couch it as "opinion" or not.

We demand that you immediately:

1. TAKEDOWN the false and defamatory comments on the www.scribd.com website; and

2. CEASE and DESIST FROM any distribution or publication of any and all false and defamatory statements about the Beal Entities.

My clients take this matter very seriously and demand immediate corrective action by you to address this situation. If you fail to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

Very truly yours,

J. Pat Heptig

**Heptig Law Group, Ltd.**
15050 E. Beltwood Pkwy
Addison, Texas 75001


**J. Pat Heptig**

pheptig@heptiglaw.com


NOVEMBER 14, 2014

*Via Federal Express:771862877634*

Denise Subramanian
13865 SW Walker Rd.
Beaverton, OR  97005

      Re:     False and Defamatory Statements Regarding Beal Bank

Dear Ms. Subramanian:

      My firm represents Beal Bank. It has come to our attention that you have posted content on Scribed.com that contains FALSE and DEFAMATORY statements against Beal Bank and its affiliates, officers, and employees (collectively, the "Beal Entities").

      In particular, the content displayed at http://www.scribd.com/doc/238783107/Greg-Abbott-Works-for-Beal includes a graphic containing false and defamatory statements against the Beal Entities. In particular, the graphic contains two pictures of Beal Bank's CEO, one of which is a caricature (labeled as "Bully Beal") shaking a fist with Mr. Beal's head superimposed on the character. The graphic also includes statements that "Does Greg Abbott Work For by Andy Beal?" and "Beal Beats up on Grandmas and Single Moms and Greg Abbott lets Him!" The graphic goes on to state that "Beal wants to make an Example of Disabled Grandma JoAnn Brietling who cares for her disabled son and retired police officer husband To Intimidate Other Victims!" These images and statements are false, abusive, and defamatory against the Beal Entities.  The false and defamatory statements and graphic have harmed the reputation and goodwill of the Beal Entities, and may interfere with and damage their relationships with the business community and other companies.

      It has also come to our attention that you have posted a comment at https://www.hisadvocates.org/blog/help-protect-your-constitutional-right-to-due-process, in which you state "it is certain [a judge] accepted a bribe from Beal." This statement is simply false and has no basis in fact whatsoever.  This statement is merely a maliciously false statement made with the specific intent to harm the reputations of the Beal Entities.  As a result, you are fully liable to the Beal Entities under common law and state laws for libel and defamation.

      **We demand that you immediately:**

1

Plaintiffs' Exhibit A page 8

**Heptig Law Group, Ltd.**

November 14, 2014
Page 2

- **TAKEDOWN the defamatory graphic posted at http://www.scribd.com/doc/238783107/Greg-Abbott-Works-for-Beal;**

- **CEASE and DESIST from any distribution and publication of the graphic posted at http://www.scribd.com/doc/238783107/Greg-Abbott-Works-for-Beal;**

- **TAKEDOWN the defamatory statement at https://www.hisadvocates.org/blog/help-protect-your-constitutional-right-to-due-process; and**

- **CEASE and DESIST from any distribution or publication of any and all false and defamatory statements about the Beal Entities.**

We request that, within five (5) days from the date of this letter, you provide written confirmation that you have taken the foregoing corrective actions to avoid further harm to the Beal Entities. My clients take this matter very seriously and demand immediate corrective action by you to address this situation. If you fail to take the necessary corrective actions here, we will not hesitate to take all necessary action to protect the Beal Entities, and to recover all available damages and remedies, to the maximum extent allowed under the law.

Very truly yours,

J. Pat Heptig

**Joann Breitling** <joannbreitling@yahoo.com>                    Thu, Jan 1, 2015 at 5:09 PM
Reply-To: Joann Breitling <joannbreitling@yahoo.com>
To: █XXXXXX █XXXXXX@gmail.com>

On Monday, December 15, 2014 8:49 AM, Pat Heptig <pheptig@heptiglaw.com> wrote:

Mrs. Breitling,
Thank you for your cooperation in promptly removing the letter from the scribd.com website.
Please remove the false and defamatory statements about my clients on the www.bealvictims.com website as well.
Respectfully,

Pat Heptig
Heptig Law Group, Ltd.


**From:** Joann Breitling [mailto:joannbreitling@yahoo.com]
**Sent:** Saturday, December 13, 2014 7:58 AM
**To:** pheptig@heptiglaw.com
**Subject:** "Cease and Desist Letter"

December 13, 2014

Dear Mr. Heptig,

This letter is to inform you that I am in receipt of your "cease and desist" letter that your client, Andy Beal, asked you to send to me.  I want you to know that I am not a "troublemaker", my intent was never to harm any of the "Beal entities", and I have requested that Ms. Subramaniam remove my letter from you collection.  (I do not have access to do this.  It is HER account.)  She has assured me that the letter will be removed in a timely manner.

My removal of the letter is not an admission that the statements I made in my very heartfelt letter were false and defamatory to the "Beal entities".  You are evidently unaware of the activities of your client, I realize that as his attorney your are only his "messenger".  Very sadly, I must inform you that EVERY STATEMENT I made in my letter WILL BE PROVEN TO BE TRUE.  (Some have already been proven to be true statements.)  Your client is a very wealthy and a very powerful man, but in the end, the truth lives.  Any damage to the "Beal entities" will not be because of a letter written by a 65 year old disabled grandmother of 13, it will be because of his own pride, and the things that he has done that he has evidently not disclosed to you.  If you knew the truth as I know it, you would not risk your career by having him as a client.

That being said, please know that I am complying with your request, I will post no more personal opinions on Scribd., and my only future activities will be pursued through the court system, as I have for the past five years.

Very sincerely,

JoAnn S. Breitling
214-674-6572

Plaintiffs' Exhibit A page 10

# Plaintiffs' <u>Exhibit B</u>

**Email communications between Brett Shipp and the Beal Defendants about "settlements" with the Breitlings when no direct communications about such "settlements" are ever made with the Breitlings.**

-------- Original message --------
From: "Shipp, Brett" <bshipp@wfaa.com>
Date:01/09/2015 10:42 AM (GMT-06:00)
To: Joann Breitling <joannbreitling@yahoo.com>
Cc:
Subject: FW: Settlement Discussion

JoAnn,

I believe it is Beal's desire for me to share this information with you in spite of the acrimony that has existed between you and them.

So I am relaying the information.

This text is blocked because it is confidential

Brett

**From:** Jim Chambless [mailto:JChambless@BealService.com]
**Sent:** Friday, January 09, 2015 9:57 AM
**To:** Shipp, Brett
**Cc:** Trahan, Jason P
**Subject:** Settlement Discussion

Brett, as a follow-up to our email from January 5, please note that we are always willing to listen to reasonable offers from the Breitlings (or, indeed, any customer) that could lead to a reasonably acceptable outcome of this matter (or any dispute).  Our recent overtures to discuss a settlement with the Breitlings have been met only with renewed court pleadings and online postings that are non-factual and defamatory.  While we do not believe it productive for us to attempt to initiate discussions with the Breitlings, we note your apparent ability to communicate with the Breitlings.  We would welcome you letting the Breitlings know that, if they wish to make any proposal to resolve the issues, they should have their counsel contact our counsel directly. We sincerely appreciate any assistance you may be able to provide in communicating this option to the Breitlings. Thank you.

Jim Chambless
Senior Vice President – Corporate Communications
Beal Service Corporation
O 469-467-5533
C 214-476-6393

_____

# Plaintiffs' <u>Exhibit C</u>

**Copy of LNV's motion *in limine* filed with their eviction complaint**

CAUSE NO. JE1500071D

| | | |
|---|---|---|
| LNV CORPORATION, | § | IN THE JUSTICE OF THE PEACE COURT |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | OF DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING, JO ANN | § | |
| BREITLING, AND ALL OTHER | § | |
| OCCUPANTS OF 1704 CORNWALL | § | |
| LANE, SACHSE, TEXAS 75048, | § | |
| **Defendants.** | § | PRECINCT 2, PLACE 1 |

## PLAINTIFF'S MOTION IN LIMINE AND MOTION TO EXCLUDE

Plaintiff, LNV Corporation (hereinafter "Plaintiff") files this Motion in Limine and Motion to Exclude ("Motion"). Plaintiff seeks to exclude matters that are inadmissible, irrelevant, or prejudicial to this case. Plaintiff asks the Court to instruct Defendants and their counsel not to mention, refer to, or attempt to convey to the jury in any manner, either directly or indirectly, any of the matters enumerated below. In the alternative, Plaintiff requests an order instructing all attorneys, parties, and witnesses not to mention any of the matters listed below, directly or indirectly, without first obtaining a ruling from the Court outside presence and hearing of the jury and to instruct Defendants and all counsel to warn and caution each witness to follow the same instructions.

## EVIDENCE TO BE EXCLUDED

Based on the claims and defenses in this lawsuit, Plaintiff requests the Court to exclude the following evidence and to preclude the parties from referring to these matters at trial:

1.   Any evidence or reference contrary to or that violates the spirit of this Court's Orders and rulings in this cause.

---

Plaintiff's Motion in Limine and Motion to Exclude                                    Page 1 of 8

2.    Any reference to any conduct by Plaintiff's attorneys in this or any other cause of action between these parties. There is no relevance or reason to inject comments regarding Plaintiff's counsel, other than to create prejudice. TEX. R. EVID. 402, 403.

3.    Any evidence that is a lay opinion, including without limitation, opinions offered by representatives of Defendants or any other individuals similarly situated as Defendants. Any such evidence or reference is immaterial, irrelevant, and impermissible character evidence. TEX. R. EVID. 401-402, 404.

4.    Any evidence of or reference to the fact that the Plaintiff filed a Motion in Limine and Motion to Exclude or the contents thereof. Any such evidence or reference is immaterial, irrelevant, and would be highly prejudicial to the Plaintiff. TEX. R. EVID. 401-403.

5.    Any mention of Plaintiff or Plaintiff's officers, directors, heirs, agents, servants, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers, administrators or successors in interest's financial prosperity, either generally and/or in relation to Defendants. TEX. R. EVID. 402, 403.

6.    Any mention of the life style or personal life and activities of Plaintiff's officers, directors, heirs, agents, servants, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers, administrators or successors in interest's. TEX. R. EVID. 402, 403.

7.    Any mention of the income or wealth of any party or nonparty to this proceeding.

8.    Any mention that Plaintiff is or has been involved in other suits and/or claims. TEX. R. EVID. 402, 403.

9.    Any mention that Plaintiff is covered by insurance. TEX. R. EVID. 411.

---

Plaintiffs' Exhibit C page 2 of 8

10.    Any comment attempting to impose liability upon or arouse prejudice against Plaintiff simply because it is a corporation or other business entity.

11.    Any reference and/or allusion to the motives of mortgage lenders, servicers or other business entities, generally.

12.    Any reference and/or allusion to any alleged prior bad or illegal acts of Plaintiff or Plaintiff's officers, directors, heirs, agents, servants, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers or administrators. TEX. R. EVID. 402, 403.

13.    Any reference and/or allusion to any alleged bad acts, policies and/or practices of corporate entities generally and/or of mortgage lenders and/or servicers in particular. TEX. R. EVID. 402, 403.

14.    Any reference and/or allusion to any damages allegedly suffered by any entities and/or individuals not joined as parties to this suit. TEX. R. EVID. 402, 403.

15.    Any reference to or any attempt to introduce any evidence or fact not supported by the pleadings and disclosures on file in this cause because such a tactic would surprise and prejudice Plaintiff, who has relied on all parties' pleadings to apprise it of the claims, allegations, and defenses asserted against it. *See Gunnels San Co. v. Wilhite,* 389 S.W.2d 596, 598 (Tex. Civ. App.—Waco 1965, writ ref'd n.r.e.); *Erisman v. Thompson,* 167 S.W.2d 731, 733 (Tex. 1943).

16.    Any statement or reference by Defendants or Defendants' counsel that tends to lead the jury to believe that there are things concerning the trial of this lawsuit that such counsel cannot tell the jury. *See Levermann v. Cartall,* 393 S.W.2d 931, 93 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.).

---

Plaintiffs' Exhibit C page 3 of 8

17.   Any mention that the case can be decided on sympathy, or that sympathy can play any part in their deliberations.

18.   Any mention that the jurors should put themselves in the position of the Defendants. Such matters are not relevant to this suit, and would be injected solely for the purpose of attempting to prejudice the jury. Tex. R. Evid. 402, 403.

19.   Any comment and/or attempt to infer that Plaintiff has the burden of proof upon any claims alleged by Defendants.

20.   Any undisclosed experts, reference to undisclosed experts, undisclosed expert opinions, or expert opinions not timely disclosed.

21.   Any suggestion that Plaintiff is withholding or has withheld information, evidence, or witnesses. Any suggestion that Plaintiff has withheld evidence or witnesses would unduly prejudice Plaintiff because such suggestions would cause the jury to believe that Plaintiff is trying to hide important evidence from other parties and from the jury. Therefore, any suggestion that Plaintiff has withheld or is withholding any information, evidence or witnesses should be excluded. Tex. R. Evid. 403.

22.   Parties or their counsel shall not make request or demand, before the jury, on opposing parties or their counsel for documents, things, stipulations or production of witnesses.

23.   Any reference to, or the displaying of any exhibits, charts, chronologies, posters, pictures, or other "demonstrative evidence" until such have been shown to opposing counsel out of the presence of the jury or jury panel.

24.   Any reference as to what testimony would have been offered by any witness not called by any party in this case because such claims are inadmissible and argumentative. *See Gifford v. Woodruff*, 448 S.W.2d 804, 806 (Tex. Civ. App.—Beaumont 1969, no writ); *Magaline*

Plaintiffs' Exhibit C page 4 of 8

*v. J.V. Harrison Truck Lines, Inc.*, 446 S.W.2d 920, 924 (Tex. Civ. App.—Houston [14th Dist.]
1969, writ ref'd n.r.e.).

26.     Any evidence or reference related to Defendants' personal opinions regarding this
case, the credibility of any witnesses, the production of documents, or that Defendants or
Defendants' counsel has had personal experiences or cases similar to this case. TEX. DISCIPLINARY
R. PROF. CONDUCT 3.04(c)(3) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A,
art 10 § 9.

26.     Any reference and/or allusion to any alleged parol evidence concerning the contract
at issue herein, and/or any portion thereof, prior to a determination by the Court that the said
contract is ambiguous as to the terms and provisions in relation to which the admission of the said
parol evidence is sought. Parol evidence is admissible <u>only</u> where the contract has first been found
to be ambiguous. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *National
Union Fire Insurance Company of Pittsburgh, Pennsylvania v. CBI Industries, Inc.*, 907 S.W.2d
517, 520 (Tex. 1995). Parol evidence is not admissible for the purpose of creating an ambiguity.
*Kelley-Coppedge, Inc. v. Highlands Insurance Company*, 980 S.W.2d 462, 464 (Tex. 1998)
(quoting *CBI Industries*, 907 S.W.2d at 520); *see also Friendswood Development Company v.
McDade + Company*, 926 S.W.2d 280, 283 (Tex. 1996).

27.     Any evidence or reference regarding the authority of Plaintiff and its agents to
foreclose under the deed of trust because that is not an issue in this case and is beyond the
jurisdiction of this court.

28.     Any evidence or reference regarding failure to provide notice prior to the
foreclosure or any other defects in the foreclosure process. A forcible detainer action is cumulative,
not exclusive, of other remedies that a party may have, thus the parties may pursue both a forcible

Plaintiffs' Exhibit C page 5 of 8

detainer action in justice court and a suit to quiet title in district court; accordingly, forcible detainer actions in justice court may be prosecuted concurrently with title disputes in district court. *Dormady v. Dinero Land & Cattle Co., L.C.,* 61 S.W.3d 555 (Tex. App.—San Antonio 2001, review dismissed w.o.j., Jan. 10, 2002).

29.    Any evidence or reference that the parties in this lawsuit (regarding the claims asserted in this lawsuit) have made settlement offers, mediated, and/or held settlement negotiations. TEX. R. EVID. 405.

30.    Any use of the "if" or hypothetical question with lay or fact witnesses. Such questions are improper. *Crawford v. Deets,* 828 S.W.2d 795, 799 (Tex. App.—Fort Worth 1992, writ denied). Further, "if" questions are a mere jury argument in the dress of a question, call for speculation and guesswork on their face, and are calculated to mislead and confuse jurors. *Clark Equipment Co. v. Pitney,* 923 117, 123 (Tex. App.—Houston [14th Dist.] 1996, writ denied); TEX. R. EVID. 403.

31.    Any speculation as to any motives of Plaintiff beyond the desire to obtain possession of the property that is the subject of this forcible detainer action under the terms of the Deed of Trust and Security Instrument executed by Defendants, and the Substitute Trustee's Deed.

32.    Any mention of, discussion of, reference to, implication of, or offer of evidence regarding the current mortgage crisis or the role of the Plaintiff, Plaintiff's parent, holding, subsidiary, affiliated and related entities, or foreclosure attorneys in such crisis. As with evidence of other lawsuits, evidence of problems encountered by other borrowers is irrelevant to this lawsuit and the prejudicial effect of the evidence would outweigh any probative value the evidence might have.

Plaintiffs' Exhibit C page 6 of 8

33.     Any remarks or testimony concerning Plaintiff's trial strategy, including evidence that Plaintiff or its attorneys: (i) have sought to prevent disclosure of alleged facts or discovery of evidence during pre-trial discovery or during trial through the assertion of objections, instructions from counsel, or privileges; (ii) should stipulate to the purported facts in the presence of the jury; (iii) have documents or information within its files that have not been produced, that should be delivered to the other parties, or shown to the jury; (iv) filed any motions or motions for summary judgment in this case that were denied; (v) have not called to testify any witness equally available to either side; or (vi) made comments or statements during the court of depositions, other than questions to witnesses, or formal objections to questions. Further, the Court should instruct Defendants and their attorneys not to tender, read from, or refer to any statement or report not admitted previously in evidence and not to suggest to the jury what would have been the testimony of any witness not actually called.

## CONCLUSION

Wherefore, Plaintiff respectfully requests that the Court grant this motion, exclude the referenced testimony and evidence from admission into evidence at trial, and prohibit any mention or reference to the excluded matters in front of the jury or jury panel.

Respectfully submitted,

Luke Madole   / State Bar No. 12801800
luke.madole@buckleymadole.com
Sammy Hooda/ State Bar No. 24064032
sammy.hooda@buckleymadole.com
BUCKLEY MADOLE, P.C.
14841 Dallas Parkway, Suite 425
Dallas, Texas 75254
(972) 643-6787 / (972) 643-6699 (Fax)

ATTORNEYS FOR PLAINTIFF
LNV CORPORATION

Plaintiffs' Exhibit C page 7 of 8

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion in Limine and Motion to Exclude has been served via certified mail, return receipt requested upon the following parties in interest on the 23rd day of January, 2015:

SAMUEL G. BREITLING
1704 CORNWALL LANE
SACHSE, TEXAS 75048

**Certified Article Number**

9414 7266 9904 2024 4288 41

**SENDERS RECORD**

JO ANN BREITLING
1704 CORNWALL LANE
SACHSE, TEXAS 75048

**Certified Article Number**

9414 7266 9904 2024 4288 58

**SENDERS RECORD**

ALL OTHER OCCUPANTS
1704 CORNWALL LANE
SACHSE, TEXAS 75048

**Certified Article Number**

9414 7266 9904 2024 4288 65

**SENDERS RECORD**

Sammy Hooda

Plaintiffs' Exhibit C page 8 of 8

# Plaintiffs' <u>Exhibit D</u>

**Email communication between Beal's Jim Chambless and WFAA reporter Brett Shipp specific to the Plaintiffs' "original" note.**

-------- Original Message --------
Subject: Breitling Original Title
From: Jim Chambless <JChambless@BealService.com>
Date: 4:41pm, Dec 12, 2014
To: "Shipp, Brett" <bshipp@wfaa.com>

Brett, thank you for your email of December 9; we hope all is well with you, also.

First we'd like to say that we sincerely appreciate your efforts in this regard. Unfortunately, the last time we communicated at all with Ms. Breitling, we were accused of making a threat of some sort, when in actuality we were trying to communicate our willingness to consider an offer from the Breitlings to purchase the home.

As a consequence, we believe it best that all future communications with or on behalf of the Breitlings are through counsel. We have advised the Breitlings of our decision.

In addition, we do not believe we have ever produced an original note to a customer under these circumstances. Setting this precedent has risks and is not appropriate. The Breitlings can serve the appropriate discovery request and inspect the documents in question through the ordinary course of litigation.

Also, if the Breitlings want a "copy" of the original note that you viewed in our offices, that is something we can arrange through counsel, but, again, we do not produce original documents for customers at our offices.

We thank you again. Please let us know if you have further questions.

Jim

---

**From:** Jim Chambless
**Sent:** Wednesday, December 10, 2014 8:07 PM
**To:** Shipp, Brett
**Cc:** Trahan, Jason P
**Subject:** RE: Breitling Original Title

Brett, just an FYI to let you know we're reviewing your request from yesterday, and we should have a response to you by Friday.

Thanks,

Jim

---

**From:** Shipp, Brett [bshipp@wfaa.com]
**Sent:** Tuesday, December 09, 2014 3:00 PM
**To:** Jim Chambless
**Cc:** Trahan, Jason P
**Subject:** Breitling Original Title

Jim,

Hope all is well.

Q: the Breitlings and I would like to inspect their original note together.

Obviously it would be in the company of Beal officials.

Can you please inquire with the appropriate individuals to see if we could make this happen?

Brett Shipp
Investigative Reporter
WFAA-TV
606 Young Street
Dallas, Texas  75202

# Plaintiffs' <u>Exhibit E-1</u>

**Excerpt from Bret Maloney Deposition - [Document 228] in *Re: <u>Christpher T. Swift and Marcia A. Swift, Debtors; Case 12-35690</u> in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division*.**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

```
IN RE:                     )
                           )    Judge Carol A. Doyle
CHRISTOPHER T. SWIFT and)
MARCIA A. SWIFT,           )    No. 12-35690
                           )
         Debtors.          )    Chapter 13
```

RULE 30(B)(6) DEPOSITION OF

BRET MALONEY

JULY 11, 2014

10:00 A.M.

Called as a witness herein, pursuant to the Federal Rules of Civil Procedure of the United States Bankruptcy Court, pertaining to the taking of depositions, before WENDY M. STRICKLER, C.S.R., License No. 084-003257, qualified and commissioned for the State of Illinois, taken at 900 Jorie Boulevard, Suite 150, Oak Brook, Illinois.

COUNSEL PRESENT:

SULAIMAN LAW GROUP, by

MR. PAUL M. BACH and

MS. PENNY BACH

900 Jorie Boulevard

Suite 150

Oak Brook, Illinois  60523

appeared on behalf of the Debtors;



# CCR

## County Court Reporters, Inc.

County View Centre, Suite 200
600 South County Farm Road  •  Wheaton, Illinois 60187
(630) 653-1622  •  FAX (630) 653-4119
CCR600@Ameritech.net

Bret Maloney
July 11, 2014

```
                                                              2

 1  COUNSEL PRESENT: (Contd.)

 2       FREEDMAN, ANSELMO, LINDBERG, by

         MR. CHRIS IARIA

 3       1771 W. Diehl Road

         Suite 120

 4       Naperville, Illinois  60563

 5           appeared on behalf of the Defendant.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Bret Maloney
July 11, 2014

3

```
 1                         I N D E X
 2   WITNESS:                              PAGE
 3   BRET MALONEY
 4        Examination by Mr. Bach            4
          Examination by Ms. Bach          108
 5        Examination by Mr. Iaria         122
 6
 7
                         E X H I B I T S
 8
     Deposition Ex. No. 1                    5
 9   Deposition Ex. No. 2                   38
     Deposition Ex. No. 3                   40
10   Deposition Ex. No. 4                   43
     Deposition Ex. No. 5                   61
11   Deposition Ex. No. 6                   63
     Deposition Ex. No. 7                   74
12   Deposition Ex. No. 8                   74
     Deposition Ex. No. 9                   74
13   Deposition Ex. No. 10                  83
     Deposition Ex. No. 11                  90
14   Deposition Ex. No. 12                  91
15
16
17
18
19
20
21
22
23
24
```

4

1        MS. REPORTER:  My name is Wendy Strickler.  I

2  am affiliated with County Court Reporters, Inc.  My

3  address is 600 S. County Farm Road, Wheaton, Illinois,

4  60187. The date is July 11, 2014.  The time is 10:05

5  a.m., and we are at 900 Jorie Boulevard, Oakbrook,

6  Illinois.  The deponent's name is Bret Maloney.

7                          (Witness sworn.)

8        MR. BACH:  Let the record reflect that this is

9  the Federal Rules of Bankruptcy Procedure, Rule 30(b)(6)

10  Deposition of Bret Maloney, which is taken pursuant to

11  Notice that was previously given and ordered to occur by

12  today by the Honorable Judge Cassling.

13                      BRET MALONEY,

14  called as a witness herein, having been first duly

15  sworn, was examined and testified as follows:

16                      EXAMINATION

17                   BY MR. BACH:

18  Q.   Sir, could you please state your name.

19  A.   It's Bret Maloney.

20  Q.   Can you please spell it.

21  A.   B-R-E-T, M-A-L-O-N-E-Y.

22  Q.   And what is your business address?

23  A.   7195 Dallas Parkway, Plano, Texas, 75024.

24  Q.   And who are you employed by?

Bret Maloney
July 11, 2014

5

1       A.    MGC Mortgage, Inc.

2       Q.    Okay.  Do you know why you are here today?

3       A.    Yes.

4       Q.    And why is that?

5       A.    For a deposition in regards to the Swift

6   bankruptcy.

7                           (WHEREUPON, Deposition Exhibit

8                           No. 1 was marked for

9                           Identification as of this

10                          date.)

11  BY MR. BACH:

12      Q.    Okay.  Now, before we get -- I am going to

13  show you what I have marked as Maloney Deposition 1,

14  which is here, and I have a copy for your Counsel, which

15  is just a Notice of Deposition.

16            Have you seen this document before?

17      A.    I have.

18      Q.    And when did you first see it?

19      A.    I first saw it a couple of months ago, when I

20  was asked to be the witness to attend the deposition.

21      Q.    Prior to seeing this document and hearing

22  about this deposition, had you ever had any contact with

23  the Swift case before?

24      A.    Not that I am aware of, no.

Brett Maloney
July 11, 2014

6

1    Q.    Have you ever talked to Marcia Shift or to

2  Chris Swift?

3    **A.    Not that I recall.**

4    Q.    Okay.  Now, have you reviewed that document?

5    **A.    Yes.**

6    Q.    Now, this document is pursuant to -- as you

7  heard me say just a couple minutes ago, pursuant to

8  Federal Rules of Civil Procedure 30(B)(6).  Do you know

9  what that means?

10   **A.    No.**

11   Q.    A 30(B)(6) deposition allows me to take a

12  statement from a designated officer, director of a

13  party, and it allows -- it has a list of inquiries to

14  which you are -- by disclosing you as a witness, you are

15  the most knowledgeable person, or the person able to

16  answer all of these.

17             Have you read the entire list of topics

18  that we intend to talk about today?

19   **A.    Yes.**

20   Q.    And are you prepared to talk about all those

21  topics?

22   **A.    Yes.**

23   Q.    What did you review today in order to prepare

24  for this deposition?

Bret Maloney
July 11, 2014

7

1      A.   I reviewed the original notes, I have reviewed

2   the mortgage, the assignments of mortgage.  I have

3   reviewed the servicing notes, the payment histories, the

4   foreclosure default letter, correspondence, the

5   pleadings, both bankruptcy docs., the bankruptcy plans.

6   I am trying to recall what else I reviewed.  I think

7   that's about it.

8      Q.   Okay.  Well, we will get into the actual list

9   in a second, and that you have seen it.  A lot of the

10  purpose of this deposition, as far as I am concerned, is

11  to clear up a lot of questions that I have regarding the

12  facts, okay?  Originally, there were documents by LNV

13  Corporation.  You have told me that you are employed by

14  MGC Servicing.

15           Let's start with you telling me about the

16  relationship between those two entities.

17     A.   Okay.  MGC Mortgage, Inc. is the servicer for

18  LNV Corporation.

19     Q.   Okay.  Is that always the case?

20     A.   Yes.

21     Q.   Is there -- Are they owned by the same

22  parties?

23     A.   Yes.

24     Q.   And who is that?

Bret Maloney
July 11, 2014

8

1     A.   Beal Financial Corp.

2     Q.   Beal Financial Corp.  I have also seen Beal

3 Bank U.S.A., and that is that is a Federal bank as far

4 as I could -- as far as I could tell.  Is that not

5 true?

6          MR. IARIA:  Can you define or -- It's kind of

7 ambiguous.  Can you define, "Federal bank?"  Do you mean

8 like FCC insured?

9          MR. BACH:  That's part of what I am saying.

10 But from what I am seen, it's called Beal Bank U.S.A.,

11 which usually means that it's a bank.  It's not an

12 important point, but what is the -- what is the

13 relationship between Beal Bank as well as the other two

14 entities that you have already mentioned?

15    **A.   They are all affiliated companies under the**

16 **same corporate umbrella underneath Beal Financial**

17 **Corporation.**

18     Q.   So if I understand that -- please correct me

19 if I am wrong -- that they are really one -- They are

20 different entities.  I understand that from a legal

21 perspective.  But there are different functions that are

22 carried out by each one.  Is that really what it is?

23    **A.   No.  They are different entities that are made**

24 **up underneath that corporate umbrella.  I don't think**

County Court Reporters, Inc.
630.653.1622

Bret Maloney
July 11, 2014

9

1  there is any -- I don't know as far as the functionality

2  goes.

3      Q.   Okay.  Does MGC only service for Beal Bank --

4  Beal -- I forgot the other entities that you

5  mentioned -- Beal, the management -- It sounds like

6  they are a parent company?

7      A.   MGC Mortgage, Inc. services for Beal Bank --

8      Q.   That's what I want to know.

9      A.   -- LLP Mortgage, LNV Corporation and Beal Bank

10  U.S.A.

11     Q.   Those are the only ones, correct?

12     A.   We do have a relationship where we are

13  servicing and own some loans that are, I believe, Fannie

14  Mae, but it's a very small number.

15     Q.   Meaning that they are owned by Fannie Mae or

16  that they are -- or they are Fannie Mae-type loans,

17  which are -- which are --

18     A.   They are owned by Fannie Mae, serviced by MGC.

19     Q.   Okay.  Do you have an idea of what percentage

20  of the business that that would be?

21     A.   Less than half a percent.  I mean, it's very

22  small.

23     Q.   Okay.  Is there also a relationship between

24  CLMG Corp.?

Bret Maloney
July 11, 2014

10

1      A.    There is.

2      Q.    And what is CLMG Corp.?

3      A.    CLMG Corp. is the commercial loan servicer

4   underneath that same corporate umbrella.  CLMG Corp.

5   also is the custodian of the original loan documents.

6      Q.    So they keep all original loan documents for

7   whom?

8      A.    For all of those different entities that I

9   have previously mentioned.

10     Q.    And how about Property Acceptance

11  Corporation?

12     A.    Also another affiliated company underneath

13  that same corporate structure.

14     Q.    Okay.  Are there any other -- besides the ones

15  we have talked about, besides that, any other affiliated

16  companies?

17     A.    LAC, Loan Acceptance Corporation.  Those are

18  the only ones that I am aware of that are tied to the

19  residential side.

20     Q.    And what does LAC, Loan Acceptance

21  Corporation, do?

22     A.    I am not quite sure, because I don't have very

23  much involvement with them, other than I know that they

24  purchase loans on behalf of the other entities.

Direct Testimony
July 11, 2014

11

1     Q.   Is there a reason why certain loans are held

2 by LNV or Beal Bank?

3     **A.   That, I am not aware of how that -- How the**

4 **loans go into which investor.**

5     Q.   Now, is there a contract between all of these

6 different entities on how this is one?

7     **A.   Again, I am not aware of that.**

8     Q.   So you don't know if there is a contract -- I

9 will just give you an example -- between MGC, who you

10 said that you were employed by, and Beal Bank?

11     **A.   No.   There is a servicing agreement between**

12 **Beal Bank and MGC.**

13     Q.   Okay.   Is this also the same servicing

14 agreement -- the same servicing agreement from LNV and

15 MGC?

16     **A.   Yes.**

17     Q.   It has the same sort of terms is what you're

18 saying?

19     **A.   As far as the servicing agreement, yes.**

20     Q.   And what sort of terms are those?   I am

21 looking for a general idea.

22          MR. IARIA:   Objection to vague.

23          THE WITNESS:   It's just talks about the

24 servicing of the loans and the relationship of MGC being

July 11, 2014

12

1    the servicer for those different entities.

2    BY MR. BACH:

3        Q.   Okay.   Does it include that MGC accepts funds

4    on behalf of the other companies and then writes them a

5    check for the loan payment?

6        A.   I would have to look at the agreement to see

7    specifically if that's mentioned in there.

8        Q.   I am just trying to understand.   Like if MGC

9    gets a loan payment from somebody, the Swifts, or

10   anybody else, and it's $2,000, okay, because I know a

11   lot of servicing agreements you don't have to pay to the

12   investors and people actually own the loan because

13   that's who would get the money.

14       A.   Right.

15       Q.   I would guess there is some sort of an

16   agreement that says that at that point MGC would then

17   write the check to the owner of the loan, which could be

18   in this case, Beal Bank U.S.A. or LMV or one of the

19   other companies you mentioned.   Does that sound about

20   right?

21       A.   It sounds about right.

22       Q.   Okay.   Now, besides the companies we

23   mentioned, you said, "on the residential side."   What

24   did you mean by that?

Bret Maloney
July 11, 2014

13

1      A.   I work on the residential side of MGC

2  Mortgage.  There is a commercial division under the

3  CLMG.  There may be different entities over there.  I

4  don't know all the different entities that they have or

5  investors that are set up under the CLMG side.

6      Q.   Now, do most of them have an address for 7195

7  Dallas Parkway?

8      A.   The LMV does, MGC does.  I believe Beal and

9  LPP is 6000 Legacy Drive.  It's actually the same

10 building, just two different streets that merge.  Some

11 are listed under 6000 Legacy Drive, the others are

12 listed under 7195 Dallas Parkway.

13     Q.   What's the difference between one or the

14 other, if you know?

15     A.   I don't.

16     Q.   At 7195 Dallas Parkway, there is actually a

17 building?

18     A.   At the corner of 7195 Dallas Parkway and 6000

19 Legacy Drive, there is a building, yes.

20     Q.   Now, before we get into a lot of other topics,

21 why don't you give me an idea about about your

22 educational history.

23     A.   Okay.  I have a Bachelor of Business

24 Administration, graduated in 1993 from Steven F. Austin

Bret Maloney
July 11, 2014

14

1  State University.  That's located in Nagodoches, Texas.

2      Q.    And you have had no education beyond

3  Bachelor's degree, correct?

4      A.    That's correct.

5      Q.    And how about your employment history?

6      A.    How far do you want to go?

7      Q.    Why don't you give me an idea, when did you

8  start with the Beal Group of companies.  I will just

9  call it that way.

10     A.    December of 2000, I started, and I did leave

11  for one year, and that was from June 2007 through August

12  2008.  I worked for Saxon Mortgage in Fort Worth, and

13  then I came back.

14     Q.    Why was that?

15     A.    Because I --

16           MR. IARIA:  Objection, relevance.

17           MR. BACH:  He mentioned it.

18     A.    I enjoyed working for the Beal Corporation.

19     Q.    That's all I expected you to really say.  It

20  was more just a curiosity.  You said you left, so it's a

21  little unusual to leave one firm and then come back to

22  another.  That's the point I was trying to make.

23           Before 2000, when you started working for

24  the Beal Group of companies, did you work for another

Bret Maloney
July 11, 2014

15

1   banking institution or do other types of jobs before

2   that?

3       A.   No, other types of jobs before that.

4       Q.   So the first time you had any access, any

5   experience with banking, was about 2000, correct?

6       A.   December 2000.

7       Q.   And why don't you give me an idea of the type

8   of positions that you have held.  I assume you have

9   always worked for MGC, correct?

10      A.   MGC, since August 2008 until present.

11      Q.   Okay.  So who did you technically work with

12  before August 2008?

13      A.   Saxon Mortgage from June 2007 to August 2008.

14  It was Beal Service Corporation from December of 2000

15  through June of 2007.

16      Q.   Was that just a change in name or was that a

17  separate company that no longer exists?

18      A.   There was a change in the name.  Beal Service

19  Corporation still does exist, but the residential side

20  change to MGC Mortgage in early 2008.

21      Q.   So it was more of a split between the

22  residential and the commercial, correct?

23      A.   Yes.

24      Q.   Now, getting back to the deposition, I

Direct Maloney
July 11, 2014

16

1   initially asked you when you first had -- you said a

2   couple months ago, okay.  We had agreed upon you had

3   some problems with your family I understood, correct?

4       A.   Yes.

5       Q.   With your father-in-law is what I understood,

6   correct?

7       A.   Yes.  He went in the hospital for three weeks

8   and then eventually passed.

9       Q.   I'm sorry to hear about it.  That's why we

10  kept continuing it, because family is much more

11  important than anything in law or a court case, and I

12  get that, and you have my condolences for that.

13      A.   And I appreciate that.  Thank you.

14      Q.   Then we set it for June 5th, and then we had

15  some legal issues that came up.  Did you have a plane

16  ticket to come here on June 5th?

17      A.   I did.

18      Q.   Okay.  So you were going to arrive on June 4th

19  of that day?

20      A.   Yes.

21      Q.   But you did have travel arrangements for that

22  day, correct?

23      A.   Yes.

24      Q.   Okay.  Now, we spent some time talking about

17

1  the Beal Group of companies in terms of the servicing

2  and all those sort of things.  Do they have the same

3  computer system that they share?

4      A.   On the residential side, yes.  Commercial side

5  uses a totally different system.

6      Q.   I am obviously more interested in the consumer

7  residential side.

8      A.   Right.

9      Q.   For obvious reasons.  So why why don't we just

10  confine ourselves to that for right now.

11     A.   Okay.

12     Q.   But it's the same computer -- from what I

13  understand, it's the same computer system, whether the

14  loan is technically owned by Beal Bank U.S.A. or it's

15  owned by LMV, correct?

16     A.   That is correct.

17     Q.   Now, in terms of computer systems, what

18  software is being used, LPS Mortgage Platform?  Did you

19  use LPS for any functions?

20         MR. IARIA:  Objection, vague.  I don't

21  understand the question.

22  BY MR. BACH:

23     Q.   By LPS, you mean Lender Processing Services,

24  correct?

July 11, 2014

18

1    **A.    Correct.**

2    Q.    Besides for the computer platform, do you use

3   them for -- Do you use them for anything else?

4         MR. IARIA:   Objection.  Ambiguous.  I don't

5   know where you're going with this, by functions or

6   anything else.   If you can just clarify.

7   BY MR. BACH:

8    Q.    You have a computer system that was written --

9   the software was written by LPS, correct?

10    **A.    Yes.**

11    Q.    You obviously get computer services from

12   them.  Do you use them for -- to find attorneys to

13   represent you in various matters?

14    **A.    You're talking about LPS Desktop?**

15    Q.    Yes.

16    **A.    Our subservicer does.**

17    Q.    Who is the subservicer?

18    **A.    Dovenmuehle.**

19    Q.    What's Dovenmuehle's -- I know they are --

20   dobin Mule is in not too far from here, in Lake Zurich.

21    **A.    That's correct.**

22    Q.    What is their function in all of this?  I got

23   some names we mentioned a little bit earlier.

24    **A.    They are the subservicers for our Legacy**

Bret Maloney
July 11, 2014

19

1   portfolio.   They handle all the day-to-day operations.

2        Q.   When you mean Legacy portfolio, what do you

3   mean?

4        A.   The loans that are owned by each of those

5   different entities, that there is no other -- Let me

6   clarify this.   I have two portfolios.   One is a Legacy

7   portfolio wholly owned between all those different

8   investors, then another portfolio that's under an

9   agreement with the FDIC with a loss-share agreement,

10  segregated with the different subservicers.

11       Q.   Also a different subserviser?

12       A.   Cenlar.

13       Q.   Cenlar handles the one that has also shared

14  agreements is what you're saying?

15       A.   Correct.

16       Q.   That's a different -- every other loan is a

17  Legacy loan besides that, correct?

18       A.   That is correct.

19       Q.   Which meant -- just so I make sure we're on

20  the same page -- I understand it was a loss-share

21  agreement.   That usually means that the FDIC had taken

22  over another bank.   You bought assets from the FDIC,

23  correct?

24       A.   Correct.

Fred Mahoney
July 11, 2014

20

1    Q.   And then the FDIC and who then who enters into

2    an agreement?  Would it be one of these companies that

3    we have talked about or were there specialized -- Is

4    there a certain -- It's only Cenlar you mentioned?

5             MR. IARIA:  Objection, relevance to this

6    case.

7             MR. BACH:  I am just trying to understand the

8    whole thing.

9        A.   **The owners of the loss-share ones are under**

10   **Beal Bank and LPS Mortgage, and those are all being**

11   **serviced by Cenlar.**

12       Q.   So Legacy could have any of the ones we

13   discussed already, correct, or Legacy is part of the

14   Legacy portfolio?

15       A.   **Everything else outside of the FDIC loss**

16   **year.**

17       A.   **C-E-N-L-A-R.  Cenlar.**

18       Q.   Who owns the LPS Mortgage Platform?  Is the

19   program actually sold to you or is it on a lease

20   agreement?

21            MR. IARIA:  Objection, relevance.

22            THE WITNESS:  I don't know.

23   BY MR. BACH:  That's fine.

24       Q.   What does LPS Mortgage Platform do on a

Bret Maloney
July 11, 2014

21

1   general basis, what kind of functions does it serve?

2        MR. IARIA:   Objection, vague and relevancy.

3        THE WITNESS:   It's where all loan information

4   is housed with regards to where payment applications are

5   made, where the notes are documented on the system.   It

6   has, you know, each of the different areas of

7   functionality, bankruptcy, loss mitigation, foreclosure,

8   the different templates that would be opened up for

9   those different areas.

10       Q.   So it basically takes care of any function

11   within -- that you would need to service a loan,

12   correct?

13       A.   Yes.

14       Q.   Is there anything it does not take care of?

15       A.   Can you be more specific?

16       Q.   I don't know.   I don't know much about

17   mortgage.   That's not my job.   I am just wondering.   It

18   takes care of all the functions basically that you would

19   need, it sounded like, but that was more just to

20   conclude that?

21       A.   I think everything that is needed for the

22   daily operations to servicing the loan would be in that

23   system.

24       Q.   So it takes care of accounting, management and

County Court Reporters, Inc.
630.653.1622

Direct - Maloney
July 11, 2014

22

1   reporting, all of those things, correct?

2       A.   Correct.

3       Q.   Now within the plat -- the LPS Mortgage

4   Platform, how does it keep images or copies of documents

5   that are related to a particular file?

6       A.   Anything that's entered onto the records, such

7   as the notes or the payment history transactions, that

8   is kept on the system.  Any of the letters or any

9   letters, correspondence, all that would be in a document

10  scan imaging system that's separate from that system.

11      Q.   Can you access it from the LPS Platform?

12           MR. IARIA:  Objection.  Can you

13  specify, "accessed?"

14  BY MR. BACH:

15      Q.   Meaning if you're looking -- Let's just be

16  blunt, as I say.  If you're looking at the Swifts'

17  account, okay, if you're looking at the Swifts' account,

18  if there are letters that were sent to them, can someone

19  pull them up?

20      A.   Yes.  You would have access to that document

21  scanning image system, but not from inside the LPS

22  System.

23      Q.   How would you have to get them?

24      A.   You would have to have access to that

Bret Maloney
July 11, 2014

23

1  platform.

2      Q.   Okay.  So maybe I guess we will go back.  So

3  copies of documents are kept on a different platform

4  than the LPS Mortgage Platform?

5      A.   Yes.  So if it shows that a letter was

6  transmitted -- The letters would be generated off of the

7  system if there was anything sent out to the loans.  The

8  document would then be scanned and imaged into a

9  document scanning imaging system, and then it would be

10  housed in that system.

11      Q.   So if someone wanted to get a copy of letters,

12  how would they do it?

13      A.   Would go into the document imaging system, put

14  in the loan number, and then it would pull up the list

15  of the documents, and you would go there and select the

16  document that you're requesting.

17      Q.   So it's not a difficult thing.  And how long

18  would that take?

19      A.   Seconds, minutes.

20      Q.   Now, is the same thing true is if as part of

21  the escrow -- I am just trying to understand your

22  system -- as part of the escrow you make -- you pay some

23  taxes, you pay some real estate taxes, right?

24      A.   Mm-hmm.

Bret Maloney
July 11, 2014

24

1    Q.   There is obviously -- at least if I am going

2  to pay something, I want to keep an invoice and I want

3  to have a copy of the check which shows that it was sent

4  out.  Is that done as well in the same way?

5    A.   It would be imaged, yes.

6    Q.   Okay.  Is that part of the LPS Platform or

7  part of the other platform that we were discussing?

8    A.   It would be -- the actual transaction would

9  take place in the transaction.  In the payment history

10  notes, it would show if a payment was disbursed.

11    Q.   Right.

12    A.   The checks and/or statements or invoices, as

13  you will, would have been scanned and imaged into the

14  document imaging system.

15    Q.   So you would have kept the invoice, correct,

16  or a copy of the bill that you were paying?

17    A.   Yes.

18    Q.   And it would be very easily accessible,

19  correct?

20    A.   It should be, yes.

21    Q.   And the same would be true if, for instance,

22  there was -- let's say many times mortgage servicers

23  choose to do property inspections of properties that are

24  in .foreclosure, correct?

# Plaintiffs' <u>Exhibit E-2</u>

**Motion to Compel - [Document 228] in** ***Re****: <u>Christpher T. Swift and Marcia A. Swift, Debtors;</u> <u>Case 12-35690</u> **in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division**.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLIONIS, EASTERN DIVISION

In Re:                              )
                                    )   NO. 12 B 35690
CHRISTPHER T. SWIFT and,            )
MARCIA A. SWIFT,                    )
                                    )   Chapter 13
            Debtors                 )
                                    )
                                    )   Honorable Donald R. Cassling
                                    )

### NOTICE OF MOTION

TO:   See Attached Service List

PLEASE TAKE NOTICE that on February 13, 2015 at 10:00 a.m., the undersigned will appear
before the Honorable Judge Donald R. Cassling at the **Kane County Courthouse**
100 S. Third Street, Room 240, Geneva, IL and will then and there present the attached
**DEBTORS', CHRISTOPHER SWIFT AND MARCIA SWIFT, MOTION TO COMPEL
AND DISALLOW DOCUMENTS CLAIMED AS PRIVILEDGED ON THE
PRIVILEDGE LOG OF FREEDMAN, ANSELMO, LINDBERG, LLC,** at which time you
may appear if you so choose.

### Certificate of Service

    I, Paul M. Bach, hereby certify that I caused to be served, electronically via U.S. Mail to
all creditors listed on the attached service list, and attached a copy of the forgoing NOTICE and
MOTION upon the parties named above on February 5, 2015, from the office located at 900
Jorie Blvd., Ste 150, Oak Brook, IL 60523.

                                              **BY:   /S/ PAUL M. BACH**
                                                  **BACH LAW OFFICES**
                                                  COUNSEL FOR DEBTOR(S)
                                                  PO BOX 1285
                                                  NORTHBROOK, ILLINOIS 60065
                                                  PHONE: (847) 564-0808
                                                  FAX:   (847) 564-0985
                                                  ATTORNEY NO: 6284659

1

## Service List

**Christopher T. Swift**
**Marcia A. Swift**
601 Sennett Street
Batavia, Illinois 60510

**Glenn Stearns Chapter 13 Trustee**
801 Warrenville Road, Suite 650
Lisle, IL 60532

**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

**Ann Marie Waxman Lopez**
1035 Hohlfelder Road
Glencoe, Illinois 60022

**Bryan D. Hughes**
Freedman Anselmo Lindberg LLC
1771 West Diehl Road
Naperville, Illinois 60563

**Annie W. Lopez**
Freedman Anselmo Lindberg LLC
1771 West Diehl Road
Naperville, Illinois 60563

**Nisha B. Parikh**
Freedman Anselmo Lindberg LLC
1771 West Diehl Road
Naperville, Illinois 60563

**Chris Iaria**
Freedman Anselmo Lindberg LLC
1771 West Diehl Road
Naperville, Illinois 60563

**Crystal V. Sava**
Freedman Anselmo Lindberg LLC
1771 West Diehl Road
Naperville, Illinois 60563

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) |
| CHRISTOPHER T. SWIFT and | ) NO. 12-35690 |
| MARCIA A. SWIFT, | ) |
| | ) |
| | ) CHAPTER 13 |
| Debtor | ) |
| | ) |
| | ) HON. Donald R. Cassling |
| | ) |

## DEBTORS', CHRISTOPHER SWIFT AND MARCIA SWIFT, MOTION TO COMPEL AND DISALLOW DOCUMENTS CLAIMED AS PRIVILEDGED ON THE PRIVILEDGE LOG OF FREEDMAN, ANSELMO, LINDBERG, LLC

**NOW COMES**, Christopher and Marcia Swift ("Debtors'"), by and through their

attorneys, Penelope N. Bach and Paul M. Bach of Bach Law Offices, and pursuant to Federal

Rules of Bankruptcy Procedure 7037, 9014 and 9016 brings this Motion to Compel the

Production of Documents by Freedman, Anselmo, Lindberg, LLC (who refuse to produce any

documents) relating to Subpoenas served upon Ann Marie Waxman Lopez and Crystal V. Sava

and states as follows:

### JURISDICTION

1. This Court has subject matter jurisdiction over this proceeding pursuant to 11 U.S.C

    Sections 105 and 28 U.S.C Sections 157 and 1334. This proceeding arises out of and is

    related to the above-captioned Chapter 13 case under Title 11.

2. This is a core proceeding within the meaning of 28 U.S.C Section157(b)(1) & (2).

4

## STATEMENT OF FACTS

3. The instant bankruptcy proceeding was filed under Chapter 13 of the Bankruptcy Code on September 9, 2012.

4. On January 2, 2013, LNV Corporation ("LNV") filed its proof of claim ("POC-1") in the amount of $583,865.92. POC-1 includes total arrearages of $197,236.50 as part of POC-1. (Claim 17-1). POC-1 was signed by Attorney Ann Marie Waxman Lopez ("Lopez").

5. On September 2, 2014, Beal Bank USA ("Beal"), without Court permission, pursuant to Federal Rule of Bankruptcy Procedure 3006 filed its proof of claim ("POC-2") in the amount of $583,865.92. POC-2 includes total arrearages of $197,236.50 as part of POC-1. (Claim 17-2). POC-2 was signed by Attorney Crystal V. Sava ("Sava")..

6. On September 8, 2014, Beal Bank USA ("Beal"), without Court permission, pursuant to Federal Rule of Bankruptcy Procedure 3006 filed its proof of claim ("POC-3") in the amount of $583,865.92. POC-2 includes total arrearages of $197,236.50 as part of POC-3. (Claim 17-3). POC-3 was signed by Sava..

7. Lopez signed POC-1 and Sava signed POC-2 and POC-3 under the penalties of perjury, swearing to the factual information contained therein.

8. The Debtors had objected to POC-1 on March 30, 3013. Debtors, with leave of Court filed an Amended Objection to POC-1, POC-2 and POC-3 on September 15, 2014. In the Amended Objection, Debtors objected to all three Proofs of Claims, as it was unclear in light of Federal Rule of Bankruptcy Procedure 3006 which of the three Proofs of Claim was presently before the Court. This issue was discussed in full in the Reply to the Amended Objection (Docket Entry 188).

4

9. The Amended Objection to POC-1, POC-2 and/or POC-3 contests LNV and/or Beal's standing as well as the amounts claimed due.

10. On November 18, 2014, Debtors issued subpoenas to Lopez and Sava - the parties executed POC-1, POC-2 and POC-3 under oath. Both Subpoenas were served by certified mail. A copy of the Subpoena to Testify at a Deposition in a Bankruptcy Case to Ann Marie Waxman Lopez is attached as Exhibit A. A copy of the Subpoena to Testify at a Deposition in a Bankruptcy Case to Crystal V. Sava is attached as Exhibit B.

11. Both Subpoenas were served via Certified Mail by the United States Postal Service show that the Subpoena to Ann Marie Waxman Lopez was delivered on December 2, 2014. The records of the United States Postal Service show the Subpoena to Crystal V. Sava was delivered on November 20, 2014. A copy of both Subpoenas was sent to interested parties on November 18, 2014.

12. Thereafter, LNV and/or Beal moved to Quash both Subpoenas (Lopez and Sava). This Court after the Motion to Quash both Subpoenas was fully briefed denied the Motion to Quash on January 9, 2015. The Court then continued all matters to February 13, 2015 to allow compliance with the Subpoenas.

13. The parties have talked regarding the two Subpoenas. Initially the parties had agreed on January 30, 2015 to take the deposition of Sava on February 5, 2015 and the deposition of Lopez on February 9, 2015. The undersigned stated that the documents needed to be produced by Monday February 2, 2015 to allow the depositions to proceed as scheduled.

14. The undersigned contacted Attorney Bryan Hughes about the documents on February 2 and February 4, 2015. Finally, late in the day on February 4, 2015 the undersigned was

5

advised via the production of a document labeled as "Creditor's Privileged Log" that no
documents were being provided or produced. A copy is attached as an Exhibit.

15. In a Federal Rule of Bankruptcy Procedure 7037 Conference with Attorney Bryan
Hughes and one other attorney from his law firm, the undersigned pointed out there were
most likely documents missing. There was no document listed which showed the alleged
figures for the preparation of a Proof of Claim. The undersigned commented that either
those figures came from something or these figures were made up out of thin air. The
undersigned was told that they the numbers were not made up and that this would be
looked into. The undersigned was told that a screen print would be provided, at a later
date.

16. The undersigned also challenged the documents listed from the bottom of page three of
five to and including page four of five. Hughes and the other attorney from his firm
indicated that they had case law to support that these documents that have nothing to do
with this specific case are protected from disclosure by the Attorney Client Privilege or
the Work-product doctrine.

17. Debtors specifically believe the following documents listed starting on the bottom of
page three and on page four of the Privilege Log should be produced:

   a)   DMI Agreement May 2012.pdf.;
   b)   POC-Client Requirements Client Sheet.xlsx (DMI tab)-a few handling
        instructions for DMI proofs of claim;
   c)   DMI Agreement May 2012.docx attorney client agreement;
   d)   Proof of Claim.wpd-2009 generic proof of claim processing manual;
   e)   Proof of Claim.wpd-2011 generic proof of claim processing manual;
   f)   Electronic Filing POC.wpd-Notes about how to efile proofs of claim;
   g)   2012-064_DMI Supplemental POC process.pdf-Memorandum regarding
        implementation of Supplemental POC progress in LPS Desktop;
   h)   2012-064_DMI Supplemental POC process2.pdf-Memorandum regarding
        implementation of Supplemental POC progress in LPS Desktop;

6

    i)    2012-236_DMI PC ddf.pdf-Memorandum regarding changes to the POC process
           on LPS Desktop;

    j)    2012-236_DMI PC ddf2.pdf-Memorandum regarding changes to the POC process
           on LPS Desktop;

    k)    Update 2008-138A (Attach -BK Stage Expectations 05 22 08).xls-"Bankruptcy
           Event Expectations" Table  describing client's communication expectations with
           respect to various bankruptcy events.

    l)    2011-433_DMI bk financial info processes.pdf-Memorandum regarding LPS e
           enhancements to streamline exchange of information between attorney and client;

    m)   2011-433_DMI bk financial info processes2.pdf-Memorandum regarding LPS
           enhancements to streamline exchange of information between attorney and client.

18. Additionally, the first document listed on page one is dated May 26, 2011 and is labeled,

"Correspondence from client regarding litigation." This was substantially before the

bankruptcy case of the Debtors was even filed and no information is provided for the type

of information provided and whether this information would eventually be made public.

19. Additionally, there is an entry on page one dated June 5, 2014 labeled as, "Client

information provided for purposes of preparing for litigation." This was substantially

after the bankruptcy case of the Debtors was filed and no information is provided for the

type of information provided and whether this information would eventually be made

public.

20. On page one, two and three of the log there are a series of communications, which are

presumably email. Any of these that have to do with preparation of the Proofs of Claims

should be produced.  Specifically, the emails dated 12/27/12, 8/21/13, 6/9/14 (as to

documents) appear to convey documents and no information is provided for the type of

information provided and whether this information would eventually be made public.

21. There appears to be no documents regarding preparation and changes to POC-2 and

POC-3. Debtors find this unlikely.

22. The communications with counsel above were made with counsel in an attempt to resolve
    these differences prior to the filing of the Motion and the undersigned certifies that this
    motion complies with Federal Rule of Bankruptcy Procedure 7037

23. The Court should note that this proceeding has been pending for almost two and half
    years. Any discovery that is obtained in this case is only obtained by Court Order or at
    the very last second at a deposition. This appears to be the way Beal and/or LNV
    operate. Information is only provided if Beal and/or LNV are ordered to do so by the
    Court.

24. The Debtors have elected not to take the deposition of Lopez and Sava until this issue is
    resolved. If the depositions are taken now and the Court orders just some of the
    documents produced the depositions would have to reconvened to ask about the
    documents. The Debtors want the depositions done one time and with all information
    available seven days before the deposition. The actions of Beal and/or LNV have
    included "dumping documents" on Debtors at depositions and expecting the Debtors to
    not be properly prepared for a deposition. This is unacceptable.

25. Debtors are hopeful that a Response will be filed prior to the date this Motion is noticed
    so that another delay in this case is not necessary.

## ARGUMENT

## Privilege Log is Not Timely and is Waived

Federal Rule of Bankruptcy Procedure 9016(c)(2)(B) (which incorporates Federal Rule of
Civil Procedure 45(c)(2)(B)) requires the objecting party to raise its objection to a subpoena
(which the Privilege Log is in actuality) before "the earlier of the time specified for compliance
or 14 days after the subpoena was served." With the denial of the Motion to Quash by this

8

Court, this Privilege Log is clearly "staggered batches" as discussed below. The Court should remember that this Court when the Motion to Quash was before the Court on December 12, 2014 requested a Privilege Log several times. The first attempt at a Privilege Log now comes late in the afternoon the day before a scheduled deposition.

In *Ott vs. City of Milwaukee*, 682 F.3d 582 (7th Cir. 2012), the Seventh Circuit cited with approval a Second Circuit decision which stated that Rule 45 "require[s] the recipient of a subpoena to raise all objections at once, rather in staggered batches, so that discovery does not become a 'game'" *Ott*, 682 F.3d at 558 citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998), quoting *United States vs. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed 884 (1950). Any objection based on the attorney client privilege or work product doctrine is thus waived and cannot be considered by this Court. See also *Woodward vs. Victory Records, Inc.*, 14 CV 1887, May 21, 2014 (N.D. Ill. 2014); *Ashley vs. Schneider National Carriers*, 12 CV 8309, March 11, 2014 (N.D. Ill. 2014); *Hanwha Azdel, Inc. vs. C&D Zodiac, Inc.*, 12 CV 23, July 11, 2013 (W.D. Va. 2013); *Federal Trade Commission vs. Trudeau*, 03 C 3904, March 6, 2013 (N.D. Ill 2013); *Avila vs. Cate*, 09 CV 918, January 31, 2013 (E.D. Cal 2013); and *Sanford v. Stewart*, 11 CV 2360, October 24, 2012 (N.D. Ohio, 2012).

The "games" in Discovery process referred to in *Ott* and *DG Acquisition Corp.* are afoot in a Privilege Log took over two and half months to prepare and it is clearly missing documents.

## Information that is intended to be made public is not protected by privilege

The attorney-client privilege is designed to prevent the disclosure of confidential information about a client. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 135 (N.D.Ill. 1993) (citing *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). The privilege adheres "only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *U.S. v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1991).

9

"In order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *Morningware, Inc. vs. Hearthware Home Prod., Inc.* 2011 WL 4729922, at \*3 (N.D. Ill. 2011) (Hon. St. Eve) (citing *U.S. vs. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)).

The Seventh Circuit has stated, "the burden falls on the party seeking to invoke the privilege to establish all the essential elements." *U.S. vs. White*, 950 F.2d 426, 430 (7th Cir. 1991) (citing *Lawless*, 709 F.2d at 487). Information is not protected by the attorney client privilege where it was intended to be made public. *State ex rel. Dudek v. Circuit Court for Milwaukee County*, 34 Wis.2d 559, 580 (Wis. 1967) (permitting examination of attorney). A party cannot conceal a document by simply giving it to his attorney. *Id.*

In *U.S. v. White,* a summons was issued to an attorney requiring him to testify with respect to a tax return that he prepared for a client and the documents used in his preparation. 950 F.2d 426, 430 (7th Cir. 1991). The court found that the information sought was not protected by the attorney client privilege, as it was not produced to the attorney on a confidential basis. *Id.* "When information is transmitted to an attorney with the intent that the information will be transmitted to a third party (in this case on a tax return), such information is not confidential." *Id.* at 487.

Here, similar to *White*, LNV and/or Beal provided its attorney information that was intended to be used in preparation of the POC and the subsequent filing of the POC with the Court. That information (a) existed prior to the attorney client relationship, (b) was factual in nature, (c) did not constitute legal advice, (d) was intended to be filed as part of the public record, and (e) cannot be converted to "confidential" merely by giving it to its attorney. *Id.*

10

## a. The information requested is not legal advice from LNV and/or Beal's attorney

In *Illiana Surgery and Med. Ctr. v. Hartford Fire Ins. Co.*, the court denied a motion to quash where the subpoenaed party could not establish that it had *provided legal advice*, and as a result, held that no attorney client privilege could be asserted. 2010 WL 4852459, at \*2 (N.D.Ind. 2010). The attorney in *Illiana* was retained to review documents and then organize and present those documents on a required form. *Id*. The attorney in *Iliana* simply took information from his client, and then used that information in preparing the required form. *Id*.

In the case of *Irving Materials, Inc. v. Zurich Am. Ins. Co.*, the court held that the subpoenaed attorney had not met his burden of establishing attorney-client privilege because his services did not equate to legal advice. 2010 WL 485245, at \*2-\*3 (N.D.Ind. 2010). Instead, the attorney used information that already existed, and then used that information to prepare a legal document. *Id*. Since the information was not privileged in its ordinary form, it could not become privileged by turning it over to an attorney. *Id.*

Rather, Lopez and/or Sava were engaged to prepare the various POCs. Lopez and/or Sava took relevant information *from a client* (a client cannot provide legal advice) with the understanding that the information would be reduced to a public document in the form of the POC. Any information provided was done with the intent that such information would be transmitted to others by virtue of the filing of the POC, and is therefore not privileged. *White,* 950 F.2d at 486.

### b. LNV and/or Beal's privilege log is insufficient

When a party produces a privilege log, it is not enough for the party opposing discovery to withold an explanation as to why the documents are protected beyond just saying they are protection by the attorney client privilege. A specific explanation of why the document or

11

communication is privileged must be shown by the party claiming a privilege, such that a court

can decide whether the party has met its burden. *Allendale Mut. Ins. Co. v. Bull Data Sys.,*

*Inc.,* 152 F.R.D. 132, 137 (N.D.Ill. 1993). Mere conclusory statements of privilege will not

satisfy the burden. *U.S. vs. White*, 950 F.2d at 430-31.

LNV and/or Beal must, "describe the nature of the documents being withheld," and

provide "the specific reason [for why the] specific documents should be withheld," so that the

Court can determine whether the objections are valid. *In re Stern Walters Partners, Inc.*, 1996

WL 115290, at *5 (Bankr.N.D.Ill. 1996). If a determination cannot be made from the privilege

log (a) the specific documents being withheld, and (b) the specific reason for why the privilege

applies, then the documents will be produced. *Id.*

LNV and/or Beal took over two and half months to produce a cryptic privilege log that

does not specifically describe the documents being withheld or the specific reason for the

privilege. Even the entries under the "description" column do not provide any clarity, nor do the

individual entries provide any explanation or basis for the privilege. It is impossible for anyone

to evaluate a "privileged" document that is described with the limited description that is

provided. This privilege log is insufficient to allow "the parties and the Court [to] properly and

intelligently review the privilege and work-product claims." *Stern, supra.* The burden is neither

on the Debtors nor the Court to "ferret" out the reason for the privilege. *Id.*

    **c.**    **Analysis of the Amended Privilege Log**

The party must provide objective facts to show that the purpose of the documentation was

litigation. *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 563 (N.D.Ill. 2007).

"Materials that are produced in the ordinary course of a party's business, and not to prepare for

litigation, are outside the scope of the work product doctrine." *Id.* The primary motivating

purpose must be to aid in litigation. *Id.* LNV and/or Beal have not provided any objective facts to

show that the purpose of the documents was litigation.

## Manuals and documents described in paragraph 17 above

In the privilege log, LNV and/or Beal have conveniently asserted the "attorney client

privilege" and/or "work product" with respect to the documents. Additionally, internal manuals

are not subject to any privilege. All of these documents existed well before litigation commenced.

Therefore, work product privilege cannot be asserted because the documents were not created in

"anticipation of litigation." *Stern,* 1996 WL 115290, at *4, *5. Additionally, manuals do not

provide legal advice, and therefore, are not subject to attorney client privilege. *In re Sulfuric Acid*

*Antitrust Litigation,* 432 F.Supp.2d 794 (N.D.Ill. 2006) (antitrust compliance manuals created by

company's attorney and distributed to employees were instructional devices and not responses to

requests for legal advice, therefore not protected by attorney-client privilege).

In *Akjtar Khan v. Midland Funding LLC,* the court rejected the subpoenaed party's

argument that a firm manual was subject to attorney client privilege. In *Khan,* the court stated:

> Here, neither the Defendants nor EEC establishes that any privilege applies to the
> collection agreement or firm manual. EEC's privilege log asserts the attorney-client
> privilege and work product doctrine only in conclusory terms, and the mere fact that in-
> house counsel may have drafted the manual does not establish that it is indeed privileged
> work product. *Cf. Davis,* 131 F.R.D. at 402 ('[I]n-house counsel's law degree and office
> are not to be used to create a privileged sanctuary for corporate records.') (internal
> quotation marks omitted)). The more fundamental point, though, is that the documents
> Plaintiff seeks are not privileged. '[A] long and unbroken line of cases in this Circuit
> have established that 'in the absence of special circumstances client identity and fee
> arrangements do not fall within the attorney-client privilege because they are not the
> kinds of disclosures that would not have been made absent the privilege and their
> disclosure does not incapacitate the attorney from rendering legal advice.'
>
> 956 F.Supp.2d 515, 516-17. (citing *Torres v. Toback, Bernstein & Reiss,*
> *LLP,* 278 F.R.D. 321, 322 (E.D.N.Y.2012) (quoting *Vingelli v. United States,* 992
> F.2d 449, 452 (2d Cir.1993)).[1][2]

---

[1] Similarly, numerous cases under the Fair Debt Collection Practices Act have required disclosure of manuals
regarding collection practices and procedures. *See, e.g., Pullen v. Arrow Fin. Servs., LLC,* No. 02 Civ. 647(DJS),

Like *Khan* and *Sulfuric Acid,* LNV and/or Beal has asserted the privilege in conclusory terms without any explanation. Second, the manuals are for procedures and used as instructional devices; there is nothing to even suggest that these manuals contain legal advice.

## Remaining Documents in Privilege Log

LNV and/or Beal has asserted the work product privilege to most of these communications. However, these entries appear to be nothing more than steps used to gather information that would be filed as part of the public record or utilized at a public proceeding.

Lastly, the other descriptions are too opaque and cryptic to provide any objective reasoning as to why the attorney client privilege or work product could be asserted. As such, the claim of privilege should be rejected.

If information has been withheld, LNV and/or Beal's counsel must describe the documents and communications individually and specifically or provide to the Court for an in camera review so the Debtorsand the Court can assess and analyze the objections based on privilege on a question-by-question or document-by-document basis. *White,* 950 F.2d at 430. Even interpreting the privilege log in the light most favorable to LNV and/or Beal, it provides no clarity, no basis, and no reasoning for each proclaimed privilege. Since LNV and/or Beal continues to carry the burden, it has fallen well short of meeting the standard that applies to any privilege.

---

2002 WL 32864712, at *4–5 (D.Conn. Oct. 17, 2002); *Kimbro v. I.C. Sys., Inc.,* No. 01 Civ. 1676(DJS), 2002 WL 1816820, at *3 (D.Conn. July 22, 2002); *Yancey v. Hooten,* 180 F.R.D. 203, 213 (D.Conn.1998).

[2] *Yancey v. Hooten,* 180 F.R.D. 203 (D.Conn.1998) (granting motion to compel, "Copies of any policy manuals or instructions used by defendants or persons under their supervision regarding collection practices or procedures."); *Boutvis v. Risk Management Alternatives, Inc.,* 2002 WL 971666 *3 (D.Conn. May 3, 2002) (compelling production of "manuals, written procedures, and protocols defendant uses in complying with the FDCPA and in accessing and reporting to credit bureaus"); and *Kimbro v. I.C. System, Inc.,* 2002 WL 1816820 (D.Conn. July 22, 2002) (granting motion to compel production of "the manuals, written procedures, and protocols defendant uses in complying with the FDCPA and in accessing and reporting to credit bureaus.").

14

## CONCLUSION

LNV and/or Beal's counsel's failure to comply with the subpoena is nothing more than a tactic designed to evade the fundamental discovery process. Discovery is not optional; it is the only vehicle available to aid the parties in resolving questions of fact. The Debtors request that this Court reject LNV and/or Beal's attempt to further delay these proceedings and order the disclosure of all documentation in the privilege log.

**WHEREFORE**, Debtors, Christopher and Marcia Swift, prays that this Honorable Court order LNV and/or Beal's counsel to tender all documents in the privilege log and any other documents responsive to the subpoena within seven days, for Beal and/or LNV to pay the Attorney Fees of the undersigned for this Motion and this proceeding in whole and for any further relief this Court deems just.

Dated: February 5, 2015

Respectfully Submitted,

/s/ Paul M. Bach
Paul M. Bach, Esq. #6209530
Counsel for Debtor
Bach Law Offices
P.O. Box 1285
Northbrook, Illinois 60065
Phone (847) 564 0808

15

**Plaintiffs' <u>Exhibit F</u>**

CAUSE NO.  DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION, | § | IN THE DISTRICT COURT OF |
| ITS SUCCESSORS AND ASSIGNS, | § | |
|     PLAINTIFF | § | |
| | § | |
| VS. | § | |
| | § | |
| SAMUEL G. BREITLING, | § | DALLAS COUNTY, TEXAS |
| JO ANN BREITLING, | § | |
| GMAC MORTGAGE, LLC FKA | § | |
| NORWEST MORTGAGE, INC., | § | |
| PINNACLE REALTY ADVISORS, INC., | § | |
| AND PALISADES ACQUISITION V, LLC | § | |
|     DEFENDANTS | § | 134TH JUDICIAL DISTRICT |

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned notary, on this day, personally appeared _____**Edward J. Bagdon**_____, a person whose identity is known to me. After I administered an oath to his/her, upon his/her oath, he/she said:

1.  "My name is _____**Edward J. Bagdon**_____. I am over the age of 21 years, of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein. I have obtained personal knowledge of events described below through my review of business records during the normal course of business.

2.  I am the _____**Authorized Signer**_____ for LNV CORPORATION. As such, I have access to the records for LNV CORPORATION. LNV CORPORATION maintains these records in the regular course of its business. I am qualified to attest to these records by virtue of my duties and have reviewed the documents sought to be admitted.

3.  Attached to this affidavit are forty-five (45) pages of records maintained by LNV CORPORATION.

4.  I am familiar with the record-keeping process as it existed when the entry was made. These business records are now kept by LNV CORPORATION in the regular course of its business. These business records were generated pursuant to a course of regularly conducted business activity and such records are created by or from information transmitted by a person with knowledge, at or near the time of the event. The records attached to this affidavit are the original or exact duplicates of the original."

C&S 14-0070                                   1

# EXHIBIT "A"

_____

_____, Affiant
Edward J. Bagdon

Date: _____6/17/14_____

THE STATE OF _____Illinois_____ §

COUNTY OF _____Lake_____ §

      BEFORE ME, the undersigned notary public, on this day personally appeared _____Edward J. Bagdon_____ as _____Authorized Signer_____ of LNV CORPORATION, (known to me) (or proved to me on the oath of _____) or (through description of identity card or other document_____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration therein expressed.

      Given under my hand and seal of office this __17__ day of __June_____, 2014.

_____
Notary Public, State of _____Illinois_____
Notary's Printed Name _____Yesenia Alonzo-Nino_____
My commission expires: _____9-18-14_____
Seal:

YESENIA ALONZO-NINO
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
September 18, 2014

C&S 14-0070           2

# Information Sheet of Edward J. Bagdon

Herein are close-up signatures of Edward J. Bagdon on mortgage documents from 1993 through 2014.  He is employed by Dovenmuehle Mortgage Inc., but signs as an executive officer of a number of different banks and financial institutions.

DOVENMUEHLE MORTGAGE, INC.

By: _____

Edward Bagdon, Its Assistant Vice President

*Signature from a 1993 mortgage record*

DOVENMUEHLE MORTGAGE, INC., A Delaware Corporation

By: _____

Edward Bagdon, Its Assistant Vice President

*2nd Signature from a 1993 mortgage record*

AMSOUTH BANK SUCCESSOR BY MERGER FIRST AMERICAN NATIONAL BANK

BY: _____

EDWARD J. BAGDON, Vice President

BY: _____

BRUCE E. BORSOM, Vice President

*Signature as VP of AmSouth Bank from a 2000 mortgage record*

e above referenced security instrument be

ALLEGACY FEDERAL CREDIT UNION

By : _____

Edward J Bagdon Vice President

on 7.24.13 , Laura  Dugger, a Notary Public State of Illinois, personally appeared Edward EGACY FEDERAL CREDIT UNION, personally known to

*Signature from a 2013 mortgage record*

TIB - THE INDEPENDENT BANKERSBANK

On August 27, 2007

By : _____

Edward J. Bagdon Vice President

*Signature from a 2007 mortgage record*

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR THE BENEFICIAL OWNER LNV CORPORATION

On July 30, 2012

By : _____

Edward J. Bagdon Asst. Secretary

*Signature from a 2012 mortgage record as Asst. Secretary of MERS*

CAROLINA FIRST BANK

On January 31, 2003

By : _____

Edward J. Bagdon Vice President

STATE OF ILLINOIS
COUNTY OF COOK

*Signature from a 2003 mortgage record as VP of Carolina First Bank*

ALLEGACY FEDERAL CREDIT UNION, F/K/A REYNOLDS CAROLINA FEDERAL CREDIT UNION

By : _____

Edward J. Bagdon Vice President

this 13th day of May 2004 ,
Notary Public in and for the County of Cook,
ared Edward J. Bagdon Vice President of

*Signature from a 2004 mortgage record*

( CORPORATE
SEAL )

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS SOLE NOMINEE FOR
By :  THE BENEFICIAL OWNER NEW DAY
FINANCIAL, LLC.

Edward J. Bagdon  Vice President

STATE OF Illinois
COUNTY OF Lake

Personally  appeared before me  on  01-11-201, Yesenia  Alonzo-Nino, a Notary
Public in and for the County of Lake, State of Illinois, personally appeared
Edward J. Bagdon Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS SOLE NOMINEE FOR THE BENEFICIAL OWNER NEW DAY FINANCIAL, LLC.,

**Signature as VP of MERS from a 2011 mortgage record**

PEOPLES BANK AND TRUST, FORMERLY
KNOWN AS NEW SOUTH BANK FOR SAVINGS BY
DOVENMUEHLE MORTGAGE, INC. ITS
ATTORNEY IN FACT, (POA RECORDED 9/27/99,
BK 82, PG 737)

BY:

EDWARD J. BAGDON, Assistant Vice President

BY:

WILLIAM B. CORCORAN, Assistant Secretary

**Signature as Assistant VP of Peoples Bank and**
**Trust from a 2000 mortgage record**

IN WITNESS WHEREOF , the undersigned , by the officer
Executed  as  a  free  act  and  deed  the  foregoing

MUTUAL OF OMAHA BANK

On May 08, 2012

By :
Edward J. Bagdon Authorized Signer

STATE OF Illinois
COUNTY OF Kane

**Signature from a 2012 mortgage record**

PEOPLE'S BANK AND TRUST COMPANY, F/K/A NEW SOUTH
BANK FOR SAVINGS, BY DOVENMUEHLE MORTGAGE, INC., ITS
ATTORNEY-IN-FACT, AS RECORDED FOR DESOTO COUNTY, MS,
RECORDED 9/27/1999, BOOK 82, PAGE 737.

On June 01, 2004

By :
Edward J. Bagdon Asst. Vice
President

STATE OF Illinois
COUNTY OF Cook

**Signature as VP of Peoples Bank and Trust from a 2004**
**mortgage record**

t this Certificate of Satisfaction be recorded
ty instrument be canceled of record.

ALLEGACY FEDERAL CREDIT UNION

By :
Edward J. Bagdon Vice President

on 7/10/10, Candi  Kasten, a Notary Public
State of Illinois, personally appeared Edward
LEGACY FEDERAL CREDIT UNION, personally known to

**Signature as Assistant VP of Peoples Bank and**
**Trust from a 2010 mortgage record**

THE PEOPLES BANK AND TRUST COMPANY, S/B/M NEW SOUTH
BANK, S.B., F/K/A NEW SOUTH BANK FOR SAVINGS,
F.S.B., BY DOVENMUEHLE MORTGAGE, INC., AS
ATTORNEY-IN-FACT FOR DESOTO COUNTY, MS, PURSUANT TO
A POWER OF ATTORNEY RECORDED ON 09/27/99, IN BOOK
82, PAGE 737

On June 06, 2002

By :
Edward J. Bagdon Asst. Vice
President

STATE OF Illinois
COUNTY OF Cook

Sworn to and subscribed on 6/6/2002 before me,
Public in and for the County of Cook, State of Ill.

**Signature as Assistant VP of Peoples Bank and Trust from a**
**2002 mortgage record**

# Plaintiffs' <u>Exhibit G</u>

**Breitlings letter addressed to Judge Tillery about the Lane Law Firm filed on July 30, 2014 in the 134th Dallas District Court Case # DC-14-04053**

FILED
DALLAS COUNTY
7/30/2014 9:41:44 AM
GARY FITZSIMMONS
DISTRICT CLERK

## To Be Filed into Court Record

July 30, 2014

Judge Dale Tillery Presiding
134th Judicial District Court
600 Commerce Street, 6th Floor, Room 650
Dallas, Texas 75202-4606

To the Honorable Judge Dale Tillery,

RE:  Motion to withdraw from case DC-14-04053 filed by Robert C. Lane, Anh Thu N. Dinh, Kelsi M. Wade, and the Lane Law Firm

My husband, Samuel G. Breitling, and I, JoAnn S. Breitling, wish to express that we intended to terminate the Lane Law Firm after a phone conversation I had with them on July 28, 2014. However, I am appalled that they filed statements in their motion to withdraw filed on July 29, 2014 that gives the appearance of wrongdoing on our part.  These statements are false and have the potential to defame our good character and to cause harm to us.

I hired the Lane Law Firm in good faith on June 10, 2014 based on my conversation with Greg Tidmore, who I thought was an attorney.  Greg told me that the Lane Law Firm has had other cases with LNV Corporation and that they had recently won a case against them.  I explained that my case was not a typical foreclosure case and that we had been in litigation previously with MGC Mortgage Inc. a company owned by D. Andrew Beal, who also owns LNV Corporation.  My prior attorney told me to stop making payments to MGC because based on the evidence uncovered through discovery in these earlier cases where we were the plaintiffs he had determined that MGC lacked standing to collect payments from us.  We were not in a default. My complaints about MGC in these earlier cases had centered on overcharges, misappropriation of payments, and other egregious violations of TILA and RESPA. During discovery in these cases evidence of significant fraud was uncovered.  (See cases DC-10-02189 and DC-11-07087 in the 116th Judicial District Court.)  I ultimately non-suited these cases; and this was ordered without prejudice so that I could file a new case that included claims based on fraud.

MGC had dragged our second case out nearly a year by constantly asking the court for more time to gather their evidence; then kept filing for summary judgments to avoid a jury trial and never produced documents my attorneys requested. I was forced to non-suit in July 2013 due to a severe illness with my mentally retarded son.  He almost died and was hospitalized several times before he stabilized.  My husband is also disabled and we are both in our late 60s so this was an exceptionally difficult and stressful period for us.

I connected with several other victims of MGC and Dovenmuehle Mortgage Inc., a "sub-servicer" used by MGC apparently because MGC does not have an IRS EIN number.  Plenty of evidence exists to support this as fact; however this letter is not the place for it.  I learned about LNV Corporation and the hundreds of other sham or "shell" companies created by D. Andrew Beal and how they operate.  I told Greg there were many other victims of LNV and the other Beal companies and that collectively we had evidence to prove intent to defraud and to show a pattern of enterprise fraud that reached RICO standards.  These companies created by D. Andrew Beal exist only on paper and they have a history of fabricating false defaults with intent to foreclose on properties when they know they do not have the proper documents or legal authority to do so.

They routinely commit fraud upon the court with false affidavits and other false documents they know are false and know that judges will rely on to be genuine.  The IRS and United States Federal District Judges have determined that D. Andrew Beal creates sham companies for fraudulent tax shelters (See Southgate Master Fund, LLC v. US, 659 F. 3d 466 - Court of Appeals, 5th Circuit 2011 and Bemont Investments, L.L.C. v. United States, 679 F.3d 339, 5th Cir. 2012)  I've attached these two cases to this letter. They were submitted in a motion for judicial notice in the case of another LNV victim, Catherine Gebhardt, from Tennessee.  The most relevant material is highlighted so it is easier to read.  This material was attached to a complaint to the Illinois Bar along with my photos of the empty lot where MGC is supposed to be located so I just attached that entire complaint letter to this letter. This should give your Honor a better understanding of the criminal activities of these Beal companies and their owner D. Andrew "Andy" Beal.

I actually visited the alleged location of Dovenmuehle's office at 1 Corporate Dr, Ste. 360, Lake Zurich, IL 60047, on April 10th 2014 and discovered that Dovenmuehle is not actually located at this address. I also earlier visited the address for MGC's corporate headquarters, 7195 Dallas Parkway, Plano TX. It is an empty lot. I took pictures and they are attached to this letter. I gave these photos to Greg Tidmore.

My primary concern when I first contacted the Lane Law Firm was that LNV had sued me in a different district court where a new judge was completely unaware of the earlier litigation history and LNV used an *in rem* claim which gives the appearance to the new court and new judge that the owner of the property is unknown and it is sitting vacant and vandalized; an eyesore to the neighborhood. Nothing could be further from the truth.  We bought our home in 1982 and have lived in it and kept it well maintained for 32 years.  All our neighbors know us and that we are the owners of our home; so an *in rem* action is completely inappropriate.  I looked up the meaning of *in rem* online so I know what it means:

http://en.wikipedia.org/wiki/In_rem_jurisdiction
From Wikipedia, the free encyclopedia
**In rem jurisdiction**

*In rem* (Latin, power about or against "the thing"[1]) is a legal term describing the power a court may exercise over property (either real or personal) or a "status" against a person over whom the court does not have "in personam jurisdiction." Jurisdiction in rem assumes the property or status is the primary object of the action, rather than personal liabilities not necessarily associated with the property (quasi in rem jurisdiction).

Within the American state court systems, jurisdiction in rem may refer to the power the state court may exercise over real property or personal property or a person's marital status. State courts have the power to determine legal ownership of any real or personal property within the state's boundaries.

A right in rem or a judgment in rem binds the world as opposed to rights and judgments inter partes which only bind those involved in their creation.

Originally, the notion of in rem jurisdiction arose in situations in which property was identified but the owner was unknown.  Courts fell into the practice of styling a case not as "John Doe, Unknown owner of (Property)", but as just "Ex Parte (property)" or perhaps the awkward "State v. (Property)", usually followed by a notice by publication seeking claimants to title to the property…

It is clear that LNV intended to give this court such a false impression of the facts by the statement they make on page 7 of their petition to foreclose: "Otherwise, the property will continue to be a wasting asset that is subject to vandalism and deterioration."

Furthermore LNV claims in their petition for foreclosure that they sent me a debt demand letter dated March 14, 2014, see page 53 (Exhibit H) of LNV's Petition.  I did not receive that letter until after LNV filed their petition in this action. What they fail to show this court is that I responded to a similar demand letter dated January 14, 2014.  I challenged their claim of debt in its entirety in a letter dated February 3, 2014 and then again in a letter dated March 11, 2014 where I demanded they reimburse me for payments I made to them before I learned they had no legal standing to take my payments.  In their written response to my letter they make no reference to my challenge of the debt validity but responded that their client would not reimburse me.  See the attached copies of these letters.  Greg was given copies of these letters which show LNV and their law firm, Codilis and Stawiarski, intentionally violated the Fair Debt Collection Practices Act and omitted and misrepresented facts with intent to deceive this court.

When I discovered that the court ordered an *in rem* summary judgment in favor of LNV and had closed the case I nearly had a heart attack.  I called the Lane Law Firm but Anh Thu N. Dinh couldn't talk with me because she had a deposition.  Brian Thorn, another Lane Law Firm employee told me it wasn't anything to worry about.  He told me when a case was closed it was always a good thing for the client.  If it hadn't been for my own persistence with the clerk of the court this "mistake" could have cost us our beloved home of 32 years.  Where would we go and how could we recover from such a terrible financial setback at our age?

In my earlier litigation MGC's counsel, Scott Hayes, had motioned the court for us to pay their attorney fees. The court denied their motion but due to the crazy way he kept re-opening an older case (an earlier judge recused himself because he had practiced law with Scott Hayes who was a new attorney for MGC so it looked like two cases were going on at the same time for a while.)  The order that had been submitted with Scott Hayes motion accidently got signed by the judge a couple months after the motion was denied and a judgment for some $18,000 was entered against us. I immediately told my attorney. She took it very seriously and resolved the mistake quickly; unlike what happened with the Lane Law Firm in this case.

It seems "mistakes" happen a lot with the attorneys who work for Andy Beal's companies. In the Cammy Depew case in Louisiana the Dean Morris law firm added the words "with prejudice" to a denial order when the judge never said those words. Cammy is pro-se and it took her some time to figure out how to fix this problem. Cammy had gotten a copy of the hearing minutes and filed a motion to correct the order which was granted. In the meantime Dean Morris had fraudulently sold her home. This was definitely not a "mistake." (*Cammy Depew vs. LNV Corporation, Case # 14-00284, United States District Court Middle District of Louisiana*.)

The Dean Morris law firm, like Codilis and Stawiarski, are LPS service providers. Lender Processing Services, or LPS, is one of the companies Lorraine Brown used to commit her crimes. In fact the United States convicted un-named co-conspirators with Lorraine Brown. These LPS law firms all use the LPS computer system and do the same things for which Lorraine Brown was convicted. They should be sitting in prison next to her instead of continuing to commit fraud upon the court and stealing people's homes. The Beal companies and their attorneys have history of abusing the courts.

I expressed my fear to Greg from the beginning that LNV (Andy Beal) was "judge shopping" and was trying to get through a back door in a new court when they were unable to succeed in the original court.  Initially Greg Tidmore told me the Lane Law Firm would aggressively pursue a

defense and file a counter suit for us based on claims of fraud and lack of standing.  Greg said he understood why it would be a good idea to remand back to the original court, but then later he suggested it might be better to stay in this court, but I never really understood his reasoning for this.  He seemed to think it would be better to hide my past litigation from this court, but I feel this is dishonest and that continuity in judicial review would only help me and not hurt me.  Just recently after I again brought up the issue of remanding back to my original court, Greg in an email told me I could not judge shop; which is not at all what I was trying to do; I was attempting to prevent LNV from judge shopping.

In a phone conversation on July 23rd Greg told me that attorney and senior partner to the Lane Law Firm, Chip Lane, had dinner with Neil Garfield at his home. He told me they follow Garfield's blog daily.  Greg insisted that they (the Lane Law Firm) get the bigger picture.  Greg has continually insisted his law firm understood that my case was not a simple case of foreclosure defense; that I had a four year history of litigation with Beal companies and they have proven to be ruthless in their attempts to deceive the court with false statements, false affidavits, forged and falsified signatures; and other methods of deception.  This is true with all the cases for the victims I know about, which is approximately twenty cases.  Several victims have reason to believe their attorneys had been paid off by Beal to throw their cases.  The Catherine Gebhardt case in Tennessee is the most blatant example of this.  (*LNV Corporation v. Catherine Gebhardt, Case No. 3:12-CV-468-TAV-HBG, United States District Court Eastern District of Tennessee at Knoxville*.)

Because of my past experiences, and what I know about other victims' experiences, I had asked Greg to allow me to review anything they planned to file with the court to insure that it was true and accurate.  On June 23, 2014 our initial response to LNV's petition was filed.  I believe the deadline was closer to the 30th so I had been given time to review it.  I was disappointed that it was a very generic template type response of general denial; but while I was disappointed that their answer was too "general" I thought this was because they were still new to my case and they would do better job the next time after reviewing all my materials and evidence.

My answer to LNVs Motion for summary judgment had to be filed by 5:00 PM on July 28, 2014 and Greg Tidmore did not email this pleading for my review until approximately 1:00 PM.  I do not think I am a difficult or a demanding person, but I know from past experience that defending against a summary judgment is an extremely important event.  I was very concerned about the generalized answer that Anh Thu N. Dinh prepared.  I felt that it was not appropriate, accurate or true.  If wanting to tell the truth makes me a "difficult and demanding client", then I guess I am.

On numerous occasions Greg told me that at some point the judge will give LNV permission to foreclose; all judges do he said, and Greg said when our case gets to that point this is when we sue them and remand it back to the original court.  I told Anh that I felt like it was time to inform the court, and your Honorable Judge that there is a four year history of litigation where I was the plaintiff.  I feel that for justice to be served this case should be remanded back to the original court and to Judge Tonya Parker in the 116th district court who is familiar with the tactics and shenanigans of the Beal companies and the attorneys who work for them.

Yesterday I asked Ahn when she was going to do a countersuit – she said she would not.  This is conflict with what Greg told me earlier.  She said she is stopping the foreclosure and this is all she is doing.  Ahn told me even if there had been time for changes to her pleading she would not make them.  Because there was no time to do anything else I had no choice but to allow her to file the pleading in order to meet the deadline.  Shortly after my conversation with her, she and Greg called me.  In this conversation with Anh and Greg, Greg told me that Neil Garfield's techniques

won't work in Texas.  Ahn told me that no one gets a free house and it appeared to her I couldn't afford to live in our home.  This is something one might expect an opposing counsel to say.

We were devastated by this entire ordeal.  My husband has a heart condition and has been depressed and ill since this happened.  We have been through so much anguish already and now we feel we've been victimized by the attorney's we trusted to help us.

One of the other Beal victims did research on Greg Tidmore when I told her what happened and she discovered he's not an attorney as I thought.  He's basically a salesman; one who is willing to stretch the truth more than a little to make a sale.  Greg is also a real estate investor and a "certified distressed property expert" who served as a COO of a "We Buy Ugly Houses" franchise.  (I've attached his LinkedIn and ZoomInfo profiles.)  Considering that Greg earns income when homeowners believe they have no choice but to short sale their home, or when homeowner's default and lose their homes to foreclosure, I think a genuine conflict of interest exists here.

Greg misrepresented himself and the Lane Law Firm and their plan for representing me.  This is wrong. It is unethical. It is also a violation of our right to due process.  By misrepresenting themselves and their intent the Lane Law Firm has deprived us of an opportunity to have effective counsel.  They took our money but failed to provide the service they advertised through their salesman, Greg Tidmore.

When law firms advertise that they help homeowners in foreclosure and then they treat all cases with the same cookie cutter approach they actually harm their clients.  It appears to me they don't really want to do the work it takes to actually research the facts in their clients' cases and prepare a case specific to those facts.  I have seen at least one case where Lane Law Firm wrote a very specific pleading for their client; why did they treat our case with a cookie cutter approach that will cause us to lose our home?  Is it because that client paid them a lot more?  Is it because I'm a senior citizen and they thought I wouldn't know the difference?

I do not oppose the withdrawal of the Lane Law firm at this time.  However I needed to set the record straight about what happened.

I wish to have this case remanded to the 116th District court for further disposition.  I will file a motion to do this, but until I find another attorney I have no choice now but to proceed by representing myself.  I've been unable to find an example of a pleading remanding a case back to a different Texas district court.  Everything I could find is for remanding back to a State court from a Federal court; so I beseech the court to provide me assistance in finding the proper procedure to remand this case to the original 116th District court and Judge Tonya Parker.


Very sincerely

Samuel G. Breitling
JoAnn S. Breitling





# Plaintiffs' <u>Exhibit H</u>

**Law Article by Brenda Saino, Texas Attorney, titled: "<u>Federal Judge Sanctions Firm, Three Lawyers</u>" published on August 6, 2014.**

http://www.texaslawyer.com/id=1202665978601/Federal-Judge-Sanctions-Firm-Three-Lawyers?slreturn=20150105203445

# Federal Judge Sanctions Firm, Three Lawyers

Brenda Sapino Jeffreys, Texas Lawyer

August 6, 2014

U.S. District Judge David Hittner of the Southern District of Texas signed an order on Aug. 5 sanctioning the Lane Law Firm of Houston and three attorneys for Rule 11 violations for asserting causes of action barred by the statute of limitations.

Hittner found that sanctions against the firm and lawyers were necessary to "deter" them from "advocating claims or arguments in the future that have been considered and rejected by the Fifth Circuit." He also found that because the plaintiffs' attorneys "misled" him by failing to cite a U.S. Court of Appeals for the Fifth Circuit opinion in supplemental briefing in other lawsuits, sanctions were necessary to "encourage plaintiffs' attorneys to be more truthful and candid in the future."

In a 21-page order, Hittner issued a formal sanction reprimanding the Lane Law Firm and attorneys Robert Chamless Lane, Anh Thu Dinh and Thomas Barta for violating Rule 11. He admonished them that another Rule 11 violation would result in "imposition of more severe sanctions."

Hittner ordered the clerk to forward a copy of the order of sanctions to every district and magistrate judge in the Southern District, and he ordered the firm to deliver a copy of the order to all of its attorneys. He also ordered the clerk to place a notation in Lane's Southern District of Texas attorney admissions records that formal sanctions have been issued against him in five civil suits, a notation in Dinh's records that formal sanctions were issued against her in four civil suits and a notation in Barta's records that formal sanctions were issued against him in one civil suit.

"It's bad timing, and certainly not the type of press we like," said Lane. "We're certainly disappointed by the court's ruling today. Our attorneys and our staff certainly have the utmost respect for Judge Hittner."

Dinh did not immediately return a telephone message seeking comment. Barta is no longer at the nine-lawyer firm, although his State Bar of Texas record lists a number at Lane Law Firm. Lane said that Barta left the firm a few weeks ago for family reasons and planned to move to another state.

## What Happened?

Here are the facts, according to the Order of Sanctions.

Hittner issued orders on June 9 dismissing five lawsuits filed by Lane's firm: lawsuits that Barney A. Gonzalez III and Jeffery K. and Deborah M. Hayman, each filed against Bank of America; suits that Norma Calidonio and Judy Jack each filed against Deutsche Bank National Trust Co.; and a suit that Gyorgy B. Torok filed against Wells Fargo Bank and Ocwen Loan Servicing. All lawsuits were dismissed because they were barred by the statute of limitations.

"In these five cases, plaintiffs had alleged exactly the same causes of action against defendants for violations of the Texas Constitution, breach of contract or to enforce contract, and quiet title, all based on alleged violations of Article 16, Section 50(a)(6) of the Texas Constitution," Hittner wrote.

However, Hittner wrote, the Fifth Circuit in February held in Priester v. JP Morgan Chase Bank NA that a four-year statute of limitations applies to causes of action under §50(a)(6).

Hittner wrote that despite Priester, "attorneys with the Lane Law Firm" continued to assert causes of action based on §50(a)(6), and they appealed dismissal of one case, Moran v. Ocwen Loan Servicing. On March 24 the

Fifth Circuit in Moran reaffirmed Priester, but attorneys with Lane Law Firm later filed "almost identical" supplemental briefing in the five lawsuits, arguing Priester was "wrong" and not mentioning Moran.

Hittner ordered "Lane, Dinh and Barta (collectively the plaintiffs' attorneys)" to attend a hearing on June 18 to show cause why the supplemental briefings were not presented to cause unnecessary delay or to purposely mislead the court in the wake of Moran.

Hittner wrote that the "plaintiffs' attorneys'" conduct was "at minimum, misleading" as to the state of the law when they failed to cite Moran in the supplemental briefing. He also wrote that he found the legal contentions in the supplemental briefing were "not warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or establishing new law."

Hittner found that Lane violated Rule 11 with respect to supplemental briefing in all five lawsuits; Dinh violated Rule 11 in supplemental briefing in the Gonzalez, Hayman, Calidonio and Torok lawsuits; and Barta violated Rule 11 with respect to supplemental briefing in the Jack lawsuit. He found that the firm was jointly responsible for the Rule 11 violations committed by the three attorneys.

Hittner wrote that the reprimand and admonishment, and other related orders, were "appropriate and are the least severe sanctions that further the purposes of Rule 11."

In hindsight, Lane said, they should have mentioned Moran in the supplemental briefings.

"If I had a do-over, I would have absolutely raised the issue. I should have at least dropped a footnote in there," he said, adding that he didn't cite Moran because it was unpublished.

"The Moran opinion basically said, 'We are not going to reopen this issue … because it's already decided in Priester,'" Lane said.

Lane said the firm has a large docket of suits filed on behalf of homeowners who are suing lenders over issues with home equity loans. Many are pending in state district courts, and he said his firm intends to ask the Texas Supreme Court to take up the statute of limitations issue in one of the suits.

# Plaintiffs' <u>Exhibit Z</u>

**Nevada Secretary of State listing for LNV Corporation**

**LNV is a shell corporation with a value of only $100**

Plaintiff's Exhibit 25

