# EXHIBIT C-16

FILED
DALLAS COUNTY
2/17/2015 5:05:39 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:15-cv-00703-B   Document 1-19   Filed 03/03/15   Page 2 of 36   PageID 292

CAUSE NO. DC-14-09604

| | | |
|---|---|---|
| SAMUEL G. BREITLING and JO ANN BREITLING | § § § | IN THE DISTRICT COURT OF |
| vs. | § § | |
| LNV CORPORATION, CODILIS & STAWIARSKI, P.C., DOVENMUEHLE MORTGAGE, INC., MGC MORTGAGE, INC. and DALE B. TILLERY | § § § § § | DALLAS COUNTY, TEXAS |
| | | 101ST JUDICIAL DISTRICT |

## DEFENDANT CODILIS & STAWIARSKI, P.C.'S MOTION TO TRANSFER PURSUANT TO LOCAL RULE 1.06

Defendant Codilis & Stawiarski, P.C. (the "Codilis Firm"), moves for transfer of Cause

No. DC-14-09604 to the 116th Judicial District Court, Dallas County, Texas, and shows:

### I.
### BACKGROUND

1.    Plaintiffs Samuel G. Breitling and Jo Ann Breitling ("Plaintiffs") filed a lawsuit

against Defendant MGC Mortage, Inc. ("MGC") and Aames Funding Corporation d/b/a Aames

Homes Loans ("Aames") in the 116th Judicial District Court, Dallas County, Texas, on February

25, 2010, cause number DC-10-02189. Plaintiffs' claims against Aames and MGC were based on

a mortgage note signed by Plaintiffs on October 20, 2000, and serviced by MGC beginning in

October 2008 (Exhibit A). Plaintiffs non-suited their claims against MGC and Aames without

prejudice on June 22, 2011 (Exhibit B).

2.    Plaintiffs sued MGC again on June 7, 2011. Plaintiffs' claims against MGC in the

second lawsuit were based on the same mortgage note signed by Plaintiffs on October 20, 2000

and serviced by MGC beginning in October 2008 (Exhibit C). The second lawsuit was initially

assigned to the 44th Judicial District Court, cause number DC-11-07087. On June 27, 2011, the

second lawsuit was transferred to the 116th Judicial District Court, pursuant to Rules 1.06 and

1.07.a. of the Local Rules of the Civil Courts of Dallas County. Plaintiffs non-suited their claims against MGC without prejudice for a second time on July 29, 2013 (Exhibit D).

3.       Plaintiffs sued MGC, the Codilis Firm, LNV Corporation ("LNV"), Dovenmuele MortgaGe, Inc. ("DMI"), and Judge Dale B. Tillery (collectively "Defendants") on September 29, 2014 in the 101st Judicial District Court, Dallas County, Texas, cause number DC-14-09604. Plaintiffs' claims against the Defendants are again based on the same mortgage note signed by Plaintiffs on October 20, 2000 and serviced by MGC since October 2008.  This case was removed to Federal Court, but remanded by order dated January 27, 2015 (Exhibit E).  Since remand, there have been no hearings or other proceedings.

## II.
## ARGUMENT AND AUTHORITIES

4.       Where any pending case is so related to a case previously filed in or disposed of by another Dallas County Court, that a transfer of the later case to the Dallas County Court in which the previous case was filed would ". . . facilitate orderly and efficient disposition of the litigation, the Judge of the Court in which the earlier case is or was pending may, upon notice to all affected parties and Courts, transfer the later case to such Court." TEX. DIST. CT. DALLAS CTY LR 1.06. A case which arises out of the same transaction or occurrence as an earlier case, particularly when dismissed by plaintiff before final judgment, is subject to transfer to the court where the earlier case was filed. TEX. DIST. CT. DALLAS CTY LR 1.07.a.

5.       Here, Cause No. DC-14-09604 is so related to the two previous cases filed and non-suited by Plaintiffs in the 116th District Court, that transfer of Cause No. DC-14-09604 to the 116th District Court would facilitate orderly and efficient disposition of the litigation. Cause No. DC-14-09604 is subject to transfer under Rules 1.06 and 1.07 because it is based on the

October 20, 2000 mortgage note signed by Plaintiffs, the same transaction made the basis of the previous suits filed by Plaintiffs against MGC in the 116th District Court.

## III.
## PRAYER

WHEREFORE, Defendant Codilis & Stawiarski, P.C. prays that this action be transferred to the 116th District Court, and for general relief.

Respectfully submitted,

**MACDONALD DEVIN, P.C.**

By: _____

Clayton E. Devin
State Bar No. 05787700
CDevin@MacdonaldDevin.com
John R. Sigety
State Bar No. 24083853
JSigety@MacdonaldDevin.com

3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
214.744.3300 Telephone
214.747.0942 Facsimile

**ATTORNEYS FOR CODILIS & STAWIARSKI, P.C.**

## CERTIFICATE OF CONFERENCE

Counsel for the Movant has attempted to confer with Plaintiffs via email (Exhibit F), but Plaintiffs have not responded.  Counsel for the Movant personally conferred with counsel for LNV Corporation, MGC Mortgage, Inc., and Judge Dale B. Tillery.  Counsel for LNV and MGC confirmed that their clients consent to the requested relief.  Counsel for Judge Dale B. Tillery has represented the Honorable Tonya Parker in connection with an unrelated matter, and does not consent, based on a potential conflict of interest.

CLAYTON E. DEVIN / JOHN R. SIGETY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the TEXAS RULES OF CIVIL PROCEDURE, on the 17 day of February, 2015.

CLAYTON E. DEVIN / JOHN R. SIGETY

*Defendant Codilis & Stawiarski, P.C.'s Motion to Transfer – Page 4*

#876375  2930.7



Exhibit A

CAUSE NO. ___10-00189___ FILED

10 FEB 25  A1 0:25

MIGEL HERNANDEZ _____ DEPUTY

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JO ANN BREITLING, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | |
| AAMES FUNDING CORPORATION d/b/a AAMES HOME LOANS, AND MGC MORTGAGE, INC., | § § § § | 14th A ___ JUDICIAL DISTRICT |
| Defendant. | § § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, Samuel G. Breitling and Jo Ann Breitling ("Plaintiffs" or "Breitlings"), file this Original Petition, complaining of Defendants, Aames Funding Corporation d/b/a Aames Home Loans ("Aames"), and MGC Mortgage, Inc. ("MGC"), as follows:

### I.
### Parties

1.      Plaintiff Samuel G. Breitling is an individual residing in Sachse, Dallas County, Texas.

2.      Plaintiff Jo Ann Breitling is an individual residing in Sachse, Dallas County, Texas.

3.      Defendant Aames Funding Corporation d/b/a Aames Home Loans is a California corporation which is currently transacting business within the State of Texas within the meaning of §17.042 of the Texas Civil Practice and Remedies Code, or which formerly transacted business within the State of Texas, by entering into a contract with a Texas resident to be performed by either party within the State, and by committing a tort within the State of Texas.

PLAINTIFFS' ORIGINAL PETITION                                                    Page 1

Accordingly, such Defendant has been deemed to have appointed the Texas Secretary of State as its agent for service of process pursuant to §17.044 of the Texas Civil Practice and Remedies Code, who shall forward the citation and petition via certified mail, return receipt requested, to such Defendant at its home office address, at 15090 Avenue of Sciences, Suite 200, San Diego, California 92128.

4.     Defendant MGC Mortgage, Inc. is a Texas corporation, which may be served by and through its registered agent, CT Corporation System, located at 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201.

## II.
## Discovery Control Plan

5.     Plaintiffs intend to conduct Level 2 discovery in this case pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

## III.
## Jurisdiction and Venue

6.     Venue is proper in Dallas County, Texas, because the real property at issue is located herein, and Plaintiffs reside in, Dallas County, Texas.   Also, the causes of action sued upon herein arose or accrued in Dallas County, Texas.

7.     The amount in controversy exceeds the minimum jurisdictional limits for this Court.

## IV.
## Factual Background

8.     On October 20, 2000, Plaintiffs executed a note payable to Aames Funding Corporation d/b/a Aaames Home Loan in the principal amount of One Hundred Twenty-Nine Thousand Six Hundred Dollars ($129,600.00).  The Note was further secured by a Deed of Trust

of even date therewith executed by Plaintiffs to Michael Riddle, Trustee, and recorded in the

deed records for Dallas County, Texas, and concerning the real property located at 1704

Cornwall Lane, Sachse, Texas 75048, more specifically described as:

    a.    BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE, DALLAS COUNTY, TEXAS ACCORDING TOT HE MAP THEREOF RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

    b.    This security instrument secured an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

    9.    On information and belief, in or around October, 2008, MGC Mortgage, Inc., became the servicer on the Note previously held by Aames Funding Corporation.

### Violation of the Three Percent (3%) Fee Limitation

    10.    Section 50(a)(6)(E), Article XVI of Texas Constitution and §153.5 of the Texas

Administrative Code limit the amount of charges and fees required by the borrower to be paid at

closing of a home equity loan to 3% of the principal amount of the loan.

    11.    The principal amount of Plaintiffs' loan was One Hundred Twenty-Nine

Thousand Six Hundred Dollars ($129,600.00) and Plaintiffs paid a total of $4,207.85 in closing

costs. As a result, the amount of charges imposed exceeded the 3% fee limitation allowed by

Section 50(a)(6)(E), Article XVI of Texas Constitution .

### Violation of the Preclosing Disclosure Requirement

    12.    Section 50(a)(6)(M)(ii), Article XVI of Texas Constitution and §153.13 of the

Texas Administrative Code requires that an equity loan may not close until one business day

after the owner(s) of the homestead receives a final itemized disclosure of the actual fees, points,

interest, costs and charges that will be charged at closing or any calendar day thereafter

("Preclosing Disclosure").

13.     As a matter of practice, this disclosure is typically given in the form of a HUD-1 Settlement Statement.

14.     Aames did not provide Plaintiffs with the advance Preclosing Disclosure.  In an effort to rush Plaintiffs into closing and extract significant fees from Plaintiffs, Aames delivered its loan documents to the title company within hours of the scheduled closing.

15.     Aames knew when it delivered its loan documents that it would not be able to comply with the Preclosing Disclosure and made no attempts to reschedule the closing. Additionally, Aames did not advise the Plaintiffs that Texas law required the Preclosing Disclosure.  As a result of Accredited's deception, Plaintiffs were not afforded the opportunity to have competent counsel regarding their transaction or to review the documents in advance of closing as required.

### Illegal charge of variable interest rate

16.     Prior to January 1, 2004, Section 50, Article XVI of the Texas Constitution, did not allow for variable interest rates on home equity loans.  Specifically, the Constitution required that home equity loan payments be made in "substantially equal successive periodic installments." The loan made by Aames was closed October 20, 2000, and purported to charge a variable interest rate.   Accordingly, such loan is invalid and unenforceable, the lien is extinguished by operation of law, and Defendants must repay all principal and interest received to date.

### Notice to Cure

17.     In November of 2008, the Plaintiffs received notice from MGC Mortgage, Inc., that MGC was authorized to service the loan on behalf of the current holder of the loan, Wilshire

<u>**PLAINTIFFS' ORIGINAL PETITION**</u>                                                      Page 4

Mortgage, which had acquired servicing from Countrywide Home Mortgage, and then from Weyerhauser.

18.     On September 21, 2009, the Plaintiffs, acting through counsel, served written notice to Defendant MGC Mortgage, Inc., pursuant to Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution to cure certain defects which were identified to be in violation of Section 50(a)(6)(M)(ii) and Section 50(a)(6)(E), Article XVI of the Texas Constitution to all Defendants. On December 15, 2008, the U.S. Postal Service return receipt indicates that Defendant MGC Mortgage, Inc., received Plaintiffs' demand letter.

20.     Plaintiffs' demand letter was sent in accordance with the requirements of Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution and more specifically gave written notice of the violations and requested that they be cured within sixty(60) days.  The demand letter identified Plaintiffs, the location of the collateral, and the loan number.

21.     Plaintiffs' demand letter also requested that Plaintiffs be provided a copy of the note endorsement and the document assigning the lien to the current note holder/lender.  The lender's compliance with Plaintiffs request is required by Section 50(a)(6)(Q)(vii), Article XVI of the Texas Constitution and Texas Administrative Code §153.24.

22.     Defendant MGC Mortgage, Inc., ignored Plaintiffs' request to provide a copy of the note endorsement and assignment of lien as required and continued to withhold these documents from Plaintiff.

23.     Defendant MGC Mortgage, Inc.'s deliberate nondisclosures have prevented Plaintiffs from discovering certain facts necessary to properly prosecute this action

### Defendant's Failure to Cure

24.     More than sixty (60) days have passed since the Defendants received the

**PLAINTIFFS' ORIGINAL PETITION**                                                    Page 5

Plaintiffs' request to cure the loan defects. On October 26, 2009, Defendant sent a request for a borrower release of confidentiality information authorization form which Plaintiffs signed and returned. Defendant has not respond to Plaintiffs' demand and took no action to cure the loan defects identified by the Plaintiffs.

## Causes of Action – Violation of Article XVI Texas Constitution

### I.

### Violation of the Preclosing Disclosure

25.    Plaintiffs incorporate by reference the allegations contained in the above-numbered paragraphs herein.

26.    Section 50(a)(M)(ii), Article XVI of Texas Constitution and §153.13 of the Texas Administrative Code require that an equity loan may not close until one business day after the owner(s) of the homestead receives a final itemized disclosure of the actual fees, points, interest, costs and charges that will be charged at closing or any calendar day thereafter.

27.    As a matter of practice this disclosure is typically given in the form of a HUD-1 Settlement Statement.

28.    Aames did not provide Plaintiffs' with the advance Preclosing Disclosure. In an effort to rush Plaintiffs into closing and extracting significant fees from Plaintiffs, Aames delivered its loan documents to the title company within hours of the scheduled closing.

29.    Aames knew when it delivered its loan documents that it would not be able to comply with the Preclosing Disclosure and made no attempts to reschedule the closing. Additionally, Aames did not advise the Plaintiffs that the law required the Preclosing Disclosure. As a result of Accredited's deception, Plaintiffs' were not afforded the opportunity to have competent counsel regarding their transaction and to review the documents in advance of closing

**PLAINTIFFS' ORIGINAL PETITION**                                                    Page 6

as required.

30.    As a result of these violations, Plaintiffs are entitled to a declaration that Defendants' lien on their home is invalid and that Defendants are entitled to no payments on the loan. Plaintiffs are further entitled to a refund of all principal and interest they paid on the loan.

### Causes of Action – Violation of Article XVI Texas Constitution

### II.

### Violation of the Requirement that payments be "substantially equal"

31.    Plaintiffs incorporate by reference the allegations contained in the above-numbered paragraphs herein.

32.    Article XVI, §50(a)(6)(L)(I) of the Texas Constitution requires that repayment of a home equity loan be made in "substantially equal successive periodic installments." The loan made by Defendants herein contained a variable interest feature which allowed Defendants to change the interest rate charged from time to time. As a result, the repayments required by Plaintiffs were not in "substantially equal successive periodic installments."

33.    As a result of these violations, Plaintiffs are entitled to a declaration that Defendants' lien on their home is invalid and that Defendants are entitled to no payments on the loan. Plaintiffs are further entitled to a refund of all principal and interest they paid on the loan.

### Attorneys Fees

34.    Plaintiffs incorporate by reference the allegations contained in the above-numbered paragraphs herein.

35.    Plaintiffs have been required to retain the services of counsel to prosecute this suit.

36.    Pursuant to Texas Civil Practice and Remedies Code §37.009 and Section 27.0 *et*

PLAINTIFFS' ORIGINAL PETITION                                              Page 7

*seq.* of the Texas Business & Commerce Code, Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, court costs and other expenses reasonably incurred in prosecuting their claims, in amounts exceeding the minimum jurisdictional limits of this Court.

### Request for Relief

WHEREFORE, Plaintiffs Samuel G. Breitling and Jo Ann Breitling pray that Defendants be cited to appear and answer herein, and that upon final hearing hereof, pray that judgment be entered against Defendants awarding Plaintiffs the following relief:

1.      actual damages, including but not limited to refund of all principal and interest payments made on the mortgage loan in question;

2.      declaratory relief of Aames' lien on their home is invalid, and judicially extinguishing the recorded lien on their homestead, and that MGC Mortgage, Inc., is entitled to no payments on the loan;

3.      reasonable and necessary attorneys' fees;

4.      expert witness fees;

5.      recoverable expenses, including deposition costs;

6.      costs of court;

7.      pre-judgment and post-judgment interest at the highest lawful rates; and

8.      such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

LAW OFFICES OF LIPPE & ASSOCIATES

By:  _____

Emil Lippe, Jr.
State Bar No. 12398300

PLAINTIFFS' ORIGINAL PETITION                                             Page 8

Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, TX 75201
Tel. (214) 855-1850
Fax (214) 720-6074

ATTORNEYS FOR PLAINTIFFS

**PLAINTIFFS' ORIGINAL PETITION**                                                    Page 9

13

*424F* **Exhibit B**
00870

CAUSE NO. 10-02189

| | | |
|---|---|---|
| SAMUEL G. BREITLING<br>and JO ANN BREITLING, | §<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§ | |
| V. | §<br>§ | 116th JUDICIAL DISTRICT |
| AAMES FUNDING CORPORATION<br>d/b/a AAMES HOME LOANS, and<br>MGC MORTGAGE, INC., | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | DALLAS COUNTY, TEXAS |

### ORDER OF NONSUIT AS TO PLAINTIFFS' CLAIMS ONLY

Came on for consideration Plaintiffs Samuel G. Breitling and Jo Ann Breitling's Notice of Nonsuit without Prejudice. Accordingly, it is

ORDERED that Plaintiffs' claims are dismissed without prejudice. Defendant MGC Mortgage, Inc.'s claims against Plaintiffs remain pending.

SIGNED this the ___2and___ day of June 2011.



JUDGE PRESIDING

000196-00044
224174

ORDER OF NONSUIT AS TO PLAINTIFFS' CLAIMS ONLY                    PAGE 1 OF 1

14



**Filed**
**11 June 7 P1:39**
**Gary Fitzsimmons**
**District Clerk**
**Dallas District**

NO. DC-11-07087

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND | § | IN THE DISTRICT COURT |
| JOANN BREITLING | § | |
| Plaintiffs, | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | |
| MGC MORTGAGE INC. | § | |
| Defendant, | § | B-<u>44TH</u>  JUDICIAL DISTRICT |

<u>PLAINTIFFS' ORIGINAL  PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, SAMUEL G. BREITLING AND JO ANN BREITLING, Plaintiffs in the above

styled action and file this Original Petition and complain of MGC MORTGAGE INC., Defendant

and for cause of action would respectfully show to the Court as follows

<u>DISCOVERY CONTROL PLAN</u>

Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas

Rules of Civil Procedure.

<u>PARTIES, JURISDICTION AND VENUE</u>

1.  Plaintiffs, SAMUEL G. BREITLING AND JO ANN BREITLING are individuals

residing in Dallas County, Texas and may be contacted through their undersigned

attorney.

1

2. Defendant MGC Corporation is a corporation doing business in Texas and can be served through its registered agent, CT Corporation System, located at 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201.

## FACTUAL BACKGROUND

3. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

4. On October 20, 2000, Plaintiffs signed Promissory Note (Exhibit "A") and Deed of Trust (Exhibit "B") in favor of Aames Funding Corporation d/b/a Aames Home Loans.

5. Plaintiffs' loan was a home equity loan as defined by Section 50(a) (6), Article XVI of the Texas Constitution, requiring strict compliance.

6. Plaintiffs were told that they only qualified for a 12.3% interest rate. One of the lending approval stipulations was that Ms. Breitling was disabled for at least three years. She had been disabled since 1998. Although Plaintiffs' debt was 62%, the numbers were manipulated to make it look like Plaintiffs were "approved". Plaintiffs were told it was only temporary, in their haste to close Plaintiffs' loan, Mr. and Mrs. Breitling's social security numbers were reverse on the documents.

7. Since closing the loan on October 20, 2000, Plaintiffs' loan has been transferred/sold five times, with the final time to MGC in May 2008. Plaintiffs never received notification of that transfer to MGC.

2

8. Plaintiffs sent their June 2008 payment using their social security number as in the past. However, due to the change in companies and policies, Plaintiffs payment was not properly credited.

9. Plaintiffs sent the July and August 2008 payments via courier. The July payment was not cashed but the August payment was so Plaintiffs stopped payment on the July payment.

10. In 2008 Plaintiffs asked MGC to modify their loan. MGC sent Plaintiffs a packet and Plaintiffs completed it the same day and overnighted it to MGC. Plaintiffs pled with MGC to keep their house and to lower the interest rate.

11. In June of 2008, Plaintiffs were approved by another lender to refinance into a lower fixed rate. However, MGC would provide no information necessary to allow the refinance to take place. On July 5, 2008 Defendant noted that Plaintiffs "were not in their system."

12. Plaintiffs learned that their loan was transferred from Plano, Texas to the Massachusetts office. Plaintiff Ms. Breitling called and checked on the status of the modification and in March 2009, Ms. Breitling was told that MGC needed to have a BPO (Broker Price Opinion) done before the investor would approve the modification. Plaintiffs were not familiar with the term BPO but after doing some research, Ms. Breitling called MGC.

13. Plaintiffs were current on their payments just in a world of hurt trying to keep up with the 12.3% interest rate. MGC then called back and said that the investor wanted two separate BPO's done. Plaintiff Joann Breitling told them she would get back with them. When

3

she called back a week later and agreed to the two broker price opinions, Plaintiff Ms. Breitling was told that their modification file had been closed because she was uncooperative.

14. MGC is a predatory company who has acted in bad faith the entire time that they have serviced Plaintiffs loan.   In March of 2009, Plaintiff JoAnn Breitling requested all correspondence, transfer history, and the complete pay history of their loan.   In response Plaintiffs received a six or eight month print out.   When Plaintiff Mrs. Breitling called them, MGC said that they did not have a pay history and Plaintiffs would have to go back to all previous lenders.

15. In May of 2009, Plaintiff had a phone conversation with with Mr. Leveritt, an MGC employee regarding Plaintiffs denial of a loan modification.   In that conversation, Mr. Leveritt told Plaintiff JoAnn Breitling that a 12.3% loan was not predatoru and that if Plaintiffs were struggling, they should sell a car.

16. In the fall of 2009, Plaintiffs retained counsel who sent a demand letter to MGC, which was never responded to.

17. Plaintiffs contend that they were upsold, put into a loan six points higher than the index was at that time.   Plaintiffs had no idea they were being put into subprime lending which they were never able to get off of.

4

18

18. Plaintiffs have paid $1,370.00 a month, principle and interest of 10 years, over $160,000.00 total.  MGC represented to Plaintiffs the balance was $122,000.00 and our payoff was $173,800.00.

## STANDING- QUESTION OF THE NOTE HOLDER

19. The Note was made payable to Funding Corporation d/b/a Aames Home Loans  which was subsequently purchased by five companies, the last of which was MGC.

20. The original Note was not executed in favor of MGC or any of the other companies mentioned here.  MGC and its agents have not produced evidence that it is the current owner, holder, or holder in due course of the mortgage.

21. If MGC actually had received the mortgage, it should produce the original Note with proper endorsements reflecting MGC was the owner, holder, or holder in due course.

22. MGC and other parties asserting to be acting on behalf of MGC have collected payments from Plaintiffs.[2]

- MGC may be required to repurchase loans from the investor in order to permanently modify the loan.  This presents a substantial cost and loss of revenue that can be avoided by keeping the loan in a state of temporary modification or lingering default.

- The monthly service fee that MGC, as the servicer collects as to each loan it

5

services in a pool of loans, is calculated as a fixed percentage of the unpaid principal balance of the loans in the pool.  Consequently, modifying a loan to reduce the principal balance results in a lower monthly fee to the servicer.

- Fees that MGC charges borrowers that are in default constitute a significant source of revenue to it.  Aside from income MGC directly receives, late fees and "process management fees" are often added to the principal loan amount thereby increasing the unpaid balance in a pool of loans and increasing the amount of the servicer's monthly service fee.

- Entering into a permanent modification will often delay a servicer's ability to recover advances it is required to make to investors of the unpaid principal and interest payment of a non-performing loan.  The servicer's right to recover expenses from an investor in a loan modification, rather than a foreclosure, is often less clear and less generous;

- Fixed overhead costs involved in successfully performing loan modifications involve up-front costs to the servicer for additional staffing, physical infrastructure, and expenses such as property valuation, credit reports and financing costs.

25. Rather than allocating adequate resources and working diligently to reduce the number of loans in danger of default by establishing permanent modifications, MGC has serially strung out, delayed, and otherwise hindered the modification process.  MGC's delay and obstruction tactics have taken various forms with the common result that homeowners

6

with loans serviced by MGC, who are eligible for permanent loan modifications, and who have met the requirements for participation in HAMP, have not received permanent loan modifications to which they are entitled.

26. Because MGC is not meeting its contractual obligations, hundreds of thousands of homeowners are wrongfully being deprived of an opportunity to cure their delinquencies, pay their mortgage loans and save their homes.  By failing to live up to its obligations under the terms of the agreement it entered into with the Department of the Treasury, and the terms of the contracts it formed with individual homeowners, MGC has left thousands of borrowers in a state of limbo – often worse than they were before they sought a modification from MGC.  Defendant's actions violate their contractual obligations, thwart the purpose of HAMP, and are unfair and deceptive under state laws.


<u>APPLICATION FOR TEMPORARY RESTRAINING ORDER</u>

28. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

29. Plaintiffs seek to preserve the status quo during the pendency of this lawsuit, which would leave Plaintiffs in possession of her property and would prevent Defendant from proceeding with any wrongful foreclosure action.  Plaintiffs SAMUEL G. BREITLING AND JO ANN BREITLING further seek a Temporary Restraining Order, to enjoin and restrain Defendant, its agents, servants, employees, representatives, or attorneys from the following:

7

21

(a)   attempting or actually taking possession of Plaintiffs SAMUEL G. BREITLING AND JO ANN BREITLING   home.

( b)   Interfering in any way with Plaintiffs' possession of the property;

(c)   from taking any action whatsoever that may be construed as unreasonable debt collection or otherwise violating the Texas or federal statutes regarding debt collection.

## DECLARATORY JUDGMENT

26.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

27.   Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiffs respectfully request that this Court issue a declaratory judgment specifying their and Defendant's rights and duties in connection with the Note.

28.   Specifically, a justiciable controversy exists regarding:

a.   who is the current owner, holder, or holder in due course of the mortgage;

b.   whether that owner, holder, or holder in due course has approved any mortgage servicer to collect payments under the mortgage;

c.   what amounts are owed, if any, and how the payments have been applied;

29.   Plaintiffs' therefore are proper parties to seek a declaratory judgment to resolve these issues.

8

22

30.   This Court is vested with the power to declare and adjudicate the rights and other legal relationships of the parties to this action.

31   For all the reasons stated in this pleading, Plaintiffs seek a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, and request that, after trial, this Court issue a judgment declaring: (a) Defendant is not the holder of the Note; (b) a declaration of which party is the current Holder of the Note if such information can be obtained, and (c) the amount owed on the Note.

32.   Alternatively, Plaintiffs seek a declaration as to whether Plaintiffs loan was invalid based upon violations of Article 16, Chapter 50 of the Texas Constitution and Chapter 153 of Title 7, Part 8 of the Texas Administrative Code.

## COMMON LAW FRAUD, STATUTORY FRAUD AND FRAUD BY MISREPRESENTATION

33.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

34.   Pleading further, and in the alternative as necessary, Plaintiffs aver that MGC, made material false representations to Plaintiffs with the knowledge of their falsity with reckless disregard of the truth with the intention that such representations would be acted upon by Plaintiffs, and that Plaintiffs relied on these representations to their detriment. Specifically, MGC concealed or failed to disclose material facts

9

within their knowledge.

36. MGC knew that Plaintiffs did not have knowledge of the same and did not have equal opportunity to discover the truth, and Defendants intended to induce Plaintiffs to enter into the transaction made the basis of this suit by such concealment or failure to disclose. Specifically:

a) MGC failed to advise Plaintiffs that the contract entered into created an invalid lien since MGC's predecessor in interest failed to wait at least 12 calendar days after the application was received and one business day before closing Plaintiffs' loan. Despite these known violations, Plaintiffs were ushered into a legally invalid loan, all the while representing it as valid and binding.

37. Such material representations were not only fraudulent; they were also in violation of Article 16, Chapter 50 of the Texas Constitution and Chapter 153 of Title 7, Part 8 of the Texas Administrative Code.

38. Further, such acts and/or omissions were the proximate cause of Plaintiffs' damages.

39. Plaintiffs relied on the misleading and false statements and/or representations thereby suffering serious harm because Defendant, through its predecessor in interest intentionally and maliciously misled Plaintiffs to a loan transaction that was based upon an invalid lien.

40. Due to their fraudulent behavior, Plaintiffs are entitled to actual and punitive damages.

41. As a direct and proximate result of the violations, actions, and misrepresentations of Defendant, Plaintiffs were injured and have suffered financial and pecuniary loss.

10

24

42.   Plaintiffs have sustained actual damages, which they have the right to recover in an amount which is not presently quantified as the harm is ongoing, but which can be determined and proven at trial.

43.   MGC, as successor in interest of Aames, was and is responsible for the acts alleged herein as well as the acts of their agents, trustee and substitute trustee acting on their behalf.

44.   Defendant , directly, and by and through its agents, perpetuated a fraud by deception whereby documents were created and filed in order to misrepresent the authority of Defendants and their agents, regarding the transfer of rights, title and interest in Plaintiffs' property. Those actions were part of a scheme intended to lead to the wrongful foreclosure of Plaintiffs' home and directly benefitted defendant, its agents and assigns.

45.   Such conduct is not isolated but represents a broader pattern or practice of deceptive and unconscionable conduct on the part of MGC and its agents, acting on its behalf.

46.   Defendant's wrongful conduct as alleged herein, was a producing cause of Plaintiffs' injury, which resulted in the following damages: Plaintiffs seek a return of all fees paid to Defendant by Plaintiffs or on their behalf, all benefit-of-the-bargain damages, as well as any and all additional damages for which Plaintiffs may be entitled. Plaintiffs specifically request the equitable remedy of forfeiture of fees and disgorgement of profit due to the violations stated herein

11

Plaintiffs seek recovery of unliquidated damages within the jurisdictional limits of this court.

## VIOLATION OF THE TEXAS DECEPTIVE PRACTICES ACT

30.   Plaintiffs re- allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

31.   Plaintiffs are consumers under the provisions of the Texas Deceptive Trade Practices-Consumer Protection Act.

32.   As such, Plaintiffs would show that Defendants have engaged in a pattern of unfair practices in violation of the Texas Deceptive Trade Practices Act. Defendant's violations of the Texas Debt Collection Practices Act also amount to violation of the Texas DTPA.

33.   These violations have caused Plaintiffs economic and mental anguish damages for which they seek recovery.  Defendant MGC's conduct was committed knowingly and, therefore, supports the imposition of additional statutory damages under the DTPA.

## VIOLATION OF THE TEXAS DEBT COLLECTION PRACTICES ACT

34.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

35.  Defendant is a debt collector for purposes of the Texas Debt Collection Practices Act.

32.  Defendant repeatedly utilized unfair or unconscionable  means by collecting or attempting  to collect interest or a charged  fee or expense  incidental to the allegation  that was not authorized  by the terms of the parties' contract,  in violation  of TDCPA  §392.303.

12

33. Defendant misrepresented the character, amount or extent of the debts, in violation of TDCPA §392.304. Defendant also violated TDCPA §392.304(a) (5), (6), (8), (12), and (17).

34. Defendant's violation of the TDCPA entitles Plaintiffs to actual damages and attorney's fees under TDCPA §392.403.

35. These violations have cause Plaintiffs economic and mental anguish damages for which they seek recovery.

36. Defendant's conduct was committed knowingly and therefore, supports the imposition of additional statutory damages under the Texas DTPA.


## NEGLIGENCE AND GROSS NEGLIGENCE.

37. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

38. Defendant owed a duty of care to Plaintiffs to adequately train and supervise its staff of loan collectors and servicing agents in the proper and legal servicing of mortgages, as well as the duty to engage in and maintain fair and honest accounting practices, including the proper application and crediting of payments such as those made by Plaintiffs. Defendants breached their duty to Plaintiffs by (1) failing to adequately train and/or supervise agents in the proper accounting and servicing of Plaintiffs' mortgage and allowing the wrongful foreclosure of Plaintiffs' home, and (2) demonstrating a pattern of flawed accounting that resulted in foreclosures such as that of Plaintiffs' home.

13

27

## UNREASONABLE DEBT COLLECTION
## PRACTICES UNDER TEXAS COMMON LAW

39. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

40. MGC's actions in failing to properly apply and account for Plaintiffs' payments, manipulating Plaintiffs' loan to appear in default despite being current, refusing to accept properly tendered payments, providing inconsistent accounting information regarding the amount of the alleged indebtedness, charging unjustified fees and placing payments into suspense accounts without cause or justification constitute unreasonable debt collection practices. As a result of these practices, Plaintiffs have suffered losses and remain at risk of losing their home.

41. Further, Plaintiffs have suffered the emotional stress that naturally flows from a situation where a mortgage servicing company steps out of its role of servicing and tries to take a home wrongfully.

## BREACH OF FIDUCIARY DUTY

42. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

43. MGC, as a servicing agent, stands in a fiduciary capacity with respect to Plaintiffs' monthly payments and credits on their mortgage account, and other related obligations. MGC has breached this duty for the numerous reasons stated above. MGC 's conduct has caused Plaintiffs losses for which they seek recovery.

14

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

44. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

45.    Defendants acted intentionally or recklessly in servicing Plaintiffs' loan.  Defendants' conduct was both extreme and outrageous with a complete disregard for Plaintiffs' rights. Defendant s' actions have caused severe emotional distress to Plaintiffs, including embarrassment, fear, humiliation, and unnecessary and excessive worry,

## EXEMPLARY DAMAGES

46. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein

47. The above described harm to Plaintiffs was the result of Defendants' conduct, which was fraudulent, malicious, intentional, or at a minimum, grossly negligent.  For this, as well as Defendants extreme and outrageous conduct with respect to the wrongful foreclosure of Plaintiffs' home, Plaintiffs seek the imposition of exemplary damages against Defendants.

48.   As such, Plaintiffs seek a monetary award from the jury, in their discretion, in an amount to set an example to others and as a penalty and punishment to MGC.  In exercising their discretion in awarding exemplary damages Plaintiffs request the jury consider the following factors:

1. The nature of the wrong;

2. The character or  the conduct involved:

3. The degree of culpability of the wrongdoer;

15

4. The situation and sensibilities of the parties concerned;

5. The extent to which such conduct offends a public sense of justice and propriety;

6. The net worth of Defendant.

49.  Plaintiffs believe and allege that the damages directly and proximately caused by the

negligent and abusive actions of the Defendants herein have injured Plaintiffs in an amount within the

jurisdictional limits of this Court.  Plaintiffs contend that the amount of Plaintiffs' actual damages should

be left to the discretion of the jury in light of the evidence considered by the jury regarding the severity of

Plaintiffs' harm and the callous disregard Defendants' displayed toward Plaintiffs. The jury should be

allowed to consider such evidence in accordance with proper instruction and charge of the Court.


## ATTORNEY'S FEES

50.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

51. It was necessary for Plaintiffs to secure the services of Patricia Wilhite McCartney, a

licensed attorney, to prepare and prosecute this suit.  To effect an equitable outcome and for

services rendered, Plaintiffs requests a judgment for reasonable and necessary attorney's fees,

expenses, and costs through trial and appeal should be granted against Defendant and in favor of

Plaintiffs for the use and benefit of Plaintiffs' attorney and be ordered paid directly to Plaintiffs

attorney, who may enforce the judgment in the attorney's own name.  Plaintiffs request

postjudgment interest as allowed by law.

16

## BREACH OF CONTRACT

51. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52. Defendant's acceptance of TARP money created an obligation to modify loans outstanding on Plaintiffs' real estate to the extent Defendants were pronouncing rights thereto, to assist borrowers, and to otherwise use the TARP funds for the benefit of, among others, the Plaintiffs herein.

53. In fact, the Plaintiffs are intended third party beneficiaries of the contracts between the United States Government, certain intermediaries and Defendant.

54. Defendant breached their contractual obligations to Plaintiffs as set forth herein. Defendant further breached the contractual obligations owing to Plaintiffs in the manners alleged hereinabove. As a proximate and foreseeable result of said breaches of contract, Plaintiffs have been damaged in a sum to be fully proven at the time of trial.

## DEMAND FOR JURY TRIAL

63.   Plaintiffs hereby demand a jury trial, and tenders the requisite fee.

WHEREFORE,, having set forth various causes of action against the defendant,  Plaintiffs pray for the following relief:

1. That the actions of defendant be determined to be unfair and deceptive business practices in violation of the Texas DTPA entitling Plaintiffs to treble damages;

2. That Plaintiffs be awarded actual damages to be fully proved at trial;

17

31

3. Judgment for cancellation of the indebtedness described hereinabove;

4.  Judgment for both pre-judgment and post-judgment interest at the maximum interest rate allowed by law;

 5.  Judgment for punitive damages in an amount to be determined by the trier of fact;

6.  Judgment for costs of Court;

7.  Judgment for Plaintiffs to recover reasonable and necessary attorney's fees for bringing this case to trial and judgment, as well as the conditional award in the event of an appeal;

8. That the Plaintiffs  be awarded consequential damages to be fully proved at the time of trial;

9. That Plaintiffs be awarded any and all  fees and costs pursuant to the written loan agreements which bind the defendant; and

10. That the Court grant any other relief that may be just or equitable.

McCartney Law Firm
3006 Lost Maples Circle
Forney, Texas 75126
(972)782-6300
(972)559-1994 (fax)

*/s/ Patricia W. McCartney*
PATRICIA W. MCCARTNEY
SBN.00786346

-18-

32

Exhibit D

*4B4F*   000260

## CAUSE DC1107087

SAMUEL G BREITLING                    IN THE DISTRICT

&

JO ANN BREITLING                      116TH DISTRICT

PLAINTIFFS

V.

MGC MORTGAGE CO.                      DALLAS COUNTY,

DEFENDANT                             TEXAS

## ORDER OF NONSUIT

Came on for consideration Plaintiffs Samuel G. Breitling and JoAnn Breitling's notice of non-suit without prejudice. Accordingly, it is ordered that Plaintiffs' claims are dismissed without prejudice on the ___29th___ day of ___July___, 2013.

_____
PRESIDING JUDGE



## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

SAMUEL G. BREITLING, ET AL.,      §
                                  §
          Plaintiffs,             §
                                  §
V.                                §          No. 3:14-CV-3322-M-BN
                                  §
LNV CORPORATION, ET AL.,          §
                                  §
          Defendants.             §

### JUDGMENT

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered,

It is ORDERED, ADJUDGED, and DECREED that:

1.   Defendant State District Judge Dale Tillery's Motion to Remand is GRANTED.

2.   This case is remanded to the 101st Judicial District Court of Dallas County, Texas.

3.   The Clerk shall transmit a true copy of this Judgment and the Order adopting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge to Plaintiff.

SIGNED this 27th day of January, 2015

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

34



**Kathy P. Mohmed**

| | |
|---|---|
| **From:** | John R. Sigety |
| **Sent:** | Monday, February 16, 2015 2:52 PM |
| **To:** | 'joann.breitling@gmail.com' |
| **Cc:** | Clayton E. Devin |
| **Subject:** | 2390.7 Breitling v. LNV Corporation et al. - Motion to Transfer |
| **Attachments:** | Dallas County Local Rules.pdf |

Ms. Breitling,

I represent Codilis & Stawiarski, P.C. in Cause No. DC-14-09604, *Breitlin v. LNV Corporation, et al.* Pusuant to Dallas County Local Rule 1.06 (see attached), Codilis seeks to transfer this lawsuit to the 116th District Court in front of Judge Tonya Parker, where your two previous lawsuits against MGC Mortgage, Inc. were adjudicated.

Please advise if you agree with or oppose transfer to the 116th District Court. Thank you.

**John R. Sigety**
MACDONALD DEVIN, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.3300
Direct: 214.651.3319
Fax: 214.747.0942
Email: jsigety@macdonalddevin.com
www.macdonalddevin.com