# EXHIBIT C-20

FILED
DALLAS COUNTY
2/20/2015 12:46:33 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:15-cv-00703-B   Document 1-23   Filed 03/03/15   Page 2 of 420   PageID 511

## CAUSE NO. DC-14-09604

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JOANN BREITLING, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | DALLAS COUNTY, TEXAS |
| LNV CORPORATION, CODILIS & STAWIARSKI, P.C., DOVENMUEHLE MORTGAGE, INC., MGC MORTGAGE, INC., AND DALE B. TILLERY, | § § § § § | |
| Defendants. | § § | 101ST JUDICIAL DISTRICT |

---

## PLEA TO THE JURISDICTION AND, SUBJECT THERETO, RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

---

Respectfully submitted,

/s/  Marc D. Cabrera
**Robert T. Mowrey**
State Bar No. 14607500
rmowrey@lockelord.com
**Jason L. Sanders**
State Bar No. 24037428
jsanders@lockelord.com
**Marc D. Cabrera**
State Bar No. 24069453
Email: mcabrera@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

**ATTORNEYS FOR DEFENDANT LNV CORPORATION**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ..................................................................................................2

    A.     THE FIRST LAWSUIT .............................................................................2

        1.     THE HOME EQUITY LOAN .............................................................3

        2.     ASSIGNMENT OF THE SECURITY INSTRUMENT ..............................3

        3.     NONSUIT OF THE FIRST LAWSUIT ...............................................4

    B.     THE SECOND LAWSUIT ..........................................................................4

        1.     CLAIMS AND ADMISSIONS............................................................4

        2.     NONSUIT OF THE SECOND LAWSUIT ............................................5

    C.     THE FORECLOSURE LAWSUIT.................................................................5

    D.     THE INSTANT LAWSUIT..........................................................................7

    E.     FORECLOSURE OF THE PROPERTY .........................................................9

    F.     THE CURRENTLY PENDING EVICTION ACTION.......................................9

    G.     PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF .....................................9

III.   PLEA TO THE JURISDICTION .....................................................................10

    A.     THE JUSTICE AND COUNTY COURT HAVE EXCLUSIVE JURISDICTION TO
        DETERMINE  THE ISSUE OF IMMEDIATE POSSESSION OF THE PROPERTY ................10

    B.     THE TENANT AT SUFFERANCE CLAUSE IN THE SECURITY INSTRUMENT
        PROVIDES AN INDEPENDENT BASIS FOR THE JUSTICE AND COUNTY COURT
        TO DETERMINE THE ISSUE OF POSSESSION INDEPENDENT OF ANY ALLEGED
        DISPUTE REGARDING TITLE TO THE PROPERTY .......................................13

IV.    RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF ...................15

    A.     PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF........................16

        1.     PLAINTIFFS CANNOT SHOW A PROBABLE RIGHT TO RELIEF .....................16

            I.     THE DOCTRINE OF RES JUDICATA BARS PLAINTIFFS' CLAIMS ........16

                A.     RES JUDICATA................................................................16

                B.     COMPULSORY COUNTERCLAIMS ........................................17

                C.     PLAINTIFFS' CLAIMS ARE BARRED BECAUSE EACH
                    ELEMENT OF RES JUDICATA IS SATISFIED ...........................18

            II.     THE STATUTE OF LIMITATIONS PRECLUDES THE TILA AND
               RESPA CLAIMS, AS WELL AS CERTAIN OF THE ABUSE OF
               PROCESS CLAIMS ............................................................21

                A.     THE TILA CLAIMS ARE TIME-BARRED...............................21

B.     THE RESPA CLAIMS ARE TIME-BARRED ..........................22

C.     CERTAIN OF THE ABUSE OF PROCESS CLAIMS ARE TIME-BARRED....................................................................24

III.     THE FRAUD AND TDCA CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE ...............................................................24

IV.     THE LITIGATION PRIVILEGE BARS THE ABUSE OF PROCESS CLAIMS .........................................................................26

V.     THE FORECLOSURE LAWSUIT IS NOT A RULE 736 EXPEDITED ORDER PROCEEDING ........................................................27

VI.     PLAINTIFFS' CLAIMS REGARDING ALLEGED VIOLATIONS OF THE TEXAS PROPERTY CODE FAIL AS A MATTER OF LAW ..............28

A.     THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE TEXAS PROPERTY CODE ......................................................29

B.     THERE IS NO REQUIREMENT THAT PLAINTIFFS ACTUALLY RECEIVE THE NOTICE OF TRUSTEE'S SALE UNDER THE TEXAS PROPERTY CODE .........................31

C.     THE NOTICE OF TRUSTEE'S SALE COMPLIES WITH THE TEXAS PROPERTY CODE ..............................................33

VII.     THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE TEXAS PENAL CODE ..........................................................................33

2.     PLAINTIFFS CANNOT SHOW A PROBABLE, IMMINENT, AND IRREPARABLE INJURY FOR WHICH THEY HAVE NO ADEQUATE REMEDY AT LAW ......................................................................34

B.     PLAINTIFFS' COLLATERAL ATTACK ON THE FINAL JUDGMENT IS IMPROPER AND BARRED BY RES JUDICATA....................................................36

V.     CONCLUSION.........................................................................................39

CAUSE NO. DC-14-09604

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JOANN BREITLING, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | DALLAS COUNTY, TEXAS |
| LNV CORPORATION, CODILIS & STAWIARSKI, P.C., DOVENMUEHLE MORTGAGE, INC., MGC MORTGAGE, INC., AND DALE B. TILLERY, | § § § § § | |
| Defendants. | § § | 101ST JUDICIAL DISTRICT |

## PLEA TO THE JURISDICTION AND, SUBJECT THERETO, RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Defendant LNV Corporation ("Defendant" or "LNV") hereby files this Plea to the Jurisdiction, and Subject Thereto, Response in Opposition to Plaintiffs Samuel G. Breitling and Jo Ann Breitling's ("Plaintiffs") Motion for Injunctive Relief or Alternatively for Relief by Vacating Void Court Order and to Set Aside Illegal Sale of Plaintiffs' Property (the "Motion for Injunctive Relief"), and respectfully shows the Court as follows:

## I.
## INTRODUCTION

Despite admittedly failing to make their home equity loan payments for more than four years, Plaintiffs nonetheless seek injunctive relief to preclude their eviction from the real property located at 1704 Cornwall Lane, Sachse, Texas 75048 (the "Property"), enjoin Defendant from proceeding in a currently pending eviction action, and continue living in the Property, which they no longer own, for free.

This Court, however, lacks subject matter jurisdiction to grant to the requested injunctive relief and effectively enjoin the currently pending eviction action. The justice court and, on trial

*de novo*, the county court have exclusive jurisdiction to determine the narrow issue of immediate possession of the Property.  It is undisputed that a district court may enjoin the justice or county court from adjudicating title, **but it may not "enjoin the trial of the issue of possession in the forcible entry and detainer suit."** *Young Women's Christian Ass'n v. Hair*, 165 S.W.2d 238, 242-43 (Tex. Civ. App.—1942, writ ref'd w.o.m.) (emphasis added).

Additionally, subject to and without waiving Defendant's Plea to the Jurisdiction, Plaintiffs cannot demonstrate that they are entitled to any injunctive relief because their claims are either barred by *res judicata*, the statute of limitations, and/or the economic loss doctrine. Additionally, the Court should not entertain Plaintiffs' request to set aside and/or vacate the valid, final judgment relating to the foreclosure of the Property rendered in another state court because it constitutes an improper and impermissible collateral attack and because *res judicata* bars the subsequent collateral attack on that final judgment.  Accordingly, the Court should sustain Defendant's Plea to the Jurisdiction and deny Plaintiffs' Motion for Injunctive Relief.

## II.
## BACKGROUND

### A.    THE FIRST LAWSUIT

On February 25, 2010, Plaintiffs filed suit against MGC Mortgage, Inc. ("MGC") in the 116th District Court of Dallas County, Texas in a case styled and numbered *Samuel G. Breitling and Jo Ann Breitling v. Aames Funding Corporation d/b/a Aames Home Loans and MGC Mortgage, Inc.*, No. 10-02189 (the "First Lawsuit").  *See* Ex. 1.[1]  In the First Lawsuit, Plaintiffs asserted claims against MGC for violations of the Truth in Lending Act ("TILA") based on their allegations that they were not provided with certain disclosures at the closing of a home equity

---

[1] A true and correct certified copy of the docket sheet for the First Lawsuit is attached hereto and incorporated by reference as Exhibit 1.  Pursuant to Rule 201 of the Texas Rules of Evidence, Defendant respectfully requests that the Court take judicial notice of the First Lawsuit and the filings therein.

loan that they obtained from Aames Funding Corporation, a California Corporation, DBA Aames Home Loan ("Aames"), and for violations of the Real Estate Settlement Procedures Act ("RESPA") based on, among other things, their allegations that notice of a transfer in the servicing of the home equity loan was not provided. *See* Ex. 1(A) ¶¶ 7-11.[2]

### 1.  The Home Equity Loan

Plaintiffs admit that, on October 20, 2000, they executed a Texas Home Equity Adjustable Rate Note ("Note") in the amount of $129,600 made payable to Aames, as well as a Texas Home Equity Security Instrument (the "Security Instrument"), which granted a security interest in the Property to secure repayment of the Note. *See* Ex. 1(A) ¶ 7. The Note and Security Instrument, along with any amendments and supplements thereto and all other documents and instruments executed in connection therewith relating to the Property, are collectively referred to herein as the "Home Equity Loan." Plaintiffs further admit that MGC became the servicer of the Home Equity Loan in June 2008. *See* Ex. 1(A) ¶ 10.[3] Most importantly, Plaintiffs acknowledge the receipt of the borrowed funds after their execution of the Note and Security Instrument.

### 2.  Assignment of the Security Instrument

On October 20, 2000, Aames assigned the Security Instrument to Aames Capital Corporation, a California Corporation ("ACC"). *See* Ex. 3(A), its Ex. C.[4] Thereafter, ACC assigned the Security Instrument to Bankers Trust Company of California, N.A. ("Bankers Trust

---

[2] A true and correct certified copy of Plaintiffs' Second Amended Original Petition filed in the First Lawsuit is attached hereto and incorporated by reference as Exhibit 1(A).

[3] It bears noting that Plaintiffs' admissions in the Petition that they made their Home Equity Loan payments to MGC for approximately two years precludes them from challenging MGC's status as servicer of the Home Equity Loan. *See Farkas v. GMAC Mortg. LLC*, 737 F.3d 338, 344 (5th Cir. 2013) (holding that doctrine of quasi-estoppel bars borrowers from challenging status as mortgage servicer based on, among other things, the "duration and regularity" of borrowers' payments to servicer).

[4] A true and correct certified copy of Defendant's Original Petition for Foreclosure filed in the Foreclosure Lawsuit, defined *infra*, is attached hereto and incorporated by reference as Exhibit 3(A).

Company"), in Trust for the benefit of the holders of Aames Mortgage Trust, 2000-2 Mortgage Pass-Through Certificates, Series 2000-2. *See* Ex. 3(A), its Ex. D. Effective April 15, 2002, Bankers Trust Company changed its name to Deutsche Bank National Trust Company ("DBNTC"). *See* Ex. 3(A), its Ex. E. On or about March 21, 2008, DBNTC assigned the Security Instrument to Ellington Mortgage Partners, L.P. ("Ellington"). *See* Ex. 3(A), its Ex. F. On that same date, Ellington assigned the Security Instrument to LNV. *See* Ex. 3(A), its Ex. G.

### 3.     Nonsuit of the First Lawsuit

On June 6, 2011, Plaintiffs nonsuited their claims against MGC without prejudice in the First Lawsuit. *See* Ex. 1(B).[5] The non-suit was filed after MGC was required to retain counsel, make an appearance, and incur costs to mount a defense.

### B.     THE SECOND LAWSUIT

On June 7, 2011, Plaintiffs again filed suit against MGC in the 116th District Court[6] of Dallas County, Texas in a case styled and numbered *Samuel G. Breitling and Jo Ann Breitling v. MGC Mortgage, Inc.*, No. DC-11-07087 (the "Second Lawsuit"). *See* Ex. 2.[7]

### 1.     Claims and Admissions

In the Second Lawsuit, Plaintiffs asserted claims relating to the servicing of the Home Equity Loan, including MGC's alleged failure to provide a servicing transfer notice, for, among other things: (1) common law fraud, statutory fraud, and fraud by misrepresentation; (2) violations of the Deceptive Trade Practices-Consumer Protection Action ("DTPA") and Texas

---

[5]A true and correct certified copy of Plaintiffs' Notice of Nonsuit Against Defendant filed in the First Lawsuit is attached hereto and incorporated by reference as Exhibit 1(B).

[6]On June 27, 2011, the Second Lawsuit was transferred from the 44th District Court to the 116th District Court. *See* Ex. 2.

[7]A true and correct certified copy of the docket sheet for the Second Lawsuit is attached hereto and incorporated by reference as Exhibit 2. Pursuant to Rule 201 of the Texas Rules of Evidence, Defendant respectfully requests that the Court take judicial notice of the Second Lawsuit and the filings therein.

Debt Collection Practices Act ("TDCA"); (3) negligence and gross negligence; (4) unreasonable debt collection; (5) breach of fiduciary duty; (6) intentional infliction of emotional distress; and (7) breach of contract. *See* Ex. 2(A).[8]

Plaintiffs again admitted that on October 20, 2000, they signed the Note and Security Instrument. *See* Ex. 2(A) ¶ 4. Plaintiffs also admitted that the Home Equity Loan closed on October 20, 2000. *Id.* ¶ 7.

### 2. Nonsuit of the Second Lawsuit

On July 25, 2013, Plaintiffs nonsuited their claims against MGC without prejudice in the Second Lawsuit. *See* Ex. 2(B).[9] Once again, the second non-suit was filed after MGC was required to retain counsel, make an appearance, and incur costs to mount a defense.

### C. THE FORECLOSURE LAWSUIT

On April 15, 2014, LNV filed a lawsuit against Plaintiffs in the 134th District Court of Dallas County, Texas (the "District Court") in a case styled and numbered *LNV Corporation, Its Successors and Assigns v. Samuel G Breitling and Jo Ann Breitling et al.*, No. DC-14-04053 (the "Foreclosure Lawsuit"). *See* Ex. 3.[10] In the Foreclosure Lawsuit, LNV sought to foreclose on the Property. *See* Ex. 3(A).

In response, on June 23, 2014, Plaintiffs filed their Original Answer, wherein they denied the allegations in LNV's Original Petition for Foreclosure. *See* Ex. 3(B).[11] Plaintiffs did not assert any counterclaims in the Foreclosure Lawsuit. *See* Ex. 3.

---

[8]A true and correct certified copy of Plaintiffs' First Amended Original Petition filed in the Second Lawsuit is attached hereto and incorporated by reference as Exhibit 2(A).

[9]A true and correct certified copy of Plaintiffs' Notice of Nonsuit Against Defendant filed in the Second Lawsuit is attached hereto and incorporated by reference as Exhibit 2(B).

[10]A true and correct certified copy of the docket sheet for the Foreclosure Lawsuit is attached hereto and incorporated by reference as Exhibit 3. Pursuant to Rule 201 of the Texas Rules of Evidence, Defendant respectfully requests that the Court take judicial notice of the Foreclosure Lawsuit and the filings therein.

[11]A true and correct certified copy of Plaintiffs' Original Answer filed in the Foreclosure Lawsuit is attached hereto and incorporated by reference as Exhibit 3(B).

On July 7, 2014, LNV filed its Motion for In Rem Default and In Rem Summary Judgment (the "Motion for In Rem Summary Judgment") in the Foreclosure Action. *See* Ex. 3(C).[12]  In response, on July 28, 2014, Plaintiffs filed their Response to LNV's Motion for In Rem Summary Judgment arguing that certain constitutional violations barred the foreclose of the Property. *See* Ex. 3(D).[13]  Among other things, Plaintiffs argued that they did not receive a copy of the final Home Equity Loan documents at the closing of the Home Equity Loan and did not receive a three-day right to rescind document. *Id.*  Subsequently, on August 3, 2014, Plaintiffs filed a Supplement Opposing LNV's Motion for In Rem Summary Judgment (the "Supplement"), wherein they argued, among other things, that the foreclosure of the Property was barred because: (1) Plaintiffs' allegedly did not receive certain TILA and RESPA disclosures; (2) Plaintiffs' signatures on documents were forged during the underwriting process of the Home Equity Loan; (3) the assignments of the Security Instrument were purportedly void because they were allegedly falsified and robo-signed; and (4) LNV purportedly engaged in fraud. *See* Ex. 3(E) at pp. 2-6.[14]

Thereafter, on August 4, 2014, a Final Judgment in Rem Only with Home Equity Foreclosure Order (the "Final Judgment") was entered in the Foreclosure Lawsuit. *See* Ex. 3(F).[15]  Among other things, the Final Judgment authorized the foreclosure of the Property pursuant to the terms of the Security Instrument, Section 51.002 of the Texas Property Code, and applicable Texas Law. *Id.*

---

[12]A true and correct certified copy of Defendant's Motion for In Rem Summary Judgment filed in the Foreclosure Lawsuit is attached hereto and incorporated by reference as Exhibit 3(C).

[13]A true and correct certified copy of Plaintiffs' Response to Motion for In Rem Summary Judgment filed in the Foreclosure Lawsuit is attached hereto and incorporated by reference as Exhibit 3(D).

[14]A true and correct certified copy of Plaintiffs' Supplement filed in the Foreclosure Lawsuit is attached hereto and incorporated by reference as Exhibit 3(E).

[15]A true and correct certified copy of the Final Judgment entered in the Foreclosure Lawsuit is attached hereto and incorporated by reference as Exhibit 3(F).

## D.     THE INSTANT LAWSUIT

On August 29, 2014, Plaintiffs filed their Original Petition (the "Petition") in the 101st Judicial District Court of Dallas County, Texas asserting various state and federal law claims against Defendant, among others, relating to the Home Equity Loan.

Despite their own admissions that they stopped making payments on their Home Equity Loan payments after February 1, 2010, Plaintiffs nonetheless assert unsubstantiated claims against Defendant for: (1) violations of TILA, RESPA, and the TDCA; (2) abuse of process and fraud on the court; (3) fraud; (4) civil and criminal conspiracy; and (5) quiet title.  *See* Petition at pp. 11-23.  Plaintiffs also challenge the assignments of the Security Instrument.  *Id.* at p. 14.

The TILA and RESPA claims arise from the origination and/or servicing of the Home Equity Loan.[16]  The TILA claim is based on Plaintiffs' allegations that: (1) they purportedly did not receive unspecified disclosures at the closing of the Home Equity Loan; (2) their signatures on unidentified loan documents were forged during the underwriting process of the Home Equity Loan; and (3) they were denied the right to rescind the Loan because an unidentified "rescission document" was postdated.  *See* Petition at p. 12.  The RESPA claim is based on Plaintiffs' allegations that: (1) they purportedly did not receive notice of a transfer in the servicing of the Home Equity Loan or a transfer of the Security Instrument to LNV; (2) MGC did not process and/or account for unidentified payments and attempted to charge excessive late fees relating to those payments; and (3) MGC has purportedly not shown the legal right to collect their Loan payments, despite admittedly making payments to MGC for almost 2 years.  *See* Petition at pp. 12-13.

---

[16]Plaintiffs also assert claims against co-defendant Codilis & Stawiarski, P.C. ("Codilis") for violation of the Fair Debt Collection Practices Act relating to an alleged failure to validate the debt in connection with the Home Equity Loan.  *See* Petition at pp. 11, 14.

**PLEA TO THE JURISDICTION AND, SUBJECT THERETO,**
**RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF**                                        **PAGE 7**

Plaintiffs also make a passing reference to a violation of Chapter 392 of the TDCA in a paragraph heading in the Petition, but otherwise fail to allege any facts in support of such claim, tie any allegations in the Petition to the purported TDCA claim, or identify the defendant(s) that they claim violated the TDCA. *See* Petition at p. 11.

The claims for abuse of process and fraud upon the court are based on Plaintiffs' allegations that MGC's counsel in the Second Lawsuit filed multiple summary judgment motions and purportedly produced an overwhelming amount of documents causing Plaintiffs' former attorney to withdraw from representing them. *Id.* at pp. 15-16.

Similar to the TDCA claim, Plaintiffs also purport to assert a claim for fraud against Defendants, but fail to allege any facts in support of such claim and instead make only a passing reference to the claim in a paragraph heading in the Petition. *Id.* at p. 17.

The claims for civil and criminal conspiracy based on Plaintiffs' allegations that: (1) MGC purportedly fails to accept unspecified mortgage payments and charges unspecified excessive late fees relating to those payments causing unknown homeowners to default so that LNV can foreclose; (2) that MGC, LNV, and co-defendant Dovenmuehle Mortgage, Inc. ("DMI") work in collusion with each other to "perfect foreclosures" and "abuse the court process"; and (3) MGC, LNV, and DMI work in collusion with Codilis to falsify unidentified mortgage-related documents before recordation in unspecified counties. *Id.* at 17-19.

The quiet title claim is based on Plaintiffs' allegations that Defendants' "actions have clouded title" to the Property and that Plaintiffs purportedly "would have been granted Quiet Title a long time ago" had it not been for MGC's purported "abuse of process" in the Second Lawsuit. *Id.* at p. 22.

Plaintiffs also challenge the assignments of the Security Instrument between other parties and Defendant, and allege, in conclusory fashion, that the assignments contain unspecified

forgeries, false signatures, and false statements. *Id.* at p. 14. Plaintiffs further allege that Defendant fabricated the assignments to deprive them of the Property. *Id.*

**E.    FORECLOSURE OF THE PROPERTY**

On September 2, 2014, the Property was sold at a foreclosure sale to LNV pursuant to a Substitute Trustee's Deed (the "Trustee's Deed"). *See* Ex. 4.[17] The Trustee's Deed was electronically recorded on September 3, 2014. *Id.*

**F.    THE CURRENTLY PENDING EVICTION ACTION**

Plaintiffs admit that, on December 31, 2014, they received a notice to vacate the Property. *See* Motion for Injunctive Relief at p. 4. Plaintiffs, however, failed to vacate the Property. Accordingly, on January 12, 2015, Defendant filed an eviction action styled *LNV Corporation v. Samuel G. Breitling, Jo Ann Breitling, and All Other Occupants of 1704 Cornwall Lane, Sache, Texas 75048* in the Justice Court of Dallas County, Texas, Precinct 2, Place 1 (the "Justice Court"), No. JE15-00071D (the "Pending Eviction Action"). *See* Ex. 5.[18] On January 26, 2015, the Justice Court entered a judgment in favor of LNV and against Plaintiffs awarding LNV possession of the Property (the "Judgment for Possession") in the Pending Eviction Action. Plaintiffs have appealed the Judgment for Possession to the County Court at Law (the "County Court"), but have not paid the filing fees.

**G.    PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

On February 10, 2015, Plaintiffs filed their Motion for Injunctive Relief seeking to enjoin Defendant from proceeding in the Pending Eviction Action based on their allegations that the

---

[17] A true and correct certified copy of the Trustee's Deed is attached hereto and incorporated by reference as Exhibit 4. Pursuant to Rule 201 of the Texas Rules of Evidence, Defendant respectfully requests that the Court take judicial notice of the Trustee's Deed.

[18] A true and correct certified copy of the Sworn Complaint for Forcible Detainer filed in the Pending Eviction Action is attached hereto and incorporated by reference as Exhibit 5. Pursuant to Rule 201 of the Texas Rules of Evidence, Defendant respectfully requests that the Court take judicial notice of the Pending Eviction Action and the filings therein.

Justice Court lacked jurisdiction to enter the Judgment for Possession because the issue of title to the Property is purportedly so intertwined with the issue of possession of the Property such that a trial court was required to determine the issue of title before possession.[19] *See* Motion for Injunctive Relief at pp. 1-3.   In the alternative, Plaintiffs request that the Court vacate and set aside the Final Judgment rendered in the Foreclosure Lawsuit based on, among other things, challenges to various assignments and that the foreclosure of the Property purportedly violated the automatic stay provision of Rule 736 of the Texas Rules of Civil Procedure.  *Id.* at pp. 2, 14-40.

However, as demonstrated herein, the Motion for Injunctive Relief is completely without merit and Plaintiffs are not entitled to any of the requested injunctive relief.   Accordingly, the Motion for Injunctive Relief should be denied and the Plea to the Jurisdiction should be sustained.

## III.
## PLEA TO THE JURISDICTION

### A.   THE JUSTICE AND COUNTY COURT HAVE EXCLUSIVE JURISDICTION TO DETERMINE THE ISSUE OF IMMEDIATE POSSESSION OF THE PROPERTY

A forcible entry and detainer action is a procedure to determine the right to immediate possession of real property.  *Herrera v. Household Finance Corporation III*, No. 04-08-00134-CV, 2009 WL 1154704, at *3 (Tex. App.—San Antonio Apr. 29, 2009, no pet.) (mem. op) (holding that the district court lacked jurisdiction to enter an injunction restraining the enforcement of the county court's judgment, which resolved who was entitled to immediate possession, and affirmed dismissal of plaintiff's claim for injunctive relief).   It is well settled under Texas law that a "justice court and, on trial de novo, a county court have been given

---

[19]Plaintiffs' abuse of process claim in the Motion for Injunctive Relief is also based on their allegations that they challenged title to the Property in this lawsuit and that the Justice Court allegedly lacked jurisdiction to enter the Judgment for Possession.  *See* Petition at p. 12.

exclusive jurisdiction to decide the issue of immediate possession." *Cornish, IV v. Wells Fargo Bank (Tex.), NA*, No. 2-07-161-CV, 2008 WL 2229670, *2 (Tex. App.—Fort Worth May 29, 2008, pet. dism'd w.o.j.) (mem. op.) (quoting *Rice v. Penn*, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.)); *see also In re Mandola*, No. 03-11-00816-CV, 2012 WL 43365, at *1 (Tex. App.—Austin Jan. 4, 2012, no pet.) (mem. op.); *Cuellar v. Martinez*, 625 S.W.2d 3, 4-5 (Tex. Civ. App.—San Antonio 1981, no writ.) (affirming district court's grant of defendant's plea to the jurisdiction and holding that the district court had "no authority to issue an injunction restraining enforcement of a judgment of the county court when the judgment solely resolved who is entitled to immediate possession . . . . ").  The plaintiff in a forcible entry and detainer action need only present sufficient evidence of ownership to demonstrate a superior right to immediate possession of the property.  *Morris v. Am. Home Mortgage Servicing, Inc.*, 360 S.W.3d 32, 34 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Bruce v. Fed. Nat'l Mortgage Ass'n*, 352 S.W.3d 891, 893 (Tex. App.—Dallas 2011, pet. denied); *Herrera*, 2009 WL 1154704, at *3.  Only if the question of title is "so intertwined with the issue of possession," which is not the case here, must title be adjudicated first.  *Herrera*, 2009 WL 1154704, at *3.

An independent basis for possession, separate and apart from title, exists where a security instrument contains a tenants-at-sufferance clause establishing a landlord-tenant relationship between the tenant and the purchaser of the property at the foreclosure sale.  *Morris*, 360 S.W.3d at 34; *Bruce*, 352 S.W.3d at 893-94; *Villalon v. Bank One*, 176 S.W.3d 66, 71 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Chinyere v. Wells Fargo Bank, N.A.,* No. 01-11-00304-CV, 2012 WL 2923189, at **4-5 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet. h.) (collecting cases).  The Texas Court of Appeals has recognized that "[t]enant-at-sufferance clauses separate the issue of possession from the issue of title."  *Pinnacle Premier Properties, Inc. v. Breton*, 447 S.W.3d 558 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (reversing trial

court order enjoining appellants from pursuing eviction proceedings in justice court based on finding that justice court had exclusive jurisdiction over the question of possession because the issues of title and possession were not intertwined) (citing *Maxwell v. U.S. Bank Nat'l Ass'n,* No. 14–12–00209–CV, 2013 WL 3580621, at *2-3 (Tex. App.—Houston [14th Dist.] July 11, 2013, pet. dism'd w.o.j.) (mem. op.)).   "Under these provisions, a foreclosure sale transforms the borrower into a tenant at sufferance who must immediately relinquish possession to the foreclosure-sale purchaser."   *Id.*   "When the party to be evicted is subject to a tenant-at-sufferance clause and the party seeking possession purchased the property at a foreclosure sale and gave proper notice requiring the occupants to vacate the premises, defects in the foreclosure process are not relevant to possession."   *Pinnacle Premier Properties, Inc.*, 447 S.W.3d 558 (citing *Glapion v. AH4R I TX, LLC*, No. 14–13–00705–CV, 2014 WL 2158161, at *1 (Tex. App.—Houston [14th Dist .] May 22, 2014, no pet.) (mem. op.) and *Williams v. Bank of N.Y. Mellon,* 315 S.W.3d 925, 927 (Tex. App.—Dallas 2010, no pet.)).

Thus, the existence of a landlord-tenant relationship provides a basis for a justice or county court to determine which party has a right to superior possession, without determining title, through submission of a substitute trustee's deed and security instrument that provides for a party to become a tenant at sufferance after foreclosure.   *See McGuire v. Fannie Mae*, No. 02-11-00312-CV, 2012 WL 955377, at *1-2 (Tex. App.—Fort Worth Mar. 22, 2012, pet. dism'd w.o.j.) (mem. op.) (citations omitted) (holding that defendant established superior right of possession through submission of the deed of trust and substitute trustee's deed); *Farkas v. Fed. Nat'l Mortgage Assoc.*, No. 05-11-01416-CV, 2012 WL 5351262, at *1, *4 (Tex. App.—Dallas Oct. 31, 2012, pet dism'd w.o.j.) (mem. op.) (holding that "landlord-tenant relationship provided an independent basis on which the trial court could determine the issue of immediate possession without resolving the issue of title to the property."); *see also Rice*, 51 S.W.3d at 712.   A

substitute trustee's deed confers standing to assert a forcible detainer action and a purchaser is "not required to demonstrate valid title in order to demonstrate superior right to possession." *See McGuire*, 2012 WL 955377, at *2-3 (holding Fannie Mae's status as grantee under substitute trustee's deed was sufficient to confer standing to assert forcible detainer action, and submission of deed established its superior right to possession).

**B.**  **THE TENANT AT SUFFERANCE CLAUSE IN THE SECURITY INSTRUMENT PROVIDES AN INDEPENDENT BASIS FOR THE JUSTICE AND COUNTY COURT TO DETERMINE THE ISSUE OF POSSESSION INDEPENDENT OF ANY ALLEGED DISPUTE REGARDING TITLE TO THE PROPERTY**

In this case, the Security Instrument contains a tenants-at-sufferance clause establishing a landlord-tenant relationship post-foreclosure:

> If the Property is sold pursuant to this Paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale.  If possession is not surrendered, Borrower or such person **shall be a tenant at sufferance** and may be removed by writ of possession.

*See* Ex. 3(A), its Ex. B ¶ 21 (emphasis added).

The landlord-tenant relationship established by the Security Instrument provides a basis for the Justice and County Court in the Pending Eviction Action to determine that Defendant has the right to immediate possession of the Property independent of, and without resolving, any alleged dispute relating to the title to the Property.  *See Morris*, 360 S.W.3d at 34; *Bruce*, 352 S.W.3d at 893-94; *Villalon*, 176 S.W.3d at 71; *see also Pinnacle Premier Properties, Inc.*, 447 S.W.3d 558; *Glapion,* 2014 WL 2158161, at *2; *Maxwell,* 2013 WL 3580621, at *3. Accordingly, the Justice and County Court in the Pending Eviction Action has exclusive jurisdiction to decide the issue of entitlement to immediate possession of the Property.

Although this Court has jurisdiction over issues related to the Property's title, the question of immediate possession of the Property does not require a determination of title.  That Plaintiffs allege, in conclusory fashion, the instant lawsuit raises questions of title does **not** inextricably

intertwine the issues of possession and title. *See Pinnacle Premier Properties, Inc.*, 447 S.W.3d at 564-65; *Farkas*, 2012 WL 5351262, at *1, *4. In *Pinnacle Premier Properties, Inc.*, the tenant in possession filed suit in district court asserting claims for trespass to try title, suit to quiet title, and wrongful foreclosure, and seeking injunctive relief precluding a foreclosure sale purchaser from proceeding with an eviction action in the justice court. *Id.* at 561. The appellate court reversed the trial court's order enjoining eviction proceedings in justice court and held that the justice court had exclusive jurisdiction over the question of possession because the issues of title and possession were not intertwined in light of the tenant-at-sufferance clause in the deed of trust. *Id.* at 564-565. Additionally, in *Farkas*, the tenant in possession complained of wrongful actions in the conduct of the foreclosure process and asked the county court to abate eviction proceedings until the district court could determine the title issue. *Id.* at *1. When the county court refused and rendered judgment, the tenant appealed to the district court, which held that the deed of trust at issue created a landlord-tenant relationship and established an independent ground for the trial court to determine the issue of immediate possession **without** resolving the issue of title to the property. *Id.* at *4. Because the same is true here, this Court should defer to the jurisdiction of the Justice and County Court in the Pending Eviction Action with respect to the issue of possession and refuse to enter an injunction precluding Plaintiffs' eviction from the Property.

Moreover, the Justice and County Court in the Pending Eviction Action is "not deprived of jurisdiction" simply because parties dispute title, but only if the determination of right to immediate possession requires resolution of a title dispute, which is not the case here. *Rice*, 51 S.W.3d at 709, 712-713; *Cornish, IV*, 2008 WL 2229670, *2. If both title and possession are at issue, the right of possession may be decided through an eviction suit, while title is decided in a district court. *Young Women's Christian Ass'n*, 165 S.W.2d at 242-43. A district court may

enjoin the justice or county court from adjudicating title, **but it may not "enjoin the trial of the issue of possession in the forcible entry and detainer suit."** *Id.* (emphasis added).  Plaintiffs, however, cannot demonstrate that the Justice and County Court are without jurisdiction to decide the issue of immediate possession of the Property in light of the existence of the landlord-relationship in this case.[20]

Based on the foregoing, Plaintiffs' contentions that the Justice and County Court lack jurisdiction because the issue of title to the Property is purportedly so intertwined with the issue of possession of the Property such that a trial court is required to determine the issue of title before possession is wholly without merit.  Consequently, this Court lacks jurisdiction to enter an injunction enjoining Plaintiffs' eviction from the Property and precluding Defendant from proceeding in the Pending Eviction Action.  The Plea to the Jurisdiction should be sustained and the Motion for Injunctive Relief should be denied.

## IV.
## RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Subject to and without waiving the Plea to the Jurisdiction, the Motion for Injunctive relief should be denied because Plaintiffs' claims are either barred by *res judicata*, the statute of limitations, and/or the economic loss doctrine.  Further, the Court should not entertain Plaintiffs' request to set aside and/or vacate the Final Judgment rendered in the Foreclosure Lawsuit because it constitutes an improper and impermissible collateral attack and because *res judicata* bars the subsequent collateral attack on the Final Judgment.

---

[20]Plaintiffs' reliance on *Yarbourgh v. Household Finance Corporation III*, No. 14-13-00932-CV, 2015 WL 167023 (Tex. App.—Houston [14th Dist.] Jan. 13, 2015, no pet.) is misplaced because there are no allegations that Plaintiffs' signatures on the Security Instrument were forged and because Plaintiffs have consistently admitted that they signed the Security Instrument.  *See* Ex. 1(A) ¶ 7 ("The Note was further secured by a [Security Instrument] of even date therewith executed by Plaintiff Jo Ann Breitling both individually and as attorney in fact for Samuel Breitling . . . ."); Ex. 2(A) ¶ 4 ("On October 20, 2000, Plaintiffs signed [a] Promissory Note . . . and [Security Instrument] . . . in favor of Aames Funding Corporation d/b/a Aames Home Loans.").

## A.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* An injury is irreparable if the injured party cannot be compensated adequately in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.*

### 1.    Plaintiffs Cannot Show a Probable Right to Relief

Plaintiffs are not entitled to any injunctive relief because they have not asserted any viable causes of action against Defendant. Plaintiffs' claims are either barred by *res judicata*, the statute of limitations, the economic loss doctrine, and/or otherwise fail as a matter of law.

#### i.    *The Doctrine of Res Judicata Bars Plaintiffs' Claims*

The claims asserted against Defendant in this lawsuit and in the Motion for Injunctive Relief could have been raised and should have been raised as compulsory counterclaims in the Foreclosure Lawsuit, but were not. Consequently, such claims are barred by the doctrine of *res judicata* and Plaintiffs cannot demonstrate a probable right to relief.

##### a.    <u>*Res Judicata*</u>

The doctrine of *res judicata* bars the assertion of a claim in a subsequent case when: (1) there is a prior final judgment on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on the same claims as were raised or could have been raised in the first action. *See Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). "This approach

mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit." *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). *Res judicata* precludes the assertion of all "claims or defenses that, through diligence, should have been litigated in the prior suit but were not." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206–07 (Tex. 1999).

<div align="center">b.    <u>Compulsory Counterclaims</u></div>

*Res judicata* bars defendants in a previous lawsuit from asserting claims in a later action that were compulsory counterclaims in the prior suit. *See Ingersoll-Rand*, 997 S.W.2d at 207 (stating any claims that would be compulsory counterclaims must be brought by defendant or be barred due to *res judicata*); *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 216 (Tex. App.—El Paso 2010, pet. denied) (same); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied) (same). Under Rule 97(a) of the Texas Rules of Civil Procedure, a compulsory counterclaim is "any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Tex. R. Civ. P. 97(a).

Texas follows a transactional approach in determining whether two actions are sufficiently related for purposes of *res judicata* and the compulsory counterclaim rule. *See Ingersoll-Rand*, 997 S.W.2d at 206–07 (Tex. 1999); *see also Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630–31 (Tex. 1992) (stating definition of transaction in compulsory counterclaim and *res judicata* rules are "substantially similar"). In deciding whether two lawsuits arise out of the same transaction or occurrence, several factors are considered, including "their relatedness in

time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Getty Oil Co. v. Ins. Co. of N.A.*, 845 S.W.2d 794, 799 (Tex. 1992) (quotation marks omitted) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b).

Specifically, "[w]here there is a legal relationship, such as [ ] a lease or contract, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata." *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 386 (Tex. App.—Beaumont 2004, pet. denied); *see also Jones v. First Bank of Anson*, 846 S.W.2d 107, 108–10 (Tex. App.—Eastland 1992, no writ) (finding defendant was barred from bringing claims related to collection on a note when bank previously sued for judgment on same note); *South Plains Switching, Ltd. Co. v. BNSF Ry.*, 255 S.W.3d 690, 699-700 (Tex. App.—Amarillo 2008, pet. denied) (holding claims brought on same contract arise from same transaction); *Musgrave v. Owen*, 67 S.W.3d 513, 520 (Tex. App.—Texarkana 2002, no pet. h.) (finding all claims arising from same covenant must be asserted in original action).

> c.  Plaintiffs' Claims Are Barred Because Each Element of *Res Judicata* is Satisfied

The claims against Defendant in this lawsuit and in the Motion for Injunctive Relief are barred by *res judicata*. First, the parties in this lawsuit and the Foreclosure Lawsuit are the same. Plaintiffs herein were defendants in the Foreclosure Lawsuit. LNV is a defendant in this lawsuit and was a plaintiff in the Foreclosure Lawsuit. Thus, the parties in this lawsuit and the Foreclosure Lawsuit are identical.

Second, the Final Judgment in the Foreclosure Lawsuit was rendered by the 134th District Court of Dallas County, Texas, a court of competent jurisdiction. Third, the Foreclosure Lawsuit was, as set forth above, decided on the merits, with a Final Judgment being entered on August 4, 2014. *See* Ex. 3(F).

Finally, the claims against Defendant in this case and in the Motion for Injunctive Relief all arise out of the same transaction or occurrence as the claims in the Foreclosure Lawsuit, especially in light of the contractual relationship between the parties based on the Home Equity Loan. *See State & Cnty. Mut. Fire Ins. Co.*, 52 S.W.3d at 696. The claims in the Foreclosure Lawsuit, and all the claims asserted in the Petition and Motion for Injunctive Relief, arise from the contractual relationship between Plaintiffs and Defendant based on the Home Equity Loan. Consequently, the claims in this lawsuit and in the Motion for Injunctive Relief could and should have been raised as compulsory counterclaims in the Foreclosure Lawsuit, but were not.

Plaintiffs' own admissions even demonstrate that their claims against Defendant are barred by *res judicata*: "**[y]ears of prior litigation between these parties pertaining to the same issues have been heard in the . . . Dallas County District Court[s]**." Petition at p. 2 (emphasis added). In the Foreclosure Lawsuit, Plaintiffs did not assert any counterclaims against LNV, but in response to LNV's Motion for In Rem Summary Judgment, alleged that they did not receive certain TILA and RESPA disclosures, that their signatures on unspecified documents were forged during the underwriting of the Home Equity Loan, that the assignments of the Security Instrument were allegedly falsified, and that LNV purportedly engaged in fraud. *See* Exs. 3, 3(B), 3(D), and 3(E) at pp. 2-6. The court in the Foreclosure Lawsuit granted LNV's Motion for In Rem Summary Judgment and entered Final Judgment. *See* Ex. 3(F).

Thereafter, Plaintiffs nonetheless filed the instant lawsuit asserting claims against Defendant, among others, for violations of TILA, RESPA, and the TDCA, abuse of process, fraud upon the court, fraud, conspiracy, and quiet title, as well as challenges to the assignments of the Security Instrument. *See* Petition at pp. 11-22. Subsequently, Plaintiffs filed a Motion for Injunctive Relief wherein they again claim that they were not given certain TILA and RESPA disclosures and that their signatures were forged on unspecified documents during the

underwriting of the Home Equity Loan, as well as lodge challenges to the assignments of the Security Instrument. *See* Motion for Injunctive Relief at pp. 2, 23, 25-28, 35. Plaintiffs also contend, in conclusory fashion, that the Note and Security Instrument are void and that, for the first time, Defendant violated article XVI § 50 of the Texas Constitution. *Id.* at pp. 24, 36. However, Plaintiffs could and should have raised these claims as compulsory counterclaims in the Foreclosure Lawsuit, but did not.

The claims against Defendant in this lawsuit and in the Motion for Injunctive Relief, on the one hand, and the claims against Plaintiffs in the Foreclosure Lawsuit, on the other hand, all arise from the same subject matter in light of the legal relationship between the parties based on the Home Equity Loan. *See Sanders*, 127 S.W.3d at 386 ("Where there is a legal relationship, such as [ ] a lease or contract, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata."); *Jones*, 846 S.W.2d at 108-10 (defendant was barred from bringing claims related to collection on a note when bank previously sued for judgment on same note); *South Plains Switching, Ltd. Co.*, 255 S.W.3d at 699-700 (holding claims brought on same contract arise from same transaction); *Musgrave*, 67 S.W.3d at 520 (finding all claims arising from same covenant must be asserted in original action). Accordingly, Plaintiffs' claims against Defendant in this lawsuit and in the Motion for Injunctive Relief are subject to res judicata because they are entirely premised on the legal relationship between the parties arising from the Home Equity Loan.

Moreover, Texas courts have concluded that similar claims are compulsory counterclaims to a suit on a note or a foreclosure action. *See, e.g., Lamar Sav. Ass'n v. White,* 731 S.W.2d 715, 717-18 (Tex. App.—Houston [1st Dist.] 1987, orig. proceeding) (causes of action for breach of contract, breach of fiduciary duty, usury, duress, estoppel, and tortious interference are compulsory counterclaims to a lender's foreclosure action); *Williams v. Nat'l Mortgage Co.*, 903

S.W.2d 398, 404 (Tex. App.—Dallas 1995, writ denied) (borrowers claims against lender for wrongful foreclosure, trespass to try title, DTPA, and breach of an implied duty of good faith and fair dealing were compulsory counterclaims in first deficiency suit, and therefore, barred by *res judicata* in second suit); *Jones*, 846 S.W.2d at 109 (causes of action for breach of duty of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation, conversion, estoppel, and violations of the DTPA are compulsory counterclaims to a suit on a note).

Therefore, because the claims in this lawsuit and the claims in the Foreclosure Lawsuit arise from the same transaction or occurrence, which Plaintiffs admit, and in light of the contractual relationship between the parties arising from the Home Equity Loan, the claims against Defendant in this lawsuit and in the Motion for Injunctive Relief could and should have been raised as compulsory counterclaims in the Foreclosure Action, but were not.  Consequently, the claims against Defendant in this lawsuit and in the Motion for Injunctive Relief are barred by *res judicata* and Plaintiffs cannot demonstrate a probable right to relief as to such claims.

> ### ii.     The Statute of Limitations Precludes the TILA and RESPA Claims, as Well as Certain of the Abuse of Process Claims

The TILA and RESPA claims, as well as certain of the abuse of process claims fail as a matter of law because they are barred by the applicable statute of limitations.  Accordingly, these claims provide no basis for a viable suit going forward.

> #### a.     The TILA Claims are Time-Barred

An action for damages based on a TILA violation must be brought within one year of the occurrence of the violation (*see* 15 U.S.C. § 1640(e)), and an action for rescission based on a TILA violation must be brought within three years of the occurrence of the violation (*see* 15 U.S.C. § 1635(f)).  *See Kareem v. Am. Home Mortgage Servicing, Inc.*, No. 3-10-CV-0762-B-BD, 2011 WL 1869419, at *1 (N.D. Tex. Apr. 12, 2011); *Lamb v. Bank of America, NA*, No. 4:11-CV-819 CAS, 2012 WL 87146, at *3 (E.D. Mo. Jan. 11, 2012).  "A claim under the TILA

accrues when the loan is closed." *Val–Com Acquisitions Trust v. CitiMortgage, Inc.*, Civil Action No. 3:10-CV-1118-D, 2011 WL 1540353, at *2 (N.D. Tex. Apr. 21, 2011) (citing *Val–Com Acquisitions Trust v. Chase Home Finance LLC*, 2010 WL 4283906, at *3 (N.D. Tex. Oct. 28, 2010)); *see also Moor v. Traveler's Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). "Nondisclosure is not a continuing violation for purposes of the statute of limitations." *Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-2460-L, 2013 WL 1858195, *5 (N.D. Tex. May 3, 2013)

In this case, Plaintiffs admittedly closed on the Home Equity Loan on October 20, 2000, which is the date on which any purported claim for a violation of TILA accrued. *See* Ex. 1(A) ¶ 7; Ex. 2(B) ¶¶ 4, 7. Plaintiffs, however, did not file the instant lawsuit until August 29, 2014, which is approximately thirteen years after the one-year statute of limitations under Section 1640(e) for TILA damages claims had lapsed and approximately eleven years after the three-year statute of limitations under Section 1635(f) for TILA rescission claims had lapsed. Therefore, the TILA claims are barred by the statute of limitations and Plaintiffs cannot demonstrate a probable right to relief as to such claims.[21]

### b.   The RESPA Claims are Time-Barred

RESPA claims relating to the servicing of mortgage loans under Section 2605 must be brought within three years of the occurrence of the alleged violation. *See* 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605 . . . of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within

---

[21]To the extent the fraud and/or TDCA claims are based on the same allegations that are time-barred under TILA and RESPA, the fraud and TDCA claims are also barred by the statute of limitations and Plaintiffs cannot demonstrate a probable right to relief as to such claims. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (fraud claim subject to four-year statute of limitations); *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 216 (Tex. 2011); *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 872 (Tex. App.—Corpus Christi 1998, pet. denied) (statute of limitations for a TDCA claim is two years).

3 years in the case of a violation of section 2605 of this title . . . from the date of the occurrence of the violation . . . ."). The RESPA claims are time-barred.

Plaintiffs further allege that they purportedly did not receive notice of a transfer of the Security Instrument to LNV. *See* Petition at p. 13. The Security Instrument was assigned to LNV on March 21, 2008, which is the date on which the purported claim for a violation of RESPA relating to the transfer of the Security Instrument accrued. *See* Ex. 3(A), its Ex. G. Plaintiffs, however, did not file the instant lawsuit until August 29, 2014, approximately four and a half years after the expiration of the three-year statute of limitations.

Similarly, Plaintiffs allege that they did not receive notice of the transfer in the servicing of the Home Equity Loan from MGC to DMI. *See* Petition at p. 12. The servicing of the Home Equity Loan was transferred from MGC to DMI, effective April 1, 2010, which is the date on which the purported claim for a violation of RESPA relating to the transfer of the servicing of the Home Equity Loan accrued. *See* Ex. 6 ¶ 3, its Ex. A.[22] Plaintiffs, however, did not file the instant lawsuit until August 29, 2014, approximately one and a half years after the expiration of the three-year statute of limitations.

Additionally, Plaintiffs allege that MGC did not process and/or account for unidentified payments and attempted to charge excessive late fees relating to those payments, but that MGC failed to show the legal right to collect those payments. *See* Petition at p. 13. Because Plaintiffs admittedly stopped making their Loan payments after the February 1, 2010 payment, the statute of limitations relating to these allegations would begin to run at the very latest on February 1, 2010. Plaintiffs, however, did not file the instant lawsuit until August 29, 2014, approximately one and a half years after the expiration of the three-year statute of limitations. Therefore, the

---

[22]A true and correct copy of the Declaration of Michelle Conner is attached hereto and incorporated by reference as Exhibit 6.

**PLEA TO THE JURISDICTION AND, SUBJECT THERETO,**
**RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF** **PAGE 23**

RESPA claims are barred by the statute of limitations and Plaintiffs cannot demonstrate a probable right to relief as to such claims.

c.     Certain of the Abuse of Process Claims Are Time-Barred

Plaintiffs allegations that, in the Second Lawsuit, MGC filed motions for summary judgment in August 2010, February 2011, June 2011, and November 2011, and March 2012, are all time-barred. *See* Petition at pp. 15-16. A claim for abuse of process has a two-year statute of limitations under Texas law. *See Ortega v. Young Again Products, Inc.*, 548 Fed.Appx. 108, 112-113 (5th Cir. 2013); *Patrick v. Howard,* 904 S.W.2d 941, 943–44 (Tex. App.—Austin 1995, no pet.) (abuse of process). Plaintiffs, however, did not file this lawsuit August 29, 2014, which is approximately six months after two-year statute of limitations had lapsed based on the filing of the March 2012 motion for summary judgment. Therefore, these claims for abuse of process are barred by the statute of limitations.

### *iii.     The Fraud and TDCA Claims are Barred by the Economic Loss Rule*

Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties. *See Sw. Bell Tele. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex. 1991). Although not the case here, "if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract." *Clark v. Bank of Am. NA*, No. 3:12-cv-1277-N-BK, 2012 WL 4793465, at *5 (N.D. Tex. Aug. 1, 2012). In determining "whether a plaintiff may recover on a tort theory, courts look at the nature of the plaintiff's loss." *Id.* at *5 (citing *Sterling Chems, Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 796–98 (Tex. App–Houston [1st Dist.] 2007)). A tort claim will not lie "when the only injury alleged is for economic damages that are caused by the failure to perform a contract." *Id.* The economic

loss rule applies to real estate transactions. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986).

The economic loss rule has been expressly applied to bar fraud and TDCA claims where a plaintiff alleges no damages independent of those suffered as a result of an alleged breach of contract. *See, e.g., Daryani v. Wells Fargo Bank, N.A.*, 4:10-CV-05181, 2012 WL 3527924, at *3-4 (S.D. Tex. Aug. 13, 2012) (dismissing fraud claim based on the economic loss rule); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, No. H-09-3828, 2010 WL 1996596, at *7 (S.D. Tex. May 17, 2010) (recognizing the economic loss rule as a bar to fraud claims); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 817 (Tex. App.—Fort Worth 2006, pet. denied) (holding that the economic loss rule barred fraud claim); *Johnson v. JPMorgan Chase Bank, N.A.*, No. 4:12-CV-285, 2013 WL 2554415 at *14 (E.D. Tex. June 7, 2013) (applying economic loss rule to bar TDCA claims), *aff'd Johnson v. JP Morgan Chase Bank*, No. 13-41015, 2014 WL 2506231 (5th Cir. June 4, 2014); *Caldwell v. Flagstar Bank, FSB, et al.*, No. 3:12-cv-1855-K-BD, 2013 WL 705110, at *12 (N.D. Tex. Feb, 4, 2013), *rec. adopted*, 2013 WL 705876 (N.D. Tex. Feb. 26, 2013) (applying economic loss rule to dismiss claims under the TDCA); *Singh v. JPMorgan Chase Bank, N.A.*, No. 4:11–CV–607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3891060 (E.D. Tex. Sep. 7, 2012) (holding that because the deed of trust governed the conduct plaintiff alleged violated the TDCA, plaintiff could not recover under a tort theory).

In this case, Plaintiffs have not alleged any independent injury outside of the purported economic losses relating to the subject matter of the contracts between the parties, *i.e.* the Note and Security Instrument. *See also DeLanney*, 809 S.W.2d at 494 ("When the only loss or damage is to the subject of the contract, the plaintiff's action is ordinarily on the contract."); *Jim Walter Homes, Inc.*, 711 S.W.2d at 618 ("[w]hen injury is only the economic loss to the subject

of a contract itself, the action sounds in contract alone.").   Thus, Plaintiffs cannot demonstrate that they suffered any loss independent of the subject matter of the Note and Security Instrument. Consequently, the fraud and TDCA claims are barred by the economic loss rule and Plaintiffs cannot demonstrate a probable right to relief as to such claims.

### *iv.   The Litigation Privilege Bars the Abuse of Process Claims*

"The litigation privilege protects an attorney from personal liability stemming from conduct that the 'attorney engages in as part of the discharge of his duties in representing a party in a lawsuit.'" *Sacks v. Hall*, No. 01–13–00531–CV, 2014 WL 6602460, at *11 (Tex. App.— Houston [1 Dist.] Nov. 20, 2014, no pet.) (quoting *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).   Under the litigation privilege, an attorney has "qualified immunity" from civil liability, with respect to non-clients, for actions taken in connection with representing a client in litigation.   *Alpert v. Crain, Caton & James, P. C.*, 178 S.W.3d 398, 405-408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that litigation privilege bars fraud claim based on actions such as, among other things, filing pleadings).   This "qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit." *Sacks*, 2014 WL 6602460, at *12 (citing *Alpert*, 178 S.W.3d at 405).   "For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court." *Sacks*, 2014 WL 6602460, at *12 (citing *Bradt*, 892 S.W.2d at 72).   "Courts have refused to acknowledge an independent cause of action in such instances 'because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit.'" *Alpert*, 178 S.W.3d at 406 (citing *Bradt*, 892 S.W.2d at 72).

"An attorney is . . . charged with a duty of zealously representing . . . clients within the bounds of the law." *Bradt*, 892 S.W.2d at 71.  "In fulfilling this duty, an attorney 'ha[s] the right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages.'"  *Id.* (quoting *Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex. Civ. App.— Austin 1966, writ ref'd n.r.e.)).  "Any other rule would act as a severe and crippling deterrent to the ends of justice for the reason that a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled." *Id.*

Moreover, "[u]nless a client is implicated in some way other than merely being represented by the attorney alleged to have committed the intentional wrongful conduct, **the client cannot be liable for the attorney's conduct**." *Bradt*, 892 S.W.2d at 76 (emphasis added).

In this case, the abuse of process claims relating to the filing of various summary judgment motions and discovery practices in the Second Lawsuit are barred by the litigation privilege, which provides that an attorney has "qualified immunity" from civil liability, with respect to non-clients, such as Plaintiffs, for actions taken in connection with representing a client in litigation.  *See Sacks*, 2014 WL 6602460, at *11 *Bradt*, 892 S.W.2d at 72; *Alpert*, 178 S.W.3d at 405-408.  Additionally, under the litigation privilege, Defendant cannot be held liable for such conduct.  *See Bradt*, 892 S.W.2d at 76.  Therefore, the abuse of process claims fail as a matter of law and Plaintiffs cannot demonstrate a probable right to relief as to such claims.

### v.    *The Foreclosure Lawsuit is Not a Rule 736 Expedited Order Proceeding*

Although the Petition is completely devoid of any allegations relating to an alleged violation of the automatic stay provision of Rule 736.11 of the Texas Rules of Civil Procedure, Plaintiffs nonetheless contend in their Motion for Injunctive Relief that the filing of the instant

lawsuit triggered the automatic stay provision of Rule 736.11 of the Texas Rules of Civil Procedure, and as a result, the sale of the Property should be set aside because it purportedly violated Rule 736.11. *See* Motion for Injunctive Relief at pp. 2, 14-19, 21-22. Plaintiffs fail to appreciate, however, that the Foreclosure Lawsuit was an action seeking a judgment for judicial foreclosure, not an application for an expedited order allowing foreclosure pursuant to Rule 736 of the Texas Rules of Civil Procedure.

Defendant filed the Foreclosure Lawsuit seeking to foreclose on the Property. *See* Ex. 3(A). Defendant served Plaintiffs with citation and a copy of the Original Petition for Foreclosure on June 5, 2014. *See* Exs. 3, 3(A). Plaintiffs answered and filed responses to Defendant's Motion for In Rem Summary Judgment in the Foreclosure Lawsuit. *See* Exs. 3(B), 3(D)-(E). After a summary judgment hearing, which is an adjudication on the merits, the court in the Foreclosure Lawsuit entered a Final Judgment authorizing the foreclosure of the Property pursuant to the terms of the Security Instrument, Section 51.002 of the Texas Property Code, and applicable Texas Law. *See* Ex. 3(F).

Accordingly, the Foreclosure Lawsuit is not an application for an expedited order allowing foreclosure pursuant to Rule 736, but rather an action seeking a judgment for judicial foreclosure not subject to the automatic stay provision of Rule 736.11. Thus, the sale of the Property did not violate Rule 736.11 and Plaintiffs cannot demonstrate a probable right to relief as to any claims based on their misconceived notion that the Foreclosure Lawsuit constitutes an application for an expedited order allowing foreclosure pursuant to Rule 736, which it clearly does not.

### vi.     *Plaintiffs' Claims Regarding Alleged Violations of the Texas Property Code Fail as a Matter of Law*

Notwithstanding that they did not assert any such claims against Defendant in the Petition, Plaintiffs, in the Motion for Injunctive Relief, contend for the very first time that

Defendant violated the Texas Property Code based on their allegations that they did not timely receive the notice of the foreclosure sale of the Property dated August 11, 2015 (the "Notice of Trustee's Sale"), that the mortgage servicer for their Home Equity Loan was misrepresented on the Notice of Trustee's Sale, and that the name and address of both the mortgage servicer for the Home Equity Loan and the substitute trustee were not disclosed on the Notice of Trustee's Sale. *See* Motion for Injunctive Relief at pp. 20-21.  The alleged violations of the Texas Property Code, however, fail as a matter of law and do not demonstrate a probable right to relief.

<div align="center">a.    <u>There is No Private Right of Action under the Texas Property Code</u></div>

Courts have construed claims for violation of Section 51.002 of the Texas Property Code as claims for wrongful foreclosure because there is no private right of action thereunder. *See, e.g., James v. Wells Fargo Bank, N.A.*, No. H-14-0449, 2014 WL 2123060, at *6 (S.D. Tex. May 21, 2014) ("Courts generally construe claims alleging failure to properly notice under § 51.002 as claims for wrongful foreclosure."); *Ashton v. BAC Home Loans Servicing, L.P.*, No. 4:13-CV-810, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages.  The section also does not contain its own enforcement mechanism.  Rather, federal courts have construed claims under section 51.002 to be wrongful foreclosure claims."); *Swannie v. Bank of New York, Mellon*, No. 4:11-CV-338-Y, 2012 WL 2942242, at *4 (N.D. Tex. Jul. 19, 2012) (stating that plaintiff "has not offered any authority establishing that section 51.0025 of the Texas Property Code even provides a private right of action."); *Hill v. Wells Fargo Bank, N.A.*, No. V–12–11, 2012 WL 2065377, at *7 (S.D. Tex. Jun. 6, 2012) (construing plaintiff's claim under § 51.002(d) of the Texas Property Code as one for wrongful foreclosure); *Anderson v. National City Mortg.*, No. 3:11-CV-1687-N, 2012 WL 612562, at *6 (N.D. Tex. Jan. 17, 2012) (construing possible violation of Section 51.002 as a claim for wrongful foreclosure); *Bittinger v. Wells Fargo Bank*

*N.A.*, No. H–10–1745, 2011 WL 3568206, at *4 (S.D. Tex. Aug. 15, 2011) (recognizing claim for wrongful foreclosure based on alleged failure to give required notices under § 51.002).

Plaintiffs, however, have failed to demonstrate a defect in the foreclosure sale proceedings, a grossly inadequate selling price,[23] and a causal connection between the defect and the grossly inadequate selling price, each of which is required to state a wrongful foreclosure claim under Texas law.[24]  Additionally, borrowers that remain in possession of real property, like the Plaintiffs in this case, are precluded from recovering damages under a wrongful foreclosure claim.[25]  Moreover, Texas law is clear that to set aside, cancel, and rescind a foreclosure sale, a

---

[23]Plaintiffs cannot demonstrate that the Property was sold for an inadequate selling price as a matter of law because the Property sold for approximately 90% of its fair market value.  Under Texas law, "a grossly inadequate price would have to be so little as 'to shock a correct mind.'" *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (quoting *FDIC v. Blanton*, 918 F.2d 524, 531-32 (5th Cir. 1991)).  The Fifth Circuit has recognized that a selling price is not grossly inadequate under Texas law if the property sells for at least 60% of its fair market value. *See Ayres v. Parker*, No. SA-12-CV-621-XR, 2013 WL 4048323, at *8 (W.D. Tex. Jul, 29, 2013) (citing *Blanton*, 918 F.2d at 531-32 ("The weight of Texas authority rejects a determination of gross inadequacy where . . . property sells for over 60% of fair market value and precedent exists for disregarding a jury finding to the contrary.")); *Christensen v. Bank of Am., N.A.*, No. 5:10-CV-176-C, 2011 WL 7070568, at *3 (N.D. Tex. Nov. 4, 2011) (holding that a sales price that was 58.94 percent of fair market value was not grossly inadequate as a matter of law).  Here, on September 2, 2014, the Property sold for $149,400.54.  *See* Ex. 4.  The fair market value of the Property was $165,210 in 2014.  *See* Ex. 8.  Attached hereto and incorporated by reference as Exhibit 8 is a true and correct copy of a Dallas Central Appraisal District printout reflecting the value of the Property, which Defendant respectfully requests the Court take judicial notice of pursuant to Rule 201 of the Texas Rules of Evidence.  Thus, it is undisputed that the selling price of the Property was approximately 90% of its fair market value, and as a result, the sale price is not shocking and therefore the Property was not sold for a grossly inadequate price as a matter of law.  *See, e.g.*, *Blanton*, 918 F.2d at 531-32 (property that sells for over 60% of fair market value is not grossly inadequate); *Christensen*, 2011 WL 7070568, at *3 (N.D. Tex. Nov. 4, 2011) (sales price that was 58.94% percent of fair market value was not grossly inadequate as a matter of law).  Consequently, Plaintiffs cannot allege that a causal connection between any purported defects and an inadequate selling price exists in this case.

[24]*See, e.g.*, *Martins*, 722 F.3d at 256; *Barcenas v. Fed. Home Loan Mortg. Corp.*, 2013 WL 286250, at *5 (S.D. Tex. Jan. 24, 2013); *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.).

[25]*See e.g.*, *Barcenas*, 2013 WL 286250, at *7 (citing *Peoples v. BAC Home Loan Servicing, L.P.*, No. 4:10-CV489-A, 2011 WL 1107211, *4 (N.D. Tex. mar. 25, 2011) (holding that under Texas law loss of possession is required to state a claim for wrongful foreclosure)); *Daryani v. Wells Fargo Bank, N.A.*, No. 4:10-CV-05181, 2012 WL 3527924, *8 (S.D. Tex. Aug. 13, 2012); *Hill*, 2012 WL 2065377, at *8 (stating that "even if [defendant] did violate § 51.002(d) and prematurely foreclosed on [plaintiff's] home, [plaintiff] has not alleged that she is entitled to damages for this conduct" because she admitted that she still possesses the property).

borrower is required to tender, not just offer, the full amount due under the subject note, which Plaintiffs have failed to do.[26]

Thus, because there is no private right of action under the Texas Property Code any claim for violation of the Texas Property Code fails and should be construed as a claim for wrongful foreclosure, which fails as a matter of law.

b.    There is No Requirement That Plaintiffs Actually Receive the Notice of Trustee's Sale Under the Texas Property Code

Plaintiffs' allegations that they did not timely receive the Notice of Trustee's Sale before the foreclosure of the Property do not support any claims against Defendant in this lawsuit as a matter of law.   More specifically, Plaintiffs allege that they received the Notice of Trustee's Sale no earlier than August 13, 2014, which is less than 21 days before the September 2, 2014 foreclosure sale of the Property.   *See* Petition at p. 21.   However, whether Plaintiffs did not receive or did not timely receive the Notice of Trustee's Sale is not the legal standard.

Under Texas law, "[s]ervice of notice is complete when the notice is sent via certified mail. . . .There is no requirement that [a plaintiff actually] receive the notice."   *See Martins*, 722 F.3d at 256 (citing TEX. PROP. CODE § 51.002(e)); *see also Dixon v. Bank of New York Mellon*, No. 3:13-cv-4235-L, 2014 WL 2991742, at *7 (N.D. Tex. July 3, 2014); *Thompson v. Bank of Am.*, N.A., --- F. Supp. 2d.----, 2014 WL 1373505, at *4 (N.D. Tex. Apr. 7, 2014); *Santiago v. BAC Home Loans Servicing, L.P.*, --- F. Supp. 2d.----, No. EP-13-cv-170-RPM, 2014 WL 2075994, at *4 (W.D. Tex. Mar. 17, 2014).[27]

---

[26]*See, e.g., Hill v. Wells Fargo Bank, N.A.*, No. V-12-11, 2012 WL 2065377, at *9 (S.D. Tex. June 6, 2012) (citing *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835-36 (Tex. App.—Fort Worth 1999, pet. denied)); *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale.").

[27]*See also, e.g., Warren v. Bank of Am., N.A.*, No. 3:13–CV–1135–M, 2013 WL 8177096, at *7 (N.D. Tex. Nov. 15, 2013) (The plaintiff's "allegation that he did not 'receive' the default or acceleration notices listed in § 51.002(d) could not plausibly entitle him to relief because the Property Code imposes no such requirement."); *Wheeler v.*

**PLEA TO THE JURISDICTION AND, SUBJECT THERETO,**
**RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF**                                       **PAGE 31**

Accordingly, Plaintiffs' allegations that they did not timely "receive" the Notice of Trustee's Sale cannot form the basis for any claims against Defendant in this lawsuit. Plaintiffs cannot demonstrate a probable right to relief as to such claims.

Notwithstanding the above, as a matter of law, the recitals in the Trustee's Deed stating that the Notice of Trustee's Sale was mailed to Plaintiffs as required by Texas law are "prima facie evidence of the validity of the foreclosure sale," which Plaintiffs cannot rebut because the Notice of Trustee's Sale was sent on August 11, 2014, more than 21 days before the September 2, 2014 foreclosure sale in compliance with the Security Instrument and Texas Property Code. *See, e.g., Clark v. Fed. Deposit Ins. Corp.*, No. H-09-3924, 2011 WL 2709062, at *20 (S.D. Tex. July 6, 2011) (granting summary judgment when the plaintiff "failed to submit any competent summary judgment evidence to rebut th[e] presumption [of validity]"); s*ee also Deposit Ins. Bridge Bank, N.A.*, 804 S.W.2d at 266 (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983); *Kirkman v. Amarillo Sav. Ass'n*, 483 S.W.2d 302, 306 (Tex. Civ. App.— Amarillo 1972, writ ref'd n.r.e.) (noting that recitals are presumed to be correct, unless rebutted by competent evidence)); *see also* Exs. 4, 7, its Ex. 7(A).[28]

---

*JPMorgan Chase Bank, Nat'l Ass'n*, No. 4:13–CV–364, 2013 WL 3965304, at *4 (S.D. Tex. Aug. 1, 2013) (granting motion to dismiss plaintiff's section 51.002(d) allegation that he did not receive notice of the foreclosure for failure to state a claim); *Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11–CV–388–A, 2012 WL 1870923, at *5 (N.D. Tex. May 23, 2012) ("The mere allegation by plaintiffs that they did not receive notice does not show that [defendant] failed to comply with the statutory requirements."); *Falk v. Wells Fargo Bank*, No. 3:09–CV–678–B, 2011 WL 3702666, at *7 (N.D. Tex. Aug. 19, 2011) (service is complete upon depositing the notice of default and acceleration in the mail); *Johnson*, 2010 WL 3464971, at *5 (notice under Section 51.002(d) had been properly served when mailed via certified mail even though notice was unclaimed); *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 Fed. Appx. 854, 856 (5th Cir. 2009) (mere contention that notice under Section 51.002 was not "received," without more, "cannot state a claim for relief because Texas law only imposes a constructive-notice requirement."); *King v. Bank of New York*, No. 13-07-069-CV, 2008 WL 2764523, at *2 (Tex. App.—Corpus Christi July 17, 2008, no pet.) ("Whether the debtor actually receives the notice is irrelevant for statutory purposes."); *Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at *4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) ("The dispositive inquiry under section 51.002(e) . . . is not receipt of notice, but, rather service of notice.").

[28] Defendant will supplement Exhibit 7.

**PLEA TO THE JURISDICTION AND, SUBJECT THERETO,**
**RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF**                                        **PAGE 32**

c.      The Notice of Trustee's Sale Complies with the Texas Property
Code

Plaintiffs allege that, in violation of Section 51.0025, Defendant misrepresented the name

of the mortgage servicer for their Home Equity Loan on the Notice of Trustee's Sale.   *See*

Petition at p. 20.   Plaintiffs also allege that, in violation of 51.002(b), the name and address of the

mortgage servicer for their Home Equity Loan was not disclosed in the Notice of Trustee's Sale.

*Id.* at p. 21.   Plaintiffs further allege that, in violation of Section 51.0075(e), the name and

address of the substitute trustee was not disclosed in the Notice of Trustee's Sale.   *Id.*   The Notice

of Trustee's Sale itself, however, belies such allegations.

First, the Notice of Trustee's Sale, in compliance with Section 51.0025, advises Plaintiffs

that DMI is the mortgage servicer of the Home Equity Loan.   *See* Ex. 7, its Ex. 7(A).   Second,

DMI's address is disclosed in the Notice of Trustee's sale in compliance with Section 51.0025.

*Id.*   Third, the names and address of the substitute trustees are disclosed in the Notice of Trustee's

Sale in compliance with Section 51.0075(e).   *Id.*   Accordingly, Plaintiffs cannot demonstrate a

probable right to relief as to such claims.

### vii.      There is No Private Right of Action Under the Texas Penal Code

In their Motion for Injunctive Relief, Plaintiffs contend, for the first time, that Defendant

forged unidentified "writings" in violation of the Texas Penal Code.   *See* Motion for Injunctive

Relief at pp. 37-39.   The claims for violation of the Texas Penal Code, however, fail as a matter

of law because Plaintiffs lack standing to assert any claims thereunder.

The Texas Penal Code does not establish civil causes of action for private parties.   *See*

*Hamilton v. Pechacek*, 319 S.W.3d 801, 813 (Tex. App.—Fort Worth 2010, no pet.) (finding that

claims based on the Texas Penal Code were "frivolous as lacking arguable bases in law" because

"the Texas Penal Code does not create a private cause of action.");   *Pohl v. Hasty*, No. 09-09-

00366-CV, 2010 WL 1610326, at *2 (Tex. App.—Feb. 9, 2010, no pet.) ("The Texas Penal Code

does not provide a private cause of action."); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.) (finding that allegations based on the Texas Penal Code "failed to state a viable claim for relief" because "the Texas Penal Code does not create private causes of action"); *A.H. Belo Corporation v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App. - Houston 2001, writ denied) ("[T]he Penal Code does not create private causes of action, and a victim 'does not have standing to participate as a party in a criminal proceeding.'").

Therefore, the claims for violation of the Texas Penal Code fail as a matter of law because there is no private right of action thereunder, and as a result, Plaintiffs cannot demonstrate a probable right to relief.

### 2.    Plaintiffs Cannot Show a Probable, Imminent, and Irreparable Injury for Which They Have No Adequate Remedy at Law

Plaintiffs cannot demonstrate a probable, imminent, and irreparable injury for which they have no adequate remedy at law.  In their Amended Motion for TRO, Plaintiffs allege that they will suffer immediate, irreparable harm if they are evicted from the Property and that such eviction may cause the death of Samuel G. Breitling.[29]  *See* Motion for Injunctive Relief at p. 37. Such conclusory allegations, without more, are insufficient to show that there is a probable, imminent, and irreparable injury for which there is no adequate remedy at law.

Plaintiffs cannot show that a temporary loss of possession of the Property constitutes a probable, imminent, and irreparable injury for which there is no adequate remedy at law.  The Pending Eviction Action affords Plaintiffs an adequate opportunity to raise any challenge to Defendant's eviction efforts to the extent they wish to assert any.  *See* TEX. R. CIV. P. 510.9(a). Indeed, Plaintiffs have appealed the Judgment for Possession to the County Court, where they have an adequate legal remedy to contest eviction if they choose to pay the filing fee by February

---

[29]Plaintiffs direct the Court to a letter from Samuel G. Breitling's doctor to support their contentions that an eviction may cause his death, but such letter does not state that an eviction from the Property may cause his death.  *See* Motion for Injunctive Relief at p. 37.

24, 2015.   Should Plaintiffs lose in the County Court, they'll have a further adequate legal remedy through an appeal to the Dallas Court of Appeals.  Additionally, if Plaintiffs were to succeed on their claims in the instant lawsuit (which they cannot), Plaintiffs could recover title to the Property along with the right to lawful possession thereof, which in turn, would "repair" any injury they alleged suffered.   Further, any alleged harm Plaintiffs would suffer from a temporary loss of possession of the Property during the pendency of this litigation is easily remedied with money damages (which Plaintiffs are not entitled to).   Thus, Plaintiffs have an adequate legal remedy.

Further, Plaintiffs cannot be injured by depriving them of something they do not have the right to possess.   Plaintiffs do not own the Property.   Defendant purchased the Property at a foreclosure sale.   By virtue of the Security Instrument and Trustee's Deed, Defendant has the right to immediate possession of the Property.   At most, Plaintiffs' possessory interest in the Property is merely as tenants at sufferance, which simply means that they are wrongful holdover tenants with no right of possession.  *See Mohammed v. D. 1050 W. Rankin, Inc.*, No. 01–13–00977–CV, 2014 WL 7335192, at * 6 (Tex. App.—Houston [1st Dist] Dec. 23, 2014, no pet.)

Additionally, the damage that the injunctive relief that Plaintiffs seek will cause to Defendant outweighs any threatened injury to Plaintiffs.   If the injunctive relief is granted, Defendant will suffer prejudice because it will be deprived of its lawful right to the use and enjoyment of the Property.   Defendant would essentially own a piece of Property that it cannot use or possess, despite having the legal right to do so.   Defendant would also effectively be prohibited from protecting its ownership interest in the Property, particularly from any damage Plaintiffs (or someone else) could potentially inflict on the Property.   Moreover, Plaintiffs would receive a windfall if the injunctive relief is granted considering that, after February 1, 2010, they stopped making their contractually obligated payments on the Home Equity Loan, but have

nonetheless continued to occupy the Property for free since that time. *See* Petition at p. 13. Thus, Depriving Plaintiffs of their *unlawful* possession of the Property does not outweigh the damage that the requested injunctive relief would cause to Defendant by depriving it from its *lawful* use and enjoyment of the Property.

Moreover, the requested injunctive relief will disserve the public interest by usurping the Justice Court's exclusive jurisdiction to decide issues of immediate possession of the Property and by taking away a foreclosure sale purchaser's right to evict a tenant at sufferance pursuant to a security instrument. Thus, the Motion for Injunctive Relief should be denied.

## B.   PLAINTIFFS' COLLATERAL ATTACK ON THE FINAL JUDGMENT IS IMPROPER AND BARRED BY *RES JUDICATA*

"A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *De Los Santos v. Vargas*, No. 13-11-00735-CV, 2013 WL 268943, at *2 (Tex. App.—Corpus Christi, no pet.). In other words, a "collateral attack is an attempt to avoid a judgment's binding force in a proceeding 'not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar.'" *Edmiston v. Harris County*, No. 14-11-00608-CV, 2012 WL 3612436, at *4 (Tex. App.—Houston [14th Dist.] Aug. 23, 2012, no pet.) (quoting *Browning v. Prostock*, 165 S.W.3d 336, 346 (Tex. 2005)). "A final judgment is generally not subject to a collateral attack due to the policy of the law which encourages finality to judgments issued by the courts." *Id.* (citing *Browning*, 165 S.W.3d at 345); *see also Davis v. Citibank, NA*, No. 5-12-01386-CV, 2014 WL 1022326, at *2 (Tex. App.—Dallas Mar. 13, 2014, no pet.) ("Collateral attacks on final judgments are generally not allowed because policy favors finality of court judgments."). "Only a void judgment is subject to collateral attack." *Id.* (citing *Browning*, 165 S.W.3d at 346). However, a "judgment is void only when the court rendering the judgment (1) did not have jurisdiction of the parties or property, (2) did not have jurisdiction

over the subject matter, (3) did not have jurisdiction to render the judgment, or (4) did not have the capacity to act as a court." *Browning*, 165 S.W.3d at 346; *see also Kaiser v. Silfvast*, No. 01-08-00496-CV, 2010 WL 5186801, at *5 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, pet. denied) ("Even if a final judgment is erroneous or voidable, it is not void and subject to collateral attack if a trial court had jurisdiction over the parties and subject matter.").  "Errors other than lack of jurisdiction are voidable."  *De Los Santos*, 2013 WL 268943, at *2 (citing *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987)).  A voidable judgment "may only be attacked directly" in the court that rendered the voidable judgment. *Id.* (citing *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009)).

The doctrine of *res judicata* "is intended to bar subsequent collateral attacks on a final judgment." *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 853 (Tex. App.—Houston [14th Dist.] May 29, 2014, no pet.); *see also Travelers Ins. Co. v. Joachim*, 315 S.W.3d at 863 (Tex. 2010) (holding that that res judicata barred collateral attack); *Willis v. Stamps*, No. 3:07-CV-1741-M, 2007 WL 4354445, at *2-3 (N.D. Tex. Dec. 12, 2007) (holding that an impermissible collateral attack on a final judgment is barred by res judicata); *Segrest v. Segrest*, 649 S.W.2d 610, 611-613 (Tex. 1983) (stating that "[i]t is well-established that a voidable judgment is not open to collateral attack" and holding that lawsuit was an improper and impermissible collateral attack on a final judgment, and therefore, barred by res judicata).  "Its very purpose is 'to preserve the sanctity of judgments.'" *Drake Interiors, L.L.C.*, 433 S.W.3d at 853 (quoting *Abbott Labs. v. Gravis,* 470 S.W.2d 639, 642 (Tex. 1971)).

In their Motion for Injunctive Relief, Plaintiffs request that the Court, in the alternative, vacate and set aside the Final Judgment rendered in the Foreclosure Lawsuit.  *See* Motion for Injunctive Relief at p. 2.  Such request, however, constitutes and improper and impermissible collateral attack that is barred by *res judicata*.  The Final Judgment rendered in the Foreclosure

Lawsuit on August 4, 2014, is a final judgment that Plaintiffs did not appeal within the court's plenary power over the Final Judgment, which is at most 105 days after the Final Judgment was signed.[30]   The Petition and Motion for Injunctive Relief are completely devoid of any allegations that the court in the Foreclosure Lawsuit did not have jurisdiction of the parties or Property, did not have jurisdiction over the subject matter, did not have jurisdiction to render the judgment, or did not have the capacity to act as a court.  *See Browning*, 165 S.W.3d at 346.  Regardless, the court in the Foreclosure Lawsuit had jurisdiction over the parties and subject matter of the case and jurisdiction to render the Final Judgment, as well as the capacity to act as a court, which Plaintiffs cannot rebut.  Therefore, the Final Judgment is neither void nor subject to collateral attack and any challenges thereto must be brought directly in the court that rendered the Final Judgment.  *See, e.g., Kaiser*, 2010 WL 5186801, at *5; *De Los Santos*, 2013 WL 268943, at *2.

Notwithstanding the above, as a matter of law, res judicata bars the collateral attack on the Final Judgment.  *See Drake*, 433 S.W.3d at 853; *Travelers Ins. Co.*, 315 S.W.3d at 863; *Willis*, 2007 WL 4354445, at *2-3; *Segrest*, 649 S.W.2d at 611-613.  Therefore, the Court lacks subject matter jurisdiction to entertain the improper and impermissible collateral attack on the Final Judgment and the collateral attack on the Final Judgment is barred by res judicata.  The Motion for Injunctive Relief should be denied.

---

[30]On August 18, 2014, Plaintiffs filed a Motion to Vacate Void Order for Summary Judgment Favoring LNV (the "Motion to Vacate") in the Foreclosure Lawsuit.  *See* Ex. 3.  Plaintiffs, however, never set the Motion to Vacate for hearing in the Foreclosure Lawsuit.  *Id.*  Thus, the Motion to Vacate was overruled by operation of law because it was not ruled on within 75 days from the date the Final Judgment was signed.  *See* TEX. R. CIV. P. 329b(c); *see also* Ex. 3.  The court's plenary power over the Final Judgment expired 30 days after the date the Motion to Vacate was overruled by operation of law.  *See* TEX. R. CIV. P. 329b(c)

## V.
## CONCLUSION

Based on the foregoing, Defendant requests that the Court defer to the jurisdiction of the

Justice Court in the Pending Eviction Action on the issue of immediate possession of the

Property, sustain this Plea to the Jurisdiction, deny the Motion for Injunctive Relief, and grant

such other and further relief, general or special, to which Defendant may be entitled.


Respectfully submitted,

/s/  Marc D. Cabrera
**Robert T. Mowrey**
State Bar No. 14607500
rmowrey@lockelord.com
**Jason L. Sanders**
State Bar No. 24037428
jsanders@lockelord.com
**Marc D. Cabrera**
State Bar No. 24069453
Email: mcabrera@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

**ATTORNEYS FOR DEFENDANT LNV
CORPORATION**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on
Plaintiffs and all counsel of record *via eFile Texas, certified mail, return receipt requested,
and/or hand delivery* on February 19, 2015.

/s/  Marc D. Cabrera_____
Counsel for Defendant LNV Corporation

# EXHIBIT 1

# CASE SUMMARY
## CASE NO. DC-10-02189

| | | |
|---|---|---|
| **SAMUEL BREITLING, et al**<br>vs.<br>**AAMES FUNDING CORPORATION, et al** | §<br>§<br>§<br>§ | Location: **116th District Court**<br>Judicial Officer: **PARKER, TONYA**<br>Filed on: **02/25/2010** |

---

### CASE INFORMATION

**Statistical Closures**                                      Case Type: **CNTR CNSMR COM DEBT**
10/20/2011   SUMMARY JUDGMENT                         Subtype: **NOTE**
01/26/2011   DISMISSED FOR WANT OF PROSECUTION

---

### PARTY INFORMATION

| | | *Lead Attorneys* |
|---|---|---|
| **PLAINTIFF** | **BREITLING, JO ANN**<br>*1704 CORNWALL LN*<br>*SACHSE, TX 75048* | **MCCARTNEY, PATRICIA**<br>*Retained*<br>469-323-3476(W) |
| | **BREITLING, SAMUEL G**<br>*1704 CRONWALL LN*<br>*SACHSE, TX 75048* | **MCCARTNEY, PATRICIA**<br>*Retained*<br>469-323-3476(W) |
| **DEFENDANT** | **AAMES FUNDING CORPORATION**<br>*DOING BUSINESS AS  AAMES HOME LOANS*<br>*15090 AVENUE OF SCIENCES SUITE 200*<br>*SAN DIEGO, CA 92128* | |
| | **MGC MORTGAGE INC**<br>*BY SERVING ITS REGISTERED AGENT*<br>*CT CORPORATION SYSTEM*<br>*350 N. ST. PAUL STREET*<br>*DALLAS, TX 75201* | **HAYES, SCOTT E**<br>*Retained*<br>214-979-7400(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 02/25/2010 | 📄 ORIGINAL PETITION (OCA) | |
| 02/25/2010 | ISSUE CITATION | |
| 02/25/2010 | ISSUE CITATION COMM OF INS OR SOS | |
| 03/01/2010 | **CITATION**<br>MGC MORTGAGE INC<br>Issued<br>*PCT 1* | |
| 03/01/2010 | **CITATION SOS/COI/COH/HAG**<br>AAMES FUNDING CORPORATION<br>Issued<br>*SOS CERT MAIL* | |
| 03/03/2010 | **CITATION**<br>MGC MORTGAGE INC                served<br>*PCT 1* | |
| 03/04/2010 | **CITATION SOS/COI/COH/HAG**<br>AAMES FUNDING CORPORATION     served<br>*SOS CERT MAIL* | |
| 03/12/2010 | 📄 ORIGINAL ANSWER - GENERAL DENIAL<br>Party: DEFENDANT  MGC MORTGAGE INC<br>*E-FILED* | |
| 04/05/2010 | MISCELLANOUS EVENT | |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JO ANN
*CERT SOS*

| | | |
|---|---|---|
| 06/30/2010 | MOTION - SUBSTITUTION OF COUNSEL<br>Party: DEFENDANT MGC MORTGAGE INC | |
| 06/30/2010 | ORDER - SUBSTITUTION OF COUNSEL<br><br>Party: DEFENDANT MGC MORTGAGE INC<br>*COPY ALL 7/9/10* | *Vol./Book 419A,<br>Page 376, 2 pages* |
| 08/23/2010 | MOTION - SUMMARY JUDGMENT<br>Party: DEFENDANT MGC MORTGAGE INC | |
| 09/16/2010 | AMENDED PETITION<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JO ANN<br>*1ST* | |
| 09/16/2010 | RESPONSE<br>*MOTION SUMMARY JUDGMENT* | |
| 09/21/2010 | ORDER - RECUSAL | *Vol./Book 421A,<br>Page 476, 1 pages* |
| 09/23/2010 | **Motion - Summary Judgment** (10:00 AM) (Judicial Officer: MOYE', ERIC)<br>Events: 08/23/2010 MOTION - SUMMARY JUDGMENT<br>*D/M/SJ; FILED 8/23/10; 15MIN ****COURTESY NOTEBOOK REC'D 9/17**** | |
| 09/23/2010 | ORDER - TRANSFER<br>*116TH CT - COPY ALL 9/24/10* | *Vol./Book 421A,<br>Page 477, 1 pages* |
| 09/28/2010 | NOTE - CLERKS<br>*E-MAIL/CLERK RE: TRANSFER* | |
| 09/30/2010 | NOTICE OF HEARING / FIAT | |
| 10/07/2010 | NOTE - CLERKS<br>*RESET 10/26/10 MSJ HEARING*JENNIFER WHITE*214 979 7403* | |
| 11/19/2010 | **Motion - Summary Judgment** (2:30 PM) (Judicial Officer: PRIDDY, BRUCE)<br>Events: 08/23/2010 MOTION - SUMMARY JUDGMENT<br>09/16/2010 RESPONSE<br>*DEFT MCG MORTGAGE'S MSJ*<br>10/26/2010    Reset by Court to 11/08/2010<br>11/08/2010    Reset by Court to 11/19/2010 | |
| 11/19/2010 | NOTE - ADMINISTRATOR<br>*11-19-2010 MSJ HEARING DID NOT GO FORWARD. COURT WAS IN TRIAL. RESET BY<br>CLERK* | |
| 12/03/2010 | **Motion - Summary Judgment** (3:00 PM) (Judicial Officer: PRIDDY, BRUCE) | |
| 12/03/2010 | NOTE - ADMINISTRATOR<br>*ORDER GRANTING MGC MSJ SIGNED 12-3-2010. COPY HAND DELIVERED TO<br>COUNSEL. ORIG/CLERK* | |
| 12/03/2010 | ORDER - PARTIAL SUMMARY JUDGMENT<br><br>*MGC MORTGAGE* | *Vol./Book 422F,<br>Page 534, 1 pages* |
| 01/25/2011 | **DISMISSAL FOR WANT OF PROSECUTION** (3:00 PM) (Judicial Officer: PARKER, | |

TONYA)

| | | |
|---|---|---|
| 01/26/2011 | NOTE - ADMINISTRATOR<br>*ORDER OF DISM (DWP) SIGNED 1-26-11. ORIG/CLERK* | |
| 01/26/2011 | **DISMISSED FOR WANT OF PROSECUTION** (Judicial Officer: PRIDDY, BRUCE) | *Vol./Book 423F,*<br>*Page 019, 1 pages* |
| 01/26/2011 | NOTE - CLERKS<br>*Mailed copy of DWP ORDER to Plaintiff and Defendant cnsl* | |
| 02/09/2011 | CORRESPONDENCE - LETTER TO FILE | |
| 02/09/2011 | MOTION - SUMMARY JUDGMENT<br>Party:  DEFENDANT  MGC MORTGAGE INC<br>*2ND* | |
| 02/09/2011 | AMENDED ANSWER - AMENDED GENERAL DENIAL<br>Party:  DEFENDANT  MGC MORTGAGE INC<br>*1ST* | |
| 02/10/2011 | ORDER - VACATE (POST JUDG MOTION) (OCA and REOPEN CASE) | *Vol./Book 423F,*<br>*Page 186, 1 pages* |
| 02/14/2011 | NOTE - ADMINISTRATOR<br>*SCHEDULING ORDER SUBMITTED TO JUDGE* | |
| 02/17/2011 | SCHEDULING ORDER | *Vol./Book 423F,*<br>*Page 247, 3 pages* |
| 02/18/2011 | NOTE - ADMINISTRATOR<br>*SCHEDULING ORDER SIGNED 2-17-2011. COPY ALL. ORIG/CLERK* | |
| 02/23/2011 | NOTICE OF HEARING / FIAT | |
| 03/18/2011 | RESPONSE<br>*2ND MSJ (E-FILED)* | |
| 03/18/2011 | AMENDED PETITION<br>*SECOND* | |
| 03/22/2011 | MOTION - LEAVE<br>Party:  DEFENDANT  MGC MORTGAGE INC<br>*E-FILED* | |
| 03/22/2011 | OBJECTION<br>*TO AFFIDAVIT (E-FILED)* | |
| 03/22/2011 | RESPONSE<br>*2ND MSJ (RELY) - E-FILED* | |
| 03/24/2011 | MOTION - WITHDRAW ATTORNEY<br>Party: ATTORNEY  LIPPE, EMIL<br>*Certificate of Conf does not comply* | |
| 03/24/2011 | CORRESPONDENCE - LETTER TO FILE<br>*JOANN BREITLING* | |
| 03/25/2011 | **Motion - Summary Judgment** (10:30 AM)  (Judicial Officer: PARKER, TONYA) | |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Events: 02/09/2011 MOTION - SUMMARY JUDGMENT
**Courtesy copy recvd** Set with Jennifer White 214-979-7403 ** 30-Minutes

| | | |
|---|---|---|
| 03/25/2011 | NOTE - ADMINISTRATOR<br>*ORDER GRANTING IN PART MGC' 2ND MSJ SIGNED 3-25-2011. COPY DELIVERED TO COUNSEL BY COURT. ORIG/CLERK* | |
| 03/25/2011 | NOTE - ADMINISTRATOR<br>*ORDER (W/D) SIGNED 3-25-2011. COPY GIVEN TO COUNSEL AND PARTIES BY COURT AT HEARING. ORIG/CLERK* | |
| 03/25/2011 | ORDER - WITHDRAW ATTORNEY<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JO ANN | *Vol./Book 423F, Page 695, 1 pages* |
| 03/25/2011 | ORDER - JUDGMENT<br>*GRANTING 2ND MSJ IN PART* | *Vol./Book 423F, Page 720, 1 pages* |
| 04/01/2011 | MOTION - COMPEL<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JO ANN<br>*Cert Conf "does" comply with local rules* | |
| 04/07/2011 | NOTE - CLERKS<br>*Sched Order submitted to Judge* | |
| 04/07/2011 | CORRESPONDENCE - LETTER TO FILE<br>*RE: AGREED SCHED ORDER* | |
| 04/11/2011 | SCHEDULING ORDER | *Vol./Book 424F, Page 068, 2 pages* |
| 04/12/2011 | NOTE - ADMINISTRATOR<br>*SCHEDULING ORDER SIGNED 4-11-2011. COPY ALL & MEDIATOR. ORIG/CLERK* | |
| 04/14/2011 | CORRESPONDENCE - LETTER TO FILE | |
| 04/14/2011 | NOTE - CLERKS<br>*Agreed Sched Order submitted to Judge* | |
| 04/18/2011 | NOTE - ADMINISTRATOR<br>*SCHED ORDER NOT SUBMITTED TO JUDGE SINCE A SCHED ORDER WAS ALREADY SIGNED 4-11-11. NOTIFIED ATT LIPPE* | |
| 04/28/2011 | CORRESPONDENCE - LETTER TO FILE | |
| 04/29/2011 | DISCOVERY<br>*RSP TO 1ST REQ FOR PROD* | |
| 06/06/2011 | NOTICE OF NONSUIT<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JO ANN<br>*AGAINST DEF* | |
| 06/08/2011 | NOTE - CLERKS<br>*ORDER NONSUIT SUBMITTED TO JUDGE* | |
| 06/08/2011 | CORRESPONDENCE - LETTER TO FILE<br>*ORDER ON PLTF'S NONSUIT* | |
| 06/16/2011 | CORRESPONDENCE - LETTER TO FILE<br>*E-FILED* | |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

| | | |
|---|---|---|
| 06/22/2011 | **Status Conference** (9:30 AM) (Judicial Officer: PARKER, TONYA) *Regarding Entry of Nonsuit ** court has copies** ATTY PATT MCARTHY TO APPEAR BY PHONE.* | |
| 06/22/2011 | 📄 ORDER - NONSUIT *CLAIMS ONLY* | *Vol./Book 424F, Page 870, 1 pages* |
| 07/26/2011 | 📄 CORRESPONDENCE - LETTER TO FILE *MEDIATION LETTER* | |
| 07/27/2011 | 📄 MOTION - SUMMARY JUDGMENT Party: DEFENDANT MGC MORTGAGE INC | |
| 08/04/2011 | **Status Conference** (11:00 AM) (Judicial Officer: PARKER, TONYA) *BOTH COUNSEL TO APPEAR BY PHONE* | |
| 08/05/2011 | 📄 NOTICE OF HEARING / FIAT | |
| 08/08/2011 | 📄 NO EVIDENCE MOTION FOR SUMMARY JUDGMENT Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JO ANN | |
| 09/02/2011 | 📄 RESPONSE *MOTION SUMMARY JUDGMENT* | |
| 09/06/2011 | 📄 RESPONSE *TO NO EVID S/J* | |
| 09/07/2011 | 📄 RESPONSE *MOTION SUMMARY JUDGMENT (REPLY)* | |
| 09/08/2011 | CORRESPONDENCE - LETTER TO FILE *RE: COURTESY COPY* | |
| 09/08/2011 | CORRESPONDENCE - LETTER TO FILE *RE: COURTESY COPY* | |
| 09/08/2011 | CORRESPONDENCE - LETTER TO FILE *RE: COURTESY COPY* | |
| 09/12/2011 | **Non Jury Trial** (9:00 AM) (Judicial Officer: PARKER, TONYA) Events: 07/27/2011 MOTION - SUMMARY JUDGMENT *Level 2 **MSJ SET W/JENNIFER 214-979-7403 PER JUDGE* | |
| 09/12/2011 | **Motion - Summary Judgment** (9:00 AM) (Judicial Officer: PARKER, TONYA) Events: 08/08/2011 NO EVIDENCE MOTION FOR SUMMARY JUDGMENT       09/02/2011 RESPONSE *PLTF'S NO EVIDENCE MSJ (set with Pattie McCartney 972-782-6300) Courtesy copy requested - COURTESY NOTEBOOK RECVD* | |
| 09/16/2011 | 📄 CORRESPONDENCE - LETTER TO FILE | |
| 09/19/2011 | NOTE - CLERKS *ORDER SUMMARY JUDGMENT SUBMITTED TO ADMIN* | |
| 09/19/2011 | NOTE - CLERKS *ORDER FINAL JUDGMENT SUBMITTED TO ADMIN* | |
| 09/19/2011 | NOTE - CLERKS | |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

FELICIA PITRE, DISTRICT CLERK

# CASE SUMMARY
## CASE NO. DC-10-02189

|  |  |  |
|---|---|---|
| | *ORDER FINAL JUDGMENT DENY/GRANT IN PART SUBMITTED TO ADMIN* | |
| 10/20/2011 | NOTE - ADMINISTRATOR<br>*FINAL JUDGMENT SIGNED 10-20-2011. ORIG/CLERK* | |
| 10/20/2011 | 📄 **SUMMARY JUDGMENT** (Judicial Officer: PARKER, TONYA) | *Vol./Book 426F ,<br>Page 201, 2 pages* |
| 10/24/2011 | NOTE - CLERKS<br>*NOTICES MAILED* | |
| 11/03/2011 | NOTE - CLERKS<br>*Amended Notice mailed* | |

| DATE | FINANCIAL INFORMATION |
|---|---|

| | |
|---|---|
| **DEFENDANT** MGC MORTGAGE INC | |
| Total Charges | 2.00 |
| Total Payments and Credits | 2.00 |
| **Balance Due as of  2/19/2015** | **0.00** |
| **PLAINTIFF** BREITLING, SAMUEL G | |
| Total Charges | 397.00 |
| Total Payments and Credits | 397.00 |
| **Balance Due as of  2/19/2015** | **0.00** |

STATE OF TEXAS        }
COUNTY OF DALLAS    }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this __19th__ day of _February_, A.D., _2015_.

    FELICIA PITRE, DISTRICT CLERK
    DALLAS COUNTY, TEXAS
    By _Cecelia Flowers_ Deputy

# EXHIBIT 1(A)

CAUSE NO. 10-02189

**FILED**

11 MAR 18 PM 2:03

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____ DEPUTY

| | | |
|---|---|---|
| SAMUEL G. BREITLING<br>AND JO ANN BREITLING, | §<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | 116 JUDICIAL DISTRICT |
| MGC MORTGAGE, INC., | §<br>§ | |
| Defendant. | §<br>§ | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION

Plaintiffs, Samuel G. Breitling and Jo Ann Breitling ("Plaintiffs" or "Breitlings"), file this their Second Amended Original Petition, complaining of Defendant MGC Mortgage, Inc. ("MGC"), as follows:

### I.
### Parties

1.    Plaintiff Samuel G. Breitling is an individual residing in Sachse, Dallas County, Texas.

2.    Plaintiff Jo Ann Breitling is an individual residing in Sachse, Dallas County, Texas.

3.    Defendant MGC Mortgage, Inc., has appeared herein and may be served by service upon its attorney of record

### II.
### Discovery Control Plan

4.    Plaintiffs intend to conduct Level 2 discovery in this case pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**                                   **Page 1**

PLEA TO THE JURISDICTION AND SUBJECT THERETO
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

## III.
### Jurisdiction and Venue

5.      Venue is proper in Dallas County, Texas, because the real property at issue is located herein, and Plaintiffs reside in, Dallas County, Texas.   Also, the causes of action sued upon herein arose or accrued in Dallas County, Texas.

6.      The amount in controversy exceeds the minimum jurisdictional limits of this Court.

## IV.
### Factual Background

7.      On October 20, 2000, Plaintiffs executed a note payable to Aames Funding Corporation d/b/a Aaames Home Loan in the principal amount of One Hundred Twenty-Nine Thousand Six Hundred Dollars ($129,600.00). The Note was further secured by a Deed of Trust of even date therewith executed by Plaintiff Jo Ann Breitling both individually and as attorney in fact for Samuel Breitling, to Michael Riddle, Trustee, and recorded in the deed records for Dallas County, Texas, and concerning the real property located at 1704 Cornwall Lane, Sachse, Texas 75048, more specifically described as:

    a.    BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE, DALLAS COUNTY, TEXAS ACCORDING TOT HE MAP THEREOF RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

8.      Plaintiffs' loan was a home equity loan, an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, and could only be valid if done in strict compliance with the constitutional requirements.

9.      Contrary to the provisions of law, at the Closing, in order to circumvent the provisions of law requiring a three day rescission period, Mrs. Breitling was required to execute

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**                                          Page 2

the waivers of rescission simultaneously with the Closing, and not three days thereafter as required by law, in violation of 15 U.S.C. §§1635, 1639, and 1640. Further, material disclosures required by 15 U.S.C §§1639 were not provided to the Breitlings at any point before the execution of the mortgage.

10.     On information and belief, in or around June, 2008, MGC Mortgage, Inc., became the servicer -on the Note previously held by Aames Funding Corporation. Plaintiffs were not given timely notice of such transfer of servicing as required by law, in violation of 12 U.S.C. §2605(b)(2). For several months thereafter, Plaintiffs were not given notice as to where to send their payments. Although they attempted to make timely payments to MGC, several months' payments were delayed in being applied to the loan due to such failure to notice.

11.     On information and belief, Plaintiff Jo Ann Breitling served MGC a qualified written request relating to disputes regarding the Breitlings' payments. In violation of 12 U.S.C. §2605(e), MGC subsequently failed to provide an explanation as to why the payment history for the Breitlings' note could not be located. Accordingly, on information and belief, MGC could not provide the Breitlings with any evidence regarding the computation of the current balance or payoff of the note.

## Causes of Action

### I.

### Violation of the TILA Preclosing Right of Rescission Disclosure

12.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 11 herein.

13.     As part of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635 requires certain disclosures to be made regarding the borrower's right to rescind the transaction with three

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**                    Page 3

business days of the transaction.

14.  Though the original lender in this case, Aames Funding Corporation, did provide Plaintiffs' with notice of their three day right to rescind, Plaintiffs believed that they had waived this right at the request of Aames Funding Corporation. Plaintiffs could not have waived this right under TILA. MGC was made aware of this deprivation when MGC began servicing the loan and received the corresponding closing paperwork.

15.  Plaintiffs did not discover their disclosure rights had been violated until discovery was produced related to this case. Previous discovery was impossible due to improper assertions, misinformation, and fraudulent conceal perpetrated by MGC and their predecessors to Plaintiffs. As such, the statute of limitations relating to 15 U.S.C. § 1635 is subject to equitable tolling and this cause of action is brought in a timely manner.

16.  As a result of this violation, under 15 U.S.C. § 1640, Plaintiffs are entitled to recover their actual damages, amounts which exceed the jurisdictional minimums of this court, and twice the amount of any finance charge relating to the loan, a sum presently estimated at $240,000. Plaintiffs are further entitled to recover all reasonable and necessary attorneys' fees and costs of court under 15 U.S.C. § 1640.

## II.

### Violation of the Required TILA "Specific Disclosures"

17.  Plaintiffs incorporate by reference the allegations of paragraphs 1 through 16 above.

18.  Under 15 U.S.C. § 1639(a)(1), two specific discloses are required to be provided to borrowers before a loan such as the one in the present case may be consummated. Upon information and belief, neither of these disclosures were presented to the Plaintiffs before the

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**                    Page 4

loan was closed.

19.     This defect is apparent on the face of the loan and MGC, as the current servicer of the loan is liable for all such TILA violations.

20.     Plaintiffs did not discover their disclosure rights had been violated until discovery was produced related to this case. Previous discovery was impossible due to improper assertions, misinformation, and fraudulent conceal perpetrated by MGC and their predecessors to Plaintiffs. As such, the statute of limitations relating to 15 U.S.C. § 1635 is subject to equitable tolling and this cause of action is brought in a timely manner.

21.     As a result of these violations, under 15 U.S.C. § 1640(a)(4), Plaintiffs are entitled to recover all finance charges and fees paid by the Plaintiffs under the loan, in amounts greatly exceeding the jurisdictional minimums of this Court.

### III.

### Violation of the RESPA Duty to Notify Borrowers of Transfer and to Respond to Borrower Inquiries

22.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 21 above.

23.     On information and belief, Plaintiffs were not notified of the transfer of their mortgage servicing to MGC at least 15-days before the transfer as required by the Real Estate Settlement Procedures Act ("RESPA") at 12 USCS § 2605(b). In fact, on information and belief, notice was not made to Plaintiffs until more than sixty days after the transfer.

24.     On further information and belief, since the transfer, Plaintiffs have made numerous RESPA qualified written requests to Defendant regarding concerns about: 1) the current loan balance, 2) the current loan payoff balance, 3) how payments have been applied to

PLEA TO THE JURISDICTION AND  SUBJECT THERETO
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

the loan in the past, and 4) how payments were not applied to the loan during the transition from previous servicing companies to MGC.

25.     On information and belief, MGC failed to appropriately respond within 60 days as required by 12 USCS § 2605(e). MGC instead claimed that they were unable to locate the payment history related to the mortgage and could not explain how the loan had arrived at its present state or why MGC believed that the account was correct.

26.     Plaintiffs' requests occurred within one year of filing this present suit.

27.     Under 12 USCS § 2605, Plaintiffs are entitled to their actual damages related to the failure of MGC's breach of duty, which include damages relating to any adverse credit rating impact resulting from the breach and statutory damages in the amount of $1,000.00. Plaintiffs are further entitled to costs of bringing this proceeding including their attorney's fees.

### Request for Relief

WHEREFORE, Plaintiffs Samuel G. Breitling and Jo Ann Breitling pray that Defendant be cited to appear and answer herein, and that upon final hearing hereof, pray that judgment be entered against Defendant awarding Plaintiffs the following relief:

1.     actual damages, including but not limited to refund of all finance fees paid relating to the mortgage loan in question;

2.     TILA violation damages amounting to twice the amount of finance fees paid relating to the mortgage loan in question;

3.     RESPA statutory damages in the amount of $1,000.00;

4.     reasonable and necessary attorneys' fees;

5.     costs of court;

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**                    Page 6

6.    pre-judgment and post-judgment interest at the highest lawful rates; and

7.    such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

LAW OFFICES OF LIPPE & ASSOCIATES

By: _____

Corey S. Hyden
State Bar No. 24074465
Emil Lippe, Jr.
State Bar No. 12398300
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, TX 75201
Tel. (214) 855-1850
Fax (214) 720-6074

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, pursuant to the Texas Rules of Civil Procedure, a true and correct copy of the above and foregoing instrument was served upon counsel for Defendant on this ____ day of March, 2011, at the following address:

Scott E. Hayes
Vincent Lopez Serafino & Jenevein, P.C.
1601 Elm Street, Suite 4100
Dallas, TX 75201

_____
Corey S. Hyden

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this Instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this _19th_ day of _February_ A.D., _2015_.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By _Cecilia Flowers_ Deputy

# EXHIBIT 1(B)

11 June 6 P4:39
Gary Fitzsimmons
District Clerk
Dallas District

CAUSE NO. 10-02189

| | | |
|---|---|---|
| SAMUEL G. BREITLING | § | IN THE DISTRICT COURT |
| AND JOANN BREITLING | § | |
| Plaintiffs | § | |
| | § | |
| | § | 116TH JUDICIAL DISTRICT |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| AAMES FUNDING CORPORATION | § | |
| d/b/a AAMES HOME LOANS, AND | § | |
| MGC MORTGAGE INC. | § | DALLAS COUNTY, TEXAS |

<u>PLAINTIFFS' NOTICE OF   NONSUIT AGAINST DEFENDANT</u>

Please take notice that, pursuant to Rule 162 of the Texas Rules of Civil Procedure, Plaintiffs,

Samuel G. Breitling and JoAnn Breitling    file this written notice of their nonsuit without

prejudice on the above referenced cause.

Respectfully submitted this 6th day of June, 2011.

Respectfully submitted,
**MCCARTNEY LAW FIRM**

By: *Is/Patricia W. McCartney*
Patricia Wilhite McCartney
State Bar No. 00786346
3006 Lost Maples Circle
Forney, Texas 75126
(972) 782-6300 Telephone
(972) 559-1994 Facsimile
**ATTORNEY FOR PLAINTIFFS**

1

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served in accordance

with the Texas Rules of Civil Procedure on all counsel of record.


Signed this 6th day of June, 2011


<div align="right">

*s/Patricia W. McCartney*
PATRICIA W. MCCARTNEY

</div>

**STATE OF TEXAS** }
**COUNTY OF DALLAS** }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this _19th_ day of _February_, A.D., _2015_.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By _Ceceli Flowers_ Deputy

# EXHIBIT 2

# CASE SUMMARY
## CASE NO. DC-11-07087

| | | | |
|---|---|---|---|
| **SAMUEL BREITLING et al** | § | Location: | **116th District Court** |
| vs. | § | Judicial Officer: | **PARKER, TONYA** |
| **MGC MORTGAGE INC** | § | Filed on: | **06/07/2011** |
| | § | | |
| | § | | |

---

### CASE INFORMATION

**Statistical Closures**
07/29/2013 NONSUIT/DISMISSAL BY PLAINTIFF
03/14/2013 ALL OTHER DISPOSITIONS
10/26/2011 ALL OTHER DISPOSITIONS

Case Type: **DECLARATORY JUDGMENT CIVIL**

Case Flags: **JURY DEMAND FILED**

---

### PARTY INFORMATION

*Lead Attorneys*

| | | |
|---|---|---|
| **PLAINTIFF** | **BREITLING, JOANN** *1704 CORNWALL SACHSE, TX 75048* | Pro Se |
| | **BREITLING, SAMUEL G** *1704 CORNWALL SACHSE, TX 75048* | Pro Se |
| **DEFENDANT** | **MGC MORTGAGE INC** *BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM 350 N. ST. PAUL STREET DALLAS, TX 75201* | **HAYES, SCOTT E** *Retained* 214-979-7400(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 06/07/2011 | ORIGINAL PETITION (OCA) | |
| 06/07/2011 | CASE FILING COVER SHEET | |
| 06/16/2011 | ISSUE CITATION | |
| 06/16/2011 | JURY DEMAND Party: PLAINTIFF BREITLING, SAMUEL G | *Vol./Book J27, Page 325, 1 pages* |
| 06/16/2011 | AMENDED PETITION | |
| 06/17/2011 | **CITATION** MGC MORTGAGE INC Issued *FIRST AMENDED* | |
| 06/27/2011 | NOTE - ADMINISTRATOR *ORDER OF TRANSFER (TO 116TH) SIGNED 6-27-2011. COPY MAILED TO PLTF. ORIG/CLERK OF 116TH* | |
| 06/27/2011 | ORDER - TRANSFER *116TH - COPY ALL* | *Vol./Book 446B, Page 1148, 1 pages* |
| 06/30/2011 | **CITATION** MGC MORTGAGE INC served *FIRST AMENDED* | |
| 07/20/2011 | PLEA IN ABATEMENT *DEFT AND ANSWER SUBJECT THERETO* | |

# CASE SUMMARY
## CASE NO. DC-11-07087

| | | |
|---|---|---|
| 07/21/2011 | PLEA IN ABATEMENT | |
| 08/03/2011 | CORRESPONDENCE - LETTER TO FILE | |
| 10/24/2011 | NOTE - ADMINISTRATOR<br>*ORDER OF CLOSING SUBMITTED TO JUDGE* | |
| 10/26/2011 | **ALL OTHER DISPOSITIONS** (Judicial Officer: PARKER, TONYA) | *Vol./Book 426F ,*<br>*Page 296, 1 pages* |
| 10/27/2011 | NOTE - ADMINISTRATOR<br>*ORDER OF CLOSING SIGNED 10-26-2011. COPY ALL. ORIG/CLERK* | |
| 11/04/2011 | MOTION - REINSTATE<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JOANN | |
| 12/05/2011 | MOTION - SUMMARY JUDGMENT<br>Party: DEFENDANT MGC MORTGAGE INC<br>*BASED ON RES JUDICATA* | |
| 12/07/2011 | NOTICE OF HEARING / FIAT | |
| 12/08/2011 | NOTICE OF HEARING / FIAT | |
| 01/05/2012 | RESPONSE<br>*TO M/REINSTATE* | |
| 01/12/2012 | **Motion - Reinstate** (11:00 AM) (Judicial Officer: PARKER, TONYA)<br>Events: 11/04/2011 MOTION - REINSTATE<br>*15 MINS - PATY 972-782-6300 REQ FOR CC* | |
| 01/12/2012 | ORDER - DENY<br>*MOTION REINSTATE* | *Vol./Book 427F,*<br>*Page 206, 1 pages* |
| 01/17/2012 | NOTE - ADMINISTRATOR<br>*ORDER DENYING M/REINSTATE SIGNED 1-12-2012. COPY GIVEN TO COUNSEL AT*<br>*HEARING. ORIG/CLERK* | |
| 01/18/2012 | NOTICE OF HEARING / FIAT<br>*HEARING CANCELED* | |
| 02/09/2012 | *CANCELED* **Motion - Summary Judgment** (10:00 AM) **(Judicial Officer: PARKER,**<br>**TONYA)**<br>*REQUESTED BY ATTORNEY/PRO SE*<br>*CANCELLED BY JENNIFER* | |
| 02/15/2012 | NOTICE OF HEARING / FIAT | |
| 03/08/2012 | CORRESPONDENCE - LETTER TO FILE | |
| 03/08/2012 | NOTE - CLERKS<br>*AGREED ORDER REOPEN SUBMITTED TO ADMIN* | |
| 03/08/2012 | NOTE - ADMINISTRATOR<br>*AGREED ORDER REOPEN CASE SUBMITTED TO JUDGE* | |
| 03/08/2012 | ORDER - REINSTATE (OCA and REOPEN CASE) | *Vol./Book 428F,*<br>*Page 110, 1 pages* |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

FELICIA PITRE, DISTRICT CLERK

# CASE SUMMARY
### CASE NO. DC-11-07087

| | |
|---|---|
| 03/09/2012 | NOTE - ADMINISTRATOR<br>*AGREED ORDER TO REOPEN CASE SIGNED 3-8-2012. ORIG/CLERK* |
| 03/12/2012 | NOTICE OF HEARING / FIAT<br>*RES JUDICATA* |
| 03/23/2012 | *CANCELED* **Motion - Summary Judgment** (1:00 PM) **(Judicial Officer: PARKER, TONYA)**<br>*REQUESTED BY ATTORNEY/PRO SE*<br>*HEARING CANCELED BY JENNIFER WHITE 214-979-7403* |
| 04/02/2012 | NOTE - ADMINISTRATOR<br>*COURT'S SCHEDULING ORDER SUBMITTED TO JUDGE* |
| 04/02/2012 | NOTE - ADMINISTRATOR<br>*SCHEDULING ORDER SIGNED 4-2-2012. COPY ALL & MEDIATOR. ORIG/CLERK* |
| 04/02/2012 | SCHEDULING ORDER<br>*LEVEL 2* |
| 04/19/2012 | RESPONSE<br>*MSJ* |
| 04/20/2012 | NOTICE OF HEARING / FIAT |
| 04/23/2012 | RESPONSE<br>*MSJ BASED ON RES JUDICATA (REPLY)* |
| 04/27/2012 | *CANCELED* **Motion - Summary Judgment** (1:00 PM) **(Judicial Officer: PARKER, TONYA)**<br>*BY COURT ADMINISTRATOR*<br>*ATTY HAYES* |
| 05/07/2012 | NOTICE OF HEARING / FIAT |
| 06/12/2012 | RULE 11 |
| 06/15/2012 | *CANCELED* **Motion - Summary Judgment** (1:00 PM) **(Judicial Officer: PARKER, TONYA)**<br>*HEARING RESCHEDULED*<br>*SEE NOTES* |
| 08/09/2012 | **Motion - Summary Judgment** (9:00 AM) (Judicial Officer: PARKER, TONYA)<br>Events: 12/05/2011 MOTION - SUMMARY JUDGMENT<br>*30 MINS - SET WITH SCOTT HAYES - 214-979-7430 (CC REQ'D)* |
| 08/13/2012 | BRIEF FILED<br>Party: ATTORNEY HAYES, SCOTT E<br>*FILED BY SCOTT HAYES* |
| 08/14/2012 | CORRESPONDENCE - LETTER TO FILE<br>*TO JUDGE* |
| 08/15/2012 | BRIEF FILED<br>Party: ATTORNEY MCCARTNEY, PATRICIA |

*Vol./Book 429F,*
*Page 1, 3 pages*

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

| | | |
|---|---|---|
| 08/16/2012 | CORRESPONDENCE - LETTER TO FILE<br>*RE: SUMMARY JUDGMENT* | |
| 08/16/2012 | NOTE - CLERKS<br>*ORDER SUMMARY JUDGMENT SUBMITTED TO ADMIN* | |
| 08/22/2012 | ORDER - DENY<br>*SUMMARY JUDGMENT* | *Vol./Book 430F,*<br>*Page 657, 1 pages* |
| 08/27/2012 | NOTE - ADMINISTRATOR<br>*SUMMARY JUDGMENT ORDER SIGNED 8-22-2012. COPY ALL. ORIG/CLERK* | |
| 12/14/2012 | MOTION - CONTINUANCE<br>Party: PLAINTIFF BREITLING, SAMUEL G; DEFENDANT MGC MORTGAGE<br>INC; PLAINTIFF BREITLING, JOANN<br>*NO ORDER* | |
| 12/14/2012 | MOTION - EXTEND<br>*MEDIATION DEADLINE* | |
| 12/17/2012 | NOTE - CLERKS<br>*AGREED ORDER EXT MEDIATION SUBMITTED TO ADMIN* | |
| 12/18/2012 | NOTE - ADMINISTRATOR<br>*AGRD ORDER EXTEND DEADLINE SUBMITTED TO JUDGE* | |
| 12/18/2012 | NOTE - ADMINISTRATOR<br>*AGREED ORDER EXTEND DEADLINE SIGNED 12-18-2012. ORIG/CLERK* | |
| 12/18/2012 | CORRESPONDENCE - LETTER TO FILE<br>*PROPOSED ORDER* | |
| 12/18/2012 | CORRESPONDENCE - LETTER TO FILE<br>*RE: AGREED ORDER CONTINUANCE* | |
| 12/18/2012 | NOTE - CLERKS<br>*AGREED ORDER CONTINUANCE SUBMITTED TO ADMIN* | |
| 12/18/2012 | ORDER - MEDIATION<br>*EXTEND MEDIATION DEADLINE* | *Vol./Book 431F,*<br>*Page 795, 1 pages* |
| 12/27/2012 | NOTE - ADMINISTRATOR<br>*(AGREED) ORDER FOR CONTINUANCE SUBMITTED TO JUDGE* | |
| 12/27/2012 | NOTE - ADMINISTRATOR<br>*ORDER FOR CONTINUANCE SIGNED 12-27-2012. COPY ALL. ORIG/CLERK* | |
| 12/27/2012 | ORDER - GRANTING CONTINUANCE | *Vol./Book 431F,*<br>*Page 846, 1 pages* |
| 01/04/2013 | MOTION - EXTEND<br>*MEDIATION DEADLINE / 2ND AGREED* | |
| 01/07/2013 | NOTE - CLERKS<br>*2ND AGREED ORDER EXTEND MEDIATION DEADLINE SUBMITTED TO ADMIN* | |
| 01/07/2013 | NOTE - ADMINISTRATOR<br>*ORDER EXTEND MED. DEADLINE SUBMITTED TO JUDGE* | |
| 01/07/2013 | ORDER - MEDIATION | *Vol./Book 432F,*<br>*Page 153, 1 pages* |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

|  |  |  |
|---|---|---|
|  | *2ND AGREED M/EXTEND MEDIATION DEADLINE* |  |
| 01/08/2013 | NOTE - ADMINISTRATOR<br>*ORDER (2ND AGRD M/EXTEND MEDIATION) SIGNED 1-7-2013. ORIG/CLERK* |  |
| 02/08/2013 | MOTION - SUBSTITUTE MEDIATOR<br>Party: ATTORNEY HAYES, SCOTT E; ATTORNEY MCCARTNEY,<br>PATRICIA; PLAINTIFF BREITLING, SAMUEL G; DEFENDANT MGC MORTGAGE<br>INC; PLAINTIFF BREITLING, JOANN |  |
| 02/08/2013 | NOTE - CLERKS<br>*AGREED ORDER SUBST MEDIATOR SUBMITTED TO ADMIN* |  |
| 02/08/2013 | NOTE - ADMINISTRATOR<br>*ORDER SUBST MEDIATOR SUBMITTED TO JUDGE* |  |
| 02/11/2013 | NOTE - ADMINISTRATOR<br>*ORDER SUBST MEDIATOR SIGNED 2-11-2013. ORIG/CLERK* |  |
| 02/11/2013 | ORDER - SUBSTITUTE MEDIATOR | *Vol./Book 432F,*<br>*Page 542, 1 pages* |
| 02/15/2013 | MOTION - SUMMARY JUDGMENT<br>Party: DEFENDANT MGC MORTGAGE INC<br>*TRAD/NO-EVID* |  |
| 02/22/2013 | MOTION - LEAVE<br>Party: DEFENDANT MGC MORTGAGE INC |  |
| 02/25/2013 | OBJECTION<br>*& RESPONSE M/LEAVE & RESET TRIAL DATE* |  |
| 02/26/2013 | NOTICE OF HEARING / FIAT |  |
| 03/11/2013 | CORRESPONDENCE - LETTER TO FILE<br>*MEDIATION LETTER FILED BY COURTENAY L. BASS* |  |
| 03/11/2013 | MOTION - ABATEMENT<br>*AGREED* |  |
| 03/11/2013 | NOTE - CLERKS<br>*AGREED ORDER ABATE SUBMITTED TO ADMIN* |  |
| 03/11/2013 | NOTE - ADMINISTRATOR<br>*ORDER ABATE SUBMITTED TO JUDGE* |  |
| 03/12/2013 | ORDER - ABATE | *Vol./Book 432F,*<br>*Page 933, 1 pages* |
| 03/13/2013 | NOTE - ADMINISTRATOR<br>*ORDER ADMIN CLOSE SUBMITTED TO JUDGE* |  |
| 03/14/2013 | **ALL OTHER DISPOSITIONS** (Judicial Officer: PARKER, TONYA) | *Vol./Book 432F,*<br>*Page 932, 1 pages* |
| 03/15/2013 | NOTE - ADMINISTRATOR<br>*ORDER ABATE SIGNED 3-12-2013. COPY ALL. ORIG/CLERK* |  |
| 03/15/2013 | NOTE - ADMINISTRATOR<br>*ORDER ADMIN CLOSE SIGNED 3-14-2013. COPY ALL. ORIG/CLERK* |  |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

| | |
|---|---|
| 03/29/2013 | *CANCELED* **Motion - Leave** (10:30 AM) **(Judicial Officer: PARKER, TONYA)**<br>*BY COURT ADMINISTRATOR*<br>*HEARING SET WITH AMY MARTINEZ 214-979-7425 - COURTESY COPY REQUESTED -*<br>*30-MINUTES - COURTESY COPY RECVD 2/26/2013* |
| 04/15/2013 | *CANCELED* **Jury Trial - Civil** (9:00 AM) **(Judicial Officer: PARKER, TONYA)**<br>*BY COURT ADMINISTRATOR*<br>*01/14/2013    Continued to 04/15/2013 - ORDER - CONTINUANCE - HOWARD,*<br>*CHARLES L; BREITLING, SAMUEL G; MGC MORTGAGE INC;*<br>*BREITLING, JOANN* |
| 04/16/2013 | 📄 MOTION - WITHDRAW ATTORNEY<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JOANN<br>*ORDER ATTACHED* |
| 04/25/2013 | NOTE - CLERKS<br>*ORDER WITHDRAW CNSL SUBMITTED TO ADMIN* |
| 04/25/2013 | NOTE - ADMINISTRATOR<br>*ORDER W/D SUBMITTED TO JUDGE* |
| 04/25/2013 | 📄 CORRESPONDENCE - LETTER TO FILE<br>*RE: GREEN CARD* |
| 04/25/2013 | 📄 ORDER - DENY<br>*MOTION WD CNSL* |
| 04/26/2013 | NOTE - ADMINISTRATOR<br>*ORDER DENYING M/WD SIGNED 4-25-2013. COPY PLTF ORIG/CLERK* |
| 04/26/2013 | NOTE - CLERKS<br>*ORDER WD CNSL SUBMITTED TO ADMIN (WITH LETTER W/GREEN CARD)* |
| 04/26/2013 | NOTE - ADMINISTRATOR<br>*2ND ORDER TO W/D (WITH LETTER & COPY OF GREENCARD) SUBMITTED TO*<br>*JUDGE* |
| 04/29/2013 | NOTE - ADMINISTRATOR<br>*2ND M/WITHDRAW NOT SIGNED BY JUDGE.* |
| 05/02/2013 | 📄 NOTICE OF HEARING / FIAT |
| 05/03/2013 | *CANCELED* **Motion - Withdraw** (1:00 PM) **(Judicial Officer: PARKER, TONYA)**<br>*REQUESTED BY ATTORNEY/PRO SE*<br>*HEARING SET WITH PATTY 214-643-6005 - 15-MINUTES* |
| 06/11/2013 | 📄 MOTION - WITHDRAW ATTORNEY<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JOANN<br>*UNOPPOSED* |
| 06/11/2013 | NOTE - CLERKS<br>*ORDER WD CNSL SUBMITTED TO ADMIN* |
| 06/11/2013 | NOTE - ADMINISTRATOR<br>*ORDER TO W/D SUBMITTED TO JUDGE* |
| 06/11/2013 | 📄 ORDER - WITHDRAW ATTORNEY<br>Party: PLAINTIFF BREITLING, SAMUEL G; PLAINTIFF BREITLING, JOANN |
| 06/12/2013 | NOTE - ADMINISTRATOR |

*Vol./Book 433F,*
*Page 268, 1 pages*

*Vol./Book 433F,*
*Page 741, 1 pages*

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

|            | *ORDER TO W/D SIGNED 6-11-2013. ORIG/CLERK* |
|------------|---------------------------------------------|
| 06/13/2013 | 📄 MOTION - CIVIL POST JUDGMENT (WITH FEE)<br>*NO CERTIFICATE OF CONF* |
| 06/13/2013 | NOTE - CLERKS<br>*ORDER TO REOPEN SUBMITTED TO ADMIN* |
| 06/14/2013 | NOTE - ADMINISTRATOR<br>*M/REOPEN NOT SUBMITTED TO JUDGE AND CANNOT BE SET FOR HEARING. CERT OF CONFERENCE DOES NOT COMPLY WITH LOCAL RULE.* |
| 06/14/2013 | 📄 NON-SIGNED PROPOSED ORDER/JUDGMENT |
| 06/14/2013 | 📄 CERTIFICATE OF CONFERENCE<br>*ON MOTION TO REOPEN CASE* |
| 06/18/2013 | 📄 RESPONSE<br>*TO DEF'S M/REOPEN CASE* |
| 06/18/2013 | 📄 NOTICE OF HEARING / FIAT |
| 06/19/2013 | 📄 NOTICE OF HEARING / FIAT |
| 06/27/2013 | *CANCELED* **Motion - Reinstate** (11:00 AM)  **(Judicial Officer: PARKER, TONYA)**<br>*REQUESTED BY ATTORNEY/PRO SE*<br>*JENNIFER WHITE 214-979-7403 - COURTESY COPY REQUESTED - 15-MINTUES* |
| 07/19/2013 | 📄 NOTICE OF HEARING / FIAT |
| 07/25/2013 | 📄 NOTICE OF NONSUIT<br>Party: PLAINTIFF  BREITLING, SAMUEL G;  PLAINTIFF  BREITLING, JOANN |
| 07/25/2013 | NOTE - CLERKS<br>*ORDER NONSUIT SUBMITTED TO ADMIN* |
| 07/25/2013 | 📄 RESPONSE<br>*REPLY TO PLTF ANSWER TO M/REOPEN & REPLACE ON COURT'S DOCKET* |
| 07/25/2013 | 📄 NOTICE OF NONSUIT<br>Party: PLAINTIFF  BREITLING, SAMUEL G;  PLAINTIFF  BREITLING, JOANN |
| 07/26/2013 | NOTE - CLERKS<br>*ORDER NONSUIT SUBMITTED TO ADMIN* |
| 07/26/2013 | 📄 CORRESPONDENCE - LETTER TO FILE<br>*RE: AGREED ORDER* |
| 07/26/2013 | NOTE - CLERKS<br>*AGREED ORDER TO REOPEN SUBMITTED TO ADMIN* |
| 07/29/2013 | NOTE - ADMINISTRATOR<br>*AGREED ORDER REINSTATE SUBMITTED TO JUDGE* |
| 07/29/2013 | NOTE - ADMINISTRATOR<br>*ORDER OF NONSUIT SUBMITTED TO JUDGE* |
| 07/29/2013 | 📄 ORDER - REINSTATE (OCA and REOPEN CASE) |

*Vol./Book 434F,*
*Page 247, 1 pages*

| 07/29/2013 | 🔲 NON-SUIT/DISMISSAL BY PLAINTIFF / PETITIONER (Judicial Officer: PARKER, TONYA) | Vol./Book 434F , Page 260, 1 pages |
|---|---|---|
| 07/30/2013 | CANCELED **Motion - Reinstate** (9:00 AM) **(Judicial Officer: PARKER, TONYA)** <br> *REQUESTED BY ATTORNEY/PRO SE* <br> *MOTION REINSTATE - 15-MINUTES - HEARING SET WITH JENNIFER WHITE 214-979-7403 - COURTESY COPY RECVD 6/18/2013* | |
| 07/30/2013 | NOTE - ADMINISTRATOR <br> *AGREED ORDER REOPEN SIGNED 7-29-2013. ORIG/CLERK* | |
| 07/30/2013 | NOTE - ADMINISTRATOR <br> *ORDER OF NONSUIT SIGNED 7-29-2013. ORIG/CLERK* | |
| 07/30/2013 | NOTE - CLERKS <br> *Mailed copy of Order Reinstate to Plaintiff and Defs* | |
| 07/30/2013 | NOTE - CLERKS <br> *Mailed copy of Order Nonsuit to Plaintiff and Defs* | |
| 09/11/2013 | 🔲 VACATION LETTER <br> Party: ATTORNEY HAYES, SCOTT E; PLAINTIFF BREITLING, SAMUEL G; MEDIATOR GILBERT MEDIATION; DEFENDANT MGC MORTGAGE INC; PLAINTIFF BREITLING, JOANN <br> ****MICAHEL FARRIS**** | |
| 08/08/2014 | 🔲 CORRESPONDENCE - LETTER TO FILE | |

| DATE | FINANCIAL INFORMATION | |
|---|---|---|

**DEFENDANT** MGC MORTGAGE INC
| Total Charges | 15.00 |
|---|---|
| Total Payments and Credits | 15.00 |
| **Balance Due as of 2/19/2015** | **0.00** |

**PLAINTIFF** BREITLING, SAMUEL G
| Total Charges | 323.00 |
|---|---|
| Total Payments and Credits | 323.00 |
| **Balance Due as of 2/19/2015** | **0.00** |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
In Dallas, Texas, this _19th_ day of _February_ A.D., _2015_.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By _Cecelia Flores_ Deputy

# EXHIBIT 2(A)

11 June 16 P1:19
Gary Fitzsimmons
District Clerk
Dallas District

NO. DC-11-07087

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND | § | IN THE DISTRICT COURT |
| JOANN BREITLING | § | |
| Plaintiffs, | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | |
| MGC MORTGAGE INC. | § | |
| Defendant, | § | 44TH JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, SAMUEL G. BREITLING AND JO ANN BREITLING, Plaintiffs in the above

styled action and file this First Amended Original Petition and complain of MGC MORTGAGE

INC., Defendant and for cause of action would respectfully show to the Court as follows

## DISCOVERY CONTROL PLAN

Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas

Rules of Civil Procedure.

## DISCLOSURE

This case is subject to transfer under Rule 1.07(a) of the Dallas County Local Rules.

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs, SAMUEL G. BREITLING AND JO ANN BREITLING are individuals residing in Dallas County, Texas and may be contacted through their undersigned attorney.

2. Defendant MGC Corporation is a corporation doing business in Texas and can be served through its registered agent, CT Corporation System, located at 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201.

## FACTUAL BACKGROUND

3. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

4. On October 20, 2000, Plaintiffs signed Promissory Note (Exhibit "A") and Deed of Trust (Exhibit "B") in favor of Aames Funding Corporation d/b/a Aames Home Loans.

5. Plaintiffs' loan was a home equity loan as defined by Section 50(a) (6), Article XVI of the Texas Constitution, requiring strict compliance.

6. Plaintiffs were told that they only qualified for a 12.3% interest rate. One of the lending approval stipulations was that Ms. Breitling was disabled for at least three years. She had been disabled since 1998. Although Plaintiffs' debt was 62%, the numbers were manipulated to make it look like Plaintiffs were "approved". Plaintiffs were told it was

2

only temporary, in their haste to close Plaintiffs' loan, Mr. and Mrs. Breitling's social security numbers were reverse on the documents.

7. Since closing the loan on October 20, 2000, Plaintiffs' loan has been transferred/sold five times, with the final time to MGC in May 2008. Plaintiffs never received notification of that transfer to MGC.

8. Plaintiffs sent their June 2008 payment using their social security number as in the past. However, due to the change in companies and policies, Plaintiffs payment was not properly credited.

9. Plaintiffs sent the July and August 2008 payments via courier. The July payment was not cashed but the August payment was so Plaintiffs stopped payment on the July payment.

10. In 2008 Plaintiffs asked MGC to modify their loan. MGC sent Plaintiffs a packet and Plaintiffs completed it the same day and overnighted it to MGC. Plaintiffs pled with MGC to keep their house and to lower the interest rate.

11. In June of 2008, Plaintiffs were approved by another lender to refinance into a lower fixed rate. However, MGC would provide no information necessary to allow the refinance to take place. On July 5, 2008 Defendant noted that Plaintiffs "were not in their system."

12. Plaintiffs learned that their loan was transferred from Plano, Texas to the Massachusetts office. Plaintiff Ms. Breitling called and checked on the status of the modification and in March 2009, Ms. Breitling was told that MGC needed to have a BPO (Broker Price

3

Opinion) done before the investor would approve the modification. Plaintiffs were not familiar with the term BPO but after doing some research, Ms. Breitling called MGC.

13. Plaintiffs were current on their payments just in a world of hurt trying to keep up with the 12.3% interest rate. MGC then called back and said that the investor wanted two separate BPO's done. Plaintiff Joann Breitling told them she would get back with them. When she called back a week later and agreed to the two broker price opinions, Plaintiff Ms. Breitling was told that their modification file had been closed because she was uncooperative.

14. MGC is a predatory company who has acted in bad faith the entire time that they have serviced Plaintiffs loan. In March of 2009, Plaintiff JoAnn Breitling requested all correspondence, transfer history, and the complete pay history of their loan. In response Plaintiffs received a six or eight month print out. When Plaintiff Mrs. Breitling called them, MGC said that they did not have a pay history and Plaintiffs would have to go back to all previous lenders.

15. In May of 2009, Plaintiff had a phone conversation with Mr. Leveritt, an MGC employee regarding Plaintiffs denial of a loan modification. In that conversation, Mr. Leveritt told Plaintiff JoAnn Breitling that a 12.3% loan was not predatory and that if Plaintiffs were struggling, they should sell a car.

16. In the fall of 2009, Plaintiffs retained counsel who sent a demand letter to MGC, which was never responded to.

4

17. Plaintiffs contend that they were upsold, put into a loan six points higher than the index was at that time. Plaintiffs had no idea they were being put into subprime lending which they were never able to get off of.

18. Plaintiffs have paid $1,370.00 a month, principle and interest of 10 years, over $160,000.00 total. MGC represented to Plaintiffs the balance was $122,000.00 and our payoff was $173,800.00.

## STANDING- QUESTION OF THE NOTE HOLDER

19. The Note was made payable to Funding Corporation d/b/a Aames Home Loans which was subsequently purchased by five companies, the last of which was MGC.

20. The original Note was not executed in favor of MGC or any of the other companies mentioned here. MGC and its agents have not produced evidence that it is the current owner, holder, or holder in due course of the mortgage.

21. If MGC actually had received the mortgage, it should produce the original Note with proper endorsements reflecting MGC was the owner, holder, or holder in due course.

22. MGC and other parties asserting to be acting on behalf of MGC have collected payments from Plaintiffs.[2]

   • MGC may be required to repurchase loans from the investor in order to permanently modify the loan. This presents a substantial cost and loss of revenue

5

that can be avoided by keeping the loan in a state of temporary modification or lingering default.

- The monthly service fee that MGC, as the servicer collects as to each loan it services in a pool of loans is calculated as a fixed percentage of the unpaid principal balance of the loans in the pool.  Consequently, modifying a loan to reduce the principal balance results in a lower monthly fee to the servicer.

- Fees that MGC charges borrowers that are in default constitute a significant source of revenue to it.  Aside from income MGC directly receives, late fees and "process management fees" are often added to the principal loan amount thereby increasing the unpaid balance in a pool of loans and increasing the amount of the servicer's monthly service fee.

- Entering into a permanent modification will often delay a servicer's ability to recover advances it is required to make to investors of the unpaid principal and interest payment of a non-performing loan. The servicer's right to recover expenses from an investor in a loan modification, rather than a foreclosure, is often less clear and less generous;

- Fixed overhead costs involved in successfully performing loan modifications involve up-front costs to the servicer for additional staffing, physical infrastructure, and expenses such as property valuation, credit reports and financing costs.

6

25. Rather than allocating adequate resources and working diligently to reduce the number of loans in danger of default by establishing permanent modifications, MGC has serially strung out, delayed, and otherwise hindered the modification process. MGC's delay and obstruction tactics have taken various forms with the common result that homeowners with loans serviced by MGC, who are eligible for permanent loan modifications, and who have met the requirements for participation in HAMP, have not received permanent loan modifications to which they are entitled.

26. Because MGC is not meeting its contractual obligations, hundreds of thousands of homeowners are wrongfully being deprived of an opportunity to cure their delinquencies, pay their mortgage loans and save their homes. By failing to live up to its obligations under the terms of the agreement it entered into with the Department of the Treasury, and the terms of the contracts it formed with individual homeowners, MGC has left thousands of borrowers in a state of limbo – often worse than they were before they sought a modification from MGC. Defendant's actions violate their contractual obligations, thwart the purpose of HAMP, and are unfair and deceptive under state laws.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

28. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

29. Plaintiffs seek to preserve the status quo during the pendency of this lawsuit, which would leave Plaintiffs in possession of her property and would prevent Defendant from

7

proceeding with any wrongful foreclosure action.  Plaintiffs SAMUEL G. BREITLING AND JO ANN BREITLING further seek a Temporary Restraining Order, to enjoin and restrain Defendant, its agents, servants, employees, representatives, or attorneys from the following:

(a)    attempting or actually taking possession of Plaintiffs SAMUEL G. BREITLING AND JO ANN BREITLING   home.

( b)    Interfering in any way with Plaintiffs' possession of the property;

(c)    from taking any action whatsoever that may be construed as unreasonable debt collection or otherwise violating the Texas or federal statutes regarding debt collection.

## DECLARATORY JUDGMENT

26.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

27.    Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiffs respectfully request that this Court issue a declaratory judgment specifying their and Defendant's rights and duties in connection with the Note.

28.    Specifically, a justiciable controversy exists regarding:

a.    who is the current owner, holder, or holder in due course of the mortgage;

b.    whether that owner, holder, or holder in due course has approved any

8

mortgage servicer to collect payments under the mortgage;

c.      what amounts are owed, if any, and how the payments have been applied;

29.    Plaintiffs' therefore are proper parties to seek a declaratory judgment to resolve these issues.

30.    This Court is vested with the power to declare and adjudicate the rights and other legal relationships of the parties to this action.

31     For all the reasons stated in this pleading, Plaintiffs seek a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, and request that, after trial, this Court issue a judgment declaring: (a) Defendant is not the holder of the Note; (b) a declaration of which party is the current Holder of the Note if such information can be obtained, and (c) the amount owed on the Note.

32.    Alternatively, Plaintiffs seek a declaration as to whether Plaintiffs loan was invalid based upon violations of Article 16, Chapter 50 of the Texas Constitution and Chapter 153 of Title 7, Part 8 of the Texas Administrative Code.

## COMMON LAW FRAUD, STATUTORY FRAUD AND FRAUD BY MISREPRESENTATION

33.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

34.    Pleading further, and in the alternative as necessary, Plaintiffs aver that MGC, made

9

material false representations to Plaintiffs with the knowledge of their falsity with reckless disregard of the truth with the intention that such representations would be acted upon by Plaintiffs, and that Plaintiffs relied on these representations to their detriment. Specifically, MGC concealed or failed to disclose material facts within their knowledge.

36.     MGC knew that Plaintiffs did not have knowledge of the same and did not have equal opportunity to discover the truth, and Defendants intended to induce Plaintiffs to enter into the transaction made the basis of this suit by such concealment or failure to disclose. Specifically:

a) MGC failed to advise Plaintiffs that the contract entered into created an invalid lien since MGC's predecessor in interest failed to wait at least 12 calendar days after the application was received and one business day before closing Plaintiffs' loan. Despite these known violations, Plaintiffs were ushered into a legally invalid loan, all the while representing it as valid and binding.

37.     Such material representations were not only fraudulent; they were also in violation of Article 16, Chapter 50 of the Texas Constitution and Chapter 153 of Title 7, Part 8 of the Texas Administrative Code.

38.     Further, such acts and/or omissions were the proximate cause of Plaintiffs' damages.

39.     Plaintiffs relied on the misleading and false statements and/or representations thereby suffering serious harm because Defendant, through its predecessor in interest intentionally and maliciously misled Plaintiffs to a loan transaction that was based upon

10

an invalid lien.

40.    Due to their fraudulent behavior, Plaintiffs are entitled to actual and punitive damages.

41.    As a direct and proximate result of the violations, actions, and misrepresentations of Defendant, Plaintiffs were injured and have suffered financial and pecuniary loss.

42.    Plaintiffs have sustained actual damages, which they have the right to recover in an amount which is not presently quantified as the harm is ongoing, but which can be determined and proven at trial.

43.    MGC, as successor in interest of Aames, was and is responsible for the acts alleged herein as well as the acts of their agents, trustee and substitute trustee acting on their behalf.

44.    Defendant, directly, and by and through its agents, perpetuated a fraud by deception whereby documents were created and filed in order to misrepresent the authority of Defendants and their agents, regarding the transfer of rights, title and interest in Plaintiffs' property.  Those actions were part of a scheme intended to lead to the wrongful foreclosure of Plaintiffs' home and directly benefitted defendant, its agents and assigns.

45.    Such conduct is not isolated but represents a broader pattern or practice of deceptive and unconscionable conduct on the part of MGC and its agents, acting on its behalf.

46.    Defendant's wrongful conduct as alleged herein, was a producing cause of Plaintiffs' injury, which resulted in the following damages: Plaintiffs seek a return of all fees paid to Defendant by Plaintiffs or on their behalf, all benefit-

11

of-the-bargain damages, as well as any and all additional damages for which Plaintiffs may be entitled. Plaintiffs specifically request the equitable remedy of forfeiture of fees and disgorgement of profit due to the violations stated herein Plaintiffs seek recovery of unliquidated damages within the jurisdictional limits of this court.

## VIOLATION OF THE TEXAS DECEPTIVE PRACTICES ACT

30. Plaintiffs re- allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

31. Plaintiffs are consumers under the provisions of the Texas Deceptive Trade Practices-Consumer Protection Act.

32. As such, Plaintiffs would show that Defendants have engaged in a pattern of unfair practices in violation of the Texas Deceptive Trade Practices Act. Defendant's violations of the Texas Debt Collection Practices Act also amount to violation of the Texas DTPA.

33. These violations have caused Plaintiffs economic and mental anguish damages for which they seek recovery. Defendant MGC's conduct was committed knowingly and, therefore, supports the imposition of additional statutory damages under the DTPA.

## VIOLATION OF THE TEXAS DEBT COLLECTION PRACTICES ACT

34. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

35. Defendant is a debt collector for purposes of the Texas Debt Collection Practices Act.

12

32. Defendant repeatedly utilized unfair or unconscionable means by collecting or attempting to collect interest or a charged fee or expense incidental to the allegation that was not authorized by the terms of the parties' contract, in violation of TDCPA §392.303.

33. Defendant misrepresented the character, amount or extent of the debts, in violation of TDCPA §392.304. Defendant also violated TDCPA §392.304(a) (5), (6), (8), (12), and (17).

34. Defendant's violation of the TDCPA entitles Plaintiffs to actual damages and attorney's fees under TDCPA §392.403.

35. These violations have cause Plaintiffs economic and mental anguish damages for which they seek recovery.

36. Defendant's conduct was committed knowingly and therefore, supports the imposition of additional statutory damages under the Texas DTPA.


## NEGLIGENCE AND GROSS NEGLIGENCE.

37. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

38. Defendant owed a duty of care to Plaintiffs to adequately train and supervise its staff of loan collectors and servicing agents in the proper and legal servicing of mortgages, as well as the duty to engage in and maintain fair and honest accounting practices, including the proper application and crediting of payments such as those made by Plaintiffs. Defendants breached their duty to Plaintiffs by (1) failing to adequately train and/or supervise agents in the proper accounting and

13

servicing of Plaintiffs' mortgage and allowing the wrongful foreclosure of Plaintiffs' home, and

(2) demonstrating a pattern of flawed accounting that resulted in foreclosures such as that of

Plaintiffs' home.

## UNREASONABLE DEBT COLLECTION
## PRACTICES UNDER TEXAS COMMON LAW

39.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set

forth herein.

40. MGC's actions in failing to properly apply and account for Plaintiffs' payments,

manipulating Plaintiffs' loan to appear in default despite being current, refusing to accept

properly tendered payments, providing inconsistent accounting information regarding the amount

of the alleged indebtedness, charging unjustified fees and placing payments into suspense

accounts without cause or justification constitute unreasonable debt collection practices.  As a

result of these practices, Plaintiffs have suffered losses and remain at risk of losing their home.

41.  Further, Plaintiffs have suffered the emotional stress that naturally flows from a situation

where a mortgage servicing company steps out of its role of servicing and tries to take a home

wrongfully.

## BREACH OF FIDUCIARY DUTY

42.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set

forth herein.

43. MGC, as a servicing agent, stands in a fiduciary capacity with respect to Plaintiffs' monthly

14

payments and credits on their mortgage account, and other related obligations. MGC has

breached this duty for the numerous reasons stated above. MGC 's conduct has caused Plaintiffs

losses for which they seek recovery.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

44. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set

forth herein.

45.    Defendants acted intentionally or recklessly in servicing Plaintiffs' loan. Defendants'

conduct was both extreme and outrageous with a complete disregard for Plaintiffs' rights.

Defendant s' actions have caused severe emotional distress to Plaintiffs, including

embarrassment, fear, humiliation, and unnecessary and excessive worry,

## EXEMPLARY DAMAGES

46. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein

47. The above described harm to Plaintiffs was the result of Defendants' conduct, which was

fraudulent, malicious, intentional, or at a minimum, grossly negligent.  For this, as well as

Defendants extreme and outrageous conduct with respect to the wrongful foreclosure of

Plaintiffs' home, Plaintiffs seek the imposition of exemplary damages against Defendants.

48.  As such, Plaintiffs seek a monetary award from the jury, in their discretion, in an amount to

set an example to others and as a penalty and punishment to MGC.  In exercising their discretion

in awarding exemplary damages Plaintiffs request the jury consider the following factors:

15

1. The nature of the wrong;

2. The character or the conduct involved:

3. The degree of culpability of the wrongdoer;

4. The situation and sensibilities of the parties concerned;

5. The extent to which such conduct offends a public sense of justice and propriety;

6. The net worth of Defendant.

49.  Plaintiffs believe and allege that the damages directly and proximately caused by the

negligent and abusive actions of the Defendants herein have injured Plaintiffs in an amount within the

jurisdictional limits of this Court.  Plaintiffs contend that the amount of Plaintiffs' actual damages should

be left to the discretion of the jury in light of the evidence considered by the jury regarding the severity of

Plaintiffs' harm and the callous disregard Defendants' displayed toward Plaintiffs. The jury should be

allowed to consider such evidence in accordance with proper instruction and charge of the Court.

## ATTORNEY'S FEES

50.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

51. It was necessary for Plaintiffs to secure the services of Patricia Wilhite McCartney, a

licensed attorney, to prepare and prosecute this suit.  To effect an equitable outcome and for

services rendered, Plaintiffs requests a judgment for reasonable and necessary attorney's fees,

expenses, and costs through trial and appeal should be granted against Defendant and in favor of

Plaintiffs for the use and benefit of Plaintiffs' attorney and be ordered paid directly to Plaintiffs

attorney, who may enforce the judgment in the attorney's own name.  Plaintiffs request

postjudgment interest as allowed by law.

16

## BREACH OF CONTRACT

51. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52. Defendant's acceptance of TARP money created an obligation to modify loans outstanding on Plaintiffs' real estate to the extent Defendants were pronouncing rights thereto, to assist borrowers, and to otherwise use the TARP funds for the benefit of, among others, the Plaintiffs herein.

53. In fact, the Plaintiffs are intended third party beneficiaries of the contracts between the United States Government, certain intermediaries and Defendant.

54. Defendant breached their contractual obligations to Plaintiffs as set forth herein. Defendant further breached the contractual obligations owing to Plaintiffs in the manners alleged hereinabove. As a proximate and foreseeable result of said breaches of contract, Plaintiffs have been damaged in a sum to be fully proven at the time of trial.

## DEMAND FOR JURY TRIAL

63.   Plaintiffs hereby demand a jury trial, and tenders the requisite fee.

WHEREFORE, having set forth various causes of action against the defendant, Plaintiffs pray for the following relief:

17

1. That the actions of defendant be determined to be unfair and deceptive business practices in violation of the Texas DTPA entitling Plaintiffs to treble damages;

2. That Plaintiffs be awarded actual damages to be fully proved at trial;

3. Judgment for cancellation of the indebtedness described hereinabove;

4. Judgment for both pre-judgment and post-judgment interest at the maximum interest rate allowed by law;

5. Judgment for punitive damages in an amount to be determined by the trier of fact;

6. Judgment for costs of Court;

7. Judgment for Plaintiffs to recover reasonable and necessary attorney's fees for bringing this case to trial and judgment, as well as the conditional award in the event of an appeal;

8. That the Plaintiffs be awarded consequential damages to be fully proved at the time of trial;

9. That Plaintiffs be awarded any and all fees and costs pursuant to the written loan agreements which bind the defendant; and

10. That the Court grant any other relief that may be just or equitable.


McCartney Law Firm
3006 Lost Maples Circle
Forney, Texas 75126
(972)782-6300
(972)559-1994 (fax)


/s/ Patricia W. McCartney
PATRICIA W. MCCARTNEY
SBN.00786346


-18-

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this ___14th___ day of _February_, A.D., _2015_.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By _Cecelia Flowers_ Deputy

# EXHIBIT 2(B)

Filed
13 July 25 P11:00
Gary Fitzsimmons
District Clerk
Dallas District

## CAUSE DC1107087

SAMUEL G BREITLING                    IN THE DISTRICT

&

JO ANN BREITLING                      116TH DISTRICT

PLAINTIFFS

V.

MGC MORTGAGE CO.                      DALLAS COUNTY,

DEFENDANT                             TEXAS

### Plaintiffs Notice of Nonsuit Against Defendant

Pursuant to Rule 162 of the Texas Rules of Civil Procedure,
Plaintiffs Samuel G. Breitling and JoAnn Breitling file this written
notice of their non-suit without prejudice on the above referenced
case.

Respectfully submitted

JoAnn Breitling, Pro Se

John Breitling by permission (C4)

1704 Cornwall Lane
Sachse, Texas    75048
214-674-6572

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served in accordance with the Texas Rules of Civil Procedure to Scott Hayes, counsel of record, by certified and by regular mail on this date of the 25th of July, 2013.

JoAnn Breitling, Pro Se

## CAUSE DC1107087

SAMUEL G BREITLING

**IN THE DISTRICT**

&

JO ANN BREITLING

**116TH DISTRICT**

PLAINTIFFS

V.

MGC MORTGAGE CO.

**DALLAS COUNTY,**

DEFENDANT

**TEXAS**

## ORDER OF NONSUIT

Came on for consideration Plaintiffs Samuel G. Breitling and JoAnn Breitling's notice of non-suit without prejudice. Accordingly, it is ordered that Plaintiffs' claims are dismissed without prejudice on the _____ day of _____, 2013.

_____
**PRESIDING JUDGE**

STATE OF TEXAS        }
COUNTY OF DALLAS    }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this 19th day of February, A.D., 2015.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By Cecelia Flowers Deputy

# EXHIBIT 3

FELICIA PITRE, DISTRICT CLERK
# CASE SUMMARY
## CASE NO. DC-14-04053

| | | |
|---|---|---|
| **LNV CORPORATION**<br>vs.<br>**SAMUEL BREITLING, et al** | §<br>§<br>§<br>§<br>§ | Location: **134th District Court**<br>Judicial Officer: **TILLERY, DALE**<br>Filed on: **04/15/2014** |

---

### CASE INFORMATION

**Statistical Closures**                                    Case Type: **OTHER (CIVIL)**
08/04/2014   ALL OTHER DISPOSITIONS

---

### PARTY INFORMATION

|  |  | *Lead Attorneys* |
|---|---|---|
| **PLAINTIFF** | **BREITLING, JOANN**<br>Removed: 07/30/2014<br>DATA ENTRY ERROR | |
| | **BREITLING, SAMUEL**<br>Removed: 07/30/2014<br>DATA ENTRY ERROR | |
| | **LNV CORPORATION** | **HARDAWAY, JEFFREY B**<br>*Retained*<br>281-925-5256(W) |
| **DEFENDANT** | **BREITLING, JO ANN**<br>*1704 CORNWALL LANE*<br>*SACHSE, TX 75048* | **Pro Se**<br>214-674-6572(H) |
| | **BREITLING, JO ANN**<br>Removed: 07/31/2014<br>DATA ENTRY ERROR | |
| | **BREITLING, SAMUEL G**<br>Removed: 07/31/2014<br>DATA ENTRY ERROR | |
| | **BREITLING, SAMUEL G.**<br>*1704 CORNWALL LANE*<br>*SACHSE, TX 75048* | **Pro Se** |
| | **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE**<br>*211 E. 7TH STREETE, STE. 620*<br>*AUSTIN, TX 78701* | |
| | **PALISADES ACQUISITION V, LLC** | |
| | **PINNACLE REALTY ADVISORS, INC**<br>*2825 WILCREST DRIVE, STE. 570*<br>*HOUSTON, TX 77042* | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 04/15/2014 | NEW CASE FILED (OCA) - CIVIL | |
| 04/15/2014 | ORIGINAL PETITION<br>*ORIGINAL PETITION* | |
| 04/15/2014 | ISSUE CITATION | |
| 04/15/2014 | ISSUE CITATION COMM OF INS OR SOS | |
| 04/16/2014 | NOTICE OF DISMISSAL FOR WANT OF PROSECUTION | |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

| 04/16/2014 | **CITATION**<br>LNV CORPORATION<br>Unserved |
| | BREITLING, SAMUEL G.<br>Served: 06/05/2014 |
| | BREITLING, JO ANN<br>Served: 06/05/2014 |
| | PINNACLE REALTY ADVISORS, INC<br>Served: 04/22/2014<br>- E SERVE 1012986 |
| 04/16/2014 | **CITATION SOS/COI/COH/HAG**<br>PALISADES ACQUISITION V, LLC<br>Unserved<br>- E SERVE - (SOS) 1012986 |
| 05/09/2014 | RETURN OF SERVICE<br>*Return of Service for Defendant Pinnacle Realty Advisors Inc.* |
| 05/19/2014 | RETURN OF SERVICE<br>*Return of Service from Secretary of State for Defendant Palisades Acquisition V, LLC* |
| 05/22/2014 | REQUEST FOR SERVICE<br>*Request for issuance of citation* |
| 05/23/2014 | ISSUE CITATION<br>*ESERVE 1353835* |
| 05/23/2014 | **CITATION**<br>GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE<br>Served: 06/02/2014 |
| 06/13/2014 | RETURN OF SERVICE<br>*Return of Service for GMAC Mortgage LLC fka Norwest Mortgage, Inc. served on 06/02/14* |
| 06/17/2014 | RETURN OF SERVICE<br>*Return of Service for Defendant Samuel Breitling* |
| 06/17/2014 | RETURN OF SERVICE<br>*Return of Service for Defendant Jo Ann Breitling* |
| 06/23/2014 | ORIGINAL ANSWER - GENERAL DENIAL<br>Party: DEFENDANT BREITLING, SAMUEL G.;  DEFENDANT BREITLING, JO ANN |
| 06/30/2014 | *CANCELED* **DISMISSAL FOR WANT OF PROSECUTION** (10:00 AM)  **(Judicial Officer: TILLERY, DALE)**<br>*BY COURT ADMINISTRATOR* |
| 07/02/2014 | NOTICE OF TRIAL |
| 07/02/2014 | ORDER - MEDIATION | *Vol./Book 434G, Page 56, 2 pages* |
| 07/02/2014 | SCHEDULING ORDER | *Vol./Book 434G, Page 43, 2 pages* |
| 07/07/2014 | CERTIFICATE OF LAST KNOWN ADDRESS |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Party: ATTORNEY HARDAWAY, JEFFREY B

| | |
|---|---|
| 07/07/2014 | MOTION - DEFAULT JUDGMENT |
| | Party: PLAINTIFF LNV CORPORATION |
| | *IN REM & MSJ IN REM* |
| 07/07/2014 | NON-SIGNED PROPOSED ORDER/JUDGMENT |
| | *FINAL/JUDGMNT/IN REM ONLY* |
| 07/07/2014 | NOTE - ADMINISTRATOR |
| | *FINAL/JUDGMNT/IN REM ONLY - signed* |
| 07/07/2014 | ORDER - JUDGMENT |
| | *FINAL JUDGMT IN REM ONLY* |
| 07/09/2014 | NOTICE OF JUDGMENT MAILED |
| 07/09/2014 | NOTICE OF HEARING / FIAT |
| | *Notice of Oral Hearing on MSJ* |
| 07/16/2014 | RETURNED MAIL |
| | *ADMIN* |
| 07/18/2014 | ORDER - ATTORNEY FEES |
| | Party: MEDIATOR LEWIS, FREDERICK |
| 07/23/2014 | NON-SIGNED PROPOSED ORDER/JUDGMENT |
| | *ORDR/WITHDRAW/SIGNED/ORDR* |
| 07/23/2014 | ORDER - ATTORNEY FEES |
| | Party: MEDIATOR LEWIS, FREDERICK |
| | *MEDIATOR* |
| 07/28/2014 | NOTE - ADMINISTRATOR |
| | *O/WITHDRAWING COURT'S SIGNED ORDER - printed* |
| 07/28/2014 | MISCELLANOUS EVENT |
| | Party: MEDIATOR LEWIS, FREDERICK |
| | *RE: MEDIATION* |
| 07/28/2014 | RESPONSE |
| | *TO MOTION FOR SUMMARY JUDGMENT* |
| 07/29/2014 | MOTION - WITHDRAW ATTORNEY |
| | Party: ATTORNEY DINH, ANH THU N. |
| | *THE LANE LAW FIRM* |
| 07/29/2014 | OBJECTION |
| | *JOINT OBJECTION TO ORDER TO MEDIATION AND MOTION TO RECONSIDER* |
| 07/29/2014 | ORDER - MISC. |
| | *WITHDRAW COURT'S SIGNED ORDER* |
| 07/29/2014 | NON-SIGNED PROPOSED ORDER/JUDGMENT |
| | *ORDER - WITHDRAW ATTORNEY OF RECORD* |

*Vol./Book 434G,*
*Page 109, 5 pages*

*Vol./Book 434G,*
*Page 176, 1 pages*

*Vol./Book 434G,*
*Page 211, 1 pages*

*Vol./Book 434G,*
*Page 294, 2 pages*

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

| 07/30/2014 | CORRESPONDENCE - LETTER TO FILE |
| | *BREITLING/JUDGE* |

| 07/30/2014 | MOTION - CONTINUANCE |
| | Party: DEFENDANT BREITLING, SAMUEL G.; DEFENDANT BREITLING, JO ANN |

| 07/30/2014 | NON-SIGNED PROPOSED ORDER/JUDGMENT |
| | *CONTINUANCE* |

| 07/30/2014 | NOTE - ADMINISTRATOR |
| | *need hearing: obj to mediation & fees* |

| 07/30/2014 | NOTICE OF HEARING / FIAT |
| | *RE: MOTION FOR CONTINUANCE* |

| 07/30/2014 | NOTE - ADMINISTRATOR |
| | *Per JoAnn Breitling, no objection to Lane's Mtn/Withdraw* |

| 07/30/2014 | NOTE - ADMINISTRATOR |
| | *O/WITHDRAW (LANE) - signed* |

| 07/30/2014 | ORDER - WITHDRAW ATTORNEY | *Vol./Book 434G,* |
| | Party: DEFENDANT BREITLING, SAMUEL G.; DEFENDANT BREITLING, JO ANN | *Page 370, 1 pages* |

| 07/31/2014 | MOTION - TRANSFER - NO CHANGE OF VENUE |
| | Party: DEFENDANT BREITLING, SAMUEL G; DEFENDANT BREITLING, JO ANN |

| 07/31/2014 | NOTE - ADMINISTRATOR |
| | *RETURNED MAIL: email to Plf's atty, update address* |

| 08/01/2014 | CERTIFICATE OF CONFERENCE |
| | *RE: MOTION TRANSFER* |

| 08/03/2014 | NO EVIDENCE MOTION FOR SUMMARY JUDGMENT |
| | *BREITLING-DEFENDANT'S SUPPLEMENT OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT* |

| 08/04/2014 | *CANCELED* **Motion - Summary Judgment (8:00 AM)** **(Judicial Officer: TILLERY, DALE)** |
| | *CASE CLOSED* |

| 08/04/2014 | **JUDGMENT - FINAL (ALL OTHER DISPOSITIONS)** (Judicial Officer: TILLERY, DALE) | *Vol./Book 434G,* *Page 403, 5 pages* |

| 08/08/2014 | CORRESPONDENCE - LETTER TO FILE |
| | *JOANNE BREITLING* |

| 08/18/2014 | MOTION - VACATE |
| | *DEFENDANT'S MOTION TO VACATE VOID ORDER FOR SUMMARY JUDGMENT FAVORING LNV* |

| 08/18/2014 | MOTION - MISCELLANOUS |
| | *MOTION FOR JUDICIAL NOTICE OF SECRETARY OF STATE RECORDS SHOWING CORPORATE ADDRESSES OF LNV AND MGC MORTGAGE AND THEIR CORPORATE OFFICERS* |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

| | | |
|---|---|---|
| 08/18/2014 | **MOTION - RECUSE**<br>*DEFENDANT'S MOTION TO RECUSE AND TO DISQUALIFY JUDGE DALE TILLERY* | |
| 08/18/2014 | **MOTION - MISCELLANOUS**<br>*BREITLING'S MOTION FOR JUDICIAL NOTICE OF A JUDUCIAL DETERMINATION OF FACT THAT BEAL SWITCHED A NOTE TO MAKE IT APPEAR A WIFE SIGNED IT WHEN SHE HAD NOT* | |
| 08/18/2014 | **MOTION - MISCELLANOUS**<br>*MOTION FOR JUDICIAL NOTICE OF INFORMATION AND CRIMINAL INDICTMENT AND PLEA AGREEMENT OF LORRAINE BROWN* | |
| 08/18/2014 | **MOTION - MISCELLANOUS**<br>*BREITLING'S MOTION FOR JUDICIAL NOTICE OF TEH SOUTHGATE AND BEMONT CASES* | |
| 08/21/2014 | **NOTE - ADMINISTRATOR**<br>*O/REFERRAL ON MOTION TO RECUSE - signed and fax to 1st Adm Regional Judge* | |
| 08/21/2014 | **ORDER - DENY**<br>*OF REFERRAL ON MOTION TO RECUSE* | *Vol./Book 434G, Page 712, 1 pages* |
| 08/27/2014 | **MOTION - RECUSE**<br>*DEFENDANT'S AMENDED* | |
| 08/28/2014 | **NOTE - ADMINISTRATOR**<br>*O/REFERRAL/AMD/MTN/RECUSE - signed and fax to 1st Adm Regional Judge* | |
| 08/28/2014 | **ORDER - DENY**<br>*OF REFERRAL OF DEF'S AMENDED MOTION TO RECUSE JUDGE DALE TILLERY* | *Vol./Book 434G, Page 763, 1 pages* |
| 08/28/2014 | **NOTICE OF HEARING / FIAT**<br>*AMENDED/MOTION/RECUSE* | |
| 08/28/2014 | **NOTE - ADMINISTRATOR**<br>*Fax Log: Hearing Notice to 1st Region Admin Judge* | |
| 09/03/2014 | NOTE - ADMINISTRATOR<br>*UNABLE TO CANCEL MTN/RECUSE HEARING (need written request)* | |
| 09/04/2014 | **ORDER - DENY**<br>*RECUSE* | *Vol./Book 434G, Page 820, 1 pages* |
| 09/05/2014 | **CANCELED MOTION HEARING (9:00 AM) (Judicial Officer: TILLERY, DALE)**<br>*BY COURT ADMINISTRATOR*<br>*AMD/MTN/RECUSE (hearing not held, ruling issued by Judge Murphy due to Mtn/wDraw/Mtn/Recuse)* | |
| 09/05/2014 | *CANCELED* **Motion - Transfer (9:30 AM) (Judicial Officer: PARKER, TONYA)**<br>CASE CLOSED<br>*MOTION TRANSFER TO 116TH **This case is in the 134th, but will be heard by Judge Parker** JOANN BREITLING 214-674-6572 - 30-Minutes - Courtey Copy Requested* | |
| 03/30/2015 | *CANCELED* **Non Jury Trial (9:00 AM) (Judicial Officer: TILLERY, DALE)**<br>CASE CLOSED | |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

**FELICIA PITRE, DISTRICT CLERK**

# CASE SUMMARY
## CASE NO. DC-14-04053

| DATE | FINANCIAL INFORMATION | | |
|---|---|---|---|
| | **PLAINTIFF** BREITLING, SAMUEL | | |
| | Total Charges | | 0.00 |
| | Total Payments and Credits | | 0.00 |
| | **Balance Due as of 2/19/2015** | | **0.00** |
| 08/18/2014 | Charge | BREITLING, SAMUEL | 15.00 |
| 08/18/2014 | Adjustment | BREITLING, SAMUEL | (15.00) |
| | **DEFENDANT** BREITLING, SAMUEL G. | | |
| | Total Charges | | 15.00 |
| | Total Payments and Credits | | 15.00 |
| | **Balance Due as of 2/19/2015** | | **0.00** |
| 08/20/2014 | Charge | DEFENDANT BREITLING, SAMUEL G. | 15.00 |
| 08/20/2014 | CREDIT CARD - Receipt # 47797-2014-DCLK TEXFILE (DC) | DEFENDANT BREITLING, SAMUEL G. | (15.00) |
| | **PLAINTIFF** LNV CORPORATION | | |
| | Total Charges | | 329.00 |
| | Total Payments and Credits | | 329.00 |
| | **Balance Due as of 2/19/2015** | | **0.00** |
| 04/16/2014 | Charge | PLAINTIFF LNV CORPORATION | 321.00 |
| 04/16/2014 | CREDIT CARD - Receipt # 21738-2014-DCLK TEXFILE (DC) | PLAINTIFF LNV CORPORATION | (321.00) |
| 05/23/2014 | Charge | PLAINTIFF LNV CORPORATION | 8.00 |
| 05/23/2014 | CREDIT CARD - Receipt # 29490-2014-DCLK TEXFILE (DC) | PLAINTIFF LNV CORPORATION | (8.00) |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

STATE OF TEXAS }
COUNTY OF DALLAS

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this 19th day of February, A.D., 2015.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By _____ Deputy

# EXHIBIT 3(A)

FILED
DALLAS COUNTY
4/15/2014 5:04:12 PM
GARY FITZSIMMONS
DISTRICT CLERK

Linda Schaffer

DC-14-04053

CAUSE NO. _____

| | | |
|---|---|---|
| LNV CORPORATION,<br>ITS SUCCESSORS AND ASSIGNS,<br>**PLAINTIFF** | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | |
| SAMUEL G. BREITLING,<br>JO ANN BREITLING,<br>GMAC MORTGAGE, LLC FKA<br>NORWEST MORTGAGE, INC.,<br>PINNACLE REALTY ADVISORS, INC.,<br>AND PALISADES ACQUISITION V, LLC<br>**DEFENDANTS** | §<br>§<br>§<br>§<br>§<br>§<br>§ | DALLAS COUNTY, TEXAS<br><br><br>134th   JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION FOR FORECLOSURE

Comes now, **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS,** ("Plaintiff") complaining of **SAMUEL G. BREITLING, JO ANN BREITLING, GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC., PINNACLE REALTY ADVISORS, INC.** and **PALISADES ACQUISITION V, LLC** ("Defendants"). This is an *in rem* proceeding. Plaintiff does not seek personal liability against any Defendant obligated for the debt or named in this suit.

### DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level Two (2) of the Discovery Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### PARTIES

2.     Plaintiff is a corporation authorized to do business in the State of Texas.

3.     Defendant **SAMUEL G. BREITLING** is an individual who is a resident of Texas at this time and may be served with process at 1704 Cornwall Lane, Sachse, TX 75048 or wherever he may be found.

C&S 14-0070                                      1

4.      Defendant **JO ANN BREITLING** is an individual who is a resident of Texas at this time and may be served with process at 1704 Cornwall Lane, Sachse, TX 75048 or wherever she may be found.

5.      Defendant **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC.** is a corporation organized under the laws of the State of Pennsylvania who may be served with process through its registered agent, Corporation Service Company D/B/A CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Ste. 620, Austin, TX 78701.

6.      Defendant **PINNACLE REALTY ADVISORS, INC.** is a corporation organized under the laws of the State of Texas who may be served with process through its registered agent, James Murnane at 2825 Wilcrest Drive, Ste. 570, Houston, TX 77042.

7.      Defendant **PALISADES ACQUISITION V, LLC**, a corporation, does not appear to be a Texas Corporation and does not maintain a registered agent for the service of process. Palisades Acquisition V, LLC may accordingly be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service. Palisades Acquisition V, LLC is required by Texas Business Corporation Act article 2.09 to appoint and maintain a registered agent, but the registered agent cannot with reasonable diligence be found. Thus, pursuant to Tex. Bus. Corp. Act art. 2.11(B), Palisades Acquisition V, LLC has designated the Texas Secretary of State as it registered agent for service of process.

### JURISDICTION AND VENUE

8.      This Court has jurisdiction over the controversy in accordance with Tex.Const. Art. V§8 and XVI § 50a(6).

9.      Venue is proper in Dallas County, Texas because the real property, which is the subject of this lawsuit, is located in said county.

C&S 14-0070                                    2

## FACTS

10.     On October 20, 2000, **SAMUEL G. BREITLING** and wife, **JO ANN BREITLING** executed a Texas Home Equity Adjustable Rate Note (hereinafter "Note") payable to Aames Funding Corporation, a California Corporation, DBA Aames Home Loan in which **SAMUEL G. BREITLING** and **JO ANN BREITLING** promised to pay the sum of $129,600.00, with interest at the rate of 12.375%, in monthly installments beginning on December 1, 2000 and continuing monthly until November 1, 2030 on which date the final installment and/or remaining balance due will be paid. A true and correct copy of the Note is attached hereto and incorporated by reference for all purposes as Exhibit "A".

11.     Contemporaneously with the execution of the Note, **SAMUEL G. BREITLING** and **JO ANN BREITLING** executed and delivered a Texas Home Equity Security Instrument (hereinafter "Deed of Trust") conveying to Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a Corporation, as beneficiary, the real property that is the subject of the Note and Deed of Trust in order to secure payment of the Note described above as Exhibit "A". The Deed of Trust was recorded on December 6, 2000 under clerk's file number 1219742 Volume 2010236 Page 05425 in the official real property records of Dallas County, Texas. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and incorporated by reference for all purposes. The legal description of such property is as follows, to-wit:

> **BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE, DALLAS COUNTY, TEXAS ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.**

otherwise known as 1704 CORNWALL LANE, SACHSE, TX 75048 ("Property").

C&S 14-0070                                    3

12.     The Deed of Trust was assigned from Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a Corporation to Aames Capital Corporation, a California Corporation as evidenced by an assignment recorded under clerk's file no. 1520052 Volume 2001174 Page 01317 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment of Security Instrument is attached hereto as Exhibit "C" and incorporated by reference for all purposes.

13.     The Deed of Trust was further assigned from Aames Capital Corporation, a California Corporation to Bankers Trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust, 2000-2 Mortgage Pass-Through Certificates, Series 2000-2, c/o Countrywide Home Loans SV-79 as evidenced by an assignment recorded under clerk's file no. 1520053 Volume 2001174 Page 01320 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment of Security Instrument is attached hereto as Exhibit "D" and incorporated by reference for all purposes.

14.     Pursuant to a Certificate of Merger, Bankers Trust Company of California, N.A. merged into Deutsche Bank National Trust Company. A true and correct copy of the Certificate of Merger is attached hereto as Exhibit "E" and incorporated by reference for all purposes.

15.     The Deed of Trust was further assigned from Deutsche Bank National Trust Company, as Trustee FKA Bankers Trust Company of California, N.A. as Trustee to Ellington Mortgage Partner, L.P. as evidenced by an assignment recorded under clerk's file no. 20080173631 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit "F" and incorporated by reference for all purposes.

C&S 14-0070                                          4

16.    The Deed of Trust was further assigned from Ellington Mortgage Partner, L.P. to **LNV CORPORATION** as evidenced by an assignment recorded under clerk's file no. 20080320073 in the official public records of Dallas County, Texas.  A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit "G" and incorporated by reference for all purposes.

16.    Plaintiff is currently the holder of the Note and owner of the Deed of Trust lien.

17.    No payment has been tendered under the terms of the Note and Deed of Trust since March 1, 2010.  On March 14, 2014, Plaintiff made formal written demand upon Defendants to pay the arrearage.  True and correct copies of the demand letters are attached hereto as Exhibit "H" and incorporated by reference for all purposes.  The arrearage has not been cured since the date of the demand letter and is not in compliance with the terms of the Note and Deed of Trust.  The total amount of the debt as of the date of this petition consists of $122,577.71 which represents the unpaid principal balance in addition to other charges due and owing pursuant to the terms of the Note and Deed of Trust.

18.    This claim is just and true, it is due, and all lawful and just offsets, payments, and credits have been allowed.

## INTERESTED PARTIES

19.    Defendant **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC.** is a necessary party to this cause of action because it is a lien holder by virtue of a deed of trust lien recorded under Volume 96061 Page 00818 in the official public records of Dallas County, Texas.  A true and correct copy of the Deed of Trust is attached hereto as Exhibit "I" and incorporated by reference for all purposes.  Said Deed of Trust was subsequently assigned to Norwest Mortgage, Inc.  True and correct copies of the Assignments of Deed of Trust are

C&S 14-0070                                             5

attached hereto as Exhibit "J" and Exhibit "K" and incorporated by reference for all purposes. Through a series of mergers, Norwest Mortgage, Inc. became a limited liability company with the name GMAC Mortgage, LLC. True and correct copies of the Certificates of Merger are attached hereto as Exhibit "L" and incorporated by reference for all purposes.

20.     Defendant **PINNACLE REALTY ADVISORS, INC.** is a necessary party to this cause of action because it is a lien holder by virtue of a deed of trust lien recorded under clerk's file no. 3317465 Volume 2005074 Page 03574 in the official public records of Dallas County, Texas. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "M" and incorporated by reference for all purposes.

21.     Defendant **PALISADES ACQUISITION V, LLC** is a necessary party to this cause of action because it is the holder of a judgment lien recorded under clerk's file no. 20070198962 in the official public records of Dallas County, Texas. A true and correct copy of the Abstract of Judgment is attached hereto as Exhibit "N" and incorporated by reference for all purposes.

## NON-JUDICIAL FORECLOSURE

22.     Because of the material breach of the Note and Deed of Trust, Plaintiff seeks a non-judicial foreclosure pursuant to the terms of the Deed of Trust, Tex. Const. art. XVI § 50a(6) and Tex. R. Civ. P. 735(1) or 735 (2) and Tex .Prop. Code §51.002 with respect to all Defendants who are the obligors of the Note and Deed of Trust.

23.     Because of the material breach of the Note and Deed of Trust, a public auction of the Property in conjunction with all other regularly scheduled non-judicial foreclosure sales on the first Tuesday of the month would provide the most practical, efficient and effective means to enforce Plaintiff's security interest in the Property. Because the rights, responsibilities and

C&S 14-0070                                    6

duties of the trustee are well known under Tex. Prop. Code § 51.002 and Texas case law, a public auction conducted in the same manner as a non-judicial foreclosure sale would meet all constitutional standards of due process. A public auction of the Property would be the most expedient means to put the Property back into the stream of commerce, as well as into the housing stock of the community. Otherwise, the Property will continue to be a wasting asset that is subject to vandalism and deterioration.

### ALTERNATIVELY JUDICIAL FORECLOSURE

24. In the alternative, Plaintiff seeks judgment to enforce its security interest against the Property in an amount equal to the payoff at the time of judgment.

25. Pursuant to Tex. R. Civ. P. 309, Plaintiff seeks an order of sale to be issued to any sheriff or constable within the State of Texas.

### CONDITIONS PRECEDENT

26. All conditions precedent have been performed or have occurred.

### PRAYER

For these reasons, Plaintiff requests that Defendants be cited to appear and answer, and upon final hearing, the Court enters a judgment for the Plaintiff for:

a. An order directing the sale of the Property pursuant to Tex. R. Civ .P. 309 or foreclosure in accordance with Tex. R. Civ. P. 735 (1) or 735(2) and Tex. Prop. Code § 51.002. enforced by a judicial foreclosure sale or non-judicial foreclosure sale at public auction as of the date of the Deed of Trust of the Property described herein above.

b. An order declaring that Defendants have no personal liability for the loan agreement;

C&S 14-0070                                                7

c.    Such other and further relief, both general and equitable to which Plaintiff may be justly entitled.

Respectfully Submitted,

**CODILIS & STAWIARSKI, P.C.**

**JEFFREY B. HARDAWAY**
State Bar No. 24038254
Email: Jeff.Hardaway@tx.clsegal.com
**ROBERT L. NEGRIN**
State Bar No. 14865550
**MARY M. SPEIDEL**
State Bar No. 18908400
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
(281) 925-5256
(281) 925-5300 (Facsimile)

**ATTORNEYS FOR PLAINTIFF,
LNV CORPORATION,
ITS SUCCESSORS AND ASSIGNS**

C&S 14-0070                          8

Loan No:　▉▉▉▉▉
Borrower:　SAMUEL G. BRE▉▉▉3

**REDACTED**

Data ID: ▉▉▉
Borrower's
Initials:

THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION

THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION

# TEXAS HOME EQUITY ADJUSTABLE RATE NOTE
### (6 Month Libor Index—Rate Caps)
### (Cash Out—First Lien)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE
AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

October 20, 2000

Place of Execution: RICHARDSON　TEXAS
[City]　[State]

1704 CORNWALL LANE
SACHSE, TEXAS 75048
[Property Address]

**1.　BORROWER'S PROMISE TO PAY**

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for a loan that I have received, I promise to pay U.S. $ 129,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

**2.　INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 12.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

**3.　PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on December 1, 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 78954, PHOENIX, ARIZONA 85062, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,370.61. This amount may change.

**(C)　Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE (Cash Out - First Lien)

01/98
(Page 1 of 4 Pages)

# EXHIBIT "A"

 

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**

The interest rate I will pay may change on the first day of November, 2003, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 15.3750% or less than 12.3750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18.3750 % or less than 12.3750 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES AND FEES**

All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 6 shall supersede any inconsistent provision of this Note or the Security Instrument.

*(Page 2 of 4 Pages)*

Loan No: 



Data ID: ▮

**REDACTED**

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of TEN (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice by certified mail telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given in writing by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure by the Note Holder to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of this Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of the Borrower's promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 9 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

*(Page 3 of 4 Pages)*



Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12.    APPLICABLE LAW
This Note shall be governed by the laws of the State of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

13.    NO ORAL AGREEMENTS
THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.


WITNESS THE HAND(S) OF THE UNDERSIGNED.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.


_Samuel G. Breitling by JoAnn Breitling_____(Seal)
SAMUEL G. BREITLING by JO ANN
BREITLING, Attorney-in-Fact —Borrower

_JoAnn Breitling_____(Seal)
JO ANN BREITLING —Borrower

[Sign Original Only]


PAY TO THE ORDER OF
AAMES HOME LOAN
WITHOUT RECOURSE

AAMES FUNDING CORPORATION, A CALIFORNIA
CORPORATION, DBA AAMES HOME LOAN

By:_____

(Printed Name and Title)


(Page 4 of 4 Pages)

REDACTED

**ALLONGE TO NOTE**

LOAN NUMBER:

BORROWER NAME:     **SAMUEL G. BREITLING**

LOAN AMOUT:     **$129,600.00**

PAY TO THE ORDER OF:

LNV CORP

WITHOUT RECOURSE
**ELLINGTON MORTGAGE PARTNERS, L.P.**

BY: _____

NAME:     **KC WILSON**

TITLE:     **ATTORNEY-IN-FACT**

## ALLONGE TO NOTE

REDACTED

LOAN NUMBER: ███████

BORROWER NAME: **SAMUEL G. BREITLING**

LOAN AMOUT: $129,600.00

PAY TO THE ORDER OF: ELLINGTON MORTGAGE PARTNERS, L.P.

WITHOUT RECOURSE
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FKA
BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE**

BY: _____

NAME: CHRISTOPHER CORCORAN

TITLE: **VICE PRESIDENT**

REDACTED

BC: ▮

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Samuel G. Breitling by Jo Ann Breitling, Attorney-in Fact and Jo Ann Breitling, in the original principal amount of $129,600.00, dated October 20, 2000, and payable to Aames Funding Corporation, a California Corporation, dba Aames Home Loan, as amended or modified (the "Note").

Pay to the order of LNV Corporation, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

Ellington Mortgage Partners, LP

By: _KC Wilson_____
KC Wilson, Attorney-In-Fact

PAY TO THE ORDER OF
Aames Capital Corporation
A California Corporation
Without recourse
AAMES FUNDING CORPORATION
A California Corporation
dba Aames Home Loan

By:

**Amy Brackett**

**Assistant Secretary**

Pay to the order of

without recourse
Aames Capital Corporation
A California Corporation

By:

**Amy Brackett**

**Assistant Secretary**

Bankers Trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage
Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2.

REDACTED

BC:

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Samuel G. Breitling by Jo Ann Breitling, Attorney-in Fact and Jo Ann Breitling, in the original principal amount of $129,600.00, dated October 20, 2000, and payable to Aames Funding Corporation, a California Corporation, dba Aames Home Loan, as amended or modified (the "Note").

Pay to the order of Ellington Mortgage Partners, LP, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee Company FKA Bankers
Trust Company of California, N.A. as Trustee

By: _____

Christopher Corcoran, Vice President

FF:$29.00  /FNT/ANS/JN

After Recording Please Return To:
AAMES HOME LOAN
3347 MICHELSON DRIVE #300
IRVINE, CA 92612

1219742

12/06/00   2423687   $29.00
Deed of Trust

[Space Above This Line For Recording Data]

Loan No:
Borrower: SAMUEL G. BREITLING

Data ID:

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

REDACTED

# TEXAS HOME EQUITY SECURITY INSTRUMENT
### (Cash Out - First Lien)

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

THIS SECURITY INSTRUMENT is made on October 20, 2000. The grantor is SAMUEL G. BREITLING AND WIFE, JO ANN BREITLING

("Borrower").

The trustee is MICHAEL L. RIDDLE, whose address is 2323 BRYAN STREET, SUITE 1600, DALLAS, TX 75201

("Trustee").

The beneficiary is AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN , A CORPORATION,

which is organized and existing under the laws of the State of CALIFORNIA,
and whose address is 350 S. GRAND AVE. 42ND FLOOR      LOS ANGELES, CA 90071

("Lender").

Borrower owes Lender the principal sum of ONE HUNDRED TWENTY-NINE THOUSAND SIX HUNDRED and NO/100-----Dollars (U.S. $ 129,600.00). This debt is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (referred to herein as the "Extension of Credit") and is evidenced by Borrower's note dated the same date as this Security Instrument (the "Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in DALLAS County, Texas:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 1704 CORNWALL LANE,                              SACHSE,
                                           [Street]                            [City]
TEXAS          75048                                 ("Property Address").
                [Zip Code]

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044.1 01/98
(Page 1 of 8 Pages)

# EXHIBIT "B"

2000236 05425

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) hazard insurance premiums for the Property; (d) flood insurance premiums for the Property, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are not pledged as additional security for any sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied: first, to amounts payable under Paragraph 2; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph 4. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

2001236 05426

*(Page 2 of 8 Pages)*

Loan No: [REDACTED]                                                              **REDACTED**

Data ID: [REDACTED]

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments. If under Paragraphs 20 or 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default and may be held personally liable for debt evidenced by the Note or this Security Instrument if Borrower gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender, so far as allowed by applicable law, may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so. No powers are granted by Borrower to the Lender or Trustee that would violate provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other applicable law.

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, shall be paid to Lender to be applied to the sums secured by this Security Instrument.

In the event of a total or partial taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments.

2001236 05427                                          *(Page 3 of 8 Pages)*

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the original Borrower or Borrower's successors in interest from Borrower's obligations under the Note and this Security Instrument. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraphs 16 and 23. Borrower's covenants and agreements shall be joint and several subject to the provisions of Paragraph 23. Any Borrower who co-signs this Security Instrument, but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien, by the spouse of each owner of the Property; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Lender's Right-to-Comply.** It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this paragraph 12, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, as provided in this Paragraph 12, with any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Paragraph 13, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by the Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Paragraph 12, and such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, loan charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees is finally interpreted so that the interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limits, or a determination is made at any time by Lender that interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees, to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal Borrower owes under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment. **Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.**

It is the express intention of the Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Paragraph 12 shall survive the payoff of the Extension of Credit. The provision of this Paragraph 12 shall supersede any inconsistent provision of the Note or this Security Instrument.

*(Page 4 of 8 Pages)*

REDACTED

Loan No: █████                                                                   Data ID: █

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given in writing by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given in writing by first class mail (but, by certified mail if the notice is given pursuant to Paragraph 12 hereof) to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 13.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of Texas. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by the Borrower related to the Extension of Credit.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) five days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to the power of sale contained in this Security Instrument after entry of a court order permitting exercise of such power of sale; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Paragraph 16.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**19. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 19, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

(Page 5 of 8 Pages)

20. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any remedies permitted by applicable law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for the Borrower in a judicial proceeding.

21. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, the Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Paragraph 21 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall provide a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recording costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.

23. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

2004 236 05430

(Page 6 of 8 Pages)

REDACTED

Loan No: ▮▮▮▮                                                                    Data ID: ▮

If this Extension of Credit is obtained by such actual fraud, then, subject to Paragraph 11, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Paragraph 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**24. Proceeds.** The Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

**25. No Assignment of Wages.** The Borrower has not assigned wages as security for the Extension of Credit.

**26. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**27. Rider(s) to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the riders were a part of this Security Instrument. [Check as applicable]

[X] Texas Home Equity Adjustable Rate Rider      [ ] Texas Home Equity Condominium Rider

[ ] Texas Home Equity Planned Unit Development Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.**

> **YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.**

_Samuel G. Breitling by Jo Ann Breitling_ .............................(Seal)
SAMUEL G. BREITLING by JO ANN BREITLING,
Attorney-in-Fact —Borrower

_Jo Ann Breitling_ .............................(Seal)
JO ANN BREITLING —Borrower

200￪236  05431

*(Page 7 of 8 Pages)*

[Space Below This Line For Acknowledgment(s)]

State of TEXAS
County of    Dallas

This instrument was acknowledged before me on the ___20th___ day of ___October___, 2000, by
Samuel G. Breitling by his Agent and Attorney-in-Fact, Jo Ann Breitling and
Jo Ann Breitling, by and through Drivers License.

ANDREW N. SIEBERT
My Commission Expires
OCTOBER 23, 2001

_____
Notary Public

[Personalized Seal]
My commission expires:_____

_____
(Printed Name)

200۳236 05432

*(Page 8 of 8 Pages)*

**REDACTED**

Loan No: ▮▮▮▮▮
Borrower: SAMUEL G. BREITLING

Data ID: ▮▮▮

**THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY
# ADJUSTABLE RATE RIDER
### (6 Month Libor Index—Rate Caps)
### (Cash Out—First Lien)

THIS ADJUSTABLE RATE RIDER is made this 20th day of October, 2000, and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1704 CORNWALL LANE
SACHSE, TEXAS  75048
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 12.375 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The adjustable interest rate I will pay may change on the first day of November, 2003, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

TEXAS HOME EQUITY ADJUSTABLE RATE RIDER (Cash Out - First Lien)                01/98
(Page 1 of 2 Pages)

200 236 05433

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

   (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 15.3750% or less than 12.3750%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18.3750 % or less than 12.3750 %.

   (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Texas Home Equity Adjustable Rate Rider.

   DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

_____(Seal)
SAMUEL G. BREITLING by JO ANN
BREITLING, Attorney-in-Fact —Borrower

_____(Seal)
JO ANN BREITLING —Borrower

*(Page 2 of 2 Pages)*

2001236 05434

REDACTED

Loan No: ███████
Borrower: SAMUEL G. BREITLING

Data ID: ██████

## LEGAL DESCRIPTION

Paste legal description here then photocopy.  Attach to the Security Instrument and file
as one instrument.

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an
Addition to the City of Sachse, Dallas County, Texas according to the Map
thereof recorded in Volume 74211, Page 688 of the Map Records of Dallas
County, Texas.

2000236 05435

**FILED**

2000 DEC -6 AM 11: 57

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

2001236 054136



COUNTY OF DALLAS
STATE OF TEXAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by me.

DEC  6  2000

COUNTY CLERK, Dallas County, Texas

OCT-24-2000  11:00      AAMES HOME LOAN                    9725543782    P.06/09

Recording requested by and Return To:
AAMES HOME LOAN
3347 MICHELSON DRIVE #300
IRVINE, CA 92612

**REDACTED**

Data ID:
Loan No:      05-2
Borrower: SAMUEL G. BREITLING

1520052

09/06/01   2833006    $11.00
Deed

## ASSIGNMENT OF
## SECURITY INSTRUMENT

Date:   OCTOBER 20, 2000

Owner and Holder of Security Instrument ("Holder"):
AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN, A
Corporation which is organized and existing under the laws of the State of CALIFORNIA

Assignee:
AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION
350 S. GRAND AVE. 42ND FLOOR
LOS ANGELES, CA 90071

Security Instrument is described as follows:
Date:                OCTOBER 20, 2000
Original Amount:     $129,600.00
Borrower:            SAMUEL G. BREITLING AND WIFE, JO ANN BREITLING
Lender:              AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES
                     HOME LOAN
Trustee:             MICHAEL L. RIDDLE
Deed of Trust Recorded or Filed on    12-06-00
As Instrument/Document No.    1219743
In Book   236    Page   05437
Of Official Records in the County Recorder's or Clerk's Office DALLAS County, TEXAS.

Property (including any improvements) Subject to Lien:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

For value received, Holder sells, transfers, assigns, grants and conveys the Security Instrument and the Note described therein, all
of the Holder's right, title and interest in the Security Instrument and Note, and all of the Holder's title and interest in the Property
to Assignee and Assignee's successors and assigns, forever.

When the context requires, singular means and pronouns include the plural.

IN WITNESS WHEREOF, Holder has caused these presents to be signed by its duly authorized officer(s), if applicable, and to be
attested and sealed with the Seal of the Corporation, as many be required.

Seal)

K. BRANSOM
Commission # 1211863
Notary Public - California
Orange County
My Comm. Expires Feb 27, 2003

AAMES FUNDING CORPORATION, A CALIFORNIA
CORPORATION, DBA AAMES HOME LOAN

By: _____
Amy Brackett     (Printed Name and Title)
                 Assistant Secretary

State of CALIFORNIA
County of ORANGE

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
Amy Brackett, Assistant Secretary Known to me to be the same person and officer
whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said AAMES
FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN, A Corporation which is
organized and existing under the laws of the State of CALIFORNIA, and that (s)he executed the same as the act of such entity for
the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____ 20____.
                                                              OCT 2 6 2000

My commission expires: _____

_____
Notary Public in and for CALIFORNIA

# K. Bransom

# EXHIBIT "C"

2001174 01317

OCT-24-2000  11:01     AMES HOME LOAN          9725543782   P.07/09

# Attachment A

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211, Page 868 of the Map Records of Dallas County, Texas.

2001 174 01318

FILED

2001 SEP -5 PH 12:29

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

2001 174 01319



SEP 6 2001

*Earl Bullock*

COUNTY CLERK, Dallas County, Texas

OCT-24-2000  11:01        AAMES HOME LOAN                              9725543782  P.08/09

Date ID:
Loan No.:
Borrower:  SAMUEL G. BREITLING

**REDACTED**

## ASSIGNMENT OF
## SECURITY INSTRUMENT

**1520053**

09/06/01   2833009    $11.00
Deed

Date:  OCTOBER 20, 2000

Owner and Holder of Security Instrument ("Holder"):
AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION

Assignee (including Mailing Address):

Bankers Trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage
Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2, C/O Countrywide Home Loans
SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065

Security Instrument is described as follows:
Date:            OCTOBER 20, 2000
Original Amount:  $129,600.00
Borrower:        SAMUEL L. BREITLING AND WIFE, JO ANN BREITLING
Lender:          AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES
                 HOME LOAN
Trustee:         MICHAEL L. RIDDLE
Deed of Trust Recorded in the Official Records in the County Recorder's or Clerk's Office of DALLAS County, TEXAS,

Property (including any improvements) Subject to Lien:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

For value received, Holder sells, transfers, assigns, grants and conveys the Security Instrument and the Note described therein, all
of the Holder's right, title and interest in the Security Instrument and Note, and all of the Holder's title and interest in the Property
to Assignee and Assignee's successors and assigns, forever. *Recorded 12-06-00*

When the context requires, singular nouns and pronouns include the plural. *Inst. 1217743*
*Book 236 Page 05437*

IN WITNESS WHEREOF, Holder has caused these presents to be signed by its duly authorized officer(s), if applicable, and to be
attested and sealed with the Seal of the Corporation, as may be required.

(Seal)

K. BRANSOM
Commission # 1211863
Notary Public - California
Orange County
My Comm. Expires Feb 27, 2003

AAMES CAPITAL CORPORATION, A CALIFORNIA
CORPORATION

By:
                                (Printed Name and Title)
**Amy Brackett**

**Assistant Secretary**

State of  CALIFORNIA
County of ORANGE

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
*Amy Brackett, Assistant Secretary*  Known to me to be the same person and officer
whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said AAMES
CAPITAL CORPORATION, A CALIFORNIA CORPORATION, and that (s)he executed the same as the act of such entity for the
purposes and consideration therein expressed, and in the capacity therein stated.  OCT 2 6 2000

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 20____.

My commission expires: _____

                                Notary Public in and for CALIFORNIA

# K. Bransom

## EXHIBIT "D"

2001 174 01320

OCT-24-2000  11:01        RAMES HOME LOAN                9725543782    P.09/09

# Attachment A

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211, Page 668 of the Map Records of Dallas County, Texas.

TOTAL P.09

2001174 01321



Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.
STATE OF TEXAS COUNTY OF DALLAS
I hereby certify this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Dallas County, Texas as stamped hereon by me.

SEP 6 2001

COUNTY CLERK, Dallas County, Texas

FILED

2001 SEP -5 PM 12:29

[illegible]ULLOCK
COUNTY CLERK
DALLAS COUNTY

2001174 01322

Comptroller of the Currency
Administrator of National Banks

Attn:  Licensing Unit
50 Fremont Street, Suite 3900
San Francisco, CA 94105
(415) 545-5930, FAX (415) 442-5315

April 4, 2002

Sandra L. West
Assistant Secretary
C/o Deutsche Bank
31 West 52ⁿᵈ Street-M/S NYC09-0810
New York, NY 10019

Re:     **Title Change**
        **Bankers Trust Company of California, N.A.**
        **Los Angeles, California**
        **Charter No. 18608**

Dear Ms. West:

The Office of the Comptroller of the Currency (OCC) has received your letter concerning the title change, appropriate amendment to the First Article of Association of Bankers Trust Company of California, National Association. The OCC will update their records to reflect that as of *April 15, 2002,* the title of Bankers Trust Company of California, National Association, Charter Number 18608 *will change to Deutsche Bank National Trust Company.*

The original of the bank's respective Article has been forwarded to the bank's official file with our Office and an original is hereby returned for your records.

As a result of the Garn-St Germain Depository Institutions Act of 1982, the OCC is no longer responsible for the approval of national bank name changes nor does it maintain official records on the use of alternate titles. The use of other titles or the retention of the rights to any previously used title is the responsibility of the bank's board of directors. Legal counsel should be consulted to determine whether or not the new title, or any previously used title, could be challenged by competing institutions under the provisions of federal or state law.

Very truly yours,

James A. Bundy
Licensing Manager

Enclosure

**EXHIBIT "E"**

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                                    PAGE 141
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

## BANKERS TRUST COMPANY OF CALIFORNIA,
## NATIONAL ASSOCIATION

I, DAVID ABRAMSON, certify that:

1.     I am the duly elected and acting Secretary of Bankers Trust Company of California, National Association (formerly, BT Trust Company of California), and as such officer, I am the official custodian of its records; that the following is a true and correct copy of resolutions adopted by the Association's shareholders; and that such resolutions are now lawfully in force and effect:

RESOLVED, that the Association is hereby authorized to amend the First Article of Association to read as follows:

FIRST:    The title of this Association shall be "Deutsche Bank National Trust Company."

FURTHER RESOLVED, that the effective date of the amendment of the First Article of Association shall be April 15, 2002.

2.     The following is a true and correct copy of a resolution of the Association's Board of Directors, and such resolution is now lawfully in force and effect:

RESOLVED, that the amendment of the First Article of Association to change the title of the Association to "Deutsche Bank National Trust Company" is hereby approved, effective April 15, 2002.

3.     The foregoing amendment to the Articles of Association has been duly approved by the Board of Directors of Bankers Trust Company of California, National Association on March 21, 2002.

4.     The Resolution and Amendment set forth above has not been modified or rescinded and is in full force and effect.

IN WITNESS WHEREOF, I have set my hand and the seal of this Association this 27th day of March 2002.

David Abramson
David Abramson
Secretary

(S E A L)

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                              PAGE 142
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

State of New York )
                 ) ss.:
County of New York )

On the 27th day of March in the year 2002 before me, the undersigned, a Notary Public in and for said state, personally appeared David Abramson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Sandra L. West_
Notary Public

SANDRA L. WEST
Notary Public, State Of New York
No.01WE4942401
Qualified In New York County
Commission Expires September 16, 20 __

**Office of the Comptroller of the Currency**

Accepted by: _James A. Bundy_
                   James A. Bundy, Licensing Manager

Date: _4/4/02_



QC
7780717

OFFICE OF COUNTY RECORDER
HENNEPIN COUNTY, MINNESOTA

CERTIFIED FILED AND OR
RECORDED ON

2002 JUL 30  PM 2: 12

AS DOCUMENT 7780717

CO. REC.

BY                    DEPUTY

Comptroller of the Currency
Administrator of National Banks

Washington, DC  20219

## CERTIFICATE

I, John D. Hawke, Jr., Comptroller of the Currency, do hereby certify that:

1. The Comptroller of the Currency, pursuant to Revised Statutes 324, et seq., as amended, 12 U.S.C. 1, et seq., as amended, has possession, custody and control of all records pertaining to the chartering, regulation and supervision of all National Banking Associations.

2. Effective April 15, 2002, the title of "Bankers Trust Company of California, National Association," Los Angeles, California, (Charter No. 18608), was changed to "Deutsche Bank National Trust Company," Los Angeles, California, (Charter No. 18608)..

IN TESTIMONY WHEREOF, I have

hereunto subscribed my name and

caused my seal of office to be affixed

to these presents at the Treasury

Department, in the City of

Washington and District of Columbia,

this 17th day of May, 2002.



John D. Hawke Jr.

Comptroller of the Currency

APR 09 2003 12:37                    PAGE.05

Office of the Secretary

Sandra L. West
Assistant Secretary

OCC

MAR 2 9 2002

Western District

**Deutsche Bank** 

Bankers Trust Corporation
31 West 52nd Street - NYC09-0810
New York, NY 10019

Tel 212 469-8174
Fax 646 324-9056

sandra.l.west@db.com

March 28, 2002

Mr. James A. Bundy, Licensing Manager
Office of the Comptroller of the Currency
Western District Office
50 Fremont Street
Suite 3900
San Francisco, CA 94105-2292

2002-WE-02-0007

Dear Mr. Bundy:

Re:   Bankers Trust Company of California, National Association (Charter No. 18608)
        Title Change and Amendment of First Article of Association

Please be advised that the Board of Directors and sole shareholder of Bankers Trust Company
of California, National Association, have authorized a change of title for the Association,
effective on April 15, 2002, as follows:

     From:  Bankers Trust Company of California, National Association

     To:    Deutsche Bank National Trust Company

Pursuant to 12 U.S.C. 21a, we are hereby requesting approval of the Office of the Comptroller
of the Currency to amend the Articles of Association to reflect the name change and enclose
two certified copies of the proposed amendment.

The Association, whose principal office is located at 300 South Grand Avenue, Los Angeles, CA
90071, was originally chartered in October 1985 under the name of BT Trust Company of
California, National Association.

From its inception through June 4, 1999, the Association was an indirect wholly-owned
subsidiary of Bankers Trust New York Corporation (now, Bankers Trust Corporation) ("Bankers
Trust"). In June 1999, Bankers Trust, including its subsidiaries, was acquired by a subsidiary
Deutsche Bank AG, a bank organized and existing under the laws of the Federal Republic of
Germany. Deutsche Bank was recently listed on the New York Stock Exchange ("NYSE") and
its activities are reported daily in the U.S. media.

Since its acquisition of Bankers Trust and subsequent listing on the New York Stock Exchange,
awareness of the Deutsche Bank brand has increased significantly. Management now deems it

Mr. James A. Bundy
March 28, 2002
Page 2

in the best interests of the firm at this time to consolidate all of the U.S.-based businesses under the global Deutsche Bank brand.

Thank you for your consideration in this matter.

Please direct any questions or problems regarding this application to the undersigned, as follows:

> c/o Deutsche Bank
> 31 West 52nd Street – M/S NYC09-0810
> New York, NY 10019
> Phone: (212) 469-8174
> Fax: (646) 324-9056

Sincerely yours,

BANKERS TRUST CORPORATION

By: _____
Sandra L. West
Assistant Secretary

enclosures

cc:   Joseph Marcy, OCC Lead Trust Examiner

Foy B. Hester, Vice President and Controller
Bankers Trust Company of California, N.A.

David Abramson, Secretary and Counsel
Bankers Trust Company of California, N.A.



**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA 92705-4934
Tel 714 247 6000
Fax 714 247 6009

### Change of Bankers Trust Company names

We are pleased to announce that effective April 15, 2002, we will be renaming our Bankers Trust legal entities to reflect the name of our parent company, Deutsche Bank. This action consolidates our global presence and builds on Deutsche Bank's listing on the New York Stock Exchange in October 2001.

This initiative will change only the names of our entities and will not affect the legality of any contracts or other documents signed in the name of Bankers Trust companies.

As of April 15, 2002 the legal entities we operate under will be renamed as follows:

| Old company name | New company name |
|---|---|
| Bankers Trust Company | Deutsche Bank Trust Company Americas |
| Bankers Trust (Delaware) | Deutsche Bank Trust Company Delaware |
| Bankers Trust Company of California, N.A. | Deutsche Bank National Trust Company |
| BT Services Tennessee, Inc | DB Services Tennessee, Inc. |
| Bankers Trustee Company Limited | Deutsche Trustee Company Limited |

Over the next few months you will find that all our communications (letters, invoices, etc) will begin to use the new Deutsche Bank names.

Although we believe that the name changes will have minimal impact on our clients, please note the following points concerning US secured financings and US$ payments.

### Secured Financings

US clients with secured financings will need to use the new Deutsche Bank company names for all UCC filings made on or after April 15, 2002.

### US$ Payments

Our **name** at the Federal Reserve Bank, New York Clearing House (CHIPS) and SWIFT **will not change** on April 15, 2002. We anticipate changing these **names** towards the end of the third quarter 2002. However, the actual bank identifiers **will not** change (Fed ABA number, CHIPS Participant number, or SWIFT ID number). We will send you further details closer to the implementation date. Until then (end of third quarter 2002), all payments should continue to be made using the existing names and numbers as shown on our payment instructions.

If you normally pay us by check, please use the new company names with effect from April 15, 2002. Although checks made out to the old company names will continue to be honored for some time after this date, we would be grateful if you would make the change immediately on April 15 to avoid any confusion.

If you have any questions about these name changes, please call your usual contact in Corporate Trust & Agency Services or (714) 247-6000.



1761 East St. Andrew Place
Santa Ana, CA  92705-4934

Tel  714 247 6000
Fax 714 247 6009

**Attention Clients Preparing Documents for Signature:**

The names representing our two business names will be changed as listed below:

| **Old Company Name** | **New Company Name** |
| --- | --- |
| Bankers Trust Company of California, N.A. | Deutsche Bank National Trust Company |
| Bankers Trust Company | Deutsche Bank Trust Company Americas |

New transactions that are closed directly under the Deutsche Bank names on or after April 15th will not need the following "formerly known as Bankers Trust" language.

For any deals closed under the previous names, please prepare the signature block to read as follows. If necessary, we can provide you with copies of the official regulatory filings regarding our name change.

**For Trust deals please use one of the following:**

Deutsche Bank National Trust Company as Trustee
formerly known as Bankers Trust Company of California, N.A. as Trustee
or
Deutsche Bank Trust Company Americas as Trustee
formerly known as Bankers Trust Company as Trustee
or
Deutsche Bank National Trust Company as Trustee
formerly known as Bankers Trust Company of California, N.A. as Trustee
Successor Trustee by Operation of Law to Bank of America NT & SA,
Successor by Merger to Security Pacific National Bank as Trustee

If you have any questions about these name changes, please call your usual contact in Corporate Trust & Agency Services or (714) 247-6000.

RL 20080173631

3 PGS

**REDACTED**

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
**BC:** ████

| | |
|---|---|
| **Assignor:** | Deutsche Bank National Trust Company, As Trustee |
| | FKA Bankers Trust Company of California, N.A. As Trustee |
| | 1761 East St. Andrew Place, Santa Ana, California 92705 |

| | |
|---|---|
| **Assignee:** | Ellington Mortgage Partner, L.P. |
| | 53 Forest Avenue, Suite 301, Greenwich, CT 00687 |

**Property Address : 8908 Forest creek Drive, Tomball, Texas 77375**

<u>Subsequent Recording:</u>

See page 2 for Mortgage recording information

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on March 5, 2001, Instrument No U908898, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on August 24, 2001, Instrument No V260630, here in.

# EXHIBIT "F"

•

REDACTED

After Recording Mail to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas 75024
*Bc :* ▮▮▮▮

**ASSIGNMENT OF DEED OF TRUST**

FOR VALUE RECEIVED:
ASSIGNOR:                    DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
                             FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE

ASSIGNOR ADDRESS:           1761 EAST ST. ANDREW PLACE
                            SANTA ANA, CA 92705

DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:
ASSIGNEE:                    ELLINGTON MORTGAGE PARTNERS, L.P

ASSIGNEE'S ADDRESS:         53 FOREST AVE. STE. 301
                            GREENWICH, CT 0687

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:     *wife)*

DATED:                       10/20/2000
ORIGINAL LOAN AMOUNT:        $129,600.00
TRUSTOR/BORROWER:            SAMUEL G,BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:        AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                             CALIFORNIA CORPORATION
TRUSTEE:                     MICHAEL L. RIDDLE

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:    1704 CORNWALL LANE
                             SACHSE, TEXAS 75048
*See Attached Exhibit "A" for Legal Description*
TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.

                             DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE


                             BY:
                             NAME: CHRISTOPHER CORCORAN
                             TITLE: VICE PRESIDENT

STATE OF *CA*
COUNTY OF *ORANGE* ) SS:

ON _____ *3-31* _____, 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED (*CHRISTOPHER CORCORAN - VP* , PERSONALLY KNOWN TO ME
(OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED
PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE DEUTSCHE BANK AND
ACKNOWLEDGED TO ME THAT SUCH _____ *VP* _____ EXECUTED THE WITHIN INSTRUMENT
PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.


NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:

                                                    JEANNE STAFFORD
                                                    Commission # 1729363
                                                    Notary Public - California
                                                    Orange County
                                                    My Comm. Expires Mar 5, 2011

_____
                    **DO NOT GO BELOW THIS LINE**

                                                                    *2.14*

TEXAS 11/99

EXHIBIT "A"

# REDACTED

BC: █████

Legal Description:

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211, Page 688 of the Map Records of Dallas County, Texas.

Prepared By & After Recording Mail to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas  75024



FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County  TEXAS
May 27, 2008  09:50:55 AM
FEE: $24.00          20080173631

**REDACTED**

This Document Prepared By and
After Recording Please Mail To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

 AL — 20080320073
5 PGS

BC # █████

# RE-RECORD ASSIGNMENT OF DEED OF TRUST TO INCLUDE TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT RECORDING INFORMATION

### (Recorded 12/06/00, Book 2000236. Page 05437, Instrument No. 1219743)

**APN No:**    n/a

**Grantor:**    **ELLINGTON MORTGAGE PARTNERS, L.P.**
          **53 Forest Avenue, Suite 301, Greenwich, CT 06870**

**Grantee:**    **LNV Corporation**
          **7195 Dallas Parkway, Plano, Texas  75024**

**Property Address:**    1704 Cornwall Lane, Sachse, Texas 75048

AL  20080175052

3 PGS

**REDACTED**

## ASSIGNMENT OF DEED OF TRUST

After recording, please mail to:
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
BC:

Assignor:       Ellington Mortgage Partner, L.P.
                53 Forest Avenue, Suite 301, Greenwich, CT 00687

Assignee:       LNV Corporation
                7195 Dallas Parkway, Plano, Texas 75024

Property Address : 1704 Cornwall Lane, Sachse, Texas 75048

Subsequent Recording:

See page 2 for Mortgage recording information

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on September 6, 2001, Instrument No 1520052, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on September 6, 2001, Instrument No 1520053, here in.

Assigned to Deutsche Bank National Trustee Company f/k/a Bankers Trust Company of California, 1761 E. St. Andrews Place, Santa Ana, CA 92705 on_____, Book _____ Page _____, Instrument No_____, here in.

REDACTED

After Recording Mail to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas 75024
BC:

**ASSIGNMENT OF DEED OF TRUST**

**FOR VALUE RECEIVED:**
ASSIGNOR:                     ELLINGTON MORTGAGE PARTNERS, L.P

ASSIGNOR ADDRESS:        53 FOREST AVE. STE. 301
                         GREENWICH, CT 06870

**DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:**
ASSIGNEE:
                         LNV Corporation
                         7195 Dallas Parkway
                         Plano, Texas 75024
ASSIGNEE'S ADDRESS:

**ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:**

DATED:                       10/20/2000
ORIGINAL LOAN AMOUNT:        $129,600.00
TRUSTOR/BORROWER:            SAMUEL G BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:        AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                             CALIFORNIA CORPORATION
TRUSTEE:                     MICHAEL L. RIDDLE

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:    1704 CORNWALL LANE
                             SACHSE, TEXAS 75048
See Attached Exhibit "A" for legal Description
**TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.**

                             **ELLINGTON MORTGAGE PARTNERS, L.P**

                             BY:
                             NAME: KC WILSON
                             TITLE: ATTORNEY-IN-FACT

STATE OF **CA**           ) SS:
COUNTY OF **ORANGE**

ON **3-21**           , 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED KC WILSON ATTORNEY-IN-FACT PERSONALLY KNOWN TO ME ~~(OR
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE)~~ TO BE THE DULY AUTHORIZED PERSON
WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE LP AND ACKNOWLEDGED TO ME THAT
SUCH ATTORNEY-IN-FACT EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A
RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:            3/5/11

JEANNE STAFFORD
Commission # 1729363
Notary Public - California
Orange County
My Comm. Expires Mar 5, 2011

**DO NOT GO BELOW THIS LINE**

TEXAS 11/99

EXHIBIT "A"                                    **REDACTED**

<u>BC:</u> ▮▮▮▮

<u>Legal Description:</u>

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the
City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211,
Page 688 of the Map Records of Dallas County, Texas.

<u>Prepared By & After Recording Mail to</u>:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024



FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County  TEXAS
May 27, 2008  09:50:55 AM
FEE: $24.00

20080173632

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County  TEXAS
October 02, 2008  04:00:52 PM
FEE: $32.00                    20080320073

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070

**7190 1089 5230 3514 2569**

Samuel Breitling
1704 Cornwall Ln
Sachse, TX 75048

# EXHIBIT "H"

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS  77060
## (281) 925-5200

March 14, 2014

*via Certified Mail*

Samuel Breitling
1704 Cornwall Ln
Sachse, TX 75048

**REDACTED**

RE:    **Case No. 44-14-0070**
        **Dovenmuehle Mortgage Inc.   Loan No.** ▮▮▮▮▮
        **Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.**
        **Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,**
        **Trustee.**

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.   Payment must be made with certified funds or other form of payment acceptable to the Servicer. For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2576**

Samuel Breitling
5250 Hwy 78 750112
Sachse, TX 75048

## CODILIS & STAWIARSKI, P.C.
### 650 N. SAM HOUSTON PARKWAY., SUITE 450
### HOUSTON, TEXAS  77060
### (281) 925-5200

March 14, 2014                                    *via Certified Mail*

Samuel Breitling
5250 Hwy 78 750112
Sachse, TX 75048

RE:     Case No. 44-14-0070
        Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
        Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
        Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  Payment must be made with certified funds or other form of payment acceptable to the Servicer. For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**

44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



7190 1089 5230 3514 2583

Jo Breitling
1704 Cornwall Ln
Sachse, TX 75048

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS  77060
## (281) 925-5200

March 14, 2014                                                        *via Certified Mail*

Jo Breitling
1704 Cornwall Ln
Sachse, TX 75048                                                      **REDACTED**

RE:   Case No. 44-14-0070
      Dovenmuehle Mortgage Inc.   Loan No. ████████
      Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
      Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
      Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  Payment must be made with certified funds or other form of payment acceptable to the Servicer.  For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee. Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047. The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**
44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current.   If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2590**


Jo Breitling
5250 Hwy 78 750112
Sachse, TX 75048

## CODILIS & STAWIARSKI, P.C.
### 650 N. SAM HOUSTON PARKWAY., SUITE 450
### HOUSTON, TEXAS  77060
### (281) 925-5200

March 14, 2014                                               *via Certified Mail*

Jo Breitling
5250 Hwy 78 750112
Sachse, TX 75048                                          **REDACTED**

RE:   Case No. 44-14-0070
      Dovenmuehle Mortgage Inc.  Loan No. ████████
      Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
      Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
      Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  Payment must be made with certified funds or other form of payment acceptable to the Servicer. For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**
44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2569**

Samuel Breitling
1704 Cornwall Ln
Sachse, TX 75048

# EXHIBIT "H"

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS 77060
## (281) 925-5200

March 14, 2014                                                    *via Certified Mail*

Samuel Breitling
1704 Cornwall Ln
Sachse, TX 75048                                                 **REDACTED**

RE:    Case No. 44-14-0070
       Dovenmuehle Mortgage Inc.  Loan No.███████
       Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
       Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
       Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>Assert and protect your rights as a member of the armed forces of the United States.  If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.  Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  Payment must be made with certified funds or other form of payment acceptable to the Servicer.  For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust.  Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current.  If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070

**7190 1089 5230 3514 2576**

Samuel Breitling
5250 Hwy 78 750112
Sachse, TX 75048

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS  77060
## (281) 925-5200

March 14, 2014                                            *via Certified Mail*

Samuel Breitling
5250 Hwy 78 750112
Sachse, TX 75048

RE:   Case No. 44-14-0070
      Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
      Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
      Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT
TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.\*\***

**Assert and protect your rights as a member of the armed forces of the United States. If you are or
your spouse is serving on active military duty, including active military duty as a member of the
Texas National Guard or the National Guard of another state or as a member of a reserve
component of the armed forces of the United States, please send written notice of the active duty
military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650
North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who
is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other
charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you
pay the amount shown above, an adjustment may be necessary after we receive your check, in which
event we will inform you before depositing the check for collection.  Payment must be made with
certified funds or other form of payment acceptable to the Servicer. For further information, write us or
call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for
LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is
representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL
60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing
agreement with the mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec.
51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting
foreclosure of the property secured by the above referenced loan.**

44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2583**

Jo Breitling
1704 Cornwall Ln
Sachse, TX 75048

**CODILIS & STAWIARSKI, P.C.**
**650 N. SAM HOUSTON PARKWAY., SUITE 450**
**HOUSTON, TEXAS  77060**
**(281) 925-5200**

March 14, 2014                                                          *via Certified Mail*

Jo Breitling
1704 Cornwall Ln
Sachse, TX 75048                                                      **REDACTED**

RE:   Case No. 44-14-0070
      Dovenmuehle Mortgage Inc.  Loan No. ███████
      Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
      Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
      Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  Payment must be made with certified funds or other form of payment acceptable to the Servicer.  For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**
44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2590**


Jo Breitling
5250 Hwy 78 750112
Sachse, TX 75048

<div align="center">

**CODILIS & STAWIARSKI, P.C.**
**650 N. SAM HOUSTON PARKWAY., SUITE 450**
**HOUSTON, TEXAS  77060**
**(281) 925-5200**

</div>

March 14, 2014                                           *via Certified Mail*

Jo Breitling
5250 Hwy 78 750112                                       **REDACTED**
Sachse, TX 75048

RE:   Case No. 44-14-0070
      Dovenmuehle Mortgage Inc.  Loan No. █████████
      Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.
      Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,
      Trustee.

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  Payment must be made with certified funds or other form of payment acceptable to the Servicer.  For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**
44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust.  Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current.  If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070



**REDACTED**

DETR          21.00
TOTL     **21.00**
A001    9989 0000000 2022  8:36AM  3/27/96

When Recorded, Mail To:
WEYERHAEUSER MORTGAGE COMPANY
KARIM LAKHANI
2900 WILCREST DRIVE, SUITE 375
HOUSTON, TX 77042

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on    MARCH 20, 1996        . The grantor is
SAMUEL G. BREITLING AND WIFE, JOANN BREITLING

("Borrower"). The trustee is JO E. SHAW
                                                                                              , whose address is
1717 ST. JAMES PLACE                                      , HOUSTON           , TX 77056
("Trustee"). The beneficiary is WEYERHAEUSER MORTGAGE COMPANY

which is organized and existing under the laws of        CALIFORNIA                   , and whose
address is   P.O. BOX 54089, LOS ANGELES, CA  90054
                                                                 ("Lender"). Borrower owes Lender the principal sum of
EIGHTY FIVE THOUSAND SIX HUNDRED AND NO/100
                                                                          Dollars (U.S. $    85,600.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on     APRIL 1, 2026               .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of
sale, the following described property located in          DALLAS                              County, Texas:
BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN
ADDITION TO THE CITY OF SACHSE, TEXAS, ACCORDING TO THE MAP RECORDED
IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

which has the address of 1704 CORNWALL LANE, SACHSE                                            [Street, City],
Texas         75048                      [Zip Code]     ("Property Address");
TEXAS-Single Family-FNMA/FHLMC UNIFORM
              INSTRUMENT Form 3044 9/90
              Amended 5/91            **EXHIBIT "I"**
VMP -6R(TX) (9212).02
       VMP MORTGAGE FORMS · (800)521-729        MFTX3111 - 01/96
Page 1 of 6

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

MPTX3111-01/96
-6R(TX) (9212).02

Page 2 of 6

96061 00819

Form 3044 9/90

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

MFTX3111-01/96
-6R(TX) (9212).02                                    Page 3 of 8

96061   00820

Form 3044 9/90

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

    **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

    **10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

    In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

    Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

    **14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

MFTX3111-01/96
⑩ᴍᴘ -6R(TX) (9212).02

*Page 4 of 6*



Form 304... 9/90

96061  00821

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

MFTX3111-01/96
-6R(TX) (02121.02                                    Page 5 of 6                                    Form 3044 9/90
                                                                                                        45

96061  00822



**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**25. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**26. Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) [specify] | |

**28. Purchase Money; Vendor's Lien; Renewal and Extension. [Complete as appropriate]**
   The Note secured hereby is in renewal and extension, but not in extinguishment, of the certain indebtedness described as follows: See the Renewal and Extension Rider attached hereto and made a part hereof for all purposes.
   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____     ~~Samuel G. Breitling~~ (signature) _____(Seal)
                                     SAMUEL G. BREITLING              -Borrower

_____     ~~Jo Ann Breitling~~ (signature) _____(Seal)
                                     JOANN BREITLING                  -Borrower

_____(Seal)       _____(Seal)
              -Borrower                            -Borrower

**STATE OF TEXAS,**     DALLAS                **County ss:**

   BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
SAMUEL G. BREITLING AND JOANN BREITLING
                                                                      , known to me
to be the person(s) whose name(s)   are   subscribed to the foregoing instrument, and acknowledged to me
that       t h e y       executed the same for the purposes and consideration therein expressed.
   GIVEN UNDER MY HAND AND SEAL OF OFFICE, this    30th    day of    MARCH    , 1996

                                        _K. Cloud_ (signature) _____
                                        Notary Public

                                                                      REDACTED

MFTX3111-01/96                                                        Form 3044  9/90
-6R(TX) (9212).02              Page 6 of 6

K. L. CLOUD
Notary Public
State of Texas
Commission Expires 8-14-97

96061  00823

RENEWAL AND EXTENSION RIDER EXHIBIT "A"

Deed of Trust dated January 12, 1979, filed January 15, 1979, recorded in Volume 79011, Page 2288, of the Deed of Trust Records of Dallas County, Texas, executed by Grady Fletcher Snow and wife, Florene Snow, to Howard A. Hecht, Trustee, securing the payment of one note in the principal sum of $60,600.00 and other indebtedness and performance for the benefit of Bankers Life Company, a Corporation as therein provided, and all of the terms, provisions and conditions of said instrument, additionally secured by Vendor's Lien retained in Deed recorded in Volume 79011, Page 2531 of the Deed Records of Dallas County, Texas.

Deed of Trust dated March 9, 1994, filed March 19, 1994, recorded in Volume 94053, Page 1801 of the Deed of Trust Records of Dallas County, Texas, executed by Samuel G. Breitling and wife, Jo Ann Breitling, to J. Patrick Faubion, Trustee, securing payment of one note in the principal sum of $34,110.00, and other indebtedness and performance for the benefit of Comerica Bank-Texas as therein provided, and all of the terms, PROVISIONS AND CONDITIONS OF SAID INSTRUMENT.

SGB                 JB

96061 00824



FILED

96 MAR 26 PM 3: 38

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

96061   00825

When Recorded Mall To:
WEYERHAEUSER MORTGAGE COMPANY
Attn: TR-59
6320 CANOGA AVENUE
WOODLAND HILLS, CA 91367

1651151

08/22/96    171018    $9.00
Deed (1 Page)

Parcel Number:
This form was prepared by: WEYERHAEUSER MORTGAGE COMPANY

# ASSIGNMENT OF DEED OF TRUST

THE STATE OF TEXAS
COUNTY OF      DALLAS
        KNOW ALL MEN BY THESE PRESENTS:

That      WEYERHAEUSER MORTGAGE COMPANY
acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note for
the sum of $        85,600.00      executed by SAMUEL O. BREITLING AND WIFE, JOANN BREITLING

payable to the order of      WEYERHAEUSER MORTGAGE COMPANY
                                                , and secured by a Deed of Trust even date therewith to
JO E. SHAW                                                                                  Trustee,
which was filed for record on          MARCH 26TH, 1996          under File No.
or recorded in Volume 96061          Page  00818      of the Deed of Trust Records of
DALLAS                                County, on the following described lot, or parcel of land situated in the County of
DALLAS                                , State of Texas, to-wit:
BEING LOT 3 IN BLOCK P OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE, TEXAS, ACCORDING TO THE MAP RECORDED
IN VOLUME 74311, PAGE 668 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

for and in consideration of the sum of      EIGHTY FIVE THOUSAND SIX HUNDRED AND NO/100
                                                                      Dollars, and other good,
valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and
assign, set over and deliver unto  THE PRUDENTIAL HOME MORTGAGE COMPANY, INC., 3200 ROBBINS
ROAD, SPRINGFIELD, IL 62704-6560
the above described note, together with the liens against said property securing the payment thereof, and all title
held by the undersigned in and to said land.

        TO HAVE AND TO HOLD unto said grantee said above described note, together with all and singular the
lien, rights, equities, title and estate in said real estate above described securing the payment thereof, or
otherwise.

        Executed this the  20TH        day of  MAY          , A.D.  1996  .
                                                        Weyerhaeuser Mortgage Company

                                                By:
                                                        ANTHONY LEONIDAS, ASSISTANT SECRETARY

        State of California
        County of          Los Angeles
        On  MAY 20TH, 1996                    , before me  E.A. WALTON
                                                                                      , personally appeared

ANTHONY LEONIDAS, ASSISTANT SECRETARY

                                                , personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

        WITNESS my hand and official seal.

Texas Assignment of Deed of Trust   1/93
996(TX) (9301.01 & (9301)-1163 (9201)
VMP MORTGAGE FORMS - (800)521-7291

MPTX9999 (11/95)

E.A. WALTON
COMM # 993430
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires APR 29, 1997

**EXHIBIT "I"**
96165 04259

**REDACTED**



FILED

95 AUG 21 PM 3: 26

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

96165 04260

**REDACTED**

PHMC#: ▮
INV/Pool: FNMA ▮

CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is
hereby acknowledged, the undersigned,
THE PRUDENTIAL HOME MORTGAGE COMPANY, INC., a New Jersey Corp.,
whose address is 3200 Robbins Rd, Springfield, Il 62629 (assignor).
By these presents does convey, grant, sell, assign, transfer and set
over the described deed of trust together with the certain note(s)
described therein with all interest, all liens, and any rights due or
to become due thereon to
NORWEST MORTGAGE, INC., a California Corporation, whose
address is 405 S.W. Fifth Street, Des Moines, IA 55309
its successors or assigns (assignee).                    2270580
Said Deed of Trust dated 03/25/96   executed by
SAMUEL G BREITLING AND JOANN BREITLING        11/19/96   28%75   $9.00
to WEYERHAEUSER MORTGAGE CO                            kwd
and recorded as Instr#            in Book 81800 , Page 19096
in the records of Real Property of DALLAS   , Texas.


IN WITNESS WHEREOF, the said Corporation has caused these to be
signed by its duly authorized officer and to be sealed with the Seal
of the Corporation, this  2nd day of November, 1996
THE PRUDENTIAL HOME MORTGAGE COMPANY, INC.

                                              (seal)

By: _____
    LAURIE KEZSBOM
    VICE PRESIDENT

              CORPORATION ACKNOWLEDGEMENT
THE STATE OF CALIFORNIA
COUNTY OF  LOS ANGELES
BEFORE ME, the undersigned, a Notary Public in and for said County
and State, on this day personally appeared LAURIE KEZSBOM
known to me to be the person and officer whose name is subscribed
to the foregoing instrument and acknowledged to me that the same was
the act of the said
THE PRUDENTIAL HOME MORTGAGE COMPANY, INC.
a corporation, and that they executed the same as the act of such
corporation for the purposes and consideration therein expressed,
and in the capacity therein stated.
GIVEN UNDER MY HAND AND SEAL OF OFFICE this  2nd day of November, 1996

RHONDA MENDOLA
Notary Public in and for said State and County
Prepared by:
L.W.Kempf/NTC,420 N.Brand Bl.4th  Glendale, CA 91203 (800)346-9152
when recorded return to:
Nationwide Title Clearing
420 N. Brand Bl., 4th Fl
Glendale, California, 91203
    PRUD   JR ▮

**EXHIBIT "K"**

96227 02075





96227 02076



**EXHIBIT "L"**

FILED
In the Office of the
Secretary of State of Texas

JUL 30 1985

Clerk 11-1
Corporations Section

APPLICATION FOR AMENDED CERTIFICATE
OF AUTHORITY

1. The name of the corporation as it currently appears on the records
   of the Secretary of State of Texas is _____

   _____ NORWEST MORTGAGE, INC. _____ .

2. (If the corporation's name was previously unavailable and has elected
   to use an assumed name in Texas, complete the following.) The assumed
   name of the corporation as it currently appears on the records of the
   Secretary of State is N/A

   _____

3. A Certificate of Authority was issued to the corporation on _____
   August 26 _____ , 19 76 .

4. The corporation's name has been changed to _____
   GMAC MORTGAGE CORPORATION OF IOWA
   (Note:  If the corporate name has not been changed, insert "No change.")

5. The name which it elects to use hereafter in the State of Texas is
   GMAC MORTGAGE CORPORATION OF IOWA

6. It desires to pursue in Texas purposes other than, or in addition to,
   those authorized by its Certificate of Authority, as follows:
                        NO CHANGE

7. It is authorized to pursue such purpose or purposes in the state or
   country under the laws of which it is incorporated.

8. It desires to change the statement(s) contained in item(s) number
   _____ of the original or amended certificate of authority to read
   as follows:       N/A

                                    GMAC MORTGAGE CORPORATION OF IOWA
                                    FORMERLY: NORWEST MORTGAGE, INC.

                                    Its _____ President
                                    And
                                    Its _____ Secretary

STATE OF __Minnesota__
COUNTY OF __Hennepin__
Sworn to this 28th day of _____June_____ , 19 85

                                    _____
                                         Notary Public

LISA TIENTER
NOTARY PUBLIC MINNESOTA
HENNEPIN COUNTY
My Commission Expires Apr. 3, 1990

(TEXAS 1316 - 7/19/82)



# The State of Texas

## Secretary of State
OCT. 25, 1994

CT CORPORATION SYSTEM--CLAUDIA L. SAAN
30600 TELEGRAPH ROAD
BINGHAM FARMS  ,MI 48025

RE:
GMAC MORTGAGE CORPORATION OF IOWA
CHARTER NUMBER 00039480-06



Noel Kik
Secretary of State

2805188

October 4, 1994
Corp. No.:000108189
Ref. No.: 110567



# IOWA

# SECRETARY OF STATE

GMAC MORTGAGE CORPORATION OF PA
C T CORPORATION SYSTEM
MARILYN HICKOK
DES MOINES IA 50312

### CERTIFICATE OF AUTHORIZATION

**Name**  GMAC MORTGAGE CORPORATION OF PA
**Date**  04/18/1986
**State**  PENNSYLVANIA

I, ELAINE BAXTER, secretary of state of the state of Iowa, custodian of the records of incorporations, certify that the corporation named on this certificate is authorized to transact business in this state, that the corporation qualified to do business in Iowa on the date printed above, and that all fees required by the Iowa Business Corporation Act have been paid by the corporation, that the most recent annual corporate report required by Iowa Code chapter 490 has been filed by the secretary of state.

I further certify that according to the records in this office the above named corporation filed articles of merger, on 09/29/1994, merging GMAC MORTGAGE CORPORATION OF IOWA, an Iowa domestic, with and into GMAC MORTGAGE CORPORATION OF PA, a Pennsylvania domestic qualified in Iowa, the survivor.



*Elaine Baxter*
SECRETARY OF STATE

0 0 2 2 7 0 0 8 2 4 8

**APPLICATION FOR AMENDED
CERTIFICATE OF AUTHORITY**

FILED
In the Office of the
Secretary of State of Texas

NOV 01 1996

Corporations Section

1. The name of the corporation as it currently appears on the records of the Secretary of State of Texas is _____
   GMAC MORTGAGE CORPORATION OF PA

2. (If the corporation's name was previously unavailable and the corporation elected to use an assumed name in Texas, complete the following.) The assumed name of the corporation as it currently appears on the records of the Secretary of State is _____.

3. A Certificate of Authority was issued to the corporation on

   December 4 _____ ,19 85 .

4. The corporation name has been changed to _____
   GMAC MORTGAGE CORPORATION
   (Note:  If the corporate name has not changed, insert "no change.")

5. The name which it elects to use hereafter in the State of Texas is _____.

6. It desires to pursue in Texas purposes other than, or in addition to, those authorized by its Certificate of Authority, as follows:

   No Change

7. It is authorized to pursue such purpose or purposes in the state or country under the laws of which it is organized.

8. It desires to change the statement(s) contained in item(s) number _____ of the original or amended certificate of authority to read as follows:

GMAC MORTGAGE CORPORATION
Name of Corporation

By _____
    JONATHAN P. ANDREWS

Its Vice President
    (Authorized Officer)

(TEXAS – 1316 – 8/27/91)



C O M M O N W E A L T H   O F   P E N N S Y L V A N I A

D E P A R T M E N T   O F   S T A T E

OCTOBER 17, 1996

TO ALL WHOM THESE PRESENTS SHALL COME, GREETING·

I DO HEREBY CERTIFY, That from an examination of the indices and records of this department, it appears that Articles of Amendment were filed pursuant to the laws of the Commonwealth of Pennsylvania on October 17, 1996, effective October 31, 1996, for GMAC MORTGAGE CORPORATION OF PA, a Pennsylvania corporation, incorporated May 16, 1968, whereby the corporate name was changed to GMAC MORTGAGE CORPORATION



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the Secretary's Office to be affixed, the day and year above written

Secretary of the Commonwealth

PHEG

# Delaware

PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"GMAC MORTGAGE CORPORATION", A PENNSYLVANIA CORPORATION,

WITH AND INTO "GMAC MORTGAGE, LLC" UNDER THE NAME OF "GMAC MORTGAGE, LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FOURTH DAY OF OCTOBER, A.D. 2006, AT 1:13 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-FIFTH DAY OF OCTOBER, A.D. 2006, AT 9 O'CLOCK A.M.



Harriet Smith Windsor, Secretary of State

4143873   8100M

060974588

AUTHENTICATION: 5141472

DATE: 10-24-06

*State of Delaware
Secretary of State
Division of Corporations
Delivered 01:18 PM 10/24/2006
FILED 01:13 PM 10/24/2006
SRV 060974588 - 4143873 FILE*

CERTIFICATE OF MERGER
OF
GMAC MORTGAGE CORPORATION
(a Pennsylvania corporation)
into
GMAC MORTGAGE, LLC
(a Delaware limited liability company)

dated: October   24, 2006

The undersigned limited liability company formed and existing under the laws of the State of Delaware,

DOES HEREBY CERTIFY:

FIRST: The name and jurisdiction of formation or organization of each of the constituent entities which is to merge are as follows:

| Name | Jurisdiction of Formation or Organization |
| --- | --- |
| GMAC Mortgage Corporation | Pennsylvania |
| GMAC Mortgage, LLC | Delaware |

SECOND: An Agreement and Plan of Merger has been approved and executed by (i) GMAC Mortgage Corporation, a Pennsylvania corporation (the "Foreign Company"), and (ii) GMAC Mortgage, LLC, a Delaware limited liability company (the "Delaware LLC").

THIRD: The name of the surviving domestic limited liability company is GMAC Mortgage, LLC.

FOURTH: The merger of the Foreign Company into the Delaware LLC shall be effective on   October   25, 2006, at 9 00 AM Eastern Standard Time.

FIFTH: The executed Agreement and Plan of Merger is on file at a place of business of the surviving limited liability company. The address of such place of business of the surviving limited liability company is 100 Witmer Road, Horsham, PA  19044.

SIXTH: A copy of the Agreement and Plan of Merger will be furnished by the surviving limited liability company, on request and without cost, to any member of the Delaware LLC and to any person holding an interest in the Foreign Company.

IN WITNESS WHEREOF, GMAC Mortgage, LLC has caused this Certificate of Merger to be duly executed.

GMAC MORTGAGE, LLC

By: _____

Name: David M. Bricker

Title: Authorized Person

-2-

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT "GMAC MORTGAGE, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE NOT HAVING BEEN CANCELLED OR REVOKED SO FAR AS THE RECORDS OF THIS OFFICE SHOW AND IS DULY AUTHORIZED TO TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF FORMATION, FILED THE THIRTEENTH DAY OF APRIL, A.D. 2006, AT 5:59 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-FOURTH DAY OF OCTOBER, A.D. 2006, AT 1:13 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-FIFTH DAY OF OCTOBER, A.D. 2006, AT 9 O'CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "GMAC MORTGAGE, LLC".

Harriet Smith Windsor, Secretary of State

4143873   8310

060974588

AUTHENTICATION: 5141473

DATE: 10-24-06

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "GMAC MORTGAGE, LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE THIRTEENTH DAY OF APRIL, A.D. 2006, AT 5:59 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-FOURTH DAY OF OCTOBER, A.D. 2006, AT 1:13 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-FIFTH DAY OF OCTOBER, A.D. 2006, AT 9 O'CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "GMAC MORTGAGE, LLC".

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

4143873   8100H

060974588

AUTHENTICATION: 5141474

DATE: 10-24-06

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:59 PM 04/13/2006
FILED 05:59 PM 04/13/2006
SRV 060349963 - 4143873 FILE

## CERTIFICATE OF FORMATION
## OF
## GMAC MORTGAGE, LLC

This Certificate of Formation of GMAC Mortgage, LLC (the "LLC"), dated **April 13**, 2006, has been duly executed and is being filed by the undersigned, as an authorized person of the LLC, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.).

FIRST. The name of the limited liability company formed hereby is GMAC Mortgage, LLC.

SECOND. The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle, Delaware 19808.

THIRD. The name and address of the registered agent for service of process on the LLC in the State of Delaware are Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle, Delaware 19808.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written.

David M. Bricker
Authorized Person

# GMAC Mortgage

April 17, 2006

Ms. Harriet Smith Windsor
Secretary of State
State of Delaware
401 Federal Street, Suite 4
Dover, DE 19901

Re:     Consent by GMAC Mortgage Corporation for Use of Name "GMAC Mortgage, LLC"

Dear Secretary Windsor:

I am Senior Vice President, General Counsel, and Secretary of GMAC Mortgage Corporation, a Pennsylvania corporation which is currently qualified to do business in Delaware. The purpose of this letter is to notify you that GMAC Mortgage Corporation (the "Corporation") acknowledges the formation of a new Delaware limited liability company with the name GMAC Mortgage, LLC (the "LLC"), and grants permission to the LLC to use the name GMAC Mortgage, LLC notwithstanding its similarity to the name of the Corporation.

Corporation intends to merge into the LLC. LLC will have the same officers, directors, immediate corporate parent and business plan as Corporation. Upon the effective date of the merger, and provided that LLC has received the necessary licenses, LLC will continue the operations currently conducted by Corporation. Because LLC shall be continuing the business operations of Corporation upon the effective date of the merger, the name similarity will be helpful to maintain continuity of service to Corporation's customers over the transition period.

Corporation does not believe that this name similarity should prevent or delay the formation of the LLC. If, however, the Secretary of State foresees any issue that may prevent or delay the formation of the LLC on the basis of the name similarity, please contact our counsel in this matter as soon as possible:

> Kirk D Jensen, Esq.
> Buckley Kolar LLP
> 1250 24th Street, N.W. Suite 700
> Washington, DC 20037
> (202) 349-8000 (phone)
> (202) 349-8080 (fax)
> kjensen@buckleykolar.com

Thank you for your prompt attention to this matter.

Sincerely,

Robert H. Patterson

GMAC Mortgage Corporation
Legal Staff
100 Witmer Road
Mail Code 190-555-200
Horsham, PA 19044

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 01:18 PM 10/24/2006*
*FILED 01:13 PM 10/24/2006*
*SRV 060974588 - 4143873 FILE*

CERTIFICATE OF MERGER
OF
GMAC MORTGAGE CORPORATION
(a Pennsylvania corporation)
into
GMAC MORTGAGE, LLC
(a Delaware limited liability company)

dated: October 24, 2006

The undersigned limited liability company formed and existing under the laws of the State of Delaware,

DOES HEREBY CERTIFY:

FIRST: The name and jurisdiction of formation or organization of each of the constituent entities which is to merge are as follows:

| Name | Jurisdiction of Formation or Organization |
|------|-------------------------------------------|
| GMAC Mortgage Corporation | Pennsylvania |
| GMAC Mortgage, LLC | Delaware |

SECOND: An Agreement and Plan of Merger has been approved and executed by (i) GMAC Mortgage Corporation, a Pennsylvania corporation (the "Foreign Company"), and (ii) GMAC Mortgage, LLC, a Delaware limited liability company (the "Delaware LLC").

THIRD: The name of the surviving domestic limited liability company is GMAC Mortgage, LLC.

FOURTH: The merger of the Foreign Company into the Delaware LLC shall be effective on October 25, 2006, at 9:00 AM Eastern Standard Time.

FIFTH: The executed Agreement and Plan of Merger is on file at a place of business of the surviving limited liability company. The address of such place of business of the surviving limited liability company is 100 Witmer Road, Horsham, PA 19044.

SIXTH: A copy of the Agreement and Plan of Merger will be furnished by the surviving limited liability company, on request and without cost, to any member of the Delaware LLC and to any person holding an interest in the Foreign Company.

-1-

IN WITNESS WHEREOF, GMAC Mortgage, LLC has caused this Certificate of Merger to be duly executed.

GMAC MORTGAGE, LLC

By: _____

Name: David M. Boicke

Title: Authorized Person

-2-

3317465

5175637   $15.00  Deed of Trust
04/15/05

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS:** IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Date:                   March 30, 2005

Grantor:                Samuel G. Breitling and Jo Ann Breitling

Grantor's Mailing Address (including county):

                        1704 Cornwall Lane, Sachse, Texas 75048

                        Dallas County, Texas


Trustee:                JAMES MURNANE

Trustee's Mailing Address (including county):

                        2825 Wilcrest, Suite 570

                        Houston, Texas  77042

Beneficiary:            PINNACLE REALTY ADVISORS, INC.

Beneficiary's Mailing Address (including county):

                        2825 Wilcrest, Suite 570

                        Houston, Texas  77042

Note(s)

        Date:           March 30, 2005

        Amount:         $6,254

        Maker:          Samuel G. Breitling and Jo Ann Breitling

        Payee:          PINNACLE REALTY ADVISORS, INC.

        Final Maturity Date:        March 1, 2015

        Terms of Payment (optional):        As specified in said promissory note.

Property (including any improvements):

        Lot 5, Block F of Sachse South Estates, Installment No. 1, an addition to the City of Sachse,
Dallas County, Texas



Prior Lien(s) (including recording information):

        N O N E

Other Exceptions to Conveyance and Warranty:

        This Deed of Trust is executed, delivered and accepted subject to all and singular ad valorem taxes
for the current and all subsequent years, subsequent assessments for prior years due to changes in
land usage or ownership, zoning ordinances, utility district assessments and standby fees, if any,

# EXHIBIT "M"

2005074 03574

applicable to and enforceable against the above described property, and all valid utility easements created by the dedication deed or plat of the subdivision in which said real property is located, covenants, restrictions common to the platted subdivision in which said real property is located, mineral reservations, maintenance fund liens, if any, applicable to and enforceable against the above described property as shown by the records of the County Clerk of the County in which said real property is located, and any title or rights asserted by anyone, including, but not limited to persons, corporation, governments, or other entities to tidelands, or land comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs, or oceans, or to any land extending from the line of the harbor or bulkhead lines as established or changed by any government or to filled-in lands, or artificial islands, or to riparian rights or other statutory water rights, or the rights or interest of the State of Texas or the public generally in the area extending from the line of mean low tide to the line of vegetation or the right of access thereto, or right of easement along and across the same, if any, applicable to and enforceable against the above-described property.

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

### GRANTOR'S OBLIGATIONS
Grantor agrees to:
1. keep the property in good repair and condition;
2. pay all taxes and assessments on the property when due;
3. preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:
   a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
   b. contains an 80% coinsurance clause;
   c. provides fire and extended coverage, including windstorm coverage;
   d. protects Beneficiary with a standard mortgage clause;
   e. provides flood insurance at any time the property is in a flood hazard area; and
   f. contains such other coverage as Beneficiary may reasonably require;
5. comply at all times with the requirements of the 80% coinsurance clause;
6. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;
7. keep any buildings occupied as required by the insurance policy; and
8. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

### BENEFICIARY'S RIGHTS
1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.
2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.
3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.
4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.
5. If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:
   a. declare the unpaid principal balance and earned interest on the note immediately due;
   b. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and
   c. purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

### TRUSTEE'S DUTIES
If requested by Beneficiary to foreclose this lien, Trustee shall:
1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;
2. sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and
3. from the proceeds of the sale, pay, in this order:

DD074 03575

a.    expenses of foreclosure, including a commission to Trustee of 5% of the bid;

b.    to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.    any amounts required by law to be paid before payment to Grantor; and

d.    to Grantor, any balance.

GENERAL PROVISIONS

1.    If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.    Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.    This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5.    If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6.    Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.    Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8.    Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9.    When the context requires, singular nouns and pronouns include the plural.

10.    The term *note* includes all sums secured by this deed of trust.

11.    This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

12.    If Grantor and Maker are not the same person, the term *Grantor* shall include Maker.

13.    If all or any part of the Property is sold, conveyed, leased for a period longer than three years, leased with an option to purchase, or otherwise sold (including any contract for deed or similar instrument), without the prior written consent of the Beneficiary, then the Beneficiary may, at Beneficiary's option, declare the outstanding principal balance of the Note, plus accrued interest, to be immediately due and payable. The creation of a subordinate lien, any sale thereafter, any deed under threat or order of condemnation, any conveyance solely between Grantors, the passage of title by reason of death of a Grantor or by operation of law shall not be construed as a sale or conveyance of the Property.

14.    Grantor shall furnish to Beneficiary annually, before the taxes become delinquent, copies of tax receipts showing that all taxes on the Property from all taxing authorities have been paid in full. Grantor shall furnish to Beneficiary annually evidence of current paid-up hazard and extend coverage insurance naming Beneficiary as an insured. Said evidence of insurance shall be furnished to Beneficiary on or prior to the date of any insurance policy then in effect expires.

15.    Grantor represents that this deed of trust and the note are given for the following purposes:

The Note secured hereby is given in renewal and extension of the sums represented by that certain Contract for Payment of Property Tax Lien pursuant to Section 32.065 of the Texas Property Tax Code (herein the "Tax Payment Contract"). Contemporaneously herewith, the Borrower has executed the Tax Payment Contract which authorizes the Lender to pay the property tax specified therein and the Lender has paid said taxes and will receive an assignment of the tax lien from the appropriate taxing authority. The Note secured hereby is given in renewal and extension of the sums specified by the Contract (which represents that taxes and costs paid on behalf of Borrower) and the lien created and described herein is hereby acknowledged by the Borrower to be a valid and

0074 03576

subsisting lien against the herein described real property and which said lien is hereby renewed, extended and continued in full force and effect to secure the payment of the note secured hereby. In addition, it is specifically understood and agreed that in the event any portion of the indebtedness intended to be secured by this deed of trust is not, or cannot be, lawfully secured hereby it is agreed that the payments made on said indebtedness shall be first applied to the reduction or discharge of that portion of said indebtedness which cannot be secured hereby.

EXECUTED this the 31 day of MARCH , 2005.

THE STATE OF TEXAS §

COUNTY OF DALLAS §

THIS INSTRUMENT was acknowledged before me on this the 31 day of MARCH , 2005, by SAMUEL & JO ANN BREITLING



Notary Public in and for DALLAS COUNTY
The State of Texas

My commission expires: 8-11-2006

MICHAEL T. RAGSDALE
[Printed Name of Notary]

AFTER RECORDING RETURN TO:

Pinnacle Realty Advisors, Inc.
2825 Wilcrest, Suite 570
Houston, Texas 77042

MICHAEL T. RAGSDALE
MY COMMISSION EXPIRES
AUGUST 11, 2008

0074 03577



074 03578

04-11421-0; TXC02635

## ABSTRACT OF JUDGMENT 

STATE OF TEXAS
COUNTY OF TAYLOR

AJ
1 PG

20070198962

**REDACTED**

I, Chris Carnohan, attorney of record for Judgment Plaintiff, Palisades Acquisition V, LLC as assignee of Direct MerchantsBank, certify that in cause number CC-05-17343-A, Dallas County Court at Law No. 1, Dallas County, Texas, Judgment Plaintiff recovered a judgment against **Joann Breitling** whose last known address is 1333 W Campbell Rd Apt 198, Richardson TX 75080-2815. Judgment Plaintiff's address is 2101 W. Ben White Blvd., Austin TX 78704. The judgment was rendered on October 12, 2006, in the amount of $8,637.61 which includes principal of $4,690.28, prejudgment interest of $1,282.19, court costs of $320.00 and attorney's fees of $2,345.14 payable to Chris Carnohan, TX BAR# 03832350, with interest at the rate of 5 percent per annum, from the date of judgment until paid, and all costs of court. The judgment is entitled to the following credits:

LIST ALL CREDITS:          NONE

The entire amount of the judgment is due and payable.

*Chris Carnohan*

CHRIS CARNOHAN, Attorney of record for the Plaintiff
TX Bar #03832350
P.O. Box 3575
Abilene TX 79604-3575

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me, the undersigned authority, when on this date, May 10, 2007, personally appeared Chris Carnohan, ATTORNEY, who being by me duly sworn, on oath, stated that the information in the foregoing abstract of judgment is true and correct.

Notary Public, State of Texas

After recording please return to:
CARNOHAN LAW OFFICES, PLLC
P.O. Box 3575
Abilene TX 79604-3575
(325) 692-4747 FAX (325) 795-1717



DEAN E. BEHLKE
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
03-26-10

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
**Dallas County  TEXAS**
June 04, 2007  04:01:45 PM
        FEE: $16.00

20070198962

**EXHIBIT "N"**

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this Instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
In Dallas, Texas, this __19th__ day of _February_ A.D. _2015_ .

      FELICIA PITRE, DISTRICT CLERK
      DALLAS COUNTY, TEXAS
      By _Cecelia Flowers_ Deputy

# EXHIBIT 3(B)

FILED
DALLAS COUNTY
6/25/2014 4:07:38 PM
GARY FITZSIMMONS
DISTRICT CLERK

CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING, JO ANN BREITLING, GMAC MORTGAGE, LLC FKA, NORWEST MORTGAGE, INC., PINNACLE REALTY ADVISORS, INC., AND PALISADES ACQUISITION V, LLC, | § § § § § § § § | |
| Defendants. | § | 134TH JUDICIAL DISTRICT |

**DEFENDANTS SAMUEL G. BREITLING AND JO ANN BREITLING'S
ORIGINAL ANSWER**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendants, Samuel G. Breitling and Jo Ann Breitling ("Defendants"), file this Original

Answer to LNV Corporation, its successors and assigns' ("Plaintiff") Original Petition and

would respectfully show as follows:

**I.
GENERAL DENIAL**

Defendants generally deny each and every allegation contained in Plaintiff's petition and

demands strict proof of same before a jury. Defendants, subject to the foregoing general denial

and without waiving same, specifically reserve the right to answer the allegations contained in

the Petition more fully at a later date, such right being held pursuant to the Constitution and the

laws of the State of Texas and the Texas Rules of Civil Procedure.

1

## II.
## AFFIRMATIVE DEFENSES

1.  Defendants affirmatively plead that it is not obligated for payment of the lien because the lien was void at the inception of the loan origination. The lien fails to comply with Texas Constitution Article XVI, §50(a)(6).

2.  The claims asserted against Defendants are barred in whole because Plaintiff violated the Texas Constitution Article XVI, §50(a)(6) on its face. Therefore, the subject lien is void.

3.  Plaintiffs have stated causes of actions that are not supported in this forum.

4.  The claims asserted against Defendants are barred in whole or in part by the doctrine of laches.

5.  The claims asserted against Defendants are barred in whole or in part by the doctrine of estoppel.

6.  The claims asserted against Defendants are barred in whole or in part by the doctrine of waiver.

7.  The claims asserted against Defendants are barred in whole or in part by the doctrine of release.

8.  The claims asserted against Defendants are barred in whole or in part by the Parol Evidence Rule.

9.  The claims asserted against Defendants are barred in whole or in part by the doctrine of adoption.

10. The claims asserted against Defendants are barred in whole or in part by the doctrine of accord and satisfaction.

2

11. The claims asserted against Defendants are barred in whole or in part by the doctrine of illegality.

12. The claims asserted against Defendants are barred in whole or in part by the doctrine of fraud.

13. The claims asserted against Defendants are barred in whole or in part by the doctrine of fraudulent concealment.

14. The claims asserted against Defendants are barred in whole or in part by the doctrine of mistake.

15. The claims asserted against Defendants are barred in whole or in part by the doctrine of accident.

16. The claims asserted against Defendants are barred by Plaintiff's prior material breach.

17. The claims asserted against Defendants are barred in whole or in part by the statute of limitations.

18. Plaintiff failed to mitigate and/or minimize its purported damages.

19. While Defendants denies that Plaintiff has suffered any injury, any injury sustained by Plaintiff is the result of acts or omissions of third parties, over whom Defendants exercised no control.

## III.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiff recover nothing by reason of the allegations made in the Plaintiff's petition and for such other and further relief to which they may be justly entitled.

3

Respectfully submitted this 23rd day of June, 2014.

THE LANE LAW FIRM

By: /s/ Anh Thu Dinh
Robert "Chip" C. Lane
State Bar No. 24046263
So. District Bar No. 570982
Anh Thu N. Dinh
State Bar No. 24071480
So. District Bar No. 1085790
6200 Savoy Dr, Suite 1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile
ATTORNEYS FOR DEFENDANTS JO ANN
BREITLING AND SAMUEL BREITLING

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2014 the foregoing was electronically filed and sent to the following attorneys of record. The foregoing was also sent via facsimile.

Jeffrey B. Hardaway
Robert L. Negrin
Mary M. Speidel
Codilis & Stawiarski, P.C.
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
281.925.5256
291.925.5300 (Fax)

/s/ Anh Thu Dinh
Anh Thu Dinh

4

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this __19th__ day of __February__ A.D., __2015__.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By_____ Deputy

# <u>EXHIBIT 3(C)</u>

FILED
DALLAS COUNTY
7/7/2014 11:12:44 AM
GARY FITZSIMMONS
DISTRICT CLERK

<div align="center">

CAUSE NO. DC-14-04053

</div>

| | | |
|---|---|---|
| LNV CORPORATION, | § | IN THE DISTRICT COURT OF |
| ITS SUCCESSORS AND ASSIGNS, | § | |
|     PLAINTIFF | § | |
| | § | |
| VS. | § | |
| | § | |
| SAMUEL G. BREITLING, | § | DALLAS COUNTY, TEXAS |
| JO ANN BREITLING, | § | |
| GMAC MORTGAGE, LLC FKA | § | |
| NORWEST MORTGAGE, INC., | § | |
| PINNACLE REALTY ADVISORS, INC., | § | |
| AND PALISADES ACQUISITION V, LLC | § | |
|     DEFENDANTS | § | 134TH JUDICIAL DISTRICT |

<div align="center">

**PLAINTIFF'S MOTION FOR *IN REM* DEFAULT**
**AND *IN REM* SUMMARY JUDGMENT**

</div>

Comes now **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS** (hereinafter "Plaintiff") and moves for *in rem* default judgment against Defendants **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC., PINNACLE REALTY ADVISORS, INC.** and **PALISADES ACQUISITION V, LLC** and for *in rem* summary judgment against Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING**. In support of its Motion for Default and Summary Judgment, Plaintiff would respectfully show the Court as follows:

<div align="center">

Statement of the Case

</div>

1.    Plaintiff filed this suit for the judicial foreclosure of its Deed of Trust lien on real property and improvements owned by **SAMUEL G. BREITLING** and **JO ANN BREITLING** as a result of the default on a Texas Home Equity Adjustable Rate Note (hereinafter "Note") payable to Aames Funding Corporation, a California Corporation, DBA Aames Home Loan as evidenced by the Note dated October 20, 2000. A true and correct copy of the Note is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

C&S 14-0070

2.     Concurrently with the execution of the Note, **SAMUEL G. BREITLING** and **JO ANN BREITLING** executed a Texas Home Equity Security Instrument (hereinafter "Deed of Trust") granting Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a Corporation, a lien on **SAMUEL G. BREITLING** and **JO ANN BREITLING**'s homestead under TEX. CONST. Art. XVI § 50 (a)(6). The Deed of Trust grants Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a Corporation, a lien on the Property described as follows:

> BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE, DALLAS COUNTY, TEXAS ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

which has an address of 1704 CORNWALL LANE, SACHSE, TX 75048.

3.     The Deed of Trust was duly recorded on December 6, 2000 under clerk's file number 1219742 Volume 2010236 Page 05425 in the official real property records of Dallas County, Texas. A true and correct copy of the Deed of Trust is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

4.     The Deed of Trust was assigned from Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a Corporation to Aames Capital Corporation, a California Corporation as evidenced by an assignment recorded under clerk's file no. 1520052 Volume 2001174 Page 01317 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

5.     The Deed of Trust was further assigned from Aames Capital Corporation, a California Corporation to Bankers Trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust, 2000-2 Mortgage Pass-Through Certificates, Series 2000-

C&S 14-0070

2, c/o Countrywide Home Loans SV-79 as evidenced by an assignment recorded under clerk's file no. 1520053 Volume 2001174 Page 01320 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

6.    Pursuant to a Certificate of Merger, Bankers Trust Company of California, N.A. merged into Deutsche Bank National Trust Company. A true and correct copy of the Assignment is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

7.    The Deed of Trust was further assigned from Deutsche Bank National Trust Company, as Trustee FKA Bankers Trust Company of California, N.A. as Trustee to Ellington Mortgage Partners, L.P. as evidenced by an assignment recorded under clerk's file no. 20080173631 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

8.    The Deed of Trust was further assigned from Ellington Mortgage Partners, L.P. to **LNV CORPORATION** as evidenced by an assignment recorded under clerk's file no. 20080320073 in the official public records of Dallas County, Texas. A true and correct copy of the Assignment is attached to the affidavit of Edward J. Bagdon as summary judgment evidence.

9.    **LNV CORPORATION** is the holder of the Note and owner of the Deed of Trust lien.

10.    Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING** are the record owners of the Property.

11.    Defendants **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC., PINNACLE REALTY ADVISORS, INC.** and **PALISADES ACQUISITION V, LLC** are interested parties to this lawsuit as they are holders of liens against the subject property.

C&S 14-0070

12.     No installment payments have been paid when due and owing pursuant to the terms of the above-described Note and Deed of Trust since March 1, 2010. The total amount due and owing to Plaintiff on the Note is $229,548.64 plus interest accruing at the rate of $41.56 daily after June 30, 2014.

13.     Plaintiff provided the requisite notices to cure the default and accelerate the maturity of the debt under the Deed of Trust, TEX. PROP. CODE § 51.002 and applicable law. On March 14, 2014, Plaintiff made formal demand upon Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING** to cure the arrearage. True and correct copies of the demand letters are attached to the affidavit of Jeffrey B. Hardaway and submitted as summary judgment evidence. The arrearage has not been cured since the date of the demand letters and is not in compliance with the terms of the Note and Deed of Trust.

### Evidence in Support of Plaintiff's Motion for Summary Judgment

14.     This Motion for Summary Judgment is supported by a Business Records Affidavit of Edward J. Bagdon, agent and affiant for Plaintiff. The affidavit is attached hereto and incorporated herein by reference for all purposes marked Exhibit "A". The Business Records Affidavit of Plaintiff includes a copy of the Note, Deed of Trust, Assignments and the payoff figures. The Note attached to the affidavit of Edward J. Bagdon is a written instrument upon which Plaintiff's live pleading is founded. Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING** have not denied execution of the Note in whole or in part by any sworn plea. The Note is accordingly to be received as evidence fully proven. Tex R. Civ. P. 93(7).

15.     This Motion for Summary Judgment is also supported by a Business Records Affidavit of Plaintiff's attorney, Jeffrey B. Hardaway of Codilis & Stawiarski, P.C., which is attached hereto and incorporated herein by reference for all purposes marked Exhibit "B". The

C&S 14-0070

Business Records Affidavit of Plaintiff's attorney contains copies of the demand letters that were sent to the Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING**.

16.    Defendant **SAMUEL G. BREITLING** was personally served with process on June 5, 2014 and has filed an answer.  Defendant's answer is not sufficient to raise a genuine issue of material fact regarding the Deed of Trust or the amounts due and owing thereon.

17.    Defendant **JO ANN BREITLING** was personally served with process on June 5, 2014 and has filed an answer.  Defendant's answer is not sufficient to raise a genuine issue of material fact regarding the Deed of Trust or the amounts due and owing thereon.

18.    Defendant **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC.** was served with process on June 2, 2014.  The citation with the officer's return and proof of service has been on file with the clerk of the court at least ten (10) days excluding the day of filing and today.  The deadline for Defendant's answer was June 23, 2014.  Accordingly, Defendant has admitted the material allegations in Plaintiff's Original Petition.  Plaintiff requests that the Court enter a default judgment for Plaintiff and awarding such other relief to Plaintiff as shown by the default and summary judgment record

19.    Defendant **PINNACLE REALTY ADVISORS, INC.** was served with process on April 22, 2014.  The citation with the officer's return and proof of service has been on file with the clerk of the court at least ten (10) days excluding the day of filing and today.  The deadline for Defendant's answer was May 19, 2014.  Accordingly, Defendant has admitted the material allegations in Plaintiff's Original Petition.  Plaintiff requests that the Court enter a default judgment for Plaintiff and awarding such other relief to Plaintiff as shown by the default and summary judgment record

C&S 14-0070

20.     Defendant **PALISADES ACQUISITION V, LLC** was served with process on May 7, 2014. The citation with the officer's return and proof of service has been on file with the clerk of the court at least ten (10) days excluding the day of filing and today. The deadline for Defendant's answer was June 2, 2014. Accordingly, Defendant has admitted the material allegations in Plaintiff's Original Petition. Plaintiff requests that the court enter a default judgment for Plaintiff and awarding such other relief to Plaintiff as shown by the default and summary judgment record.

21.     Based on the summary judgment evidence attached to this Motion, the Court will see that Plaintiff is entitled to summary judgment allowing Plaintiff to foreclose its lien on the property; the subject of this suit.

### <u>Prayer</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that its Motion for *in rem* Default and *in rem* Summary Judgment be granted by the entry of a judgment in favor of Plaintiff allowing foreclosure of its lien on the property, for an order of sale, enforced by a non-judicial public auction or judicial foreclosure sale of the property described above and for such other and further relief, at law or in equity to which Plaintiff may show itself justly entitled.

C&S 14-0070

Respectfully submitted,

**CODILIS & STAWIARSKI, P.C.**

_____

**JEFFREY B. HARDAWAY**
State Bar No. 24038254
Email: Jeff.Hardaway@tx.clsegal.com
**ROBERT L. NEGRIN**
State Bar No. 14865550
**MARY M. SPEIDEL**
State Bar No. 18908400
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
(281) 925-5256
(281) 925-5300 (Facsimile)

**ATTORNEYS FOR PLAINTIFF,**
**LNV CORPORATION, ITS SUCCESSORS**
**AND ASSIGNS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this pleading was sent via certified mail, return receipt requested, via fax, and/or via hand delivery on the ___7 7ᵗʰ___ day of July, 2014:

*Via Certified Mail - Return Receipt Requested*
Anh Thu Dinh
The Lane Law Firm
6200 Savoy Dr., Ste. 1150
Houston, TX 77036
*Attorney for Defendants Jo Ann and Samuel Breitling*

_____

**JEFFREY B. HARDAWAY**

C&S 14-0070

CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| **LNV CORPORATION,** | § | **IN THE DISTRICT COURT OF** |
| **ITS SUCCESSORS AND ASSIGNS,** | § | |
| **PLAINTIFF** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **SAMUEL G. BREITLING,** | § | **DALLAS COUNTY, TEXAS** |
| **JO ANN BREITLING,** | § | |
| **GMAC MORTGAGE, LLC FKA** | § | |
| **NORWEST MORTGAGE, INC.,** | § | |
| **PINNACLE REALTY ADVISORS, INC.,** | § | |
| **AND PALISADES ACQUISITION V, LLC** | § | |
| **DEFENDANTS** | § | **134TH JUDICIAL DISTRICT** |

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned notary, on this day, personally appeared _____**Edward J. Bagdon**_____, a person whose identity is known to me. After I administered an oath to his/her, upon his/her oath, he/she said:

1. "My name is _____**Edward J. Bagdon**_____. I am over the age of 21 years, of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein. I have obtained personal knowledge of events described below through my review of business records during the normal course of business.

2. I am the _____**Authorized Signer**_____ for LNV CORPORATION. As such, I have access to the records for LNV CORPORATION. LNV CORPORATION maintains these records in the regular course of its business. I am qualified to attest to these records by virtue of my duties and have reviewed the documents sought to be admitted.

3. Attached to this affidavit are forty-five (45) pages of records maintained by LNV CORPORATION.

4. I am familiar with the record-keeping process as it existed when the entry was made. These business records are now kept by LNV CORPORATION in the regular course of its business. These business records were generated pursuant to a course of regularly conducted business activity and such records are created by or from information transmitted by a person with knowledge, at or near the time of the event. The records attached to this affidavit are the original or exact duplicates of the original."

C&S 14-0070                                                     1

# EXHIBIT "A"

_____

**Edward J. Bagdon**                     , Affiant

Date: ___6/17/14___


THE STATE OF ___Illinois___ §

COUNTY OF ___Lake___ §


BEFORE ME, the undersigned notary public, on this day personally appeared ___Edward J. Bagdon___ as ___Authorized Signer___ of LNV CORPORATION, (known to me) (or proved to me on the oath of _____) or (through description of identity card or other document_____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___17___ day of ___June___, 2014.


_____

Notary Public, State of ___Illinois___

Notary's Printed Name ___Yesenia Alonzo-Nino___

My commission expires: ___9-18-14___

Seal:

YESENIA ALONZO-NINO
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
September 18, 2014

Loan No:
Borrower: SAMUEL G. BRE___G

Data ID:

Borrower's
Initials:

REDACTED

THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION

THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION

# TEXAS HOME EQUITY ADJUSTABLE RATE NOTE
(6 Month Libor Index—Rate Caps)
(Cash Out—First Lien)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE
AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

October 20, 2000

Place of Execution: RICHARDSON          TEXAS
[City]                                   [State]

1704 CORNWALL LANE
SACHSE, TEXAS 75048
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for a loan that I have received, I promise to pay U.S. $ 129,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

**2.     INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 12.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

**3.     PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on December 1, 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 78954, PHOENIX, ARIZONA 85062, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,370.61. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---




## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)  Change Dates**

The interest rate I will pay may change on the first day of November, 2003, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of the interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.*  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment.  The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 15.3750% or less than 12.3750%.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE  percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than 18.3750 % or less than 12.3750 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate before the effective date of any change.  The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.  However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES AND FEES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then:  (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces principal, the reduction will be treated as a partial prepayment.  My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.  If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 6 shall supersede any inconsistent provision of this Note or the Security Instrument.

(Page 2 of 4 Pages)

Loan No: 



Data ID: ▮

**REDACTED**

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**
      **(A) Late Charge for Overdue Payments**
      If the Note Holder has not received the full amount of any monthly payment by the end of TEN (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.00 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
      **(B) Default**
      If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
      **(C) Notice of Default**
      If I am in default, the Note Holder may send me a written notice by certified mail telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.
      **(D) No Waiver By Note Holder**
      Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
      **(E) Payment of Note Holder's Costs and Expenses**
      If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

8.    **GIVING OF NOTICES**
      Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
      Any notice that must be given to the Note Holder under this Note will be given in writing by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure by the Note Holder to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
      Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of the Borrower's promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also responsible.
      I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.
      If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.
      If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 9 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

10.   **WAIVERS**
      I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   **SECURED NOTE**
      In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

*(Page 3 of 4 Pages)*



**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12.  **APPLICABLE LAW**

This Note shall be governed by the laws of the State of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

13.  **NO ORAL AGREEMENTS**

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.


WITNESS THE HAND(S) OF THE UNDERSIGNED.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

_Samuel D. Breitling by JoAnn Breitling_ .......................(Seal)
SAMUEL G. BREITLING, by JO ANN
BREITLING, Attorney-in-Fact —Borrower

_JoAnn Breitling_ .......................(Seal)
JO ANN BREITLING —Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
AAMES HOME LOAN
WITHOUT RECOURSE

AAMES FUNDING CORPORATION, A CALIFORNIA
CORPORATION, DBA AAMES HOME LOAN

By:_____

(Printed Name and Title)

*(Page 4 of 4 Pages)*

PAY TO THE ORDER OF
Aames Capital Corporation
A California Corporation
Without recourse
AAMES FUNDING CORPORATION
A California Corporation
dba Aames Home Loan

BY:

**Amy Brackett**

**Assistant Secretary**

Pay to the order of

without recourse
Aames Capital Corporation
A California Corporation

By:

**Amy Brackett**

**Assistant Secretary**

Bankers Trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage
Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2.

## ALLONGE TO NOTE

REDACTED

LOAN NUMBER:                    ▮▮▮▮▮

BORROWER NAME:        **SAMUEL G. BREITLING**

LOAN AMOUT:            **$129,600.00**

PAY TO THE ORDER OF: .    ELLINGTON MORTGAGE PARTNERS, L.P.

WITHOUT RECOURSE
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FKA
BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE**

BY: _____

NAME:      **CHRISTOPHER CORCORAN**

TITLE:      **VICE PRESIDENT**

REDACTED

BC: ████

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Samuel G. Breitling by Jo Ann Breitling, Attorney-in Fact and Jo Ann Breitling, in the original principal amount of $129,600.00, dated October 20, 2000, and payable to Aames Funding Corporation, a California Corporation, dba Aames Home Loan, as amended or modified (the "Note").

Pay to the order of LNV Corporation, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

Ellington Mortgage Partners, LP

By: _____
KC Wilson, Attorney-In-Fact

FF: $29.00       ▬▬▬▬ /FNT/ANS/JN

After Recording Please Return To:
AAMES HOME LOAN
3347 MICHELSON DRIVE #300
IRVINE, CA 92612

1219742

12/06/00    2423687    $29.00
Deed of Trust

[Space Above This Line For Recording Data]

Loan No:
Borrower: SAMUEL G. BREITLING

Data ID:

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

REDACTED

# TEXAS HOME EQUITY SECURITY INSTRUMENT

**(Cash Out - First Lien)**

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

THIS SECURITY INSTRUMENT is made on October 20, 2000. The grantor is SAMUEL G. BREITLING AND WIFE, JO ANN BREITLING

("Borrower").

The trustee is MICHAEL L. RIDDLE, whose address is 2323 BRYAN STREET, SUITE 1600, DALLAS, TX 75201

("Trustee").

The beneficiary is AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN , A CORPORATION,

which is organized and existing under the laws of the State of CALIFORNIA,
and whose address is 350 S. GRAND AVE. 42ND FLOOR      LOS ANGELES, CA 90071

("Lender").

Borrower owes Lender the principal sum of ONE HUNDRED TWENTY-NINE THOUSAND SIX HUNDRED and NO/100-----Dollars (U.S. $ 129,600.00). This debt is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (referred to herein as the "Extension of Credit") and is evidenced by Borrower's note dated the same date as this Security Instrument (the "Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in DALLAS County, Texas:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 1704 CORNWALL LANE     [Street]       SACHSE,
TEXAS      75048              [City]    ("Property Address").
       [Zip Code]

**TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3044.1 01/98
(Page 1 of 8 Pages)

200 236 05425

REDACTED

Loan No: ▮▮▮▮▮
Borrower: SAMUEL G. BREITLING

Data ID: ▮▮▮▮

## LEGAL DESCRIPTION

Paste legal description here then photocopy.  Attach to the Security Instrument and file as one instrument.

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas according to the Map thereof recorded in Volume 74211, Page 688 of the Map Records of Dallas County, Texas.

2000236 05435

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) hazard insurance premiums for the Property and; (d) flood insurance premiums for the Property, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are not pledged as additional security for any sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied: first, to amounts payable under Paragraph 2; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph 4. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

*(Page 2 of 8 Pages)*

20011236 05426

REDACTED

Loan No: 

Data ID: ▮

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments. If under Paragraphs 20 or 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default and may be held personally liable for debt evidenced by the Note or this Security Instrument if Borrower gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender, so far as allowed by applicable law, may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so. No powers are granted by Borrower to the Lender or Trustee that would violate provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other applicable law.

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, shall be paid to Lender to be applied to the sums secured by this Security Instrument.

In the event of a total or partial taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments.

2004236 05427

*(Page 3 of 8 Pages)*

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the original Borrower or Borrower's successors in interest from Borrower's obligations under the Note and this Security Instrument. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraphs 16 and 23. Borrower's covenants and agreements shall be joint and several subject to the provisions of Paragraph 23. Any Borrower who co-signs this Security Instrument, but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien, by the spouse of each owner of the Property; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Lender's Right-to-Comply.** It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this paragraph 12, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, as provided in this Paragraph 12, with any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Paragraph 13, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any such compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by the Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Paragraph 12, and such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, loan charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees is finally interpreted so that the interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limits, or a determination is made at any time by Lender that interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal Borrower owes under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

It is the express intention of the Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Paragraph 12 shall survive the payoff of the Extension of Credit. The provision of this Paragraph 12 shall supersede any inconsistent provision of the Note or this Security Instrument.

*(Page 4 of 8 Pages)*

2001236 05428

**REDACTED**

Loan No: ▮▮▮▮                                                                     Data ID: ▮

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given in writing by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given in writing by first class mail (but, by certified mail if the notice is given pursuant to Paragraph 12 hereof) to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 13.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of Texas. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by the Borrower related to the Extension of Credit.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) five days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to the power of sale contained in this Security Instrument after entry of a court order permitting exercise of such power of sale; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Paragraph 16.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**19. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 19, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

*(Page 5 of 8 Pages)*

2000236 05429

20. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any remedies permitted by applicable law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for the Borrower in a judicial proceeding.

21. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, the Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Paragraph 21 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall provide a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recording costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.**

23. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

(Page 6 of 8 Pages)

2004236 05430

REDACTED

Loan No: ▮▮▮▮

Data ID: ▮▮

If this Extension of Credit is obtained by such actual fraud, then, subject to Paragraph 11, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Paragraph 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

24. **Proceeds.** The Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

25. **No Assignment of Wages.** The Borrower has not assigned wages as security for the Extension of Credit.

26. **Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

27. **Rider(s) to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the riders were a part of this Security Instrument. [Check as applicable]

[X] Texas Home Equity Adjustable Rate Rider          [ ] Texas Home Equity Condominium Rider
[ ] Texas Home Equity Planned Unit Development Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

> YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.

*Samuel G. Breitling by Jo Ann Breitling* ...........(Seal)
SAMUEL G. BREITLING by JO ANN BREITLING,
Attorney-in-Fact —Borrower

*Jo Ann Breitling* ...........(Seal)
JO ANN BREITLING —Borrower

(Page 7 of 8 Pages)

2000236 05431

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                                              PAGE 245
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

[Space Below This Line For Acknowledgment(s)]

State of TEXAS                                    §
County of   Dallas                               §

This instrument was acknowledged before me on the ___20th___ day of ____October____, 2000 , by
Samuel G. Breitling by his Agent and Attorney-in-Fact, Jo Ann Breitling and
Jo Ann Breitling, by and through Drivers License.

ANDREW N. SIEBERT
My Commission Expires
OCTOBER 23, 2001

_____
                          Notary Public

[Personalized Seal]
My commission expires:_____     _____
                                                                    (Printed Name)

2004236 05432

(Page 8 of 8 Pages)

REDACTED

Loan No: ▮▮▮▮▮
Borrower: SAMUEL G. BREITLING

Data ID: ▮▮

**THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY
# ADJUSTABLE RATE RIDER
### (6 Month Libor Index—Rate Caps)
### (Cash Out—First Lien)

THIS ADJUSTABLE RATE RIDER is made this 20th day of October, 2000, and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1704 CORNWALL LANE
SACHSE, TEXAS 75048
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 12.375 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The adjustable interest rate I will pay may change on the first day of November, 2003, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**TEXAS HOME EQUITY ADJUSTABLE RATE RIDER (Cash Out - First Lien)**

01/98
*(Page 1 of 2 Pages)*

2000236 05433

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 15.3750% or less than 12.3750%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18.3750 % or less than 12.3750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Texas Home Equity Adjustable Rate Rider.

**DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.**

......................................................(Seal)
SAMUEL G. BREITLING by JO ANN
BREITLING, Attorney-in-Fact —Borrower

......................................................(Seal)
JO ANN BREITLING —Borrower

*(Page 2 of 2 Pages)*

2001236 05434

2001236 05436

## FILED

2000 DEC -6 AM 11: 57

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY



Any provision herein which restricts the sale, rental, or use of the
described real property because of color or race is invalid and
unenforceable under federal law.         COUNTY OF DALLAS
STATE OF TEXAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by me.

DEC  6  2000



COUNTY CLERK, Dallas County, Texas

OCT-24-2000  11:08        AAMES HOME LOAN                    9725543782  P.06/09

Recording requested by and Return To:
AAMES HOME LOAN
3347 MICHELSON DRIVE #300
IRVINE, CA 92612

**REDACTED**

Dam ID:          05-2
Loan No.                                                                              1520052
Borrower: SAMUEL G. BREITLING ①

09/06/01   2A33006   411.00
Deed

## ASSIGNMENT OF
## SECURITY INSTRUMENT

Date:    OCTOBER 20, 2000

Owner and Holder of Security Instrument ("Holder"):
    AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN, A
    Corporation which is organized and existing under the laws of the State of CALIFORNIA

Assignee:
    AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION
    350 S. GRAND AVE. 42ᴺᴰ FLOOR
    LOS ANGELES, CA 90071

Security Instrument is described as follows:
    Date:                    OCTOBER 20, 2000
    Original Amount:         $129,600.00
    Borrower:                SAMUEL G. BREITLING AND WIFE, JO ANN BREITLING
    Lender:                  AAMES FUNDING CORPORATION. A CALIFORNIA CORPORATION, DBA AAMES
                             HOME LOAN
    Trustee:                 MICHAEL L. RIDDLE
    Deed of Trust Recorded or Filed on        12-06-00
    As Instrument/Document No.     121743
    In Book    256        , Page   05437
    Of Official Records in the County Recorder's or Clerk's Office DALLAS County, TEXAS,

Property (including any improvements) Subject to Lien:
    SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

For value received, Holder sells, transfers, assigns, grants and conveys the Security Instrument and the Note described therein, all
of the Holder's right, title and interest in the Security Instrument and Note, and all of the Holder's title and interest in the Property
to Assignee and Assignee's successors and assigns, forever.

When the context requires, singular nouns and pronouns include the plural.

IN WITNESS WHEREOF, Holder has caused these presents to be signed by its duly authorized officers(s), if applicable, and to be
attested and sealed with the Seal of the Corporation, as many be required.

Seal)

[Notary Seal: K. BRANSOM / Commission # 1211863 / Notary Public - California / Orange County / My Comm. Expires Feb 27, 2003]

AAMES FUNDING CORPORATION, A CALIFORNIA
CORPORATION, DBA AAMES HOME LOAN

By:
Amy Brackett

(Printed Name and Title)

**Assistant Secretary**

State of CALIFORNIA
County of ORANGE

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
Amy Brackett Assistant Secretary Known to me to be the same person and officer
whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said AAMES
FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN, A Corporation which is
organized and existing under the laws of the State of CALIFORNIA, and that (s)he executed the same as the act of such entity for
the purposes and consideration therein expressed, and in the capacity therein stated.

                                                          OCT 2 6 2000
GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____ , 20____.

My commission expires: _____

Notary Public in and for CALIFORNIA

# K. Bransom

2001174 01317

OCT-24-2000  11:01        AMES HOME LOAN                    9725543782   P.07/09

# Attachment A

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211, Page 668 of the Map Records of Dallas County, Texas.

2001 174 01318

61310 4711002

FILED

2001 SEP -5 PH 12:29

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY

Any provision herein which restricts the sale, rental, or use of the
described real property because of color or race is invalid and
unenforceable under federal law.
STATE OF TEXAS                          COUNTY OF DALLAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by me.

SEP 6 2001



Earl Bullock
COUNTY CLERK, Dallas County, Texas

OCT-24-2000  11:01        AAMES HOME LOAN                    9725543782  P.08/09
Data ID:
Loan No.:
Borrower:  SAMUEL G. BREITLING                           **REDACTED**

## ASSIGNMENT OF
## SECURITY INSTRUMENT                                    1520053

                                                09/06/01  2833009    $11.00
                                                          Deed
Date:  OCTOBER 20, 2000

Owner and Holder of Security Instrument ("Holder"):
AAMES CAPITAL CORPORATION, A CALIFORNIA CORPORATION

Assignee (Including Mailing Address):

Bankers Trust Company of California, N.A. In Trust for the benefit of the holders of Aames Mortgage
Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2, C/O Countrywide Home Loans
SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065

Security Instrument is described as follows:
      Date:              OCTOBER 20, 2000
      Original Amount:   $126,000.00
      Borrower:          SAMUEL L. BREITLING AND WIFE, JO ANN BREITLING
      Lender:            AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES
                         HOME LOAN
      Trustee:           MICHAEL L. RIDDLE
      Deed of Trust Recorded in the Official Records in the County Recorder's or Clerk's Office of DALLAS County, TEXAS,

Property (including any improvements) Subject to Lien:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

For value received, Holder sells, transfers, assigns, grants and conveys the Security Instrument and the Note described therein, all
of the Holder's right, title and interest in the Security Instrument and Note, and all of the Holder's title and interest in the Property
to Assignee and Assignee's successors and assigns, forever. *Recorded 12-06-00*

When the context requires, singular nouns and pronouns include the plural.        *Inst. 1219743*
                                                                                  *Book 236 Page 05431*

IN WITNESS WHEREOF, Holder has caused these presents to be signed by its duly authorized officer(s), if applicable, and to be
attested and sealed with the Seal of the Corporation, as may be required.

(Seal)                                        AAMES CAPITAL CORPORATION, A CALIFORNIA
                                              CORPORATION


K. BRANSOM
Commission # 1211863                          By _____
Notary Public - California                              (Printed Name and Title)
Orange County
My Comm. Expires Feb 27, 2003                 **Amy Brackett**

                                              **Assistant Secretary**

State of  CALIFORNIA
County of ORANGE

      BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared
**Amy Brackett, Assistant Secretary** Known to me to be the same person and officer
whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said AAMES
CAPITAL CORPORATION, A CALIFORNIA CORPORATION, and that (s)he executed the same as the act of such entity for the
purposes and consideration therein expressed, and in the capacity therein stated.
                                                          OCT 2 6 2000
      GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 20_____.

My commission expires: _____          _____
                                            Notary Public in and for CALIFORNIA

# K. Bransom

2001 174 01320

OCT-24-2000  11:01          AMES HOME LOAN                    9725543782   P.09/09

# Attachment A

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the
City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211,
Page 698 of the Map Records of Dallas County, Texas.

TOTAL P.09

2001174 01321

2001 174 01322

FILED

2001 SEP -5 PH 12: 29

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY



Any provision herein which restricts the sale, rental, or use of the
described real property because of color or race is invalid and
unenforceable under federal law.
STATE OF TEXAS          COUNTY OF DALLAS
I hereby certify this instrument was filed on the date and time
stamped hereon by me and was duly recorded in the volume and
page of the named records of Dallas County, Texas as stamped
hereon by me.

SEP 6 2001



COUNTY CLERK, Dallas County, Texas

This Document Prepared By and
After Recording Please Mail To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

 AL   20080320072
5 PGS

BC #

---

# RE-RECORD ASSIGNMENT OF DEED OF TRUST TO INCLUDE TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT RECORDING INFORMATION AND PROPERTY ADDRESS

## (Recorded 12/06/00, Book 2000236. Page 05437, Instrument No. 1219743)

APN No:     n/a

Grantor:    **DEUTSCHE BANK NATIONAL TRUST COMPANY**, as Trustee
            **FKA Bankers Trust Company of California, N.A.** as Trustee
            **1761 E. St. Andrews Place, Santa Ana, CA 92705**

Grantee:    **ELLINGTON MORTGAGE PARTNERS, L.P.**
            **53 Forest Avenue, Suite 301, Greenwich, CT 06870**

Property Address:   **1704 Cornwall Lane, Sachse, Texas 75048**

 AL    **20080173631**

3 PGS

## REDACTED

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
BC: ▮▮▮▮

**Assignor:**     Deutsche Bank National Trust Company, As Trustee
FKA Bankers Trust Company of California, N.A. As Trustee
1761 East St. Andrew Place, Santa Ana, California 92705

**Assignee:**     Ellington Mortgage Partner, L.P.
53 Forest Avenue, Suite 301, Greenwich, CT 00687

**Property Address : 8908 Forest creek Drive, Tomball, Texas 77375**

<u>Subsequent Recording:</u>

See page 2 for Mortgage recording information

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on March 5, 2001,  Instrument No U908898, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on August 24, 2001,  Instrument No V260630, here in.

REDACTED

After Recording Mail to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas 75024
Bx: ▮▮▮▮

**ASSIGNMENT OF DEED OF TRUST**

**FOR VALUE RECEIVED:**
ASSIGNOR:          **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**
                   **FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE**

ASSIGNOR ADDRESS:     1761 EAST ST. ANDREW PLACE
                      SANTA ANA, CA 92705

DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:
ASSIGNEE:          **ELLINGTON MORTGAGE PARTNERS, L.P.**

ASSIGNEE'S ADDRESS:    53 FOREST AVE. STE. 301
                       GREENWICH, CT 0687

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:      *see)*

DATED:                          10/20/2000
ORIGINAL LOAN AMOUNT:           $129,600.00
TRUSTOR/BORROWER:               SAMUEL G. BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:           AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                                CALIFORNIA CORPORATION
TRUSTEE:                        MICHAEL L. RIDDLE

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:       1704 CORNWALL LANE
                                SACHSE, TEXAS 75048
*See*
*Attached Exhibit "A" for Legal Description*
TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.

                                DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE

                                BY: _____
                                NAME: CHRISTOPHER CORCORAN
                                TITLE: VICE PRESIDENT

STATE OF **CA** ~~ORANGE~~  ) SS:
COUNTY OF **ORANGE**

ON _____ **3-31** _____, 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED **CHRISTOPHER CORCORAN . VP** PERSONALLY KNOWN TO ME
(OR ~~PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE~~) TO BE THE DULY AUTHORIZED
PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE **DEUTSCHE BANK** AND
ACKNOWLEDGED TO ME THAT SUCH _____ **VP** _____ EXECUTED THE WITHIN INSTRUMENT
PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

_____
NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:

JEANNE STAFFORD
Commission # 1729363
Notary Public - California
Orange County
My Comm. Expires Mar 5, 2011

_____
                      DO NOT GO BELOW THIS LINE

TEXAS 11/99

EXHIBIT "A"

# REDACTED

BC: █████

Legal Description:

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the
City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211,
Page 688 of the Map Records of Dallas County, Texas.

Prepared By & After Recording Mail to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas  75024

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County  TEXAS
May 27, 2008  09:50:55 AM
FEE: $24.00          20080173631

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County TEXAS
October 02, 2008  04:00:52 PM
FEE: $32.00        20080320072

REDACTED

This Document Prepared By and
After Recording Please Mail To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

  RL   **20080320073**
5 PGS

BC # ▓▓▓▓

---

## RE-RECORD ASSIGNMENT OF DEED OF TRUST TO INCLUDE TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT RECORDING INFORMATION

### (Recorded 12/06/00, Book 2000236. Page 05437, Instrument No. 1219743)

APN No:   n/a

Grantor:   ELLINGTON MORTGAGE PARTNERS, L.P.
53 Forest Avenue, Suite 301, Greenwich, CT 06870

Grantee:   LNV Corporation
7195 Dallas Parkway, Plano, Texas 75024

Property Address:   1704 Cornwall Lane, Sachse, Texas 75048

AL

3 PGS

**REDACTED**

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
BC: ███

**Assignor:** Ellington Mortgage Partner, L.P.
53 Forest Avenue, Suite 301, Greenwich, CT 00687

**Assignee:** LNV Corporation
7195 Dallas Parkway, Plano, Texas 75024

**Property Address :** 1704 Cornwall Lane, Sachse, Texas 75048

**Subsequent Recording:**

See page 2 for Mortgage recording information

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on September 6, 2001, Instrument No 1520052, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on September 6, 2001, Instrument No 1520053, here in.

Assigned to Deutsche Bank National Trustee Company f/k/a Bankers Trust Company of California, 1761 E. St. Andrews Place, Santa Ana, CA 92705 on_____, Book _____ Page _____, Instrument No_____, here in.

REDACTED

After Recording Mail to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas 75024

**ASSIGNMENT OF DEED OF TRUST**

FOR VALUE RECEIVED:
ASSIGNOR:                    **ELLINGTON MORTGAGE PARTNERS, L.P**

ASSIGNOR ADDRESS:            53 FOREST AVE. STE. 301
                             GREENWICH, CT 06870

DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:
ASSIGNEE:                    LNV Corporation
                             7195 Dallas Parkway
ASSIGNEE'S ADDRESS:          Plano, Texas 75024

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:

DATED:                       10/20/2000
ORIGINAL LOAN AMOUNT:        $129,500.00
TRUSTOR/BORROWER:            SAMUEL G BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:        AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                             CALIFORNIA CORPORATION
TRUSTEE:                     MICHAEL L. RIDDLE

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:    1704 CORNWALL LANE
                             SACHSE, TEXAS 75048
See Attached Exhibit "A" for legal Description
TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.

                             ELLINGTON MORTGAGE PARTNERS, L.P

                             BY: _____
                             NAME: KC WILSON
                             TITLE: ATTORNEY-IN-FACT

STATE OF **CA**          ) SS:
COUNTY OF **ORANGE**     )

ON **3-21** _____, 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED KC WILSON ATTORNEY-IN-FACT PERSONALLY KNOWN TO ME (OR
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED PERSON
WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE LP AND ACKNOWLEDGED TO ME THAT
SUCH ATTORNEY-IN-FACT EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A
RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON: __3/5/11__

JEANNE STAFFORD
Commission # 1729363
Notary Public - California
Orange County
My Comm. Expires Mar 5, 2011

_____
                    DO NOT GO BELOW THIS LINE

TEXAS 11/99

EXHIBIT "A"

# REDACTED

BC: █████

Legal Description:

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas, according to the Map thereof recorded in Volume 74211, Page 688 of the Map Records of Dallas County, Texas.

Prepared By & After Recording Mail to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024



FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County TEXAS
May 27, 2008 09:50:55 AM
FEE: $24.00                    20080173632

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County  TEXAS
October 02, 2008  04:00:52 PM
FEE: $32.00          20080320073



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

January 04, 2013

Samuel G Breitling                    MS1720
Jo Ann Breitling
1704 Cornwall Ln
Sachse TX 75048-3648

BY CERTIFIED MAIL

RE: NOTICE OF DEFAULT
    Loan Number: 1424085965

Dear Samuel G Breitling and Jo Ann Breitling :

According to the terms of your loan documents, you agreed to make
monthly payments on or before the first day of each month.

In accordance with the specific terms of your loan documents, notice
is hereby given that:

1.  You have breached the contractual obligation of the deed of trust/
    mortgage in that you failed to make your monthly payments required
    by the note. Your loan is now in default.

2.  To cure this default, you must contact this office to
    obtain the amount necessary to cover the delinquent installments
    and any other fees and costs incurred.

3.  Payment of that amount must be received no later than
    35 days after the date of this letter. Payment of said
    amount will cure this breach. Payment must be made by
    certified funds, which may be in the form of either a money
    order or a cashier's check.

4.  Failure to cure such breach on or before the date specified in
    Item 3 shall result in the immediate acceleration of the principal
    secured by the deed of trust/mortgage and the sale of the property
    covered therein. There is a possibility that a deficiency judgment
    might be pursued if the foreclosure proceedings are undertaken.

5.  You have the right to reinstate after acceleration and the right to
    bring a court action to assert the non-existence of a default or
    any other defense to the acceleration and sale.

QL062/DKI



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

Page 2 of 2
January 04, 2013
Loan Number: 1424085965

6.   Dovenmuehle Mortgage, Inc. is acting as the servicer for
     LNV CORPORATION, who is the holder of the Note and
     deed of trust/mortgage associated with your loan. Dovenmuehle
     Mortgage, Inc., as servicer, is representing the mortgagee, whose
     address is 7195 DALLAS PARKWAY, PLANO, TX 75024.
     The mortgage servicer is authorized to represent the
     mortgagee by virtue of a servicing agreement with the mortgagee,
     and is authorized to collect the debt and to administer any
     resulting foreclosure of the property secured by the loan.

If you do not understand this letter, you are urged to seek the advice
of your attorney, if you have one. Otherwise, you are urged to call
us immediately at the number shown below.

<u>Assert and protect your rights as a member of the armed forces of
the United States. If you are or your spouse is serving on active
military duty, including active military duty as a member of the
Texas National Guard or the National Guard of another state or as A
member of a reserve component of the armed forces of the United
States, please send written notice of the active duty military service
to the sender of this notice immediately.</u>

Sincerely,

Collection Department


CALL TOLL FREE:     1-877-471-7889

THIS DOCUMENT IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU ARE IN BANKRUPTCY
OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL
PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT
OR AS AN ACT TO COLLECT, OR RECOVER ALL OR ANY PORTION OF THE
DEBT FROM YOU PERSONALLY.


QL062/DKI



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

January 04, 2013

Samuel G Breitling                          MS1720
Jo Ann Breitling
5250 Hwy 78 750112
Sachse TX 75048-

BY CERTIFIED MAIL

RE: NOTICE OF DEFAULT
    Loan Number: 1424085965

Dear Samuel G Breitling and Jo Ann Breitling :

According to the terms of your loan documents, you agreed to make
monthly payments on or before the first day of each month.

In accordance with the specific terms of your loan documents, notice
is hereby given that:

1.  You have breached the contractual obligation of the deed of trust/
    mortgage in that you failed to make your monthly payments required
    by the note. Your loan is now in default.

2.  To cure this default, you must contact this office to
    obtain the amount necessary to cover the delinquent installments
    and any other fees and costs incurred.

3.  Payment of that amount must be received no later than
    35 days after the date of this letter. Payment of said
    amount will cure this breach. Payment must be made by
    certified funds, which may be in the form of either a money
    order or a cashier's check.

4.  Failure to cure such breach on or before the date specified in
    Item 3 shall result in the immediate acceleration of the principal
    secured by the deed of trust/mortgage and the sale of the property
    covered therein.

5.  You have the right to reinstate after acceleration and the right to
    bring a court action to assert the non-existence of a default or
    any other defense to the acceleration and sale.

                                              QL060/DKI



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

Page 2 of 2
January 04, 2013
Loan Number: 1424085965

6. Dovenmuehle Mortgage, Inc. is acting as the servicer for
   LNV CORPORATION, who is the holder of the Note and
   deed of trust/mortgage associated with your loan. Dovenmuehle
   Mortgage, Inc., as servicer, is representing the mortgagee, whose
   address is 7195 DALLAS PARKWAY, PLANO, TX 75024.
   The mortgage servicer is authorized to represent the
   mortgagee by virtue of a servicing agreement with the mortgagee,
   and is authorized to collect the debt and to administer any
   resulting foreclosure of the property secured by the loan.

If you do not understand this letter, you are urged to seek the advice
of your attorney, if you have one. Otherwise, you are urged to call
us immediately at the number shown below.

Assert and protect your rights as a member of the armed forces of
the United States. If you or your spouse is serving on active
military duty, including active military duty as a member of the
Texas National Guard or the National Guard of another state or as A
member of a reserve component of the armed forces of the United
States, please send written notice of the active duty military service
to the sender of this notice immediately.

Sincerely,

Collection Department

CALL TOLL FREE:    1-877-471-7889

THIS DOCUMENT IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU ARE IN BANKRUPTCY
OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL
PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT
OR AS AN ACT TO COLLECT, OR RECOVER ALL OR ANY PORTION OF THE
DEBT FROM YOU PERSONALLY.

QL060/DKI



Comptroller of the Currency
Administrator of National Banks

Attn: Licensing Unit
50 Fremont Street, Suite 3900
San Francisco, CA 94105
(415) 545-5930, FAX (415) 442-5315

April 4, 2002

Sandra L. West
Assistant Secretary
C/o Deutsche Bank
31 West 52nd Street-M/S NYC09-0810
New York, NY 10019

Re:   **Title Change**
      **Bankers Trust Company of California, N.A.**
      Los Angeles, California
      Charter No. 18608

Dear Ms. West:

The Office of the Comptroller of the Currency (OCC) has received your letter concerning the title change, appropriate amendment to the First Article of Association of Bankers Trust Company of California, National Association. The OCC will update their records to reflect that as of *April 15, 2002,* the title of Bankers Trust Company of Califonia, National Association, Charter Number 18608 *will change to Deutsche Bank National Trust Company.*

The original of the bank's respective Article has been forwarded to the bank's official file with our Office and an original is hereby returned for your records.

As a result of the Garn-St Germain Depository Institutions Act of 1982, the OCC is no longer responsible for the approval of national bank name changes nor does it maintain official records on the use of alternate titles. The use of other titles or the retention of the rights to any previously used title is the responsibility of the bank's board of directors. Legal counsel should be copsulted to determine whether or not the new title, or any previously used title, could be challenged by competing institutions under the provisions of federal or state law.

Very truly yours,

James A. Bundy
Licensing Manager

Enclosure

APR 09 2003 12:35

PAGE.02

## BANKERS TRUST COMPANY OF CALIFORNIA,
## NATIONAL ASSOCIATION

I, DAVID ABRAMSON, certify that:

1.      I am the duly elected and acting Secretary of Bankers Trust Company of California, National Association (formerly, BT Trust Company of California), and as such officer, I am the official custodian of its records; that the following is a true and correct copy of resolutions adopted by the Association's shareholders; and that such resolutions are now lawfully in force and effect:

**RESOLVED**, that the Association is hereby authorized to amend the First Article of Association to read as follows:

FIRST:      The title of this Association shall be "Deutsche Bank National Trust Company."

**FURTHER RESOLVED**, that the effective date of the amendment of the First Article of Association shall be April 15, 2002.

2.      The following is a true and correct copy of a resolution of the Association's Board of Directors, and such resolution is now lawfully in force and effect:

**RESOLVED**, that the amendment of the First Article of Association to change the title of the Association to "Deutsche Bank National Trust Company" is hereby approved, effective April 15, 2002.

3.      The foregoing amendment to the Articles of Association has been duly approved by the Board of Directors of Bankers Trust Company of California, National Association on March 21, 2002.

4.      The Resolution and Amendment set forth above has not been modified or rescinded and is in full force and effect.

**IN WITNESS WHEREOF**, I have set my hand and the seal of this Association this 27th day of March 2002.

David Abramson
David Abramson
. Secretary

(S E A L)

State of New York  )
               ) ss.:
County of New York )

On the 27th day of March in the year 2002 before me, the undersigned, a Notary Public in and for said state, personally appeared David Abramson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Sandra L. West_
Notary Public

SANDRA L. WEST
Notary Public, State Of New York
No.01WE4942401
Qualified in New York County
Commission Expires September 18, 20__

**Office of the Comptroller of the Currency**

Accepted by: _James A. Bundy_
James A Bundy, Licensing Manager

Date: _4/4/02_



QC
7780717

OFFICE OF COUNTY RECORDER
HENNEPIN COUNTY, MINNESOTA

CERTIFIED FILED AND OR
RECORDED ON

**Comptroller of the Currency**
**Administrator of National Banks**

2002 JUL 30  PM 2: 12

7780717

Washington, DC  20219

AS DOCUMENT _____ CO. REC.

BY _____ DEPUTY

## CERTIFICATE

I, John D. Hawke, Jr., Comptroller of the Currency, do hereby certify that:

1. The Comptroller of the Currency, pursuant to Revised Statutes 324, et seq., as amended, 12 U.S.C. 1, et seq., as amended, has possession, custody and control of all records pertaining to the chartering, regulation and supervision of all National Banking Associations.

2. Effective April 15, 2002, the title of "Bankers Trust Company of California, National Association," Los Angeles, California, (Charter No. 18608), was changed to "Deutsche Bank National Trust Company," Los Angeles, California, (Charter No. 18608)..

IN TESTIMONY WHEREOF, I have

hereunto subscribed my name and

caused my seal of office to be affixed

to these presents at the Treasury

Department, in the City of

Washington and District of Columbia,

this 17th day of May, 2002.



John D. Hawke Jr.

Comptroller of the Currency

APR 09 2003 12:37

PAGE.05

Office of the Secretary

**Deutsche Bank**

Sandra L. West
Assistant Secretary

**OCC**

**MAR 2 9 2002**

**Western District**

Bankers Trust Corporation
31 West 52nd Street - NYC09-0810
New York, NY 10019

Tel 212 469-8174
Fax 646 324-9056

sandra.l.west@db.com

March 28, 2002

Mr. James A. Bundy, Licensing Manager
Office of the Comptroller of the Currency
Western District Office
50 Fremont Street
Suite 3900
San Francisco, CA 94105-2292

2002-03 E - 09 - 0007

Dear Mr. Bundy:

Re:   Bankers Trust Company of California, National Association (Charter No. 18508)
        Title Change and Amendment of First Article of Association

Please be advised that the Board of Directors and sole shareholder of Bankers Trust Company of California, National Association, have authorized a change of title for the Association, effective on April 15, 2002, as follows:

From:  Bankers Trust Company of California, National Association

To:   Deutsche Bank National Trust Company

Pursuant to 12 U.S.C. 21a, we are hereby requesting approval of the Office of the Comptroller of the Currency to amend the Articles of Association to reflect the name change and enclose two certified copies of the proposed amendment.

The Association, whose principal office is located at 300 South Grand Avenue, Los Angeles, CA 90071, was originally chartered in October, 1985 under the name of BT Trust Company of California, National Association.

From its inception through June 4, 1999, the Association was an indirect wholly-owned subsidiary of Bankers Trust New York Corporation (now, Bankers Trust Corporation) ("Bankers Trust"). In June 1999, Bankers Trust, including its subsidiaries, was acquired by a subsidiary of Deutsche Bank AG, a bank organized and existing under the laws of the Federal Republic of Germany. Deutsche Bank was recently listed on the New York Stock Exchange ("NYSE") and its activities are reported daily in the U.S. media.

Since its acquisition of Bankers Trust and subsequent listing on the New York Stock Exchange, awareness of the Deutsche Bank brand has increased significantly. Management now deems it

Mr. James A. Bundy
March 28, 2002
Page 2

In the best interests of the firm at this time to consolidate all of the U.S.-based businesses under the global Deutsche Bank brand.

Thank you for your consideration in this matter.

Please direct any questions or problems regarding this application to the undersigned, as follows:

> c/o Deutsche Bank
> 31 West 52nd Street – M/S NYC09-0810
> New York, NY 10019
> Phone: (212) 469-8174
> Fax: (646) 324-9056

Sincerely yours,

BANKERS TRUST CORPORATION

By: _____
Sandra L. West
Assistant Secretary

enclosures

cc:   Joseph Marcy, OCC Lead Trust Examiner

Foy B. Hester, Vice President and Controller
Bankers Trust Company of California, N.A.

David Abramson, Secretary and Counsel
Bankers Trust Company of California, N.A.



**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA  92705 4934

Tel  714 247 6000
Fax 714 247 6009

### Change of Bankers Trust Company names

We are pleased to announce that effective April 15, 2002, we will be renaming our Bankers Trust legal entities to reflect the name of our parent company, Deutsche Bank.  This action consolidates our global presence and builds on Deutsche Bank's listing on the New York Stock Exchange in October 2001.

This initiative will change only the names of our entities and will not affect the legality of any contracts or other documents signed in the name of Bankers Trust companies.

As of April 15, 2002 the legal entities we operate under will be renamed as follows:

| Old company name | New company name |
|---|---|
| Bankers Trust Company | Deutsche Bank Trust Company Americas |
| Bankers Trust (Delaware) | Deutsche Bank Trust Company Delaware |
| Bankers Trust Company of California, N.A. | Deutsche Bank National Trust Company |
| BT Services Tennessee, Inc | DB Services Tennessee, Inc. |
| Bankers Trustee Company Limited | Deutsche Trustee Company Limited |

Over the next few months you will find that all our communications (letters, invoices. etc) will begin to use the new Deutsche Bank names.

Although we believe that the name changes will have minimal impact on our clients, please note the following points concerning US secured financings and US$ payments.

### Secured Financings

US clients with secured financings will need to use the new Deutsche Bank company names for all UCC filings made on or after  April 15, 2002.

### US$ Payments

Our **name** at the Federal Reserve Bank, New York Clearing House (CHIPS) and SWIFT **will not change** on April 15, 2002.  We anticipate changing these **names** towards the end of the third quarter 2002.  However, the actual bank identifiers **will not** change (Fed ABA number, CHIPS Participant number, or SWIFT ID number).  We will send you further details closer to the implementation date.  Until then (end of third quarter 2002), all payments should continue to be made using the existing names and numbers as shown on our payment instructions.

If you normally pay us by check, please use the new company names with effect from  April 15, 2002.  Although checks made out to the old company names will continue to be honored for some time after this date, we would be grateful if you would make the change immediately on April 15 to avoid any confusion.

If you have any questions about these name changes, please call your usual contact in Corporate Trust & Agency Services or (714) 247-6000.



**Deutsche Bank**

1761 East St. Andrew Place
Santa Ana, CA 92705-4934

Tel 714 247 6000
Fax 714 247 6009

**Attention Clients Preparing Documents for Signature:**

The names representing our two business names will be changed as listed below:

**Old Company Name**
Bankers Trust Company of California, N.A.
Bankers Trust Company

**New Company Name**
Deutsche Bank National Trust Company
Deutsche Bank Trust Company Americas

New transactions that are closed directly under the Deutsche Bank names on or after April 15th will not need the following "formerly known as Bankers Trust" language.

For any deals closed under the previous names, please prepare the signature block to read as follows. If necessary, we can provide you with copies of the official regulatory filings regarding our name change.

**For Trust deals please use one of the following:**

Deutsche Bank National Trust Company as Trustee
formerly known as Bankers Trust Company of California, N.A. as Trustee
or
Deutsche Bank Trust Company Americas as Trustee
formerly known as Bankers Trust Company as Trustee
or
Deutsche Bank National Trust Company as Trustee
formerly known as Bankers Trust Company of California, N.A. as Trustee
Successor Trustee by Operation of Law to Bank of America NT & SA,
Successor by Merger to Security Pacific National Bank as Trustee

If you have any questions about these name changes, please call your usual contact in Corporate Trust & Agency Services or (714) 247-6000.

Page 1 of 2     "CERTIFIED FUNDS ONLY"XQ991/EOC
         ****OUR OFFICES WILL BE CLOSED FRIDAY, JULY 4, 2014****

June 05, 2014

Servicer
Mgc Mortgage, Inc.
Customer Service Phone:
877-471-7888
**internal Alex**

                    LOAN NUMBER:
                    LOAN TYPE:          Conventional
PAYOFF STATEMENT FOR:   PROPERTY ADDRESS:   1704 Cornwall Ln
Samuel G Breitling
Jo Ann Breitling                        Sachse TX 75048-3648
5250 Hwy 78 750112
Sachse TX 75048

**REDACTED**

THIS STATEMENT REFLECTS THE TOTAL AMOUNT DUE UNDER THE TERMS OF THE
NOTE/SECURITY INSTRUMENT THROUGH THE CLOSING DATE WHICH IS
June 30, 2014.  If this obligation is not paid in full by this date,
then you should obtain from us an updated payoff amount before closing.

These figures are good through June 30, 2014.
This loan is due for the March 01, 2010 payment.
The current total unpaid principal balance is:     $    122,577.71
Interest at 12.37500%                                    66,937.37
NSF Fee                                                      25.00
Escrow/Impound overdraft                                 29,315.85
Unpaid late charges                                       8,581.71
Recoverable Balance                                       1,545.00
Prop Inspection Fee                                          10.00
Prop Inspection Fee                                         556.00
Misc Client Fee                      .00
Payoff Update Fee                                              .00
* * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * *   $    229,548.64
Funds received after June 30, 2014 will require an additional
$ 41.56 in interest per Day.

FUNDS RECEIVED FOR PAYOFF MUST BE U.S. DOLLARS IN THE FORM OF CERTIFIED
FUNDS OR WIRE TRANSFER ONLY, PAYABLE TO THE SERVICER LISTED ABOVE.
WIRES RECEIVED AFTER 3 PM CST WILL BE CREDITED ON THE NEXT BUSINESS DAY
AND WILL REQUIRE ADDITIONAL PER DIEM INTEREST.

Funds sent by wire to Bank of America, Chicago, IL, ABA Number          ,
Account Number          , Account Title: Payoff Clearing Account.  The
borrower(s) name and loan number must be referenced as part of the wire
transfer package, otherwise, funds will be rejected.  To confirm our
receipt of your wire transfer and application of our Payoff, contact
our Customer Service Department at the telephone number listed above, the
day following your wire transfer.

PAYOFF CHECKS should be mailed to the above Servicer at the following
address:
1 Corporate Drive, Suite 360, Lake Zurich, IL 60047, attention
Payoff Processing.

The payoff figures provided are subject to final verification by the Note
Holder.  The noteholder reserves the right to adjust these figures and
refuse or accept any funds which are insufficient to satisfy the full
indebtedness for any reason.

Issuance of this statement does not suspend the contract requirement
to make the mortgage payments when due.  A late charge of $ 68.53 will
be assessed 10 days after a current payment is due and should be
added to the payoff total if received after that time.

If the funds received for payoff are not sufficient to satisfy the full
indebtedness of the loan, the shortage will be taken from the escrow/
impound account (if applicable).  If funds are still not sufficient to
satisfy the full indebtedness, the payoff funds will be returned.  This
delay will cost you (the borrower) additional interest, as interest
continues to accrue on the indebtedness until the total amount required
for payoff is received.

XQ991/EOC   Loan Number:

Page 2 of 2

Loan Number: ███████
Borrower Name: Samuel G Breitling
               Jo Ann Breitling

REDACTED

Unless your escrow balance is being credited to your payoff balance,
scheduled tax and insurance disbursements will continue to be made from
the escrow/impound account until the date the mortgagee listed above
receives payoff funds.  Any escrow balance or overpayment will be mailed
to the borrowers within 15 business days after the receipt and processing
of the funds required to pay the loan in full.

If your (the borrower(s)) monthly payments are automatically deducted
from a checking or savings account, a written cancellation request
must be received by our Automatic Drafting Department thirty (30) days
prior to the payoff date.  Payments will continue to be automatically
deducted until the written request is received and has been processed.

Provide any changes to the borrower(s) mailing address where the
executed release/reconveyance documents should be sent.

                           LEGAL NOTICES

TEXAS FINANCE CODE Ï 343.106 REQUIRES PAYOFF STATEMENT CONTAIN
CLOSING DATE AND DATE THROUGH WHICH PAYOFF AMOUNT IS VALID.   THESE
REQUIREMENTS CANNOT BE DELETED FROM PAYOFF STATEMENT.

TEXAS FINANCE CODE Ï 343.106 REQUIRES THE IMPLEMENTING RULE TO ALLOW
MORTGAGE SERVICERS AT LEAST SEVEN (7) BUSINESS DAYS FROM THE DATE OF
RECEIPT OF PAYOFF REQUEST TO RESPOND TO A REQUEST MADE UNDER THE
STATUTE.

ANY AMOUNT HELD IN ESCROW AT CLOSING WILL BE SETTLED IN ACCORDANCE
WITH APPLICABLE FEDERAL LAW.

Request date: June 05, 2014.
Requested by: Erika Orc, Representative


XQ992/EOC

## CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION,<br>ITS SUCCESSORS AND ASSIGNS,<br>  PLAINTIFF | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | |
| SAMUEL G. BREITLING,<br>JO ANN BREITLING,<br>GMAC MORTGAGE, LLC FKA<br>NORWEST MORTGAGE, INC.,<br>PINNACLE REALTY ADVISORS, INC.,<br>AND PALISADES ACQUISITION V, LLC<br>  DEFENDANTS | §<br>§<br>§<br>§<br>§<br>§<br>§ | DALLAS COUNTY, TEXAS<br><br><br>134TH JUDICIAL DISTRICT |

### BUSINESS RECORDS AFFIDAVIT - FIRM

"My name is Jeffrey B. Hardaway. I am of sound mind, capable of making this affidavit, and am personally acquainted with the facts stated in it.

I am employed as an attorney at Codilis & Stawiarski, P.C. (hereinafter "C&S"), attorneys for LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS (hereinafter "Plaintiff") and I am authorized to make this affidavit on behalf of C&S as attorneys for Plaintiff herein.

I am custodian of the records of C&S attorneys of record for Plaintiff. Attached hereto are sixteen (16) pages of records from the file against Defendants. The said sixteen (16) pages of records are kept by C&S, attorneys for Plaintiff in the regular course of business, and it was in the regular course of business for an employee or representative of C&S, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

On March 14, 2014, demand letters were forwarded by certified mail, return receipt requested. The letters were forwarded via certified mail, return receipt requested to Defendants Samuel G. Breitling and Jo Ann Breitling at 1704 Cornwall Ln, Sachse, TX 75048 and 5250 Hwy 78 750112, Sachse, TX 75048. True and correct copies of the United States Postal Service receipt reflecting delivery of the letter or non-delivery of the letters are attached to the demand letters."

CODILIS & STAWIARSKI, P.C.

JEFFREY B. HARDAWAY, Affiant

C&S 14-0070

## EXHIBIT "B"

SWORN TO AND SUBSCRIBED before me on this the ___7th___ day of July, 2014.

MAYRA GUZMAN
Notary Public, State of Texas
My Commission Expires
July 23, 2016

Notary Public, State of Texas

C&S 14-0070

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2569**

Samuel Breitling
1704 Cornwall Ln
Sachse, TX 75048

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS 77060
### (281) 925-5200

March 14, 2014                                          *via Certified Mail*

Samuel Breitling
1704 Cornwall Ln
Sachse, TX 75048

RE:   Case No. 44-14-0070
      **Dovenmuehle Mortgage Inc.   Loan No. xxxxxx5965**
      **Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.**
      **Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,**
      **Trustee.**

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT
TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.\*\***

**<u>Assert and protect your rights as a member of the armed forces of the United States.  If you are or
your spouse is serving on active military duty, including active military duty as a member of the
Texas National Guard or the National Guard of another state or as a member of a reserve
component of the armed forces of the United States, please send written notice of the active duty
military service to the sender of this notice immediately.  Sender is:   Codilis & Stawiarski, PC, 650
North Sam Houston Parkway East, Suite 450, Houston, Texas 77060</u>**

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who
is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other
charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you
pay the amount shown above, an adjustment may be necessary after we receive your check, in which
event we will inform you before depositing the check for collection.  Payment must be made with
certified funds or other form of payment acceptable to the Servicer.  For further information, write us or
call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for
LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is
representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL
60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing
agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec.
51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting
foreclosure of the property secured by the above referenced loan.**

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070



Search USPS.com or Track Packages   Subr

Quick Tools          Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

# USPS Tracking™


**Customer Service ›**
Have questions? We're here to help.

**Tracking Number:** 71901089523035142569

**Expected Delivery Day: Monday, March 17, 2014**

## Product & Tracking Information                 Available Actions

**Postal Product:**          **Features:**
First-Class Mail®          Certified Mail™          Return Receipt Electronic

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **March 16, 2014 , 2:58 am** | Processed through USPS Sort Facility | **COPPELL, TX 75099** |

Your item was processed through and left our COPPELL, TX 75099 facility on March 16, 2014 at 2:58 am. The item is currently in transit to the destination. No further information is available for this item.

| | | |
|---|---|---|
| March 16, 2014 , 1:23 am | Depart USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 5:08 pm | Processed through USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 2:19 am | Depart USPS Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 , 9:29 pm | Processed at USPS Origin Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 | Electronic Shipping Info Received | |
| March 14, 2014 , 6:57 pm | Accepted at USPS Origin Sort Facility | HOUSTON, TX 77002 |

## Track Another Package
**What's your tracking (or receipt) number?**

[                                        ]   Track It

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ·
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›
National Postal Museum ›

USPS.COM   |   Copyright© 2014 USPS. All Rights Reserved.

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                    PAGE 285
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2576**

Samuel Breitling
5250 Hwy 78 750112
Sachse, TX 75048

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS 77060
## (281) 925-5200

March 14, 2014                                    *via Certified Mail*

Samuel Breitling
5250 Hwy 78 750112
Sachse, TX 75048

**RE:**   **Case No. 44-14-0070**
          **Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.**
          **Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,**
          **Trustee.**

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT
TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.\*\***

**Assert and protect your rights as a member of the armed forces of the United States. If you are or
your spouse is serving on active military duty, including active military duty as a member of the
Texas National Guard or the National Guard of another state or as a member of a reserve
component of the armed forces of the United States, please send written notice of the active duty
military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650
North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who
is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other
charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you
pay the amount shown above, an adjustment may be necessary after we receive your check, in which
event we will inform you before depositing the check for collection.  Payment must be made with
certified funds or other form of payment acceptable to the Servicer. For further information, write us or
call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for
LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is
representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL
60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing
agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec.
51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting
foreclosure of the property secured by the above referenced loan.**

44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust. Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current. If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

English    Customer Service    USPS Mobile                                    Register / Sign In

 **USPS.COM**

Search USPS.com or Track Packages    Subr

Quick Tools                Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions

# USPS Tracking™

 **Customer Service ›**
Have questions? We're here to help.

**Tracking Number:** 71901089523035142576

**Expected Delivery Day: Monday, March 17, 2014**

## Product & Tracking Information                              Available Actions

**Postal Product:**                    **Features:**
First-Class Mail®                      Certified Mail™        Return Receipt Electronic

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **March 16, 2014 , 2:58 am** | Processed through USPS Sort Facility | **COPPELL, TX 75099** |

Your item was processed through and left our COPPELL, TX 75099 facility on March 16, 2014 at 2:58 am. The item is currently in transit to the destination. No further information is available for this item.

| | | |
|---|---|---|
| March 16, 2014 , 1:23 am | Depart USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 5:08 pm | Processed through USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 2:19 am | Depart USPS Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 , 9:29 am | Processed at USPS Origin Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 | Electronic Shipping Info Received | |
| March 14, 2014 , 6:57 pm | Accepted at USPS Origin Sort Facility | HOUSTON, TX 77002 |

## Track Another Package

**What's your tracking (or receipt) number?**

[                                        ]    [ Track It ]

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›
National Postal Museum ›

**USPS.COM** | Copyright© 2014 USPS. All Rights Reserved.

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2583**

Jo Breitling
1704 Cornwall Ln
Sachse, TX 75048

## CODILIS & STAWIARSKI, P.C.
### 650 N. SAM HOUSTON PARKWAY., SUITE 450
### HOUSTON, TEXAS  77060
### (281) 925-5200

March 14, 2014                                                    *via Certified Mail*

Jo Breitling
1704 Cornwall Ln
Sachse, TX 75048

RE:   **Case No. 44-14-0070**
      **Dovenmuehle Mortgage Inc.   Loan No. xxxxxx5965**
      **Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.**
      **Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,**
      **Trustee.**

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT
TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.\*\***

**Assert and protect your rights as a member of the armed forces of the United States. If you are or
your spouse is serving on active military duty, including active military duty as a member of the
Texas National Guard or the National Guard of another state or as a member of a reserve
component of the armed forces of the United States, please send written notice of the active duty
military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650
North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who
is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20.  Because of interest, late charges, and other
charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you
pay the amount shown above, an adjustment may be necessary after we receive your check, in which
event we will inform you before depositing the check for collection.  Payment must be made with
certified funds or other form of payment acceptable to the Servicer.  For further information, write us or
call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for
LNV Corporation, who is the mortgagee.  Dovenmuehle Mortgage Inc., as mortgage servicer, is
representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL
60047.  The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing
agreement with the mortgagee.  Pursuant to the servicing agreement and Texas Property Code Sec.
51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting
foreclosure of the property secured by the above referenced loan.**
44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust.  Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current.  If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

English        Customer Service        USPS Mobile                                        Register / Sign In

 **USPS.COM**

Search USPS.com or Track Packages    Subr

Quick Tools          Ship a Package      Send Mail      Manage Your Mail      Shop      Business Solutions

# USPS Tracking™

 **Customer Service ›**
Have questions? We're here to help.

---

**Tracking Number: 71901089523035142583**

**Expected Delivery Day: Monday, March 17, 2014**

## Product & Tracking Information

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™              Return Receipt Electronic

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **March 16, 2014 , 2:58 am** | **Processed through USPS Sort Facility** | **COPPELL, TX 75099** |

Your item was processed through and left our COPPELL, TX 75099 facility on March 16, 2014 at 2:58 am. The item is currently in transit to the destination. No further information is available for this item.

| | | |
|---|---|---|
| March 16, 2014 , 1:23 am | Depart USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 5:08 pm | Processed through USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 2:19 am | Depart USPS Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 , 9:29 am | Processed at USPS Origin Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 | Electronic Shipping Info Received | |
| March 14, 2014 , 6:57 pm | Accepted at USPS Origin Sort Facility | HOUSTON, TX 77002 |

## Available Actions

---

## Track Another Package

**What's your tracking (or receipt) number?**

[                                        ]    Track It

---

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›
National Postal Museum ›

**USPS.COM** | Copyright© 2014 USPS. All Rights Reserved.

Codilis & Stawiarski, P.C.
650 North Sam Houston
Parkway East
Suite 450
Houston, TX 77060

44-14-0070



**7190 1089 5230 3514 2590**

Jo Breitling
5250 Hwy 78 750112
Sachse, TX 75048

# CODILIS & STAWIARSKI, P.C.
## 650 N. SAM HOUSTON PARKWAY., SUITE 450
## HOUSTON, TEXAS  77060
## (281) 925-5200

March 14, 2014

*via Certified Mail*

Jo Breitling
5250 Hwy 78 750112
Sachse, TX 75048

RE:   **Case No. 44-14-0070**
      **Dovenmuehle Mortgage Inc.   Loan No. xxxxxx5965**
      **Deed of Trust in Dallas County, Texas, dated October 20, 2000, executed by Samuel G.**
      **Breitling and wife, Jo Ann Breitling, as Grantor(s), and as conveyed to Michael L. Riddle,**
      **Trustee.**

**\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.\*\***

<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is:  Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060</u>

Dear Mortgagor:

This law firm represents Dovenmuehle Mortgage Inc., the mortgage servicer for LNV Corporation, who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

Name of the creditor to whom the debt is owed: LNV Corporation.

As of the date of this letter, you owe a balance of $76,707.20. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. Payment must be made with certified funds or other form of payment acceptable to the Servicer. For further information, write us or call 1-800-934-4045 or 281-925-5200.

**You are further notified that Dovenmuehle Mortgage Inc. is acting as the mortgage servicer for LNV Corporation, who is the mortgagee. Dovenmuehle Mortgage Inc., as mortgage servicer, is representing the mortgagee, whose address is c/o 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047. The mortgage servicer is authorized to represent the mortgagee by virtue of a servicing agreement with the mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the mortgage servicer is authorized to collect the debt and to administer any resulting foreclosure of the property secured by the above referenced loan.**
44-14-0070

The monthly installments on your mortgage loan have not been paid when due, resulting in a breach of the agreement in the Deed of Trust.  Unless such breach is corrected within thirty days (30 days) from the date of this letter, the Mortgage servicer of your mortgage loan will exercise its option to accelerate the maturity of the note and collect the debt by filing a lawsuit to proceed with a judicial foreclosure sale.

You may stop further action by remitting the total amount owed, which includes reasonable attorney's fee and expenses incurred in collecting to bring the loan current.  If the loan is accelerated, additional foreclosure costs will be added to the amount due.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale which you may have.

If you were a borrower in regard to this Note prior to the filing of a bankruptcy in which you received a discharge of the indebtedness, and if the indebtedness was not reaffirmed in the bankruptcy case, the Holder is exercising its *in rem* rights (the right to enforce the lien securing the Indebtedness) as allowed under applicable law and Lender is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

Very truly yours,

Jeffrey Hardaway
Codilis & Stawiarski, P.C.

44-14-0070

English       Customer Service       USPS Mobile                                          Register / Sign In

**≋USPS.COM**·                                   Search USPS.com or Track Packages   Subr

Quick Tools              Ship a Package      Send Mail       Manage Your Mail       Shop       Business Solutions

# USPS Tracking™

                                                    ✉   Customer Service ›
                                                         Have questions? We're here to help.

Tracking Number: 71901089523035142590

Expected Delivery Day: **Monday, March 17, 2014**

## Product & Tracking Information                          Available Actions

**Postal Product:**                **Features:**
First-Class Mail®                  Certified Mail™        Return Receipt Electronic

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **March 16, 2014 , 2:58 am** | Processed through USPS Sort Facility | **COPPELL, TX 75099** |

Your item was processed through and left our COPPELL, TX 75099 facility on March 16, 2014 at 2:58 am. The item is currently in transit to the destination. No further information is available for this item.

| | | |
|---|---|---|
| March 16, 2014 , 1:23 am | Depart USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 5:08 pm | Processed through USPS Sort Facility | COPPELL, TX 75099 |
| March 15, 2014 , 2:19 am | Depart USPS Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 , 9:29 pm | Processed at USPS Origin Sort Facility | NORTH HOUSTON, TX 77315 |
| March 14, 2014 | Electronic Shipping Info Received | |
| March 14, 2014 , 6:57 pm | Accepted at USPS Origin Sort Facility | HOUSTON, TX 77002 |

## Track Another Package

What's your tracking (or receipt) number?

[                                        ]   Track It

**LEGAL**                ON USPS.COM              ON ABOUT.USPS.COM          OTHER USPS SITES
Privacy Policy ›         Government Services ›    About USPS Home ›          Business Customer Gateway ›
Terms of Use ›          Buy Stamps & Shop ›      Newsroom ›                 Postal Inspectors ›
FOIA ›                  Print a Label with Postage › USPS Service Alerts ›   Inspector General ›
No FEAR Act EEO Data ›  Customer Service ›       Forms & Publications ›     Postal Explorer ›
                        Delivering Solutions to the Last Mile › Careers ›   National Postal Museum ›
                        Site Index ›

≋USPS.COM   |   Copyright© 2014 USPS. All Rights Reserved.

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this ___19th___ day of _February_, A.D., _2015_.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By _Celia Flowes_ Deputy

# EXHIBIT 3(D)

FILED
DALLAS COUNTY
8/28/2014 4:35:46 PM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| **LNV CORPORATION,**<br>**ITS SUCCESSORS AND ASSIGNS,** | §<br>§ | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | §<br>§ | |
| **v.** | §<br>§<br>§ | |
| | §<br>§ | **DALLAS COUNTY, TEXAS** |
| **SAMUEL G. BREITLING,**<br>**JO ANN BREITLING,**<br>**GMAC MORTGAGE, INC.,**<br>**NORTHWEST MORTGAGE, INC.,**<br>**PINNACLE REALTY ADVISORS, INC.,**<br>**and PALISADES ACQUISITION V, LLC** | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Defendants.** | § | **134TH JUDICIAL DISTRICT** |

### SAMUEL G. BREITLING AND JO ANN BREITLING'S RESPONSE TO PLAINTIFF'S MOTION FOR *IN REM* DEFAULT AND *IN REM* SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now Comes, Samuel G. Breitling and Jo Ann Breitling ("the Breitlings" or "Defendants"), file this Response to LNV Corporation, its Successors and Assigns' ("LNV" or "Plaintiff") Motion for *In Rem* Default and *In Rem* Summary Judgment (the "Motion"), and would respectfully show the Court as follows:

### I.   SUMMARY

1.    Plaintiff's Motion is insufficient to allow foreclosure because Plaintiff has completely ignored the fact that a valid lien does not even exist. The Texas Supreme Court has established that the bank has the burden to **prove** that a valid home equity lien exists, prior to obtaining a foreclosure order. Whether a valid home equity lien exists is determined by the lender's compliance with the Texas Constitution, art. XVI, §50(a)(6). LNV has not established that it has a valid lien on Plaintiff's home; therefore, LNV is not entitled to summary judgment.

## II.   **NATURE AND STAGE OF PROCEEDINGS**

2.      Plaintiff brought this lawsuit for non-judicial foreclosure and alternatively, judicial

foreclosure. *See Plaintiff's Original Petition for Foreclosure.*

3.      The Breitlings were served on June 5, 2014 and timely answered on June 23, 2014. *See*

*Defendant Samuel G. Breitling and Jo Ann Breitling's Original Answer.*

4.      The Court signed a Scheduling Order on July 2, 2014, setting the case for non-jury trial

on March 30, 2015.

5.      Plaintiff filed its Motion for *In Rem* Default and *In Rem* Summary Judgment on July 7,

2014—only five days after the court issued a Scheduling Order and two weeks after the

Breitlings appeared in this case.

6.      To date, no discovery has been conducted, and Plaintiff has yet to respond to Defendants'

notice to cure constitutional violations (see below).

## III.   **FACTS**

7.      On October 20, 2000, the Breitlings executed a Texas Home Equity Note and Security

Instrument (together "the Loan") on their homestead in favor of Aames Funding Corporation, a

California Corporation, dba Aames Home Loan. *See Note and Security Instrument attached as*

*Exhibits 1 and 2.*

8.      The Loan, however, contained numerous violations of Texas Constitution, Article XVI,

Section 50(a)(6) ("§ 50(a)(6)). Specifically:

- the fees and charges exceeded three percent (3%) of the loan amount, in violation of
  TEX. CONST. art. XVI, § 50(a)(6)(E);

- the Loan closed less than twelve (12) days after the borrower received notice that the
  loan was governed by § 50(a)(6), which violated TEX. CONST. art. XVI, § 50(a)(6)(M)(i);

- the Breitlings did not receive a copy of the final loan documents nor an
  acknowledgement of the three-day right to rescind the document, in violation of TEX.

Page 2 of 7

CONST. art. XVI, §§ 50(a)(6)(Q)(v) and 50(a)(6)(Q)(viii);

- an appraisal was not prepared, in violation of TEX. CONST. art. XVI, § 50(a)(6)(h)(1); and

- the Breitlings and the lender did not execute an acknowledgement as to the fair market value of the property on the date the Loan was made, or if one was executed, it was not provided to borrower at closing in violation of TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

9.     Because of these constitutional violations, the lender never had a valid lien against the Breitlings' homestead. Defendants cannot be in default of a lien that never existed under Texas law.

10.    On July 22, 2014, the Breitlings sent to Plaintiff a Notice to Cure its § 50(a)(6) violations. *See Notice to Cure attached as Exhibit 3.* Pursuant to § 50(a)(6)(Q)(x), Plaintiff must cure these violations within sixty (60) days. TEX. CONST. art. XVI § 50(a)(6)(Q)(x). To date, Defendants have not received any responses from Plaintiff.

## IV.    **LEGAL STANDARD**

11.    A nonmovant in a traditional summary judgment proceeding is not required to produce summary-judgment evidence until after the movant establishes it is entitled to summary judgment as a matter of law. *Casso v. Brand*, 776 S.W.2d 551 (Tex. 1989). In deciding whether there is a disputed issue of material fact that precludes summary judgment, the court takes as true all evidence favorable to the nonmovant. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The court must view the evidence in the light most favorable to the nonmovant and must indulge in every reasonable inference and resolve all doubts in favor of the nonmovant. *Limestone Prods.*, 71 S.W.3d at 311; *Nixon*, 690 S.W.2d at 549.

Page 3 of 7

## V.   ARGUMENTS & AUTHORITIES

### A. Plaintiff Has Failed to Prove It Has a Valid Lien and Therefore is Not Entitled to Summary Judgment.

12.    LNV's Motion only suggests that it is entitled to foreclose because it alleges that the Breitlings are in default on their home equity lien. However, this argument is insufficient to entitle LNV to an order for foreclosure. LNV's Motion ignores the Breitlings' Answer that **a valid lien does not even exist**.

13.    Attempted home equity liens that violate any provision of the Texas Constitution, Article XVI, Section 50(a)(6) are invalid. *Carrington v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 343 (Tex. 2001) ("One of the amendment's **conditions for the lien's validity** is that the lender or any noteholder for the extension of credit **shall forfeit all principal and interest** of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)) (emphasis added). No mortgage, trust deed, or other lien on the homestead **shall ever be valid** unless it secures a debt described by this section. TEX. CONST. art. XVI, § 50(c); *id* (emphasis added).

14.    The burden of proof rests on the party attempting to foreclose. Plaintiff is suggesting that a valid lien exists so as a result, it has authority to foreclose. The Texas Supreme Court has established that the bank has the burden to prove that a lien existed. *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 784-85 (Tex. 1988) ("A lien on a homestead can be created only in the manner set out in the Constitution...**First Bank had the burden to prove that a lien existed**.") (emphasis); *see also In re Chambers*, 419 B.R. 652, 670 (Bankr. E.D. Tex. 2009) ("the **home equity lender has the burden to prove that a lien exists** for some reason other than estoppel.") (emphasis); *see also In re Gulley*, 436 B.R. 878 (Bankr. N.D. Tex. 2010) (citing to *In*

Page 4 of 7

*re Chambers*).

15.     Here, Plaintiff has the burden to establish that a valid lien exists. However, Plaintiff only asserts that Defendants are in default. Plaintiff has failed to show that a valid lien exists and as such, its Motion must fail.

### B.   A Valid Lien Does Not Exist Because of LNV's Numerous Constitutional Violations.

16.     As suggested, Plaintiff has ignored the Constitutional violations. The Loan violates TEX. CONST. art. XVI §§ 50(a)(6)(E), 50(a)(6)(M)(i), 50(a)(6)(Q)(v), 50(a)(6)(Q)(ix), 50(a)(6)(h)(1) and 50(a)(6)(Q)(viii). Specifically:

- the fees and charges exceeded three percent (3%) of the loan amount in violation of TEX. CONST. art. XVI, § 50(a)(6)(E);

- the Loan closed less than twelve (12) days after the borrower received notice that the loan was governed by § 50(a)(6), which violated TEX. CONST. art. XVI, § 50(a)(6)(M)(i);

- the Breitlings did not receive a copy of the final loan documents nor an acknowledgement of the three-day right to rescind the document, in violation of TEX. CONST. art. XVI, §§ 50(a)(6)(Q)(v) and 50(a)(6)(Q)(viii);

- an appraisal was not prepared in violation of TEX. CONST. art. XVI, § 50(a)(6)(h)(1); and

- the Breitlings and the lender did not execute an acknowledgement as to the fair market value of the property on the date the Loan was made, or if one was executed, it was not provided to borrower at closing in violation of TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

17.     LNV does not have a valid lien on the Breitling's home because the strict requirements of § 50(a)(6) were not met. Further, to date, Plaintiff has not replied to Defendants' request to cure the Constitutional violations. Accordingly, Plaintiff's summary judgment must be denied because a valid lien does not exist and Plaintiff is not entitled to an order for foreclosure.

### C.   CONCLUSION

18.     WHEREFORE, PREMISES CONSIDERED, the Defendants Samuel G. Breitling and Jo Ann Breitling pray that the Court deny LNV's Motion for *In Rem* Default and *In Rem* Summary

Page 5 of 7

Judgment. LNV has not established nor produced evidence that it is entitled to foreclose. The Breitlings further seek such additional relief, at law or equity, to which they may show themselves to be justly entitled.

Respectfully submitted this 28th day of July, 2014.

THE LANE LAW FIRM

By: /s/Anh Thu N. Dinh
Robert "Chip" C. Lane
State Bar No. 24046263
Anh Thu N. Dinh
State Bar No. 24071480
Kelsi M. Wade
State Bar No. 24088597
6200 Savoy
Drive, Suite1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile
ATTORNEYS FOR DEFENDANTS
SAMUEL G. BREITLING AND
JO ANN BREITLING

**EXHIBITS**
Exhibit 1 – Note
Exhibit 2 – Security Instrument
Exhibit 3 – Notice to Cure

Page 6 of 7

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2014 the foregoing was sent to the following attorneys of record via U.S. Mail, certified return receipt and/or facsimile.

Jeffrey B. Hardaway
Robert L. Negrin
Mary M. Speidel
Codilis & Stawiarski, P.C.
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
(281) 925-5256 – Telephone
(281) 925-5300 – Facsimile
ATTORNEYS FOR PLAINTIFF
LNV CORPORATION, ITS
SUCCESSORS AND ASSIGNS

_/s/Kelsi M. Wade_____
Kelsi M. Wade

Page 7 of 7

Loan No: 9825282
Borrower: SAMUEL G. BR[...]



Data ID: 862

Borrower's
Initials:

## THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION

### THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION

# TEXAS HOME EQUITY ADJUSTABLE RATE NOTE
## (6 Month Libor Index—Rate Caps)
## (Cash Out—First Lien)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

October 20, 2000

Place of Execution: RICHARDSON       TEXAS
          (City)      [State]

1704 CORNWALL LANE
SACHSE, TEXAS 75048
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for a loan that I have received, I promise to pay U.S. $ 129,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 12.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

3. **PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on December 1, 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 78954, PHOENIX, ARIZONA 85062, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,370.61. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE (Cash Out - First Lien)

01/98
(Page 1 of 4 Pages)



4.   **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A)  Change Dates**

   The interest rate I will pay may change on the first day of November, 2003, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B)  The Index**

   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

   **(C)  Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

   **(D)  Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Change Date will not be greater than 15.3750% or less than 12.3750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18.3750 % or less than 12.3750 %.

   **(E)  Effective Date of Changes**

   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F)  Notice of Changes**

   The Note Holder will deliver or mail to me a notice of any changes in my interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

5.   **BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

   I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6.   **LOAN CHARGES AND FEES**

   All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

   If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.

   It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

   The provisions of this Section 6 shall supersede any inconsistent provision of this Note or the Security Instrument.

*(Page 2 of 4 Pages)*

Loan No: 9825262   Data ID: 862

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of TEN (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice by certified mail telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given in writing by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure by the Note Holder to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of the Borrower's promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 9 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(Page 3 of 4 Pages)



**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12.  **APPLICABLE LAW**

This Note shall be governed by the laws of the State of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

13.  **NO ORAL AGREEMENTS**

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.


WITNESS THE HAND(S) OF THE UNDERSIGNED.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

_Samuel G. Breitling by JoAnn Breitling_____(Seal)
SAMUEL G. BREITLING by JO ANN
BREITLING, Attorney-In-Fact —Borrower

_JoAnn Breitling_____(Seal)
JO ANN BREITLING —Borrower

*[Sign Original Only]*


PAY TO THE ORDER OF
AAMES HOME LOAN
WITHOUT RECOURSE

AAMES FUNDING CORPORATION, A CALIFORNIA
CORPORATION, DBA AAMES HOME LOAN

By:_____

(Printed Name and Title)


*(Page 4 of 4 Pages)*

## ALLONGE TO NOTE

LOAN NUMBER:                9825282

BORROWER NAME:         SAMUEL G. BREITLING

LOAN AMOUT:                $129,600.00

PAY TO THE ORDER OF:

LNV CORP

WITHOUT RECOURSE
ELLINGTON MORTGAGE PARTNERS, L.P.

BY: _____

NAME:       KC WILSON

TITLE:       ATTORNEY-IN-FACT

## ALLONGE TO NOTE

LOAN NUMBER:        9825282

BORROWER NAME:     SAMUEL G. BREITLING

LOAN AMOUT:         $129,600.00

PAY TO THE ORDER OF:   ELLINGTON MORTGAGE PARTNERS, L.P.

WITHOUT RECOURSE
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FKA
BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE

BY: _____

NAME:    CHRISTOPHER CORCORAN

TITLE:   VICE PRESIDENT

BC: 609641

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Samuel G. Breitling by Jo Ann Breitling, Attorney-in-Fact and Jo Ann Breitling, in the original principal amount of $129,600.00, dated October 20, 2000, and payable to Aames Funding Corporation, a California Corporation, dba Aames Home Loan, as amended or modified (the "Note").

Pay to the order of LNV Corporation, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

Ellington Mortgage Partners, LP

By: _____
KC Wilson, Attorney-In-Fact

PAY TO THE ORDER OF
**Aames Capital Corporation**
**A California Corporation**
**Without recourse**
**AAMES FUNDING CORPORATION**
**A California Corporation**
**dba Aames Home Loan**

By:

**Amy Brackett**

**Assistant Secretary**

Pay to the order of

without recourse
Aames Capital Corporation
A California Corporation

By:

**Amy Brackett**

**Assistant Secretary**

Bankers Trust Company of California, N.A. In Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2.

BC: 609641

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Samuel G. Breitling by Jo Ann Breitling, Attorney-in Fact and Jo Ann Breitling, in the original principal amount of $129,600.00, dated October 20, 2000, and payable to Aames Funding Corporation, a California Corporation, dba Aames Home Loan, as amended or modified (the "Note").

Pay to the order of Ellington Mortgage Partners, LP, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Company FKA Bankers Trust Company of California, N.A. as Trustee

By: _____

Christopher Corcoran, Vice President

FF:$29.00                    77082-D-54/FNT/ANS/JN                    AA0002

00-2

1219742

After Recording Please Return To:
AAMES HOME LOAN
3347 MICHELSON DRIVE #300
IRVINE, CA 92612

12/06/00          2423587          $29.00
Deed of Trust

[Space Above This Line For Recording Data]

Loan No: 9825282                                                     Data ID: 862
Borrower: SAMUEL G. BREITLING

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
### (Cash Out - First Lien)

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

THIS SECURITY INSTRUMENT is made on October 20, 2000. The grantor is SAMUEL G. BREITLING
AND WIFE, JO ANN BREITLING
                                                                    ("Borrower").
The trustee is MICHAEL L. RIDDLE, whose address is 2323 BRYAN STREET, SUITE 1600, DALLAS, TX 75201
                                                                    ("Trustee").
The beneficiary is AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME
LOAN , A CORPORATION,

which is organized and existing under the laws of the State of CALIFORNIA,
and whose address is 350 S. GRAND AVE. 42ND FLOOR          LOS ANGELES, CA 90071
                                                                    ("Lender").

Borrower owes Lender the principal sum of ONE HUNDRED TWENTY-NINE THOUSAND SIX HUNDRED
and NO/100-----Dollars (U.S. $ 129,600.00). This debt is an extension of credit as defined by Section 50(a)(6), Article
XVI of the Texas Constitution (referred to herein as the "Extension of Credit") and is evidenced by Borrower's note dated
the same date as this Security Instrument (the "Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on November 1, 2030. This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment
of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located
in DALLAS County, Texas:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 1704 CORNWALL LANE,                                    SACHSE,
                                              [Street]                          [City]
TEXAS          75048                                    ("Property Address").
               [Zip Code]

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                                        Form 3044.1 01/98
                                                        (Page 1 of 8 Pages)

236 05425

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) hazard insurance premiums for the Property and; (d) flood insurance premiums for the Property, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are not pledged as additional security for any sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied: first, to amounts payable under Paragraph 2; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph 4. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

*(Page 2 of 8 Pages)*

2001236 05426

Loan No: 9825282                                           Data ID: 862

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments. If under Paragraphs 20 or 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default and may be held personally liable for debt evidenced by the Note or this Security Instrument if Borrower gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender, so far as allowed by applicable law, may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so. No powers are granted by Borrower to the Lender or Trustee that would violate provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other applicable law.

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, shall be paid to Lender to be applied to the sums secured by this Security Instrument.

In the event of a total or partial taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments.

2001236 05427

(Page 3 of 8 Pages)

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the original Borrower or Borrower's successors in interest from Borrower's obligations under the Note and this Security Instrument. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraphs 16 and 23. Borrower's covenants and agreements shall be joint and several subject to the provisions of Paragraph 23. Any Borrower who co-signs this Security Instrument, but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien, by the spouse of each owner of the Property; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Lender's Right-to-Comply.** It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this paragraph 12, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, as provided in this Paragraph 12, with any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Paragraph 13, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by the Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Paragraph 12, and such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, loan charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees is finally interpreted so that the interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limits, or a determination is made at any time by Lender that interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees, to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal Borrower owes under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

It is the express intention of the Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Paragraph 12 shall survive the payoff of the Extension of Credit. The provision of this Paragraph 12 shall supersede any inconsistent provision of the Note or this Security Instrument.

(Page 4 of 8 Pages)

200236 05428

Loan No: 9825282                                                    Data ID:  862

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given in writing by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given in writing by first class mail (but, by certified mail if the notice is given pursuant to Paragraph 12 hereof) to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 13.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of Texas. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by the Borrower related to the Extension of Credit.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) five days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to the power of sale contained in this Security Instrument after entry of a court order permitting exercise of such power of sale; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Paragraph 16.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**19. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 19, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

*(Page 5 of 8 Pages)*

200V**236 05429**

20. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any remedies permitted by applicable law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for the Borrower in a judicial proceeding.

21. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, the Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Paragraph 21 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall provide a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recording costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.

23. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

*(Page 6 of 8 Pages)*

Loan No: 9825282                                                                    Data ID: 862

If this Extension of Credit is obtained by such actual fraud, then, subject to Paragraph 11, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Paragraph 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

24. **Proceeds.** The Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

25. **No Assignment of Wages.** The Borrower has not assigned wages as security for the Extension of Credit.

26. **Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

27. **Rider(s) to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the riders were a part of this Security Instrument. [Check as applicable]

[X] Texas Home Equity Adjustable Rate Rider          [ ] Texas Home Equity Condominium Rider
[ ] Texas Home Equity Planned Unit Development Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.

..................................................(Seal)
SAMUEL G. BREITLING by JO ANN BREITLING,
Attorney-in-Fact —Borrower

..................................................(Seal)
JO ANN BREITLING —Borrower

(Page 7 of 8 Pages)

2004236 05431

[Space Below This Line For Acknowledgment(s)]

State of TEXAS                              §
County of   Dallas                         §

This instrument was acknowledged before me on the ___20th___ day of ___October___, 2000, by
Samuel G. Breitling by his Agent and Attorney-in-Fact, Jo Ann Breitling and
Jo Ann Breitling, by and through Drivers License.

> ANDREW N. SIEBERT
> My Commission Expires
> OCTOBER 23, 2001

_____
                                          Notary Public

[Personalized Seal]
My commission expires:_____      _____
                                          (Printed Name)

2004236 05432

Loan No:  9825282                                                        Data ID:  862
Borrower:  SAMUEL G. BREITLING

**THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY
# ADJUSTABLE RATE RIDER
### (6 Month Libor Index—Rate Caps)
### (Cash Out—First Lien)

THIS ADJUSTABLE RATE RIDER is made this 20th day of October, 2000, and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AAMES FUNDING CORPORATION, A CALIFORNIA CORPORATION, DBA AAMES HOME LOAN (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1704 CORNWALL LANE
SACHSE, TEXAS  75048
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 12.375 %.  The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The adjustable interest rate I will pay may change on the first day of November, 2003, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the average of the interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX  percentage point(s) ( 6.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**TEXAS HOME EQUITY ADJUSTABLE RATE RIDER (Cash Out - First Lien)**                    01/98
*(Page 1 of 2 Pages)*

200h236 05433

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 15.3750% or less than 12.3750%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18.3750 % or less than 12.3750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Texas Home Equity Adjustable Rate Rider.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

_Samuel G. Breitling by JoAnn Breitling_ .........(Seal)
SAMUEL G. BREITLING by JO ANN
BREITLING, Attorney-in-Fact —Borrower

_Jo Ann Breitling_ ...............(Seal)
JO ANN BREITLING —Borrower

*(Page 2 of 2 Pages)*

2001236 05434

Loan No: 9825282
Borrower: SAMUEL G. BREITLING

Data ID: 862

## LEGAL DESCRIPTION

Paste legal description here then photocopy. Attach to the Security Instrument and file as one instrument.

Being Lot 5 in Block F of SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, an Addition to the City of Sachse, Dallas County, Texas according to the Map thereof recorded in Volume 74211, Page 688 of the Map Records of Dallas County, Texas.

2000236 05435

FILED

2000 DEC -6 AM11: 57

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY





COUNTY CLERK, Dallas County, Texas

# THE LANE LAW FIRM
### TEXAS ATTORNEYS AT LAW

6200 SAVOY, SUITE 1150, HOUSTON, TX 77036-3300
OFFICE : 713.595.8200 | FAX : 713.595.8201

July 22, 2014

SENT VIA CRRR AND REGULAR MAIL TO: 7013-1710-0002-3377-2873
Dovenmule Mortgage
1 Corporate Dr., Suite 360          Fax:              847.574.7659
Lake Zurich, IL 60047

RE:   LN#   1424085965          Borrower:        Jo Ann Breitling
      Last Four SS#   0596                        1704 Cornwall Lane
                                                  Sachse, Texas 75048

## NOTICE OF REQUEST TO CURE

To Whom It May Concern:

    We represent the above-referenced borrower.

    With respect to the above-referenced loan, our analysis and investigation indicates there are a number of violations of Texas Constitution art. XVI, § 50(a)(6) governing Home-Equity Loans.  Under Texas Constitution art. XVI, § 50(a)(6)(Q)(x),

### <u>DEMAND IS HEREBY MADE THAT YOU TAKE ALL NECESSARY STEPS TO CURE THE FOLLOWING VIOLATIONS:</u>

1. Fees and charges to make the loan may not exceed 3 percent of the loan amount. Tex. Const. art. XVI, § 50(a)(6)(E).
   *Fees on the loan should not have exceeded $3,888.00 but fees actually charged equaled or exceeded $3,928.00.*
2. The loan must not have closed before 12 days after the original loan application was submitted to the lender or before 12 days after the borrower received notice that the loan was governed by Texas Constitution article XVI, § 50(a)(6). Tex. Const. art. XVI, § 50(a)(6)(M)(i).
   *The Loan closed less than 12 days after Borrower received notice that the loan was governed by the Texas Constitution article XVI, § 50(a)(6).*
3. The loan must have provided that borrowers would receive a copy of the final loan application and all executed documents signed at closing. Tex. Const. art. XVI, § 50(a)(6)(Q)(v).
   *Borrower did not receive a copy of the final loan documents.*
4. The value acknowledged in the written acknowledgement of fair market value is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6). Tex. Const. art. XVI, § 50(a)(6)(h)(1):

www.LaneLaw.com

*An appraisal report was not prepared.*

5.  The loan was made on the condition that the owner of the homestead and any spouse of the owner, may within three days after the extension of credit is made, rescind the extension of credit without penalty or charge. Tex. Const. art. XVI, § 50(a)(6)(Q)(viii).
    *The borrower did not receive an acknowledgement of the three-day right to rescind document, which notifies her of the right to abandon the extension of credit without penalty.*

6.  The owner of the homestead and the lender must sign a written acknowledgement as to the fair market value of the homestead property on the date the extension of credit is made. Tex. Const. art XVI, § 50(a)(6)(Q)(ix).
    *Borrower and lender did not execute an acknowledgment as to the fair market value of the property on the date the extension of credit was made, which must have been acknowledged in front of a notary public, or, if one was executed - it was not provided to borrower at closing.*

Please be aware that under Texas Constitution art. XVI, § 50(a)(6)(Q)(x), you must comply with this request to cure within 60 days of notification.

We await your timely response.


Sincerely,

Anh Thu Dinh
Attorney

CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION,<br>ITS SUCCESSORS AND ASSIGNS, | §<br>§ | IN THE DISTRICT COURT OF |
|     **Plaintiff,** | §<br>§ | |
| v. | §<br>§ | |
| | §<br>§ | |
| | § | **DALLAS COUNTY, TEXAS** |
| SAMUEL G. BREITLING,<br>JO ANN BREITLING,<br>GMAC MORTGAGE, INC.,<br>NORTHWEST MORTGAGE, INC.,<br>PINNACLE REALTY ADVISORS, INC.,<br>and PALISADES ACQUISITION V, LLC | §<br>§<br>§<br>§<br>§<br>§ | |
|     **Defendants.** | §<br>§ | **134ᵀᴴ JUDICIAL DISTRICT** |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Plaintiff LNV Corporation, Its Successors and Assigns'

Motion for *In Rem* Default and *In Rem* Summary Judgment (the "Motion"). After considering the

Motion, the responses, arguments of counsel, pleadings on file and applicable law, the Court

hereby DENIES the Motion. It is therefore

ORDERED that Plaintiff's Motion is hereby **DENIED.**

All other relief not expressly granted is hereby **DENIED.**

Signed on _____, 2014

**JUDGE PRESIDING**

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                                    PAGE 330
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
In Dallas, Texas, this __19th__ day of __February__, A.D., __2015__.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By _____ Deputy

# **<u>EXHIBIT 3(E)</u>**

FILED
DALLAS COUNTY
3/3/2014 10:28:26 PM
GARY FITZSIMMONS
DISTRICT CLERK

Cause No. DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION, | § | IN THE DISTRICT COURT |
| ITS SUCCESSORS AND ASSIGNS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING, | § | |
| JO ANN BREITLING, | § | |
| GMAC MORTGAGE, INC., | § | JURY DEMANDED BY |
| NORTHWEST MORTGAGE, INC., | § | DEFENDANT |
| PINNACLE REALTY ADVISORS, INC., | § | |
| and PALISADES ACQUISITION V, LLC | § | |
| | § | |
| Defendants. | § | 134TH JUDICIAL DISTRICT |

## DEFENDANTS SUPPLEMENT OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMNT

### To the Honorable Judge of the 134th District Court

Now comes defendants Samuel G. and JoAnn S. Breitling with a supplement supported

by evidence in opposition to LNV's Motion for Summary Judgment. LNV should not be

granted a summary judgment based solely on their pleadings for the following reasons:

MGC Mortgage Inc. acting in behalf of LNV, as per MGC's own statements in court

documents they filed in case number DC-11-07087 in the 116th Dallas District Court was

denied a summary judgment based on their claims that we did not have a case. The

Honorable Judge Tonya Parker therefore determined that material facts were in dispute

and that our cause of action against LNV was ripe for discovery and trial. These are

same disputed facts that exist now, but LNV has attempted to circumvent Judge Parker's

earlier decision by bringing the same matter between the same parties before this court and Your Honor.

In case number DC-11-07087 in the 116th Dallas District Court the Honorable Judge Tonya Parker already determined as fact that we had received no disclosures prior to closing in violation of TILA and RESPA. This contradicts LNV's claims regarding its standing to foreclose on our property and shows that a genuine dispute exists that raises questions of law and material fact pertaining to enforceability of the Note that cannot be determined without discovery or an evidentiary hearing.

Furthermore our signatures were forged in underwriting. We have not had an opportunity to be heard or to present evidence on this matter. Forgery of our signatures shows that a genuine dispute exists over the validity and enforceability of the Note. This raises questions of law and material fact that cannot be determined by a summary review of pleadings without discovery or an evidentiary hearing.

Documents MGC Mortgage submitted to the 116th Dallas District Court case number DC-11-07087 show that our mortgage was immediately and illegally securitized into the Aames Mortgage Trust 2000-2 Mortgage Pass-Through Certificates, Series 2000-2. The party we were deceived into believing was a "lender" was not a true lender with an interest in properly accounting for our payments, but a straw lender standing in the place of other parties. The terms of the contract were changed without our knowledge or acceptance. The "straw lender" and all the other parties involved knew Aames Home Loans was not a true lender and intentionally withheld this information from us with intent to deceive us and cause us harm by denying us the opportunity to understand the

risks and obligations associated with the contract. "Aames Home Loans" was in fact a "doing business as" name designed to intentionally conceal this entity's original name "Aames Funding Corporation." This name obscurification was done with intent to deceive. Consumers, like us, seeking a home mortgage are likely, as we were, to think a company with "Home Loans" in its name is a company that exclusively makes home mortgages; whereas the name "Aames Funding Corporation" sounds commercial and would have given us cause for concern. Most consumers, like we did, since we have had past mortgages that we paid in full, think of a lender as a party who loans money for the purchase of a home, then takes our payments, properly records our payments, and abides by the laws from the inception of our loan to the conclusion of our loan. This did not happen here. The party we contracted with hid the fact, which they knew, that we were not contracting with them but other parties unknown to us. This is fraud in the factum at the origination of the contract. Fraud in the factum voids the contract. A genuine dispute exists about whether the mortgage contract is void, thus negating LNV's claim it has standing to foreclose. A summary judgment may not be granted under these circumstances.

The assignments of deed of trust that LNV claims as its basis of standing to foreclosure are false. Two assignments were filed in my county in 2008 both have an execution date of March 21, 2008 and they were executed in California. The first assignment alleges that Deutsche Bank National Trust as Trustee FKA Bankers Trust Company of California N.A. as Trustee as "assignor" grants to Ellington Mortgage Partners, L.P. "all beneficial interest under that certain Deed of Trust". This assignment is signed by Christopher

Corcoran, as vice president of Deutsche Bank National Trust as Trustee. This assignment is notarized by Jeanne Stafford, commission # 172936 Orange County California.

The second assignment alleges to transfer from Ellington Mortgage Partner, L.P. as "Assignor" to LNV Corporation as "Assignee". This assignment is signed by KC Wilson as Attorney-In-Fact for Ellington Mortgage Partners, L.C. and notarized by Jeanne Stafford. See Exhibit A

On May 17, 2013 at 1:00 PM central time I, JoAnn Breitling, phoned the California notary Jeanne Stafford on her work phone at Icon Residential. I told her that we had two of her signatures on two assignments of deed of trust both with an execution date of March 21, 2013. I told her that Todd Craig from Ellington Mortgage Partners told me both verbally and by mail that he did not buy our note on that date and that no document exists to show he obtained our note in February 2007 so they created a fabricated one. I asked her why she would notarize something that did not occur as stated in the document. She answered that she was hired by KC Wilson to "sign" and she and KC were signing 500 to 800 documents a day as fast as they could for weeks.

KC Wilson and Jeanne Stafford, by Jeanne Stafford's own admission, are robo-signers. Robo-signing refers to a variety of practices. It can mean a qualified executive in the mortgage industry signs a mortgage affidavit document without verifying the information. It can mean someone forges an executive's signature, or a lower-level employee signs his or her own name with a fake title. It can mean failing to comply with notary procedures. In all of these cases, robo-signing involves people signing documents and swearing to their accuracy without verifying any of the information. Robo-signers

are also mortgage lending company employees who prepared and signed off on foreclosures without reviewing them, as the law requires. Robo-signing is illegal in all 50 States.

Good title cannot be based on fraud (even as to a 3d party). These assignments were executed and signed in California. In the case of a fraudulent transaction California law is settled. The Court in Trout v. Trout, (1934), 220 Cal. 652 at 656 made as much plain: "Numerous authorities have established the rule that an instrument wholly void, such as an undelivered deed, a forged instrument, or a deed in blank, cannot be made the foundation of a good title, even under the equitable doctrine of bonafide purchase. Consequently, the fact that defendant Archer acted in good faith in dealing with persons who apparently held legal title, is not in itself sufficient basis for relief." (Emphasis added, internal citations omitted).

This sentiment was clearly echoed in 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279 at 1286 where the Court stated:"It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." (Emphasis added).

Any apparent sale based on Robosigned documents is void – without any legal effect – like Monopoly Money. In Bank of America v. LaJolla Group II, the California Court of Appeals held that if a trustee is not contractually empowered under the Deed of Trust to hold a sale, it is totally void. It has no legal effect whatsoever. Title does not transfer.

No right to evict arises. The property is not sold. In turn, California Civil Code 2934a requires that the beneficiary execute and notarize and record a substitution for a valid substitution of trustee to take effect. Thus, if the Assignment of Deed of Trust is robo-signed, the sale is void. If the substitution of trustee is robo-signed, the sale is void. If the Notice of Default is Robo-Signed, the sale is void.

In fact robo-signing is criminal in California: California PENAL CODE SECTION 118-131(a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury. This subdivision is applicable whether the statement, or the testimony, declaration, deposition, or certification is made or subscribed within or without the State of California.

Hence, if forged Robo Signed signatures are used to obtain the foreclosure, it CERTAINLY makes a difference in California and other non-judicial foreclosure states. It would be a gross miscarriage of justice for this court to grant LNV a summary judgment in a foreclosure action when a judge in another court already denied LNV's

mortgage servicer, MGC which is owned by the same individual as LNV, D. Andrew

Beal, summary judgment on the same claims.

It would be a gross miscarriage of justice to grant LNV summary judgment in an action

that will cause substantial harm and unjustly deprive the Brietlings and their disabled son

of their home of 32 years when genuine questions of law and material fact exist.

Furthermore, LNV submitted an affidavit of Edward J. Bagdon with their Motion for

Summary Judgment. Over the weekend of August 2 and 3, 2014 the other Beal victims

located more than 50 mortgage related documents signed by Edward J. Bagdon and filed

with several county recorders across the United States. A partial list of these records

signed by Edward J. Bagdon, the counties and States where they were filed and what title

Bagdon claimed he held with what employer are below:

Pottawattamie County, IA filed 5/9/2012 as Authorized Signer for Mutual of Omaha Bank
Pottawattamie County, IA filed 12/29/2010 as Vice President of Centris Federal Credit Union
Pottawattamie County, IA filed 12/19/2011 as Vice President of Centris Federal Credit Union (Duff property)
Pottawattamie County, IA filed 12/19/2011 as Vice President of Centris Federal Credit Union (Churchill Property)
Pottawattamie County, IA filed 12/19/2011 as Vice President of Centris Federal Credit Union (Waters Property)
Pottawattamie County, IA filed 3/29/2003 as Vice President of United Western Bank
Forsyth County, MC filed 1/14/2005 as Vice President of Allegacy Federal Credit Union
Forsyth County, MC filed 6/22/2005 as Vice President of Allegacy Federal Credit Union  (Smith Property)
Forsyth County, MC filed 6/22/2005 as Vice President of Allegacy Federal Credit Union  (Pegram Property)
Forsyth County, MC filed 2/23/2004 as Vice President of Allegacy Federal Credit Union
Forsyth County, MC filed 10/12/2004 as Vice President of Allegacy Federal Credit Union  (Grantz Property)
Forsyth County, MC filed 10/12/2004 as Vice President of Allegacy Federal Credit Union  (Costley Property)
Forsyth County, MC filed 12/27/2004 as Vice President of Allegacy Federal Credit Union
Desoto County, MS filed 2/4/1993 as Assistant Vice President of Dovenmuehle Mortgage Inc.
Desoto County, MS filed 9/14/1993 as Assistant Vice President of Dovenmuehle Mortgage Inc.
Desoto County, MS filed 10/5/2000 as Assistant Vice President of Peoples Bank and Trust
Desoto County, MS filed 12/3/2003 as Assistant Vice President of Peoples Bank and Trust
Desoto County, MS filed 5/7/2003 as Assistant Vice President of Peoples Bank and Trust
Desoto County, MS filed 1/29/2010 as Assistant Vice President of AIG Federal Savings Bank
Desoto County, MS filed 8/6/12 as Secretary of MERS
Pottawattamie County, IA filed 3/29/2003 as Certifying Officer MERS
Forsyth County, MC 10/28/2013 as Assistant Secretary of MERS
Forsyth County, MC 9/9/2013 as Assistant Secretary of MERS

These records show that the way Edward J. Bagdon signs mortgage related records is consistent with the definition of a robo-signer.  Edward J. Bagdon is actually employed by Dovemuehle Mortgage Inc. an LPS service provider.  The only online information about Edward J. Bagdon's professional experience is from ZoomInfo (screen shot below) where he claims to be "Assistance Vice President" at a "Collection Department" located in Lake Zurich, Illinois where Dovenmuehle advertises they are located.



Edward J. Bagdon is not a credible or competent witness.  We will be denied our right to due process under the fifth and fourteenth amendments to the United States Constitution if this court grants LNV a summary judgment based on his written sworn testimony without allowing us the opportunity to cross examine this witness who has questionable qualifications and credibility; and without allowing us an opportunity to present our own

witnesses to challenge his one-sided testimony.  Due process does not exist without the

opportunity to challenge testimony.  Due process does not exist without the opportunity

for discovery.

"Statements of counsel in their briefs or argument while enlightening to the Court are not

sufficient for purposes of granting a motion to dismiss or summary judgment." (*TRINSEY*

*v. PAGLIARO Civ. A. No. 34873. 229 F.Supp. 647 (1964)*)

 

 

 

JoAnn S Breitling        Samuel G. Breitling

## CERTIFICATE OF SERVICE

Made by fax and by certified mail to attorneys for plaintiffs
Jeffrey B. Hardaway
Robert L. Negrin
Mary M. Speidel
650 N. Sam Houston Pkwy.Ste 450
Houston, Texas   77060

Fax 281-925-5300

# EXHIBIT A

After Recording Mail to:
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, Texas 75024
BC- 609041

ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED:
ASSIGNOR:                    DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
                             FKA BANKERS TRUST COMPANY OF CALIFORNIA, N.A. AS TRUSTEE

ASSIGNOR ADDRESS:            1761 EAST ST. ANDREW PLACE
                             SANTA ANA, CA 92705

DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:
ASSIGNEE:                    ELLINGTON MORTGAGE PARTNERS, L.P

ASSIGNEE'S ADDRESS:          53 FOREST AVE. STE. 301
                             GREENWICH, CT 0687

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:       (See)

DATED:                       10/20/2000
ORIGINAL LOAN AMOUNT:        $129,500.00
TRUSTOR/BORROWER:            SAMUEL G.BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:        AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                             CALIFORNIA CORPORATION
TRUSTEE:                     MICHAEL L. RIDDLE

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/06/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:    1704 CORNWALL LANE
                             SACHSE, TEXAS 75048

See
Attached Exhibit "A" for Legal Description
TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE

BY:
NAME: CHRISTOPHER CORCORAN
TITLE: VICE PRESIDENT

STATE OF CA          ) SS:
COUNTY OF ORANGE     )

ON _____ 3-31 _____, 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED CHRISTOPHER CORCORAN. VP , PERSONALLY KNOWN TO ME
(OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED
PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE ENTITY, AND
ACKNOWLEDGED TO ME THAT SUCH _____ VP _____ EXECUTED THE WITHIN INSTRUMENT
PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:



JEANNE STAFFORD
Commission # 1729363
Notary Public - California
Orange County
My Comm. Expires Mar 8, 2011

DO NOT GO BELOW THIS LINE



AL

3 PGS.

## ASSIGNMENT OF DEED OF TRUST

**After recording, please mail to:**
MGC Mortgage Inc
7195 Dallas Parkway
Document Control
Plano, TX 75024
BC: 609641

**Assignor:**     Ellington Mortgage Partner, L.P.
                  53 Forest Avenue, Suite 301, Greenwich, CT 00687

**Assignee:**     LNV Corporation
                  7195 Dallas Parkway, Plano, Texas 75024

**Property Address :** 1704 Cornwall Lane, Sachse, Texas 75048

**Subsequent Recording:**

**See page 2 for Mortgage recording information**

Assigned to Aames Capital Corporation, 350 S. Grand Avenue, 42nd Floor, Los Angeles, CA 90071, on September 6, 2001, Instrument No 1520052, here in.

Assigned to Banker trust Company of California, N.A. in Trust for the benefit of the holders of Aames Mortgage Trust 2000-2 Mortgage Pass – Through Certificates, Series 2000-2, C/O Countrywide Homes Loans SV-79, 1800 Tapo Canyon Road, Simi Valley, CA 93065, on September 6, 2001, Instrument No 1520053, here in.

Assigned to Deutsche Bank National Trustee Company f/k/a Bankers Trust Company of California, 1761 E. St. Andrews Place, Santa Ana, CA 92705 on_____, Book _____ Page _____, Instrument No_____, here in.

After Recording Mail to:
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, Texas 75024
BC: 609041
FOR VALUE RECEIVED
ASSIGNOR:                    ELLINGTON MORTGAGE PARTNERS, L P

ASSIGNOR ADDRESS:           53 FOREST AVE. STE. 301
                            GREENWICH, CT 06870

DOES HEREBY GRANT, CONVEY, ASSIGN, AND TRANSFER TO:
ASSIGNEE:                   LNV Corporation
                            7195 Dallas Parkway
ASSIGNEE'S ADDRESS:         Plano, Texas 75024

**ASSIGNMENT OF DEED OF TRUST**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:

DATED:                      10/20/2000
ORIGINAL LOAN AMOUNT:       $128,500.00
TRUSTOR/BORROWER:           SAMUEL G BREITLING AND JO ANN BREITLING
ORIGINAL BENEFICIARY:       AAMES FUNDING CORPORATION, DBA AAMES HOMELOAN, A
                            CALIFORNIA CORPORATION
TRUSTEE:                    MICHAEL L. RIDDLE

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DALLAS COUNTY, TEXAS
RECORDED: 12/08/2000 IN BOOK/VOLUME/LIBER: 236 PAGE: 05425 DOCUMENT: 1219742

PROPERTY SUBJECT TO LIEN:   1704 CORNWALL LANE
                            SACHSE, TEXAS 75048

See Attached Exhibit "A" for legal Description
TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.

ELLINGTON MORTGAGE PARTNERS, L P

BY: _____
NAME: KC WILSON
TITLE: ATTORNEY-IN-FACT

STATE OF **CA**
COUNTY OF **ORANGE** ) SS

ON ____ **3-21** ____, 2008, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED KC WILSON ATTORNEY-IN-FACT PERSONALLY KNOWN TO ME (OR
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED PERSON
WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE LP AND ACKNOWLEDGED TO ME THAT
SUCH ATTORNEY-IN-FACT EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A
RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

_____
NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON: **3/6/11**



JEANNE STAFFORD
Commission # 1729363
Notary Public - California
Orange County
My Comm. Expires Mar 6, 2011

DO NOT GO BELOW THIS LINE

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this ____ day of _____, A.D., ____.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By _____ Deputy

# EXHIBIT 3(F)

434G
000403
F

CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION, | § | IN THE DISTRICT COURT OF |
| ITS SUCCESSORS AND ASSIGNS, | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | |
| | § | |
| SAMUEL G. BREITLING, | § | DALLAS COUNTY, TEXAS |
| JO ANN BREITLING, | § | |
| GMAC MORTGAGE, LLC FKA | § | |
| NORWEST MORTGAGE, INC., | § | |
| PINNACLE REALTY ADVISORS, INC., | § | |
| AND PALISADES ACQUISITION V, LLC | § | |
| DEFENDANTS | § | 134TH JUDICIAL DISTRICT |

## FINAL JUDGMENT *IN REM ONLY* WITH HOME EQUITY FORECLOSURE ORDER

On the date this Final Judgment was signed, the Court considered Plaintiff LNV

CORPORATION, ITS SUCCESSORS AND ASSIGNS' Motion for Default and Summary

Judgment. The Court determined it has jurisdiction over the subject matter and the parties to this

proceeding.

The Court finds that this suit is an *in rem* proceeding insofar as it concerns only the real

property and improvements ("Property") commonly known as 1704 CORNWALL LANE,

SACHSE, TX 75048, and being more particularly described as follows, to-wit:

> **BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES,
> INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE,
> DALLAS COUNTY, TEXAS ACCORDING TO THE MAP THEREOF
> RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF
> DALLAS COUNTY, TEXAS.**

After considering the evidence of record in this cause, this Court finds that SAMUEL G.

BREITLING and JO ANN BREITLING obtained a loan on the Property from Aames Funding

Corporation, a California Corporation, DBA Aames Home Loan, a Corporation on or about

October 20, 2000.

C&S 14-0070

The loan servicing records for **SAMUEL G. BREITLING** and **JO ANN BREITLING**'s loan shows that it has been in default since March 1, 2010. The payoff on the loan is currently $229,548.64 plus interest accruing at the rate of $41.56 daily after June 30, 2014.

On or about April 14, 2014, Plaintiff filed this lawsuit *in rem* only to foreclose its security interest against the real property due to the material default in payment of the indebtedness secured by such property.

Defendant **SAMUEL G. BREITLING** was personally served with process on June 5, 2014 and has filed an answer. Defendant's answer is not sufficient to raise a genuine issue of material fact regarding the Deed of Trust or the amounts due and owing thereon.

Defendant **JO ANN BREITLING** was personally served with process on June 5, 2014 and has filed an answer. Defendant's answer is not sufficient to raise a genuine issue of material fact regarding the Deed of Trust or the amounts due and owing thereon.

Defendant **GMAC MORTGAGE, LLC FKA NORWEST MORTGAGE, INC.** was served with process on June 2, 2014. The citation with the officer's return and proof of service has been on file with the clerk of the court at least ten (10) days excluding the day of filing and today. The deadline for Defendant's answer was June 23, 2014. Accordingly, Defendant has admitted the material allegations in Plaintiff's Original Petition. Plaintiff requests that the Court enter a default judgment for Plaintiff and awarding such other relief to Plaintiff as shown by the default and summary judgment record

Defendant **PINNACLE REALTY ADVISORS, INC.** was served with process on April 22, 2014. The citation with the officer's return and proof of service has been on file with the clerk of the court at least ten (10) days excluding the day of filing and today. The deadline for

C&S 14-0070

Defendant's answer was May 19, 2014. Accordingly, Defendant has admitted the material allegations in Plaintiff's Original Petition. Plaintiff requests that the Court enter a default judgment for Plaintiff and awarding such other relief to Plaintiff as shown by the default and summary judgment record

Defendant **PALISADES ACQUISITION V, LLC** was served with process on May 7, 2014. The citation with the officer's return and proof of service has been on file with the clerk of the court at least ten (10) days excluding the day of filing and today. The deadline for Defendant's answer was June 2, 2014. Accordingly, Defendant has admitted the material allegations in Plaintiff's Original Petition. Plaintiff requests that the court enter a default judgment for Plaintiff and awarding such other relief to Plaintiff as shown by the default and summary judgment record.

In accordance with the foregoing findings, this Court orders that a Final Judgment should be **GRANTED** *in rem* only. It is therefore

ORDERED that a Final Judgment *in rem* only is hereby entered against the Defendants in the above-entitled litigation incorporated herein by reference. It is further

ORDERED that Plaintiff **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS** may proceed with foreclosure of the secured Property according to the terms of the security instrument, Tex. Prop. Code §51.002, and applicable Texas law. It is further

ORDERED that Plaintiff **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS** shall mail a copy of this Final Judgment to Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING** with the notice of the date, time and place of the foreclosure sale. It is further

C&S 14-0070

ORDERED that Defendants **SAMUEL G. BREITLING** and **JO ANN BREITLING** were provided notice of the Plaintiff **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS'** demand to cure default, notice of intent to accelerate and acceleration, as well as federal and Texas Fair Debt Collection Practices notices, that in the event of a public sale by Plaintiff in accordance with the provisions of Tex. Prop.Code §51.002, the only notice to be given the Defendants shall be the notice of public sale posted in accordance with Tex.Prop.Code §51.002(b)(1) and (2). It is further

ORDERED that Plaintiff **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS** file a certified copy of this Order in the Real property records of Dallas county within ten (10) business days after the entry of this Final Judgment; but failure to timely record this order shall not affect the validity of the foreclosure and defeat the presumption of TEX.CONST. art. XVI, § 50(i). It is further

ORDERED that Plaintiff **LNV CORPORATION, ITS SUCCESSORS AND ASSIGNS** is allowed such writs and process as may be necessary in the enforcement of this Final Judgment. It is further

ORDERED that costs of Court are taxed to the party by whom they were incurred.

All relief not expressly granted is DENIED. This Judgment finally disposes of all parties and all claims and is an appealable final judgment.

SIGNED: _August 4_, 2014.

_____
JUDGE PRESIDING

C&S 14-0070

**APPROVED AS TO FORM & ENTRY REQUESTED:**

**CODILIS & STAWIARSKI, P.C.**

**JEFFREY R. HARDAWAY**
State Bar No. 24038254
**ROBERT L. NEGRIN**
State Bar No. 14865550
**MARY M. SPEIDEL**
State Bar No. 18908400
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
(281) 925-5256
(281) 925-5300 (Facsimile)

**ATTORNEYS FOR PLAINTIFF,**
**LNV CORPORATION, ITS SUCCESSORS**
**AND ASSIGNS**

C&S 14-0070

STATE OF TEXAS }
COUNTY OF DALLAS }

I, FELICIA PITRE, Clerk of the District of Dallas County,
Texas, do hereby certify that I have compared this instrument
to be a true and correct copy of the original as appears on
record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office
in Dallas, Texas, this _19th_ day of _February_, A.D., _2015_.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS
By _Cecelia Flowers_ Deputy

# EXHIBIT 4

## SUBSTITUTE TRUSTEE'S DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

C&S No. 44-14-0070/Home Equity/SL/
Dovenmuehle Mortgage Inc.

**Date of Security Instrument:** October 20, 2000

**Grantor(s):** Samuel G. Breitling and wife, Jo Ann Breitling

**Original Trustee:** Michael L. Riddle

**Original Mortgagee:** Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a Corporation

**Recording Information:** in Volume 2000236, Page 05425 and in Clerk's File No. 1219742 in the Official Public Records of Dallas County, Texas

**Current Mortgagee:** LNV Corporation

**Mortgage Servicer:** Dovenmuehle Mortgage Inc. whose address is 1 Corporate Drive Suite 360, Lake Zurich, IL 60047. Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property.

**Date of Sale:** September 02, 2014

**Amount of Sale:** $149,400.54

**Grantee/Buyer:** LNV Corporation
1 Corporate Drive
Suite 360, Lake Zurich, IL 60047

**Legal Description:** BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1, AN ADDITION TO THE CITY OF SACHSE, DALLAS COUNTY, TEXAS ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

**Place of Sale of Property:** In the area designated by the Dallas County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where the foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the place where the Notice of Trustee's Sale was posted.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee, through the Mortgage Servicer, has appointed the Substitute Trustee and requested the Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. The Substitute Trustee sold the property to Buyer, who was the highest bidder for cash at the public auction, for the amount of the sale in the manner prescribed by law. The sale was conducted no earlier than 10:00 AM, as set forth in the Notice of Trustee's Sale and was concluded within three hours of such time. All matters, duties and obligations of the Mortgagee were legally performed.

Substitute Trustee, subject to any matters of record, and for the amount of sale paid by Buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor, Substitute Trustee hereby sell the above referenced property AS IS without any express or implied warranties, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §51.002 and §51.009.

*Affidavit of Posting/Filing Notice of Sale is attached hereto marked as Exhibit "1" and is by this reference incorporated herein for all purposes.*

EXECUTED this 5 day of September, 2014.

Shelley Ortolani
Substitute Trustee

STATE OF TEXAS

COUNTY OF Dallas

Before me, the undersigned Notary Public, on this day personally appeared **Shelley Ortolani** as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that (s)he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 5 day of September, 2014.

Michelle Huber
Notary Public State of Texas

MICHELE HRENA
Notary Public, State of Texas
My Commission Expires
October 09, 2016

RETURN TO:
  **CODILIS & STAWIARSKI, PC**
  650 North Sam Houston Parkway East, Suite 450
  Houston, Texas 77060

Exhibit "1"

## AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

**STATE OF TEXAS**

**COUNTY OF DALLAS**

The undersigned, having knowledge of the matters hereinafter set forth, after being duly sworn, deposes and states under oath, as follows:

"On behalf of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust/Security Instrument, dated October 20, 2000 executed by Samuel G. Breitling and wife, Jo Ann Breitling to Michael L. Riddle, Trustee(s) and recorded in the office of County Clerk in Volume 2000236, Page 05425 and in Clerk's File No. 1219742 of Dallas County, Texas; at least twenty-one (21) days preceding the date of the sale made by Shelley Ortolani, Substitute Trustee on the 2nd day of September, 2014, between the hours of 10:00 AM and 1:00 PM;

(i)   Written notice of the proposed sale designating the County in which the property securing the above Deed of Trust/Security Instrument will be sold, was posted ("Notice of Sale") at the courthouse door of each County in which the property securing the above Deed of Trust/Security Instrument is located, or as otherwise designated by the County Commissioners; and

(ii)  A copy of said Notice of Sale was filed in the office of the County Clerk of the County in which the sale was made."



Shelley Ortolani, Substitute Trustee

SUBSCRIBED AND SWORN TO before me on this _5_ day of _September_ _____, 2014.

NOTARY PUBLIC, STATE OF TEXAS

**STATE OF TEXAS**

**COUNTY OF** _Dallas_

MICHELE HRENA
Notary Public, State of Texas
My Commission Expires
October 09, 2016

This instrument was acknowledged before me on this this _5_ day of _September_ _____, 2014, by Shelley Ortolani.

NOTARY PUBLIC, STATE OF TEXAS

C&S No. 44-14-0070

MICHELE HRENA
Notary Public, State of Texas
My Commission Expires
October 09, 2016

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**09/08/2014 12:38:42 PM**
**$34.00**
**201400229264**



COUNTY OF DALLAS
hereby certify that the above and foregoing is a full, true, and
correct photographic copy of the original record now in my lawfu
ustody and possession, filed on the date stamped thereon and a:
he same is recorded in the Recorder's Records in my office unde:
he volume and page or instrument shown of thereon
hereby certify or

FEB 19 2015

COUNTY CLERK, Dallas County, Texas

By                                        Deputy

# **EXHIBIT 5**

Docket No. _____

Court Date 1-22-15

Time 10:00 a.m.

Cause No. _____

| | |
|---|---|
| LNV CORPORATION, <br> PLAINTIFF, | § <br> § <br> § | IN THE JUSTICE OF THE PEACE COURT |
| V. | § <br> § | |
| SAMUEL G. BREITLING, JO ANN <br> BREITLING, AND ALL OTHER <br> OCCUPANTS OF 1704 CORNWALL <br> LANE, SACHSE, TEXAS 75048 <br> DEFENDANTS. | § <br> § <br> § <br> § <br> § <br> § | OF DALLAS COUNTY, TEXAS <br><br> PRECINCT 2, PLACE 1 |

## SWORN COMPLAINT FOR FORCIBLE DETAINER

TO THE HONORABLE JUDGE OF SAID COURT:

### I.  Complaint

Plaintiff, a foreclosure sale purchaser, complains of the Defendants named above (hereinafter collectively "Defendants") for forcible detainer of the Plaintiff's Premises located at 1704 Cornwall Lane, Sachse, Texas 75048 (hereinafter "Premises").

### II.  Jurisdiction

Said Court is a justice of the peace court in the precinct in which the Premises is located and has jurisdiction to hear the present forcible detainer action.

### III. Service of Citation

Plaintiff is a business organization organized under the laws of the state of Nevada and conducts business in the State of Texas with operations located in Collin County, Texas. Service is requested on Defendants at the Premises by personal service. If necessary, alternative service is requested under Texas Rules of Civil Procedure 510.4(c) at the following home or work address known to Plaintiff, if any:

**1704 Cornwall Lane, Sachse, Texas 75048**

THIS IS TO CERTIFY THIS IS A TRUE AND
CORRECT COPY OF THE INSTRUMENT HEREIN

_Jerry Cooper_

Gerry Cooper, Justice of the Peace, Precinct 2, Dallas County, Texas

SWORN COMPLAINT FOR FORCIBLE DETAINER        PAGE 1        File No. XXXX-XXXX

RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

This address is the only address known to Plaintiff. Plaintiff knows of no other home or work address for Defendants in the county where the Premises is located.

## IV.    Grounds for Eviction

Plaintiff purchased the Premises at non-judicial foreclosure sale lawfully conducted on September 2, 2014. The attached Substitute Trustee's Deed is submitted as evidence of Plaintiff's superior right to possession of the Premises. The Deed of Trust authorizing the sale provides that upon occurrence of a non-judicial foreclosure sale, Defendants shall immediately surrender possession of the Premises to the purchaser at that sale. Failure to do so deems Defendants to be tenants at sufferance and Defendants may thus be removed by writ of possession or other court proceeding. Defendants are currently in possession of the Premises.

## V.   Notice to Vacate

Plaintiff has given Defendants a written notice to vacate and demand for possession. Such notice was sent at least three (3) days prior to this Sworn Complaint for Forcible Detainer being filed, at least thirty (30) days prior to this Sworn Complaint for Forcible Detainer being filed if any Defendant is a tenant who timely pays rent and is not otherwise in default according to Texas Property Code section 24.005(b), or ninety (90) days prior to this Sworn Complaint for Forcible Detainer being filed if any Defendant is a bona fide tenant as defined under Protecting Tenants at Foreclosure Act.

## VI. Failure to Vacate

Defendants have failed to vacate or comply with Plaintiff's written demand for possession of the Premises despite undisputed receipt and acknowledgment of such notice.

## VII.    All Conditions Precedent

All conditions precedent to Plaintiff's right to recover judgment for possession of the Premises, the issuance of a Writ of Possession and for all relief sought herein have occurred, have been performed or have been satisfied.

## VIII.    Request for Judgment

Plaintiff prays that Defendants be served with a citation and that Plaintiff have judgment against Defendants for: (1) Possession of the Premises, including removal of Defendants and all personal property from the Premises; (2) court costs; and (3) such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

Luke Madole
State Bar No. 12801800
luke.madole@buckleymadole.com
Sammy Hooda
State Bar No. 24064032
sammy.hooda@buckleymadole.com

**BUCKLEY MADOLE, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, Texas 75254
(972) 643-6787
(972) 643-6699 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**LNV CORPORATION**

## VERIFICATION

| | |
|---|---|
| **STATE OF TEXAS** | §<br>§ |
| **COUNTY OF** \_Collin\_ | §<br>§ |

BEFORE ME, the undersigned authority on this day personally appeared Bret Maloney, who being by me first duly sworn upon his oath deposed and said:

My name is Bret Maloney.  I am a Senior Vice President of Default Management for MGC Mortgage, Inc. ("MGC"), the authorized loan servicer for Plaintiff LNV Corporation. MGC is an affiliated company of LNV Corporation with common management.  I have read the foregoing Sworn Complaint for Forcible Detainer, and state that the matters and facts stated are within my personal knowledge, based upon a review of MGC's business records, and are true and correct. The documents attached to the Affidavit of Sammy Hooda are kept in the regular course of business, and it was the regular course of business for an employee or representative of the Plaintiff, with knowledge of the act or event recorded to make the record or transmit information thereof to be included in such record; and the record was made at or near the time or reasonable soon thereafter.

Name:  BRET MALONEY



SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public on this the 8 day of January, 2015, to certify which witness my hand and official seal.

JACQUE LITTLEFIELD
My Commission Expires
December 8, 2018

Notary Public, State of Texas

File No. XXXX-XXXX

# AFFIDAVIT

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiant, who, after being first duly sworn, deposed and stated:

"My name is **Sammy Hooda**, I am over the age of eighteen (18) years, have never been convicted of a felony, and have personal knowledge of the facts contained in this Affidavit and they are true and correct to my knowledge and belief.

I am agent and attorney for Plaintiff, **LNV Corporation**, and as such, I am authorized to make this Affidavit on Plaintiff's behalf.

I am employed by Buckley Madole, P.C. ("BMPC"), attorneys for the Plaintiff, as an attorney and I am authorized to make this Affidavit on behalf of BMPC, as attorneys for Plaintiff herein. I have care, custody, and control of all records concerning the forcible detainer proceedings against **Samuel G. Breitling, Jo Ann Breitling and All Other Occupants of 1704 Cornwall Lane, Sachse, Texas 75048** (hereinafter collectively "Defendants").

I am a custodian of the records of BMPC, attorneys for Plaintiff. Attached hereto are **eleven (11)** pages of records demanding Defendants vacate the property for which the forcible detainer action is filed. The said pages of records are kept by BMPC in the regular course of business; it was in the regular course of business for an employee, agent, or representative of BMPC, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The attached records are the originals or exact duplicates of the

Sworn Complaint For Forcible Detainer
PAGE 5
PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

File No. XXXX-XXXX

PAGE 364

originals.

On **December 30, 2014** demand to vacate notices were forwarded by certified mail, return

receipt requested, and first class mail, postage prepaid, to defendants, **Samuel G. Breitling, Jo**

**Ann Breitling and All Other Occupants of 1704 Cornwall Lane, Sachse, Texas 75048**,

demanding that Defendants vacate the property within three (3) days, thirty (30) days if required

by Texas Property Code section 24.005(b) or ninety (90) days if required by Protecting Tenants at

Foreclosure Act, or a forcible detainer action would be commenced against Defendants.

I have read the foregoing, Affidavit and the facts stated therein are true and correct.

Further this Affiant sayeth not."

_____
Sammy Hooda

SWORN TO AND SUBSCRIBED BEFORE ME this ___9th___ day of

___January_____, 2015.

JILLIAN B. LISNER
Notary Public
STATE OF TEXAS
My Comm. Exp. June 1, 2016

_____
Notary Public in and for the State of Texas



**BUCKLEY MADOLE, P.C.**

Buckley Madole, P.C.
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6698

December 30, 2014

*SENT VIA FIRST CLASS AND CERTIFIED MAIL*
Jo Ann Breitling
1704 Cornwall Lane
Sachse, Texas 75048



Certified Article Number

9414 7266 9904 2024 4163 12

SENDERS RECORD

## DEMAND TO VACATE PREMISES

### 1704 CORNWALL LANE, SACHSE, TEXAS 75048

Our firm represents LNV Corporation the purchaser of the real property with the reported address of 1704 Cornwall Lane, Sachse, Texas 75048 ("Premises") at a non-judicial foreclosure sale conducted on September 2, 2014. We have been requested to pursue the legal action necessary to secure possession of the Premises for LNV Corporation

**This letter constitutes formal and final demand that you vacate the Premises within three (3) days of the date that this letter is delivered. If you fail to vacate the Premises as demanded, we have been instructed to file suit against you.**

If you are occupying the Premises pursuant to a lease you may qualify for an extended notice to vacate the Premises under the Texas Property Code, Section 24.005. **If section 24.005 applies to you, this letter constitutes formal and final demand that you vacate the Premises within thirty (30) days of the date this letter is delivered.** *Unless you provide to us sufficient proof that you are occupying the Premises pursuant to a lease and are entitled to 30 days' notice under the Texas Property Code, Section 24.005, we will presume that you are not and will expect you to vacate the Premises within three (3) days as demanded above.*

**If you are a bona-fide tenant as defined by federal law, this letter constitutes formal and final demand that you vacate the Premises within ninety (90) days of the date this letter is delivered.** *Unless you provide to us sufficient proof that you are a bona-fide tenant under federal law, we will presume that you are not and will expect you to vacate the Premises within three (3) days as demanded above.*

Please call us at (877) 897-3991 to indicate whether you intend to comply with this notice.

Sincerely,

Sammy Hooda
Attorney at Law
Buckley Madole, P.C.

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                    PAGE 366
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

# IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS:

## PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT

Servicemembers on "active duty" or "active service" or a dependent of such a servicemember may be entitled to certain legal protections, including eviction protection, pursuant to the Servicemembers Civil Relief Act (50 USC App.§§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes.

Who may be entitled to Legal Protections under the SCRA:

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard and active service National Guard;
- Active service members of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active service members of the commissioned corps of the Public Health Service;
- United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Their spouses.

Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

"Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

If you are such a servicemember, or a dependent of such a servicemember, you should contact Buckley Madole, P.C. at (972) 643-6600 to discuss your status under the SCRA.



BUCKLEY MADOLE, P.C.

**Buckley Madole, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6698

December 30, 2014

*SENT VIA FIRST CLASS AND CERTIFIED MAIL*
Samuel G. Breitling
1704 Cornwall Lane
Sachse, Texas 75048

**Certified Article Number**

9414 7266 9904 2024 4163 43

**SENDERS RECORD**

## DEMAND TO VACATE PREMISES

### 1704 CORNWALL LANE, SACHSE, TEXAS 75048

Our firm represents LNV Corporation the purchaser of the real property with the reported address of 1704 Cornwall Lane, Sachse, Texas 75048 ("Premises") at a non-judicial foreclosure sale conducted on September 2, 2014. We have been requested to pursue the legal action necessary to secure possession of the Premises for LNV Corporation

**This letter constitutes formal and final demand that you vacate the Premises within three (3) days of the date that this letter is delivered. If you fail to vacate the Premises as demanded, we have been instructed to file suit against you.**

If you are occupying the Premises pursuant to a lease you may qualify for an extended notice to vacate the Premises under the Texas Property Code, Section 24.005. **If section 24.005 applies to you, this letter constitutes formal and final demand that you vacate the Premises within thirty (30) days of the date this letter is delivered.** *Unless you provide to us sufficient proof that you are occupying the Premises pursuant to a lease and are entitled to 30 days' notice under the Texas Property Code, Section 24.005, we will presume that you are not and will expect you to vacate the Premises within three (3) days as demanded above.*

**If you are a bona-fide tenant as defined by federal law, this letter constitutes formal and final demand that you vacate the Premises within ninety (90) days of the date this letter is delivered.** *Unless you provide to us sufficient proof that you are a bona-fide tenant under federal law, we will presume that you are not and will expect you to vacate the Premises within three (3) days as demanded above.*

Please call us at (877) 897-3991 to indicate whether you intend to comply with this notice.

Sincerely,

Sammy Hooda
Attorney at Law
Buckley Madole, P.C.

14841 DALLAS PARKWAY, SUITE 425, DALLAS, TX 75254 | P: 972.643.6600 | F: 972.643.6698 | BUCKLEYMADOLE.COM

## IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS:

## PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT

Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections, including eviction protection, pursuant to the Servicemembers Civil Relief Act (50 USC App.§§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes.

Who may be entitled to Legal Protections under the SCRA:

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard and active service National Guard;
- Active service members of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active service members of the commissioned corps of the Public Health Service;
- United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Their spouses.

Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

"Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

If you are such a servicemember, or a dependent of such a servicemember, you should contact Buckley Madole, P.C. at (972) 643-6600 to discuss your status under the SCRA.



Buckley Madole, P.C.
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6698

December 30, 2014

*SENT VIA FIRST CLASS AND CERTIFIED MAIL*
All Other Occupants
1704 Cornwall Lane
Sachse, Texas 75048



## DEMAND TO VACATE PREMISES

### 1704 CORNWALL LANE, SACHSE, TEXAS 75048

Our firm represents LNV Corporation the purchaser of the real property with the reported address of 1704 Cornwall Lane, Sachse, Texas 75048 ("Premises") at a non-judicial foreclosure sale conducted on September 2, 2014. We have been requested to pursue the legal action necessary to secure possession of the Premises for LNV Corporation

**This letter constitutes formal and final demand that you vacate the Premises within three (3) days of the date that this letter is delivered. If you fail to vacate the Premises as demanded, we have been instructed to file suit against you.**

If you are occupying the Premises pursuant to a lease you may qualify for an extended notice to vacate the Premises under the Texas Property Code, Section 24.005. **If section 24.005 applies to you, this letter constitutes formal and final demand that you vacate the Premises within thirty (30) days of the date this letter is delivered.** *Unless you provide to us sufficient proof that you are occupying the Premises pursuant to a lease and are entitled to 30 days' notice under the Texas Property Code, Section 24.005, we will presume that you are not and will expect you to vacate the Premises within three (3) days as demanded above.*

**If you are a bona-fide tenant as defined by federal law, this letter constitutes formal and final demand that you vacate the Premises within ninety (90) days of the date this letter is delivered.** *Unless you provide to us sufficient proof that you are a bona-fide tenant under federal law, we will presume that you are not and will expect you to vacate the Premises within three (3) days as demanded above.*

Please call us at (877) 897-3991 to indicate whether you intend to comply with this notice.

Sincerely,

Sammy Hooda
Attorney at Law
Buckley Madole, P.C.

# IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS:

## PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT

Servicemembers on "active duty" or "active service" or a dependent of such a servicemember may be entitled to certain legal protections, including eviction protection, pursuant to the Servicemembers Civil Relief Act (50 USC App.§§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes.

Who may be entitled to Legal Protections under the SCRA:

- Active-duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard and active service National Guard;
- Active service members of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active service members of the commissioned corps of the Public Health Service;
- United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Their spouses.

Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

"Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

If you are such a servicemember, or a dependent of such a servicemember, you should contact Buckley Madole, P.C. at (972) 643-6600 to discuss your status under the SCRA.

English          Customer Service          USPS Mobile                                              Register / Sign In

# 🦅USPS.COM

## USPS Tracking™



Customer Service ›
Have questions? We're here to help.

Tracking Number: 9414726699042024416312

- Updated Delivery Day: Wednesday, December 31, 2014

## Product & Tracking Information

### Available Actions

| Postal Product: | Features: | |
|---|---|---|
| First-Class Mail® | Certified Mail™ | Return Receipt |

Text Updates

Email Updates

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| December 31, 2014 , 10:48 am | Delivered | SACHSE, TX 75048 |

Return Receipt After Mailing

Your item was delivered at 10:48 am on December 31, 2014 in SACHSE, TX 75048.

| December 31, 2014 , 7:02 am | Arrived at Unit | GARLAND, TX 75044 |
| December 31, 2014 , 5:01 am | Departed USPS Facility | COPPELL, TX 75099 |
| December 30, 2014 , 10:32 pm | Arrived at USPS Facility | COPPELL, TX 75099 |

## Track Another Package

Tracking (or receipt) number

[                                              ]   Track It

---

| HELPFUL LINKS | ON ABOUT.USPS.COM | OTHER USPS SITES | LEGAL INFORMATION |
|---|---|---|---|
| Contact Us | About USPS Home | Business Customer Gateway | Privacy Policy |
| Site Index | Newsroom | Postal Inspectors | Terms of Use |
| FAQs | USPS Service Updates | Inspector General | FOIA |
| | Forms & Publications | Postal Explorer | No FEAR Act EEO Data |
| | Government Services | National Postal Museum | |
| | Careers | Resources for Developers | |

Copyright © 2015 USPS. All Rights Reserved.

Search or Enter a Tracking Number   🔍

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                    PAGE 372
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

English     Customer Service     USPS Mobile     Register / Sign In

# ◢USPS.COM

## USPS Tracking™



**Customer Service ›**
Have questions? We're here to help.

Tracking Number: 9414726699042024416343

Updated Delivery Day: Wednesday, December 31, 2014

## Product & Tracking Information                    Available Actions

Postal Product:          Features:
First-Class Mail®        Certified Mail™        Return Receipt          Text Updates

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| December 31, 2014 , 10:48 am | Delivered | SACHSE, TX 75048 |

Email Updates

Return Receipt After Mailing

Your item was delivered at 10:48 am on December 31, 2014 in SACHSE, TX 75048.

| December 31, 2014 , 7:02 am | Arrived at Unit | GARLAND, TX 75044 |
| December 31, 2014 , 5:01 am | Departed USPS Facility | COPPELL, TX 75099 |
| December 30, 2014 , 10:32 pm | Arrived at USPS Facility | COPPELL, TX 75099 |

## Track Another Package

Tracking (or receipt) number

[                                              ]        Track It

HELPFUL LINKS          ON ABOUT.USPS.COM          OTHER USPS SITES          LEGAL INFORMATION
Contact Us             About USPS Home            Business Customer Gateway  Privacy Policy
Site Index             Newsroom                   Postal Inspectors          Terms of Use
FAQs                   USPS Service Updates        Inspector General          FOIA
                       Forms & Publications        Postal Explorer            No FEAR Act EEO Data
                       Government Services         National Postal Museum
                       Careers                     Resources for Developers

Copyright © 2015 USPS. All Rights Reserved.

Search or Enter a Tracking Number

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                      PAGE 373
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,       PAGE 374
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

English        Customer Service        USPS Mobile                    Register / Sign In

# ⊠USPS.COM®

## USPS Tracking™



Customer Service ›
Have questions? We're here to help.

Tracking Number: 9414726990420 24416329

Updated Delivery Day: Wednesday, December 31, 2014

## Product & Tracking Information

### Available Actions

Postal Product:          Features:
First-Class Mail®        Certified Mail™        Return Receipt

Text Updates

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| December 31, 2014, 10:48 am | Delivered | SACHSE, TX 75048 |

Email Updates

Return Receipt After Mailing

Your item was delivered at 10:48 am on December 31, 2014 in SACHSE, TX 75048.

| | | |
|---|---|---|
| December 31, 2014, 7:02 am | Arrived at Unit | GARLAND, TX 75044 |
| December 31, 2014, 5:01 am | Departed USPS Facility | COPPELL, TX 75099 |
| December 30, 2014, 10:32 pm | Arrived at USPS Facility | COPPELL, TX 75099 |

## Track Another Package

Tracking (or receipt) number

[                                          ]        Track It

---

HELPFUL LINKS          ON ABOUT.USPS.COM          OTHER USPS SITES          LEGAL INFORMATION

Contact Us             About USPS Home            Business Customer Gateway   Privacy Policy
Site Index             Newsroom                   Postal Inspectors           Terms of Use
FAQs                   USPS Service Updates        Inspector General           FOIA
                       Forms & Publications        Postal Explorer             No FEAR Act EEO Data
                       Government Services         National Postal Museum
                       Careers                    Resources for Developers

Copyright © 2015 USPS. All Rights Reserved.

Search or Enter a Tracking Number   🔍

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,                              PAGE 375
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

PAGE 376

Cause No. _____

| | | |
|---|---|---|
| LNV CORPORATION,<br>  PLAINTIFF, | §<br>§<br>§ | IN THE JUSTICE OF THE PEACE COURT |
| V. | §<br>§ | |
| SAMUEL G. BREITLING, JO ANN<br>BREITLING, AND ALL OTHER<br>OCCUPANTS OF 1704 CORNWALL<br>LANE, SACHSE, TEXAS 75048<br>  DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§ | OF DALLAS COUNTY, TEXAS<br><br><br>PRECINCT 2, PLACE 1 |

## MILITARY AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF DALLAS | §<br>§ |

BEFORE ME, the undersigned authority, on this day personally appeared **Sammy Hooda** who after having being duly sworn, deposed and stated upon penalty of perjury the following:

1.      "My name is **Sammy Hooda**. I am over the age of eighteen (18) years. I am of sound mind, capable of making this Affidavit, and am fully competent to testify to the matters stated herein. I understand that if I make or use a military status affidavit, knowing it to be false, I may be fined, imprisoned for not more than one year, or both. I have personal knowledge of the facts stated in this Affidavit.

2.      I am an employee of Buckley Madole, P.C., and currently hold the below-described position with said company and held such position at the time of the events hereinafter set forth.

3.      Samuel Breitling and Jo Ann Breitling, are not presently members of the armed forces of the United States Government, as indicated on the Military Status Reports attached as Exhibits A and B, respectively.

Further Affiant sayeth not."

Sammy Hooda


**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

SWORN TO AND SUBSCRIBED BEFORE ME this 9th day of January , 2015.

JILLIAN B. LISNER
Notary Public
STATE OF TEXAS
My Comm. Exp. June 1, 2016

Notary Public in and for the State of Texas

# EXHIBIT A

Department of Defense Manpo   , Data Center

SCRA 3.0



## Status Report
## Pursuant to Servicemembers Civil Relief Act

Last Name: <u>BREITLING</u>

First Name: <u>SAMUEL</u>

Middle Name:

Active Duty Status As Of: <u>Jan-09-2015</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Certificate ID: 81Y8ZA8BX176SD0

# EXHIBIT B



## Status Report
## Pursuant to Servicemembers Civil Relief Act

Last Name: <u>BREITLING</u>

First Name: <u>JO</u>

Middle Name: <u>ANN</u>

Active Duty Status As Of: <u>Jan-09-2015</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Certificate ID: 51YC2A9BS1767F0

ELECTRONICALLY RECORDED  201400229264
09/08/2014 12:38:42 PM TR DEED  1/3

## SUBSTITUTE TRUSTEE'S DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

C&S No. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
Dovenmuehle Mortgage Inc.

Date of Security
Instrument:           October 20, 2000

Grantor(s):           Samuel G. Breitling and wife, Jo Ann Breitling

Original Trustee:     Michael L. Riddle

Original Mortgagee:   Aames Funding Corporation, a California Corporation, DBA Aames Home Loan, a
                      Corporation

Recording Information: in Volume 2000236, Page 05425 and in Clerk's File No. 1219742 in the Official Public
                      Records of Dallas County, Texas

Current Mortgagee:    LNV Corporation

Mortgage Servicer:    Dovenmuehle Mortgage Inc. whose address is 1 Corporate Drive
Suite 360, Lake Zurich, IL 60047. Pursuant to a Servicing Agreement between the Mortgage Servicer and
Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement
and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to
administer any resulting foreclosure of the referenced property.

Date of Sale:         September 02, 2014

Amount of Sale:       $149,400.54

Grantee/Buyer:        LNV Corporation
                      1 Corporate Drive
                      Suite 360, Lake Zurich, IL 60047

Legal Description:    BEING LOT 5 IN BLOCK F OF SACHSE SOUTH ESTATES, INSTALLMENT NO. 1,
AN ADDITION TO THE CITY OF SACHSE, DALLAS COUNTY, TEXAS ACCORDING TO THE MAP
THEREOF RECORDED IN VOLUME 74211, PAGE 688 OF THE MAP RECORDS OF DALLAS COUNTY,
TEXAS.

Place of Sale of Property:   In the area designated by the Dallas County Commissioners Court pursuant to Section
51.002 of the Texas Property Code as the place where the foreclosure sales are to take place, or if no place is
designated by the Commissioners Court, the place where the Notice of Trustee's Sale was posted.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage
Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee,
through the Mortgage Servicer, has appointed the Substitute Trustee and requested the Substitute Trustee to enforce
the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law.
The Substitute Trustee sold the property to Buyer, who was the highest bidder for cash at the public auction, for the
amount of the sale in the manner prescribed by law. The sale was conducted no earlier than 10:00 AM, as set forth
in the Notice of Trustee's Sale and was concluded within three hours of such time. All matters, duties and
obligations of the Mortgagee were legally performed.

Substitute Trustee, subject to any matters of record, and for the amount of sale paid by Buyer as consideration,
grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the
property together with all rights and appurtenances belonging to Grantor, Substitute Trustee hereby sell the above
referenced property AS IS without any express or implied warranties, and hereby conveys the property to the
purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §51.002 and §51.009.

Affidavit of Posting/Filing Notice of Sale is attached hereto marked as Exhibit "I" and is by this reference incorporated herein for all purposes.

EXECUTED this 5 day of September , 2014.

Shelley Ortolani
Substitute Trustee

STATE OF TEXAS

COUNTY OF Dallas

Before me, the undersigned Notary Public, on this day personally appeared **Shelley Ortolani** as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that (s)he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 5 day of September , 2014.

Notary Public State of Texas

MICHELE HEENA
Notary Public, State of Texas
My Commission Expires
October 09, 2015

RETURN TO:
CODILIS & STAWIARSKI, PC
650 North Sam Houston Parkway East, Suite 450
Houston, Texas 77060

Exhibit "1"

## AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

STATE OF TEXAS

COUNTY OF DALLAS

The undersigned, having knowledge of the matters hereinafter set forth, after being duly sworn, deposes and states under oath, as follows:

"On behalf of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust/Security Instrument, dated October 20, 2000 executed by Samuel G. Breitling and wife, Jo Ann Breitling to Michael L. Riddle, Trustee(s) and recorded in the office of County Clerk in Volume 2000236, Page 05425 and in Clerk's File No. 1219742 of Dallas County, Texas; at least twenty-one (21) days preceding the date of the sale made by Shelley Ortolani, Substitute Trustee on the 2nd day of September, 2014, between the hours of 10:00 AM and 1:00 PM;

(i)     Written notice of the proposed sale designating the County in which the property securing the above Deed of Trust/Security Instrument will be sold, was posted ("Notice of Sale") at the courthouse door of each County in which the property securing the above Deed of Trust/Security Instrument is located, or as otherwise designated by the County Commissioners; and

(ii)    A copy of said Notice of Sale was filed in the office of the County Clerk of the County in which the sale was made."



Shelley Ortolani, Substitute Trustee

SUBSCRIBED AND SWORN TO before me on this __5__ day of __September__ _____, 2014.

_Michele Hreha_
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS

COUNTY OF __Dallas__

> MICHELE HREHA
> Notary Public, State of Texas
> My Commission Expires
> October 09, 2016

This instrument was acknowledged before me on this this __5__ day of __September__ _____, 2014, by Shelley Ortolani.

_Michele Hreha_
NOTARY PUBLIC, STATE OF TEXAS

C&S No. ████████

> MICHELE HREHA
> Notary Public, State of Texas
> My Commission Expires
> October 09, 2016

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**09/08/2014 12:38:42 PM**
**$34.00**
**201400229264**



# **EXHIBIT 6**

CAUSE NO. DC-14-09604

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JOANN BREITLING, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | DALLAS COUNTY, TEXAS |
| LNV CORPORATION, CODILIS & STAWIARSKI, P.C., DOVENMUEHLE MORTGAGE, INC., MGC MORTGAGE, INC., AND DALE B. TILLERY, | § § § § § § | |
| Defendants. | § | 101ST JUDICIAL DISTRICT |

## DECLARATION OF MICHELLE CONNER

1.      "My name is Michelle Conner.  I make this unsworn declaration pursuant to Texas Civil Practice and Remedies Code § 132.001.  I am of sound mind and capable of making this unsworn declaration.  I am over the age of twenty-one (21) years and have never been convicted of a felony or crime involving dishonesty.  I am fully competent to testify to the matters herein.  I have personal knowledge of the facts stated herein, which are true and correct.

2.      I am currently employed as a Senior Vice President with MGC Mortgage, Inc. ("MGC").  From June 2, 2008 through September 8, 2014, the date of the foreclosure sale of the property located at 1704 Cornwall Lane, Sachse, Texas 75048 (the "Property"), MGC was the servicer or master servicer of the home equity loan that Samuel G. Breitling and Jo Ann Breitling obtained, which is evidenced by Texas Home Equity Adjustable Rate Note and Texas Home Equity Security Instrument, both of which are dated October 20, 2000.  I am fully authorized to make this declaration on behalf of MGC in the above entitled and numbered case.  I have personal knowledge of the facts set forth in this declaration based on my familiarity with the business practices, record keeping, and servicing practices of MGC, and my review of MGC's

DECLARATION OF MICHELLE CONNER                                                      PAGE 1

business records.

3.      Exhibit A, attached hereto and incorporated by reference, is a true and correct redacted copy of correspondence that MGC sent to Samuel G. Breitling and Jo Ann Breitling on March 16, 2010.

4.      Exhibit B, attached hereto and incorporated by reference, is a true and correct redacted copy of correspondence that Samuel G. Breitling and Jo Ann Breitling sent to MGC regarding a loan modification wherein they advised MGC that their permanent mailing address is 5250 Highway 78, # 750112, Sachse, Texas 75048.

5.      The exhibits attached hereto are (1) records kept by MGC in the regular course of business and were made at or near the time of the acts, events, conditions and/or opinions recorded therein by an employee or representative of MGC with knowledge of those matters; and/or (2) documents received from Samuel G. Breitling and Jo Ann Breitling that have been incorporated into, and now are part of, the business records of MGC.  It was the regular business practice of MGC for an employee or representative with knowledge of the acts, events, conditions and/or opinions recorded in these records to record or transmit the information included in these records, and/or to receive and incorporate them as business records.  The exhibits attached hereto are the originals or exact duplicates of the originals.  The exhibits attached hereto have been redacted to exclude portions of the home equity loan number and other personal identifier information for purposes of confidentiality.

6.      Nothing further."

My name is Michelle Conner, my date of birth is _8/31/1967_ , and my work address is 7195 Dallas Parkway, Plano, Texas 75024.  I declare under penalty of perjury that the foregoing is true and correct.

Executed in Collin County, State of Texas, on February _19_ , 2015.

_Michelle Conner_

MICHELLE CONNER

# EXHIBIT A

FF

**MCa**
**MGC Mortgage, Inc.**

1 Corporate Drive   Suite 360   Lake Zurich, IL  60047-8945

M

Samuel G Breitling
Jo Ann Breitling
5250 Highway 78 # 750112
Sachse TX  75048-4252

March 16, 2010

Samuel G Breitling
Jo Ann Breitling
5250 Highway 78 # 750112
Sachse TX  75048-4252

RE:  Change of MGC Loan Number
     Change of Payment Mailing Address

**Previous MGC Loan Number:** ████9689
**New MGC Loan Number:** ████5965

Dear Borrower(s):

To continue to provide our mortgage loan customers with the best possible service, MGC Mortgage, Inc. is pleased to announce it has entered into a relationship with Dovenmuehle Mortgage, Inc. (DMI).

MGC Mortgage, Inc. is committed to remaining an integral part of your mortgage servicing process.  This letter outlines the various means by which you can quickly obtain information regarding your mortgage loan.

Effective April 1, 2010, your existing MGC mortgage account number and the address used to send your monthly mortgage payment will change.  These changes do not affect any existing terms or conditions of your mortgage instruments.

All payments will continue to be made payable to MGC Mortgage, Inc. **Please note your new MGC loan number on your check for easy identification.**

**Please be aware of the following important items which will be affected by the changes mentioned above:**

1.  If you are currently scheduled to have a recurring payment automatically drafted from your bank account March 29 through April 6, 2010, please note these payments <u>will not draft until after April 6, 2010</u>.  All other April scheduled recurring draft payments that automatically draft between April 7th and April 30th will draft on their regularly scheduled draft date.  No late fees will be assessed as a result of the delayed drafting of your account.

2.  Effective May 1, 2010, no recurring draft payments can be processed without receipt of a signed authorization form.  For your convenience we have enclosed the required authorization form with this letter.  This <u>signed</u> authorization form must be received at the correspondence address referenced below by April 23, 2010.  This means prior to April 23, 2010 either MGC Mortgage must have received the attached authorization form or you will be required to make your mortgage payment through another method, such as mailing your payment, utilizing the MGC website, or completing a pay by phone with a MGC customer service representative.

<u>**If you are currently set up on recurring draft auto debiting (ACH) for monthly payment of your mortgage account, the enclosed form must be signed and returned in by April 23, 2010 or your payment will no longer draft from your bank account.  If the form is not signed and returned, auto drafting will cease after April's payment has been received.  You will need to use the monthly billing statement you will receive when sending in your payments.  Please note: If you have returned the form by April 23, 2010 the May 2010 draft payment will occur on or after May 1, 2010.**</u>

3.  If you are currently using an online service or third party bill pay service to pay your mortgage payment, the payee information and the loan number will need to be changed to the payment address and new loan number provided in this letter.

4.  MGC will have a new toll free number as of April 1, 2010. 877-471-7888.

5.  MGC will continue to have the same web address of www.MGCMortgage.com. However, a link will be provided from this page which will state "Click Here to Access Your Mortgage". MGC's website is being enhanced to provide expanded services. From March 29th through April 6th borrowers will not be able to access their MGC mortgage via the MGC website. Borrowers will also be required to create a new login ID on the enhanced website once it is operational.

Should you have questions relating to the above mentioned changes you may contact MGC's Customer Service Department before April 1, 2010 using our toll free number 1-866-973-3399. As of April 1st, 2010 all inquiries about your mortgage should be directed to our new toll free number 1-877-471-7888. **Beginning April 1st, 2010, all payments and correspondence should be directed to MGC Mortgage, Inc. at the new addresses below.** Any payments and/or correspondence received with the previously provided account number and/or at the previously provided address will be forwarded to the applicable MGC payment or correspondence address noted below. Please allow 3 business days for payments and correspondence to be forwarded and documented if sent to previously provided addresses.

| **Payments should be addressed to:** | **Correspondence should be addressed to:** |
|---|---|
| MGC Mortgage, Inc. | MGC Mortgage, Inc. |
| | 1 Corporate Drive Suite 360 |
| P.O. Box 660592 | Lake Zurich, IL 60047-8945 |
| Dallas TX  75266-0592 | |

Please be aware of additional information, which is contained in the enclosed Notice of Transfer of Servicing. This form is required by regulation. Read the notice carefully and retain it for your records.

We apologize in advance for any inconvenience this transition may cause; however, the transition will provide additional functionality such as multiple account logins for all borrowers on the mortgage, the ability to link all active loans to one login ID, and expanded payment processing hours.

*Richard Lawrence*

Richard Lawrence
Vice President
MGC Mortgage Inc.

Enclosures

### Recurring Draft Authorization Form

I (we) hereby authorize MGC Mortgage, Inc. and its successors, assigns, authorized agents or any entity servicing my (our) loan on their behalf (hereinafter called THE LENDER) to initiate mortgage payment debit entries (which the amount may vary with future changes in escrow, principal and interest components, as applicable) to my (our) Checking or Savings Account indicated on my (our) current authorization form and the depository named on such form to debit the same to such account. I (we) understand that if any debit entries under this authorization are returned for insufficient funds or otherwise dishonored, I (we) will promptly send THE LENDER the total monthly payment due, plus any late charge(s) or other fees due under my mortgage.

Previous MGC Loan Number: ██████9689
New MGC Loan Number: ██████5965

Signed X _____

Signed X _____

March 16, 2010

Samuel G Breitling
Jo Ann Breitling
5250 Highway 78 # 750112
Sachse TX  75048-4252

**RE:  Old Loan Number:** ███9689
**New Loan Number:** ███5965

NOTICE OF TRANSFER OF SERVICING

Dear Borrower(s):

You are hereby notified that the servicing, duties with respect to your mortgage loan, that is, the responsibility to collect payments from you, will be performed on behalf of MGC Mortgage, Inc. by Dovenmuehle Mortgage, Inc., who will service your loan under a contractual arrangement with MGC Mortgage, Inc., effective April 1, 2010.

The transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of the transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, all necessary information is combined in this one notice.

Your present servicer is MGC Mortgage, Inc. If you have any questions relating to the transfer of servicing from your present servicer before April 1, 2010, call the Customer Service Department at 866-973-3399 between 8:00 a.m. and 5:00 p.m. CST, Monday through Friday.  This is a toll-free number.

Your new servicer will be Dovenmuehle Mortgage, Inc. under a contractual arrangement with MGC Mortgage, Inc.

The business address for your new servicer is:    1 Corporate Drive, Suite 360
                                                  Lake Zurich, IL 60047-8945

The toll-free telephone number of your new servicer is 877-471-7888.  If you have any questions relating to the transfer of servicing to your new servicer on or after April 1, 2010, call the Customer Service Department at 877-471-7888 between 8:00 a.m. and 5:00 p.m. CST, Monday through Friday.

The date that your present servicer will stop accepting payments from you is March 31, 2010.  If you choose to mail your monthly payment, the date that your new servicer will start accepting payments from you is April 1, 2010. Send all payments on or after that date to your new servicer. Please use the enclosed temporary coupon to make your next payment. **You will then receive a monthly billing statement with which you may make your scheduled payments.** The address for sending payments to your new servicer is:

**MGC MORTGAGE, INC.**
**P O BOX 660592**
**DALLAS TX  75266-0592**

If you would like to begin using automatic deductions with the new servicer, please sign the new automatic payment form enclosed, and submit the form to the new servicer. An extra copy of the form is enclosed for you to keep.  The new servicer would then notify you of the month in which the automatic deduction will begin. Until then, please make your regular payment by check to the new servicer.

In January 2011, you will receive a statement from Dovenmuehle Mortgage, Inc. summarizing your account activity for the year. Please use this statement when filing your income taxes for 2010.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60 day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other then notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to MGC Mortgage, Inc., 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047-8945.

Not later then 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

Richard Lawrence
Vice President
MGC Mortgage, Inc.

Bernadette McDonnell
Vice President
Dovenmuehle Mortgage, Inc.

**Please use the enclosed envelope with the temporary coupon below to make your next payment.**

(Tear along dotted line)

Samuel G Breitling
Jo Ann Breitling
5230 Highway 78 # 750112
Sachse TX 75048

**TEMPORARY COUPON**

New Loan Number:      5965

Payment Amount:     $1,370.61

| Late Charges | $ | |
|---|---|---|
| Additional Principal | $ | |
| Amount of Check | $ | |

MGC MORTGAGE INC.
P O BOX 660592
DALLAS TX 75266-0592

## AUTOMATIC PAYMENT PROGRAM ("APP")

Do you want to save time and postage every month? Explore MGC Mortgage, Inc.'s Free Automatic Payment Program (APP).

### HOW DOES THE PROGRAM WORK?

Once you sign up with APP, we will automatically deduct your mortgage payment from your checking or savings account each month. We will send notification to your bank to transfer the exact amount of your mortgage payment on the date you choose in the form below, from your checking or savings account to us. You will receive information about the transaction each month on your regular bank statement.

### WHAT ARE THE ADVANTAGES?

Convenience. You will no longer have to write a check each month for your mortgage payment. No Checks. No stamps. No envelopes. No trips to the mail box. APP will save you time and money.
Security. You'll have peace of mind knowing that your monthly mortgage payment was made automatically and on time. You won't have to worry about forgetting to mail your check.

### APP IS FREE AND EASY

There is absolutely no charge for our APP service. We offer it to our customers because it assures prompt and accurate mortgage payments. It is simply more convenient for you and us.

### CAN I STILL MAKE ADDITIONAL PRINCIPAL PAYMENTS OR ESCROW DEPOSITS?

Yes! If you want to make additional payments, either designate below the amount of the principal curtailment to be withdrawn in addition to your monthly payment, or simply mail a check for the desired amount the first week of the month. Additional escrow can be mailed anytime. Please include your mortgage account number and the words "additional principal" or "escrow deposit" on the face of your check.

### HOW CAN I BEGIN THIS CONVENIENT SERVICE?

It's very simple. Just fill out the authorization agreement and return it to us. Please enclose a voided blank check or savings account deposit slip with the authorization agreement. (Simply write "void" across the face of your check) or a savings deposit slip from a current savings account. The authorization agreement and your voided check or savings deposit slip will give us the accurate information we need to begin your APP service and start saving you time and postage.

We will notify you in writing which month's payment will begin your APP service. Usually, processing takes about 45 days. However, please continue to make your normal mortgage payments, UNTIL YOU ARE NOTIFIED BY MGC MORTGAGE, INC. WITH A CONFIRMATION LETTER.

If you have any questions, please call us toll free at 1-877-471-7888. One of our Customer Service Representatives will be happy to answer your questions or provide you with more information.

Fill out and return the APP authorization agreement today. You'll have one less thing to worry about month to month.

### CAN I CANCEL THE APP SERVICE?

The APP service may be canceled by sending us a written notice 30 days prior to your next due date, to the address listed below.

### WHAT HAPPENS IF I CHANGE MY BANK?

If you move your checking or savings account from your current bank to another one, you need to complete a new authorization agreement and mail it to us along with a "voided" blank check or savings account deposit slip, prior to the 10th of the month. You can request an additional form by calling our Customer Service Department toll free at 1-877-471-7888. When we receive the new form and your "voided" check or savings account deposit slip, please allow 2 to 3 weeks for the change to take place. We will notify you when the APP service will begin on your new account.

RETAIN UPPER PORTION FOR YOUR RECORDS

---

### AUTHORIZATION AGREEMENT FOR MONTHLY AUTOMATIC PAYMENT
MGC MORTGAGE, INC., 1 CORPORATE DRIVE, SUITE 360, LAKE ZURICH, IL 60047-8945

Mortgage Account Number _____

I (we) hereby authorize MGC Mortgage, Inc., and its successors, assigns, authorized agents or any entity servicing my loan on their behalf (hereinafter called THE LENDER) to initiate mortgage payment debit entries (which may vary from the amount indicated below with future changes in escrow, principal and interest components, as applicable) to my (our) Checking or Savings Account indicated below and the depository named below to debit the same to such account. I (we) understand that if any debit entries under this authorization are returned for insufficient funds or otherwise dishonored, I (we) will promptly send THE LENDER the total monthly payment due, plus any late charge(s) or other fees due under my mortgage.

DEPOSITORY INSTITUTION _____
NAME _____
CITY _____
ACCOUNT NO. _____
BANK PHONE NO. _____
CHECKING: _____ SAVINGS: _____

DAY OF WITHDRAWAL __ 0 __ 1 __ 2 __ 3 __ 4 __ 5 DAYS AFTER
DAY PHONE _____ EVENING PHONE _____
STATE _____ ZIP _____
TRANSIT NUMBER | | | | | | | | | |

This authorization is to remain in full force and effect until THE LENDER has received written notification from me (us) of its termination in such time and in such manner as to afford THE LENDER a reasonable opportunity to act upon it. THE LENDER may terminate this agreement at anytime, with written notice sent to me.

NAME(S) _____
(PLEASE PRINT)

PAYMENT AMOUNT  $ _____
ADDITIONAL PRINCIPAL IF ANY  $ _____
FOR EACH MONTH

DATE _____ SIGNED X _____          SIGNED X _____

---

# AUTOMATIC PAYMENT PROGRAM ("APP")

Do you want to save time and postage every month? Explore MGC Mortgage, Inc.'s Free Automatic Payment Program (APP).

## HOW DOES THE PROGRAM WORK?

Once you sign up with APP, we will automatically deduct your mortgage payment from your checking or savings account each month. We will send notification to your bank to transfer the exact amount of your mortgage payment on the date you choose in the form below, from your checking or savings account to us. You will receive information about the transaction each month on your regular bank statement.

## WHAT ARE THE ADVANTAGES?

Convenience. You will no longer have to write a check each month for your mortgage payment. No Checks. No stamps. No envelopes. No trips to the mail box. APP will save you time and money.

Security. You'll have peace of mind knowing that your monthly mortgage payment was made automatically and on time. You won't have to worry about forgetting to mail your check.

## APP IS FREE AND EASY

There is absolutely no charge for our APP service. We offer it to our customers because it assures prompt and accurate mortgage payments. It is simply more convenient for you and us.

## CAN I STILL MAKE ADDITIONAL PRINCIPAL PAYMENTS OR ESCROW DEPOSITS?

Yes! If you want to make additional payments, either designate below the amount of the principal curtailment to be withdrawn in addition to your monthly payment, or simply mail a check for the desired amount the first week of the month. Additional escrow can be mailed anytime. Please include your mortgage account number and the words "additional principal" or "escrow deposit" on the face of your check.

## HOW CAN I BEGIN THIS CONVENIENT SERVICE?

It's very simple. Just fill out the authorization agreement and return it to us. Please enclose a voided blank check or savings account deposit slip with the authorization agreement. (Simply write "void" across the face of your check) or a savings deposit slip from a current savings account. The authorization agreement and your voided check or savings deposit slip will give us the accurate information we need to begin your APP service and start saving you time and postage.

We will notify you in writing which month's payment will begin your APP service. Usually, processing takes about 45 days. However, please continue to make your normal mortgage payments, UNTIL YOU ARE NOTIFIED BY MGC MORTGAGE, INC. WITH A CONFIRMATION LETTER.

If you have any questions, please call us toll free at 1-877-471-7888. One of our Customer Service Representatives will be happy to answer your questions or provide you with more information.

Fill out and return the APP authorization agreement today. You'll have one less thing to worry about month to month.

## CAN I CANCEL THE APP SERVICE?

The APP service may be canceled by sending us a written notice 30 days prior to your next due date, to the address listed below.

## WHAT HAPPENS IF I CHANGE MY BANK?

If you move your checking or savings account from your current bank to another one, you need to complete a new authorization agreement and mail it to us along with a "voided" blank check or savings account deposit slip, prior to the 10th of the month. You can request an additional form by calling our Customer Service Department toll free at 1-877-471-7888. When we receive the new form and your "voided" check or savings account deposit slip, please allow 2 to 3 weeks for the change to take place. We will notify you when the APP service will begin on your new account.

---

## AUTHORIZATION AGREEMENT FOR MONTHLY AUTOMATIC PAYMENT
### MGC MORTGAGE, INC., 1 CORPORATE DRIVE, SUITE 360, LAKE ZURICH, IL 60047-8945

Mortgage Account Number _____

I (we) hereby authorize MGC Mortgage, Inc., and its successors, assigns, authorized agents or any entity servicing my loan on their behalf (hereinafter called THE LENDER) to initiate mortgage payment debit entries (which may vary from the amount indicated below with future changes in escrow, principal and interest components, as applicable) to my (our) Checking or Savings Account indicated below and the depository named below to debit the same to such account. I (we) understand that if any debit entries under this authorization are returned for insufficient funds or otherwise dishonored, I (we) will promptly send THE LENDER the total monthly payment due, plus any late charge(s) or other fees due under my mortgage.

DEPOSITORY INSTITUTION _____ DAY OF WITHDRAWAL ___ 0 ___ 1 ___ 2 ___ 3 ___ 4 ___ 5 DAYS AFTER

NAME _____ DAY PHONE _____ EVENING PHONE _____

CITY _____ STATE _____ ZIP _____

ACCOUNT NO. _____

BANK PHONE NO. _____ TRANSIT NUMBER [ ][ ][ ][ ][ ][ ][ ][ ][ ]

CHECKING: _____ SAVINGS: _____

This authorization is to remain in full force and effect until THE LENDER has received written notification from me (us) of its termination in such time and in such manner as to afford THE LENDER a reasonable opportunity to act upon it. THE LENDER may terminate this agreement at anytime, with written notice sent to me.

PAYMENT AMOUNT $ _____

NAME(S) _____ ADDITIONAL PRINCIPAL IF ANY $ _____
(PLEASE PRINT) FOR EACH MONTH

### PLEASE RETAIN THIS COPY FOR YOUR RECORDS
### PLEASE CONTINUE TO MAIL YOUR PAYMENTS UNTIL WE NOTIFY YOU OF YOUR DRAFT DATE

---

# EXHIBIT B

URGENT

LOAN MODIFICATION

Request FROM

SAMUEL & JOANN BREITLING

5250 HWY. 78

# 750-112

SACHSE TX 75048

(permanent mailing address)

▬▬▬▬▬-3068

▬▬▬▬▬3915

# ATTENTION

**Before returning the requested information, please check each box to makes sure the following items are enclosed and also make sure that your name and loan number are placed on all documents.**

- ☑ DEFAULT CHECKLIST

- ☑ CONTACT INFORMATION SHEET

- ☑ REASON FOR DEFAULT (HARDSHIP LETTER)

- ☑ BORROWER'S MONTHLY INCOME STATEMENT

- ☑ BORROWER'S MONTHLY EXPENSE STATEMENT

- ☑ BORROWER'S LIST OF ASSETS AND LIABILITIES

- ☑ DOCUMENTATION SUPPORTING YOUR HARDSHIP (I.E. DIVORCE AGREEMENT, UNEMPLOYMENT LETTER, ETC.)

- ☑ COPY OF MOST RECENT PAYSTUB, 2YEARS OF MOST RECENT TAX RETURNS (1040'S) AND OTHER DOCUMENT(S) TO SUPPORT YOUR CURRENT EARNINGS (IF SELF EMPLOYED YTD FINANCIAL STATEMENT, BANK STATEMENTS, ETC.)

- ☑ COPY OF MOST RECENT BANK STATEMENT (CHECKING AND SAVINGS)

I certify that the financial information enclosed herewith is true and is an accurate account of my financial condition. I consent for my mortgage servicer's Loss Mitigation Department to engage in discussions and negotiations with me, or my designated representative regarding foreclosure alternative programs. I acknowledge that my mortgage Servicer's Loss Mitigation Department is under no obligation to agree to an alternative to foreclose and that it has not made any representations that it will modify my mortgage or otherwise recommend an alternative to foreclosure. I understand that any agreement that I may reach with my mortgage servicer must be in writing to be binding upon the parties and that my servicer does not necessarily have the ability to makes decisions on the investor's behalf. I acknowledge that the payments on my mortgage may be delinquent and that any collection currently in progress will continue without delay, while my servicer's loss mitigation department reviews a foreclosure action.

I consent for my servicer's loss mitigation department to discuss and share any and all information about my mortgage and personal financial information with third parties, such as purchasers, brokers, real estate agents, insurers, property inspectors, financial institutions, credit bureaus and creditors.

I agree that the discussions and negotiations of a possible foreclosure alternative will not constitute a waiver of defense to the mortgage servicer's right to commence or continue any foreclosure or other collection action.

I have had the opportunity to consult with legal counsel prior to signing this document and I willingly agree to these terms and conditions, whether or not I elected to retain such counsel.

| | | |
|---|---|---|
| SAmueL G. BReitLing | *[signature]* 12-1-08 | ███████ |
| Borrower Name (Printed) | Borrower Signature    Date | Social Security No. |
| JoAnn BReitling | *[signature]* 12-1-08 | ███████ |
| Co-Borrower's Name (Printed) | Co Borrower's Signature    Date | Social Security No. |

PLease let us KNOW ASAP That
you will work with us.

NAME _Samuel & JoAnn Breitling_    LOAN NO. ████████ _424_

# DEFAULT CHECKLIST

In order that we may better address your financial situation, please answer the following questions.

1.  **What is the primary cause of your Default? (Circle all that apply)**

| | | |
|---|---|---|
| Death of Mortgagor | Employment Transfer | Casualty Loss |
| (Illness of Mortgagor) | Property Problems | Environmental Problems |
| Illness in Family | Inability to Sell Property | Payment Adjustment |
| (Death in Family) | Inability to Rent Property | Payment Dispute |
| Marital Difficulties | Military Service | Transfer of Ownership |
| Reduction/Loss of Income | Unemployment | Fraud |
| Excessive Obligations | Business Failure | Incarceration |

Other (explain)

2.  **Do you live in this property?**  (Yes)   No

3.  **Do you want to keep this property?**  (Yes)   No    *yes! yes! yes! Please!*

4.  **Can you make your regular monthly mortgage payment?**  (Yes)   No

5.  **How can we help?**

    (Long Term Repayment Plan?)   Short Term Repayment Plan?   Sell the Property?

    Deed the Property?    Other? (explain)

6.  **ARE YOU NOW, OR HAVE YOU EVER BEEN IN BANKRUPTCY?**   YES   (NO)

    IF YES, DATE FILED        CHAPTER (7 OR 13)        CASE NO.

    (Submit Documents, i.e. Discharge, Schedules, Reaffirmation, etc.)

NAME: Samuel G. & JoAnn S. Breitling    LOAN NO: _____ 424

## REASON FOR DEFAULT

Please take a few minutes to briefly state what difficulties have occurred that caused you to default on the payment of your mortgage. If a series of events brought about this financial hardship, then begin with the first event and explain how this series of events combined to create the default. Be aware that without fully understanding your hardship, we cannot help you. Where possible, please provide support for the hardship (i.e. copy of Termination of Employment Letter; Divorce Decree, etc.)

Should you need additional space to write, please attached additional pages. It is important that this letter convey what caused you to fall behind on your mortgage payments.

My name is JoAnn Breitling. Sam and I have lived in this house for 26 years. WE DO NOT WANT TO LOSE IT. Sam has had diabetes and heart disease for 17 years. He has had one open heart surgery, four angioplasties and one heart attack. We raised six daughters and our son with Down syndrome here. I became disabled 10 years ago and I have had eight surgeries. (orthopedic). I have never been behind in our mortgage. Last fall we learned Sam has a new blockage on the front side of his heart. We had $50,000 in medical bills in January alone. I started borrowing from payday loan companies to pay the doctor bills and I have gotten too many. They are never paid off. I was still caught up when MGC bought our loan in June. I made the June and July payments. Then, in July, my aunt died. She always helped us when I ran short. I am trying to recover from her estate but it could take a while. I have stopped paying the payday loan companies one at a time, and working out repayment plans. We had stock until it lost all its value. We were getting margin calls four and five times a day in August and

 424

**REASON FOR DEFAULT (CONT)**

September, my husband is going blind from
the diabetes and he had emergency retina
surgery in October. I tried to refinance
so many times and our credit improved
and the only thing keeping us from
refinancing was that when Countrywide
sold our loan to Wilshire (who sold it
to you), they added in $4700 in late
fees dating back to 2002. In 2002 my
husband was in a serious accident and
we never got behind but it became hard to
pay by the 15th. I currently owe for
August, September, October, November and
December. If you could approve a loan
modification and put the late fees ($4700)
and the missed payments into a new
balance and lower our interest rate from
12.3% to a reasonable rate, we will
make the January payment on time and
I give you my word I will never be
late again. I am not asking for a
hand out, but a hand up. When we refinanced
in 2000, I was told we had to take the
12.3% interest rate because of our credit.
I later learned that when we got the loan,
our credit scores were almost 800 and
we deserved a lower interest rate. I
pray that you will work with us. We
cannot borrow our way out of this as
no one is lending. Please look for any
government programs to help us stay in
our home. I pray you can lower our
interest rate and modify our loan so
that we can keep this home.

May God bless you for your help!

P.S. We have never received a monthly stmt.
since you bought our                    JoAnn Breitling
loan. Please help                              3068
we keep our home at a                      3915



424



### RICHARDSON CARDIOLOGY ASSOCIATES

## MYOCARDIAL PERFUSION STRESS TESTING

**SANT**
ARDIOVASCULAR
ipecialty Associates
of North Texas, P.A.

MEDICAL AND SURGICAL
TREATMENT OF CARDIOVASCULAR
AND PULMONARY DISEASE

99 W. Campbell Road
uite 206
chardson, TX 75080

401 Coit Road
uite 311
risco, TX 75035

: (972) 644-3278
: (972) 644-3441

---

> **Patient:** *SAMUEL BREITLING*
> **Date:** 11-16-07
> **Referring Physician:** *Trung Dao, MD*

**Clinical Indications:** Coronary Artery Disease.

**Clinical Data:** The patient is a 62 yo male who is 70 inches tall and weighs 274 pounds. He has a h/o Coronary Artery Disease, s/p CABG X2 (1994) [LIMA-LAD, SVG-RC], PTCA/stent (9/06) [SVG-RC, PD], a family h/o Coronary Artery Disease, hypertension, DM, and hyperlipidemia. He is here to assess the status of his Coronary Artery Disease.

**Protocol:** Adenosine Myoview

**Testing/Imaging Procedure:** The patient was fasting. Approximately 12 mCI Technetium 99m tetrofosmin was injected with the patient at rest. Gated SPECT imaging was performed 30-60 minutes later. The patient underwent adenosine pharmacological stress testing using a standard 5-minute infusion protocol at 140ug/kg/minute. Approximately 35 mCI Technetium 99m tetrofosmin was injected at approximately 2:30. Gated SPECT imaging was performed 30-90 minutes later.

**Findings:** The patient received Adenosine infusion per protocol. Resting EKG revealed Normal Sinus Rhythm, poor R-wave progression, and non-specific ST segment changes with Adenosine infusion and the patient experienced no angina. The images were noted to have inferior attenuation. Gated-wall motion revealed mild anterior hypokinesis and anterior septal hypokinesis with a post-stress ejection fraction of 53%. Myocardial perfusion imaging reveals moderate reversibility along the anterior wall.

### Impression/Recommendations:

1. *Gated wall motion revealed mild anterior hypokinesis and anterior septal hypokinesis with a post-stress ejection fraction of 53%.*
2. *Myocardial perfusion imaging reveals <u>moderate reversibility along the anterior wall.</u>*

Deepika Gopal, MD, FACC                    Eduardo Fernandez, MD, FACC

---

*The newest blockage is very serious and came as a shock to us. Heart disease never goes away.*

CARDIOVASCULAR DISEASE
ed P. Beeman, M.D.
David L. Brown, M.D.
acob Chennakrabong, M.D.
Michael J. Duran, M.D.
rian Eades, M.D.
ric Eichhorn, M.D.
David R. Eisen, M.D.
ary Paul Faria, M.D.
ichard J. Feingold, D.O.
duardo Fernandez, M.D.
ussell G. Fisher, D.O.
ulius V. Gex, M.D.
ernard Gojer, M.D.
eepika Gopal, M.D.
Mrs. Todd Gray, D.O.
icott L. Greenberg, M.D.
Marion S. Hodded, M.D.
landall S. Holl, D.O.
icky L. Harris, D.O.
ikas C. Jain, M.D.
estin M. Jobl, M.D.
      Wolfbuala, M.D.
   C. Moore, M.D.
   Amal A. Nambatarene, M.D.
L. Douglas Overbeck, M.D.
rinivas N. Paravandi, M.D.
t. Conrad Park, M.D.
Marvin G. Pew, M.D.
logadish Peppela, M.D.
I. Edward Rosenthal, M.D.
Michael Reitkopf, M.D.
iteven L. Shilling, M.D.
idney R. Stewart, M.D.
iidhard Thanigaraj, M.D.
Gavin P. Theleman, M.D.
onald Underwood, M.D.
adnavally Uppalapati, M.D.
alojit A. Veerappan, M.D.
rmando Yepes, M.D.

CARDIOTHORACIC SURGERY
David H. Azemoon, M.D.
David J. Carter, M.D.
iodd M. Dewey, M.D.
ames R. Edgerton, M.D.
David A. Fastick, M.D.
Rodney Fritz, M.D.
Gary R. Goetin, M.D.
George W. Johnson, Jr., M.D.
Michael J. Mack, M.D.
Mitchell J. Magee, M.D.
David O. Moore, M.D.
Melvin R. Platt, M.D.
William H. Ryan, M.D.
Michal Smoenko, M.D.
Larry W. Schorn, M.D.

VASCULAR SURGERY
Travis A. Foster, M.D.
Humam B. Kekish, M.D.
Russell C. Lam, M.D.
Jerry T. Light, Jr., M.D.
Jon Senkowsky, M.D.

www.cvsant.com

 424

I do not have 2006. It was in storage and the unit flooded. I hope that this one will be sufficient.



October 10, 2008 through November 12, 2008
Account Number: ██████████████

This Page Intentionally Left Blank

## REGISTER OF ACTIONS
### CASE NO. PR-08-02526-3

| ESTATE OF MARIAN RUBY FERRANTELLO | | |
|---|---|---|

§
§
§
§
§

Case Type: **DECEDENT**
Subtype: **WILL (LETTERS TESTAMENTARY)**
Date Filed: **07/23/2008**
Location: **Probate Court No. 3**

---

**RELATED CASE INFORMATION**

**Related Cases**
  PR-97-02760-2 (ESTATE FILED)

---

**PARTY INFORMATION**

**APPLICANT  CUMMINGS, JOSEPHINE**

**Lead Attorneys**
GARON, HERBERT

*Court Appointed*

**DECEDENT  FERRANTELLO, MARIAN RUBY**
  *ALSO KNOWN AS*  FERRANTELLO, MA

---

**EVENTS & ORDERS OF THE COURT**

|  | **OTHER EVENTS AND HEARINGS** |
|---|---|
| 07/23/2008 | APPLICATION (OCA - NEW CASE FILED) |
| 07/23/2008 | WILL |
| 07/24/2008 | ISSUE POSTED NOTICES |
| 07/24/2008 | POSTED NOTICE |
|  | INTERESTED PERSONS     served 07/24/2008  returned 07/25/2008 |
| 08/06/2008 | *CANCELED*   APPLICATION FOR PROBATE OF WILL AND LETTERS TESTAMENTARY  (11:00 AM) (Judicial Officer MILLER, MICHAEL E) |
|  | *REQUESTED BY ATTORNEY/PRO SE* |
| 09/12/2008 | APPLICATION -AMENDED |
| 09/12/2008 | MOTION - IN LIMINE |
| 09/18/2008 | ISSUE POSTED NOTICES |
| 09/18/2008 | POSTED NOTICE |
|  | INTERESTED PERSONS     served 09/18/2008  returned 09/19/2008 |
| 09/30/2008 | ADVERSE ACTIONS |
| 10/06/2008 | AFFIDAVIT |
| 10/09/2008 | NOTE - COURT STAFF (PRIVATE) |
| 10/20/2008 | *CANCELED*   CONFERENCE  (1:30 PM) (Judicial Officer MILLER, MICHAEL E) |
|  | *REQUESTED BY ATTORNEY/PRO SE* |
| 11/03/2008 | CONFERENCE  (11:30 AM) (Judicial Officer MILLER, MICHAEL E) |
| 11/03/2008 | AFFIDAVIT |
| 11/03/2008 | MISC. EVENT |
| 12/19/2008 | MOTION - HEARING  (9:00 AM) (Judicial Officer MILLER, MICHAEL E) |

---

**FINANCIAL INFORMATION**

*My mother/aunt died July 14, 2008. I am trying to come in for my part.*

| 07/24/2008 | PAYMENT (CASE FEES) | Receipt # PR-2008-09143 | JOANN BREITLING | (6.00) |
| 09/12/2008 | Transaction Assessment | | | 24.00 |
| 09/12/2008 | PAYMENT (CASE FEES) | Receipt # PR-2008-12008 | GARON, HERBERT | (24.00) |
| 09/30/2008 | Transaction Assessment | | | 60.00 |
| 09/30/2008 | PAYMENT (CASE FEES) | Receipt # PR-2008-12934 | JO ANN BRETLING | (60.00) |

PLEA TO THE JURISDICTION AND, SUBJECT THERETO,
RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

# EXHIBIT 7

(To Be Supplemented)

# **EXHIBIT 7(A)**

(To Be Supplemented)

# EXHIBIT 8



## Residential Account #48009900060050000

Location  Owner  Legal Desc  Value  Main Improvement  Additional Improvements  Land  Exemptions
Estimated Taxes  History

### Property Location (Current 2015)
Address:  1704 CORNWALL LN
Neighborhood:  3GSR04
Mapsco:  9A-U (DALLAS)

### DCAD Property Map

### 2014 Appraisal Notice

### Electronic Documents (ENS)

### File Homestead Exemption Online

🖨 Print Homestead Exemption Form

**YAHOO! Maps**

### Owner (Current 2015)
LNV CORP
1 CORPORATE DR STE 360
LAKE ZURICH, ILLINOIS 600478945

### Multi-Owner (Current 2015)

| Owner Name | Ownership % |
| --- | --- |
| LNV CORP | 100% |

### Legal Desc (Current 2015)
1: SACHSE SOUTH ESTATES 1
2: BLK F LOT 5
3:
4: INT201400229264 DD09022014 CO-DC
5: 0099000600500 1CK00990006
   Deed Transfer Date: 9/8/2014

### Value

| 2014 Certified Values | |
| --- | --- |
| Improvement: | $136,910 |
| Land: | + $28,300 |
| Market Value: | =$165,210 |
| Revaluation Year: | 2013 |
| Previous Revaluation Year: | 2010 |

## Main Improvement (Current 2015)

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Building Class | 18 | Construction Type | FRAME | # Baths (Full/Half) | 2/ 0 |
| Year Built | 1979 | Foundation | SLAB | # Kitchens | 0 |
| Effective Year Built | 1979 | Roof Type | HIP | # Bedrooms | 4 |
| Actual Age | 36 years | Roof Material | WOOD | # Wet Bars | 0 |
| CDU (Condition / Desirability / Utility) | GOOD | Fence Type | WOOD | # Fireplaces | 1 |
| Living Area | 2,131 sqft | Ext. Wall Material | BRICK VENEER | Sprinkler (Y/N) | Y |
| Total Area | 2,131 sqft | Basement | NONE | Deck (Y/N) | N |
| % Complete | 100% | Heating | CENTRAL FULL | Spa (Y/N) | N |
| # Stories | ONE STORY | Air Condition | CENTRAL FULL | Pool (Y/N) | N |
| Depreciation | 35% | | | Sauna (Y/N) | N |

## Additional Improvements (Current 2015)

| # | Improvement Type | Construction | Floor | Exterior Wall | Area (sqft) |
|---|---|---|---|---|---|
| 1 | ATTACHED GARAGE | BK-BRICK | CONCRETE | UNASSIGNED | 500 |
| 2 | DETACHED CARPORT | | UNASSIGNED | ALUMINIUM | 400 |
| 3 | STORAGE BUILDING | | UNASSIGNED | ALUMINIUM | 240 |

## Land (2014 Certified Values)

| # | State Code | Zoning | Frontage (ft) | Depth (ft) | Area | Pricing Method | Unit Price | Market Adjustment | Adjusted Price | Ag Land |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SINGLE FAMILY RESIDENCES | PLANNED DEVELOPMENT | 105 | 175 | 17,631.0000 UNASSIGNED | FLAT PRICE | $28,300.00 | 0% | $28,300 | N |

*\* All Exemption information reflects 2014 Certified Values. \**

## Exemptions (2014 Certified Values)

| | City | School | County and School Equalization | College | Hospital | Special District |
|---|---|---|---|---|---|---|
| Taxing Jurisdiction | SACHSE | GARLAND ISD | DALLAS COUNTY | DALLAS CO COMMUNITY COLLEGE | PARKLAND HOSPITAL | UNASSIGNED |
| HOMESTEAD EXEMPTION | $0 | $15,000 | $33,042 | $33,042 | $33,042 | $0 |
| REG DISABILITY EXEMPTION | $50,000 | $10,000 | $69,000 | $50,000 | $69,000 | $0 |
| Taxable Value | $115,210 | $140,210 | $63,168 | $82,168 | $63,168 | $0 |

## Exemption Details
## Estimated Taxes (2014 Certified Values)

| | City | School | County and School Equalization | College | Hospital | Special District |
|---|---|---|---|---|---|---|
| Taxing Jurisdiction | SACHSE | GARLAND ISD | DALLAS COUNTY | DALLAS CO COMMUNITY COLLEGE | PARKLAND HOSPITAL | UNASSIGNED |
| Tax Rate per $100 | $0.770819 | $1.2533 | $0.2531 | $0.124775 | $0.286 | N/A |
| Taxable Value | $115,210 | $140,210 | $63,168 | $82,168 | $63,168 | $0 |
| Estimated Taxes | $888.06 | $1,757.25 | $159.88 | $102.53 | $180.66 | N/A |
| Tax Ceiling | | | | | N/A | N/A |
| | | | | | Total Estimated Taxes: | $3,088.38 |

DO NOT PAY TAXES BASED ON THESE ESTIMATED TAXES. You will receive an official tax bill from the appropriate agency when they are prepared. Taxes are collected by the agency sending you the official tax bill. To see a listing of agencies that collect taxes for your property. Click Here

The estimated taxes are provided as a courtesy and should not be relied upon in making financial or other decisions. The Dallas Central Appraisal District (DCAD) does not control the tax rate nor the amount of the taxes, as that is the responsibility of each Taxing Jurisdiction. Questions about your taxes should be directed to the appropriate taxing jurisdiction. We cannot assist you in these matters. These tax estimates are calculated by using the most current certified taxable value multiplied by the most current tax rate. It does not take into account other special or unique tax scenarios. If you wish to calculate taxes yourself, you may use the TaxEstimator to assist you.

History

History

© 2015 Dallas Central Appraisal District.
All Rights Reserved.