IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JO ANN BREITLING, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | NO. 3:15-CV-00703 |
| LNV CORPORATION, ET AL., | § § | NOTICE OF CONSTITUTIONAL QUESTION |
| Defendants. | § § | |

_____

NOTICE OF CONSTITUTIONAL QUESTIONS
_____

Plaintiffs incorporate herein all pleadings in all related cases.

Pursuant to Federal Rules 28 U.S.C. § 2403 and 5.1(a)(1) Plaintiffs hereby make notice

of constitution questions.

Pursuant to Federal Rule 5.1(a)(1)(B) Plaintiffs identify the following Texas statutes

and/or the Texas judicial enforcement or arbitrary lack of enforcement of these statutes in

expedited foreclosure cases as being unconstitutional:

1. Section 12.001, Texas Property Code;
2. Section 51.002, Texas Property Code;
3. Section 24.005, Texas Property Code;
4. Section 37.031; Texas Government. Code;
5. Texas Constitution Article 16, Section 50;
6. Rules 735 and 736(1), Texas Rules of Civil Procedure;

Pursuant to Federal Rule 5.1(a)(1)(B) Plaintiffs identify Texas and Federal statutes that

Plaintiffs challenge as being unconstitutional or that state and federal judges unconstitutionally

fail to enforce against parties like LNV and its owner D. Andrew "Andy" Beal in foreclosure

related cases which include, but are not limited to:

1. Rule 201(c)(2), Federal Rules of Civil Procedure
2. 18 U.S.C. § 4 et seq., Misprision of Felony;
3. The Federal Courts Jurisdiction and Venue Clarification Act of 2011
4. Section 37.02, Texas Penal code - perjury and other falsification;
5. O.R.S § 162.065 Perjury
6. O.R.S § 165.013 Forgery in the first degree
7. 39-14-114 Forgery Tennessee Title 39 Chapter 14
8. 39-16-702 Perjury Tennessee Title 39 Chapter 16
9. 720 ILCS 5/32-2 (Illinois criminal code perjury)
10. 720 ILCS 5/17-3 (Illinois criminal code forgery)
11. LA Rev Stat § 14:72  — Forgery
12. LA Rev Stat § 14:123  — Perjury
13. Ind. Code § 35-44-2-1: Perjury
14. Ind. Code § 35-43-5-2.5: Counterfeiting; Forgery; Application Fraud
15. California Penal Code, Section 118-131 - perjury
16. California Penal Code, Section 470-483.5 - forgery
17. AZ Rev Stat § 13-2002: Forgery
18. AZ Rev Stat § 13-2702: Perjury

This failure of state and federal judges to fairly and uniformly enforce the

aforementioned statutes results in violations of Plaintiffs; the other Beal victims, and other

similarly situated parties in foreclosure related cases being denied their rights to due process and

to equal protection of the law under the Fifth and Fourteenth Amendments of the United States

Constitution.

Pursuant to Federal Rule 5.1(a)(1)(B) Plaintiffs identify the Judges Dale B. Tillery, Gerry

Cooper, and Sally Montgomery who have each unconstitutionally failed to fairly and impartially

conduct litigation in the matter now before this court and/or to correctly apply or enforce the

statutes being constitutionally challenged herein; resulting in great harm to Plaintiffs and the

deprivation of their property without due process or equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution.

Plaintiffs challenge the constitutionality of Texas foreclosure procedures/practices and/or the Texas foreclosure statutes and/or the arbitrary judicial enforcement of or lack of enforcement for such by Texas Judges afore named; and a Tennessee federal judge later named herein.

Plaintiffs challenge the constitutionality of the failure of Texas Attorney General, who was Greg Abbott at the time the constitutional deprivations took place, to properly investigate the numerous consumer complaints sent to his office regarding Beal's MGC Mortgage Inc. and its pattern of misappropriation of payments, fraudulent claims of default which were then used to initiate and perfect foreclosures using forged mortgage related documents.  Beal and his attorneys and his agents knew these mortgage related documents were forged, and intentionally submitted them to courts knowing judges would rely on them as being genuine; and thus committed fraud upon the court.  D. Andrew Beal instructed his employees, his agents, and his attorneys to use these forged mortgage related documents in foreclosure proceeding with intent to deceive the courts to the detriment of Plaintiffs and the other Beal victims for his own personal gain.

Plaintiffs challenge the constitutionality of state and federal judicial practices specific to the treatment of pro-se civil litigants attempting to protect their properties from illegal seizure by exceptionally wealthy opposing parties like LNV owned by D. Andrew "Andy" Beal who uses forged mortgage related documents to perfect wrongful foreclosures and who prolongs consumer litigation stemming from predatory and potentially unenforceable mortgage contracts that originated in fraud, fraudulent mortgage securitizations and fraudulent mortgage servicing with

misappropriation of payments and false claims of default by Beal's MGC Mortgage Inc.

("MGC"), so as to expire statutes of limitations on consumer claims; and to deprive homeowner

trapped in this prolonged litigation of their liberty to make financial decisions about their

property, and to enjoy their life and their property.  The continued onslaught of prolonged

litigation is calculated by D. Andrew "Andy" Beal owner of Defendant LNV to financially drain

and emotionally wear down his opponents, who are Plaintiffs and the other Beal victims who

unlike Beal do not have billions of dollars at their disposal.

Plaintiffs challenge whether pro-se litigants, like themselves and the other Beal victims,

are denied meaningful access to the courts, thus depriving them of their constitutionally

guaranteed rights to due process and equal protection of the law under the Fifth and Fourteenth

Amendments of the Unite States Constitution under conditions that allow exceptionally wealthy

parties, like Beal, to abuse and exploit the judicial system to their benefit and to the detriment of

less wealthy and more meritorious parties.

The appearance of a pattern of impropriety exists in Plaintiffs' case and the cases of other

Beal victims that suggest the possibility that Beal and/or his attorneys have improperly

influenced judicial decisions through political pressure or bribes.  A pattern of sudden

"incompetence" has also occurred with attorneys hired by Plaintiffs and other Beal victims that

suggest Beal may have paid these attorneys to become ineffective counsel to their own clients for

Beal's personal gain and to the detriment of Plaintiffs and the other Beal victims.  These unfair

and illegal tactics have far reaching effects with significant public interest because they result in

a wrongful setting of legal precedence each time Beal wins litigation using such tactics.

Plaintiffs challenge the constitutionality of state and federal judicial proceedings where state and federal judges routinely conduct litigation involving litigants who are victims of a crime in a manner that violates their rights under 18 U.S.C. § 3771 and treats them as if they are the criminals rather than the victims of a crime.

Furthermore Plaintiffs challenge the constitutionality of judicial process where Judges, both state and federal, routinely violate rules of evidence and ignore or deny motions for Judicial Notice of Adjudicative Facts.

Plaintiff filed on August 18, 2014 in the related case *LNV v. Breitlings*, Cause No. DC-14-04053, in the 134th Dallas District Court (which is the crux of the present case) a Motion for Judicial Notice of Adjudicative Fact in the Criminal Indictment and Conviction of Lorraine Brown for Conspiracy to Commit Mail and Wire Fraud.

The Texas foreclosure laws (collectively Section 12.001, Texas Property Code; Section 51.002, Texas Property Code; Section 24.005, Texas Property Code; Section 37.031; Texas Government. Code; Texas Constitution Article 16, Section 50; and Rules 735 and 736(1), Texas Rules of Civil Procedure) are unconstitutional in that a loophole exists within this body of law that has been exploited by the Beal Defendants and their attorneys to unconstitutionally deprive us of our property and to allow them to force us to represent ourselves in SIX (6) different courts at the same time.  Unlike the owner of Defendant LNV Corporation, Daniel Andrew "Andy" Beal, we do not have tens of billions of dollar to pay a team of five attorneys (Luke Madole, Sammy Hooda, Marc Cabera, Jason Sanders and Pat Heptig).  Andy Beal is determined to deprive us of our home of 33 years with intent to inflict as much emotional distress on us as possible in retaliation because we have dared to speak out publically about how Beal operates

hundreds of sham corporations to intentionally put homeowners into trumped up defaults so he

can then foreclose on their properties with forged deed assignments and note allonges that give

the appearance that one of Andy Beal's sham corporations has standing to foreclose when they in

fact do not.

Judge Tillery in related case *LNV v. Breitlings*, Cause No. DC-14-04053 failed to take

judicial notice. (By all appearances he failed to even read most, if not all, of Plaintiffs'

pleadings.)  Plaintiffs included with their motion a true and accurate copy of the adjudicative

facts to be noticed pursuant to Texas Rules of Evidence 201(c)(2).  (See Plaintiffs Exhibit A-1

attached herein.)

> Texas Rules of Evidence 201(c)(2) states:
>
>> "The court **must** take judicial notice if a party requests it and the court is
>> supplied with the necessary information."

Plaintiffs filed a Motion for Judicial Notice of Adjudicative Fact in the Criminal

Indictment and Conviction of Lorraine Brown for Conspiracy to Commit Mail and Wire Fraud in

the other related case noticed by Defendants, Doc. 2, i.e. *Breitling et al. v. LNV Corporation et*

*al.*, Civil Action No. 3:14-cv-3322-M, in the United States District Court for the Northern

District of Texas, Dallas Division (the "Related Case"), before United States District Judge

Barbara M. G. Lynn and United States Magistrate Judge David L. Horan. The Related Case was

remanded back to state court January 27, 2015. See Related Case, Doc. No. 60.

Because this case was ultimately remanded it is understandable why no judicial notice

was granted; the court decided it lacked jurisdiction to rule on the motion.  However in the case

of *LNV v Gebhardt*, Civil Action No. 3:12-cv-468-TVA-HBG in the United States District Court

for the Eastern District of Tennessee Northern Division at Knoxville a similar Motion for

Judicial Notice of Adjudicative Fact in the Criminal Indictment and Conviction of Lorraine

Brown for Conspiracy to Commit Mail and Wire Fraud pursuant to Federal Rule 201 Judicial

Notice of Adjudicative Facts was filed on January 30, 2015. See Document 120 in *LNV v*

*Gebhardt*.

       In this case Judge Thomas A. Varlan denied Gebhardt's motion. <u>Federal Rule 201(c)(2)</u>

also states:

> "The court **must** take judicial notice if a party requests it and the court is
> supplied with the necessary information."

       Judge Varlan appears to have violated federal statute by denying Gebhardt's motion for

judicial notice of adjudicative fact.  Both Plaintiffs and Ms. Gebhardt are victims of the crimes of

Lorraine Brown and her co-conspirators, who include D. Andrew "Andy" Beal, his attorneys, his

employees and his agents and their employees.

       In both the aforementioned cases notice of the adjudicative facts in the criminal

indictment and conviction of Lorraine Brown for conspiracy to commit mail and wire fraud

pursuant to <u>18 U.S. Code § 371</u> are relevant to the facts specific to standing where LNV is

attempting to deprive the opposing party (Plaintiffs, Gebhardt and numerous other "Beal

victims" across the country) of their property.

       In Plaintiffs' case and in all these other cases LNV, which is owned and personally

operated by Andy Beal, submitted deed assignments and/or alonges to notes and other

endorsements as evidence of LNV's standing to foreclose when in all these cases the opposing

parties (the Breitings in the present case, Gebhardt and Rebekah Gentry-Youngblood in the

Tennessee, Denise Subramaniam and Robynne A. Fauley in Oregon, the Swifts in Illinios,

Rhonda Hardwick in Indiana, Tuli Molina in Arizona, David Gates and Kelly Randle in California, Cammy Depew in Louisiana, and many other victims too afraid of retaliation by Beal to be named herein) challenged the authenticity of these mortgage related documents submitted to the courts by LNV.  All these parties opposing LNV or other Beal owned corporate entities also showed courts, or can show the courts if they were ever given an opportunity to do so, that these documents were produced by LPS (i.e. Lender Processing Services).

Adjudicative facts in the criminal conviction of Lorraine Brown include:

1. Lorraine Brown had co-conspirators.

2. Lorraine Brown's co-conspirators have not yet been prosecuted for their crimes.

3. Lorraine Brown committed her crimes through Lender Processing Services, ("LPS")

4. At the direction of Brown and other co-conspirators employees of LPS began forging and falsifying signatures of mortgage-related documents and filed them with property recorders offices across the country.

5. Lorraine Brown's co-conspirators used other unauthorized employees to sign mortgage-related documents on their behalf knowing that the documents would be notarized as if the co-conspirator has signed the document, when he/she had not.

6. Between 2003 and 2009 it is estimated that <u>over 1 million fraudulently signed and notarized mortgage-related documents were produced</u> through the crimes of Lorraine Brown and her co-conspirators and filed with property recorders' offices across the country.

Adjudicative facts from the Lorraine Brown criminal conviction are relevant to the present case, to the *LNV v Gebhardt* case (now on appeal) and to litigation between LNV (and other business entities controlled by D. Andrew Beal) and the many other "Beal victims" for the following reasons:

1. LNV and MGC (both owned and controlled by Andy Beal) and their agents (LPS Service Providers Codilis & Stawairski and Dovenmuhlhe) have forged and falsified

mortgage-related documents and filed them with property recorders' offices across the country; and/or have knowingly used such forged documents in foreclosure cases.

2. Plaintiffs in the present case, and the other Beal victims claim that their mortgage related records are the products of the crimes of Lorraine Brown and her co-conspirators; and they provided the courts with evidence to substantiate these claims.

3. The courts continue to accept these forged and falsified mortgage-related documents as genuine (ignoring evidence to the contrary) and routinely grant summary judgments or dismissals in favor of LNV and parties like it.

4. The United States Attorney General has determined that parties who forge and falsify mortgage-related documents and file them with property recorders' offices across the country are guilty of the federal criminal offence of mail and wire fraud. (Lorraine Brown was convicted by the United States.)

5. The United States has already proven the criminal conspiracy exists.

6. The United States has already proven Lorraine Brown had co-conspirators; and since those co-conspirators haven't yet been indicted or convicted it stands to reason they may still be committing crimes consistent with her criminal conspiracy.

7. Plaintiffs in the present case, and the other Beal victims claim that D. Andrew Beal is one of Lorraine Brown's co-conspirators and that he intentionally uses the products of Brown's crimes stored in the LPS Desktop computer software. Beal's employee, Bret Maloney, admitted in a deposition the Beal enterprise entities and their agents use the LPS Desktop.

8. A Beal employee, Jim Chambless, admitted in an email to fabricating mortgage-related documents to "cure" a break in the chain of title to Plaintiff's property.

Plaintiffs in the present case, Gebhardt in *LNV v Gebhardt*, and several other "Beal victims" have filed motions for judicial notice of the Lorraine Brown criminal conviction which have routinely been ignored or denied by state and federal judges.

Additionally Plaintiffs in the present case, Gebhardt in *LNV v Gebhardt*, and several other "Beal victims" have filed motions for judicial notice of *Beal Bank, SSB v. Sarich,* No. 05-2-11440-1SEA (King County Super. Ct. Sept. 8, 2006) where the judge determined:

"Beal demonstrated its aggressiveness in this action by suing on an altered promissory note. Beal switched the signature page on one of the notes to make it appear that Kay Sarich signed the note when, in fact, she did not.[3]…

[3] The second page of the Term Note, dated September 24,2002, attached as Exhibit 2 to Beal Bank's Complaint for Judicial Foreclosure of Deeds of Trust, appears to be signed by Kay Sarich. CP 20. However, a copy of the actual September 24,2002 Term Note obtained from the original lender (U.S. Bank) shows that Kay Sarich did not sign the note. CP 105. Beal Bank subsequently admitted switching the signature pages. See Letter from Nancy L. Isserlis to Katriana Samiljan and Spencer Hall, dated June 28,2006. CP 238-39."

See highlighted sections of Exhibit A-2 attached herein.

Altering a promissory note with intent to use it for personal gain is felony FORGERY and is a CRIME in every state in this nation!!!!!!

Plaintiffs and the other Beal victims move for judicial notice of this case, as well as two other Beal cases, *Southgate Master Fund, LLC v. United States*, 659 F. 3d 466 - Court of Appeals, 5th Circuit 2011 and *Bemont Investments, L.L.C. v. United States*, 679 F.3d 339 (5th Cir. 2012), because the adjudicative facts in these cases show a character trait possessed by D. Andrew Beal that is reflected in the business practices of his privately held corporate enterprise that is an essential element of Plaintiffs' and the other Beal and Brown victims' claims of intentional criminal activity in foreclosure actions initiated and perfected by Beal and/or his privately held corporations, his LPS agents, and his attorneys.

Texas and Federal Rule 405 allow parties to show courts relevant evidence specific to instances of the person's condut to prove character when a person's character or character trait is an essential element of a charge, claim, or defense.

Adjudicative facts in *Southgate Master Fund, LLC v. United States* and *Bemont Investments, L.L.C. v. United States* establish Beal's mode of operandi.  In Southgate the Internal Revenue Service determined that Southgate was a sham partnership. The district court upheld these determinations. The appellate court determined the district court was correct to do so. Adjudicative facts in *Bemont* were that the primary objective of the parties (D. Andrew Beal and Tom Montgomery) was to structure credit swaps to claim considerable losses with the IRS.

Additional adjudicative facts in *Southgate* and *Bemont* among other things show that:

1. D. Andrew Beal is the sole owner/shareholder of Beal Financial Corporation and its subsidiary, Beal Bank.

2. Judicial findings of fact show that Beal has a propensity to pay witnesses well so they will say what he wants them to say in a court. ("The Court believes that Coscia was no more than a 'puppet' for Plaintiffs and rendered no real independent or objective advice. Coscia said what he was paid to say.")

3. Beal has a propensity for intentionally structuring shell corporations or business entities to meet specific business objectives that may not be considered legal or valid business objectives by a reasonable and impartial observer. (i.e. they are sham corporations.)

4. Beal has the propensity for intentionally withholding evidence from the government, regulators, investigators, and the courts.

## Constitutional Question 1

Can a state or federal judge ignore or deny a motion for judicial notice of adjudicative facts when they have been properly filed; and the material has been provided as required by Rule 201(c)(2); and when the moving party has shown the relevance of the adjudicative facts to their own cases; and/or is the language of Rule 201(c)(2) unconstitutional because it fails to invoke a clear understanding in state and federal judges of what is expected of them when such a motion is submitted?

The language of Federal Rule 201(c)(2) and Texas Rules of Evidence 201(c)(2) implies to laypersons such as the Plaintiffs and the other Beal victims that they cannot, but apparently many judges read this language differently.  In the present case and in the other Beal victims' cases doing so has the effect of a denial of due process and denial equal protection of the law.

Under <u>Federal Rule 301 Presumptions in Civil Cases</u> "unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."

LNV as the plaintiff had the burden of proof or persuasion in the related case: *LNV v. Breitlings*, Cause No. DC-14-04053, in the 134th Dallas District Court.  LNV submitted to the court various mortgage related documents that included deed assignments, the deed of trust, the note and endorsements and alYonges to the note as evidence of its standing to foreclose on Plaintiffs' property.  Plaintiffs challenged the authenticity of these documents.

Deed assignments, since they are filed with the property recorders' office carry a presumptive burden.  Presumptions governed by <u>Rule 301</u> are given the effect of placing upon the opposing party (Plaintiffs in the present case, who were defendants in the related case) the burden of establishing the nonexistence of the presumed fact, once the party invoking the presumption establishes the basic facts giving rise to it.

Plaintiffs as defendants in the related case filed their motion for judicial notice of adjudicative fact in the criminal indictment and conviction of Lorraine Brown for conspiracy to commit mail and wire fraud as evidence to defeat the presumption that deed assignments and other documents filed with a property recorders' office must be genuine.

In the above referenced criminal conviction it is adjudicative fact that over 1 million fraudulently signed and notarized mortgage-related documents were produced through the crimes of Lorraine Brown and her co-conspirators and filed with property recorders' offices across the country.  This fact defeats the presumption invoked by LNV.

Plaintiffs submitted further evidence to the 134th Dallas district court and to Judge Tillery which disputed the validity and enforceability of the deed assignment that purported to transfer beneficial interest in Plaintiffs' deed of trust to LNV.  Plaintiffs submitted to the court ample evidence to support their claims that this deed assignment was altered and forged to give it the appearance of authenticity. If Plaintiffs' claims are true then LNV lacks standing to foreclose on Plaintiffs' property.

Much ado has been made by LNV, its agents and attorneys, about Plaintiffs having not made a mortgage payment in years.  These complaints are smoke screen tactics employed by LNV, its agents and attorneys, to divert judicial attention from the real issue in dispute: <u>whether or not LNV or its agents have standing to collect payments from Plaintiffs or to foreclose on Plaintiffs' property</u>. Plaintiffs have consistently contended through all their pleadings that they do not.  A recent appellate decision from the sixth circuit determined that parties like LNV do not have standing to collect payments or to foreclose on forged and falsified deed assignments; and when they do they are liable for damages caused to the homeowner. See <u>Case No. 13-3402</u>, *Rick Slorp v. Lerner, Sampson & Rothfuss, et al*; <u>Originating Case No. 2:12-cv-00498</u> (see Plaintiffs Motion for Judicial Notice of Adjudicative Facts in *Rick Slorp v. Lerner, Sampson & Rothfuss, et al.)*

This aforementioned case is remarkably similar to the present case.  Slorp alleged that

"filing and maintaining the foreclosure action with the use of false statements and evidence

constitute[d] a false, deceptive, and/or misleading practice in an attempt to collect a debt."

Quoting from the court's opinion in *Rick Slorp v. Lerner, Sampson & Rothfuss:*

> The gravamen of the complaint was that the defendants engaged in unfair,
> deceptive, and fraudulent debt-collection practices when they filed an illegitimate
> foreclosure action against Slorp. The defendants moved to dismiss the complaint,
> and as that motion was pending, Slorp sought leave to amend his complaint to add a
> civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO),
> 18 U.S.C. §§ 1961–68. The district court granted the motion to dismiss and denied
> the motion for leave to amend the complaint. We now affirm the dismissal of the
> original complaint but reverse the district court's denial of the motion for leave to
> amend the complaint. We remand the case to the district court with instructions to
> permit Slorp to amend his complaint to add a RICO claim….

> After Slorp answered the foreclosure complaint, Bank of America moved for
> summary judgment. The court of common pleas granted that motion. Slorp moved
> for relief from the judgment in July 2011, and in February 2012 Slorp served Hill
> with a subpoena duces tecum, demanding that she "appear at an evidentiary hearing
> and bring documents demonstrating her relationship with [Bank of America] and its
> predecessors, documents demonstrating her appointment as Assistant Secretary and
> Vice president of Defendant MERS, and other documents related to the
> Assignment." One month later—on the day before Hill was scheduled to testify at
> the evidentiary hearing—Bank of America voluntarily dismissed the foreclosure
> action, and the state court vacated the judgment….

> According to the complaint, Hill "falsely executed" the assignment because
> Countrywide Bank did not exist on July 9, 2010, and Hill was not an employee of
> MERS on that date. Hill acted at the behest of LSR and with Bank of America's
> knowledge, said Slorp, and her "false statement was made with the purpose to
> mislead the judge in the performance of her official function within the foreclosure
> action." Slorp alleged that "filing and maintaining the foreclosure action with the
> use of false statements and evidence constitute[d] a false, deceptive, and/or
> misleading practice in an attempt to collect a debt." Slorp sought actual damages of
> $8,934.44, treble damages of $26,803.32, statutory damages of $1,000, non-
> economic damages of $5,000, and fees and costs.

> Bank of America and MERS moved to dismiss Slorp's complaint, and LSR and Hill
> filed a separate motion to dismiss on the same day. After the parties finished
> briefing those motions, Slorp filed an amended complaint without first seeking the
> defendants' consent or the court's leave. The parties held a pretrial conference two
> days later, and Slorp pledged to file a motion for leave to amend within five days of
> that conference. Slorp then filed a motion for leave to file a second amended

complaint, together with his proposed second amended complaint. The proposed complaint expanded the factual allegations and added a fifth count alleging a violation of RICO, 18 U.S.C. § 1961. The defendants opposed Slorp's request for leave to amend.

The district court denied Slorp's motion for leave and dismissed the complaint. The court held that Slorp lacked standing to challenge the validity of the assignment because he was not a party to the assignment. The district court also concluded that Slorp had not suffered damages attributable to the allegedly fraudulent assignment because his exposure to the foreclosure action resulted from his default on the promissory note rather than any of the defendants' conduct. The court then rejected each of Slorp's claims on the merits….

The district court held that Slorp lacked standing because he sustained no injury as a result of the assignment. In its view the foreclosure action "was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly 'false' Assignment." Although the foreclosure action caused Slorp to incur legal fees, the court stated, he incurred those fees because he defaulted, "not because of the Assignment." Thus the district court held that Slorp sustained no injury attributable to the allegedly fraudulent assignment.

This analysis suffers from one key error: It mistakes the source of the injury alleged in Slorp's complaint. <u>Slorp does not attribute his injuries to the false assignment of his mortgage; rather, he attributes his injuries to the improper foreclosure litigation.</u> According to the complaint, Bank of America (through LSR) filed a foreclosure action against Slorp despite its lack of interest in the mortgage; <u>the defendants misled the trial court by fraudulently misrepresenting Bank of America's interest in the suit; and Slorp incurred damages when he was compelled to defend his interests. If Bank of America had no right to file the foreclosure action, it makes no difference whether Slorp previously had defaulted on his mortgage.</u>[2] Slorp's suit to recover damages caused by Bank of America's lawsuit satisfies each of the three components of Article III [of the United States Constitution] standing. (*Underlined emphasis added.*)

Plaintiffs in the present case have repeatedly disputed LNV's claim of debt against them and LNV's standing to foreclose on their property to collect LNV's purported debt.

<u>Federal Rule 901(a)</u> states:

> "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Texas Rule 901 is like the federal rule except that Texas Rule 901(b)(3), in cases where a document is authenticated by comparison with an exemplar or specimen, the exemplar must be found by the court to be genuine, whereas the federal rules require only that the exemplar be authenticated, i.e. supported by evidence sufficient to support a finding that it is genuine.

In Texas, and in other states, an unbroken chain of title is required to resolve ownership/title disputes over real property.  Property rights are the cornerstone of our United States Constitution.  An American citizen's right not to be deprived of his/her property without due process of law is constitutionally guaranteed.

Judge Tillery ignored Plaintiffs' claims that the assignment of deed of trust submitted by LNV was not genuine and Judge Tillery ignored evidence Plaintiffs submitted into court record to substantiate these claims.

Judge Varlan in the *LNV v. Gebhardt* case in Tennessee similarly ignored claims and evidence submitted to his court by Gebhardt disputing the authenticity of the deed assignments, allonges to notes and other endorsements on the mortgage related documents LNV used to substantiate its "breach of contract" claim against Gebhardt.

In related case *LNV v. Breitlings*, Cause No. DC-14-04053, in the 134th Dallas District Court, LNV also submitted to the court an affidavit of Edward J. Badgon in support of their motion for summary judgment. See pages 8 and 9 of Exhibit B-1 attached herein.

Plaintiff additionally attached herein as Exhibit B-2 a comparison of fifty-four (54) individual Edward J. Bagdon signatures found on mortgage related documents filed with county property recorders' offices across the county.

Even to an untrained eye the variations between these signatures indicates that multiple individuals signed these documents as Edward J. Bagdon, when they were in fact not Edward J. Bagdon.  This is consistent with the adjudicative facts in the criminal conviction of Lorraine Brown and her co-conspirators, i.e. they used other unauthorized employees to sign mortgage-related documents on their behalf knowing that the documents would be notarized as if the co-conspirator has signed the document, when he/she had not.

On August 3, 2014 Plaintiffs filed <u>DEFENDANTS SUPPLEMENT OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMNT</u> in Judge Tillery's court where they show the court that affiant Edward J. Bagdon is a robo-signer consistent with the aforementioned adjudicative facts.  See <u>Exhibit C</u> attached herein.

On page 7 of Plaintiffs' <u>Exhibit C</u> is a highlighted list of twenty-three (23) documents containing an Edward J. Bagdon signature filed in property recorders' offices in Pottawattamie County, IA; Forsyth County, NC and Desoto County, MS.  In these documents Edward J. Bagdon signed as Vice President of Centris Federal Credit Union; Vice President of United Western Bank; Vice President of Allegacy Federal Credit Union; Assistant Vice President of Dovenmuehle Mortgage, Inc; Assistant Vice President of Peoples Bank and Trust; Assistant Vice President of AIG Federal Savings Bank; Secretary of MERS; Assistant Secretary of MERS.

At the time Plaintiffs filed this pleading in August 2014 they and the other Beal victims had found only fifty (50) such documents containing an Edward J. Bagdon signature, since then more than a hundred twenty (120) such documents have been found.

Again Judge Tillery ignored this evidence which Plaintiffs submitted to his court to dispute the credibility of the sworn affidavit of Edward J. Bagdon.

**Constitutional Question 2**

Does a judge violate the constitutional due process and equal protection rights of a pro-se party when that judge grants a summary judgment or dismissal to the opposing party in spite of a motion for judicial notice of adjudicative facts that would defeat a presumptive advantage for the opposing party and would implicate the opposing party as a co-conspirator in a criminal conspiracy; or when that judge ignores evidence that impeaches affidavit testimony submitted by the opposing party; and/or is the language of the Texas and federal rules of evidence aforementioned unconstitutional because they fails to invoke a clear understanding in state and federal judges of what is expected of them and how they are apply these rules in foreclosure related cases involving pro-se litigants?

The most central and material fact relevant to a foreclosure (or in the case of *LNV v. Gebhardt* a breach of contract where the contract is a mortgage contract that LNV intends to enforce with a writ of execution to sell Gebhardt's property) is whether the party bringing suit has standing to sue.

When as a defendant (Plaintiff now in the present case) disputed the authenticity of LNV's evidence and attached to pleadings to show the court (Judge Tillery) evidence that discredits the genuineness of LNV's mortgage related documents then a judicial determination of fact regarding the validity of LNV's documents and whether they have been forged is warranted. Summary judgment or dismissal without discovery, without the opportunity to present witnesses or without a trial is not warranted.  Discovery, evidence and a trial are requirements for due process and equal protection of law to take place in a dispute like the present case.  This is not what happened in Judge Tillery's court.  He failed to even read Plaintiffs' pleadings.  He claimed

they had not filed an answer, when they had.  He appeared to have made his mind up to grant

LNV summary judgment before the hearing on August 4, 2014; in fact he signed an order

granting LNV a default judgment on July 7, 2014 and closed the *LNV v. Breitlings* case.

Plaintiff, JoAnn Breitling noticed this within hours of it happening and called the court.

The clerk told her that the judge must not have liked their answer. Plaintiff told the clerk it did

not matter if he "liked" their answer or not, he could not enter a default against them because

Plaintiffs answered the original petition.  Within few minutes of Plaintiff's conversation with the

clerk, the case was reopened and a hearing was set for the summary judgment on August 4, 2014.

At the hearing on August 4, 2014 presided by Judge Tillery Plaintiff, JoAnn Bretling

unexpectedly found herself having to represent her family's interests as a pro-se litigant after

Judge Tillery immediately denied Plaintiffs' motion for a 30-day continuance to allow them time

to find another attorney.  Judge Tillery told Plaintiff JoAnn that they had failed to file a timely

answer to LNV's motion for summary judgment.  She pointed out that they had, and Judge

Tillery told her "Well I never saw an answer."  In a matter of minutes he denied all Plaintiffs'

pending motions and granted LNV's motion for summary judgment.

Because WFAA investigative reporter Brett Shipp expressed an interest in learning more

about our cases Plaintiff JoAnn had invited him to the August 4, 2014 hearing since her case is

representative of dozens of similar cases between victims of Daniel Andrew Beal and his sham

corporations LNV, MGC and/or LPP Mortgage Ltd..  It was a Godsend he was present because

he witnessed the hearing.  The hearing was not recorded and this in itself is a violation of due

process and equal protection of the law.  One would expect that a court reporter would be present

at a hearing where an American citizen may be derived of their property. Unfortunately this lack

of court reporting seems to be prevalent in many other courts hearing foreclosure cases across the country.

## Constitutional Question 3

Do courts that fail to record foreclosure proceedings unconstitutionally deprive litigants, specifically pro-se litigants, of their rights to due process and equal protection of law because it deprives them of a record of those proceedings that might prove or disprove facts important to the ultimate outcome of their case (which can result in a derivation of their property) in further litigation to defend their constitutional property rights and in appeals?

Plaintiff JoAnn has checked the Dallas County online record search on an almost daily basis for years.  She has always been able to use the drop down menu to select a party name search, enter her last name and all her cases past and present showed up.  During the first weekend in April 2015 this no longer happened.  The Breitlings' cases can now only be located one at a time by entering a case number.  People all over the country have been following the Plaintiffs' case and many of them only know Plaintiffs' name not their case numbers.  In Plaintiffs' prior cases DC-10-02189 and DC-11-07087 changes were made to the online docket that falsified the court records.  Case DC-10-02189 now shows Patricia McCartney as Plaintiffs' attorney when in fact Emil Lippe was Plaintiffs' attorney in that case; and a change was made to show Plaintiffs as pro-se litigants in DC-11-07087 when in fact Patricia McCartney was their attorney.  The hearing held on August 4, 2014 in case number DC-14-04053 now shows as being canceled.



Notice that the hearing on August 4, 2014 shows as being canceled.

Prior to the first weekend in April this was not showing as canceled.

Something is going on that should not be. In the *LNV v. Gebhardt* case court records were replaced, this is tampering with evidence. Once a court document is filed it is not supposed to be replaced – an amended document can be filed but a document cannot be removed and replaced with another document.

## Constitutional Question 4

Do arbitrary changes to court records and/or replacing filed court documents by court employees as aforementioned constitute a constitutional violation of the due process and equal protection of law under the United States Constitution?

It most certainly erodes public confidence in the impartiality and integrity of our judicial system. Plaintiffs being pro-se litigants don't know if a statute exists to prevent such abuse and this statute is being unconstitutionally violated, or if the lack of a statue to prevent this arbitrary changing of court records is unconstitutional.

From the present case's related *Case 3:14-cv-03322-M-BN* Document 42 Filed 10/29/14

Page 1 of 22 PageID 516; <u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE</u>

<u>UNITED STATES MAGISTRATE JUDGE</u> the court determined that:

> The Removing Defendants rely exclusively on judicial immunity to argue that there is simply no reasonable basis to predict that Plaintiffs might recover under any cause of action asserted against Judge Tillery in this case. But, even if the Removing Defendants have made this showing as to any claim against Judge Tillery for damages, the Removing Defendants' papers do not address any other relief that Plaintiffs seek against Judge Tillery, however likely (or not) Plaintiffs may be to succeed. And that is the Removing Defendants' heavy burden. See Tereaud v. Kephart, Civ. A. No. 09-7269, 2010 WL 1254372, at *2 (E.D. La. Mar. 24, 2010); Summit Machine Tool Mfg. Corp. v. Great N. Ins. Co., 883 F. Supp. 1529, 1530 (S.D. Tex. 1994).

> As Judge Tillery himself notes in his Motion to Dismiss Subject to his Motion to Remand Pursuant to Federal Rules 12(b)(1) and 12(b)(6), see Dkt. No. 11 at 3, under the Texas law that a state court would apply to resolve Plaintiffs' claims against Judge Tillery, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in a judicial capacity or to attorney's fees, for obtaining such relief," Twilligear v. Carrell, 148 S.W.3d 502, 504 n.8 (Tex. App. – Houston [14 Dist.] 2004, pet. denied) (emphasis in original). And, just as this Court does, Texas state courts "must liberally construe pro se pleadings and briefs." Silvio v. Newman, No. 01-10-01153-CV, 2014 WL 3107570, at *3 (Tex. App. – Houston [1st Dist.] July 8, 2014, no pet.).

> Plaintiff's petition prays for "any other equitable relief the court deems just." Dkt. No. 1-5 at 24; Dkt. No. 15-5 at 24. And the Removing Defendants themselves attached Plaintiffs' pending Motion to Vacate to their removal papers. See Dkt. No. 15-7. In that motion, Plaintiffs requested, among other things, that the state court "sanction Judge Tillery and attorney Jeffery Hardaway so they cannot deprive another Texan of their constitutional right to due process." Id. at 4 of 39. Plaintiffs' motion also attached and purported to incorporate and reallege the arguments in a prior motion to vacate in which Plaintiffs asked the state court to, among other things, "remove Judge Tillery from the bench and sanction him and Hardaway with disbarment." Id. at 4 of 39, 33 of 39; see also Dkt. No. 1-7.

> The undersigned concludes that the Removing Defendants have not met their heavy burden to establish that there is no possibility that Plaintiffs would be able to establish a cause of action against Judge Tillery in state court and therefore that Judge Tillery's consent is not required for removal based on the nominal defendant doctrine.

> Even assuming the Removing Defendants are correct that "[t]he claims against Judge Tillery for constitutional violations and the servicing and origination-based claims against LNV and MGC ... raise different factual issues ..., turn on different legal issues, and will be proven by different evidence," Dkt. No. 17 at 16, a general description of these claims defies any conclusion that any misjoinder by Plaintiff of

these claims was egregious and that the claims against Judge Tillery are wholly distinct from, and devoid of any real connection with the controversy at issue, in Plaintiffs' claims against the Removing Defendants. Plaintiffs' claims against Judge Tillery are based on rulings that he made in a lawsuit in favor of LNV and over Plaintiffs' arguments that the subject matter of that case involved MGC, against whom Plaintiffs were involved in a separate case pending in the Dallas County courts. See Dkt. Nos. 1-5 & 15-5. By the Removing Defendants' own description, in this case, "Plaintiffs also assert claims against LNV and MGC purportedly arising from the origination and servicing of their loan," Dkt. No. 17 at 2 – which are matters at least related to the case against LNV out of which Plaintiffs allege that their claims against Judge Tillery arose.

From the present case's related *Case 3:14-cv-03322-M-BN Document 54 Filed 01/02/15*

*Page 1 of 26 PageID 894*; Breitlings' <u>PLAINTIFF'S RESPONSE TO DEFENDANTS'</u>

<u>OBJECTIONS TO RECOMMENDATION AND BRIEF IN SUPPORT</u>:

"We do however have one grave Constitutional concern we want to be sure is addressed whether by this Court or by the State court, and <u>as pro-se litigants we do not know how to proceed</u> because we believe these Constitutional questions have a significant public interest and are ripe for a Supreme Court decision to set a universal precedence as to the specific Constitutional matters in our case that are shared by millions of other homeowners across our country; and specifically with five other victims of D. Andrew Beal's MGC and LNV, Defendants named herein.

Defendants MGC and LNV use LPS "foreclosure mills" and its sub-servicer, Defendants DMI and C&S both operate under the Lender Processing Services "LPS" umbrella.  Depositions in the cases of other Beal victims in other federal District Courts specifically depositions of MGC employee Brett Maloney provide ample evidence that MGC (Beal) employees, as well as the LPS agents used by Beal's corporations such as Northwest Trustee Services in Oregon, and Defendant C&S here, use the "LPS Desktop" to manufacture their foreclosure related documents. Other Beal victims, even those represented by counsel, have routinely experienced tactics that can only be described as abuse of judicial process by the LPS law firms Beal hires to perfect his foreclosures. Many Beal victims who are currently representing themselves pro-se once had attorneys who started out winning for them. But the continual onslaught of motions to dismiss or motions for summary judgment from the Beal Entities. LPS counsel and their continual delays in producing evidence requested during discovery often stretching into years such as with our case either financially drained homeowners so they could no longer afford to pay attorney fees or their attorneys quit out of sheer frustration. (One of my attorneys actually broke down in tears in mediation and said she just couldn't take it anymore.)

Then you have Law Firms, like the Lane Law Firm in our case, that take homeowners. money and mislead us as to what they will do for us.  In our case, the

person I thought was our attorney, Greg Tidmore, turned out to not even be an attorney but a "sales person" for the firm.  Law Firms that scam homeowners are at epidemic proportions due to the huge demand for such legal services.  When law firms advertise that they help homeowners in foreclosure and they instead treat all cases with the same cookie cutter approach they harm their clients. (See Exhibit A: Huffington Post Article: "Lawyers Are Now The Driving Force Behind Mortgage Scams")

Two other Beal victims, Catherine Gebhardt in Tennessee (*LNV v. Gebhardt*, Case No. 3:12-CV-468-TAV-HBG, U.S. District Court Eastern District of Tennessee  at Knoxville) and Kelly Randle in California (*Kelly Randle et al v. LNV Corporation et al*; Case No. 5:14-cv-02280, California Central District Court) were left to fend for themselves after attorneys actually sabotaged their cases.  Kelly Randle hired an attorney named John Vargus (CA Bar Number: 270181) who was sanctioned by the California Bar and was not supposed to be practicing law, she did not know this.  He took her money and failed to appear at a hearing, she consequently lost a stay on a foreclosure action allowing Defendant LNV to sell her home and forcing her to fight eviction as a pro-se litigant. Vargus is currently being prosecuted and disbarred but it is too little too late to help Kelly.

Cathy Gebhardt was sued by LNV in Federal Court on a breach of contract action and ultimately had to self represent after two attorneys who apparently were working in collusion with each other set her up for a kill by LNV, so to speak.  District Judge Thomas Varlan and Magistrate Judge Bruce Guyton granted LNV a summary judgment against the overwhelming evidence of fraud that included Cathy.s signature being electronically forged on an note LNV claimed was the original yet it does not match the note in Cahty.s possession – numerous other forgeries and false signatures as well as fraud in the origination of her mortgage and a party to that origination has already been criminally convicted.  The Judge.s own language in his summary judgment order states "it appears" and "it is uncertain" in reference to the chain of title.

In Cammy Depew.s case in Louisiana (*Depew v. LNV* Case No. 14-284-SDD-RLB U.S. District Court Middle District of Louisiana) the LPS attorney representing LNV, Dean Morris Law Firm, intentionally added the "with prejudice" clause on a dismissal for improper pleadings which ultimately resulted in her home being sold by LNV to LNV in a foreclosure sell.  She was eventually able to have this judgment corrected and finally figured out how to write an original petition. As soon as she filed it LNV removed the case to Federal court where they knew she would be terribly disadvantaged.  She was carrying for five small grandchildren and did not have a car at her disposal so it was a severe hardship to have to travel to the federal court for filing and she was intimidated by having to learn federal rules when she had just begun to understand the State rules.  Ultimately the federal case was dismissed with prejudice because she failed to file an amended complaint in time.  She and her daughters and grandchildren were recently evicted causing them horrific pain and suffering.

Counsel, Locke Lord, for the Removing Defendants here are also the counsel representing LNV in Kelly Randle's case and in Cammy Depew's case.  Two other

cases that were dismissed with prejudice and should not have been are in Oregon (*Subramaniam v. Beal et al*, U.S. District Court District of Oregon Portland Division, Case# 3:12-CV-1681) and *Robynne A. Fauley v. Washington Mutual Bank et al* (including LNV) Case No. 3:13-cv-00581-AC.

The common matters to all these cases is that in all cases identified herein the homeowners whether Plaintiffs or Defendants in their respective court cases with LNV were or are now self-represented; and in all these case the foreclosure mill used by LNV was an LPS Service provider; DMI was also involved as a sub-servicer for LNV in all the cases, and the deed assignments, allonges and other mortgage and foreclose related documents contained forgeries, false signatures and false statements contain stamps or other statements identifying them as being produced by LPS and/or the parent of LPS or a subsidiary of LPS and they are:

1. Consistent with the criminal means and methods indentified by the United States in their criminal conspiracy conviction of Lorraine Brown (See: Plaintiffs. Motion for Judicial Notice of Information and Criminal Indictment and Plea Agreement of Lorraine Brown [Doc. 34: pages 12 – 14 and page 16])

2. Consistent with a pattern of such acts of conspiracy to defraud specific to the enterprise vehicle, LPS, used by Brown in the commission of her crimes as indentified by the United States in their criminal conspiracy conviction of her: "DocX was re-branded as "LPS Document Solutions, a Division of LPS.. Following the spin-off, Brown was the President and Senior Managing Director of LPS Document Solutions. At all times relevant to this Information, Brown was the chief executive of the DocX / LPS operations." (See [Doc. 34 pages 2, 8 and 9])

3. Consistent with a pattern of such fraudulent acts judicially determined as fact specific to Beal forging the signature of 81-year-old Kay Sarich to make it appear she had signed a note when she had not. (See: Exhibit B attached hereto: page 12 highlighted sections.)

4. Consistent with judicially determined facts specific to the propensity of LNV and MGC.s owner D. Andrew Beal to:

   a. create shell corporations for sham tax shelters,
   b. to deceptively withhold evidence from government regulators, investigators and the courts,
   c. to pay witnesses well to say what he wants them to say. (See: Exhibit C attached hereto: highlighted sections through-out document.)


From the present case's related *Case 3:14-cv-03322-M-BN Document 54 Filed 01/02/15*

*Page 1 of 26 PageID 894*; Breitlings' URGENT LETTER AND AFFIDAVIT TO THE

HONORABLE JUDGE BARBARA LYNN:

"I am filing this letter to the court with a great sense of urgency. Your honorable Judge Barbara Lynn has ordered a stay on the above referenced case, pending her decision about whether the federal court has jurisdiction or whether the case will be remanded back to the State court where we filed it.

D. Andrew Beal, the owner of Defendant corporations LNV and MGC Mortgage, have hired yet another law firm, Buckley Madole, P.C., which sent us a letter timed to be received at a time guaranteed to ruin any chance of holiday spirit or joy for our family.

The letter dated December 30, 2014 was received on December 31, and opened by me the morning of January 1, 2015. It is a three day demand to vacate premises. This letter from attorney signed by Sammy Hooda at Buckley Madole is attached to our letter to this Honorable Court. I had to take a photograph of the letter with my cell phone to attach here as I have no printer and no place is open where I could copy and scan it.

LNV Corporation aka D. Andrew Beal knows that we filed a timely independent complaint on August 29, 2014 against LNV and others specific to LNV's standing to foreclose which invoked an automatic stay under Texas Rules of Civil Procedure 736.11; that we timely filed a lis pendens with our county; and that we notified Beal and his attorneys of the automatic stay and lis pendens prior to the sale, yet Beal willfully instructed his LNV Corporation and his attorneys Defendant Codilis and Stawiarski proceed with an illegal sale of our home."

From the present case's related *Case 3:14-cv-03322-M-BN Document 55 Filed 01/05/15*

*Page 1 of 2 PageID 920* – the Breitlings' <u>SUPPLIMENT TO URGENT LETTER AND</u>

<u>AFFIDAVIT TO THE HONORABLE JUDGE BARBARA LYNN</u>:

Dear Honorable Judge Lynn,

As a pro per litigant I'm learning as I go "by the seat of my pants" I just found these statutes and case law that support my position that the District Court has jurisdiction over this case, and the County JP Court lacks jurisdiction in an eviction action brought against us by Defendant LNV (or any of the Beal Defendants) as a dispute over title is intrinsic to our complaint against them filed originally in the District Court.

Pertaining to County Court jurisdiction: Texas Rules of Civil Procedure 510.3(e) Only Issue. "The court must adjudicate the right to actual possession and not title."

<u>Texas Gov't. Code 26.043(2) CIVIL MATTERS IN WHICH COUNTY COURT IS WITHOUT JURISDICTION.</u> A county court does not have jurisdiction in:

  (2) a suit for the enforcement of a lien on land;

  (6) a suit for the trial of the right to property valued at $500 or more and levied on under a writ of execution, sequestration, or attachment;

(8) a suit for the recovery of land.

The jurisdiction of the district court pre-empts the justice court on issues of possession when questions of title and possession are so integrally linked or intertwined that possession may not be determined without first determining title. In such cases the justice court is deprived of jurisdiction. *Mitchell v. Armstrong Capital Corp., 911 S.W.2d 169, 171 (Tex. App-Houston (1st Dist.) 1995,, writ denied); Merit Management Partners I, L.P. v. Noelke, 266 S.W. 3d 637,650 (Tex. App, Austin, 2008, no pet.)*

"A Justice Court has no jurisdiction of a suit for damages for injury to or destruction of an easement over land. An easement is a right which one proprietor has to some profit, benefit or lawful use out of or over the estate of another proprietor. To prove this right necessarily involves proof of title, and hence the County and Justice Courts have no jurisdiction." *Henslee v. Boyd, 107 S.W. 128 (Tex. Civ. App. Dallas 1908, no writ)*

The government code provides that a county court does not have jurisdiction in "a suit for the recovery of land." Tex. Gov't Code Ann. § 26.043(8) (West 2004); see also *Doggett v. Nitschke, 498 S.W.2d 339, 339 (Tex. 1973)* ("A county court does not have jurisdiction to try questions of title to land.")…

Beal was warned by Texas Attorney General Greg Abbott in 2010 that it was illegal to foreclosure on properties using "robosigned" (i.e. forged documents with false signatures and false statements pertaining to the grantor/grantee or assignor/assignee). Beal's attorneys representing Beal's MGC lied to Greg Abbott and said they had no completed foreclosures or foreclosures in process with such "robosigned" documents.

Then in 2015 dozens of Beal victims are still fighting Beal foreclosures in State and Federal Courts across the country because Beal has used and is using "robosigned" documents to establish his MGC or LNV's authority to conduct a sale of their property. Many of these Beal victims have been fighting him since 2010, like us. Also these Beal victims were never in a default of their own making; Beal's MGC caused defaults by not accepting payments or misappropriating payments.

As early as January 2, 2015 this court knew that LNV filed a wrongful eviction lawsuit in the county J.P. court based on a void foreclosure judgment granted by Judge Tillery without review of Plaintiffs' title claims in violation of Plaintiffs' due process; and that the J.P. court lacked jurisdiction while the Plaintiffs' title claims remained un-adjudicated. The Magistrate Judge's recommendation to remand was filed on October 29, 2014 (*Document 55 in Case 3:14-cv-03322-M-BN*) yet the order to remand was not issued until January 27, 2015 (*Document 60 in Case 3:14-cv-03322-M-BN*) the day AFTER Plaintiffs were again denied due process in Judge Gerry Cooper's J.P. court at a farce hearing held on January 26, 2014.

The hearing in Judge Cooper's court violated Plaintiffs' due process rights because LNV had, unknown to Plaintiffs, filed a motion in limine to prevent Plaintiffs from disclosing to the jury any information about their independent lawsuit against LNV and its agents and against Judge Tillery for constitutional violations of their due process rights in granting LNV's motion for summary judgment to foreclose; and their claims against LNV and MGC arising from the origination and servicing of their loan, and for wrongful foreclosure.  These are all issues of title which would show the J.P court lacked jurisdiction to evict Plaintiffs from their home.

During the eviction hearing in Judge Cooper's court Plaintiff, JoAnn Breitling, over heard LNV's counsel in a very quiet voice remind the judge of the "motion in limine."  Plaintiff immediately asked the judge and LNV's counsel, "What motion in limine, I've never heard of this."

LNV's counsel, Luke Madole, and Judge Cooper failed to respond to Plaintiff's question. Their failure to disclose the motion in limine to Plaintiff is indicative of collusion and conspiracy with intent to deprive Plaintiffs of their constitutional rights to due process and equal protection of the law.  It is also indicative of improper influence and/or bribery of a judge with intent to influence a judicial decision.

Texas Penal Code § 36.02(a)(2) states:

A person commits an offense of bribery if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding;

Texas Penal Code § 36.02(e) states:

An offense under this section is a felony of the second degree.

Texas Penal Code § 36.02(a) states:

> A person commits an offense of improper influence if he privately addresses a
> representation, entreaty, argument, or other communication to any public servant
> who exercises or will exercise official discretion in an adjudicatory proceeding with
> an intent to influence the outcome of the proceeding on the basis of considerations
> other than those authorized by law.

Texas Penal Code § 36.02(c) states:

> An offense under this section is a Class A misdemeanor.

Defendant LNV's attorneys, Luke Madole, Sammy Hooda, Marc Cabera, Jason Sanders;

Judge Cooper; and this court all knew or should have known that while Plaintiffs' case awaited

remand to state court Plaintiffs would be deprived of any recourse in the wrongful county

eviction proceeding; which has resulted in a horrific and unconstitutional miscarriage of justice.

To reiterate the judicial finding of Magistrate Judge David Horan:

> Plaintiffs' claims against Judge Tillery are based on rulings that he made in a
> lawsuit in favor of LNV and over Plaintiffs' arguments that the subject matter
> of that case involved MGC, against whom Plaintiffs were involved in a
> separate case pending in the Dallas County courts. See Dkt. Nos. 1-5 & 15-5.
> By the Removing Defendants' own description, in this case, "Plaintiffs also
> assert claims against LNV and MGC purportedly arising from the origination
> and servicing of their loan," Dkt. No. 17 at 2 – which are matters at least
> related to the case against LNV out of which Plaintiffs allege that their claims
> against Judge Tillery arose.

The judges (Varlan, Tillery, Cooper and Montgomery) in these two related cases to the

present case, and in the *LNV v. Gebhardt* case in Tennessee, all ignored evidence submitted to

the court that challenged the credibility of affidavit testimony given by Brett Maloney who

purports to be the vice president of MGC Mortgage Inc. ("MGC"), another shell sham

corporation owned and controlled by D. Andrew Beal.  Bret Maloney has filed affidavits in

numerous court cases with "Beal victims" and he has provided testimony through depositions.  A

comparison of this collective body of testimony given by Bret Maloney impeaches him as a

viable witness, yet in Judge Cooper's court Plaintiff was called into judge's chambers to prevent

the jury from hearing testimony that would impeach the creditability of Bret Maloney as a

witness.

This was done in violation of the Texas <u>Rules of Evidence 102</u>:

> "These rules shall be construed to secure fairness in administration, elimination of
> unjustifiable expense and delay, and promotion of growth and development of the
> law of evidence to the end that the truth may be ascertained and proceedings
> justly determined."

Quoting the court's opinion in YARBROUGH et al, Appellants V. HOUSEHOLD

FINANCE CORPORATION III, Appellee, (See related <u>Case 3:14-cv-03322-M-BN</u> Document

58-2 Filed 01/23/15 Page 2 of 54 PageID 1050) referenced in *Document 55 Case 3:14-cv-03322-*

*M-BN*:

> "In an issue of first impression, we must decide whether an affirmative defense of
> forgery, supported by an affidavit alleging that the defendants' signatures on a
> deed of trust were forged, raises a genuine issue of title intertwined with the issue
> of possession sufficient to deprive a justice court of jurisdiction in a forcible
> detainer action. We hold that it does. The courts below lacked jurisdiction in this
> forcible detainer action because determining the right to possession necessarily
> required the resolution of a title dispute. We reverse the trial court's judgment and
> remand with instructions to dismiss the action for lack of jurisdiction."

This judicial opinion makes it crystal clear that the Texas J.P. Court lacks jurisdiction to

determine the right to possession when the case requires resolution of a title dispute; this is the

exact same situation as in the present case.

So this raises the question of whether this court, and Judge Barbara Lynn, either intentionally or unintentionally participated in a conspiracy to deprive Plaintiffs of their constitutional rights to due process and equal protection of law.

As early as January 2, 2015 this court knew that Plaintiffs' and numerous other Beal victims were claiming that they were victims of a crime.

Federal courts have original jurisdiction over constitutional questions so this court and Judge Barbara Lynn could have, and perhaps should have, ordered a stay on the parties seeking to evict Plaintiffs (as opposed to staying the J.P. court) until this court ruled on Plaintiffs' federal constitutional questions specific to whether Judge Tillery's summary judgment is void and should be vacated.

The Texas Attorney General's Letter to MGC dated October 4, 2010 (See *Case 3:14-cv-03322-M-BN Document 58-1 Filed 01/23/15 Pages 14 and 15*) also makes it clear that in the opinion of Texas' Attorney General a robosigned or forged mortgage document is invalid and a foreclosure and a sale achieved by using a forged mortgage document would have been invalid.

The Federal Courts Jurisdiction and Venue Clarification Act of 2011 that took effect on January 6, 2012 eliminates a federal court's discretion to hear state-law claims asserted in a case removed to federal court on the basis of federal question jurisdiction.  Under new Section 1441(c), while a case involving a federal question and state-law claims may be removed to federal court, upon removal, the district court "shall sever from the action all [state-law] claims . . . and shall remand the severed claims to the State court from which the action was removed." See Section 103(a)(3). While the Act is not entirely clear on this point, it appears that the sever-and-remand provisions apply only to "separate and independent" state-law claims, thus,

preserving a federal court's authority to hear state-law claims that form part of the same case or controversy as the federal claims and are properly in federal court under supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (See House Report 112-10, p. 12.)

It appears this court made some grave errors that no matter how unintentional have further deprived Plaintiffs of their rights to due process and equal protection of the law.

Plaintiffs being pro-se litigants also made errors, however not having an education in law this is completely understandable.  This court must have realized Plaintiffs had genuine constitutional questions specific to Judge Tillery's order being void.  The Beal defendants wanted to sever Plaintiffs' claims against Tillery for the wrong reasons, because his inclusion in our state lawsuit legally prevented them from sustaining the removal so they could then move to dismiss as specified in their how-to manual Plaintiffs filed as evidence in one of their many pleadings in the now many related cases.  Judge Horan correctly assessed that our claims against Tillery were intricately interwoven in our claims against the Beal Defendants because it was Tillery's void order that the Beal Defendants used to illegally sell our property to LNV. However because we had included Tillery in our lawsuit we were not able to avail ourselves of the remedy we are currently using and just discovered.

As a group the Beal victims feel we have been guided by God every step of the way, and it seems that whenever one door is closed to us God opens another.  Our fight for justice has not been just about saving our individual properties; it is about preserving our constitutional rights for generations to come.  Many of the Beal victims are mothers and grandmothers who don't want to see their grandchildren inherit a slave state where they have no more rights than a feudal serf, or even the aristocrats had in the days before the Magna Carta.

That being said, from the perspective of Plaintiffs and the other Beal victims federal court judges as protectors of the Constitution should have authority to vacate a void judgment whenever or however it comes to their attention.  Had this court done so when this case was before them the first time, Plaintiffs would have been spared further intentional infliction of emotional distress caused by Beal and his attorneys as well as additional attorney fees and other costs.  The many courts Beal and his attorneys have dragged Plaintiff's through would likewise have been saved undue expenses (which translate into waste of taxpayer dollars.)

**Constitutional Question 5**

Do federal court judges have an obligation to uphold the United States Constitution and to protect the constitutional rights of pro-se litigants such as the Plaintiffs in the present case?

**Constitutional Question 6**

Did this court's delay to remand Plaintiffs' state claims until <u>AFTER</u> the J.P. court ruled on LNV's right of possession to evict Plaintiffs from their property on January 26, 2015; and/or this court's failure to rule on Plaintiffs' constitutional questions regarding Tillery's void order, result in a deprivation of Plaintiffs' due process and equal protection rights under the United States Constitution when:

1. this court recommended remand in October 2014;

2. this court knew of the eviction hearing as early as January 2, 2015;

3. a stay was in place barring Plaintiffs' from moving for injunctive relief with this court;

4. this court knew the J.P. court was without jurisdiction to decide possession in this matter; and

5. this court knew Plaintiffs had genuine constitutional questions specific to Tillery's void judgment;

6. this court knew or should have known a delay in remand might result in unlawful deprivation of Plaintiffs' possession of their property and would cause Plaintiffs and their developmentally disabled son severe and undue emotional distress;

and/or is the language of The Federal Courts Jurisdiction and Venue Clarification Act of 2011 unconstitutional because it fails to invoke a clear understanding in federal judges of what is expected of them when in a case like the present one where they are presented with constitutional questions (Magistrate David Horan recognized the existence of constitutional questions raised in Plaintiffs' pleadings in his recommendations and conclusions) raised by pro-se litigants which gave the federal court original jurisdiction to rule on those constitutional questions; but those constitutional questions were brought before it by removing defendants when one defendant (Judge Tillery in the present case whose actions were inextricably interwoven into the Plaintiffs other State claims); and the defendant whose actions give rise to the constitutional questions does not agree with the removal hence giving rise to a conflict of law because by statue the federal court must remand when all defendants do not agree to the removal?

Defendant LNV (i.e. D. Andrew Beal) has abused judicial process to force Plaintiffs to defend themselves in SIX (6) separate court proceedings in violation of Texas law and legal precedence.  The intentionally deceptive legal shenanigans of Beal and his corporate entities, his agents and his attorneys waste precious judicial resources which in turn waste taxpayer dollars and harm all Americans by eroding our constitutional protections.  Beal and his cohorts have calculated their legal shenanigans to deprive Plaintiffs of their constitutional rights of due process and equal protection of law at every step and in every court.  This is not supposed to happen in the United States of America.

Quoting *Case 3:14-cv-03322-M-BN* Document 58 Filed 01/23/15 Page 1 of 25 PageID 985; PLAINTIFF'S RESPONSE TO LNV AND MGC'S OBJECTION TO REQUEST FOR INJUCTIVE RELIEF (beginning at page 9 last paragraph to 10):

"The Beal Defendants and their attorneys and agents willfully violated the automatic stay provided by Texas Rules of Civil Procedure 736.11 by selling our property to Defendant LNV on September 2, 2104. The Beal Defendants were properly informed of the automatic stay effective under Texas Rules of Civil Procedure 736.11 (See Exhibit C

– Fax of Notice of Automatic Stay of Sale of Property sent to multiple Beal Defendant Employees and agents.) The illegal sale of our property is captured on video.

Additionally the Beal Defendants foreclosed on our property using robosigned, forged and otherwise falsified mortgage and foreclosure related documents; and they have done so, or are attempting to do so, in numerous other cases across the country and in Texas.

As per Texas Attorney General Greg Abbott…"

Quoting from the Texas Attorney General's Letter to MGC *Case 3:14-cv-03322-M-BN*

*Document 58-1 Filed 01/23/15 Page 14 of 39 PageID 1023*; October 4, 2010 letter from

Attorney General Greg Abbott to MGC Mortgage, Inc. regarding foreclosures:

"We are certain that you must be aware of the issues raised when Ally Financial, Inc. and later JPMorgan Chase and Bank of America, announced that they were suspending foreclosures on certain properties in 23 states.  It appears that they discovered, through testimony of their employees in private litigation, that the employees, referred to as "robosigners," had engaged in practices concerning the execution of affidavits which were used in foreclosure litigation, among which were these:

- Signing thousands of documents per month
- Signing documents without reading them
- Signing affidavits which falsely claim personal knowledge of facts
- Signing affidavits which falsely claim the affiant reviewed the attached documents
- Notarizing documents prior to signing by signer
- Notarizing documents when the signer was not present before the notary
- Filing affidavits with records attached that do not correctly reflect loan payments charges and advances

We are aware that MGC Mortgage, Inc. services a significant number of mortgage loans in the State of Texas.  It is likely that affidavits and other documents, such as assignments of deeds of trust and appointments of substitute trustees, with issues described, above may have been used in connection with foreclosures in the state of Texas.  Regardless of whether the foreclosure was a nonjudicial one or a judicial one in connection with a home equity loan, home equity line of credit or reverse mortgage, if any of the practices described above were utilized in establishing MGC Mortgage, Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been in violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Act; Section 37.02, Texas Penal code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure, and the document and therefore the foreclosure sale would have been invalid."  (*This letter is on pages 14 and 15 of the above referenced court record.*)

The Texas Attorney General makes it clear in this letter that LNV's foreclose and sale of our property is invalid.  Perhaps if this court cannot determine this fact for itself from the massive amount of evidence now before it; the Texas Attorney General and the United State Attorney General whose office convicted Lorraine Brown should make a determination about the validity of LNV's sale of our property and Tillery's summary judgment order favoring LNV.

This letter evidences the fact the MGC (i.e. Beal and through him as the sole owner of LNV and all the other Beal corporate entities) know that foreclosing on properties using forged deed assignments, allonges and other mortgage related documents is a CRIME (penal code is criminal code); AND that foreclosure sales resulting from such activities are VOID!

Plaintiffs in Document 58 *Case 3:14-cv-03322-M-BN* articulated thoroughly how Defendant LNV and its agents and attorneys intentionally framed a deceptive pleading in violation of Texas Rule 736.1 with intent to deceive the court.  LNV in its own pleadings claims in one instance that its summary judgment was obtained through a judicial proceeding, while in other pleadings it claims it executed a non-judicial foreclosure sale.

Either Rules 735 and 736(1), Texas Rules of Civil Procedure are unconstitutional, or Defendant LNV and its agents and attorneys violated Rules 735 and 736(1) and Judge Tillery sanctioned those violations by granting LNV's motion for summary judgment resulting in an unconstitutional application of Rules 735 and 736(1).

Here before this court and simultaneously before three different county courts we have a case where Section 12.001, Texas Property Code was violated by Defendant LNV (i.e. LNV caused to be filed with the Dallas County property recorders' office an instrument conveying real

property that was signed and acknowledged or sworn to by the grantor in the presence of two or more credible subscribing witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgements or oaths); and where Section 406.009, Texas Government Code was violated in that the notary Jeanne Stafford performed notarization of an instrument conveying real property when the person for whom the notarization is performed did not personally appear before that notary at the time the notarization is executed; and where a foreclosure and sale of property was executed in violation of Texas Constitution Article 16, Section 50 as per the Texas Attorney General's letter to Beal's MGC; and where Plaintiffs' properly filed an independent lawsuit raising questions of title under 736.11 and properly notified Defendant LNV as per 736.11 to evoke the protection of the automatic stay under 736.11; and where in spite of this Defendant LNV proceeded to sale Plaintiffs' property to itself; and where Defendant LNV has proceeded to take actions with intent to evict Plaintiffs' from their property while litigation that would resolve the questions of title is still active; where Section 51.002, Texas Property Code was knowingly violated by Defendant LNV as per Texas Attorney General's letter date October 4, 2010; and where Section 24.005, Texas Property Code specifies that eviction courts cannot hear questions of title; and where Tex. Gov. Code § 37.031 and Tex. Prop. Code § 24.00 have ignored by two eviction court judges under circumstances that violated the Plaintiffs' constitutional rights to due process and equal protection of the law.

Judge Cooper colluded and conspired with LNV attorney Luke Madole to intentionally limit Plaintiff JoAnn Breitling's ability to present the true facts in this case to the jury by secretly enforcing a motion in limine in violation of Plainitffs' rights to due process equal protection of law.  Plaintiffs received a copy of LNVs' Motion in limine/motion to exclude only after the eviction hearing in Cooper's court.

Judge Sally Montgomery is heavily indebted to LNV attorney Luke Madole for his contributions to her campaign fund and his involvement in her re-election.  In the 2005 Dallas Bar Association judicial evaluation poll, a staggering 67 percent of attorneys responded "no" when asked if Montgomery correctly applied the law. As one lawyer put it, "How can someone be a judge if they don't know the law?" (See: http://www.texasobserver.org/2132-the-worst-judges-in-texas-in-these-courtrooms-justice-comes-to-a-screeching-halt/)

The transcript of the eviction appeal hearing in Judge Sally Montgomery's court speaks volumes.  (See Plaintiffs' Motion for Judicial Notice of the Transcript of Hearing Before Judge Sally Montgomery.)  She rambled at the start of the hearing about eviction courts not being able to decide questions of title, on numerous occasions during the hearing she asked LNV's attorney Luke Madole if he really wanted to do this and reminded him of liability if the title question is resolved in Plaintiffs' favor.  Judge Montgomery's ramblings imply that she knew what she was being asked to do by attorney Luke Madole was wrong.  The appearance of coercion by Luke Madole to unduly influence the decision of a judge is apparent in a reading of the transcript.

Plaintiffs' attorney for that hearing, Wade Kricken, was not permitted by Judge Montgomery to make any argument on the merits of the Plaintiffs' case; her opening statements about the case dismissed Plaintiffs motion for abatement in its entirely (i.e. dismissing all their evidence as being inconsequential) by claiming she didn't do abatements.  When Mr. Kricken told her she had abated cases in the past, and she had done so in his prior cases, she countered by claiming those cases were where the parties agreed to an abatement. Mr. Kricken attempted to raise the argument of irreparable harm, but again Judge Montgomery cut him off and did not permit him to present evidence of irreparable harm to Plaintiff Samuel Breitling and the

Breitlings down syndrome son who also suffers from a rare autoimmune disease.  Plaintiffs filed

as evidence to support their claim of irreparable harm a letter from the Plaintiff Samuel

Breitling's physician, Srinivas R. Panja M.D., stating that the excessive stress of the wrongful

foreclosure litigation and attempts at wrongful eviction will cause irreparable harm to Samuel

Breitling's health, and may even cause his death.  (See Document 58-2, page 34 Case No 3:14-

cv-03322-M-BN page 28).

        No amount of financial award could ever compensate Plaintiff JoAnn Breitling and the

Breitlings children for the loss of Mr. Breitlings life.  If this court does not put a stop to this

unbelievable deprivation of Plaintiffs' constitutional rights to due process and equal protection of

the law caused by Daniel Andrew Beal's violation of numerous Texas laws, improper influence

of judicial officers at the lower courts and abuse of judicial process; and this lack of action on the

part of the Texas judiciary and the federal judiciary results in a wrongful eviction of Plaintiffs

from their home of thirty three (33) years (the only home Plaintiff's down syndrome son,

Matthew has ever known), and this eviction results in the wrongful death of Samuel Breitling

and/or Matthew Breitling then Plaintiff JoAnn Breitling will not only hold Mr. Beal personally

liable for their wrongful death(s), but she will also hold the state of Texas and the United States

liable for his/their wrongful death(s).

## Constitutional Question 7

        Are the body of Texas foreclosure statutes (collectively Section 12.001, Texas Property

Code; Section 51.002, Texas Property Code; Section 24.005, Texas Property Code; Section

37.031; Texas Government Code; Texas Constitution Article 16, Section 50; Rules 735 and

736(1), Texas Rules of Civil Procedure) unconstitutional because they do not adequately limit by

statute the discretion of county J.P court judges in eviction cases from granting possession when

an open and active case is still being litigated in a state district court or in a federal court specific

to a question of title?


**Constitutional Question 8**

     Are <u>Texas Rules of Civil Procedure 735 and 736(1)</u> unconstitutional, or has Defendant

LNV and its agents and its attorneys misconstrued the language of these Rules and violated these

Rules; and their violation had the result of an unintended (by the authors of the Rules)

unconstitutional judicial application of these Rules because the language of <u>Texas Rules of Civil

Procedure 735 and 736(1)</u> fails to invoke a clear understanding in Texas District Court judges

regarding how these laws are to be applied?


     In spite of all the evidence submitted to four separate Texas courts and this federal court

in the present case not one judge has reported the crimes being perpetrated against Plaintiffs and

the other Beal victims by Beal and his corrupt organization, his LPS agents and his attorneys.


     <u>Title 18 U.S.C. § 4</u> states:

> "Whoever, having knowledge of the actual commission of a felony cognizable by
> a court of the United States, conceals and does not as soon as possible make
> known the same to some judge or other person in civil or military authority under
> the United States, shall be fined under this title or imprisoned not more than three
> years, or both."

     Here we have judges themselves failing to report crimes of forgery, misrepresentation

and other fraud coming to their attention in cases such as the present case where parties, such as

Defendant LNV, its LPS agents, and its attorneys knowingly use forged documents to

wrongfully foreclose on properties with intent to unjustly enrich LNV's owner D. Andrew Beal at the expense of Plaintiffs and the other Beal victims.

**Constitutional Question 9**

When a state or federal judge has knowledge of the actual commission of a felony cognizable by a court of the United States (the criminal conviction of Lorraine Brown makes it clear that forging mortgage related documents and causing them to be filed with property recorders offices across the country is a crime cognizable by a court of the United States) and that judge fails to report the crimes to appropriate law enforcement authorities, can that judge be fined and/or imprisoned under 18 U.S.C. § 4; i.e. does judicial immunity apply when a judge violates a federal criminal statute; and/or is the language of 18 U.S.C. § 4 unconstitutional because it fails to invoke a clear understanding in judges of what is expected of them when they are made aware of such crimes in the course of civil litigation before them?

Beal has amassed billions of dollars in undue wealth and unjustly enriched himself through a criminal conspiracy to deceive and defraud Plaintiffs, the other Beal victims and judges.  In law, unjust enrichment is where one person is unjustly or by chance enriched at the expense of another, and an obligation to make restitution arises, regardless of liability for wrongdoing. The concept of unjust enrichment is based upon the Roman legal maxim "no one should be benefited at another's expense."

All the Beal victims have endured unimaginative emotional distress for many years because in spite of numerous complaints made to government authorities about the activities of Beal's MGC, LNV and his LPS agents and attorneys, such as the many consumer complaint letters sent Texas Attorney General Greg Abbott (now Texas' Governor), yet no one has done

anything to help these victimized consumers.  (See Document 32-1, Exhibit B pages 16 through 144 for copies of some of these letters.)

Plaintiffs and the other Beal victims beseech the Attorney General of Texas, the United States Attorney General and the Attorney General of each state where the other Beal victims live to intervene in this case and the cases of the other Beal victims to assure that justice is served and the constitutional rights of the victims of the crimes of Daniel Andrew "Andy" Beal and his corrupt organization; the LPS agents of his corrupt organization; and the attorneys who abuse judicial process and improperly influence judges and other officers of the court in behalf of his corrupt organization are brought to justice and that he is made to pay restitution to the Beal victims of his crimes.

"Never doubt that a small group of thoughtful committed citizens can change the world; indeed, it's the only thing that ever has."    Margaret Mead

Respectfully Submitted,

_____          _____
JoAnn S Breitling                                           Samuel G. Breitling

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was

served upon all counsel of record and pro-se parties via the Court's CM/ECF system, email,

and/or regular mail, and/or certified mail, return receipt requested on this 1st day of June 2015;

and that a correct copy of the foregoing document was served upon The United States Attorney

General and the Texas Attorney General at the addresses below:


Attorney General of Texas,                U. S. Department of Justice,
Ken Paxton                                Loretta Lynch,
P.O. Box 12548                            U. S. Attorney General
Austin, Texas 78711                       950 Pennsylvania Ave NW
                                          Washington, DC  20530


_____          _____
JoAnn S Breitling                         Samuel G. Breitling