# Exhibit A-2

TO PLAINTIFFS' NOTICE OF CONSTITUTIONAL QUESTIONS

FILED
DALLAS COUNTY
9/18/2014 10:42:08 PM
GARY FITZSIMMONS
DISTRICT CLERK

Cause No. DC-14-04053

| | | |
|---|---|---|
| LNV CORPORATION, | § | |
| ITS SUCCESSORS AND ASSIGNS, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING, | § | |
| JO ANN BREITLING, | § | |
| GMAC MORTGAGE, INC., | § | |
| NORTHWEST MORTGAGE, INC., | § | |
| PINNACLE REALTY ADVISORS, INC., | § | |
| and PALISADES ACQUISITION V, LLC | § | |
| | § | |
| Defendants. | § | 134TH JUDICIAL DISTRICT |

# BREITLINGS' MOTION FOR JUDICIAL NOTICE OF A JUDICIAL DETERMINATION OF FACT THAT BEAL SWITCHED A NOTE TO MAKE IT APPEAR A WIFE SIGNED IT WHEN SHE HAD NOT

Now comes defendants Samuel G. and JoAnn S. Breitling representing themselves, pursuant to Texas Rules of Evidence 201 "Judicial Notice of Adjudicative Facts" and hereby requests this Court take Judicial Notice of the documents described herein and in support states as follows:

1. THE BREITLINGS move this Court to take judicial notice of:

    *Beal Bank, SSB v. Sarich, No. 05-2-11440-1SEA (King County Super. Ct. Sept. 8, 2006)* "*The second page of the Term Note, dated September 24,2002, attached as Exhibit 2 to Beal Bank's Complaint for Judicial Foreclosure of Deeds of Trust, appears to be signed by Kay Sarich. CP 20. However, a copy of the actual September 24,2002 Term*

*Note obtained from the original lender (U.S. Bank) shows that Kay Sarich did not sign the note. CP 105. Beal Bank subsequently admitted switching the signature pages.*" (attached hereto as "Exhibit A".)

2.   The findings of fact in the ***Beal Bank, SSB v. Sarich*** case are relevant to our case because we claim and have shown with exhibits to our pleadings that counsel for LNV, Jeffrey Hardaway with Codilis & Stawiarski, has submitted to the court mortgage related documents in support of LNV's claims in its petition for foreclosure and to support their motion for summary judgment that contain forged and falsified signatures, as well as, false statements specific to the assigner/grantor and assignee/grantee on alleged assignments of deed of trust.  These assignments are what LNV claims give it legal standing to foreclose on our property.

3.   Under the Texas Rules of Evidence, judicial notice may be taken at any stage of the proceeding. Tex. R. Evid. 201(f). A "judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See Tex. R. Evid. 201(b). The Court may take judicial notice of records of any court of record of the United States. A court shall take judicial notice if requested by a party and supplied with the necessary information.  A fact of which judicial notice can be taken is "a matter of evidence and knowledge on the part of courts which requires no formal proof." *Harper v. Killion, 162 Tex. 481, 348 S.W.2d 521, 523 (1961) (quoting Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825, 830 (1950)).*

4. **THE BREITLINGS** move this Court to take Judicial Notice of the judicially discovered facts in this case as it shows that D. Andrew Beal's companies have a demonstrated propensity to misrepresent and falsify facts pertaining to mortgage related documents so they can confiscate property. This case further shows Beal's propensity to prey on the most vulnerable in our society, the elderly, without any sense of humanity or compassion for the destruction his actions cause to the lives of his victims. "*Defendants/Respondents Steve and Kay Sarich are Seattle residents. They have been married for nearly 60 years. Steve is 85 years old. Kay is 81. Their parents were Yugoslavian immigrants. With only a high school education, Steve and Kay worked together to build a successful business processing salmon eggs for fish bait. …In 2000 or 2001, Steve Sarich began showing signs of dementia. By the time of the summary judgment hearing, Kay and Steve were living in a rented apartment and Kay was struggling to care for Steve by herself. Steve's dementia had progressed rapidly and he was no longer able to be left on his own. Kay and Steve were unable to qualify financially for assisted living because Beal Bank's lawsuit threatened to wipe them out.*"

5. Furthermore the facts in the ***Beal Bank, SSB v. Sarich*** case demonstrate how victims like the Breitlings and the Sarichs are being denied due process and equal protections of the law. If any one of us had individually been found by a court to have deceptively "switched" a note to make it appear that someone signed it when they did not we would be sitting in a jail cell; but a when multi-billionaire like Beal uses his privately owned bank to forge and falsify a note, an Appellate Court reverses the District Court's decision based on briefs written to represent and further the interests of banks and financial institutions. ***Supreme Court of Washington, En Banc.; BEAL BANK, SSB, Appellant,***

*v. Steven and Kay SARICH; No. 79875-3, Decided: September 13, 2007* Amicus Curiae on behalf of Washington Bankers Association, Amicus Curiae on behalf of Washington Mortgage Lenders Association, Amicus Curiae on behalf of Washington Financial League, Amicus Curiae on behalf of Washington Independent Community Bankers Association, Amicus Curiae on behalf of Washington Credit Union League. "*We granted Beal Bank's motion to transfer its appeal from the Court of Appeals. We reverse the trial judge's grant of summary judgment and hold, under Washington law, that the "foreclosure" of a senior deed of trust does not extinguish the debt/obligation of any junior lienholder or otherwise preclude an action to recover that debt.*" It doesn't matter that Beal attempted to defraud the court by switching a note. Something is terribly wrong in America when courts allow such crimes to go unreported to authorities and unpunished.

6. Cases like this one are then used against other homeowners, like us, fighting fraudulent foreclosures on our homes, with no concern for or acknowledgment of the fraud that underpinned Beal's actions in the Sarich case and the many others across our country like it. The doctrine of unclean hands should have barred Beal from prevailing; yet the Appellate Court seems to be blind to such fraud. This blatant favoritism undermines public faith in our judiciary and denies every American citizen of their Constitutional right to due process and equal protection of law. The judiciary itself has thus undermined the most basic of our inherent rights which our forefathers sought to protect through the enactment of our Constitution's Bill of Rights.

7. The documents attached hereto as Exhibit "A" may be accessed online from PACER or through the King County Superior Court electronic filing system.

8. Timely written notice of this request is hereby given by email and postal mail service upon Plaintiff's counsel as required by law.

WHEREFORE, pursuant to Texas Rule of Evidence 201 THE BREITLINGS move this Court to take Judicial Notice without hearing of judicially determined facts pertaining to the business practices of Daniel Andrew Beal, his privately owned Beal Bank and his other enterprise entities, including LNV Corporation and MGC Mortgage Inc., specific to their propensity to misrepresent and falsify facts pertaining to mortgage related documents; and of the propensity of the attorneys Beal hires to represent his enterprise entities, like Codilis & Stawiarski, that have demonstrated a pattern of producing such forged and falsified mortgage related documents with intent to deceive courts and who have a direct connection, as LPS Service Providers, to the computer systems and other means and methods created by convicted felon Lorraine Brown in the commission of her crimes, which are consistent with the activities of law firms like Codilis & Stawiarski; without hearing, and for such other and further relief as this Court deems just and proper under the circumstances.


JoAnn S Breitling                                    Samuel G. Breitling

**EXHIBIT A**

*79875-3*

No. 58927-0

COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION I

BEAL BANK, SSB, a Texas State Savings Bank,

Appellant,

v.

STEVEN and KAY SARICH, and the marital community comprised
thereof; JOE CASHMAN and JANE DOE CASHMAN, and the
marital community comprised thereof; and U.S. BANK
NATIONAL ASSOCIATION #1000,

Respondents.

**BRIEF OF RESPONDENTS STEVE AND KAY SARICH**

HALL ZANZIG ZULAUF
CLAFLIN McEACHERN PLLC
Spencer Hall
WSB No. 6162
Janet D. McEachern
WSB No. 14450
1200 Fifth Avenue, Suite 1414
Seattle, Washington  98101
(206) 292-5900

BUSH STROUT & KORNFELD
Katriana L. Samiljan
WSB No. 28672
Gayle E. Bush
WSB No. 7318
601 Union Street, Suite 5500
Seattle, Washington  98101
(206) 292-2110
Attorneys for Respondents
Steve and Kay Sarich

# TABLE OF CONTENTS

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ASSIGNMENTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . .   3

      The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      The Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

      First Loan (Washington Mutual) . . . . . . . . . . . . . .   5

      Second Loan (U.S. Bank)  . . . . . . . . . . . . . . . . . . . .   5

      Third Loan (U.S. Bank)  . . . . . . . . . . . . . . . . . . . . . .   5

      The Nonjudicial Foreclosure  . . . . . . . . . . . . . . . . .   7

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

A.   The Trial Court Correctly Ruled That Beal's
     Claims Are Barred By Washington Law  . . . . . . .  10

B.   The Trial Court Did Not Err By Denying
     Beal's Motion for Summary Judgment . . . . . . . . .  20

C.   The Trial Court Properly Awarded
     Attorneys' Fees To The Sariches  . . . . . . . . . . . . .  25

D.   The Sariches Request An Award
     Of Attorneys' Fees On Appeal . . . . . . . . . . . . . . .  30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

# TABLE OF AUTHORITIES

## Cases

**Pages**

DeYoung v. Cenex Ltd.,
100 Wn. App. 885, 1 P.3d 587 (Div. 3, 2000) . . . . . . . . . . . 15-16

Singleton v. Frost,
108 Wn.2d 723, 742 P.2d 1224 (1987) . . . . . . . . . . . . . . . . 29, 30

Washington Mutual Savings Bank v. United States,
115 Wn.2d 52, 973 P.2d 969, clarified on denial of
reconsideration, 800 P.2d 1124 (1990) . . . . . . . . . . . . . . . 1, 2, 10,
11, 12, 13,
14, 15, 16,
19, 20

## Statutes

**Pages**

RCW 4.84.330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

RCW 61.12.060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

RCW 61.24.040(1)(b)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

RCW 61.24.080(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

RCW 61.24.100(3)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Washington Deed of Trust Act . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14,
17,

## Other Authorities

**Pages**

59A C.J.S., Mortgages, §674, n. 26 (2006) . . . . . . . . . . . . . . 13

W. Stoebuck and J. Weaver, 18 Washington Practice,
Real Estate: Transactions, §20.17 (2006) . . . . . . . . . . . . . . 12-13

John D. Sullivan, "Rights of Washington Junior
Lienors in Nonjudicial Foreclosure – Washington
Mutual Savings Bank v. United States, 115 Wash. 2d
52, 793 P.2d 969, clarified, reconsideration denied,
800 P.2d 1124 (Wash. 1990)," 67 Wash. L. Rev. 235
(January 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

## INTRODUCTION

This case involves claims by a self-professed "aggressive" Texas bank against an elderly Seattle couple based on two promissory notes that the Texas bank purchased at a discount as part of a package of troubled loans. The promissory notes were secured by second and third deeds of trust on the borrowers' home. When the senior lienholder commenced a nonjudicial foreclosure on the borrowers' home, the Texas bank failed to protect its position and squandered more than $400,000 in excess value in the collateral.

The Texas bank sought judicial foreclosure and a deficiency judgment against the borrowers. After the nonjudicial foreclosure by the senior lienholder, the Texas bank continued to pursue its deficiency claims based on the promissory notes. The bank moved for summary judgment. The borrowers filed a cross-motion for summary judgment based on Washington Mutual Savings Bank v. United States, 115 Wn.2d 52, 793 P.2d 969, clarified on denial of reconsideration, 800 P.2d 1124 (1990).

The Honorable Douglas McBroom ruled that the Washington Mutual decision was controlling, granted the

1

borrowers' motion for summary judgment, and denied the bank's motion for summary judgment.  In a later proceeding, Judge McBroom granted the borrowers' motion for attorneys' fees.

The bank has appealed the trial court's summary judgment rulings and award of attorneys' fees to the borrowers.

### ASSIGNMENTS OF ERROR

1.      Did the trial court err by dismissing Beal Bank's claims based on controlling Washington law as stated in Washington Mutual Savings Bank v. United States, 115 Wn.2d 52, 793 P.2d 969, clarified on denial of reconsideration, 800 P.2d 1124 (1990)?

2.      Did the trial court err by denying Beal Bank's summary judgment motion where controlling law required dismissal of Beal Bank's claims and where there were disputed issues of material fact regarding the validity of the notes and the amounts allegedly owed?

3.      Did the trial court err in awarding attorneys' fees to the Sariches, where the Sariches obtained dismissal of all Beal Bank's claims against them and Beal Bank submitted no evidence to challenge the reasonableness of the Sariches' fees?

2

## STATEMENT OF THE CASE

### The Parties

Plaintiff/Appellant, Beal Bank, SSB ("Beal"), is a privately-owned "wholesale bank" with assets in excess of $2.1 billion.[1]  Beal, which is headquartered in Texas, buys and sells pools of loans and debt securities.  Beal openly promotes itself as an "aggressive" purchaser of distressed loans.[2]  Beal demonstrated its aggressiveness in this action by suing on an altered promissory note.  Beal switched the signature page on one of the notes to make it appear that Kay Sarich signed the note when, in fact, she did not.[3]

Defendants/Respondents Steve and Kay Sarich are Seattle residents.  They have been married for nearly 60 years. Steve is 85 years old.  Kay is 81.[4]

Steve and Kay grew up in the Seattle/Tacoma area.

---

[1] Information regarding Beal is taken from its website: www.bealbank.com.
[2] *Id.*
[3] The second page of the Term Note, dated September 24, 2002, attached as Exhibit 2 to Beal Bank's Complaint for Judicial Foreclosure of Deeds of Trust, appears to be signed by Kay Sarich.  CP 20.  However, a copy of the actual September 24, 2002 Term Note obtained from the original lender (U.S. Bank) shows that Kay Sarich did not sign the note.  CP 105.  *Beal Bank subsequently admitted switching the signature pages.  See* Letter from Nancy L. Isserlis to Katriana Samiljan and Spencer Hall, dated June 28, 2006.  CP 238-39.
[4] Declaration of Kay Sarich dated June 26, 2006 ("Sarich Declaration"), ¶¶2 and 5. CP 90-91.

Their parents were Yugoslavian immigrants. With only a high school education, Steve and Kay worked together to build a successful business processing salmon eggs for fish bait. In the mid-1980's, Steve and Kay sold the business. Kay became a full-time homemaker. Steve continued to work in investment financing. He stopped working approximately ten years ago.[5]

In the late 1990's, the Sariches suffered financial setbacks which required them to liquidate nearly all their assets at a steep loss.[6]

In 2000 or 2001, Steve Sarich began showing signs of dementia.[7] By the time of the summary judgment hearing, Kay and Steve were living in a rented apartment and Kay was struggling to care for Steve by herself.[8] Steve's dementia had progressed rapidly and he was no longer able to be left on his own.[9] Kay and Steve were unable to qualify financially for assisted living because Beal Bank's lawsuit threatened to wipe them out.[10]

---

[5] Sarich Declaration, ¶3. CP 90-91.
[6] Sarich Declaration, ¶4. CP 91.
[7] Sarich Declaration, ¶4. CP 91.
[8] Sarich Declaration, ¶5. CP 91.
[9] *Id.*
[10] *Id.*

4

Following Judge McBroom's summary judgment rulings, the Sariches were able to move into an assisted living facility where Steve is now receiving the full-time care that he needs.

### The Loans

**First Loan (Washington Mutual).**  On June 25, 2001, Steve and Kay Sarich borrowed approximately $1.6 million from Washington Mutual Bank.[11]  The Washington Mutual loan was secured by a first deed of trust on the Sariches' home, a Queen Anne condominium on Highland Drive.[12]

**Second Loan (U.S. Bank).**  On September 26, 2001, Steve and Kay Sarich signed a promissory note with U.S. Bank for a line of credit in the amount of $344,600.79.[13]  The line of credit was secured by a second deed of trust on the Sariches' home.[14]

**Third Loan (U.S. Bank).**  On September 24, 2002, Steve Sarich and Joe Cashman, a business acquaintance, entered

---

[11] CP 148-51.
[12] *Id.*
[13] CP 102-03.
[14] CP 26-34.

5

into a Term Loan Agreement with U.S. Bank.[15]  In connection with

the loan, Steve Sarich and Joe Cashman signed a $420,000 Term

Note.[16]  The loan was secured by a third deed of trust on the

Sariches' home.[17]  Kay Sarich was not a party to this loan.[18]

On September 24, 2003, U.S. Bank assigned its second

and third deeds of trust on the Sariches' condominium to Beal,

together with the underlying obligations.[20]  Beal asserts in its brief

that "The condominium was not the personal residence of the

Sarichs."[21]  That is not true.  The bank's own records show the

Sariches' address as the Highland Drive condominium.[22]  When

Beal's attorneys made a formal demand for payment prior to filing

this lawsuit, the letter was sent by certified mail to the Sariches at

---

[15] CP 113-18.

[16] CP 104-06.

[17] CP 35-44.

[18] CP 104-06 and 113-18.  *See also* Letter from Nancy L. Isserlis to Katriana
Samiljan and Spencer Hall, dated June 28, 2006.  CP 238-39.

[19] Sarich Declaration, ¶4.  CP 91.

[20] CP 45-48.

[21] Appellant's Opening Brief, p. 3.

[22] *See, e.g.,* CP 283.

the condominium on Highland Drive.[23]

Beal has refused to disclose the amount it paid for the Sariches' notes. However, in a Rule 30(b)(6) deposition, Beal's representative testified that it wouldn't surprise him if Beal Bank paid as little as 10 or 20 cents on the dollar for the loans.[24] Beal's records show that it received more than $260,000 in payments before declaring the Sariches in default.[25] Even at 20 cents on the dollar, Beal already has received substantially more than it paid for the loans.[26]

### The Nonjudicial Foreclosure

The Sariches were unable to repay the loans from Washington Mutual and U.S. Bank.

Beal declared the Sariches in default in January 2005.[27] On April 5, 2005, Beal filed the action below, seeking a judicial foreclosure and deficiency judgment against the Sariches.[28]

The senior lienholder, Washington Mutual, elected to

---

[23] CP 124.
[24] Rule 30(b)(6) Deposition of Beal Bank (Ronald Bret Beattie), dated August 21, 2006 ("Beal Bank Deposition"), p. 98, lines 10-23. CP 249.
[25] CP 206-07.
[26] Assuming Beal Bank paid 20 cents on the dollar for the loans, Beal paid approximately $152,920. [.2 x ($344,600 + $420,000) = $152,920].
[27] CP 124-25.
[28] CP 4-13.

proceed with nonjudicial foreclosure.  Washington Mutual sent a

Notice of Default to the Sariches on July 25, 2005,[29] followed by a

Notice of Trustee's Sale on August 25, 2005.[30]  The trustee's sale

was scheduled to take place on December 2, 2005.[31]

Beal knew that the Sariches' condo was worth

substantially more than Washington Mutual's lien of $1.6 million.[32]

According to King County, the appraised value of the Sariches'

condo was approximately $2.5 million as of August 2004.[33]  Beal's

internal records show that Beal valued the condo at $2.25 million.[34]

Prior to the trustee's sale, Beal assured the Sariches

that it would pay off the senior lien and purchase the condo at the

foreclosure sale.[35]  Beal's attorney wrote to the Sariches' attorney,

stating:

> My client is making the necessary
> preparations to pay off the Washington
> Mutual Bank lien, and any lien associated

---

[29] CP 145-46.

[30] CP 148-51.

[31] CP 148.

[32] Beal Bank's internal Asset Review as of December 31, 2003 shows that the property was appraised at $2.5 million in July 2001.  CP 284.  Beal knew in September 2005 that King County had assessed the value of the condo at $2,487,000.  CP 292.

[33] CP 141.

[34] CP 284.

[35] Letter from Nancy Isserlis to Gayle Bush, dated November 3, 2005.  CP 153-54.

> with the Homeowners Association in
> anticipation of the sale on December 2,
> 2005.
>
> \* \* \*
>
> I have prepared a Confirmation of Joinder
> of Parties Claims and Defenses and
> indicated to the court that there is a
> pleading still to be filed, which is your
> answer, and that we would request that
> this matter be continued for 30 days based
> on the fact that after December 2, 2005,
> two of the parties will be eliminated from
> the case because those liens will be paid.[36]

The Sariches expected the excess value in their condo to be applied

to the amount owed to Beal.[37]

Contrary to its announced plan, Beal decided not to

pay off the Washington Mutual lien and made no attempt to

protect its position by purchasing the property at the foreclosure

sale.[38]  Washington Mutual completed the nonjudicial foreclosure

by purchasing the condo for $1,648,630 in January 2006.[39]  Two

months later, Washington Mutual sold the condo for $2,050,000.[40]

Inexplicably, Beal chose to turn its back on *at least*

---

[36] *Id.*
[37] Sarich Declaration, ¶7.  CP 91.
[38] Supplemental Affidavit of David Wall, dated August 28, 2006 ("Supplemental Wall Affidavit"), ¶12.  CP 336.
[39] CP 156.
[40] CP 158.

$400,000 that it could have obtained by purchasing the Sariches'
condo at the foreclosure sale.  Beal then sought a deficiency
judgment against Steve and Kay Sarich in direct contravention of
Washington law.

## ARGUMENT

### A.     The Trial Court Correctly Ruled That Beal's Claims Are Barred By Washington Law

Judge McBroom dismissed Beal Bank's claims
pursuant to a Washington Supreme Court decision construing the
Washington Deed of Trust Act.  There is Washington law squarely
on point.  No other law needs to be considered.  Beal Bank's
arguments based on other statutes and other states' laws do not
change the fact that in Washington a nonjudicial foreclosure
eliminates the ability of *any* lienholder, including non-foreclosing
junior lienholders, to sue the debtor for a deficiency.

In <u>Washington Mutual</u>, <u>supra</u>, the Washington
Supreme Court, sitting en banc, held unanimously that a non-
foreclosing junior lienholder cannot sue a debtor for a deficiency
judgment after a nonjudicial foreclosure.  The Court flatly rejected
the parties' argument that the anti-deficiency provision of

10

Washington's Deed of Trust Act should apply only to a foreclosing

lienholder.  The Court explained:

> We conclude that there is no authority
> in Washington law for allowing **any**
> lienholder to sue for a deficiency
> following a nonjudicial foreclosure sale.
> * * *
> Washington law provides that no
> deficiency judgment may be obtained when a
> deed of trust is foreclosed. . . .  The parties
> argue that the statutory bar to deficiency
> judgments following nonjudicial foreclosures
> applies only to foreclosing lienholders and
> not to a nonforeclosing junior lienholder who
> purchases the property to protect its lien at a
> nonjudicial foreclosure sale.
> * * *
> **We do not deem it necessary to determine**
> **how a deficiency judgment should be**
> **measured in this case since we hold here**
> **that none may be obtained by a**
> **nonforeclosing junior lienor following a**
> **nonjudicial foreclosure sale.  There is**
> **simply no statutory authority for allowing**
> **such a judgment following a nonjudicial, or**
> **deed of trust, foreclosure.**

Washington Mutual, 115 Wn.2d at 55 and 58, 793 P.2d at 970 and

972 (emphasis added).  In addition to the Court's opinion, there is a

concurrence from Justice Guy and, a few months later, an Order

Clarifying Opinion and Denying Motion for Reconsideration,

Washington Mutual, 800 P.2d 1124 (1990), that have been the

11

subject of commentary.

The Court's holding in <u>Washington Mutual</u> is widely acknowledged to mean that a junior lienholder cannot sue on its note after the foreclosure of a senior lienholder.  For instance, the <u>Washington Practice</u> treatise states:

> [I]n *Washington Mutual Savings Bank v. United States* the Supreme Court of Washington held, as a necessary part of its decision, that nonjudicial foreclosure of a senior deed of trust bars a junior lienor from thereafter recovering the unpaid balance of his debt.  Since the senior's foreclosure extinguishes his security, he has lost both obligation and security. . . . The court expressly said that foreclosure precludes junior lienors from pursuing a "deficiency."  Later, in an addendum labeled a "clarification," the court said its decision did not "address the matter of a junior deed of trust holder's continued right to sue the debtor on the promissory note."  Since a suit "on the promissory note" is synonymous with a suit for "deficiency," the "clarification" only adds confusion.

> Obviously, either the Washington State Supreme Court or the state legislature needs really to "clarify" the *Washington Mutual* decision.  Taken literally, it means that the holder of every lien junior to a deed of trust in Washington, which of course includes many commercial lenders, must buy at the trustee's sale or lose everything.

W. Stoebuck and J. Weaver, 18 <u>Washington Practice</u>, Real Estate:

Transactions, §20.17 (2006).

The legal encyclopedia <u>Corpus Juris Secundum</u> cites

<u>Washington Mutual</u> for the rule in Washington that "No deficiency

judgment may be obtained by a nonforeclosing junior lienor

following a nonjudicial foreclosure sale." 59A C.J.S., Mortgages,

§674, n. 26 (2006).

At the trial court and on appeal, Beal Bank has relied

on a law review article written about the <u>Washington Mutual</u>

decision and the subsequent clarifying opinion.[41] The law review

article expresses concerns about the potential impact of the Court's

decision on lenders, but agrees that the rule of law is as applied by

Judge McBroom. The abstract at the beginning of the article states

unequivocally:

> In *Washington Mutual Savings Bank v. United*
> *States*, the Washington Supreme Court
> extended the anti-deficiency provisions of the
> Deed of Trust Act to all non-foreclosing
> junior lienors. Because this decision makes
> all junior obligations uncollectible following a

---

[41] John D. Sullivan, "Rights of Washington Junior Lienors in Nonjudicial
Foreclosure—Washington Mutual Savings Bank v. United States, 115 Wash.2d
52, 793 P.2d 969, clarified, reconsideration denied, 800 P.2d 1124 (Wash. 1990),"
67 Wash. L. Rev. 235 (January 1992).

13

nonjudicial foreclosure, it may have a chilling
effect on lenders . . . . [42]

The author acknowledged that judicial or legislative action would

be necessary to change Washington law after the Court's decision in

Washington Mutual.  At the conclusion of his article, Mr. Sullivan

makes a plea for legislative action:

> The Washington Legislature should amend
> the anti-deficiency provisions specifically to
> exempt the non-foreclosing junior lienor.
> Section 61.24.100 of the Revised Code of
> Washington should be changed to read:
> "Foreclosure . . . shall satisfy the obligation
> secured by the deed of trust foreclosed, but
> not a lien or mortgage or trust deed junior to
> the one foreclosed . . .."

Sullivan, 67 Wash. L. Rev. at 254-55.

It has been 15 years since Mr. Sullivan wrote his law

review article.  Neither the Washington Supreme Court nor the

Washington legislature has deemed it appropriate or necessary to

change the ruling in Washington Mutual.

In 1998, the Washington legislature revised the

Washington Deed of Trust Act, without making any changes to

exempt a non-foreclosing junior lienholder from the anti-deficiency

---

[42] Id.

14

provisions of the act.  In fact, the 1998 amendments confirmed that

a deficiency judgment is permitted only under extremely limited

circumstances.  The statute permits such a judgment only when

specific misconduct by the debtor (causing waste to the property or

wrongfully retaining rents, insurance proceeds or condemnation

awards) has caused a decrease in the fair value of the property.

RCW 61.24.100(3)(a).  No such allegations are present here.

The Washington Mutual decision is controlling.  The

Washington legislature and the Washington Supreme Court have

left the decision unaltered for more than 16 years.  It has not been

criticized in any published decision of the Washington courts.  The

Court of Appeals has ruled only that the decision does not extend

to *judicial* foreclosures.  DeYoung v. Cenex Ltd., 100 Wn. App. 885,

1 P.3d 587 (Div. 3, 2000) (affirming denial of CR 60(b) motion).  In

DeYoung, the court explained:

> The DeYoungs incorrectly rely on
> *Washington Mut. Sav. Bank v. United States,*
> 115 Wash.2d 52, 60, 793 P.2d 969 (1990) to
> argue that Cenex, as a junior mortgagee,
> could not sue on the underlying promissory
> note because it exercised its statutory right
> of redemption on the property. *Washington
> Mutual* concerned a non-judicial foreclosure

> of a deed of trust, rather than a judicial
> foreclosure of a mortgage.

DeYoung, 100 Wn. App. at 894-95, 1 P.3d at 593.  The DeYoung

court noted that in a judicial foreclosure, the borrower has the

opportunity to ask the court to set an upset price to protect any

excess value in the property.  DeYoung, 100 Wn. App. at 896, 1 P.3d

at 593.

In Washington Mutual, the Court addressed the

potential inequity illustrated so vividly in the present case.  In a

nonjudicial foreclosure, the collateral may be sold at any price.

There is no judicial determination of an upset price or fair value.  A

sale without these protections is fair to the debtor only if the

foreclosure extinguishes *all* debt secured by the collateral that is

sold.

Contrary to Beal's contention, the Washington Mutual

decision imposes no undue burden on lenders.  When a junior loan

is made, the junior lender knows the amount of the senior loan,

whether it is secured by a deed of trust, and the value of the

collateral.  When there is a senior deed of trust, the junior lender

knows that it may be limited to the value of the collateral, less the

16

senior debt, to satisfy the junior loan.  The junior lender determines how much it is willing to lend against the property in order to be adequately secured.  The junior lender can be as conservative or as aggressive as it likes.  Creditors can and do protect themselves by making certain that the value of the collateral fully secures their debt, by charging higher interest rates on loans secured by junior liens, and by protecting their position in foreclosure by purchasing the property.

In the event of a default, the senior lender can elect to proceed with a judicial foreclosure or a nonjudicial foreclosure.  In a nonjudicial foreclosure, the senior lender is required to provide notice of foreclosure to all junior lienholders.  RCW 61.24.040(1)(b)(ii).  The junior lender can then decide how to proceed.  The junior lender may await the outcome of the nonjudicial foreclosure and look to the excess proceeds of the foreclosure sale to satisfy its junior loan.  The Deed of Trust Act provides that the excess proceeds shall be deposited with the clerk of the court and liens eliminated by the sale shall attach to the surplus in the order of priority that they attached to the property.

RCW 61.24.080(3). The junior lender will be fully paid provided that the property is sold for fair market value and the junior lender exercised prudence in making the loan.

If the junior lender is concerned that the nonjudicial foreclosure sale initiated by the senior lender will not produce sufficient proceeds to pay both the senior loan and the junior loan, the junior lender may take steps to acquire control of the foreclosure process. Typically, the junior lender will acquire control of the process by purchasing the senior lender's position prior to any foreclosure sale. The junior lender then can decide whether to proceed on an expedited basis with a nonjudicial foreclosure, or take more time to conduct a judicial foreclosure and seek a deficiency judgment if necessary. If a junior lender is not prepared to deal with these options, it should not make a loan that is junior to an existing deed of trust.

Beal Bank certainly should not be heard to complain about its position. It was not the original lender. Beal Bank purchased the loans at a discount *after* they were in default.[43] Beal

---

[43] Beal Bank Deposition, p. 98, lines 10-23. CP 249.

18

could have protected its position by purchasing the property at foreclosure. Beal told the Sariches that's what it planned to do.[44] Instead, Beal allowed more than $400,000 in collateral to evaporate into thin air.[45] This would not have happened in a judicial foreclosure, where the Court would determine the fair value of the property and apply the full amount of the fair value to extinguish as much debt as possible. RCW 61.12.060.

Without the protection provided by the <u>Washington Mutual</u> decision, the borrower is the one who is at the mercy of the lenders. The rule advocated by Beal Bank would expose borrowers to deficiency judgments without any of the protections provided by a judicial foreclosure. The rule adopted by the Supreme Court in <u>Washington Mutual</u> protects borrowers from this result.

The nonjudicial foreclosure by Washington Mutual eliminated Beal's right to sue the Sariches for a deficiency. Beal could have purchased the property and recovered a significant portion, if not all, of the total amount it allegedly was owed. Beal decided not to purchase the property and must now live with the

---

[44] CP 153-54.
[45] CP 156 and 158.

19

consequences.  The trial court properly granted the Sariches'

motion for summary judgment.

### B.     The Trial Court Did Not Err By Denying Beal's Motion For Summary Judgment

Beal Bank's motion for summary judgment was

properly denied by the trial court as a matter of law based on

Washington Mutual, supra.  Even if the law had not required

dismissal of Beal Bank's claims, summary judgment was properly

denied because there were disputed issues of fact material to Beal's

claims.

1.     There are factual issues regarding Steve

Sarich's mental capacity to agree to the terms of the $420,000 note

he signed in 2002.[46]  This may explain why Beal Bank switched

signature pages to make it appear that Kay Sarich also signed the

note.

2.     There are factual issues regarding Beal Bank's

actions in connection with the sale of the Sariches' house in

California.  These questions affect the amount allegedly owed on

the notes.  The Sariches had a third loan with U.S. Bank which was

---

[46] *See* Sarich Declaration, ¶4.  CP 91.

secured by a deed of trust on the Sariches' home in California.[47]
That loan is not a subject of the present lawsuit because it was fully
paid from the sale of the house in April 2004.[48]  There were funds
left over from the sale after paying off the first loan.[49]  Those funds
should have been applied to the $344,600 note (the one signed by
Steve and Kay Sarich) because it was secured by the second deed of
trust on the house.  However, Beal Bank applied the remaining
funds from the sale of the Sariches' house in California to the
$420,000 loan which was secured by the *third* deed of trust on the
house.[50]  It appears that Beal improperly applied the Sariches'
funds toward payment of the note that Kay Sarich did not sign and
that Steve Sarich signed after he developed dementia.

   3.   The bank made unauthorized expenditures of
funds from the sale of the Sariches' house in California.  The
Sariches refused to sell the California house for less than
$3 million.[51]  The counter-offer signed by the Sariches stated:
"(1) Selling price to be $3,000,000.  (2) Agency commission to be

---

[47] CP 107-12.
[48] CP 303.
[49] *Id.*
[50] CP 294, 296 and 303.
[51] CP 296-97.

reduced by $60,000 to go towards purchase price."[52]  After the sale,
however, Beal Bank paid an additional $60,000 from the proceeds
to the broker without disclosing the gratuitous arrangement to the
Sariches or obtaining their consent.[53]  Thus, after paying off the
loan on the California house, the Sariches had $60,000 *less* to pay on
the loans that are the subject of the present lawsuit.

4.    In addition to the $60,000 that Beal Bank gave
away to the broker after the sale of the California home, Beal Bank
lost another $45,000 from the sale proceeds.  In a memo directing
the application of the proceeds, Beal stated that the funds available
to apply to the $420,000 loan "should be approximately
$294,483.30."[54]  The amount that was actually paid on the loan was
$249,245.47.[55]  This was $45,237.83 *less* than it should have been.
Beal Bank has no explanation for where that money went.[56]

5.    Part of the payment from the sale of the
California home was applied to interest on the $420,000 note.[57]

---

[52] CP 297.
[53] CP 294, 296 and 303.
[54] CP 294.
[55] CP 303.
[56] Beal Bank Deposition, p. 211, lines 8-11.  CP 281.
[57] CP 303.

22

Subsequent invoices from Beal Bank show that the bank did not credit the interest payment of $17,733.35. Instead, the bank continued to show that amount as "past due" in subsequent invoices to the borrower.[58]

      6.    The loans that are the subject of Beal's claims were secured by the Sariches' condominium. The appraised value of the condo was $2,525,000 in July 2001.[59] Beal Bank valued the Sariches' condo at $2,250,000 in an internal Asset Review as of December 31, 2003.[60] In 2004 and 2005, Beal Bank obtained opinions from brokers regarding the value of the condo. Those opinions ranged as high as $2,750,000.[61] In September 2005, Beal Bank was informed that King County assessed the value of the condo at $2,487,000.[62] Beal Bank's internal Asset Review as of December 31, 2003 showed that Beal expected to obtain a "Net Realizable Value" of $521,602 from the sale of the condo after paying off the senior lien of $1.6 million.[63] The Net Realizable

---

[58] CP 310-13.
[59] CP 284.
[60] Id.
[61] CP 315.
[62] CP 292.
[63] CP 288.

Value was more than enough to pay off the $344,600 note secured by the second deed of trust on the condo.  By letter dated November 3, 2005, Beal assured the Sariches that it would purchase the condo and pay off the senior lienholder.[64]  Without any explanation, Beal Bank changed its mind and chose not to purchase the property at the foreclosure sale in December 2005.[65]  The senior lienholder, Washington Mutual, purchased the condo for $1,648,630 million,[66] and sold it two months later for $2,050,000.[67]

       7.     The loans were also secured by stock owned by the Sariches.[68]  In 2001, U.S. Bank valued the stock at approximately $450,000.[69]  Beal Bank has the stock certificates in its vault but has not tried to liquidate them.[70]  Beal did not even attempt to determine the value of the stock until some time in 2006.[71]  Beal asserts that the stock is now worthless.[72]

---

[64] CP 153-54.
[65] Supplemental Wall Affidavit, ¶12.  CP 336.
[66] CP 156.
[67] CP 158.
[68] CP 283.
[69] Beal Bank does not dispute U.S. Bank's valuation of the stock.  Beal Bank Deposition, p. 192, line 2 through p. 193, line 14.  CP 276-77.
[70] Beal Bank Deposition, p. 192, lines 2-7, and p. 194, lines 1-5.  CP 276 and 278.
[71] Beal Bank Deposition, p. 194, lines 6-19.  CP 278.
[72] Beal Bank Deposition, p. 195, lines 2-16.  CP 279.

<u>Summary of Collateral Wasted by Beal Bank</u>

| | |
|---|---|
| Sale of California Home: | |
| Gratuitous payment to broker | $ 60,000 |
| Amount missing from sale proceeds | 45,238 |
| Uncredited interest payment | 17,733 |
| Condominium (minimum estimated loss) | 400,000 |
| Stock (2001 value) | 450,000 |
| *Minimum* amount of wasted collateral: | $ 972,971 |

The evidence establishes that Beal Bank failed to mitigate its damages on a grand scale. Beal Bank allowed nearly $1 million to slip through its fingers. That was *more than enough to pay everything* that Beal Bank now claims it is owed.

The trial court properly denied Beal Bank's motion for summary judgment. Beal's claim is barred by Washington law, and any loss suffered by Beal was a result of its own choices.

### C.    The Trial Court Properly Awarded Attorneys' Fees To The Sariches

The award of attorneys' fees to the Sariches was reasonable and proper. The loan documents contain attorneys' fee provisions, the Sariches were the prevailing party, the fees awarded were reasonable in light of the work performed and the results obtained, and Beal Bank submitted no evidence to challenge the reasonableness of the fees sought by the Sariches.

25

Beal Bank asserted claims against the Sariches totaling more than $720,000.[73] The claims were based on two promissory notes. The loan documents provide for recovery of attorneys' fees and costs.[74]

Beal Bank argues that there is no attorney fee provision relating to the $420,000 loan.[75] The bank is wrong. The note itself does not contain an attorney fee provision, but there is an attorney fee provision in paragraph 1.5 of the Term Loan Agreement executed in connection with the $420,000 loan.[76]

While the attorneys' fee provisions provide for recovery by the lender, Washington law requires such provisions to be construed to apply to whichever party prevails in the action. RCW 4.84.330.[77] All Beal Bank's claims against the Sariches were dismissed.[78] The Sariches are undoubtedly the prevailing party in the action. As such, they were properly awarded attorneys' fees

---

[73] Order Granting Sarich Defendants' Motion for Award of Attorneys' Fees and Costs, dated October 18, 2006 ("Attorneys' Fee Award"), ¶3. CP 454.
[74] CP 102 and 113.
[75] Appellant's Opening Brief, p. 30.
[76] CP 113.
[77] The loan documents provide that Washington law applies. *See* Promissory Note, dated September 26, 2001, p. 1 (CP 102), and Term Loan Agreement, dated September 24, 2002, ¶ 6.9 (CP 118).
[78] Order Granting Motion for Summary Judgment by Defendants Steve and Kay Sarich, dated September 8, 2006. CP 415-17.

and costs.

The amount of attorneys' fees and costs incurred by the Sariches to defend against the bank's claims was reasonable. The Sariches were defending against claims in excess of $720,000.[79] The bank' claims were dismissed on summary judgment less than three weeks before trial.[80]  Given these circumstances, the trial court's award of approximately $81,000 in attorneys' fees[81] to the Sariches is reasonable.

Beal Bank offered no affidavits or other evidence to the trial court to challenge the reasonableness of the Sariches' fee request.[82]  The bank argues that the fee award is high because the Sariches were represented by two law firms, but the bank did not identify any examples of duplicative, overlapping or wasted time in the billing summaries submitted by counsel in support of the

---

[79] Attorneys' Fee Award, ¶3. CP 454.
[80] Attorneys' Fee Award, ¶5. CP 454.
[81] CP 524.
[82] Beal Bank's opposition to the Sariches' motion for attorneys' fees is contained in Plaintiff's Memorandum in Opposition to Defendants' Motions for Attorneys' Fees, dated September 29, 2006.  CP 593-97.  Beal submitted no other materials in opposition to the motion.

Sariches' request for attorneys' fees.[83]

The Sariches' fee application was supported by affidavits stating that the hourly rates charged by the Sariches' attorneys "are within the range charged by attorneys with similar experience and comparable legal practices in Seattle."[84]  Beal did not challenge that evidence.  In fact, Beal alleged in its complaint that "**the sum of $20,000 is reasonable** and shall be allowed the Plaintiff as attorneys fees **in case this action is uncontested** . . . ."[85]  If a fee award of $20,000 is reasonable in an *uncontested* action, surely it is reasonable to award an additional $60,000 when the action is heavily contested and the result achieved is dismissal of all claims less than three weeks before trial.

Beal Bank argues that Kay Sarich is not entitled to attorneys' fees because she did not sign one of the two promissory notes at issue in the case.  This argument has no merit.  Beal Bank was seeking judgment in excess of $458,000 on the note signed by

---

[83] Declaration of Gayle E. Bush, dated September 19, 2006 ("Bush Declaration"), Exs. A and B (CP 532-65); Declaration of Spencer Hall, dated September 19, 2006 ("Hall Declaration"), Ex. A (CP 577-84).
[84] Bush Declaration, ¶5 (CP 530); Hall Declaration, ¶5 (CP 574).
[85] Complaint for Judicial Foreclosure of Deeds of Trust, ¶11.1 (emphasis added). CP 10.

Kay Sarich (Note #61).[86]  Beal Bank was seeking significantly less,

approximately $261,000, on the note that Kay did not sign

(Note #62).[87]  Either way, the bank expected to recover on both

notes from the community property of Steve and Kay Sarich.  In

support of its summary judgment motion, Beal Bank stated:  "**Beal**

**Bank seeks recovery on Note #62 from** Steve Sarich, Jr., **the**

**marital community of Steve Sarich, Jr. and Kay Sarich**, and Joe

Cashman."[88]

  Steve and Kay Sarich obtained a dismissal of all

claims against them and against their marital community.  As

prevailing parties, they are entitled to recover their attorneys' fees,

including fees spent defending claims against their marital

community.  *See, e.g.,* Singleton v. Frost, 108 Wn.2d 723, 742 P.2d

1224 (1987) (awarding attorneys' fees to creditor who recovered

against community property even though spouse who did not sign

promissory note was determined to have no individual liability).

  Washington law provides that in determining a

reasonable attorney fee, "The trial court is to take into account the

---

[86] Supplemental Wall Affidavit, ¶10.  CP 336.
[87] Supplemental Wall Affidavit, ¶11.  CP 336.
[88] Supplemental Wall Affidavit, ¶5 (emphasis added).  CP 335.

amount involved and to set the award of fees with the total sum recovered in mind." Singleton, 108 Wn.2d at 731, 742 P.2d at 1228. The Sariches were successful in obtaining dismissal of all claims against them. Those claims exceeded $720,000. The total attorneys' fees paid by the Sariches (approximately $81,000),[89] are only a fraction of the total claims dismissed.

The trial court's award of attorneys' fees to the Sariches is reasonable and should be affirmed.

### D. The Sariches Request An Award Of Attorneys' Fees On Appeal

Pursuant to RAP 18.1, the Sariches respectfully request an award of their attorneys' fees and costs incurred in connection with this appeal.

## CONCLUSION

For the foregoing reasons, the Sariches respectfully request that the Court affirm all rulings of the trial court below, and award the Sariches their attorneys' fees and costs incurred in connection with this appeal.

---

[89] CP 524.

30

DATED this _23rd_ day of January, 2007.

HALL ZANZIG ZULAUF
CLAFLIN McEACHERN PLLC

By _____

Spencer Hall
WSB No. 6162
Janet D. McEachern
WSB No. 14450

BUSH STROUT & KORNFELD

By _____

Katriana L. Samiljan
WSB No. 28672
Gayle E. Bush
WSB No. 7318
Attorneys for Respondents
Steve and Kay Sarich

31

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 23, 2007, a copy of the Brief of Respondents Steve and Kay Sarich was served on the following parties:

> C. Matthew Andersen
> Nancy L. Isserlis
> Winston & Cashatt
> 601 W. Riverside, Suite 1900
> Spokane, Washington  99201
> (via fax and U.S. mail)
>
> Thomas Cline
> 2502 North 50th Street
> Seattle, Washington  98103
> (via U.S. mail)
>
> Katriana L. Samiljan
> Bush Strout & Kornfeld
> 601 Union Street, Suite 5500
> Seattle, Washington  98101
> (via U.S. mail)
>
> U.S. Bancorp
> 800 Nicollet Mall
> Minneapolis, Minnesota  55402
> (via U.S. mail)

_Karen A. Benedict_
Karen A. Benedict