**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SAMUEL G. BREITLING AND** | § | |
| **JO ANN BREITLING,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **NO. 3:15-CV-00703** |
| | § | |
| **LNV CORPORATION, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

STATE OF TEXAS
COUNTY OF DALLAS
CITY OF SACHSE

# AFFIDAVIT OF JOANN BREITLING

I, JoAnn Breitling, am beyond 18 years of age.  I have resided in Dallas County Texas all of my life. I have never been convicted of a crime. I am fully competent to make this affidavit in testimony of my personal knowledge and experience.  I swear under the penalty of perjury and under the laws of Texas and the United States that my testimony herein is true and accurate.

I make this affidavit to support my Notice of Constitutional Questions and my motions for relief to soon be filed with this court.

We were deceived when we refinanced our mortgage into an extremely high interest rate of 12.375%.  In spite of this we paid our mortgage payments on time each month and prayed for an opportunity to lower that interest rate through another refinance.

In June 2008 we were approved to refinance our mortgage at 7% interest.  Unfortunately this is when our mortgage servicer Wilshire Home Loans told us MGC Mortgage Inc. would be taking over the servicing of our loan. We had only made payments to Wilshire for about eight (8) months; almost all our payments before Wilshire were made to Countrywide Home Loans.

We made numerous requests to MGC for a payoff balance so we could refinance and they made excuse after excuse never providing it.  Our refinance offer expired.  When we tried again to refinance through another lender we discovered MGC had not reported our good payment history to credit reporting agencies and this caused our credit score to drop by around 90 points.  This barred us from refinancing, so we attempted to do a modification with MGC.  This ended up being another fiasco with MGC losing our documents, and us resubmitting them multiple times.

MGC tried to have us hold our payments claiming their computer system wasn't up. MGC didn't send us statements either.  We became very suspicious of this company and demanded they take our payments so they had us pay through Graystone in Massachusetts.  We did this over the phone. After that MGC denied our modification claiming we were uncooperative.

In July 2009 we had hired attorney Emil Lippe.  He wrote letters to MGC pursuant to the Texas Deceptive Trade Practices Act ("DTPA") and MGC did not respond so Emil in February 2010 sued MGC Mortgage, Inc. and Aames Funding Corporation doing business as Aames Home Loans for servicing fraud, misappropriate of payments, failure to provide our complete pay history and failure to provide a payoff of our loan, among other claims in violation of the Fair Debt Collection Practices Act and other laws.  During this litigation we learned that Aames was no longer in business and MGC's attorney didn't know who owned our loan.  Emil told us to stop making payments after he learned this.  As the litigation progressed over 15 months we learned about more and more fraud.

In May, 2011 I hired attorney Patricia McCartney to take over the case because Emil's case load had become too much for him.  He wanted us to withdraw our case and wait for a foreclosure action we didn't feel comfortable with this so he asked if he could withdraw.  Patricia had to spend so much time reviewing the volumes of documents MGC's attorneys had sent to Emil to familiarize herself with our case that she missed an important deadline.  In June 2011 she decided to non-suit and filed a new complaint.  This is why there are two prior complaints instead of just one.

MGC's attorney, Scott Hayes, who did everything in his power to delay the progression of our case and to prevent or stall producing the documents Patricia repeatedly requested from MGC.  He filed summary judgment motion after motion.  In October 2011 Patricia called me and said that Scott Hayes was harassing her.  I urged her to go to the judge, but she said she did not want to appear weak, as a woman.  She said that women have to prove themselves twice as hard as male attorneys.  In spite of all this she was winning for us.

In February 2013 Scott Hayes filed another motion for summary judgment and a motion to set back the April 15, 2013 trial date.  He set a hearing in violation of the scheduling order to have his motions heard before the trial date.

In March 2013 our case went to mediation.  Patricia had a melt down during mediation and began crying.  She said she couldn't take any more of this. What she meant was that she couldn't take anymore malicious litigation by MGC's Scott Hayes.  Patricia had already defeated two prior motions for summary judgment filed by Scott Hayes. She had endured two years of harassment by Scott Hayes, and with his newest onslaught of motions to delay the trial she could not see an end in sight; that is why she broke down.  The mediator suggested abating the case for 90 days.  I agreed. During this 90 day period our son Matthew, who has Down syndrome, became deathly ill.

Beginning in April 2013 Matthew's condition deteriorated while doctors did test after test yet couldn't find out what was wrong with him.  With Matthew's life hanging on a hinge and with no attorney I was forced to non-suit our case against MGC at the end of July, 2013 to focus on keeping my son alive.

In September 2013 we were visiting our daughter in Kingwood Texas for a family wedding. Matthew aspirated and kept choking. He was taken by ambulance to Kingwood Medical Center.  His blood pressure was only 60/37 so he was admitted into the intensive care unit immediately.  It took ten days but finally Dr. Ranga Nathan and Dr. George Nunez diagnosed Matthew's condition as a rare auto-immune disease called Achalasia.  They performed surgery to save Matthew's life.  An extended period of recovery ensued after he was released from the hospital.

Throughout this time I searched for another attorney who would understand our case.  I spoke with at least 100 attorneys.  One of the attorneys I spoke with told me he knew firsthand about Beal's fraud because his wife had once worked for MGC and quit because she was constantly asked to do

things she knew were illegal. I am intentionally withholding the name of this attorney to preserve his and his wife's testimony for the FBI and the U.S. Attorney General.  This attorney told me that as much as he would like to take my case and expose Beal he was a small law office and he was all too aware of how Beal's attorneys operate; he could never hold out financially against them.  Many of the attorneys I spoke with told me the same thing about how Beal's attorneys do everything possible to increase litigation costs making it impossible for them to represent us against Beal without a huge retainer because they know he will financially drain us and them.

In November 2013 I talked with attorney Taj Warren in Dallas. I mailed him my deed assignments and other documents from my case.  I confirmed that he had received these documents and we agreed to talk again after the first of the year.

In mid-December 2013 I received an email from a man named Don Watley.  The email was captioned "deeds of assignment and answer" and the email was sent from Don Watley to Taj Warren with me copied on the email.  I had never heard of Don Watley and I was curious how he came to be in possession of documents that I had mailed by U.S. post to Taj Warren.  I called Taj Warren and he denied ever receiving the email.  He said he did not know Don Watley.

The other Beal victims and I did research on Don Watley and discovered he was a retired Houston police officer, he was a constable in Harris County Texas and he owned a trucking business with his second wife Lisa Scheper in Splendora, Texas.  We don't know what connection this has with Beal's fraud scheme but we have plenty of additional information about Don Watley for the FBI and U.S. Attorney General to help them find out.

I received a debt demand letter dated January 14, 2014 from Codilis & Stawiarski claiming we owed a debt to their client Dovenmuehle Mortgage Inc.  We had no prior communications from this company and had never been asked to make payments to them, nor had we ever made payments to them.  On February 3, 2014 I sent Codilis & Stawiarski a debt dispute letter pursuant to the Fair Debt Collections Practices Act challenging their claim of debt in its entirety.  Codilis & Stawiarski failed to validate the debt but they included in their response documents from my court case with MGC where, up to the point where I had to non-suit keep our son alive, MGC had failed to validate the debt.  At this point I understood that somehow Dovenmuehle was connected with MGC.

On March 11, 2014 I sent a second letter to Codilis & Stawiarski demanding they reimburse me for payments I made to MGC before I learned it had no legal standing to take my payments.  In Codilis & Stawiarsk's written response to my letter they make no reference to my challenge of the debt validity but responded that their client would not reimburse me. At this point I understood that their "client" was MGC instead of or as well as Dovenmuehle.

On April 10, 2014 I hand delivered a cease and desist letter pursuant to the Fair Debt Collection Practices Act to Dovenmuehle's office located a 1 Corporate Drive, Lake Zurich, Illinois. A guard sat inside the door to the building who did not want to let me go up to suite 360.  He finally phoned Dovenmuehle' office and asked permission for me to go up.  When I entered Dovenmuehle's office I observed a very small space with a single desk and one receptionist answering the phone non-stop saying "mortgage services, who's your lender."

She took at least eight phone calls while I was there.  When she had a pause between calls she asked me, "Who's your lender."  I said I had no lender I just needed to hand deliver a letter to Dovenmuehle.  She was unsure who to call so I asked her if she had a legal department.  She called

the legal department and in a few minutes someone came to her desk.  I asked him for his card before I left.  The card was for Ed Szarkowlcz, Staff Attorney for Dovenmuehle.

On April 15, 2014 Cordilis & Stawairsk LP in behalf of LNV Corporation owned by Daniel Andrew "Andy" Beal file a foreclosure complaint against us in the Dallas County District Court.

The foreclosure complaint was written as an "in rem" foreclosure action.  No attorney we spoke with had heard of an "in rem" foreclosure so we looked it up and discovered this was a type of lawsuit done when the property was vacant and the owner was unknown.  That was not the case here because we owned property and have lived in our home 33 years. We knew something was wrong and that Andy Beal was trying to do something sneaky by framing his lawsuit in a deceptive way.

On June 10, 2014 I hired the Lane Law Firm based on my conversation with Greg Tidmore, who I thought was an attorney.  Greg told me that the Lane Law Firm had other cases with LNV Corporation and that they had recently won a case against them.  They filed an answer to LNV's complaint on June 23, 2014.

On July 7, 2014 LNV filed a motion for summary judgment.

On July 7, 2014 Judge Dale Tillery issued a default judgment against us and closed the *LNV v. Breitlings* case.  I closely monitor the actions of the court so I caught it within hours.  I knew he could not enter a default against us because our attorneys answered LNV's petition.  I immediately phoned the clerk of his court who told me that he must not have liked our answer.  I informed her that it did not matter if he "liked" our answer he could not enter a default against us.  She apparently made a phone call to Codilis & Stawiarski and within five minutes of my conversation with her, our case was reopened and a hearing was set for August 4, 2014 for LNV's motion for summary judgment. (See the screen print I made of this attached as part of Exhibit A.  This was changed by someone at the court after the first weekend in April 2015.)

On July 28, 2014 after the Lane Law Firm filed a cookie cutter response to LNV's motion for summary judgment.  I questioned Greg Tidmore about why their pleading was not specific to our case and this is when I learned that Greg Tidmore was not an attorney and that he had lied to me about the Lane Law Firm's experience and about their strategy for my case. I fired the Lane Law Firm because they lied to me and the pleadings they had filed were not representing the facts specific to my case but were vague generalized pleadings which I knew were not legally correct.  Later I learned that a federal judge sanctioned the Lane Law Firm that same week for filing identical pleadings in several cases before his court.

I was well within my rights as a consumer to fire the Lane Law Firm when I discovered they had misrepresented their services to me and that this misrepresentation had caused me harm because they filed ineffective pleadings with the court.

On July 29, 2014 the Lane Law Firm and LNV's attorney Jeff Hardaway filed a "JOINT OBJECTION TO COURT ORDER TO MEDITATION AND MOTION TO RECONSIDER ORDER APPROVING MEDIATION FEES".

On July 29, 2014 the Lane Law Firm filed a motion to withdraw and instead of making a neutral yet truthful statement that we had mutually decided to sever our relationship the Lane Law Firm purported that we were difficult clients in their motion.  I had to inform the court that this was not true; we had fired them because they had misrepresented their services to us.  This was done through a letter to the court filed on July 30, 2014.  Our letter to the court was at that time while we were

unrepresented by counsel the only way we knew to bring the true facts relevant to our case before the court.

On July 29, 2014 the Lane Law Firm also filed a motion for a 30 day continuance to allow us time to find a new attorney.

On July 30, 2014 at 9:41:44 AM I filed a letter to the court which was my first pro-se pleadings in the related case *LVN v. Breitlings*.  I included as an exhibit a letter written by Beal victim Denise Subramaniam to the Attorney Disciplinary Commission of the Illinois Supreme Court about Charles King an attorney employed by Dovenmuehle who used caller id spoofing to phone Tennessee State Bank and who misrepresented himself as a government employee to inquire about a fed wire transaction made by Beal victim Catherine "Cathy" Gebhardt, a customer of Tennessee State Bank.

At 1:34 PM PST (3:34 PM Texas time) Denise noticed a black car at the end of her driveway.  She thought it was suspicious because she could see the man in the car writing into a notebook so she took photographs from her kitchen window.  She told me she went outside to photograph the license plate and the car took off.  Two days later Denise phoned me and asked me to call a Texas phone number.  The registered owners of a jeep parked in her driveway called her because someone left them a voice mail message asking them to phone this Texas number and answer some questions. Denise had Googled the number and discovered it was registered to Michael and Debra Dyer and Virginia Castaneda in Garland Texas.  I called and the phone was answered "Dyer Investigations." While I was making this call other Beal victims discovered Virginia Castaneda was related to Rafael Castaneda who works for Beal Service Corporation, 6000 Legacy Drive, Plano, Texas, 75024.  A branch of Beal Service Corporation is located at 10500 SW Greenburg Rd #100, Portland, OR 97223.

Over the weeks that followed this incident Denise told me her neighbor caught several individuals suspiciously observing her house. She installed surveillance equipment and became so terrified that Andy Beal was tracking her vehicle she seldom left her home. The one time she made a trip to the beach to try to relax in September the window on her vehicle was broken and her computer was stolen. She phoned me immediately after this happened to help her get her passwords changed quickly to her online financial accounts.  She sounded terrified and emotionally distraught.

Denise later discovered that David Beal who lives at 10610 SW Dogwood St, Tualatin, OR-97062, who is married to Terri Lynne Webb Beal, and who is the son of Robert Charles Beal and Josephine Lola Rogozinski Beal who are also the parents of Daniel Andrew "Andy" Beal, was most likely the man driving the suspicious car because he looked like a photograph she had found of David Beal. The day Denise's computer was stolen and she called me for help she told me that while she was walking back to the parking lot she saw a middle aged man dressed in business casual watching her on the beach and that she saw him turn back towards the parking lot moments after the last family that had been on the beach passed him. This man resembled the man driving the suspicious car and although she increased her pace because Denise is disabled she told me it was about 10 minutes before she could reach the parking lot where she discovered the broken window and stolen computer. Another car had already pulled into the parking lot as she reached her vehicle, so she was certain the man she saw watching her was the person who stole her computer.

At the time this happened several Beal victims who had been speaking with Brett Shipp about Beal's activities began to suspect Beal had bugged our phones.  Denise was the one we all called to send Brett our documents whenever he requested something because she had everything organized on her computer (the one that was stolen.) Brett had told us that Beal threatened to sue WFAA if they aired

a story about him; Beal also multiple times threatened to sue each of the Beal victims who published information online about our experiences with Beal and his sham corporations.  Denise and I were among the victims Beal threatened.

On August 3, 2014 I filed a supplement to the objection to LNV's motion for summary judgment that the Lane Law Firm had filed to explain how another Dallas District Court judge, Tonya Parker, had already denied MGC (the purported mortgage servicer for LNV) summary judgment based on MGC's claims we did not have a case.  Although this earlier case (DC-1107087 in the Dallas District Court) was not about foreclosure and we were plaintiffs our claims centered around mortgage servicing fraud and MGC's misappropriation of payments and several other issues with the way they handled the servicing of our mortgage.  These issues have a direct correlation with whether a party has legal standing to foreclose.  If LNV legitimately has a contract with us (which we do not believe) then the egregious actions of their servicer, MGC, would have breached the terms of that contract and that breach and the doctrine of unclean hands would bar them from the relief they sought through a foreclosure action.  Fraud nullifies contracts.

On July 31, 2014 we filed a motion for transfer back the 116th District Court and Judge Tonya Parker for the sake of continuity since she was familiar with the history of our claims against Beal's MGC and would better understand the issues in dispute.

On August 4, 2014 a hearing was held in the 134th Dallas District Court presided by Judge Dale B. Tillery. I invited WFAA investigative reporter Brett Shipp. Another of the Beal victims from Texas had contacted him about what has been happening to Beal victims across the country and to the handful of victims located in Texas (I think there are at least six (6) victims in our group from Texas.) Brett Shipp had expressed an interest in learning more about our group. Thank God he was there as a witness because later I discovered there had been no recording of the hearing.

Four motions were to be heard by Judge Tillery that day:

1. Our motion for 30-day continuance to find a new attorney
2. Our motion to a transfer back to the 116th District Court
3. A joint motion to postpone mediation
4. LNV's motion for summary judgment

Because our motion for a 30-day continuance to find another attorney was reasonable and for good cause; I expected that it would be granted.  Any reasonable person would have expected that because it is only fair.  But I also knew there was a good chance I'd be railroaded because Andy Beal has such a history of abuse of judicial process in other Beal victim's cases.

Tillery denied our motion for continuance and our motion to transfer causing me to represent my family's interest in our property as a pro-se litigant from that point forward.  Tillery knew or should have known this placed me in an extremely disadvantaged position and that this would violate my constitutional right to due process and equal protection of the law under the fifth and fourteenth amendments to our United States constitution.

Judge Tillery had actually scheduled mediation on August 4, 2014 in spite of a signed  joint objection to mediation because it was premature at that stage of the litigation.  Typically when a joint motion is filed between parties the order granting the motion is automatically signed by the judge.  Typically mediation is not scheduled so early into a case and is scheduled only after discovery, so Judge Tillery went against standard procedure.

At the hearing LNV's attorney Jeff Hardaway took advantage of my pro se status forced on me by Judge Tillery's decision to deny our motion for a 30-day continuance to find another attorney. He stood up and told Judge Tillery he had paid the $750 mediation fee and had come to court fully prepared to mediate the case.

I was never notified by Mr. Hardaway that he had changed his mind about mediation. He should have notified me immediately if he no longer wished to be a part of the joint objection to the mediation, and his announcement that he was prepared to mediate was nothing less than calculated entrapment to catch me off guard.

This also is indicative of collusion and conspiracy between attorney Jeff Hardaway and Judge Tillery to deny us our rights to due process and equal protection of law. Jeff Hardaway even mistook Brett Ship as the mediator, or some other person involved in their conspiracy, and took him into a side room for private discussion. It is apparent that Judge Tillery and attorney Jeff Hardaway had private discussions and knew ahead of time that in spite of the joint objection to mediation they had secretly agreed to move forward with mediation knowing that I would not be prepared to do so because of the joint objection to mediation. They apparently knew I would be pro-se; meaning they knew before the hearing that Tillery would deny our motion for continuance; and since a mediator did show up at the hearing they knew before the hearing that Tillery would ignore the joint objection to mediation (Tillery never did sign the order for that joint objection).

The August 4, 2014 hearing in Judge Tillery's court began with Jeffrey Hardaway standing up and saying, "Your honor, these people have breached their contract with us and they have not made a payment in over four years." For this record, we never had a contract with LNV. We have disputed the fabricated and forged documents LNV created to give the illusion of interest in a mortgage contract with us.

Judge Tillery said he was ruling in favor of LNV because "You, the Breitlings, failed to ANSWER the motion for summary judgment."

I was shocked because we had already been through this on July 7, 2014 when I discovered Judge Tillery had signed a default judgment order favoring LNV. I raised my hand and said, "Your honor, my previous attorneys DID answer the summary judgment, and it was timely. And I would like to give you my supplemented answer." I approached and handed the judge our supplemented answer that was filed into court record on August 3, 2014. He refused to look at it, and continued to argue with me that he did not see our answer. He had his monitor right in front of him, and I told him it was filed on July 28, 2014 and he could read it. He maintained our answer was not there, although it remains on the docket today.

I then told Judge Tillery LNV's summary judgment relied on the affidavit of Edward J. Bagdon, and he was a known robo-signer so his testimony was not reliable. I have since that hearing learned that LNV committed perjury on the court by submitting a false affidavit of a person who has a history of allowing others to sign documents using his name. He also signed numerous mortgage related documents as an executive officer of numerous financial institutions when he was in truth never employed by these financial institutions; and he signed such documents and affidavits without any true personal knowledge or understanding of what he was signing or testifying to. In order for due process and equal protection of law to have occurred I should have been given the opportunity to depose Edward J. Bagdon before the court considered his testimony by affidavit genuine.

In his final order that gives no reason for his decision or cites no case law supporting his decision, Judge Tillery simply stated that he was granting LNV the right to foreclose because our answer to the summary judgment was "insufficient." Our answer could not be "insufficient" that afternoon when he signed the order when at the hearing he insisted we had not filed an answer.

Interestingly when I noticed that someone in the Dallas County Court Clerk's office was changing the docket records for our cases I noticed that the reference to the July 7, 2014 incident where Tillery signed an order granting LNV a default judgment and I challenged that order causing it to be corrected had been changed. See my attached Exhibit A, a photograph I took of the docket the way it appeared shortly after the correction was made. Because the Beal parties and their attorneys attempt to "fix" their fraud after we point it out I've also included photographs of the docket taken on June 3, 2015 to show how the docket has been changed.

I don't know what possessed me to take that photograph, but the Beal victims feel God brought us together for a purpose, and all I can say now is that whatever motivated me to take that photograph must have been Divinely inspired.

These records could not be changed by someone outside the court so these changes are further evidence of collusion and a conspiracy to defraud between Judge Tillery and the Beal parties and their attorneys. The court clerks would have no personal motive to change these records; if they made the changes then they must have been instructed to do so by someone else who has a motive. Judge Tillery would have a motive.

Attached as my Exhibit B is information about Judge Dale Tillery that at gives the appearance that he accepts bribes (This was also attached as an exhibit to my motions to refuse Tillery and my motions to vacate his void judgment because he deprived me of my constitutional rights to due process and equal protection of law in Case No. DC-14-04053, *LNV v Breitlings*.) Quoting from page one of this exhibit about Judge Tillery, "He gives good rulings only to attorneys that have given money and lunches and taken him put for drinks." This is bribery. If I found this online then most certainly Beal did and knew Tillery could be bribed. Tillery's ethics and integrity has been questioned numerous times by his peers. This is not the kind of Judge that instills public confidence in the impartiality and fairness of our judiciary.

On August 29, 2014 we filed our own independent lawsuit against LNV, MGC, Dovenmuehle, Codilis & Stawiarski and Judge Dale Tillery. Texas Rules of Civil Procedure 736.11 is supposed to provide an automatic stay (it mirrors bankrupty) and although the Beal entities were notified of our lawsuit and the automatic stay under 736.11, LNV and its agents sold our home to LNV anyway on September 2, 2014.

The Beal entities have come up with various and different reasons for why the automatic stay under 736.11 doesn't apply to our case, but every attorney I've spoken with since has told me that an independent lawsuit has always stopped a foreclosure sale. It appears that our case is the only case where 736.11 for some reason didn't apply.

It is unconstitutional to arbitrarily deny us protection under this law. The Beal entities know they violated the law. They did so because Andy Beal has a personal vendetta against us because I dared to hand-deliver a cease and desist letter to Beal's debt collector Dovenmuehle on April 10, 2014. And because we have reached out to other Beal victims and are now part of a larger group of victims who are reporting Beal's crimes to authorities and letting the public know what Beal is doing.

LNV appears to be a debt collector. Beal claims it is a bank, but it is not.  LNV has no employees. It fits the definition of a "shell corporation" which is a company that serves as a vehicle for business transactions without itself having any significant assets or operations; shell corporations are often used as vehicles for tax avoidance. I looked up LNV on the Nevada Secretary of State website.  LNV is incorporated in Nevada and its stated capital worth is only $100.  It is incorporated as having ten thousand (10,000) shares each worth one (1) penny.  The reason I asked for judicial notice of the *Southgate* and *Bemont* cases involving Beal is because judges in the U.S. District and Appeal Courts here determined Bemont and Southgate (created as shell corporations by Beal) were "sham" tax shelters; and this is evidence of a pattern of corrupt business activity by Beal and it creates doubt about the credibility of Beal and his corrupt business organization.  (See my attached <u>Exhibit C</u> – note this was also filed as an exhibit to a motion for injunctive relief in Barbara Lynn's court on January 23, 2015 – and as an exhibit to our motions to recuse Tillery in the Dallas District Court.)

The Beal attorneys have stated in their pleadings that we keep changing our claims; this happens because they keep committing more fraud to cover-up or "fix" the fraud we point out in our pleadings.  If they stop this pattern our new claims will stop too.

On September 16, 2014 LNV removed our state (case DC-1409604) to federal court.

On October 29, 2014 Magistrate Judge David Horan in the related case *3:14-cv-03322-M-BN* filed his <u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE</u> recommending remand back to the state court.

On New Year's Eve 2014 while the above referenced case was in stay pending remand we received by certified mail a three day notice to vacate.  This was sent by the law firm of Buckley Madole.

On January 13, 2014, attorneys Luke Madole and Sammy Hooda sued to evict us from our home, despite of the fact that our lawsuit over title was still pending in a higher court.  Locke Lord notified the federal court (Judge Barbara Lynn) that we were being sued for eviction and that they (the federal court) could do nothing about it because they did not have jurisdiction over eviction.

I filed a request for a jury trial in the J.P. court of Judge Gerry Cooper and it was set for hearing on January 26, 2015.   I called and asked about procedure, if I could file documents, and the clerks of this court told me on several occasions "NO".  They instructed me to bring all of my evidence with me to the trial, and I would be allowed to give it to the judge and the jury at the time of trial; so believing what I was told I followed the clerks' instructions.

On January 26, 2015 my daughter Anne Breitling and I arrived at the courthouse with copies of all our evidence of the existing open case in the Dallas District Court removed by LNV and its agents and attorneys to the Federal Court (*3:14-cv-03322-M-BN*).  I did my best to find an attorney to represent us at this hearing but most of the attorneys I spoke with told me because of the complexity of our case and because we were fighting against Andy Beal who had a reputation of running up litigation costs to defeat his opponents they would need a retainer of at least $10,000.  We have no way to come up with that much money.  Several attorneys I spoke with agree that Beal violated Texas Rules of Civil Procedure 736.11 when he sold our house and they told me that Texas Government Code Section 37.031 limited the jurisdiction of J.P. courts to possession and reserved jurisdiction over title issues to district courts.  We had an open case in the District Court removed by LNV and its agents to federal court over title, so I went to court armed with all the evidence and case law to support my argument that the J.P. Court lacked jurisdiction to evict us under our circumstances.

At the beginning of the hearing I overheard LNV's counsel, Luke Madole, very quietly remind Judge Copper of the "motion in limine."  I immediately asked, "What motion in limine? I've never heard of this."

Both Luke Madole and Judge Copper ignored my question.  Throughout the trial Luke Madole objected to every single thing I tried to say or show to the jury.  In the end I was not permitted to tell the jury about the truth of our case or present any of the evidence, statutes or case law supporting my arguments that I brought with me.  LNV had filed a notarized validation of the eviction signed by Bret Maloney. Bret Maloney has filed affidavits in numerous court cases with "Beal victims" and he has provided testimony through depositions.  A comparison of this collective body of testimony given by Bret Maloney impeaches him as a credible witness.  I moved to strike this validation by Bret Maloney.  Before I could say another word Judge Cooper and Luke Madole rushed me into judge's chambers where, in spite of the evidence I had which the Judge never looked at and that would impeach the creditability of Bret Maloney as a witness because he had lied under oath on numerous occasions.  Judge Cooper told me he didn't care what Bret Maloney did in other cases because "today is only about possession."

On or around January 28, 2015 I received my copy the "motion in limine" secretly discussed by Luke Madole and Judge Copper at the beginning of the January 26, 2015 eviction hearing.

There can be no doubt about the nature of the secret communications between LNV's attorney Luke Madole and Judge Copper; they intentionally conspired to deprive me of my constitutional rights to due process and equal protection of the law and to thereby deprive me and my family of our rightful property.  I asked them about the "motion in limine" that I overheard them discuss privately, they should have told me about it then if they were not committed to such a conspiracy; the fact that they did not tell me about it proves unconstitutional and criminal intent.

Due to Andy Beal's pattern of coercion, undue influence, bribery, falsification of evidence and tampering with evidence that we and the other Beal victims have observed we have decided to preserve the remainder of my own testimony and the testimony of other witnesses to this hearing for the FBI and U.S. Attorney General to support a criminal investigation.  Based on the evidence that we, the Beal victims, collectively have amassed through our ordeal we have endured for so many years this is no longer just about saving our own homes; it is about justice and convicting Andy Beal for the crimes he is committing against the United States and against American property owners. We do not want Beal and his coragents to harm anyone else the way he has harmed us.

I immediately appealed Judge Cooper's eviction order granted to LNV in his J.P. Court.  (See related Case No. *CC-15-00911-C*.)  The clerk told me that the appeal in the County Court at Law would be like a "whole new day".

On February 18, 2015 I hired attorney J.D. Milks who I'd been speaking with on and off for several months about my case.  After my experiences in Judge Tillery's and Judge Copper's courts I was terrified to attend the Appeal hearing on the eviction without representation.  That hearing was of most urgency to us, and Mr. Milks was certain that Andy Beal had indeed violated Texas Rules of Civil Procedure 736.11 when he sold our property.

On February 20, 2015 Mr. Milks non-suited Judge Tillery.  He told me that no judge would ever rule in our favor against another judge.  I expressed my concern that once he non-suited Tillery LNV and the remaining defendants could remove to federal court again.  He told me he would immediately amend our complaint to drop all federal claims and make our case purely about wrongful

foreclosure, a state matter, so there would be no way they could do this.  He told me he would have the illegal sale of our property set aside and this would vacate the eviction judgment that followed it. He asked me to pay for my appeal of the eviction case and he would enroll to represent us there.  We relied on this as being true.

On February 20, 2015 I paid the Appeal Fee as I agreed to do with Mr. Milks.

On February 23, 2015 a hearing was already scheduled on our motion to set aside the illegal sale of our .property. Mr. Milks canceled that hearing. He told me, "Texas is a no notice state" and that he could call the Defendants on the way to the court house where he could go alone before the judge and have the sale set aside as a matter of law.  We relied on this as being true.

Other than non-suiting Judge Tillery Mr. Milks failed to do any of the things he told me he would do for us.

On March 3, 2015 Defendants removed our complaint once again to federal court were they immediately filed a motion to dismiss consistent with a pattern of abuse of process promoted by Locke Lord. (See my Exhibit A attached to Doc. 52 in *Case No. 3:14-cv-03322-M* a Locke Lord how-to-manual for dealing with the "Predatory" Pro-Se litigant.)

Mr. Milks failed to enroll in the appeal of our eviction case. (*Case # CC-15-00911-C*) in the Dallas County Court of Law.  On two occasions when I pointed this out to Mr. Milks he told me he had.

On or around April 13, 2015 I discovered that Mr. Milks STILL had not enrolled in *Case # CC-15-00911-C*.  I also discovered that Mr. Milks filed joint motions with LNV's attorney to extend LNV's filing deadlines without our knowledge or consent.  This action helped LNV, but harmed us because it caused our deadline to object to LNV's motion to dismiss to come before LNV's deadline to respond to our motion to remand; and to correspond with our eviction appeal hearing in the county court.

On April 19, 2015 I fired Mr. Milks because of the harm his actions and inactions caused us; and because he had lied to us.

On April 24, at 8:40 AM, Jackie McDaniel, someone I do not know phoned me.  She told me Mr. Milks asked her to call me and he told her about my case.  She tried to convince me not to fire Mr. Milks.  In talking with a stranger about our case Mr. Milks breached our attorney client privilege. The level of impropriety displayed by officers of the court involved in our case is bewildering.

This horrific turn of events left us in an extremely vulnerable position; the attorney we had hired to help us had instead caused us immeasurable harm; and this appears to have been intentional.  I filed an ex-parte motion to have the case abated until my question of title could be adjudicated in a higher court.  My motion included four exhibits of evidence showing why the case should be abated and why/how LNV had illegally foreclosed on our property in the first place.  The clerk, Danny, told me over the phone that if I brought my motion to the court on May 4th, Judge Montgomery would hear my motion on that date.

On May 4, 2015 I did as instructed.  I sat in the courtroom until Judge Sally Montgomery asked if there was anyone not on the docket for that day.  I raised my hand and she told me to approach.  I did.  I explained to her that I had a trial set for May 8th, but if I waited until that date, ten men would appear and wave a piece of paper in the air and tell her they owned my home, and I told her that this was not true.  She said "Don't worry, you're cool."  I was taken aback by her choice of words.  She told me to go home and come back on Friday, and repeated "You're cool."

On May 8, 2015 attorney Wade Kricken enrolled to represent us at for the eviction appeal hearing. He agreed to represent us just for this hearing because it was all we could afford.

Mr. Kricken had been in Judge Montgomery's court on several occasions and he told me he thought she was a fair judge. The result of that hearing shocked Mr. Kricken as it was yet another instance of intentional violation of our constitutional rights to due process and equal protection of the law by Beal attorneys. I attached a copy of the transcript from this hearing to our <u>NOTICE OF CONSTITUTIONAL QUESTIONS</u> because it is apparent attorney Luke Madole had improperly influenced Judge Montgomery into making a decision she appeared uncomfortable about making; and which Mr. Kricken knows is not in keeping with her typical approach on the bench. The remainder of my own testimony and the testimony of other witnesses specific to this hearing are being preserved for the FBI and U.S. Attorney General to support a criminal investigation into Beal's activities.

I, JoAnn Breitling do swear under God and my country and under penalty of perjury and under the laws of Texas and the United States that my testimony herein is true and accurate.


_____

JoAnn Breitling

214-674-6572


---

State of Texas

County of DALLAS _____


SWORN to and SUBSCRIBED before me, the undersigned authority, on the 11th day of ~~May,~~ June

2015, by JO ANN BREITLING _____

KATRINA RENEE WIECK
Notary Public, State of Texas
My Commission Expires
May 16, 2017

_____

Notary Public, State of Texas

---

JoAnn Breitling Affidavit Exhibit A - page 1

The photograph above was taken in August 2014 – Notice the entry on 07/29/14 labeled
"**NOTE – ADMINISTRATOR** O/WITH/ORDER/JUDGMENT IN REM OF 7/7/14"

The photograph below was taken on June 10, 2015 – Notice that the 07/29/14 entry noticed
above is no longer on the docket.  Someone removed it.  The removed docket entry showed that
Judge Tillery had ordered a default "in rem" judgment on 7/7/14 and it was withdrawn.

JoAnn Breitling Affidavit Exhibit A - page 2

This photograph was taken on or around June 08, 2015.  Notice the 08/04/2014 entry labeled: "CANCELED **Motion – Summary Judgment** (8:00 AM) (Judicial Officer TILERY, DALE)

This hearing was not canceled.  It is the hearing at the crux of the Breitlings complaint. Why does the docket now reflect that this hearing never happened????

| | |
|---|---|
| | Vol./Book 434G, Page 370,  1 pages |
| 07/31/2014 | MOTION - TRANSFER - NO CHANGE OF VENUE |
| 07/31/2014 | NOTE - ADMINISTRATOR |
| | RETURNED MAIL: email to Plf's atty, update address |
| 08/01/2014 | CERTIFICATE OF CONFERENCE |
| | RE: MOTION TRANSFER |
| 08/03/2014 | NO EVIDENCE MOTION FOR SUMMARY JUDGMENT |
| | BREITLING-DEFENDANT'S SUPPLEMENT OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMEI |
| 08/04/2014 | CANCELED   Motion - Summary Judgment  (8:00 AM) (Judicial Officer TILLERY, DALE) |
| | CASE CLOSED |
| 08/08/2014 | CORRESPONDENCE - LETTER TO FILE |
| | JOANNE BREITLING |
| 08/18/2014 | MOTION - VACATE |
| | DEFENDANT'S MOTION TO VACATE VOID ORDER FOR SUMMARY JUDGMENT FAVORING LNV |
| 08/18/2014 | MOTION - MISCELLANOUS |
| | MOTION FOR JUDICIAL NOTICE OF SECRETARY OF STATE RECORDS SHOWING CORPORATE ADDR |
| | MORTGAGE AND THEIR CORPORATE OFFICERS |
| 08/18/2014 | MOTION - RECUSE |
| | DEFENDANT'S MOTION TO RECUSE AND TO DISQUALIFY JUDGE DALE TILLERY |
| 08/18/2014 | MOTION - MISCELLANOUS |
| | BREITLING'S MOTION FOR JUDICIAL DETERMINATION OF FACT THAT BEAL |
| | IT APPEAR A WIFE SIGNED IT WHEN SHE HAD NOT |
| 08/18/2014 | MOTION - MISCELLANOUS |
| | MOTION FOR JUDICIAL NOTICE OF INFORMATION AND CRIMINAL INDICTMENT AND PLEA AGREEMEI |
| 08/18/2014 | MOTION - MISCELLANOUS |
| | BREITLING'S MOTION FOR JUDICIAL NOTICE OF TEH SOUTHGATE AND BEMONT CASES |
| 08/21/2014 | NOTE - ADMINISTRATOR |
| | O/REFERRAL ON MOTION TO RECUSE - signed and fax to 1st Adm Regional Judge |
| 08/21/2014 | ORDER - DENY |
| | OF REFERRAL ON MOTION TO RECUSE |
| | Vol./Book 434G, Page 712,  1 pages |
| 08/27/2014 | MOTION - RECUSE |
| | DEFENDANT'S AMENDED |
| 08/28/2014 | NOTE - ADMINISTRATOR |

JoAnn Breitling Affidavit Exhibit A - page 3

The screen print below is the changed docket on the Breitlings' earlier case DC-10-02189 where they were represented by attorney Emil Lippe.  This docket was changed in April 2015 to incorrectly show attorney Patricia McCartney as the Breitlings' attorney.



The screen print below is the changed docket on the Breitlings' earlier case DC-11-07087 where they were represented by attorney Patricia McCartney.  This docket was changed in April 2015 to incorrectly show attorney the Breitlings' as pro-se litigants. Was this done so that LNV (Beal) can claim they were "predatory" borrowers to match up with the Locke Lord how-to manual for dealing with "predatory" pro-se litigants?



JoAnn Breitling Affidavit Exhibit B - page 1

http://www.gavelbangers.com/judges/texas/trial-level/tillery/dale

## Hon. Dale B. Tillery



Overall:

Temperament:

Preparedness:

Knowledge:

Writing:

**Court info**

State: Texas

Level: Trial level

Court: District Court, 134th District Court, Dallas County

Title: Judge

**Contact info**

600 Commerce, Ste 650, Dallas, TX 75202-4606

(214) 653-6995

fly@dallascourts.org

# Ratings

*#1 clerk or other courthouse employee*

**Sunday, June 2, 2013 - 02:45**

He is arrogant and yells and is never present for work. He needs to be voted out. He gives good rulings only to attorneys that have given money and lunches and taken him put for drinks. This is one man who forgot who he works for, that is us the people. Help get him removed. Vote against him in the primary and vote for, the democrats running against him.

http://pushjunction.com/press_releases/district-judge-dale-tillery-is-investigated-for-six-broad-categories-of-election-law-violation

# DISTRICT JUDGE DALE TILLERY IS INVESTIGATED FOR SIX BROAD CATEGORIES OF ELECTION LAW VIOLATION

Texas Ethics Advisory Board
HUNTSVILLE, TX, 7 Jul 2012

In an official response to a Sworn Complaint, the Texas Ethics Commission (TEC) has notified 134th District Court Judge Dale Tillery (D-Garland, TX) he is being investigated for multiple campaign finance violations. (See the attached TEC investigation letter and sworn complaint.)

The Sworn Complaint alleges Tillery, over the past two years "accepted a labor union contribution, made unlawful contributions to a candidate/officeholder and political committees, converted campaign funds to personal use, failed to fully disclose contributors' principal occupations, job titles, and employers/law firms, failed to fully disclose the sources of political contributions, failed to fully disclose the recipients and purposes of political expenditures, and filed several otherwise incomplete reports, with contribution and loan balances indicating undisclosed campaign contributions and/or expenditures."

The complaint also notes Tillery shows a serious contribution balance discrepancy of $13,064.33.

Mr. Alvin Schleiske, a well-known Woodlands TEA party supporter, filed the complaint after noticing Judge Tillery's alleged campaign finance violations.

Texas Election Code provides that if Tillery received a contribution from a labor union, that is a third degree felony offense. He is also subject to a civil penalty of up to three times the contribution amount for making illegal contributions out of his campaign funds. If Tillery converted political contributions to personal use, he would be civilly liable to the State for the converted amount plus reasonable court costs.

Because of their serious nature, the TEC will process the allegations against Tillery as Category 2 violations. He must formally respond to the TEC by July 19, or face a separate violation and civil penalty. Officeholders with more serious allegations are allowed more time to respond to the TEC.

Tillery signed his campaign finance reports under the penalty of perjury, and bears the responsibility for checking the report accuracy and fully disclosing the information required by state law.

Making a false, material, perjurious statement during or in connection with an official Texas Ethics Commission proceeding constitutes aggravated perjury, a felony of the third degree.

Mr. Schleiske sent the Sworn Complaint to the Texas Ethics Advisory Board (TEAB) for further review. In a statement to the TEAB about the Tillery complaint, Mr. Schleiske wrote, "Judge Tillery has flagrantly broken the law he is bound by the Texas Constitution to uphold. He is a judge. I find it astonishing he would be so 'in your face' with his antics……and where did that $13,000 go?" The Texas Ethics Advisory Board is a peer reviewer and consultant regarding Campaign Finance Reports.

Schleiske and the TEAB are members of a large group of citizen-taxpayers in suburban Houston and surrounding counties who conduct statewide audits of progressive candidates, officeholders and political action committees who have long been contributing to the runaway growth of government and the loss of constitutional authority.

JoAnn Breitling Affidavit Exhibit B - page 3

http://www.dallasnews.com/news/community-news/dallas/headlines/20110914-dallas-county-judges-desire-to-use-civilian-bailiff-prompts-concerns-from-other-judges.ece

## Dallas County judge's desire to use civilian bailiff prompts concerns from other judges

Home > News > Community News > Dallas > Dallas Headlines

## Dallas County judge's desire to use civilian bailiff prompts concerns from other judges

**By KEVIN KRAUSE**
Staff Writer
kkrause@dallasnews.com
Published: 14 September 2011 10:10 PM   -   Updated: 14 September 2011 10:33 PM
A Dallas County family court judge's decision to use a civilian bailiff instead of a sheriff's deputy has led to a heated debate about the balance between government efficiencies and courtroom safety.

Judge Lynn Cherry, of the 301st Family District Court, is asking county commissioners to allow for a full-time civil court clerk to be the bailiff in her court instead of the part-time sheriff's deputy she uses.

The other courts are staffed with sheriff's bailiffs, who are sworn peace officers.

Cherry said her clerk is a retired Highland Park police officer and reserve police officer with extensive law enforcement and military experience. He is also her current bailiff but will resign from the Sheriff's Department to become a civilian clerk, she said.

Cherry wants him to be allowed to continue carrying a firearm in court. But county officials say the district attorney's office will have to look into that since only county law enforcement officers are authorized to carry firearms inside county courthouses.

The proposed change, which is scheduled for a vote next week, will save the county $11,575 per year, the county budget office said. Entry-level deputy bailiffs are paid $58,439 annually while civilians are paid $46,864, county officials said.

But Cherry said the real benefit will be in having the same bailiff in her court at all times. That hasn't happened, she said, since Sheriff Lupe Valdez replaced full-time bailiffs in the George Allen civil courthouse with part-timers in January to try to save money and improve efficiency. Since the change, part-time bailiffs often have had to be replaced in the middle of court proceedings, creating disruptions, Cherry said.

Cherry said her bailiff sometimes has to be replaced in the middle of a trial because he can't work more than 38 hours a week.

She said she wants a bailiff whom she knows and understands. She called the current system "very problematic and unsafe."

County Budget Director Ryan Brown said Tuesday that no one is asking the rest of the judges to use civilian bailiffs. "It's the judges' choice," he said.

But Judge Denise Garcia, of the 303rd Family District Court, told commissioners recently that Cherry did not inform the other family court judges of her proposal and that they oppose it.

JoAnn Breitling Affidavit Exhibit B - page 4

Once aggressors get into the area behind a courtroom, they can gain access to the other courts, Garcia said. "We're all tied together," she said.

Garcia told commissioners that a civilian bailiff cannot make arrests or process prisoners. She said that family courts hear many volatile cases and that reducing security in one court "renders all of us unsafe." She also questioned the estimated savings from the move.

Commissioner John Wiley Price praised Cherry for her decision. Price has supported the idea of civilian bailiffs since the beginning of the year.

"She wants an opportunity to try. Let her try," Price said recently.

In January, Dale Tillery, the new judge of the 134th Civil District Court, offered to use a civilian bailiff in a pilot program to save about $21,000 a year.

A group of judges told commissioners at the time that they opposed the change, saying "citizen safety is paramount" in the courts.

The judges are still expressing opposition to civilian bailiffs.

Judge Martin Lowy, a civil court judge, told commissioners during a recent meeting that Cherry has the right to run her court as she sees fit but that court bailiffs should operate as a team. He said he hasn't been shown that Tillery's new bailiff is saving money.

"We don't want to go in this direction, and we don't think it's saving money," said Lowy, the local administrative judge who speaks for all the judges and handles administrative duties such as implementing rules.

County Judge Clay Jenkins said it's important that the judges "come together" and communicate about the matter even if they do not agree. He urged them to go to lunch together to work it out.

Commissioner Elba Garcia said she supports the move.

Sheriff Lupe Valdez has also voiced some concern about Cherry's decision. Valdez has told commissioners that civilians don't have direct communication with her department and that she can't respond as quickly to courtroom incidents.

Valdez said last week she wouldn't try to block Cherry's move as long as the judge agreed to sign a liability waiver. Cherry and the sheriff have already signed an agreement, county officials say.



| File | Edit | View | History | Bookmarks | Tools | Help |

www.texastribune.org/library/data/campaign-finance/filer

Google

Most Visited | Getting Started | Latest Headlines | Customize Links | Free Hotmail | Windows Marketplace | Windows Media | Windows

| Sept. 3, 2013 | Helen Roberts | $0 | campaign services |
| Aug. 30, 2013 | North Dallas Texas Democratic Women | $10 | campaign ads |
| Aug. 30, 2013 | Walter Brown | $0 | campaign services |
| Aug. 30, 2013 | Lake Highland/White Rock Democrats | $50 | campaign ad |
| Aug. 30, 2013 | Barbara Steele | $0 | General Election Consulting |
| Aug. 20, 2013 | Stonewall Democrats of Dallas | $20 | Dues and Registration expense |
| Aug. 13, 2013 | Tony Grimes Photography | $75 | Campaign Photographer |
| Aug. 13, 2013 | Far North Dallas Richardson Democrats | $25 | Red Hot Patriot 9/11 event |
| Aug. 8, 2013 | Dallas County Democratic Party | $0 | Table at Labor Day Picnic |
| Aug. 7, 2013 | Sandy Paul | $0 | campaign services |
| July 29, 2013 | USImprints | $330 | Campaign mugs, pens, and pencils |

**More Expenditures**

## SUMMARIES

| Date | Total Contributions | Total Expenditures | Cash On Hand | Office Sought |
|---|---|---|---|---|
| Jan. 15, 2014 | $15,800 | $19,900 | $105,323 | District Judge |
| July 15, 2013 | $119,013 | $18,963 | $101,826 | |
| Jan. 15, 2013 | $0 | $1,689 | $11,017 | |
| July 16, 2012 | $0 | $3,262 | $12,707 | |
| Jan. 17, 2012 | $0 | $7,073 | $14,793 | |
| July 15, 2011 | $28,317 | $8,862 | $21,866 | |
| Jan. 18, 2011 | $74,560 | $89,334 | $4,258 | District Judge |
| Oct. 25, 2010 | $8,075 | $18,035 | $4,031 | District Judge |
| Oct. 4, 2010 | $27,660 | $13,228 | $14,116 | District Judge |
| July 15, 2010 | $6,950 | $7,964 | $344 | District Judge |
| April 5, 2010 | $13,050 | $24,871 | $2,278 | District Judge |
| Feb. 22, 2010 | $4,571 | $31,177 | $1,074 | District Judge |
| Feb. 1, 2010 | $12,120 | $4,621 | $11,814 | District Judge |
| Jan. 15, 2010 | $13,320 | $21,166 | $3,816 | District Judge |
| July 15, 2009 | $0 | $0 | $0 | District Judge |

Source: Texas Ethics Commission | Contains data up to October 18, 2012 | Download the data: Access Database or Text Files | Feedback
Twitter.

JoAnn Breitling Affidavit Exhibit C

