## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SAMUEL G. BREITLING AND** | § | |
| **JO ANN BREITLING,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **NO. 3:15-CV-00703** |
| | § | |
| **LNV CORPORATION, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## NOTICE OF DIRECTLY RELATED CASES

Pursuant to Federal Rule 40.2(a)(1) Plaintiffs file this Notice of Directly Related Cases, and

respectively shows the court as follows:

This present case is directly related to the following cases which all originate from the same or

similar transactions and involve the same opposing party.  These directly related cases are:

1. 2010 & 2013 – Rhonda L. Hardwick: *LNV as assignee of MERS Inc. as nominee for First Capital Finaicial Services Corp. DBA Full Compass Lending v. Hardwick, Case No. 51C01-1204-MF-00098;* State of Indiana County of Martin in the Martin Circuit Court

2. June 2, 2011 – Christopher and Marcia Swift: *In the United States Bankruptcy Court for the Northern District of Illinios, Eastern Division; Case No. 12-35690 (LNV Corp v Swifts 2011-ch-00206; Circuit Court of 16th Judical Kane Counnty Illinios  LNV Corp v Swifts*

3. 2011 - Tuli Molina Wohl: *LNV Corporation v. Tuli Molina Wohl, Case No. 1 CA-CV 11-0603*, In the Court of Appeals, State of Arizona Division One

4. September 5, 2012 - Catherine Gebhardt: *LNV Corporation v. Gebhardt, Case No. 3:12-CV-468-TAV-HBG*, U.S. District Court Eastern District of Tennessee at Knoxville.

5. September 2012 - Denise Subramaniam: *LNV v. Subramaniam, Case No. 3:14-CV-01836-MO* and *Subramaniam v. Beal et al, Case No: 3:12-cv-01681-MO*, and LNV v. Subramaniam, Case No. 3:14-cv-01836 both in the U.S. District Court District of Oregon, Portland Division

6.  2013 – Robynne A. Fauley: *Fauley v. Washington Mutual et al (LNV), Case No. 3:13-cv-00581-AC*, U.S. District Court District of Oregon, Portland Division; and *LNV v. Fauley; Case No. CV15040532;* Clackamas County

Each of these six (6) aforementioned cases arise from the same financial transaction between either MERS and/or a GMAC related entity and LNV Corporation, in all these cases LNV produced and submitted to a court as genuine an allonge to the note purportedly endorsed by Jason J. Vecchio a GMAC-RFC employee.  In each of these cases LNV produced and submitted to a court as genuine an assignment of deed of trust purporting to convey beneficial interest to LNV; and of these assignments of deed of trust are purportedly signed by GMAC-RFC employees Michael Mead or Betty Wright and notarized by GMAC-RFC employee Diane Meistad; and each was executed on March 10, 2008; seven days prior to the incorporation of LNV in Nevada.  March 10, 2008 coincides with the date that commenced the demise of Bear Stearns.

Defendant Denise Subramaniam (*LNV v. Subramaniam*) spoke on the phone with Diane Meistad who confirmed these assignments of deed of trust were all produced as part of a single financial transaction with LNV in 2008 that included numerous loan packages.  She also confirmed she was an employee of GMAC's Residential Funding Company, LLC fka Residential Funding Corp. ("GMAC-RFC") and that Michael Mead and Betty Wright were also employees of GMAC-RFC and that they signed documents related to this very large transaction for many weeks.

The Jason J. Vecchio signatures on the allonges in each of these cases are identical. A preliminary examination of four of these Jason J. Vecchio signatures and a report by OMNI Document Examinations dated December 4, 2014 has determined that the signatures of Jason J.

Vecchio "submitted as genuine… were stamped signatures or photocopied signatures."  In order to definitively determine whether one of the signatures are genuine or if all are copies then the original notes and allonges must be produced for examination.

Furthermore, LNV through their attorneys at Anselmo Lindberg Oliver LLC fka Freedman Anselmo Lindberg LLC, showed Marcia and Chris Swift what LNV alleged was their "original" note.  Defendant went with Robynne A. Fauley to the law offices of RCO Legal in Portland to examine what LNV alleged was her "original" note.  Viewings of these two alleged "original" notes revealed similar characteristics that identify them as forgeries.

The Breitlings, like the other Beal victims named above, have experienced numerous instances of mortgage servicing fraud from LNV's alleged mortgage servicer, MGC Mortgage Inc. ("MGC").  Both LNV and MGC are privately owned and operated by Daniel Andrew "Andy" Beal.  The parties named herein opposing Beal's LNV in all these related cases are victims of multiple instances of crimes that constitute a pattern of criminal activity perpetrated on them by D. Andrew Beal and his corrupt business organization and his agents and attorneys that include but are not limited to: financial fraud, forgery, unlawful debt collection, theft of property, conspiracy to commit fraud, abuse of judicial process, fraud upon the court, improper influence, coercion, intimidation, tampering with evidence, and many more acts of bad faith and criminal intent extending over many years for purposes of the personal financial gain of Mr. Beal and to the detriment of his victims.

In _LNV v. Breitlings; Case No. DC-14-04053_ LNV named GMAC as a defendant. This is indicative that LNV (i.e. Mr. Beal) had reason to believe GMAC may have a claim of beneficial interest in the Breitlings' note and deed of trust.  Wilshire was the last mortgage servicer the

Breitlings made payments to prior to Beal's MGC.  Attached to this Notice as <u>Exhibit A</u> is a copy of a limited power of attorney executed by Residential Funding Real Estate Holdings LLC as "Owner" appointing as attorney-in-fact Wilshire Credit Corporation authorizing Wilshire to execute certain documents and transactions for Residential Funding Real Estate Holdings LLC which is endorsed with signatures of GMAC-RFC employees Jason J. Vecchio, Betty Wright, Barbara Zahn and Steven Hanson and notarized by Mary E. Lueth.  This indicates the transaction through which LNV acquired the purported assignment of the Breitlings' deed of trust and the purported conveyance of their note may have been within one of the packages included in the very large deal that Diane Meistad told Defendant about in their phone conversation. Both Plaintiff and Beal victim Denise Subramaniam originally financed their property with Norwest. Those mortgages were paid in full but Norwest failed to file a satisfaction of mortgage in both these cases.  LNV included as an exhibit to their complaint in <u>*LNV v. Breitlings; Case No. DC-14-04053*</u> documents showing that GMAC purchased Norwest.

Additionally LNV showed to WFAA investigative reporter Brett Shipp what Beal alleged to be the Breitlings' "original" note which contained characteristics that identify it as a forgery similar to those characteristics identifying the aforementioned alleged Swift and Fauley "original" notes as forgeries.  (Interestingly, Beal refused to allow the Breitlings to view their purported "original" note.)

The parties opposing Beal's LNV in all these related cases are self-represented (not by choice) but because another pattern of criminal activity perpetrated on them by D. Andrew Beal appears to be influencing their attorneys to sabotage their cases in favor of LNV.  This appears to have happened in the Gebhardt case, in the Breitling case, and now recently in the Swift case.  In other

cases the Beal victims once had attorneys but the continued onslaught of litigation by Beal entities has financially drained them and they can no longer afford to hire an attorney.

Cases directly related to the present case are not limited to the ones noticed herein; amendments to this Notices of Related Cases or additional Notices of Related Cases will be submitted as appropriate.

Pursuant to RCFC 42.1 and 18 U.S. Code § 3663A the parties opposing Beal's LNV in these related cases motion the courts presiding over these related cases for consolidation of these related cases for the limited purposes of compelling Beal and his LNV to produce the alleged "original" Swift, Fauley and Breitling notes already shown to the Swifts, to Robynne A. Fauley and Denise Subramaniam, and to Brett Shipp, (and which all possess characteristics that identify them as forgeries), in addition to the original notes for Tuli Molina Wohl, Rhonda L. Hardwick, Catherine Gebhardt and Denise Subramaniam; and to turn these alleged "original" notes over to the custody of the United States Bankruptcy Court For the Northern District of Illinois Eastern Division and into the custody and care of Judge Donald R. Cassling and/or the United States Attorney General, Lorretta Lynch, via the office at the Northern District of Illinois, Eastern Division, 219 S. Dearborn St., 5th Floor, Chicago, IL 60604 for the purposes of forensic evaluation for authenticity by OMNI Document Examinations and Robin D. Williams at 205 W. Wacker Drive, Suite 922, Chicago, IL 60606 and for purposes of further examination by the United States as appropriate; and for purposes of deposing Robin D. Williams after examination of these notes is complete so that his expert testimony as well as his report can be submitted as expert testimony in each of the related cases.

In addition to these notes the parties opposing Beal's LNV in these related cases seek examination of all documents relative to the transaction(s) and contracts) between GMAC-RFC and/or other parties and LNV that gives rise to LNV's claim of conveyance and/or assignment(s) of the aforementioned notes and deeds of trust; all documents and contracts specific to the business relationship(s) between LNV and MGC; between LNV and/or MGC and Dovenmuehle Mortgage Inc.; and between LNV and/or MGC and any and all Lender Processing Services ("LPS") aka Black Knight Financial Services affiliated entities; as well as an examination of the LPS Desktop Database referred to in the Bret Maloney deposition in the Swift case by an expert database examiner and/or the FBI.

18 U.S. Code § 3663A(a) states:

> "Whenever the Attorney General has reason to believe that any person or enterprise may be in possession, custody, or control of any documentary materials relevant to a racketeering investigation, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination."

Several of the parties opposing Beal's LNV in these related cases have filed Notices of Constitutional Questions and collectively beseech the United States Attorney General to issue such a civil investigative demand to Daniel Andrew Beal ("Beal") requiring him to produce the aforementioned materials for examination.  The parties opposing Beal's LNV in these related cases have consistently claimed that they are individually and collectively victims of the crimes of convicted felon Lorraine Brown and victims of a corrupt organization operated by Beal and by his "racketeering activity" as defined by 18 U.S. Code § 1961(1)(B) which states:

> "...'racketeering activity' means any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery),... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating

to financial institution fraud),… <u>section 1512</u> (relating to tampering with a witness, victim, or an informant), <u>section 1513</u> (relating to retaliating against a witness, victim, or an informant),… <u>section 1957</u> (relating to engaging in monetary transactions in property derived from specified unlawful activity),…"

From the U.S. Attorneys' Criminal Resource Manual section 2173. Jury Instruction -- Criminally

Derived Property - 18 U.S.C. 1957(f)(2):

"The term 'criminally derived property' means any property constituting or derived from, proceeds obtained from a criminal offense… This term only requires that the property be derived from a criminal offense. There is no definition of criminal offense. Thus, there is no obligation that the property be derived from felonious conduct in violation of state, federal or foreign law… Thus, the government must prove only that defendant knew that the property involved in the monetary transaction constituted, or was derived from, [directly or indirectly], proceeds obtained by some criminal offense. It need not prove that he/she knew the precise nature of the criminal offense from which the proceeds derived."

The United States Attorney General already prosecuted and convicted Lorraine Brown (*United States of America v. Lorraine Brown*, Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.) Lorraine Brown was convicted of conspiracy to commit mail and wire fraud pursuant to 18 U.S. Code § 1341 and § 1343) for the same activities Beal's LNV and MGC and Beal's LPS agents are using specific to the parties opposing Beal's LNV in these related cases, i.e. falsely fabricating, forging and robo-signing assignments of deed of trust, allonges to notes and affidavits and filing them in county recorders offices via mail and wire transmissions; and or filing them with courts across the country via mail and wire transmissions.  Beal and the business entities within his corrupt organization, that include but are not limited to his MGC and LNV, in each of the related cases have further used such forged and robo-signed documents to initiate and perfect foreclosures knowing this is a violation of numerous Texas  (and other states') civil statutes and penal code. This is evidenced by a letter sent to his MGC by the Attorney General of Texas dated October 4,

2010.  Beal's MGC responded to the Texas Attorney General's letter in a letter dated October 21, 2010 by stating that his MGC had assured it was not using such documents in its Texas foreclosures. (See Exhibit B for copies of these two letters.) Yet numerous Beal victims including the parties opposing Beal's LNV in these related cases (one who resides in Texas) claim Beal's MGC and LNV are doing just that.  (In addition to the seven Beal victims whose litigation is being related hereby, at least five other Beal victims are from Texas out of an ever growing group that now exceeds 40 victims from the additional states of California, Oregon, Arizona, North Carolina, New York, New Jersey, Pennsylvania, Ohio, Tennessee, Louisiana, Connecticut, Illinois, Indiana and Michigan.  The known Beal victims are certain that once media reports about Beal thousands if not tens of thousands of Beal victims will come forward; and their experiences with the Beal entities within his corrupt organization will be consistent with the pattern of criminal activity these seven Beal victims have expressed through their court pleadings.)

Many Beal victims claim Beal's MGC misappropriated their payments then used these self-serving misappropriations of their funds to falsely claim they had defaulted on their loans so as to justify foreclosure actions where Beal's MGC and LNV then submit to courts as genuine these false, forged and robo-signed documents, all the while knowing they are false, with intent to deceive the courts and deprive the Beal victims of their property for Beal's personal gain.

See Exhibit C: A copy of a certified cashier check Catherine Gebhardt made payable to MGC for $6,000 to cover three months of her mortgage payments. This check was paid to Beal Bank SSB on October 29, 2008, but it was never credited to Gebhardt's mortgage.  MGC's Erica Thomas wrote a letter Gehardt's Congressman Roe's office dated June 23, 2011 and states on the first

page of the letter, "***MGC has received no payments since we acquired servicing of the loan from GMAC Mortgage on or around July 1, 2009.***"  This statement is conclusively false because Gebhardt's $6,000 check to MGC was paid to Beal Bank SSB on October 29, 2008. Erica Thomas signed this letter as Vice President of MGC; failing to disclose she is an attorney (Texas Bar Card Number: 24042027). Erica Thomas makes numerous other false claims in that letter about Gebhardt's loan, but her one big lie is demonstrative of Beal's pattern of criminal activity; especially when considered alongside a sampling of numerous consumer complaint letters received by the Texas Attorney General's office describing the same pattern of criminal activity.  (See Doc 32-1 pages 16 through 145.)

Whether or not the alleged "original" notes and alleged assignments of deed of trust are genuine rather than forgeries is material as to whether or not LNV has standing to foreclose on the Beal victims' properties.  Whether or not Beal's MGC committed intentional servicing fraud by misappropriating payments and claiming false defaults against Beal victims so he could fraudulently foreclose on their properties is also material as to whether or not LNV has standing to foreclose. These facts are also material as to whether or not Beal has committed a pattern of felony crimes and engaged in a pattern of criminal activity defined as a pattern of "racketeering activity" by 18 U.S. Code § 1961(1) & (5).  Facts specific to whether or not Beal, his LNV, his LPS agents and his attorneys and other officers of the court have intentionally thwarted justice, tampered with evidence, abused judicial process and engaged in a conspiracy to deny the Beal victims their constitutional rights to due process and equal protection of law under the fifth and fourteenth amendments are material as to whether or not the Beal victims have been unconstitutionally deprived of their property and/or their liberty to make financial decisions regarding their property (the largest single investment they have made in their lives); and

whether or not Beal operates a corrupt organization or "racketeering enterprise" as defined by 18

U.S. Code § 1961(4).  Additionally the aforementioned facts are material as to whether or not

Beal and his LNV and his agents and/or his attorneys have violated 15 U.S. Code § 1692 et al.

The Beal victims have suffered significant financial losses and great emotional anguish and

distress extending over many years as a result of the crimes perpetrated against them by Beal, his

racketeering enterprise, his LPS agents and his attorneys.

18 U.S. Code § 3663A(a)(2) states:

> "For the purposes of this section, the term "victim" means a person directly and
> proximately harmed as a result of the commission of an offense for which restitution
> may be ordered including, in the case of an offense that involves as an element a
> scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the
> defendant's criminal conduct in the course of the scheme, conspiracy, or pattern..."

18 U.S. Code § 3663A(a)(3) states:

> "The court shall also order, if agreed to by the parties in a plea agreement, restitution to
> persons other than the victim of the offense."

The Beal victims believe Beal should also pay restitution to the United States; specifically to the

courts due to his pattern of abuse and fraud upon the courts.  This restitution should be directly

used to finance a program to ensure the constitutional rights to due process and equal protection

of law of parties like the Beal victims are not violated in the future because the courts lack funds.

18 U.S. Code § 3663A(b)(1) states:

> "The order of restitution shall require that such defendant in the case of an offense
> resulting in damage to or loss or destruction of property of a victim of the offense (A)
> return the property to the owner of the property or someone designated by the owner;
> or (B) if return of the property under subparagraph (A) is impossible, impracticable, or

inadequate, pay an amount equal to (i) the greater of (I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less (ii) the value (as of the date the property is returned) of any part of the property that is returned."

In addition to restitution pursuant to 18 U.S. Code § 3663A et al, (Mandatory Crime Victims Restitution Act) victims of Beal's crimes are entitled to damages pursuant to 15 U.S. Code § 1692 et al, (Fair Debt Collection Practices Act), including damages for emotional distress and punitive damages, and to treble damages pursuant to 18 U.S. Code § 1961 et al.

A recent decision by the Sixth Circuit Court of Appeals in Case No. 13-3402, *Rick Slorp v. Lerner, Sampson & Rothfuss, et al* Originating Case No. : 2:12-cv-00498 aptly represents the interests of the Beal victims in their related cases and the facts to be determined by the courts hearing these cases. Quoting from this Appellate decision:

> *The district court held that Slorp lacked standing because he sustained no injury as a result of the assignment. In its view the foreclosure action "was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly 'false' Assignment." Although the foreclosure action caused Slorp to incur legal fees, the court stated, he incurred those fees because he defaulted, "not because of the Assignment." Thus the district court held that Slorp sustained no injury attributable to the allegedly fraudulent assignment.*

> *This analysis suffers from one key error: It mistakes the source of the injury alleged in Slorp's complaint. Slorp does not attribute his injuries to the false assignment of his mortgage; rather, he attributes his injuries to the improper foreclosure litigation. According to the complaint, Bank of America (through LSR) filed a foreclosure action against Slorp despite its lack of interest in the mortgage; the defendants misled the trial court by fraudulently misrepresenting Bank of America's interest in the suit; and Slorp incurred damages when he was compelled to defend his interests. If Bank of America had no right to file the foreclosure action, it makes no difference whether Slorp previously had defaulted on his mortgage. Slorp's suit to recover damages caused by Bank of America's lawsuit satisfies each of the three components of Article III standing. That is all that is required for count one, which alleged a violation of the FDCPA—a federal statute. See Hollingsworth v. Perry, 133 S. Ct. 2652, 2667 (2013) (stating that "standing in federal court is a question of federal law, not state law"); see also Coyne v. Am. Tobacco Co., 183 F.3d 488, 495 (6th Cir. 1999). Slorp has established standing to seek relief under the FDCPA, and the district court erred when it held otherwise.*

One glaring difference is that most of the Beal victims <u>NEVER DEFAULTED ON THEIR</u>

<u>MORTGAGES</u>! Beal's MGC fabricated false defaults by intentionally misappropriating Beal

victims' payments. Beal and his LNV and MGC also acted intentionally in bad faith to prevent

Beal victims from refinancing their mortgages at lower rates, and refuses to report their good

payment history to credit reporting agencies which also prevents them from refinancing and

causes their credit score to drop by on average 100 points. Modification offers to Beal victims

were typically padded with extra fees and predatory rates making the costs so insanely high that

no one in their right mind would ever agree to them, but that too was by design, so Beal could

say "we offered them a settlement/modification by they turned it down."

Is this what any of the Honorable judges reading this, or anyone else, would want done unto

them?

Respectfully Submitted,


JoAnn Breitling

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was

served upon all counsel of record and pro-se parties via the Court's CM/ECF system, email,

and/or regular mail, and/or certified mail with return receipt requested; and that a correct copy of

the foregoing document was served upon The United States Attorney General and the Texas

Attorney General at the addresses below:


Attorney General of Texas,
Ken Paxton
P.O. Box 12548
Austin, Texas 78711

Marc Cabera, Jason Sanders,
Robert Mowery
Locke Lord LLP
2200 Ross Ave, # 2200
Dallas, TX 75201

Macdonald Devin, PC
Codilis & Stawiarski
3800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

U. S. Department of Justice,
Loretta Lynch,
U. S. Attorney General
950 Pennsylvania Ave NW
Washington, DC  20530


_____
JoAnn S Breitling

_____
Samuel G. Breitling

# Exhibit A

**NOTICE OF DIRECTLY RELATED CASES**

**2008043296**
ROBIN  2585/869

OFFICIAL RECORDS
BK: 2585  PG: 869

LT1-2-2008043296-1

LT2-2585-869-3

08/08/2008   3:26PM # Pages 3
Filed & Recorded in Official Records of
HERNANDO COUNTY CLERK OF COURT
KAREN NICOLAI

RECORDING FEES          $     27.00
DEED DOC STAMP          $      0.70
08/08/2008          ___Deputy Clk

**Prepared by:** Edison Mortgage Decisioning Solutions
200 Metroplex Drive, Suite 102
Edison, NJ  08817

**Record and** GMAC T005:  19057835
**Return to:** Record & Return to: Docx
1111 Alderman Dr, Suite 350
Alpharetta, GA 30005

**\*11202569WD\***

## Special Warranty Deed

**KNOW ALL MEN BY THESE PRESENTS THAT:**

For Valuable consideration of TEN DOLLARS ($10.00) and other good and valuable consideration, cash in hand paid and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged , **Residential Funding Company, LLC, a** _____, whose address is 1 Meridian Crossings, Minneapolis, MN, 55423, hereinafter referred to as "Grantor", does hereby grant, convey and specially warrant unto Residential Funding Real Estate Holdings, LLC, a _____, whose address is 1 Meridian Crossings, Minneapolis, MN, 55423,hereinafter referred to as Grantee, the following lands and property, together with all improvements located thereon, lying in the County of **Hernando**, State of **FLORIDA**, to wit:

## LEGAL DESCRIPTION:

SEE EXHIBIT "A"
ONE AND THE SAME AFFIDAVIT AS EXHIBIT B This will explain the relationship between Grantor and Grantee

Known as: 11090 THORNBERRY DRIVE, SPRING HILL, FL 34608-0000

LESS AND EXCEPT all oil, gas and minerals, on and under the above described property owned by Grantors, if any which are reserved by Grantor.

SUBJECT to all easements, rights-of-way, protective covenants and mineral reservations of record, if any.

| Loan #1: 11202569 | Loan #2: 19057835 | **FLORIDA** |

**OFFICIAL RECORDS**
**BK: 2585   PG: 870**

TO HAVE AND TO HOLD same unto Grantee and Grantee's assigns forever, with all appurtenances thereunto belonging.

Grantor does for Grantor and Grantor's personal representatives, executors and assigns forever hereby covenant with Grantee that Grantor is lawfully seized in fee simple of said premises; that the premises are free of all encumbrances, unless otherwise noted above; that Grantor has a good right to sell and convey the same as aforesaid.

Taxes for the tax year _2008_ shall be ☐ prorated between Grantor and Grantee as of the date selected by the Grantor and Grantee, or ☐ paid by Grantor, or ☐ paid by Grantee.

IN WITNESS WHEREOF, this deed was executed by the undersigned on this the _7/24/08_, to be effective .

Signed, Sealed and Delivered in the presence of:

Witness: Michael Mead

Witness: Pamela Spencer

**Residential Funding Company, LLC**

BY:   JASON VECCHIO
TITLE:   Limited Signing Officer

| **State of** | **Minnesota** |
|---|---|
| **County of** | **Hennepin** |

On this _7/24/08_, before me, the undersigned, a Notary Public, in and for said County and State, personally appeared Jason Vecchio to me personally known, who being by me duly sworn did say that he/she is the Limited Signing Officer of **Residential Funding Company, LLC**, a _____, that said instrument was signed on behalf of said corporation by Authority of it Board of Directors, and that the said Jason Vecchio as Limited Signing Officer, acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, by it and by he/she voluntarily executed.

Given under my hand this _7/24/08_ .

Notary Public
Diane M. Meistad

My commission expires: 01/31/2010

DIANE M. MEISTAD
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2010

Grantors Name Address and Phone #
Residential Funding Company, LLC
1 Meridian Crossings
Phone #:

Grantee Name Address and Phone #

**SEND TAX STATEMENTS TO GRANTEE**

| Loan #1: 11202569 | Loan #2: 19057835 | **FLORIDA** |

OFFICIAL RECORDS
BK: 2585  PG: 871

RFC # 11202569

EXHIBIT "A"

LOT 3, BLOCK 1107, SPRING HILL UNIT 17, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 9, PAGE 31, PUBLIC RECORDS OF HERNANDO COUNTY, FLORIDA.

# Exhibit B

**NOTICE OF DIRECTLY RELATED CASES**

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 4, 2010

MGC Mortgage, Inc.
7195 Dallas Parkway
Plano, TX 75024

      **RE:**   MGC Mortgage, Inc. Foreclosures in Texas

Gentlemen:

      Recent troubling developments about the veracity of claims made on documents used by Ally Financial, Inc., in its foreclosure filings have led to an inquiry by our office as to the full harm Texas homeowners have suffered.

      We are certain that you must be aware of the issues raised when Ally Financial, Inc., and later JP Morgan Chase and Bank of America, announced that they were suspending foreclosures on certain properties in 23 states. It appears that they had discovered, through testimony of their employees in private litigation, that the employees, referred to as "robosigners," had engaged in practices concerning the execution of affidavits which were used in foreclosure litigation, among which were these:

- Signing thousands of documents per month
- Signing documents without reading them
- Signing affidavits which falsely claim personal knowledge of facts
- Signing affidavits which falsely claim the affiant reviewed the attached documents
- Notarizing documents prior to signing by the signer
- Notarizing documents when the signer was not present before the notary
- Filing affidavits with records attached that do not correctly reflect loan payments, charges and advances

      We are aware that MGC Mortgage, Inc. services a significant number of mortgage loans in the State of Texas. It is likely that affidavits and other documents, such as assignments of deeds of trust and appointments of substitute trustees, with the issues described, above may have been used in connection with foreclosures in the State of Texas. Regardless of whether the foreclosure was a nonjudicial one or a judicial one in connection with a home equity loan, home equity line of credit or reverse mortgage, if any of the practices described above were utilized in establishing MGC Mortgage, Inc.'s authority to conduct the sale or obtain a court order for a sale, such use would have been a violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Act; Section 37.02, Texas Penal Code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure, and the document and therefore the foreclosure sale would have been invalid.

MGC Mortgage
October 4, 2010
Page 2

We are also aware that after the practices described above came to light, Ally Financial, Inc., JP Morgan Chase and Bank of American voluntarily suspended all foreclosures in twenty-three states in which foreclosures are conducted solely through a judicial process, in order to determine which foreclosures may have been tainted by illegitimate affidavits. The State of Texas hereby demands that in the State of Texas, MGC Mortgage, Inc. immediately suspend all foreclosures, all sales of properties previously foreclosed upon, and all evictions of persons residing in previously foreclosed upon properties, until MGC Mortgage, Inc. has done the following:

1.    Identify all MGC Mortgage, Inc. employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas;

2.    Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process;

3.    Describe the measures taken by MGC Mortgage, Inc. to ensure that affidavits and other documents are executed in compliance with Texas law;

4.    Describe the measures taken by MGC Mortgage, Inc. to comply with the Servicemembers Civil Relief Act in connection with foreclosures;

5.    Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits;

6.    Provide assurances that all MGC Mortgage, Inc. foreclosures of properties in the State of Texas which relied upon affidavits with the characteristics described above will be rectified and the procedures by which they will be rectified;

7.    Provide assurances that all future MGC Mortgage, Inc. foreclosures of properties in the State of Texas will be done with legally correct documentation; and

8.    Identify all MGC Mortgage, Inc. employees or agents who are or who signed as officers of other non-related entities.

Please provide your response on or before October 15, 2010.

Sincerely,

Paul D. Carmona
Chief, Consumer Protection and
Public Health Division



HUNTON & WILLIAMS LLP
FOUNTAIN PLACE
1445 ROSS AVENUE
SUITE 3700
DALLAS, TEXAS 75202-2799

TEL   214 • 979 • 3000
FAX  214 • 880 • 0011

PETER WEINSTOCK
DIRECT DIAL: 214 • 468 • 3395
EMAIL: pweinstock@hunton.com

October 31, 2010

Mr. Paul D. Carmona, Chief
Consumer Protection and Public Health Division
Attorney General of Texas Office
P.O. Box 12548
Austin, Texas  78711-2548

**Re:     MGC Mortgage, Inc. ("MGC")**

Dear Paul:

I am writing this letter on behalf of MGC in response to the October 4, 2010 letter (the "Letter") from the Attorney General of Texas (the "Texas AG") and as a follow up to my October 15, 2010 letter.  In our telephone conversation on October 11, 2010, you stated that it would be acceptable to the Texas AG for MGC to respond to the Letter on or before November 1, 2010.  We are now providing this letter as the requested response on behalf of MGC.

MGC was established in February 2008 and, in its history, has foreclosed on 159 residential loans in Texas and has 64 residential Texas loan foreclosures in progress.   In the two weeks since the date of my last letter, MGC has worked diligently to obtain the files from its subservicers and outside foreclosure counsel.  Of the 223 files, MGC has obtained complete files for 184 of them.  MGC has not yet received complete documentation on the other 39 files.  MGC has reviewed all 184 of its completed files for every foreclosure or foreclosure in process.  MGC will advise the Texas AG once it completes its review of the 39 pending files after receipt of the missing documentation.

You should also know that MGC has been proactive in working with Texas homeowners with delinquent or potentially delinquent residential mortgage loans.  To do so, earlier this year, MGC engaged Dovenmuehle Mortgage, Inc. ("DMI"), which is one of the leading residential loan servicing companies in the country, to subservice MGC's loans and to assist MGC in executing on its loan modification program.

Furthermore, MGC services residential loans that were acquired from the Federal Deposit Insurance Corporation ("FDIC") as receiver for New South Federal Savings Bank, Irondale,



Mr. Paul D. Carmona
October 31, 2010
Page 2

Alabama ("New South") in December 2009. The New South loans have been serviced (or subserviced) by Cenlar since 2004. Based on review of Cenlar's performance and capabilities, MGC elected to continue working with Cenlar as subservicer.

Set forth below are MGC's responses to the Letter. For your convenience, I have reproduced in bold text below the enumerated requests set forth in the Letter.

1.    **Identify all MGC Mortgage, Inc. employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas**. MGC does not use "robosigners" in its foreclosure process. MGC has reached out to virtually all of the law firms that it employs for such purposes. The vast majority have responded. They have indicated that they also do not engage in robosigning. MGC has been advised by DMI and Cenlar that they do not use such practice either. DMI has also stated that it has spoken with virtually all law firms that it retains for foreclosures, and that such firms do not engage in robosigning.

2.    **Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process**. No completed or in-process foreclosures in the State of Texas were identified as being conducted in connection with an affidavit or other document with the foreclosure characteristics listed in the Letter. DMI advised MGC that DMI does not conduct foreclosures with affidavits with such characteristics. Cenlar does not execute documents on behalf of MGC.

3.    **Describe the measures taken by MGC Mortgage, Inc. to ensure that affidavits and other documents are executed in compliance with Texas law**. MGC has adopted written policies providing for foreclosure of residential properties. MGC also requires that information provided in foreclosure documents be verified for accuracy and that an authorized member of management reviews the documents to be executed before doing so. MGC understands that DMI and Cenlar follow similar processes.

4.    **Describe the measures taken by MGC Mortgage, Inc. to comply with the Servicemembers Civil Relief Act in connection with foreclosures**. MGC has adopted written policies for compliance with the Servicemembers Civil Relief Act ("SCRA"). Upon notification from a borrower seeking SCRA relief, MGC uses reasonable means to validate



Mr. Paul D. Carmona
October 31, 2010
Page 3

the order and determine whether the obligation is a qualifying debt pursuant to the SCRA. Upon validation, the appropriate benefits afforded the borrower are instituted and the loan is coded as a loan subject to the SCRA. Before proceeding with the filing of a foreclosure action, every loan is reviewed for active military status of a borrower. If a borrower is identified as being on active military status or the loan is identified as being subject to the SCRA, the foreclosure is put on hold until expiration of the SCRA benefit or until MGC makes a determination on a case-by-case basis to seek court relief from SCRA provisions. It is MGC's understanding that DMI and Cenlar also have procedures designed to avoid foreclosures in violation of SCRA.

**5.      Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits**. None.

**6.      Provide assurances that all MGC Mortgage, Inc. foreclosures of properties in the State of Texas which relied upon affidavits with the characteristics described above will be rectified and the procedures by which they will be rectified**. As discussed above, no completed or in-process foreclosures in the State of Texas were identified as being conducted in connection with an affidavit or other document with the characteristics listed in the Letter. Accordingly, MGC does not believe that any of its foreclosures need to be rectified as a result of an affidavit or other document with the characteristics listed in the Letter.

**7.      Provide assurances that all future MGC Mortgage, Inc. foreclosures of properties in the State of Texas will be done with legally correct documentation**. As discussed above, MGC has adopted written policies for the execution of legal documents in compliance with Texas law. MGC has systems and procedures designed to provide for the implementation of such policies by DMI and Cenlar.

**8.      Identify all MGC Mortgage, Inc. employees or agents who are or who signed as officers of other non-related entities**. MGC does not service loans for unrelated entities.

Pursuant to the Texas Open Records Act, we hereby request confidential treatment for the information contained in this letter. The information contained herein constitutes privileged and confidential information, proprietary in nature, that is not available to the public from any



Mr. Paul D. Carmona
October 31, 2010
Page 4

other source.  Disclosure of this information to the public, including competitors of MGC, would provide such competitors and others with information about the current and future business plans of MGC.  From this information, competitors could make inferences about the operations and competitive strategies of MGC, which could potentially result in altering the competitors' own competitive strategies and relationships to the detriment of MGC.

We request that if, notwithstanding the foregoing, the Texas AG's office should determine preliminarily to make available to the public any of the information in this letter, it will inform us prior to any such release.

If you have any questions, please do not hesitate to contact Robert Ackermann at (469) 467-5342 or me at (214) 468-3395.

Sincerely,

Peter G. Weinstock

cc:    Mr. Robert Ackermann

# Exhibit C

**NOTICE OF DIRECTLY RELATED CASES**



Check: 113585 Amount: $6,000.00 Date: 10/29/2008
Run: 1, Batch: 32, Seq: 15



Check: 113585 Amount: $6,000.00 Date: 10/29/2008
Run: 1, Batch: 32, Seq: 15

MGC 871-7888 -1423946779

p.4      8887741248                              Cathy      Sep 03 13 12:26a

**Important:** click on ⑦ symbols next to the information before using it. Dismiss

Routing Numbers | Link to Us                                                                        0

# BEAL BANK SSB Routing Number

### BEAL BANK SSB routing information

| | |
|---|---|
| Bank Name | BEAL BANK SSB |
| Routing Number | 311993330 ⑦ |
| Address | 6000 LEGACY DRIVE ⑦ |
| City | PLANO |
| State | TX |
| Zip Code | 75024-0000 |

**Advertisement**



### BEAL BANK SSB routing information

| | |
|---|---|
| Telephone Number | (469) 467-5000 ⑦ |
| Office Type | Main |
| Servicing Number | 111000038 |
| Record Type Code | 1 |
| Institution Status Code | 1 |
| Record Revision Date | 2010-02-11 |

**Advertisement**



## 0% APR For 18 Months!
For Balance Transfers & Purchases



Compare Current
Credit Card Offers
& Lock-In Rates
Today!

Click Here

**CompareCards**

---

**Find Routing Number of a Bank**

Search

# MGC Mortgage, Inc.

7105 Dallas Parkway
Plano, Texas 75024
www.mgcmortgage.com
Tel 866-973-3399

June 23, 2011

Ms. Sheila Houser, Administrative Assistant
Congress of the United States, House of Representatives
P.O. Box 1728
Kingsport, TN 37662

RE:    Ms. Catherine Gebhardt
       753 Thomas Cross Road, Sevierville, TN 37876
       Loan Number 1423946779

Dear Ms. Houser:

MGC Mortgage, Inc ("MGC") is in receipt of the correspondence submitted on behalf of Ms. Catherine Gebhardt ("Borrower") dated May 26, 2011. Thank you for your patience while MGC researched this inquiry.

The Borrower's loan was originated with a mortgage broker employed at PrimeONE Mortgages in Sevierville, Tennessee. The mortgage broker secured an approval for the Borrower's loan through Sebring Capital Partners, LP who funded the loan on November 7, 2002 in the amount of $243,100.00. The Borrower signed an Adjustable Rate Note ("Note") indicating that she agreed to the initial interest rate of 9.500% per annum which was subject to change beginning on December 1, 2004 and every sixth month thereafter. The Note indicates that the Note Holder (currently LNV Corporation) will calculate the Borrower's new interest rate by adding 8.750% to the current LIBOR Index. The interest rate is limited to increases and decreases of no more than 1.500% from the prior interest rate on any given change date. The interest rate will never be greater than 16.500% or less than 9.500%. With each of these terms bolded on the Note, the Borrower indicated her acceptance of said terms by signing the Note on November 7, 2002. Certified copies of the original Note, Deed of Trust, and applicable Riders are enclosed for your review.

We have also enclosed a copy of the Truth in Lending Disclosure Statement ("TIL") signed by the Borrower on the date of origination. The TIL outlines the payment and finance terms of the loan and indicates the exact amount a borrower will pay for the loan they are obtaining. In the Borrower's case, the TIL indicates that she will finance $237,460.52, and the total finance charge will be $549,576.73, amounting to $787,037.25 for the total sum of payments to be made on this loan. Given this information, the Borrower was aware that the amount of interest would surpass the principal amount of the loan she agreed to, as it does in many real estate transactions.

As you are aware, MGC did not originate the Borrower's loan; therefore, we are unable to address any issues that may have occurred at origination. The Borrower or her counsel may contact the loan originator for information regarding the origination. However, per the Borrower's request, we are enclosing a copy of the Settlement Statement that she signed at closing.

**MGC Mortgage, Inc.**

7195 Dallas Parkway
Plano, Texas 75024
www.mgcmortgage.com
Tel 866-973-3399

Ms. Sheila Houser, Administrative Assistant
Congress of the United States, House of Representatives
June 23, 2011
Page Two

As previously mentioned, the original loan amount the Borrower agreed to was $243,100.00. Her current principal balance is $234,914.99, which indicates that $8,185.01 has been applied to principal during the life of the loan; therefore, the allegation that no payments have been applied to principal on this loan is false. Additionally, Section 2 of her Deed of Trust indicates that payments, "...shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note..." MGC has received no payments since we acquired servicing of the loan from GMAC Mortgage on or around July 1, 2009. Enclosed is a copy of the payment history. If the Borrower disputes application of a specific payment, she may provide us that information and we will conduct further research.

While the current principal balance is $234,914.99 with the next installment due date of December 1, 2008, this amount does not reflect the payoff of the loan. In a letter dated January 27, 2011 from our attorney Shapiro & Kirsch, LLP, the Borrower is informed that the total amount of the debt is $281,373.08. That amount includes the principal, interest, fees, and escrow which are required to pay off the loan and make up a substantial amount of the payoff due to the delinquency of the loan. As of January 27, 2011, the payoff of the loan was calculated as follows:

| | |
|---|---|
| Principal Balance: | $234,914.99 |
| Interest through 4/19/2010: | $ 37,022.99 |
| Escrow Advances: | $ 5,446.98 |
| Total Fees: | $ 12.00 |
| Accumulated Late Fees: | $ 1,313.51 |
| Recoverable Balance: | $ 2,662.61 |
| Total Balance: | $281,373.08 |

As of April 26, 2011, the payoff of the loan was calculated as follows:

| | |
|---|---|
| Principal Balance: | $234,914.99 |
| Interest through 4/26/2011: | $ 59,767.87 |
| Escrow Advances: | $ 11,764.86 |
| Total Fees: | $ 355.25 |
| Accumulated Late Fees: | $ 716.91 |
| Recoverable Balance: | $ 3,010.11 |
| Total Balance: | $310,529.99 |

Shapiro and Kirsch, LLP also provided the Borrower with a reinstatement quote which included a foreclosure expense breakdown for this loan on April 14, 2011 (enclosed). The Borrower's letter mentions that she is requesting a detailed accounting of this breakdown; therefore, we have enclosed information which only addresses the amounts due through April 14, 2011. Please be advised that our attorneys are unable to provide reinstatement figures for future dates due to the delinquency of the loan and the charges that may accrue as a result of the delinquency.

# MGC Mortgage, Inc.

7195 Dallas Parkway
Plano, Texas 75024
www.mgcmortgage.com
Tel 866-973-3399

Ms. Sheila Houser, Administrative Assistant
Congress of the United States, House of Representatives
June 23, 2011
Page Three

The listed amounts within the April 14, 2011 letter are substantiated by the loan history which has previously been provided to the Borrower's counsel, and we will enclose for your review. We are providing as much loan history as we have been afforded. If the Borrower requires a current itemization of the total amounts owed on this loan, she may contact our Customer Service Department at (877) 471-7888 to order a payoff.

The letter from the Borrower's counsel suggests that this loan requires a $250,000.00 balloon payment upon maturity. Please observe that the Note indicates that the loan matures on December 1, 2032 and does not indicate that there is a balloon payment at that time, though does state that if amounts are still owed under the Note, they will be paid on that date. The Deed of Trust further supports that statement by indicating that no Balloon Rider is required for this loan in the "Definitions" section (H).

Please be advised that while the letters from the Borrower and her counsel state that the Borrower has encountered significant economic hardship and that we should review the loan prior to proceeding with foreclosure, we have received no information from the Borrower requesting a modification or loan workout. This may have been requested from prior servicers, though MGC requires current information from the Borrower to consider her loan for any loss mitigation efforts. We have placed numerous telephone calls to the Borrower for collection and workout efforts; though have been unsuccessful in reaching the Borrower. We are willing to consider the Borrower's loan for loss mitigation if she contacts our Loss Mitigation Department at (877) 609-4727 to initiate the process. We will place the foreclosure proceedings on hold for 30 days to allow the Borrower time to submit a complete loss mitigation package. For the Borrower's convenience, we are enclosing a loss mitigation package with this letter.

As previously stated, we are enclosing certified copies of the Note, Deed of Trust, and applicable Riders. Additionally, we will enclose the Assignments for this loan. Unfortunately, we are unable to provide original documents to the Borrower for her inspection as these documents must remain in our files; therefore, we are providing certified copies of the original documents. Regarding loan transfers, we have enclosed the transfer letters we have previously sent to the Borrower.

On or around April 1, 2010, MGC entered into a relationship with Dovenmuehle Mortgage, Inc. ("DMI") at which time DMI agreed to sub-service MGC's loans. The Borrower was made aware of this relationship in the Welcome Letter sent to her on or around March 16, 2010, which we have enclosed for your reference.

# MGC Mortgage, Inc.

7195 Dallas Parkway
Plano, Texas 75024
www.mgcmortgage.com
Tel 866-973-3299

Ms. Sheila Houser, Administrative Assistant
Congress of the United States, House of Representatives
June 23, 2011
Page Four

We would like to assist the Borrower in keeping her home and encourage her to contact our Loss Mitigation or Customer Service Departments at the aforementioned telephone numbers to discuss modification or workout options.

Sincerely,

Erica Thomas / mc

Erica Thomas
Vice President

cc:     Ms. Catherine Gebhardt

Enclosures