IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL G. BREITLING AND JO ANN BREITLING, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | NO. 3:15-CV-00703-B |
| LNV CORPORATION, ET AL., | § § | RESPONSE/OBJECTION TO CODILLIS & STARWIARSKI'S |
| Defendants. | § § | MOTION FOR SUMMARY JUDGMENT |

PLAINTIFFS' RESPONSE/OBJECTION TO CODILLIS & STARWIARSKI'S
MOTION FOR SUMMARY JUDGMENT

Come now Plaintiffs, Samuel G. and JoAnn S. Breitling, who are self represented and

incorporate herein their pleadings in the following directly related cases:

1. *LNV Corporation v. Breitlings et al*, Civil Cause DC-14-04053 in the Dallas County District Court in the 134th Judicial District, filed on April 15, 2014

2. *Breitlings v. LNV Corporation et al*, Civil Cause DC-14-09604 in the Dallas County District Court in the 101st Judicial District, filed on August 29

3. *Breitling et al. v. LNV Corporation et al.*, Civil Action No. 3:14-cv-3322-M (first removal by Beal entities to this U.S. District Court, heard by Judge Barbara Lynn)

4. *LNV Corporation v. Breitlings et al*, Civil Cause No. JD15-00071C in the Justice of the Peace Court Number 2 in Garland Texas, Judge Gerry Cooper

5. *LNV Corporation v. Breitlings et al*, Civil Cause No. CC-15-00911-C in the County Courts at Law Number 3 in Dallas County, Judge Sally Montgomery

6. *LNV Corporation v. Breitlings et al*, Civil Cause No. 05-15-0677-CV in the Court of Appeals for the Fifth District of Texas at Dallas, filed on or around May 27, 2015

7. *Breitling et al. v. LNV Corporation et al.*, Civil Action No. 3:15-cv-00703-B (second removal by Beal entities) U.S. District Court, now heard by Judge Jane Boyle.

Plaintiffs further incorporate herein their pleading filed in this court and specifically their

Notice of Constitutional Questions [doc 37 and its exhibits docs 37-1 through 37-5]; their Motion

to Vacate Tillery's Void Order [doc 60]; their response to the Beal Defendants' objection to their

motion for injunctive relief [doc 58 in 3:14-cv-03322-M-BM] and hereby respond/object to the

pleading filed on July 21, 2015 by Counsel Clayton E. Devin of McDonald Devin, P.C. for his

client Defendant Codilis & Stawiarski P.C. ("C&S") [doc 56] which by order of Honorable

Judge Jane Boyle entered on July 22, 2015 [doc 57] has been construed by the court as a "motion

for summary judgment" pursuant to Rule 56.  Plaintiffs hereby object to the court granting

Defendant C&S summary judgment in this matter and hereby move the court for a counter/cross

motion for summary judgment under the same principles and arguments pursuant to Rule 56,

Fed. R. Civ. P made by C&S in paragraphs 5 through 8 of their motion [doc 56].

Counsel Devin's "Procedural History" on page 1 of [doc 56] paragraphs numbered 1

though 4 is inaccurate and/or is incomplete.  He begins his "history" with [doc 8], which he

claims is C&S's second (2nd) motion for more definitive statement, which he filed on March 18,

2015; but which Plaintiffs were unaware of because of the wrongdoings of their counsel J.D.

Milks.  Although this pleading is in fact styled: "DEFENDANT CODILIS & STAWIARSKI,

P.C.'S SECOND MOTION FOR A MORE DEFINITE STATEMENT [FED.R.CIV.P. 12(e)]

AND BRIEF IN SUPPORT" Plaintiffs can find no earlier, i.e. first (1st) motion for clarification

being filed by Defendant C&S into the present case (i.e. 3:15-CV-00703-B.)  However they had

filed on October 27, 2014 into case 3:14-cv-03322-M-BN [doc 36] a motion for more definitive

statement in which they incorporated everything stated in former defendants MGC Mortgage

Inc.'s ("MGC's") and Dovenmuehle Mortgage Inc.'s ("DMI's") motion for more definitive

statement.  At that time Plaintiffs had been granted a motion to file an amended complaint (their

original complaint had been written BEFORE Defendants LNV and C&S illegally and

unconstitutionally sold Plaintiffs' home) but the case was stayed and then on January 27, 2015 it

was remanded.  Plaintiffs have never been given the opportunity to amend their complaint, in

great part due to continuing harassing litigation tactics perpetrated against them by the

Defendants.  At the status conference hearing held on June 22, 2015 Honorable Judge Jane Boyle

gave Plaintiffs more time to file their clarification in response to [doc 8], which they timely filed

on July 13, 2015 [doc 53].

Counsel Devin complains about the fact that Plaintiffs have not yet filed their amended

complaint; but since he was in attendance for the status conference hearing held on June 22,

2015 he knows that Honorable Judge Jane Boyle said she would prepare a scheduling order that

would permit Plaintiffs enough time to file their amended complaint.  Judge Boyle issued an

order on June 22, 2015 [doc 50] that states:

"ELECTRONIC ORDER denying document 12 plaintiff's motion for leave to amend.
Plaintiff's motion is here by DENIED without prejudice to refile once scheduling order has been
issued in the matter."

The scheduling order has not yet been issued so Counsel Devin knows or should know

that Plaintiffs cannot file their amended complaint yet as per the court's order.

Defendant C&S's motion [doc 56] fails to address any of the very specific claims

Plaintiffs made in their clarification [doc 53] against C&S's employee LNV's Counsel Jeffery

Hardaway in *LNV v. Breitlings* case DC-14-04053. Instead Counsel Devin makes vague blanket

allegations that all Plaintiffs' claims were barred by res judicata because Judge Tillery had

already adjudicated them and offers as evidence attachments of certain documents from that

case.  Counsel's selection of documents is completely one-sided and meant to skew the truth

specific to the facts surrounding the Tillery order which Plaintiffs have challenged as void since

August 18, 2014; and which Counsel Devin and his client Defendant C&S and its client

Defendant LNV all know full well.

Defendant C&S's motion therefore fails meet the requirement of Rule 56(c)(1)(B) because it fails to show that the materials Plaintiff cited do not establish a genuine dispute, or that Plaintiffs cannot produce admissible evidence to support their factual claims.

Plaintiffs hereby object to the materials cited by Defendant C&S's and which their Counsel Devin attached as exhibits to their motion [doc 56] because they fail to meet the standards of admissible evidence since they are subject themselves to dispute; see Plaintiffs motion to vacate Tillery's void order [doc 60].

On page 3 of [doc 56] Counsel Devin uses the heading "<u>THE BREITLING PLAINTIFFS HAVE BEEN DOWN THIS ROAD BEFORE</u>" as if it were somehow the Plaintiffs' fault that the "disputes presented by this case have a long and complex history of court filings in state and federal courts." The fault for this convolution of litigation making for a complex litigation history and the fact that there have been so many related cases in both state and federal courts lay with Defendants LNV Corporation ("LNV") and C&S and not with Plaintiffs, who have been made to suffer horrendously by this abuse of judicial process perpetrated against them by Defendants.

Defendant C&S focuses the thrust of their arguments in [doc 56] on the earlier summary judgment order unconstitutionally granted to LNV on August 4, 2014 by Dale B. Tillery; and which Plaintiffs have steadfastly objected to as being unconstitutional and therefore void since its issuance. Defendant C&S repeatedly claims, as Defendant LNV has also repeatedly claimed, that the issues Plaintiffs complain about in their pleadings have already been adjudicated; and repeatedly point to the Tillery order as "proof". Defendants' tactics are not just an error in their thinking but an intentional attempt to further convolute court proceedings and obstruct justice in

the continuance of their conspiracy to deprive Plaintiffs of their civil rights.  Plaintiffs intend to

seek restitution and sanctions pursuant to 42 U.S. Code § 1983 – Civil Action for deprivation of

rights – against Defendants LNV and C&S, specifically against LNV Counsels Jeffrey

Hardaway; Luke Madole and Sammy Hooda; and Texas judges Dale B. Tillery, Gerry Cooper,

and Sally Montgomery.  In lieu of filing a lawsuit against the state of Texas Plaintiffs filed their

Notice of Constitutional Questions [doc 37] and thereby challenged the constitutionality of the

body of Texas foreclosure and eviction laws which have caused a deprivation of Plaintiffs' rights

to due process and equal protection of law under the Fifth (5th) Amendment and Fourteenth (14th)

Amendment of the United States Constitution.

    As average law abiding U.S. and Texan citizens and taxpayers who have had to work

hard all their lives to support their family, unlike the owner of Defendant LNV, Daniel Andrew

Beal, who pays a troop of attorneys to structure a corrupt business enterprise and sham tax

shelters so he can avoid paying his fair share of taxes, Plaintiffs know the value of a dollar

earned by one's own sweat and the sacrifice most Texans and Americans make to pay their tax

burden and therefore do not wish to cause Texas taxpayers, who will ultimately shoulder the

burden of such litigation costs, further burden by suing the state of Texas or the judges who have

participated with Daniel Andrew Beal, his corrupt business entities, his agents, and his attorneys

in a conspiracy to deprive Plaintiffs of their civil rights and their property, their liberty and their

quality of life in violation of the United States Constitution and  42 U.S. Code § 1983 and

through the use of mortgage related documents they know to be altered/forged and through

participation in a "Conspiracy to Commit Mail and Wire Fraud" pursuant to 18 U.S.C. 18 § 1341

consistent with the crimes of Lorraine Brown and her co-conspirators as adjudicated in a

criminal action in favor of the United States.  *United States of America v. Lorraine Brown,* Case No. 3:12-cr-198-J-25 MCR, (M.D. Fla.).

Instead of filing a complaint and seeking damages against the state of Texas and the state judicial officers named herein, Plaintiffs chose to file their Notice of Constitutional Questions [doc. 37] and invoke the legal opinions of the United States Attorney General and the Attorney General of State of Texas (who unfortunately is under indictment for securities fraud and like his predecessor, Greg Abbott, who ignored hundreds of letters from consumer victims of Beal's MGC, has displayed behavior that erodes any remaining public confidence in the integrity of the state of Texas' government) regarding the constitutionally of the aforementioned body of Texas law; as well as specific federal rules/laws identified in Plaintiffs' Notice of Constitutional Questions [doc. 37].  Plaintiffs prefer to take action that is more likely to result in cleaning up the corruption in the Texas judiciary and Texas government through appropriate changes in the law to bring it into accordance with the United States Constitution and sanctions against the officers of the courts perpetrating such corruption and obstruction of justice to prevent similar harm to other Texans and U.S. citizens rather than seek financial restitution from the state of Texas for their damages; they will however seek financial restitution and punitive damages from Defendants LNV and C&S.

Defendants LNV and C&S both undoubtedly know that Plaintiffs have challenged and continue to challenge the summary order Dale B. Tillery granted to LNV on August 4, 2014 as being void due to Tillery's deprivation of their constitutional rights to due process and equal protection of law.  These Defendants' conspiracy to abuse judicial process and to deprive Plaintiffs of their civil rights in part consists of the numerous ways in which they have prevented adjudication of Plaintiffs' motions to recuse and vacate Tillery's void judgment.  They cannot

claim they do not know about Plaintiffs' constitutional challenge to this order; and they cannot in good faith claim that they do not understand that these challenges have never been adjudicated.

Magistrate Judge David L. Horan in his findings conclusions and recommendations [doc 42 filed October 29, 2014 in Case # 3:14-cv-03322-M-BN] states with emphasis added:

> "**Plaintiffs' motion to remand and all of the other motions are not yet ripe**, but the undersigned concludes that there is no need to wait for further briefing where Judge Tillery's Motion to Remand [Dkt. No. 9] is fully briefed and should be granted…

**(Notice "not ripe" means these claims were <u>NOT</u> adjudicated)**

> The Removing Defendants cite the rule that "[a] defendant is considered fraudulently joined when there is no reasonable possibility that a plaintiff will be able to establish a cause of action in state court against the defendant." Id. at 4. The Removing Defendants argue that, "[c]onsidering all allegations in the Petition in the light most favorable to Plaintiffs under Texas's 'fair notice' pleading standard, there is simply no reasonable basis to predict that Plaintiffs might recover under any cause of action asserted against Judge Tillery in this case because he is entitled to judicial immunity, which is an absolute immunity from both suit and damages." Id. at 5.

> ...T**he Removing Defendants rely exclusively on judicial immunity to argue that there is simply no reasonable basis to predict that Plaintiffs might recover under any cause of action asserted against Judge Tillery in this case.** But, even if the Removing Defendants have made this showing as to any claim against Judge Tillery for damages, **the Removing Defendants' papers do not address any other relief that Plaintiffs seek against Judge Tillery, however likely (or not) Plaintiffs may be to succeed.** And that is the Removing Defendants' heavy burden...

> ...**As Judge Tillery himself notes in his Motion to Dismiss Subject to his Motion to Remand … under the Texas law that a state court would apply to resolve Plaintiffs' claims against Judge Tillery, 'judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in a judicial capacity or to attorney's fees, for obtaining such relief,' ...Plaintiff's petition prays for 'any other equitable relief the court deems just.**' Dkt. No. 1-5 at 24; Dkt. No. 15-5 at 24. And the Removing Defendants themselves attached Plaintiffs' pending Motion to Vacate to their removal papers. See Dkt. No. 15-7. **In that motion, Plaintiffs requested, among other things, that the state court 'sanction Judge Tillery and attorney Jeffery Hardaway so they cannot deprive another Texan of their constitutional right to due process.'** Id. at 4 of 39. **Plaintiffs' motion also attached and purported to incorporate and reallege the arguments in a prior motion to vacate in which Plaintiffs asked the state court to, among other things, 'remove Judge Tillery from the bench and sanction him and Hardaway with disbarment.'** Id. at 4 of 39, 33 of 39; see also Dkt. No. 1-7...

…Even assuming the Removing Defendants are correct that '[t]he claims against Judge Tillery for constitutional violations and the servicing and origination-based claims against LNV and MGC ... raise different factual issues ..., turn on different legal issues, and will be proven by different evidence,' Dkt. No. 17 at 16, a general description of these claims defies any conclusion that any misjoinder by Plaintiff of these claims was egregious and that the claims against Judge Tillery are wholly distinct from, and devoid of any real connection with the controversy at issue, in Plaintiffs' claims against the Removing Defendants. **Plaintiffs' claims against Judge Tillery are based on rulings that he made in a lawsuit in favor of LNV and over Plaintiffs' arguments that the subject matter of that case involved MGC, against whom Plaintiffs were involved in a separate case pending in the Dallas County courts. See Dkt. Nos. 1-5 & 15-5. By the Removing Defendants' own description, in this case, 'Plaintiffs also assert claims against LNV and MGC purportedly arising from the origination and servicing of their loan,' Dkt. No. 17 at 2 – which are matters at least related to the case against LNV out of which Plaintiffs allege that their claims against Judge Tillery arose**….

**The Removing Defendants' and Judge Tillery's motions also suggest that Judge Tillery could consent only to removal of claims other than the claims against him or that this Court could sever only the claims against Judge Tillery and thereby cure the lack of consent problem. Those arguments are not well taken...**"

Counsel Devin for Defendant C&S, if he has read the court record and one would hope he has, knowingly makes frivolous accusations against Plaintiffs and knowingly makes false claims about the litigation history in their motion for summary judgment [doc 56]; Counsel Devin knows that Plaintiffs' claims specific to Tillery's void order have **<u>NOT</u>** yet been adjudicated.

Plaintiffs' constitutional claims are ripe for adjudication, and have now been brought before the Honorable Judge Jane Boyle and this court.  Plaintiffs opted to remain in the federal court specifically because the federal court has original jurisdiction over constitutional questions and the matter of Tillery's void order is the crux of all the injustices and intentional deprivations of Plaintiffs' civil rights that have followed it.

If Tillery's order is void, which it most certainly is specifically because he prevented Plaintiffs from being heard (i.e. Tillery denied them due process) then it logically follows that none of Plaintiffs' claims have ever been adjudicated.

No matter how much Counsel Devin and the numerous Counsels for Defendant LNV scream "Plaintiffs' claims have been adjudicated" just like when one is confronted with a lunatic screaming out loud "The sky is red!" any reasonable person would look at the sky and see for themselves it is blue, and they will report what they actually discerned for themselves provided their opinion and judgment has not been corrupted by Daniel Andrew Beal's willingness to "pay them well" to say otherwise. [See Breitlings' motion for judicial notice of adjudicative facts in _Southgate_ and _Bemont_ filed on August 18, 2014 into case DC-14-04053, _LNV v Breitlings_, in support of their motion to vacate Tillery's void order.  Tillery violated Rule 201 and thereby abused judicial discretion by failing to take judicial notice.]

Counsel Devin for Defendant C&S throughout his pleadings in [doc 56] claims res judicata and estoppel based on Tillery's void order, however "a void order amounts to nothing and has no force as res judicata" or estoppel. _Arkansas State Highway Commission v. Coffelt_, 301 Ark. 112, 782 S.W.2d 45 (1990).  Additional case law specific to res judicata and void orders is cited below:

> "Because this claim challenged the subject matter jurisdiction of the trial court, it was not barred by res judicata because a void judgment may be challenged at any time." See _State v. Wilson_ (1995), 73 Ohio St.3d 40, 45-46, 652 N.E.2d 196, 200, fn. 6.

> "A void judgment cannot constitute res judicata. Denial of previous motions to vacate a void judgment could not validate the judgment or constitute res judicata, for the reason that the lack of judicial power inheres in every stage of the proceedings in which the judgment was rendered." _Bruce v. Miller_, 360 P.2d 508, 1960 OK 266 (Okla. 12/27/1960).

Note: None of Plaintiffs' previous motions to vacate Tillery' void order were ever heard or adjudicated; and they were never denied.

> "A Void Judgment Is a Void Judgment Is a Void Judgment-*Bill of Review and Procedural Due Process in Texas*, 40 Baylor L. Rev. 367, 378-79 (1988).

> "A 'void' judgment, as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack. No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen the old wound and once more probe its depths. And it is then as though trial and adjudication had never been." *Fritts v. Krugh*. Supreme Court of Michigan, 92 N.W.2d 604, 354 1997.

> "The doctrine of res judicata is predicated upon a valid judgment and a void judgment may not be used to invoke its application." *Conway v. Sanset*, 59 Misc. 2d 666, 300 N.Y.S.2d 243, 247 (1969); 46 Am. Jur. 2d Judgments § 440.

> "Where a void judgment has been rendered and the record in the cause, or judgment roll, reflects the vice, then the court has not only the power but the duty and even after the expiration of the term to set aside such judgment." *Harrison v. Whiteley*, Tex.Com.App., 6 S.W.2d 89.

> "Again, it has been said to be in law no judgment at all, having no force or effect, conferring no rights, and binding nobody. It is good nowhere and bad everywhere, and neither lapse of time nor judicial action can impart validity." *Commander v. Bryan*, 123 S.W.2d 1008, (Tex.Civ.App., Fort Worth, 1938, n.w.h.); 34 Tex.Jur., Sec. 262, page 177; *Maury v. Turner*, 244 S.W. 809, (Tex.Com.App., 1922).

Hence since Tillery's judgment, which Counsel Deven, so heavily relies on to excuse his client's culpable actions, is void Defendant C&S has not met the standards of law and has failed to surmount his client's burden of proof pursuant Rule 56(c)(1)(B) because C&S has failed to show that the materials cited in [doc 56] establish the non-existence of a genuine dispute.

In paragraphs 11 and 12 of [doc 56] Defendant C&S states:

> "Plaintiffs describe two claims against the Codilis firm. First, Plaintiffs say the Codilis finn is included in a list of attorneys published by an entity called Lender Processing Services, and that the Codilis finn uses a-software program licensed by Lender Processing Services to prepare documents. According to the Plaintiffs, the integrity of the LPS software program has been compromised by the criminal acts of Lorraine Brown, and the Codilis finn and its client, LNV Corporation, are guilty of unspecified criminal acts (Dkt. 53, pp 1-3, Exhibit B)."

In paragraph 14 of [doc 56] Defendant C&S states:

> "Second, Plaintiffs contend the Codilis finn acted as a debt collector for purposes of
> the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. Plaintiffs say they
> responded to communications from the Codilis finn by disputing the debt obligation
> and mortgage made the basis of this lawsuit. But, according to Plaintiffs, the Codilis
> firm failed to properly investigate Plaintiffs' claim that LNV Corporation was not
> the holder of the mortgage debt, and was not legally entitled to foreclose on the
> underlying defaulted note. According to Plaintiffs, the Codilis finn proceeded with
> collection efforts, including filing an In Rem foreclosure lawsuit, despite Plaintiffs'
> contention that LNV Corporation was not the holder in due course of the underlying
> promissory note, and the debt was disputed (Dkt. 53, pp. 2-13, Exhibits D-L)."

(Note the consistent misspelling of the word "firm" as "finn" has been done by Counsel
Devin for Defendant C&S and is not an error on the part of Plaintiffs.)

Apparently Counsel Devin fails to grasp the actual claims Plaintiff has made against his
client Defendant C&S.  He seems to think that Plaintiffs make only two claims against his client,
but in their clarification [doc 53] and their other pleadings Plaintiffs specify that Defendants
C&S and LNV have prepared and filed via the mail and via electronic (wire) transmissions with
county recorders offices across the country including Dallas County and including assignments
of deeds of trust specific to Plaintiffs' mortgage and plaintiffs' property which Plaintiff does and
has claimed were forged by Defendant C&S and/or their client Defendant LNV or LNV's other
agents in a manner consistent with the forged and falsified assignments of deed and other
mortgage related documents prepared by Lorraine Brown and her co-conspirators for which she
was criminally convicted by the United States.

Plaintiffs challenged the authenticity of the assignment of deed of trust that LNV claimed
was the basis for its standing to foreclose on Plaintiffs' property.  Two assignments filed with
Plaintiffs' county dated March 21, 2008 were executed in California. The first assignment
alleges that Deutsche Bank National Trust as Trustee FKA Bankers Trust Company of California

N.A. as Trustee as "assignor" grants to Ellington Mortgage Partners, L.P. "all beneficial interest

under the certain Deed of Trust" endorsed by Christopher Corcoran as president of Deutsche

Bank National Trust as Trustee and notarized by Jeanne Stafford, commission # 172936 Orange

County California. The second assignment endorsed by K.C. Wilson as Attorney-In-Fact for

Ellington Mortgage Partners, L.P. as "assignor" and notarized by Jeanne Stafford.  Plaintiff

JoAnn Breitling personally phoned Jeanne Stafford and Todd Craig from Ellington Mortgage

Partners, L.P. ("Ellington"). Craig told her that Ellington did not purchase Plaintiffs' note on

March 21, 2008, that although no document existed to show how or whether Ellington acquired

Plaintiffs' note they created (i.e. fabricated) one for the transaction with Defendant LNV.

Stafford told Plaintiff JoAnn Breitling that K.C. Wilson hired her to notarize documents and that

she and KC signed 500 to 800 documents a day for weeks; by her own admission Stafford acted

as a "robo-signer"which is consistent with the acts committed by Lorraine Brown and her co-

conspirators for which Brown was criminally convicted in favor of the United States.  *United

States of America v. Lorraine Brown*.

Plaintiffs filed a motion for judicial notice of the Brown case and by all appearances

Tillery violated Rule 201 (Texas Rule 201 mimics the federal rule) and ignored Plaintiffs'

motion, and by doing so violated Rule 201 which does not permit judicial discretion.

Defendant C&S knew that Plaintiffs challenged the authenticity of these specific deed

assignments (and in Texas if the deed assignment is not valid then the party claiming a debt

cannot foreclose on one's property to collect that debt.)  This is evidenced by the debt dispute

and debt validation demand letters written by Plaintiffs and acknowledged by Defendant C&S.

Defendant C&S knowingly failed to validate their client's claim of debt which they know they are required to do pursuant to the FDCPA. Therefore Defendant C&S knowingly moved forward with a foreclosure action when it knew or should have known its client lacked standing to foreclose. See Plaintiffs' Exhibit D to [doc 53].

To further clarify Plaintiffs' claims against Defendant C&S, they include:

1. Failure to validate their client's claim of debt pursuant to the FDCPA;

2. Moving forward with a foreclosure action in behalf of their client while knowing Plaintiffs disputed the debt;

3. Neither Defendant C&S nor their client ever sent Plaintiffs a "20 day notice" or Demand for Payment (Notice of Default) and Notice of Intent to Accelerate pursuant to Texas Property Code § 51.002(d);

4. C&S attorney Jeffery Hardaway styled the foreclosure complaint C&S prepared as an "in rem" action with intent to deceive the court;

5. C&S attorney Jeffery Hardaway knowingly and intentionally styled the foreclosure complaint in a way that violated Texas Rule 736 of Civil Procedure with intent to deceive so as to execute a non-judicial foreclosure sale. (See [doc 58 in 3:14-cv-03322-M-BM]);

6. Forging mortgage related documents using the LPS system and submitting them to the court as genuine to support their client's claims when they knew or should have known the documents were not genuine;

7. Preparing and submitting affidavits to the court which C&S attorney Jeffery Hardaway knew or should have known did not meet the standards of the rules of evidence because the affiant did not have personal knowledge of the matters to which they testified, and/or that the affiants' sworn testimony was perjured;

8. C&S's employee Counsel for LNV Jeff Hardaway had improper ex parte communications with Dale B. Tillery regarding his rulings prior to the August 4, 2014 hearing where Tillery denied Plaintiffs their rights to due process and equal protection of law.

This last claim by Plaintiffs is very serious as it is indicative of bribery. The fact that Jeff Hardaway and Tillery had such improper communications is evidenced from courts records directly.  C&S's employee Counsel for LNV Jeff Hardaway signed an agreed to motion to postpone mediation in *LNV v Breitlings*, case DC-14-04053 which was filed on July 29, 2014. A

copy of this court record is attached herein as Plaintiffs' <u>Exhibit A</u>.  Jeff Hardaway had an

obligation to notify Plaintiffs prior to the August 4, 2014 hearing if he had changed his mind

about agreeing to this motion. He failed to do so.

On July 30, 2014 The Lane Law firm prepared and filed a motion for a 30-day

continuance in <u>*LNV v Breitlings*</u>, case DC-14-04053. A copy of this court record is attached

herein as Plaintiffs' <u>Exhibit B</u>.  The motion for continuance was to allow Plaintiffs time to find a

new attorney and it was reasonable.  Any impartial judge would have granted such a

continuance; yet Tillery denied it immediately without any reason or cause.  This act alone casts

doubt on Tillery's impartiality. But Jeffery Hardaway could not have known Tillery would make

such an unreasonable ruling before the hearing unless this fact was communicated to him prior to

the hearing, and long enough prior to the hearing to engage a mediator to be present in the court

on August 4, 2014.

Jeffery Hardaway did in fact arrange for a mediator to join him in court that day.  Since

he had signed the joint objection to mediation at such an early stage in the case on July 29, 2014;

this would be an illogical thing for him to do.

Section 154.028(a) of Texas Civil Practice and Remedies Code - MEDIATION

FOLLOWING APPLICATION FOR EXPEDITED FORECLOSURE – states:

> "A citation for expedited foreclosure may be served in the manner provided by Rule
> 106 or 736, Texas Rules of Civil Procedure.  Following the filing of a response to an
> application for an expedited foreclosure proceeding under Rule 736.5, Texas Rules of
> Civil Procedure, a court may, in the court's discretion, conduct a hearing to determine
> whether to order mediation.  A court may not order mediation without conducting a
> hearing.  The petitioner or respondent may request a hearing to determine whether
> mediation is necessary or whether an application is defective."

As Pro se litigants Plaintiffs did not know about this Texas code, and only discovered it on August 12, 2015 through one of those serendipitous moments they attribute to Divine intervention.  However both Defendant C&S's employee LNV's Counsel Jeff Hardaway and Judge Tillery would have known about this legal requirement.

Plaintiffs did however know because of their earlier litigation that mediation was somehow required before going to trial.  This is why they understood that the fact that a mediator showed up in court and Jeff Hardaway claimed Defendant C&S had paid for the mediator and was prepared to mediate was significant. They want to make it clear to this court that no mediation ever took place.  The mediator took no formal role and was there for show purposes only.  Tillery granted his order without any opportunity for mediation.

In Plaintiffs' "PLAINTIFF'S RESPONSE TO LNV AND MGC'S OBJECTION TO REQUEST FOR INJUCTIVE RELIEF" [doc 58 in 3:14-cv-03322-M-BM] they elaborate in detail about how the complaint styled by Jeff Hardaway was intended to deceive.  Defendants C&S and LNV failed to file a verified application for expedited foreclosure pursuant to Rule 736 Tex Civ. Proc. They knew how to file a properly application for expedited foreclosure pursuant to Rule 736 but intentionally did not do so and instead Jeff Hardaway styled a deceptive "in rem" foreclosure complaint. They did this in collusion with intent to deceive so they could say Plaintiffs had a judicial foreclosure when in fact Defendants C&S and LNV sold Plaintiffs' property in a non-judicial sale.  Their motive in this deception was to push through a foreclosure sale as fast as possible (because this was an act of retaliation against the Plaintiffs) and to structure a complaint that would allow them to circumvent Texas laws.

Tillery appears to have been in collusion with Defendants C&S and LNV plan to as quickly as possible deprive Plaintiffs of their property very early on as evidenced by his attempt to grant LNV a default judgment on July 7, 2014.

However the incident with Hardaway arranging for a mediator to be present is indicative of collusion between Defendants C&S'e employee LNV's Counsel Jeffery Hardaway and Tillery and a rigging of Tillery's rulings to give LNV's Counsel Jeffery Hardaway and ultimately his client LNV what they wanted – an order that would allow them to push forward with a foreclosure sale.  (These Defendants were so intent on selling Plaintiffs' property in a non-judicial sale that they did so in direct violation of Texas Rule 736.11 of Civil Procedure which provided Plaintiffs an automatic stay and dismissal of the foreclosure case similar to the automatic stay of a bankruptcy action.)  See [doc 58 in 3:14-cv-03322-M-BM].

It is certain that Tillery did not make such a drastically unreasonable ruling through the kindness of his heart towards LNV's Counsel Jeffery Hardaway and that some motivation must have existed for him to do this.  Tillery must have been offered and received some financial incentive or other personal gain or benefit in exchange for participation in a scheme that violated so many Texas rules; and which Tillery knew or should have known were being violated.

It is a crime for a judge to accept or solicit a personal gain or benefit in exchange for a ruling.  This crime is called "bribery" and it is a federal felony offence under 18 U.S. Code § 201 and another activity defined by 18 U.S. Code § 1961 et seq as "racketeering activity" along with mail fraud under 18 U.S. Code § 1341 which is what Lorraine Brown was convicted pursuant to for forging mortgage related documents and mailing them to county land recorders offices just like Defendants LNV and C&S do and did in relation to Plaintiffs' assignments of deed.

Defendants C&S and LNV therefore have engaged in monetary transactions in property derived from specified unlawful activity pursuant to 18 U.S. Code § 1957, another "racketeering activity" defined by 18 U.S. Code § 1961 et seq.

Plaintiffs hereby pursuant to 18 U.S. Code § 4 inform the Honorable Judge Jane Boyle that they have knowledge of the actual commission of a felony cognizable by a court of the United States specific to Defendants C&S and LNV and LNV's agents including but not limited to criminal actions specifically done by or ordered by Daniel Andrew Beal, Jeffery Hardaway, Luke Madole, Sammy Hooda, Dale B. Tillery, Gerry Cooper, and Sally Montgomery. 18 U.S. Code § 4 states:

> "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both"

Plaintiffs further move this court and Judge Boyle to report these crimes to the FBI and the United States Attorney General and any other law enforcement agency with authority to investigate these criminal activities.

Plaintiffs are victims of a crime and pursuant to 18 U.S. Code § 3663A they are entitled to mandatory restitution for their damages, including damages for mental anguish and pain and suffering.  Pursuant to the FDCPA they are entitled to actual damages, including damages for mental anguish and pain and suffering, as well as punitive damages. Plaintiffs have also been victims of a conspiracy to deprive them of the civil rights and are entitled to relief pursuant to 42 U.S. Code § 1983 as well. And since many of the crimes perpetrated against them as not isolated instances but acts consistent with racketeering activities perpetrated against numerous other

LNV/Beal/LPS victims by a corrupt organization pursuant to 18 U.S. Code § 1961 they are

entitled to treble damages.

> Defendant C&S claims in paragraphs 27 and 28 of [doc 56] that:

>> "The Codilis finn is a law finn, and acted as foreclosure counsel for LNV Corporation
>> in connection with the creditor's efforts to collect on the Breitling note (Dkt. 53,
>> Exhibits D-L; Exhibits 1 and 2). The Breitling Plaintiffs' claims against the Codilis
>> finn are based on actions taken by the Codilis finn in the course of its representation
>> of LNV. Texas recognizes a qualified attorney immunity defense against claims by
>> nonclients for actions taken by a lawyer in connection with representing a client in
>> litigation. Cantey Hanger v. Byrd, 2015 Tex. Lexis 619 (Tex. 2015). The Breitling
>> Plaintiffs' claims against the Codilis firm are barred by the doctrine of attorney
>> immunity, and their claims raise no fact issues that might support an exception to the
>> doctrine."

> (Note again that the consistent misspelling of the word "firm" as "finn" is not an error on

the part of Plaintiffs but is quoted directly from Counsel Devin's pleading.)

> At first glance, a claim brought by one party in litigation against the other party's attorney

appears to violate the sacred principle that an attorney owes no duty to his adversary. However,

where attorneys are alleged to have made false statements to their adversaries, where attorneys'

conduct violates an ethical rule, or where attorneys allegedly have conspired with their clients to

commit a fraud this principle of immunity does not apply.  Courts have determined that if an

attorney's conduct rises to the level of fraud or a serious and intentional ethical breach, it may be

outside the scope of the immunity and may result in liability.

> In August 2014 a Texas appeals court reversed a grant of attorney immunity to Dallas

firm Mackie Wolf & Zientz & Mann PC, saying although the actions the firm took were on

behalf of its clients, it couldn't escape an allegation that it helped perpetuate the use of a

fraudulent promissory note.  Mackie Wolf was representing The Bank of New York Mellon

Corp. and Ocwen Loan Servicing LLC in a foreclosure action against Luis and Linda Santiago

over a home equity loan, and was eventually named as a defendant in the Santiagos' suit alleging

BNY Mellon and Ocwen conspired to commit fraud by producing and presenting a counterfeit

promissory note to show the bank owned the property in dispute.  _Santiago et al. v. Mackie Wolf_

_Zientz & Mann PC_, case number 05-13-00620-CV, in the Fifth Court of Appeals of the State of

Texas. "A lawyer's protection from liability claims arising out of the representation of a client is

not without limits," the opinion said. "Texas courts have recognized exceptions to the attorney

immunity defense based on an attorney's fraudulent or malicious conduct, even if the attorney's

conduct was in the course of representing their client."  The court further wrote:

> "An attorney can be held liable by a third party for actions that are not part of the
> discharge of his duties to his client… As such, attorneys acting on behalf of their clients are not
> shielded from liability for their fraudulent conduct because fraudulent acts are entirely 'foreign
> to the duties of an attorney.' Furthermore, an attorney is also liable if he knowingly enters into a
> conspiracy to defraud a third person in the course of representing his client. And under certain
> circumstances, attorneys may also be liable to a third party for other torts, such as negligent
> misrepresentation, despite the absence of a general negligence duty to nonclients."

In _Lucas v. Hamm_, 56 Cal.2d 583 (1961), cert. denied, 368 U.S. 987 (1962) the court

rejected the argument that expanding attorneys' liability to non-clients would impose undue

burden on the profession and rejected the argument that there would be unlimited liability.

Plaintiffs have made several very specific claims about of how Defendant C&S has

violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq ("FDCPA")  The

statutory purpose and legislative history of the FDCPA do not support Defendant C&S's attorney

immunity argument.  Congress legislates against a background of common-law adjudicatory

principles. Where a common law principle is well established, "... the courts may take it as given

that Congress has legislated with an expectation that the principle will apply except when a

statutory purpose to the contrary is evident." _Astoria Fed. Savings & Loan Assn. v. Solimino_, 501

U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

As originally passed, the FDCPA excluded "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of "debt collector." But Congress repealed the attorney exemption in 1986 without creating a litigation or litigation-related exception for attorneys.

When a debtor sued an attorney under several provisions of the FDCPA the Seventh Circuit held the attorney was subject to the FDCPA, disagreeing with the Sixth Circuit's contrary opinion in *Green v. Hocking*, 9 F.3d 18 (6th Cir.1993). The Supreme Court affirmed the Seventh Circuit, rejecting the rationale set forth in *Green*.   In *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the Supreme Court unanimously held that the Act applies to lawyers "litigation activities."  Other federal remedial statutes have been found to abrogate state law immunities. See, e.g., *Nix v. O'Malley*, 160 F.3d 343 (6th Cir.1998), holding that defendant and his attorneys were not immune from civil liability.  See also, Rosania v. Taco Bell of America, 303 F.Supp.2d 878 (N.D.Ohio 2004), holding that the defendant/employer's counterclaim filed in plaintiff's FMLA suit could constitute actionable retaliation under the FMLA, and rejecting the argument that an absolute privilege applied to the filing of the counterclaim. Because such a broad privilege could interfere with the policies underlying Title VII and ADA, the state privilege must yield. See also, *Martinez v. California*, 444 U.S. 277, 284, n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) [state immunity law does not bar federal § 1983 claim]; *Irwin v. Mascott*, 112 F.Supp.2d 937, 962-63 (N.D.Cal.2000) [California litigation privilege not applicable to FDCPA claim].

In *Blevins v. Hudson & Keyse, Inc.* No. 1:03-CV-241, 395 F.Supp.2d 655 (2004) the Court concluded that the Attorney Defendants are not immune from Plaintiff's FDCPA complaint under the state law litigation privilege or attorney immunity doctrines. Federal statutes

are presumptively valid, even in the face of a constitutional challenge. See _Fullilove v. Klutznick_, 448 U.S. 448, 472, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). When it passed the FDCPA in 1977, Congress specifically found that the practice of debt collection had grown to the point that it "substantially affected" interstate commerce. Congress has broad power to legislate in that field. See, e.g., _Perez v. United States_, 402 U.S. 146, 155-157, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), rejecting constitutional challenge to the Consumer Credit Protection Act which regulates purely intrastate "loan sharking." Congress found that such intrastate activities sufficiently affect interstate commerce to warrant federal regulation.  Further, when Congress amended the FDCPA to remove the attorney exemption from the Act's requirements, it found that attorneys who "regularly" collect debts must follow the Act's requirements when collecting debts. There is nothing in the statute that purports to regulate the practice of law, only the practice of debt collection. The Attorney Defendants do not argue that conforming their conduct to the FDCPA would require them to violate any law or rule that governs their legal practice. Even if there were such a conflict, however, the Supremacy Clause of the Constitution expressly provides that state law must yield to the federal statute.

Defendant C&S denies Plaintiffs' allegations in paragraphs 13 and 15 of [doc 56] and argues that the Court need not address the merits of Plaintiffs claims, because they was previously raised by Plaintiffs and fully adjudicated by Judge Tillery in Cause No. DC-14-04053.  They also argue in paragraphs 24 through 26 of [doc 56] that:

> "The Texas doctrine of collateral estoppel, or issue preclusion, is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. A party seeking to establish the bar of collateral estoppel must establish: ( 1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the I first action; and (3) the parties were cast as adversaries in the first action. Strict mutuality of parties is not required. To satisfy due process, it is only necessary that the party against whom the doctrine is asserted, in this case, the

Breitling Plaintiffs, was a party, or in privity with a party, in the first action. *Sysco Food Servs. V. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)."

The case cited by Counsel Devin in behalf of Defendant C&S is not even remotely similar to the present case before this court.  And in fact the citation supports Plaintiffs' position and not Defendant C&S's position; namely the to establish collateral estoppel the party seeking it (Defendant C&S in the present case) must establish that the facts sought to be litigated in the second action were fully and fairly litigated in the first action. Here Plaintiffs have unequivocally since August 18, 2014 denied that their claims of fact were "fully and fairly litigated" in the first action; and they have moved this court to vacate Tillery's void order.  And as seems to be often the case with attorneys representing Beal affiliated parties the later part of the citation is taken out of context because the satisfaction of due process requires much more than they imply.

Plaintiffs have and do consistently argue that these claims were **NEVER adjudicated** by Tillery and that this is the cause for his order being void.  The record is clear on this fact.  And either Counsel Devin's ability to read is as challenged as his ability to spell appears to be, or it can be deduced that he knows Plaintiffs do and have claimed that Tillery's order is **VOID** due to the fact that Tillery denied them their constitutional rights to due process and equal protection of law because he failed to hear (i.e. adjudicate) any of their claims.

The first time any judge has actually listened to Plaintiffs' claims was at the July 22, 2015 status conference hearing in this court before Judge Boyle.

Plaintiffs' motion to vacate Tillery's void judgment is before this court now and that matter should be addressed prior to consideration of Defendant C&S's motion for summary judgment [doc 56].  This Honorable Court has an obligation and a duty to vacate Tillery's void

order and to address Plaintiffs' claims specific to Defendants LNV and C&S because Plaintiffs'

claims have thus far not been addressed on their merits, nor have they ever been adjudicated.

> "A judgment is a 'void judgment' if the court that rendered the judgment acted in a manner inconsistent with due process." _Klugh v. U.S._, D.C.S.C., 610 F. Supp. 892, 901.

Tillery's judgment was rendered in a manner inconsistent with due process.  This can be

ascertained from the record alone.  However Plaintiffs can produce a credible witness to the

August 4, 2014 hearing and are prepared to bring this witness before the court to testify should

the court decide to hold a hearing on the matter of Tillery's void judgment.

> "The transcript shows a void judgment. All proceedings based thereon are void." _Wedel v. Green_, 70 Mich 642.

> "Where a void judgment has been rendered and the record in the cause, or judgment roll, reflects the vice, then the court has not only the power but the duty and even after the expiration of the term to set aside such judgment." _Harrison v. Whiteley, Tex.Com.App._, 6 S.W.2d 89.

> This court in _Neugent v. Neugent_, Tex.Civ.App., 270 S.W.2d 223, followed and applied the rule announced in the _Harrison-Whiteley_ case. The Supreme Court, speaking through Folley, Commissioner, in _Bridgman v. Moore_, 143 Tex. 250, 183 S.W.2d 705, at page 707, said: "The court has not only the power but the duty to vacate the inadvertent entry of a void judgment at any time, either during the term or after the term, with or without a motion therefore."

> "A void judgment has been termed mere waste paper, an absolute nullity; and all acts performed under it are also nullities. Again, it has been said to be in law no judgment at all, having no force or effect, conferring no rights, and binding nobody. It is good nowhere and bad everywhere, and neither lapse of time nor judicial action can impart validity." _Commander v. Bryan_, 123 S.W.2d 1008, (Tex.Civ.App., Fort Worth, 1938, n.w.h.); 34 Tex.Jur., Sec. 262, page 177; _Maury v. Turner_, 244 S.W. 809, (Tex.Com.App., 1922).

> "A party affected by void judicial action need not appeal." _State ex rel. Latty_, 907 S.W.2d at 486. "If an appeal is taken, however, the appellate court may declare void any orders the trial court signed after it lost plenary power over the case."

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." _Ex parte Seidel_, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001).

"A void judgment may be attacked at any time by a person whose rights are affected." See _El-Kareh v. Texas Alcoholic Beverage Comm'n_, 874 S.W.2d 192, 194 (Tex. App.--Houston [14th Dist.] 1994, no writ); see also _Evans v. C. Woods, Inc._, No. 12-99-00153-CV, 1999 WL 787399, at *1 (Tex. App.--Tyler Aug. 30, 1999, no pet. h.).

"A void judgment is a 'nullity' and can be attacked at any time." _Deifik v. State_, No. 2-00-443-CR (Tex.App. Dist.2 09/14/2001)

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Since the trial court's dismissal "with prejudice" was void, it may be attacked either by direct appeal or collateral attack" _Ex parte Williams_, No. 73,845 (Tex.Crim.App. 04/11/2001); _Ex parte Spaulding_, 687 S.W.2d at 745 (Teague, J., concurring); See _Ex parte Shields_, 550 S.W.2d at 675.

"Strictly speaking a void judgment is one which has no legal force or effect whatever. It is an absolute nullity and such invalidity may be asserted by any person whose rights are affected, at any time and at any place. It need not be attacked directly, but may be attacked collaterally whenever and wherever it is interposed. Usually it carries the evidence of its invalidity upon its face, while a voidable judgment is one apparently valid, but in truth wanting in some material respect; in other words, one that is erroneous. Such vice may be the want of jurisdiction over the person or other similar fundamental deficiency, but which vice does not affirmatively appear upon the face of the judgment." _Billy Dunklin v. A. J. Land et ux_. 297 S.W.2d 360 (12/21/56).

Also, a void judgment has been defined as "one which has no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at anytime and at any place directly or collaterally." _Black's Law Dictionary_; _Reynolds v. Volunteer State Life Ins. Co_., 80 S.W.2d 1087, (Tex.Civ.App., Eastland, 1935, writ ref.); _Gentry v. Texas Department of Public Safety_, 379 S.W.2d 114, 119, (Tex.Civ.App., Houston, 1964, writ ref., n.r.e., 386 S.W.2d 758). It has also been held that "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside. It may be impeached in any action direct or, collateral." _Holder v. Scott,_ 396 S.W.2d 906, (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).

Once Tillery's void judgment is vacated, as it must be vacated, then all the arguments presented by Counsel Devin in [doc 56] in behalf of his client Defendant C&S crumble and turn into mere dust that blows away in wind of justice.

As pro se litigants Plaintiffs and the other LNV/Beal victims are in many ways at the mercy of the court because the bottom line is that no matter how intelligent they may be, or how skilled they are at writing they do not have the benefit of years of law school and they are learning by the seat of their pants as they go and it is only through God's grace they have made it this far.  Plaintiffs have explained to your Honor that this is not just about them, or just about their own property; it is about all the LNV/Beal/LPS victims and their numbers are ever growing.

As Plaintiffs stated at the start of this pleading they wish to move the court for a counter/cross motion for summary judgment under the same principles and arguments pursuant to Rule 56 used by Defendant C&S.  Plaintiffs believe that enough evidence exists on the record for the Honorable court to make a summary decision to grant Plaintiffs the relief they seek from Defendant C&S.

Recognizing that the probability is high that as pro se litigants Plaintiffs may fail to properly support an assertion of fact or fail to properly address Defendant C&S's assertion of fact as required by Rule 56(c), Plaintiffs remind this honorable court that as the guardian of the United States Constitution it has an obligation to protect and defend Plaintiffs' constitutional rights and Plaintiffs move this Honorable court to in the alternative to considering Plaintiffs request to make a cross/counter motion for summary judgment to issue any other appropriate order pursuant to Rule 56(e)(4) and/or to grant summary judgment for a nonmovant (Plaintiffs in this case) pursuant to Rule 56 (f)(1).

Plaintiffs are entitled to relief and restitution pursuant to the FDCPA, as crime victims pursuant to 18 U.S. Code § 3663A and as victims of a conspiracy to deprive them of the civil rights they entitled to relief pursuant to 42 U.S. Code § 1983.  Because the crimes perpetrated

against them are not isolated instances but part of a pattern of crimes perpetrated against numerous other LNV/Beal/LPS victims by a corrupt organization and because those crimes are consistent with racketeering activities pursuant to 18 U.S. Code § 1961 Plaintiffs are entitled to treble damages.

Because Plaintiffs were only making a clarification in [doc 53] and did not think this would be treated as if it were an amended complaint they did not attempt to place a monetary value to their actual damages caused by Defendant C&S but will do so here.

Defendant C&S's debt collection practices that violated the FDCPA and its wrongful foreclosure caused Plaintiffs' credit scores to decrease by more than 90 points.  Because of their age and the high probability they will never be able to repair this damage to their credit during their remaining lifetimes a fair and reasonable cost estimate for this damage is $500,000. Plaintiffs' litigation costs, even being pro se have exceeded $12,000.  Plaintiffs have been publically embarrassed and humiliated; have lost their enjoyment of life; their health has declined and they both suffered depression and severe mental anguish as a result of Defendant C&S' unfair debt collection practices and other illegal actions perpetrated against them. Plaintiffs believe that a fair and just estimate for these damages attributable to Defendant C&S's actions would be in the range of $1,000,000.

WHEREFORE, Plaintiffs pray that your Honorable Judge Jane Boyle deny Defendant C&S's motion for summary judgment and grant Plaintiffs a cross/counter summary judgment and order Defendant C&S to pay Plaintiffs treble their actual damages of one million two hundred thousand fifty six thousand dollars ($1,256,000) which is equal to ½ of the $500,000 of damage to Plaintiffs' credit score plus ½ of the $12,000 Plaintiffs have had to pay in litigation

costs so far (the other half should be paid by Defendant LNV) plus $1,000,000 in pain and

suffering and mental anguish damages; and to award punitive damages in an amount adequate to

ensure Defendant C&S will be deterred from harming another homeowner as they have harmed

Plaintiffs; and/or to award any other amount deemed just and appropriate; or in the alternative to

issue any other appropriate order pursuant to Rule 56(e)(4) and/or to grant summary judgment

for a nonmovant (Plaintiffs in this case) pursuant to Rule 56 (f)(1).  Plaintiffs also pray this

Honorable court sanction attorney Jeffery Hardaway with disbarment for his participation in a

conspiracy to deprive Plaintiffs of their civil right and for his participation in a criminal

conspiracy to defraud Plaintiffs and the courts so as to deprive Plaintiffs of their property.


Respectfully Submitted,



JoAnn Breitling                                        Samuel Breitling

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was

served upon all counsel of record and pro-se parties via the Court's CM/ECF system, email,

and/or regular mail, and/or certified mail with return receipt requested; and that a correct copy of

the foregoing document was served upon The United States Attorney General and the Texas

Attorney General at the addresses below:


Attorney General of Texas,
Ken Paxton
P.O. Box 12548
Austin, Texas 78711

Marc Cabera, Jason Sanders,
Robert Mowery
Locke Lord LLP
2200 Ross Ave, # 2200
Dallas, TX 75201

Macdonald Devin, PC
Codilis & Stawiarski
3800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

U. S. Department of Justice,
Loretta Lynch,
U. S. Attorney General
950 Pennsylvania Ave NW
Washington, DC  20530


_____
JoAnn S Breitling

_____
Samuel G. Breitling

# Plaintiffs' Exhibit A

FILED
DALLAS COUNTY
12/29/2014 3:07:26 PM
GARY FITZSIMMONS
DISTRICT CLERK

**Cause No. DC-14-04053**

| | | |
|---|---|---|
| LNV CORPORATION,<br>ITS SUCCESSORS AND ASSIGNS, | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |
| SAMUEL G. BREITLING, | § | |
| JO ANN BREITLING, | § | |
| GMAC MORTGAGE, INC., | § | |
| NORTHWEST MORTGAGE, INC., | § | |
| PINNACLE REALTY ADVISORS, INC., | § | |
| and PALISADES ACQUISITION V, LLC | § | |
| | § | |
| **Defendants.** | § | 134TH JUDICIAL DISTRICT |

## JOINT OBJECTION TO COURT ORDER TO MEDIATION AND MOTION TO RECONSIDER ORDER APPROVING MEDIATOR FEES

TO THE HONORABLE JUDGE OF THE 134TH DISTRICT COURT:

Pursuant Civil Practice and Remedies Code § 154.022(b), Defendants Samuel G. Breitling and Jo Ann Breitling (the "Breitlings"), and Plaintiff LNV Corporation, its Successors and Assigns (together "the parties"), file this Joint Objection to Court Order Mediation ("Joint Objection") and Motion to Reconsider the Order Approving Mediator Fees ("Motion"). In support this Joint Objection and Motion, the parties respectfully show the Court as follows:

## I. INTRODUCTION

1. Plaintiff recently brought this lawsuit in order to foreclose on the Breitlings' home. One week after Defendants filed their Answer, the Court ordered the parties to mediation, scheduled for August 4, 2014. However, to date, no discovery has been conducted by either party in this case and trial is

set for March 30, 2015. Both Plaintiff and Defendants object to the order to mediation in this case because mediation would be futile at this early stage of the case.

## II. <u>PROCEDURAL HISTORY</u>

2.      Plaintiff recently brought this lawsuit for non-judicial and alternatively, judicial foreclosure. *See Plaintiff's Original Petition for Foreclosure.*

3.      The Breitlings were served with this lawsuit less than two months ago—on June 5, 2014. The Breitlings timely filed an answer on June 23, 2014.

4.      The Court signed a Scheduling Order on July 2, 2014 and set this case for non-jury trial on March 30, 2015. *See Uniform Scheduling Order.*

5.      In the Court's signed Scheduling Order, paragraph six states that the parties shall mediate this case no later than sixty (60) days before Trial Setting, unless otherwise provided. Yet, less than a month after Defendants answered Plaintiff's lawsuit, the Court signed an order on July 2, 2014 ordering the parties to mediate.

6.      Plaintiff filed a Motion for Summary Judgment on July 7, 2014 and set a hearing for August 4, 2014.

7.      On July 18, 2014, this Court signed an Order Approving Mediator Fees ordering each party to pay a total amount of $750.00. However, mediation has not taken place and these fees have not been earned. Although the parties agree that they may mediate at some time in the future, the parties oppose to mediation this early in the lawsuit.

8.      Counsel for the Breitlings was recently made aware of the Scheduled Mediation on August 4, 2014.

9.      To date, no discovery addressing the issues in this case has been conducted by either party.

Page 2

## III. ARGUMENTS AND AUTHORITIES

### A. Plaintiff and Defendants Object to Court Ordered Mediation.

10.     The Texas Civil Practice and Remedies Code authorizes courts to refer a pending dispute to an alternative dispute resolution procedure at any point in trial or appellate process. *See* TEX. CIV. PRAC. & REM. CODE § 154.021; *Keene Corp. v. Gardner*, 837 S.W.2d 224, 232 (Tex. App.—Dallas 1992, writ denied); *Downey v. Gregory*, 757 S.W.2d 524, 525 (Tex. App.—Houston [1st Dist.] 1988, no writ). The statute also provides a procedure for notice and objection to the court's referral. *See* § 154.022. If the court finds that there is a reasonable basis for the objection, the court may not refer the dispute under Section 154.021. *Id.*

11.     Although the trial court has an interest in expediting the resolution of pending litigation, it cannot force the parties to follow an unreasonable timetable. *Keene Corp.*, 837 S.W.2d at 232 (finding that a court's order that the parties participate in mediation on twenty-four hours' notice without regard to the ten-day objection period was unauthorized under TEX. CIV. PRAC. & REM. CODE § 154.001, et seq).

12.     This case began only recently and neither Plaintiff nor Defendants have conducted discovery in this case. Therefore, mediation on the scheduled date of August 4, would be futile as the parties will be hesitant to settle matters in which no discovery has been conducted.

### B. Order Approving Mediator Fees.

13.     Subject to the above arguments, the parties further ask the court to reconsider and deny the Order Approving Meditator Fees. The Court ordered that each party pay immediately upon receipt of the Order Approving Mediator Fees, $750.00 to the mediator. However, no has mediation occurred, and further, both parties object to the August 4 scheduled mediation based on the above arguments.

Page 3

## IV. CONCLUSION AND PRAYER

14.     Wherefore, premises considered, Plaintiff and Defendants request that this Court grant their

Joint Objection to Court Order Mediation. Plaintiff and Defendants further request that this Court

reconsider its Order Approving Mediator Fees and vacate the order that required each party to pay a

non-refundable Administrative & Scheduling Fee of $125.00 and a Mediation Fee of $625.00.

Respectfully submitted,

THE LANE LAW FIRM

By: /s/ Kelsi M. Wade
Robert "Chip" C. Lane
State Bar No. 24046263
Anh Thu N. Dinh
State Bar No. 24071480
Kelsi M. Wade
State Bar No. 24088597
6200 Savoy Drive, Suite1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile
ATTORNEYS FOR DEFENDANTS
SAMUEL G. BREITLING AND
JO ANN BREITLING

AGREED:

CODILIS & STAWIARSKI, P.C.

/s/
Jeffrey B. Hardaway
State Bar No. 24038254
Robert L. Negrin
State Bar No. 14865550
Mary M. Speidel
State Bar No. 18308400
650 N. Sam Houston Parkway East,
Ste. 450
Houston, Texas 77060
(281) 925-5256 – Telephone

Page 4

(281) 925-5300 – Facsimile
**ATTORNEYS FOR PLAINTIFF**
**LNV CORPORATION, ITS**
**SUCCESSORS AND ASSIGNS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July, 2014, the foregoing was electronically filed and sent to the following attorneys of record. The foregoing was also sent via facsimile.

Jeffrey B. Hardaway
Robert L. Negrin
Mary M. Speidel
Codilis & Stawiarski, P.C.
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
(281) 925-5256 – Telephone
(281) 925-5300 – Facsimile

/s/ Kelsi M. Wade
Kelsi M. Wade

Page 5

# Plaintiffs' Exhibit B

FILED
DALLAS COUNTY
8/30/2014 10:01:59 AM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-14-04053

| | | |
|---|---|---|
| **LNV CORPORATION,** | § | |
| **ITS SUCCESSORS AND ASSIGNS,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **SAMUEL G. BREITLING,** | § | |
| **JO ANN BREITLING,** | § | |
| **GMAC MORTGAGE, INC.,** | § | |
| **NORTHWEST MORTGAGE, INC.,** | § | |
| **PINNACLE REALTY ADVISORS, INC.,** | § | |
| **and PALISADES ACQUISITION V, LLC** | § | |
| | § | |
| **Defendants.** | § | **134TH JUDICIAL DISTRICT** |

## DEFENDANTS SAMUEL G. BREITLING AND JO ANN BREITLING'S MOTION FOR CONTINUANCE

TO THE HONORABLE JUDGE OF THE 134TH DISTRICT COURT:

Defendants Samuel G. Breitling and Jo Ann Breitling ("Defendants") file this Motion for Continuance of the hearing on Plaintiff's Motion for *In Rem* Default and *In Rem* Summary Judgment ("Motion for Summary Judgment") and show the court as follows:

### I.   SUMMARY

1.     Plaintiff, LNV Corporation, Its Successors and Assigns ("Plaintiff"), filed its Motion for Summary Judgment on July 7, 2014—less than two weeks after Defendants filed an answer in this case. The hearing on Plaintiff's Motion for Summary Judgment is currently set for August 4, 2014. Just recently, on July 29, 2014, counsel for Defendants filed a Motion to Withdraw as Counsel and is therefore filing this motion for continuance to extend the hearing on Plaintiff's Motion for Summary Judgment by at least thirty (30) days so that Defendants may find attorneys to represent them.

## II.    <u>ARGUMENT</u>

2.      Plaintiff, filed a Motion for *In Rem* Default and *In Rem* Summary Judgment on July 7, 2014 and set a hearing for August 4, 2014. *See Plaintiff's Motion for In Rem Default and In Rem Summary Judgment, previously filed with the court.*

3.      Defendants timely filed a Response to Plaintiff's Motion for Summary Judgment on July 28, 2014. *See Defendants' Response to Motion for Summary Judgment, previously filed with the court.*

4.      On July 29, 2014, counsel for Defendants filed a Motion to Withdraw as Counsel for Samuel G. Breitling and Jo Ann Breitling. *See Motion to Withdraw as Counsel, previously filed with the court.*

5.      This case is not set for trial until March 30, 2015. *See Uniform Scheduling Order, previously filed with the court.*

6.      This Motion for Continuance is filed for good cause and is not sought for purposes of delay, but rather that justice may be done.

7.      This is Defendants' first Motion for Continuance.

8.      Counsel for Defendants conferred with counsel for Plaintiff on July 30, 2014, and Plaintiff is opposed to this motion for continuance of the hearing on Plaintiff's Motion for Summary Judgment.

9.      WHEREFORE, PREMISES CONSIDERED, Defendants request that this Court continue the case and extend the date for the hearing on Plaintiff's Motion for Summary Judgment by at least thirty (30) days so that Defendants may retain new counsel to represent them, and for such other and further relief they may be justly entitled.

Respectfully submitted,

THE LANE LAW FIRM

By: */s/ Kelsi M. Wade*
Robert "Chip" C. Lane
State Bar No. 24046263
Anh Thu N. Dinh
State Bar No. 24071480
Kelsi M. Wade
State Bar No. 24088597
6200 Savoy Drive, Suite1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile
ATTORNEYS FOR DEFENDANTS
SAMUEL G. BREITLING AND
JO ANN BREITLING

## CERTIFICATE OF CONFERENCE

Counsel for Defendants conferred with Jeffery B. Hardaway of Codilis & Stawiarski, P.C., counsel for Plaintiff, regarding this Motion for Continuance on July 30, 2014. Counsel for Plaintiff is opposed to this motion.

*/s/  Kelsi M. Wade*
Kelsi M. Wade

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2014, the foregoing was electronically filed and sent to the following attorneys of record.

Jeffrey B. Hardaway
Robert L. Negrin
Mary M. Speidel
Codilis & Stawiarski, P.C.
650 N. Sam Houston Parkway East, Ste. 450
Houston, Texas 77060
(281) 925-5256 – Telephone
(281) 925-5300 – Facsimile

*/s/  Kelsi M. Wade*
Kelsi M. Wade

Page 3 of 3