UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL G. BREITLING and JO ANN BREITLING, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-0703-B |
| LNV CORPORATION, ET AL., | § § | |
| Defendants. | § § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LNV Corporation's ("LNV") and MGC Mortgage, Inc.'s ("MGC")[1] Motion to Dismiss (doc. 6), filed on March 9, 2015. For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion.

I.

BACKGROUND

This case arises out of Plaintiffs Samuel and Jo Ann Breitling's mortgage on their property, located at 1704 Cornwall Lane, Sachse, Texas (the "Property"). On October 20, 2000, the Breitlings mortgaged the Property to Aames Funding Corporation, doing business as Aames Home Loan. Doc. 7-1, Exh. 1(A), Pls.' Second Am. Original Pet. ¶ 7.[2] On April 15, 2014, LNV instituted a foreclosure

---

[1] The Court previously dismissed the claims against MGC with prejudice. *See* Doc. 51, Elec. Order. This Motion therefore relates only to the claims against LNV. Because this was a joint motion, however, the Court will refer to LNV and MGC collectively as "Defendants."

[2] Plaintiffs filed the Second Amended Original Petition just cited in a different lawsuit against MGC based on the same transactions as the instant lawsuit. *Breitling v. MGC Mortgage, Inc.*, No 10-02189 (116th Dist. Ct., Dallas County, Tex. Mar. 18, 2011).

action against Plaintiffs on the basis of the note Plaintiffs executed in the original mortgage with Aames. How LNV acquired the note is a matter of dispute in this case. Plaintiffs allege that LNV conspired with MGC, among others, to "falsif[y] mortgage related documents that include forgeries and false signatures and false statements about the assignees/grantees and the assignors/grantors named on assignments of deeds of trust." Doc. 1-5, Original Pet. 19. These "falsely fabricated mortgage documents" were then allegedly sent to "county land recorders across the country." *Id.* at 19–20. LNV and MGC, on the other hand, contend that LNV acquired Plaintiffs' mortgage note through a series of valid assignments. *See* Doc. 6, Mot. to Dismiss 11. On August 4, 2014, LNV obtained a Final Judgment *In Rem Only* with Home Equity Foreclosure Order in the foreclosure action, allowing LNV to foreclose on the Property. Doc. 7-1, Exh. 7(F), Final Judgment 158.[3]

Plaintiffs responded by filing this lawsuit on August 29, 2014, in the 101st Judicial District Court of Dallas County, Texas. Doc. 1-5, Original Pet. Plaintiffs allege several causes of action against LNV. These include violations of the Fair Debt Collection Practices Act (FDCPA), the Texas Fair Debt Collection Practices Act (TDCA), the Real Estate Settlement Procedures Act (RESPA), and the Truth in Lending Act (TILA), as well as claims for abuse of process, fraud on the court, fraud, criminal conspiracy, civil conspiracy, and quiet title. *Id.* at 12–24. Defendants removed the case to this Court on March 3, 2015, invoking the Court's federal question jurisdiction and supplemental jurisdiction. Doc. 1, Notice of Removal ¶¶ 11–12, 13–14. On March 9, 2015, LNV and MGC filed the present Motion to Dismiss (the "Motion"). Plaintiffs filed a document titled

---

[3] A district court deciding a motion to dismiss is permitted to "rely on matters of public record" without turning the motion into one for summary judgment. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

"Plaintiff's [sic] Objection to Defendants' Motion to Dismiss," (doc. 26) on April 30, 2015; the Court construes this as Plaintiffs' response to the Motion. Defendants replied on May 11, 2015. Doc. 27, Reply in Supp. The Motion is now ready for review.

## II.

## LEGAL STANDARD

In a case that has been removed from state court, the proper pleading standard to apply when deciding a motion to dismiss is that of the state from whose court the case has been removed. *Craig Penfold Props., Inc. v. Travelers Cas. Ins. Co.*, No. 14-CV-0326, 2015 WL 356885, at *2 (N.D. Tex. Jan. 28, 2015); *see also De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537 (5th Cir. 2005) (applying the Texas pleading standard on a motion to dismiss claims in a case removed from Texas state court); *Sutton v. Airsep Corp.*, No. 11-CV-2669, 2012 WL 253959, at *3 (N.D. Tex. Jan. 27, 2012) (applying state pleading standard on motion to remand because "state court plaintiffs should not be required to anticipate removal to federal court"). In a case removed from a Texas state court, the Court will apply the Texas pleading standard. Traditionally, Texas courts have applied a pleading standard that is more liberal than the federal pleading standard, upholding a petition as long as it provides "fair notice of the claim involved." Tex. R. Civ. P. 45(b). In March 2013, however, the Texas Supreme Court adopted Rule 91a of the Texas Rules of Civil Procedure, which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in the law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

While not identical to the Rule 12(b)(6) standard, the Texas Courts of Appeals have interpreted

Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have relied on the 12(b)(6) case law in applying Rule 91a. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. filed); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied). Accordingly, this Court will do the same.

A.     *Rule 12(b)(6) Standard*

Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.      *Pro Se Litigants*

Prior to examining the issues before the Court, the Court notes that *pro se* litigants are expected to comply with the rules of pleading and the rules of service. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam). Parties who proceed *pro se*, however, are often given more leeway than represented parties in correcting errors in pleadings and defects in service of process. *Roberts v. Orleans Parish Med. Staff*, 2002 WL 1022488, at *5 (E.D. La. 2002) (citing *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993)). Further, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Id.*

## III.

## ANALYSIS

The Court's first task is to determine what, exactly, Plaintiffs' claims are. In their Original Petition, Plaintiffs lay out their claims via subheadings naming the cause(s) of action (e.g., "ABUSE OF PROCESS AND FRAUD UPON THE COURT"), followed by recitations of certain factual allegations. The Original Petition, however, is almost entirely devoid of references to particular statutory provisions. Plaintiffs also fail to indicate which facts correspond to which claims. After reviewing the Original Petition, the Court concludes that Plaintiffs have set out the following causes of action:[4]

---

[4] The references to specific statutory provisions that follow have been provided by the Court for the purpose of convenience. Plaintiffs did not include them in the Original Petition.

- **FDCPA (15 U.S.C. § 1692,** *et seq.***)**

  - Defendants have failed to investigate the validity of Plaintiffs' debt as required by § 1692g(b) (Doc. 1-5, Original Pet. 13, 15); and

  - Defendants failed or refused to process Plaintiffs' payments on the mortgage and subsequently charged excessive late fees, which constitutes an unfair collection practice under § 1692f(1) (Doc. 1-5, Original Pet. 14)

- **TDCA (Tex. Fin. Code § 392.001,** *et seq.***)**

  - Defendants have failed to investigate the validity of Plaintiffs' debt as required by § 392.202(a) (Doc. 1-5, Original Pet. 13, 15); and

  - Defendants failed or refused to process Plaintiffs' payments on the mortgage and subsequently charged excessive late fees, which constitutes an unfair or unconscionable means of collection under § 392.303(a)(2) (Doc. 1-5, Original Pet. 14)

- **RESPA (12 U.S.C. § 2601,** *et seq.***)**

  - MGC failed to notify Plaintiffs that it transferred loan servicing to Dovenmuehle Mortgage, Inc. ("DMI"), thereby violating § 2605(b)(1) (Doc. 1-5, Original Pet. 13); and

  - Plaintiffs were never notified that "the beneficial interest in [their] mortgage was transferring from Aames Home Loans to . . . LNV" (Doc. 1-5, Original Pet. 14)

- **TILA (15 U.S.C. § 1601,** *et seq.***)**

  - Plaintiffs did not receive unspecified disclosures until a week after the execution of the mortgage (Doc. 1-5, Original Pet. 13);

  - Plaintiffs' signatures were "forged in underwriting" on unspecified documents (*id.*); and

  - Plaintiffs' "rescission document" was post-dated, denying them any right of rescission (*id.*)

- **Abuse of Process** (*id.* at 16–17)

- **Fraud on the Court** (*id.*)

- **Fraud** (*id.* at 18–23)

- **Criminal Conspiracy** (*id.*)

- **Civil Conspiracy** (*id.*)

- **Quiet Title** (*id.* at 23–24)

In their Motion, Defendants assert several grounds for dismissing Plaintiffs' claims.[5] The Court will assess the viability of each of those claims individually in light of Defendants' arguments.

A.    *FDCPA Claims*

Apart from their *res judicata* argument, Defendants assert no grounds for dismissing Plaintiffs' FDCPA claims. The Court therefore will not dismiss those claims.

---

[5] Defendants dedicate a significant portion of their Motion and the accompanying brief to arguing that *res judicata* bars all of Plaintiffs' claims. Doc. 6, Mot. to Dismiss 10–13. Such an argument is not proper on a motion to dismiss under Rule 12(b)(6). *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005). The Court therefore will not consider any potential effect of *res judicata* on Plaintiffs' claims.

B.    *TDCA Claims*

In the Motion, Defendants argue that Plaintiffs' TDCA claims are barred by the economic

loss doctrine and also fail as a matter of law. Doc. 6, Mot. to Dismiss 16–17, 18–19. These claims are

based on the allegations that Defendants "had a history of not processing checks [Plaintiffs] sent

them for . . . payments, then attempting to charge excessive late fees," and were "required to

investigate the validity of the debt [they] claimed [Plaintiffs] owed but failed to do so." Doc. 1-5,

Original Pet. 14–15.

1.    Economic Loss Doctrine

"The economic loss rule precludes recovery in tort when the loss is the subject matter of a

contract between the parties." *Bowman v. CitiMortgage, Inc.*, No. 14-CV-4036, 2015 WL 4867746,

at *3 (N.D. Tex. Aug. 12, 2015) (citing *Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.

1991)). In determining whether the economic loss rule applies, the Court must "examine the source

of the defendant's duty and the nature of the claimed injury." *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d

283, 288 (Tex. App.—Dallas 2015, no pet.). The Texas Supreme Court has distinguished between

actions sounding in contract and those that sound in tort as follows:

> If the defendant's conduct—such as negligently burning down a house—would give
> rise to liability independent of the fact that a contract exists between the parties, the
> plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such
> as failing to publish an advertisement—would give rise to liability only because it
> breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in
> contract. In determining whether the plaintiff may recover on a tort theory, it is also
> instructive to examine the nature of the plaintiff's loss. When the only loss or damage
> is to the subject matter of the contract, the plaintiff's action is ordinarily on the
> contract.

*Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998).

In this case, Plaintiffs have alleged that Defendants failed to investigate the validity of the

debt, as required by the TDCA. *See* Tex. Fin. Code § 392.202(a). This is a duty imposed by statute and does not arise out of any contract between the parties. Even if there were no contract between an alleged creditor and debtor—a scenario in which the debtor would likely contest the validity of the debt—the third-party debt collector would still be required to investigate the validity of the purported debt (or refrain from further collection efforts until an investigation is conducted) upon a proper request by the debtor. Moreover, a party who succeeds in an action under this section of the TDCA is entitled to statutory damages (i.e., damages beyond the subject matter of the contract). Tex. Fin. Code § 392.403(e). A third-party debt collector's duty to investigate a disputed debt, therefore, arises independently of the contract between the parties. The economic loss rule is thus inapplicable to a claim under TDCA § 392.202(a).

Plaintiffs' second TDCA claim alleges that MGC followed a practice of not accepting payments and then charging excessive late fees in violation of TDCA § 392.303(a)(2). Because all claims against MGC have been dismissed, the Court need not reach Defendants' economic loss rule argument as to that claim.

2.     Failure as a Matter of Law

Defendants also contend that Plaintiffs' TDCA claims fail as a matter of law. Section 392.202(a) requires a "third-party debt collector," upon a proper request from the alleged debtor to the collector, to either investigate the validity of a debt or cease collection efforts until such an investigation has been completed. Tex. Fin. Code § 392.202(a). The TDCA defines a "third-party debt collector" as

> a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who: (A) are regularly engaged to

solicit debts for collection; or (B) regularly make contact with debtors for the purpose
of collection or adjustment of debts.

Tex. Fin. Code § 392.001(7). A "debt collector" is "any person who uses any instrumentality of
interstate commerce or the mails in any business the principal purpose of which is the collection of
any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due
or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiffs have failed to allege that
LNV fulfills this definition of a debt collector. But even assuming that LNV qualifies as a "third-party
debt collector," to trigger the investigation obligation, the debtor must "notify in writing *the third-
party debt collector*," who must then take the appropriate steps. *Id.* (emphasis added). In other words,
only the party who receives written notice from the debtor is obligated to investigate. Here, Plaintiffs
state only that they sent written notice to Defendant Codilis and Stawiarski, who represented DMI,
another loan servicer. Doc. 1-5, Original Pet. 12–13. Plaintiffs therefore have not alleged that they
notified LNV of the disputed debt, and their claim under TDCA § 392.202(a) must fail.

The other TDCA claim alleges a violation of Section 392.303(a)(2), which forbids a debt
collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to
the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the
agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code §
392.303(a)(2). This provision "depend[s] on two factors: (1) whether the debt agreement creating
the obligation authorizes the charge; or (2) whether the charge is permitted by law." *Williams v.
Global Payment Check Servs., Inc.*, No. 10-CV-0698, 2011 WL 6262528, at *3 (N.D. Tex. Dec. 14,
2011). In the Original Petition, Plaintiffs allege that "MGC had a history of not processing checks
[Plaintiffs] sent them for [Plaintiffs'] payments, then attempting to charge excessive late fees." Doc.

1-5, Original Pet. 14. Plaintiffs have not alleged that LNV independently engaged in this practice.[6] The Court therefore concludes that dismissal is warranted for Plaintiffs' claim against LNV under TDCA § 392.303(a)(2).

C.    *RESPA Claims*

Defendants assert that the statute of limitations bars Plaintiffs' RESPA claims. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007). RESPA imposes a three-year statute of limitations on claims brought under Section 2605 and a one-year limit on claims brought under its other provisions. 12 U.S.C. § 2614.

Section 2605(b)(1) of RESPA requires that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." Plaintiffs allege that they "never received any notices of transfer of servicing from Defendant MGC to Defendant DMI." Doc. 1-5, Original Pet. 13. Plaintiffs' claims against MGC have been dismissed, however, and there are no allegations in the Original Petition that LNV acted as a mortgage servicer. This claim therefore also fails.

The second purported RESPA claim fares no better. Plaintiffs state that they "never received any notification . . . that the beneficial interest in [the] mortgage was transferring from Aames Home Loans to Defendant LNV," an omission they specifically allege violates RESPA. *Id.* at 14. Defendants

---

[6] Plaintiffs do allege that LNV conspired with MGC to procure these excessive late fees. For reasons discussed more fully below, however, Plaintiffs have failed to state a claim for criminal and civil conspiracy. Accordingly, the Court need not assess the sufficiency of Plaintiffs' allegations against MGC.

argue that there is no such requirement under RESPA. Doc. 6, Mot. to Dismiss 23 n.28. After reviewing the statute, the Court agrees—nowhere can it find an obligation to notify a mortgagor of a transfer of the mortgage itself. Consequently, the Court will dismiss that claim as well.

D.    *TILA Claims*

Plaintiffs assert that they "received no disclosures before closing at the origination of [the] mortgage; [they] received them more than a week after closing; and [their] signatures were forged in underwriting." Doc. 1-5, Original Pet. 13. Furthermore, Plaintiffs' "rescission document had been post dated so [they] were denied any right of rescission." *Id.* All of these actions, Plaintiffs allege, violate TILA. Defendants counter by arguing that Plaintiffs' TILA claims are time-barred. Doc. 6, Mot. to Dismiss 22.

TILA establishes a one-year limitations period for most actions, with a three-year limitation period for actions based on violations of particular provisions relating to disclosures and residential mortgages. 15 U.S.C. § 1640(e). Both limitations periods run from the date that the violation occurred. *Id.* The right of rescission under TILA expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."[7] 15 U.S.C. § 1635(f). "A claim under . . . TILA accrues when the loan is closed." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, No. 10-CV-1118, 2011 WL 1540353, at *2 (N.D. Tex. Apr. 21, 2011). Plaintiffs closed their loan in 2000; at the very latest, the statute of limitations on a TILA claim would have run in 2003, eleven years before this lawsuit was filed. Any TILA claims that Plaintiffs might have are thus time-barred.

---

[7] There is an exception to this limitations period that does not apply here. *See* 15 U.S.C. § 1635(f).

E.    *Abuse of Process and Fraud on the Court Claims*

The Court will treat these claims as intertwined because they are based upon the same set of facts in the Original Petition—namely, that in previous lawsuits between Plaintiffs and MGC from 2010–13, MGC's attorney filed several successive summary judgments and inundated Plaintiffs' original attorney in those lawsuits with "at least 10 copies of the same documents all mixed up in different envelopes sent every few days." Doc. 1-5, Original Pet. 16. These actions resulted in the withdrawal of Plaintiffs' counsel and a non-suit by the Plaintiffs so that their new counsel could "come up to speed." *Id.* at 16–17. Plaintiffs also allege that the motive for the numerous filings and mailings is that "Defendants d[id] not want to ever get to an evidentiary hearing or a real legitimate trial." *Id.* at 17. Defendants assert that certain abuse of process claims are time-barred and that all such claims are barred by the litigation privilege and fail as a matter of law. Doc. 6, Mot. to Dismiss 24, 25–26, 29–30. Defendants also argue that the fraud on the court claims fail as a matter of law. *Id.* at 30–31.

1.    Abuse of Process

Under Texas law, an abuse of process claim consists of three elements:

> (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, improper, or perverted use of the process; and (3) damage resulted to the plaintiff as a result of such act.

*Am. Bd. of Obstetrics and Gynecology, Inc. v. Yoonessi*, 286 S.W.3d 624, 628 (Tex. App.—Dallas 2009, pet. denied). Though "[i]n a narrow sense process refers to individual writs issued by the court during or after litigation[,] . . . . [p]rocess has been broadly interpreted to encompass the entire range of procedures incident to litigation." *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App.—Corpus

Christi 1978, writ ref'd n.r.e.). "To constitute an abuse of process, the process must be used to accomplish an end which is beyond the purview of the process, and which compels a party to do a collateral thing which he would not be compelled to do." *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1994, no writ). But "[w]hen the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Id.* "[A]n abuse of process claim requires a showing of a wrongful seizure of property or an actual interference with the person." *RRR Farms, Ltd. v. Am. Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). A two-year statute of limitations governs abuse of process claims. *See Patrick v. Howard*, 904 S.W.2d 941, 943–44 (Tex. App.—Austin 1995, no pet.).

Plaintiffs have failed to make out a prima facie case of abuse of process. All of the allegations relate to actions taken by MGC and its counsel; Plaintiffs have not alleged any activity on LNV's part that could constitute abuse of process. Plaintiffs' abuse of process claims therefore fail as a matter of law. The Court also notes that, insofar as Plaintiffs' abuse of process claims are based on conduct occurring before August 29, 2012 (two years before the filing of this lawsuit), the statute of limitations bars those claims.[8]

2.     Fraud on the Court

"[F]raud on the court is a narrow concept reserved for only the most egregious misdeeds by officers of the court." *Blumberg v. NSSI Liquidating Trust*, No. 08-CV-1392, 2009 WL 2998516, at *6 (N.D. Tex. Sept. 16, 2009). The elements of this claim are (1) an intentional fraud; (2) by an

---

[8] Because the Court has fully disposed of Plaintiffs' abuse of process claims, it will not address Defendants' argument based on the litigation privilege.

officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. *Id.* (quoting *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005)). "To establish fraud on the court, 'it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). "Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)).

These claims also fail for the same reason that Plaintiffs' abuse of process claims do—there are no allegations relating to LNV. The Court will dismiss the fraud on the court claims.

F.     *Fraud, Criminal Conspiracy, and Civil Conspiracy Claims*

Like the abuse of process and fraud on the court claims, Plaintiffs base their fraud and conspiracy claims on a unified set of facts. These allegations revolve around Andrew Beal, the owner of LNV, and his "history of creating sham or 'shell' companies for purposes of tax evasion." Doc. 1-5, Original Pet. 18. Plaintiffs allege that MGC and LNV are two of these "shell companies," based on the inability of certain non-parties' to contact employees of LNV by phone and unspecified "[e]vidence suggest[ing] that Defendant MGC does not have an IRS EIN number or tax ID." *Id.* at 18–19. Working in concert with DMI, the loan servicer to whom MGC transferred servicing of Plaintiffs' loan, "this trio of corporations always works together to perfect foreclosures on behalf of Defendant LNV" by failing to accept mortgage payments and then charging excessive late fees, thereby causing "homeowners to go in a self-serving default." *Id.* at 19. Plaintiffs also make numerous allegations concerning Beal's gambling, his supposed connections to various criminal organizations,

and the experiences of other individuals (who are not parties to this litigation) when interacting with Defendants. *Id.* at 19–22.

As an initial matter, "[s]tanding is a constitutional prerequisite to filing suit for both individuals and associations" under Texas law. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007). Both the separation of powers doctrine and the open-courts provision of the Texas Constitution underlay this requirement. *Id.* "Thus, as a general rule, to have standing an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large." *Id.* As regards non-parties' experiences with LNV and MGC, Plaintiffs have failed to demonstrate such a particularized interest. The only injuries Plaintiffs claim they have suffered derive from their own interactions with Defendants; they have not alleged any separate injuries stemming from the purported treatment of these other individuals. In that respect, Plaintiffs are no different from "the public at large" regarding any claims those individuals might have. The Court therefore dismisses Plaintiffs' claims to the extent that they derive from interactions between Defendants and individuals who are not parties to this lawsuit. *See generally Heckman v. Williamson County*, 369 S.W.3d 137, 153 (Tex. 2012) ("[A] plaintiff must demonstrate that he, himself, has standing to present his claims; the court must dismiss a plaintiff who lacks standing.").

1.    Fraud

With respect to Plaintiffs' other fraud claims, Defendants argue that they are barred by the economic loss rule and that they fail as a matter of law. Doc. 6, Mot. to Dismiss 16–17, 23–24. To sustain a fraud claim under Texas law, Plaintiffs must show that (1) Defendants made a material representation that was false; (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) they intended to induce Plaintiffs to act

upon the representation; and (4) Plaintiffs actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Plaintiffs have not identified any specific misrepresentation that Defendants made and upon which Plaintiffs relied. Rather, Plaintiffs have only alleged that LNV forged "mortgage related documents" and sent them to "county land recorders across the country."[9] Doc. 1-5, Original Pet. 19–20. This allegation, even if true, does not involve any sort of representation made to Plaintiffs, let alone one that was knowingly or recklessly false. Without an allegation of a material misrepresentation, Plaintiffs are also unable to sufficiently allege the third or fourth elements of the claim. Plaintiffs' fraud claims therefore also fail.

2.   Criminal Conspiracy

Defendants argue that there is no civil cause of action for criminal conspiracy under the Texas Penal Code. Doc. 6, Mot. to Dismiss 27. The Court agrees—Plaintiffs have pointed to no authority supporting the viability of their claim, and the Court likewise has found none. The Court has, however, found support for Defendants' position. *See* Tex. Penal Code § 15.02; *Burgard v. Austin*, No. 03-00-0792-CV, 2001 WL 726472, at *3 (Tex. App.—Austin June 29, 2001) (not designated for publication); *cf. Hamilton v. Pechacek*, 319 S.W.3d 801, 813 (Tex. App.—Fort Worth 2010, no pet.) ("[T]he Texas Penal Code does not create a private cause of action."). Accordingly, the Court will dismiss Plaintiffs' criminal conspiracy claims.

---

[9] The allegations relating to Beal are irrelevant to deciding this Motion because nothing in the Original Petition supports the conclusion that Beal was acting as an agent for LNV or in anything other than his personal capacity during the conduct alleged.

3.     Civil Conspiracy

Plaintiffs also contend that Defendants engaged in a civil conspiracy, based on the supposed excessive late fee scheme and mortgage document forgeries mentioned previously. Doc. 1-5, Original Pet. 19. Defendants aver that these claims likewise fail as a matter of law. Doc. 6, Mot. to Dismiss 28. To state a claim for civil conspiracy under Texas law, Plaintiffs must sufficiently allege the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

Plaintiffs have failed to state a claim for civil conspiracy. Whether violations of the TDCA or forgery qualify as torts under Texas law is unclear. *See, e.g.*, *Smith v. JPMorgan Chase Bank*, No. 14-CV-2402, 2014 WL 6790749, at *12 (N.D. Tex. Dec. 2, 2014) ("The TDCA is the statutory embodiment of common law unreasonable collection practices . . . ."); *Saxer v. Nash Phillips-Copus Co. Real Estate*, 678 S.W.2d 736, 739 (Tex. App.—Tyler 1984, writ ref'd n.r.e.) ("Forgery is an unlawful and unconscionable act for which a common law court may provide a civil remedy independent of the remedies provided by . . . the [Deceptive Trade Practices Act]; the DTPA does not engulf all tort causes of action for the recovery of damages."). Assuming without deciding that both are torts, Plaintiffs' claims still fail because they have not sufficiently alleged the elements of a conspiracy. Only two statements in the Original Petition relate to the supposed conspiracies: first, with regard to the excessive late fees, that "[t]his trio of corporations [LNV, MGC, and DMI] always works together to perfect foreclosures on behalf of Defendant LNV"; and second, regarding the

forgeries, that "Defendants MGC, LNV and DMI work in collusion with other [Lender Processing Services] service providers to fabricate falsified mortgage related documents . . . ." Doc. 1-5, Original Pet. 19. Such conclusory assertions are inadequate to allege the meeting of the minds necessary to sustain a civil conspiracy claim. This is simply not enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The civil conspiracy claims thus fail as a matter of law.

G.     *Quiet Title Claim*

Plaintiffs' final claim is one to quiet title. The entirety of this claim consists of two allegations: that "Plaintiffs would have been granted [q]uiet [t]itle a long time ago if it had not been for Defendant MGC's abuse of process," and that Defendants' "actions have clouded the title to [Plaintiffs'] property and caused [Plaintiffs] considerable harm." Doc. 1-5, Original Pet. 23. Plaintiffs also appear to assert the equitable defense of unclean hands against any claims Defendants might have against Plaintiffs. *Id.* In response, Defendants argue that this claim, too, fails as a matter of law. Doc. 6, Mot. to Dismiss 32–33.

"The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). "The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Id.* "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

The facts contained in the Original Petition do not rise to the requisite level, even when

liberally construed. The only allegations relating to Plaintiffs' (or LNV's) title to the Property are the assertions regarding the forgeries and the two statements pertaining to the quiet title claim mentioned above. At best, these statements demonstrate "the weakness of . . . [LNV's] title," but they do nothing to "prove . . . the strength of [Plaintiffs'] own title." *See id.* In fact, Plaintiffs' admission that they stopped making payments on their mortgage, Doc. 1-5, Original Pet. 14, undermines any claim they might have to the superiority of their title. *See Cook-Bell v. Mortgage Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) ("Texas courts have made clear that 'a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note.'" (quoting *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.))). Plaintiffs have therefore failed to state a claim to quiet title, which merits dismissal.

H.      *Leave to Amend*

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (internal alterations omitted)).

Plaintiffs have not requested leave to amend; in such a circumstance, a district court is not

required to grant leave. *See Garrett v. Celanese Corp.*, 102 F. App'x 387, 388 (5th Cir. 2004). In light of Plaintiffs' *pro se* status, however, and the fact that this Order is the Court's first review of Plaintiffs' allegations, the Court concludes that Plaintiffs should be given the opportunity to overcome certain deficiencies in their pleadings. Of the claims that have been insufficiently pled, the Court will grant leave to amend as to the civil conspiracy count. Regarding Plaintiffs' other claims, the Court will not grant leave to amend the complaint because the defects in those claims—such as the lack of a civil cause of action—are incurable.

I.    *Additional Relief Requested by Plaintiffs*

In their response (doc. 26), Plaintiffs assert that they wish to "drop all [their] former claims" and instead allege only wrongful foreclosure and a violation of the Texas Constitution. Pls.' Objs. ¶ 1. They also request that the Court stay a state court eviction action that was pending against them at the time of submission. *Id.* at ¶ 6.

It is improper to raise new claims on a response to a motion to dismiss. *See Renfrow v. CTX Mortgage Co., Inc.*, No. 11-CV-3132, 2012 WL 3582752, at *4 (N.D. Tex. Aug. 20, 2012) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)). The Court therefore did not consider Plaintiffs' additional allegations in deciding this motion. As to the eviction action, Defendants indicate that it has already proceeded to judgment. Doc. 27, Reply in Supp. 2, 5. As a result, Plaintiffs' request to stay that action is rendered moot.

## IV.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.    Defendants' Motion is **GRANTED** as to the claims under the TDCA, RESPA, and

TILA, and the abuse of process, fraud on the court, fraud, criminal conspiracy, civil conspiracy, and quiet title claims.

2.      Defendants' Motion is **DENIED** as to the FDCPA claims.

3.      The Court **GRANTS** Plaintiffs **leave to amend** their complaint as to the civil conspiracy claims.

4.      The Court **dismisses** Plaintiffs' request for a stay in the state court eviction action as **MOOT**.

**SO ORDERED.**

**SIGNED:** October 5, 2015.

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE