1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF TEXAS

3                       DALLAS DIVISION

4
  SAMUEL G. BREITLING and      )        3:15-CV-0703-B
5  JO ANN BREITLING,           )
              Plaintiffs,      )
6                              )
                               )        DALLAS, TEXAS
7  vs.                         )
                               )
8                              )
  LNV CORPORATION, ET AL.,     )
9              Defendants.     )        June 22, 2015

10

11            TRANSCRIPT OF STATUS CONFERENCE

12          BEFORE THE HONORABLE JANE J. BOYLE

13             UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16

17  FOR THE PLAINTIFFS:        MS. JO ANN BREITLING
                               1704 Cornwall
18                             Sachse, Texas  75048
                               joannbreitling@yahoo.com
19                             (214) 674-6572

20

21

22

23

24

25

```
 1   FOR THE DEFENDANT,            MR. JASON L. SANDERS
     LNV CORPORATION,             Locke Lord LLP
 2   ET AL.:                       2200 Ross Avenue, Suite 2200
                                   Dallas, Texas  75201
 3                                 jsanders@lockelord.com
                                   (214) 740-8800
 4

 5                                 MR. MARC DANIEL CABRERA
                                   Locke Lord LLP
 6                                 2200 Ross Avenue, Suite 2200
                                   Dallas, Texas  75201
 7                                 mcabrera@lockelord.com
                                   (214) 740-8289
 8

 9   FOR THE DEFENDANT,            MR. CLAYTON E. DEVIN
     CODILIS & STAWIARSKI PC:     Macdonald Devin
10                                 3800 Renaissance Tower
                                   1201 Elm Street
11                                 Dallas, Texas 75270
                                   cdevin@maccdonalddevin.com
12                                 (214) 744-3300

13

14

15

16

17

18
     COURT REPORTER:              MR. TODD ANDERSON, RMR, CRR
19                                 United States Court Reporter
                                   1100 Commerce St., Rm. 1625
20                                 Dallas, Texas  75242
                                   (214) 753-2170
21

22

23        Proceedings reported by mechanical stenography and

24   transcript produced by computer.

25
```

| | |
|---|---|
| 1 | STATUS CONFERENCE - JUNE 22, 2015 |
| 2 | P R O C E E D I N G S |
| 3 | THE COURT:  All right.  For the record, this is Civil |
| 4 | Action 3:15-CV-703, Breitling -- and I think I'm pronouncing |
| 5 | that correctly, and if I'm not, I will ask the Plaintiffs to |
| 6 | help me -- Samuel and JoAnn versus LNV Corporation, et al. |
| 7 | We are here this morning just to get some clarity on |
| 8 | what appears to be somewhat confusing mix of filings here and |
| 9 | there and in State court and in this Federal court over the |
| 10 | last many years -- many months, I guess in years in some ways. |
| 11 | So let's begin the hearing by having both sides |
| 12 | introduce themselves.  If you will come to the lectern, |
| 13 | introduce yourself, state who you are and who you represent. |
| 14 | Ms. Breitling, come on up. |
| 15 | (Pause) |
| 16 | MS. BREITLING:  Good morning, Your Honor.  My name is |
| 17 | JoAnn Breitling. |
| 18 | THE COURT:  Breitling.  Thank you. |
| 19 | MS. BREITLING:  And I am the Plaintiff in this case |
| 20 | and the Defendant in several other cases. |
| 21 | THE COURT:  And your husband? |
| 22 | MS. BREITLING:  My husband is Samuel Breitling.  He's |
| 23 | not with me today.  He's with our son. |
| 24 | THE COURT:  All right.  Thank you very much. |
| 25 | MS. BREITLING:  Thank you. |

```
 1            THE COURT:  And if I could have each of the defense
 2   counsel come on up.
 3            (Pause)
 4            MR. SANDERS:  Your Honor, I'm Jason Sanders.  I
 5   represent MGC, LNV, and Dovenmuehle.
 6            THE COURT:  Thank you, Mr. Sanders.
 7            MR. CABRERA:  Good morning, Your Honor.  My name is
 8   Marc Cabrera.  I'm an attorney for LNV Corporation, MGC
 9   Mortgage, and Dovenmuehle Mortgage.
10            THE COURT:  Thank you.
11            MR. DEVIN:  Good morning, Your Honor.  I'm Clayton
12   Devin.  I represent Codilis & Stawiarski.
13            THE COURT:  Thank you very much, Mr. Devin.
14            Well, it looks as though this has not been a pleasant
15   experience for most of you-all involved in this.  And what I
16   hope to do today is just put some organization to this so that
17   we have a schedule.  I do want to hear, though, from both sides
18   what you, in your view, in as brief of terms as possible --
19   because I'm not going to let you go on and on -- what's gone
20   on.
21            I just got two more filings today from Ms. Breitling.
22   And so one of the things we need to talk about is curbing the
23   number of these filings, Ms. Breitling, that don't seem to do
24   anything except give you an opportunity to vent, which wouldn't
25   be an appropriate reason for filing.  So we need to get that --
```

1    we need to talk about that.

2           But I'm going to start with the defense because they

3    have got some of the dispositive motions pending.

4           I have a wealth of information from you about your

5    feelings about this case, and I'm going to give you a chance to

6    speak, but I want to start with them because I don't have the

7    same from them.

8           So let's start with you, Mr. Sanders.  Or if there's

9    one of you that you would rather elect to speak first, it's

10   fine with me.

11          Mr. Sanders?

12          MR. SANDERS:  May I approach --

13          THE COURT:  Go ahead.

14          MR. SANDERS:  -- the podium?

15          Your Honor, what I would like to start with is just

16   to address what's pending, currently pending motions are, and

17   then give you a little brief background of the case, if that's

18   okay.

19          THE COURT:  Okay.  That's fine.

20          MR. SANDERS:  From the Defendants' perspective,

21   Codilis has a motion For More Definite Statement pending.  LNV

22   and MGC have a Motion to Dismiss pending.  Plaintiff has a

23   Motion to Remand pending, but I saw some type of withdrawal

24   just come through, so I don't know if it's withdrawing just

25   what Mr. Milks filed or what Ms. -- what the Breitlings and

 1   Mr. Milks filed.

 2          THE COURT:  All right.

 3          MR. SANDERS:  A Motion for Leave to Amend that

 4   Plaintiffs filed; a Motion to Dismiss Codilis -- Codilis,

 5   Dovenmuehle, and MGC that Plaintiffs filed; a Motion to

 6   Consolidate that Plaintiffs filed.

 7          All of -- I think all those are fully briefed except

 8   for the Motion to Consolidate.

 9          There are three other filings that Plaintiffs filed,

10   but I don't think necessitate a response.  Those are a Notice

11   of Related Cases, Notice of Constitutional Violations, and then

12   asking the Court to take notice of a case that I call *Slorp*.

13          And that's what I understand is pending before the

14   Court currently.

15          THE COURT:  All right.

16          MR. SANDERS:  And to cut through really the morass,

17   we're -- my clients are very sympathetic to Plaintiffs'

18   situation, but this really comes down to a kind of typical

19   mortgage case.  And, Your Honor, I know that the federal

20   judiciary has seen a lot of this litigation over the last

21   several years, and this doesn't happen to be anything much

22   different than your average case.

23          Mr. and Mrs. Breitling obtained a home equity loan in

24   October of 2000.  They are currently due for their March of

25   2010 payment, so they haven't paid for over five years.

1          They started litigating -- filing lawsuits against

2     one or more of my clients in 2010, February 2010, litigated

3     that case for about a year and a half.

4          Motions for Summary Judgment were filed, and the

5     State court granted in part some of them.  Later, Plaintiffs

6     dismissed that case.

7          A day later, in June of 2011, Plaintiffs filed their

8     second lawsuit, litigated that case for about two years,

9     nonsuited that case in State court.

10          My client, LNV, filed a foreclosure action in April

11     of 2014, obtained an order, a judgment for foreclosure in

12     August of 2014, the same month that Plaintiffs filed their

13     current lawsuit that was in State court that we removed to

14     Federal court, did some litigating in Federal court in front of

15     Judge Lynn and Magistrate Horan.

16          It was remanded to State court because Judge Tillery

17     filed a Motion to Remand.  Judge -- the Plaintiffs nonsuited

18     Judge Tillery, which created federal jurisdiction.  Again, we

19     were removed back to Federal court, and now we're before you

20     and really just want to put an end to this madness.

21          THE COURT:  All right.  Thank you very much.

22          Anything else?

23          MR. SANDERS:  I have nothing else -- nothing else

24     right now, Your Honor.

25          THE COURT:  Thank you very much, Mr. Sanders.

```
 1              Mr. Cabrera?

 2              Or Mr. Devin, come on up.

 3              MR. DEVIN:  Your Honor, the Codilis Firm is a law

 4    firm and represented LNV in some of the State court litigation

 5    relating to the foreclosure and nonjudicial sale -- or actually

 6    the judicial sale of the real estate in question.

 7              The Codilis Firm was sued along with LNV and the

 8    other Defendants, but at this point I think my client is barely

 9    in this case.

10              We have a Motion for More Definite Statement that was

11    filed back in March.  There's never been a response filed to

12    that motion.  Subsequently, the Plaintiffs filed a motion to

13    amend their complaint, which, if granted, the live pleading of

14    the Plaintiffs has no mention whatsoever of the Codilis Firm,

15    which I think would act as a dismissal of the claims against my

16    client.  On top of that, the Plaintiffs have now moved to

17    dismiss the Codilis Firm, although they've done it without

18    prejudice.

19              And for the reasons set out in LNV's response to that

20    Motion to Amend, I believe the Court has discretion to dismiss

21    the claims against the Codilis Firm with prejudice, which would

22    be my preference, obviously.  But, nevertheless, Your Honor, I

23    hope to walk out of here today with some direction about

24    whether the Codilis Firm will remain involved in this case.

25              Thank you.
```

```
 1            THE COURT:  Thank you, Mr. Devin.

 2            Mr. Cabrera?

 3            MR. CABRERA:  I don't have anything to add, Your

 4    Honor, unless the Court would like me --

 5            THE COURT:  I think I'm fine.

 6            Ms. Breitling, come on up.  Let's hear from you.

 7            MS. BREITLING:  Thank you, Your Honor.

 8            Mr. Sanders said this is a typical foreclosure case,

 9    and I wish it were.  Unfortunately, it's not.  My husband and I

10    have been fighting this battle since the day that their client

11    took servicing rights over our mortgage.

12            We paid our mortgage every month.  We never missed a

13    payment.  And all of a sudden -- you know, we didn't move to

14    refinance until the loan was straight.  And all of a sudden,

15    there's no communication.  We have no servicer.  Our servicer

16    is missing in action.

17            You know, I had to hunt down where to mail our

18    payment.  Our first payment was lost.  It was misapplied.  We

19    used our Social Security numbers because we had no loan number.

20    We never received a welcome letter.  Our welcome letter arrived

21    eight years -- seven years later.

22            You know, I -- I sent you -- or I filed the numerous

23    letters that were sent to Greg Abbott, because this is an

24    interest that the community must take in this, because we're

25    not just dealing with Chase Bank and Wells Fargo.
```

 1            When hundreds of people write letters to Greg Abbott

 2    from all over the United States and say, "Please help us with

 3    this illegal company.  We're a victim of this company" --

 4            THE COURT:  And which company is it that you're

 5    saying?

 6            MS. BREITLING:  MGC --

 7            THE COURT:  MGC?

 8            MS. BREITLING:  -- Mortgage, yes.  And we only sued

 9    MGC back in 2010, because even though I have had some very

10    smart attorneys, we did not know that DMI and LNV existed.

11            And right now, I learned of their existence after a

12    failed mediation and when I connected with a group of probably

13    40 other victims.  Our victims group grows daily, and we're

14    victims of this company.

15            And the judicial notice we filed for the *Slorp versus*

16    *Lerner* is very, very significant because it mirrors our case,

17    and, you know, it has some significant things.

18            Basically, in 2010, Greg Abbott put a moratorium on

19    all foreclosure actions.  He sent a letter to MGC's attorney,

20    Hunt & Williams, and he said if you have foreclosed on any

21    properties using robo-signed documents, you are in violation of

22    the Texas Penalty Code, and these foreclosures must be -- are

23    void, and the houses must be given back.

24            And Hunt & Williams wrote back to Greg Abbott and

25    said, "No, we have checked all of our files.  We have no

 1    robo-signed documents."  And that is not the truth.

 2             Our documents were robo-signed.  They -- I've talked

 3    with the mortgage partners.  I've talked with the notary that

 4    executed them.  She was a robo-signer, signing 500 to 800

 5    documents a day.  So they never had clear title to our

 6    property.

 7             They sold our home illegally in violation of Texas

 8    Rules of Civil Procedure 736.11.  And they violated the

 9    automatic stay.  And that -- we have not filed frivolous

10    lawsuits.

11             Our first lawsuit, the attorney -- when I -- he had

12    to withdraw, and I hired the second attorney.  She missed a

13    deadline.  She had -- we had a thousand pages to go through,

14    and she missed a deadline.  That's why she nonsuited and

15    refiled it the next day, to make it her own.  She stayed with

16    me.

17             And then in 2013, when we went to the mediation, we

18    went in good-faith mediation, and we offered to buy our house

19    back or to start making payments again.  And they -- they asked

20    for $60,000.00 cash to reinstate our loan at 12.375 percent

21    interest rate.

22             Our attorney had a meltdown, and she said, "I can't

23    do this anymore.  I quit," because their attorney at that time

24    had already filed yet another Motion for Summary Judgment.  He

25    had filed a hearing in violation of the scheduling order to

 1  have the trial date moved back so his Motion for Summary

 2  Judgment could be heard before our trial.

 3          And our attorney was a handicapped woman.  She was

 4  good.  They could never win summary judgment against her.  But

 5  physically she could not keep up.  And so the case was abated

 6  for 90 days.

 7          It was during that 90-day period that our son became

 8  very ill.  And that's what I wanted the Court to know today.

 9  I'm not playing games with the Court as Locke and Lord

10  suggested last week.

11          And I think with the pleading, the affidavit I filed

12  concerning our son's medical and what we went through in 2013,

13  given a choice between saving our son and fighting in court --

14  I feel very guilty that I didn't do it sooner.  I mean, I --

15  but I eventually nonsuited.

16          I had to save our son.  He has Down syndrome.  He's

17  32 years old.  And he has a rare autoimmune disease.  I mean,

18  if anything, it's kind of like, you know, you almost wonder

19  what could happen next.

20          But the basic is, you know, that we were hoping that

21  you would have remanded our case to State court, because State

22  court could have given us some protection.  But at this point,

23  they -- their client has chosen to drag me through every court

24  in Dallas County.  And I have been denied due process.  None of

25  my claims have ever been heard.  None of my claims have ever

```
 1 │ been --
 2 │         THE COURT:  Ms. Breitling, just a minute.  As far as
 3 │ the remand goes, the motion that you filed this morning
 4 │ withdraws the Motion to Remand?
 5 │         MS. BREITLING:  Right.
 6 │         THE COURT:  Is that right?
 7 │         MS. BREITLING:  We no longer wish to go back to State
 8 │ court.
 9 │         THE COURT:  Okay.
10 │         MS. BREITLING:  We wanted to make that very clear to
11 │ Locke and Lord.
12 │         We have filed our Notice of Constitutional Questions.
13 │ We have a reference number with the U.S. Attorney General, and
14 │ Loretta Lynch will intervene in our case within 60 days.  And
15 │ we want her to -- a lot -- most of the other victims of this
16 │ company are going to do similar constitutional questions.
17 │         And we want -- recognize that we have been the
18 │ victims here, you know.  And our intent is to stay in this
19 │ Honorable Federal Court and, you know, to have justice served
20 │ on our behalf for what we've been through.
21 │         I did hire Mr. Milks, and, unfortunately, he worked
22 │ against me.  I mean, that was the most devastating thing.  I
23 │ actually had more, I guess -- Andy Beal has done this to
24 │ thousands of homeowners, but Mr. Milks did it to just me.  And
25 │ he actually breached attorney-client privilege.  He committed
```

1    illegal malpractice.  But I'll have to deal with him at a later
2    date.  So I had to take it over.
3           And when I took it over, you know, I wanted you to
4    know that our intent -- you know, I've been denied due process
5    in three lower courts.  And I want -- I want my claims
6    adjudicated, and I want justice in this court.
7           THE COURT:  As far as the issue of counsel, do you --
8    so you do not plan to hire counsel?
9           MS. BREITLING:  There is a gentleman that represented
10   me at my last County Court hearing, and he was not able to come
11   today.  We have a good possibility.  His name is Wade Kricken.
12   And --
13          THE COURT:  Could you spell that last name?
14          MS. BREITLING:  K-R-I-C-K-E-N.  And I just spoke with
15   him on Friday.  He had a conflict.  But he will possibly
16   represent us going forward.
17          THE COURT:  Okay.  Do take care of that as soon as
18   you can, because for him to come in and represent you, he'll
19   have to file an appearance of counsel.
20          MS. BREITLING:  Uh-huh.
21          THE COURT:  And I know you've been through a lot, but
22   let's just make sure you know that you are going to be better
23   off with a lawyer, always are, as you know.
24          MS. BREITLING:  I know.
25          THE COURT:  You've had them before in here.  So if

1  he's going to come along, I think that's good news, but let's

2  make sure he gets a notice filed as soon as possible.

3            MS. BREITLING:  Okay.  Thank you.

4            THE COURT:  All right.  What else?

5            MS. BREITLING:  And I did want to say in regard to

6  simplifying the case, you know, we did file to dismiss, you

7  know, MGC and Dovenmuehle simply because, you know, ultimately

8  LNV is the party that's going to be held responsible.  And, you

9  know, we're trying to simplify it so that I won't be up

10 against, you know, that many parties.

11           And I would like to nonsuit Codilis & Stawiarski or

12 dismiss them without prejudice simply because at some later

13 date -- my claims against them are very rock solid, but I just

14 don't want to deal with them right now.  I think it would be

15 better for them to be out of the lawsuit.  And I think, you

16 know -- I don't care what -- how you choose to dismiss MGC and

17 Dovenmuehle, with or without prejudice.  We have no intent for

18 that State court.

19           THE COURT:  Okay.  So far as with or without

20 prejudice, at this phase of the case, they can object to a

21 dismissal without prejudice.

22           MS. BREITLING:  Right.

23           THE COURT:  And given the history of this case, I

24 would be sympathetic to that.  You can certainly dismiss them

25 with prejudice, but to have them just hanging out there,

1    wondering what it is you're going to come back after them --

2              MS. BREITLING:  No, no.  I have no desire to go back

3    to State court.  I have no desire to sue MGC or Dovenmuehle.

4              THE COURT:  I'm talking about Codilis right now.

5              MS. BREITLING:  Oh, Codilis?

6              THE COURT:  Codilis.

7              MS. BREITLING:  I would like to reserve the right at

8    a later date and nonsuit them without prejudice.

9              THE COURT:  Okay.  I will deny that request.

10             MS. BREITLING:  Okay.

11             THE COURT:  You have to either go all the way with

12   them or not, because you can't have them waiting to see what it

13   is you're going to --

14             MS. BREITLING:  Uh-huh.

15             THE COURT:  -- start making their cash registers move

16   again with the lawyer fees and all of that over time.  I mean,

17   it's just not fair.

18             MS. BREITLING:  Okay.  Well, I'll -- at that point,

19   then, I will keep Codilis in the lawsuit.

20             THE COURT:  Okay.  All right.  That answers that

21   question.

22             MS. BREITLING:  Okay.

23             THE COURT:  So far as the S-T-A-W-I-A-R-S-K-I PC --

24   and then just for the record spelling, D-O-V-E-N-M-U-E-H-L-E

25   Mortgage -- you are moving to dismiss those with prejudice from

 1    the case.  Am I right about that?

 2                MS. BREITLING:  No.  It's MGC and Dovenmuehle.

 3                THE COURT:  MGC and Dovenmuehle.  Okay.  Got you.

 4                The other, Codilis & Stawiarski, you don't want to

 5    dismiss those without prejudice?

 6                MS. BREITLING:  Yeah, I'll keep -- I'll keep them for

 7    now.

 8                THE COURT:  Keep them in the case.

 9                MS. BREITLING:  Sorry, Mr. Devin.

10                THE COURT:  Okay.  So MGC and Dovenmuehle are

11    dismissed with prejudice from the case.  No second thoughts

12    about that, because you can't come back and do it after today.

13                Okay.  All right.  All right.  Thank you very much

14    for that clarity.

15                All right.  Any points to be made on that motion from

16    any of the defense counsel?

17                MR. SANDERS:  No, Your Honor, not at this time.

18                THE COURT:  Okay.  All right.  We have a few things I

19    wanted to ask you about.  What I want to do is go ahead and put

20    a scheduling order in place.  And I'm not going to do it from

21    the bench today, but we do need to do that so we can move ahead

22    with this case and get the case scheduled for trial, if that's

23    what we end up doing, and whatever motions there are to be

24    pending.

25                So while I've got you up here, Ms. Breitling,

1  Plaintiffs' Motion for Remand filed, Document 11 for the
2  record -- I don't know if you have your records here with you.
3  Do you need to get them from the table?
4          MS. BREITLING:  No, I don't.  That's okay.
5          THE COURT:  Okay.  As I understand it, that Document
6  11, filed March the 27th, is withdrawn, correct?
7          MS. BREITLING:  It is, yes, ma'am.
8          THE COURT:  Okay.  All right.  So it's denied as
9  moot.  We'll get this all in the record later.
10         You have a Motion for Leave to Amend.  And tell me
11  about that.  Are you still --
12         MS. BREITLING:  That was Mr. Milks.  And I don't
13  think he understood that you can amend in Federal court without
14  taking leave the first time.  And so I do have a question.  We
15  do need to amend our petition.
16         And when we were removed -- we've been between so
17  many courts.  We've been in the JP court, State court, County
18  Court at Law.  And when we were in Federal court, in Honorable
19  Judge Barbara Lynn's court, she actually put a stay on
20  everything because Magistrate Judge David Horan had recommended
21  that the case should go back to State court.  So she didn't
22  want us filing a lot of things when he had already, a week
23  before, said this all needs to go back to the 101.
24         So we had a stay, and we could not file -- you know,
25  amend.  And when Mr. Milks enrolled, he said he was going to

1   immediately amend the petition, but he -- I don't think he did

2   it properly with the right procedure.  He -- and so --

3          THE COURT:  I think he did.  But let me just say

4   this.  It sounds like this isn't something you're relying upon

5   right now.  I want to put a new scheduling order in place.

6          MS. BREITLING:  Uh-huh.

7          THE COURT:  So if this isn't something that the Court

8   needs to consider at this point, you will have a chance to move

9   to leave to amend.

10          MS. BREITLING:  Okay.

11          THE COURT:  I can't tell you from the bench right now

12   whether or not this is a situation where you don't move for

13   leave.  I think that you normally will have to move for leave.

14   It's not that hard to get, especially at the beginning of the

15   case.

16          But for purposes of this hearing today, Document 12,

17   Plaintiffs' Motion for Leave to Amend, is denied.  That's

18   obviously without prejudice, and we'll give you a chance to do

19   that again.

20          Now, just for clarity, Ms. Breitling, when you say,

21   "Move to amend," "We need to amend our complaint," what's the

22   purpose of that generally?

23          MS. BREITLING:  Because we have not been able to

24   bring in what has occurred since we filed our original

25   petition.  We filed our original petition which should have

1  given us an automatic stay from them selling our home.  And

2  after we filed our original petition, they violated the

3  automatic stay.  Our home was sold, and now we've actually lost

4  an eviction.

5          So we're fighting -- we're at the appeal level,

6  paying a supersedeas bond now, over in the fifth court of -- I

7  have to look to see how many courts.  We're in the fifth court.

8  I know.  It was -- I have been dragged through every court, but

9  no judge has ever heard my claims.

10          That's -- when we were in -- and we'll be addressing

11  this as well later on through a motion.  But when we were -- on

12  August 4th, what started this, when they filed summary

13  judgment, we answered their summary judgment.  And I went to

14  the hearing.  And Judge Tillery, his first words were, "I'm

15  ruling in favor of LNV because you did not answer."  And I

16  said, "We did answer."  And he said, "I never saw the answer."

17          And the fact that -- you know, so none of my claims

18  have --

19          THE COURT:  Right.  And I think that's all in your

20  papers.

21          MS. BREITLING:  One of my grave concerns is -- and

22  I've addressed this in a pleading with you, Your Honor.  I have

23  it in an affidavit, and I have addressed it with U.S. Attorney

24  General Loretta Lynch -- is the court dockets at the State

25  level have been altered.  And I don't know who has done this,

1   and I don't know for what purpose they've done this.

2           And, you know, this is something that I take very

3   seriously, because once you have a court docket, it should

4   remain the same.  Nobody should make changes in it.  And I have

5   a screenshot that I took a year ago, and something was removed

6   from that court docket.

7           And then the cases are convoluted.  If you -- you

8   know, our case cannot be accessed by our names.  I've gone to

9   that website five thousand times.  I could always enter my

10  name, and my cases would appear.

11          THE COURT:  Ms. Breitling, we started on this

12  conversation talking about amending.

13          MS. BREITLING:  Yes.  Okay.  Okay.

14          THE COURT:  And I was -- what I was interested in is,

15  given the time frame that this litigation has gone on --

16          MS. BREITLING:  Uh-huh.

17          THE COURT:  -- I'm just trying to figure out what it

18  is you would be adding, generally speaking.

19          MS. BREITLING:  Our new claims.  Our new claims for

20  wrongful -- wrongful foreclosure, wrongful eviction.

21          THE COURT:  Okay.  Okay.  That sounds like it would

22  be part and parcel of this case.

23          MS. BREITLING:  Yes.

24          THE COURT:  No new parties, as I understand it?

25          MS. BREITLING:  I beg your pardon?

```
 1              THE COURT:  No new parties?

 2              MS. BREITLING:  No, ma'am.

 3              THE COURT:  Okay.  All right.  I have an ex parte

 4   Amended Motion for Remand filed April the 27th.  That's

 5   Document 18.

 6              MS. BREITLING:  And --

 7              THE COURT:  Given what you've said today, I'm going

 8   to deny that as moot under the circumstances.

 9              MS. BREITLING:  Yes, ma'am.  Yes, ma'am.

10              (Pause)

11              THE COURT:  Okay.  I'm not sure what those noises

12   are.  We've had a lot of noises like that lately with

13   construction being done, so I apologize for that interruption.

14              So I have your Motion to Withdraw your Motion to

15   Remand, Document 45, filed today.  That's granted.

16              Notice of Intent.  I'm not sure what this is.

17              MS. BREITLING:  That's just letting you know that we

18   intend to stay in this Federal court, and we're asking the

19   Federal court to take jurisdiction.

20              THE COURT:  Okay.  This isn't something I can

21   actually rule on, understood, but it is -- I'm glad that we're

22   talking about it, because, Ms. Breitling, I understand -- and

23   believe me, I've been doing this a long time, so I've seen lots

24   of people come through with very, very serious situations and

25   recently, in the last five or ten years, regarding their homes.
```

1          I don't know that there's much more that could make

2     you crazy, make you upset --

3          MS. BREITLING:  No.

4          THE COURT:  -- than when your home is on the line and

5     you've got a sick child.  I don't mean to say that

6     derogatorily, but I sympathize with the situation that you find

7     yourself in.

8          What I do have to do, though -- and I do encourage

9     you to get an attorney -- is just tell you that some of the --

10    like, the Notice of Intent, you've got a lot of attachments to

11    it.  Those are not things I can necessarily --

12         MS. BREITLING:  Uh-huh.

13         THE COURT:  -- do anything with.  And you're better

14    off not to file that stuff.  If you have something urgent you

15    think needs to be brought to the Court's attention, yes, I will

16    entertain it.  But keep those to a minimum, if you would.

17         MS. BREITLING:  Okay.

18         THE COURT:  Okay?

19         MS. BREITLING:  Yes, Your Honor.

20         THE COURT:  And please try -- I encourage you to try

21    to get Mr. Kricken on board to help you out.

22         What I'm going to do is enter a scheduling order.

23    What is the specific address where we get things to you until

24    you have counsel, if you get counsel?

25         MS. BREITLING:  My home address is 1704 Cornwall,

1 C-O-R-N-W-A-L-L, Lane; Sachse, S-A-C-H-S-E; 75048.

2    THE COURT:  Some bad weather up there recently.

3    MS. BREITLING:  Huh?

4    THE COURT:  You had some bad weather up there

5 recently, as I recall.

6    MS. BREITLING:  Yeah.  I mean, it's been bad, but --

7    THE COURT:  750 --

8    MS. BREITLING:  048.  We're almost in Collin County.

9 So just think that we almost were --

10    THE COURT:  Okay.  Do you have an e-mail address?

11    MS. BREITLING:  I do.

12    THE COURT:  Okay.  Let's get that.

13    MS. BREITLING:  It's my name, all small letters,

14 joannbreitling@yahoo.com.

15    THE COURT:  Okay.  That's easy enough.

16    And then telephone number.  I'm assuming you're

17 keeping in contact with these lawyers.  I haven't heard any

18 complaints.  And sometimes that happens with pro se litigants.

19    MS. BREITLING:  Uh-huh.

20    THE COURT:  But you've been able to keep in touch

21 with each other?

22    MS. BREITLING:  I try.  I try.

23    THE COURT:  All right.  Is there any chance of

24 settling this case?

25    MS. BREITLING:  I am always open to settlement.

1  Mr. --

2        THE COURT:  What exactly -- what do you want out of

3  this, Ms. Breitling?

4        MS. BREITLING:  We started -- where we started is not

5  where we've ended up.

6        In 2013, when we went to mediation and we offered --

7  I said, "Let's be like Servpro, like it never even happened."

8  And even though -- when we sued them, it was over servicing

9  issues.  Over servicing issues.  We didn't even know who owned

10 it or supposedly owned it.

11       And we would have started making payments again and

12 hopefully lived happily ever after, except when they said

13 $60,000.00 and 12.375 percent, I was like, you know, trick me

14 once but not twice.

15       And so that's when I reached out.  That's when I

16 found out I'm not alone, that this is a pattern that's

17 occurring to a lot of people and it's not occurring legally.

18       We have to go back to the Texas -- to Greg Abbott,

19 what he has ruled.  You can't take a home using robo-signed

20 documents.  You -- you can't file things in Dallas County Land

21 Records.  It's a violation of Texas Property Code 12.0001.  And

22 that's against the law.

23       So laws have been broken.  Now we're asking for

24 accountability, because, you know, I represent a lot of people.

25 I'm here to represent not only myself but a lot of other

```
 1   people.  And this is not about our $191,000 house, because
 2   their client has been -- probably -- I have no idea how much
 3   their client has spent.
 4           What our Notice of Intent was to show this morning
 5   was they were saying that their client -- it's all because of
 6   me that their client has spent all this money.  But it's not.
 7   It's because their client -- it's all about winning.  And he
 8   will spend any amount of money to win.
 9           And I think he actually has a vendetta because he
10   knows that we're all connected.  For a long time some of the
11   other victims and I, we kind of went -- were underground, and
12   we did not let anyone know that we knew one another.
13           THE COURT:  He being who?
14           MS. BREITLING:  Huh?
15           THE COURT:  You say "he."
16           MS. BREITLING:  Their client is Daniel Andrew Beal.
17           THE COURT:  Okay.
18           MS. BREITLING:  They represent Daniel Andrew Beal.
19           THE COURT:  So there isn't a chance of settling?
20           MS. BREITLING:  If they would admit that their client
21   has engaged in wrongdoing and if they would admit that we're
22   entitled to damages.
23           THE COURT:  When was the last time you went to
24   mediation?  Was it 2013?
25           MS. BREITLING:  Yes, ma'am.
```

1      THE COURT:  Okay.  Thank you, Ms. Breitling.  I want
2  to see if the defense counsel have anything else to add.  Thank
3  you.
4      MS. BREITLING:  Okay.
5      THE COURT:  Settling is always the best way to
6  resolve a case if it's possible.  Obviously, it's a choice.  Is
7  there any possibility?  I'm not saying necessarily on
8  Ms. Breitling's terms, but -- and if you-all -- I'll let you
9  stay there, but just speak up.
10     MR. SANDERS:  Your Honor, Jason Sanders.  We were
11  scheduled to mediate this case a few months ago, and Plaintiffs
12  canceled.  We certainly are amenable to settling this case on
13  reasonable terms, absolutely.  And we --
14     THE COURT:  Who was the mediator?
15     MR. SANDERS:  The mediator was --
16     MR. CABRERA:  Cynthia Solls, Your Honor.
17     THE COURT:  Cynthia Solls.  Okay.
18     MR. CABRERA:  Yes, Your Honor.
19     THE COURT:  All right.
20     MR. SANDERS:  But we were prepared to go, and we got
21  notice.  Mr. Milks -- the Plaintiffs terminated their
22  relationship with Mr. Milks and immediately canceled the
23  mediation, and that's the last we heard of it.
24     THE COURT:  Okay.  Thank you.
25     MR. DEVIN:  Your Honor, I leave here with some

1    guidance about whether my client is going to be in this case,

2    but I would like to redirect the Court's attention back to the

3    Motion for More Definite Statement --

4              THE COURT:  Yes.

5              MR. DEVIN:  -- which still has not been resolved.

6    And the current petition contains only some very vague

7    references to the Codilis Firm.  Now, candidly, if we face some

8    sort of claims down the road, I would rather handle them here

9    and now rather than at some indefinite time in the future.

10             THE COURT:  Right.

11             MR. DEVIN:  But I need to know what they are.  And so

12   I would like to request that the Court rule on the Motion for

13   More Definite Statement.

14             THE COURT:  I appreciate that.  And I meant to do

15   that.  I had that as one of the things I wanted to talk about.

16             Ms. Breitling, come on back up here on that.

17             They are entitled to know what they've done wrong in

18   more than generalities.  So just from -- just from -- as you're

19   standing there right now, can you just articulate what

20   the problem -- what it is that you --

21             MS. BREITLING:  Under the Fair Debt Collection

22   Practices Act, they sent us a letter in January 2014.

23             THE COURT:  That would be LV -- that's Codilis?

24             MS. BREITLING:  Yes.  Yes, ma'am.  And they said that

25   they were sending the letter on behalf of their client

1  Dovenmuehle, DMI.  And we immediately, you know, wrote back and

2  said, you know, "Please validate, verify that this is not, you

3  know, a debt that -- not a valid debt, that this contains

4  fraud."

5            And, you know, they had the obligation to research it

6  before they initiated foreclosure proceedings against us.

7            THE COURT:  Okay.

8            MS. BREITLING:  And they did not.  They did not do

9  that.

10           THE COURT:  Okay.  That's helpful.

11           Here's what I'm going to do on this.  Since you seem

12  to be very good at putting things in writing, whether you have

13  a lawyer or not, I'm going to go ahead and grant that.  Can you

14  get me something within, say, 20 days of the outside --

15           MS. BREITLING:  Yes, ma'am.

16           THE COURT:  -- in writing as to putting the specifics

17  down?

18           I don't want to have you file a new complaint yet

19  with it in there, because we want to get the scheduling order

20  in place.  So let me -- I will -- just to give you notice, I'll

21  do an order that grants it, gives you 20 days to file something

22  specific in writing that gives them the details that you're

23  giving me now.

24           MS. BREITLING:  Okay.

25           THE COURT:  And then we'll get the scheduling order

1     in place, and you'll see what your time frame is for moving to

2     amend your complaint.

3             MS. BREITLING:  Okay.  Thank you.  Thank you so much.

4             THE COURT:  Okay.  Anything else?  Any --

5     Ms. Breitling, this is your chance.  We may not see each other

6     face to face again for a while.  What else can I do?

7             MS. BREITLING:  I did -- I did want to say, right off

8     the bat, that I canceled the mediation.  And I only had

9     canceled the mediation when I realized that Mr. Milks was

10    working not in our best interest.  And he actually violated --

11    breached attorney-client privilege by having one of his former

12    clients call me and say, "Please don't fire him.  Please do

13    everything he says."

14            THE COURT:  Oh, it was in your papers.  It sounded

15    pretty bad.

16            MS. BREITLING:  Yes, that was.  That was.  And then

17    he finally -- you know, their idea of mediation was for us to

18    buy our house back.  And our viewpoint is that if -- you know,

19    they've already evicted us on paper.  We're paying a

20    supersedeas bond.

21           But for us -- my husband is a retired Dallas police

22    officer.  Ethically and morally and spiritually, it's about --

23    it's about justice.  It's about the law.  And to us, for us to

24    go and say, "Okay.  We'll buy our house back from someone who

25    never owned it in the first place and who sold it illegally and

```
 1    took it from us illegally," that -- that -- you know, that's
 2    extortion, and that would violate everything in my core --
 3              THE COURT:  Okay.
 4              MS. BREITLING:  -- value.
 5              THE COURT:  Well, let's -- let's move ahead with
 6    this.
 7              MS. BREITLING:  Okay.
 8              THE COURT:  And, hopefully, we can keep this in an
 9    organized, predictable sequence of events so you know what's
10    coming next.  Be careful about filing a lot of things --
11              MS. BREITLING:  Okay.
12              THE COURT:  -- that just besmirch people's character.
13    I know you're upset about this, but you want to keep on the
14    legal focus.
15              MS. BREITLING:  Uh-huh.
16              THE COURT:  And the -- do what you can to get
17    Mr. Kricken onboard.  In the meantime, I trust that you will be
18    able to handle this Definite Statement without any problem.
19              MS. BREITLING:  Yes, ma'am.  Yes, ma'am.
20              THE COURT:  All right.  We'll get the scheduling
21    order out.  You'll get it at your address.  And we have --
22    you've signed up for electronic filing?
23              MS. BREITLING:  Uh-huh.
24              THE COURT:  All right.  Anything else?
25              MS. BREITLING:  No, ma'am.
```

1          THE COURT:  All right.  Anything, gentlemen?

2          MR. SANDERS:  Nothing more, Your Honor.

3          THE COURT:  All right.

4          MR. DEVIN:  Thank you.

5          THE COURT:  We'll get a schedule in place and move

6   this ahead.  Thank you both.

7          MR. SANDERS:  Thank you.

8          THE COURT:  Thank you-all very much.

9          We'll be in recess.

10          SECURITY OFFICER:  All rise.

11          (Hearing adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                              INDEX

2    Court's ruling.......................................... 29

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I, TODD ANDERSON, United States Court Reporter for the

2    United States District Court in and for the Northern District

3    of Texas, Dallas Division, hereby certify that the above and

4    foregoing contains a true and correct transcription of the

5    proceedings in the above entitled and numbered cause.

6        WITNESS MY HAND on this 23rd day of November, 2015.

7

8

9
                                    /s/Todd Anderson
10                                  TODD ANDERSON, RMR, CRR
                                    United States Court Reporter
11                                  1100 Commerce St., Rm. 1625
                                    Dallas, Texas  75242
12                                  (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25